1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

HON. _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | 12-CV-_____<br><br><br>**COMPLAINT** |

Plaintiff the United States of America ("United States") brings this civil cause of action against Defendant the City of Seattle (the "City" or "Seattle") under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.

The United States brings this action to remedy a pattern or practice of conduct by law enforcement officers of the Seattle Police Department ("SPD" or "the Department"), an agent of the City, that deprives persons of rights, privileges, and immunities secured and protected by the Constitution and the law of the United States.

The United States alleges as follows:

## I.      JURISDICTION AND VENUE

1.       This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1345 and 2201.

COMPLAINT - 1
12-CV-

2.      The United States is authorized to initiate this suit under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("§ 14141").

3.      Under § 14141, the United States is authorized to bring suit against a state or local government in order to eliminate a pattern or practice of conduct by law enforcement officers that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or federal law.

4.      Declaratory and injunctive relief is sought as authorized by 42 U.S.C. § 14141(b).

5.      Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(b).  Defendant is located or resides in the Western District of Washington, and a substantial part of the events giving rise to this claim occurred in Seattle, within the Western District of Washington.

## II.      PARTIES

6.      Plaintiff is the United States of America.

7.      Defendant the City of Seattle is a municipal corporation located in King County in the Western District of Washington.

## III.      FACTUAL ALLEGATIONS

**A.      Introduction**

8.      Pursuant to an extensive investigation of the Seattle Police Department conducted by the United States Department of Justice ("DOJ"), the United States has determined that SPD engages in patterns or practices of using unlawful force that systematically deny the people of Seattle their constitutional rights.

9.      Specifically, SPD officers engage in a pattern or practice of subjecting individuals to excessive force in violation of the Fourth Amendment to the Constitution and other laws of the

United States.  This pattern or practice includes, but is not limited to:  SPD officers using impact weapons, such as batons and flashlights, when such force is not justified; SPD officers using excessive force on subjects who are already restrained; multiple SPD officers at a time using excessive force together against a single subject; SPD officers using excessive force against persons of color; and SPD officers escalating situations and using excessive force when arresting individuals for minor offenses, particularly during encounters with persons with mental illnesses and those under the influence of alcohol or drugs.

10.    The United States' investigation included, but was not limited to, a review of SPD's own use of force statements over a recent two-year period which uncovered this pattern or practice.  Analysis by DOJ found that SPD officers frequently use force that exceeds the limits prescribed by the Constitution and inflicts bodily harm on Seattle residents.

11.    SPD officers engage in this pattern or practice of constitutional violations while performing law enforcement activities within the scope of their employment.  The violations arise from the City's and SPD's systematic failure to provide adequate policies, training and supervision to officers on the proper use, reporting, and investigation of force, despite knowledge of these deficiencies.  Thus, SPD and the City of Seattle are vicariously liable for officers' patterns or practices of conduct violating the Fourth Amendments.

12.    SPD's routine failure to report and investigate use of force incidents, to hold officers accountable for improper uses of force, or to emphasize the importance of de-escalation facilitates a supervisory culture where excessive force is tolerated.  This supervisory culture is exacerbated by the absence of clear and consistent policies, procedures, and practices that appropriately guide and monitor the actions of SPD officers and SPD's oversight of those actions.

COMPLAINT - 3
12-CV-

13.     Tellingly, of the more than 1,200 internal use of force reports DOJ received from SPD prior to bringing this suit, covering a period of more than two years, only five were formally referred for "further review" at any level within SPD.  And DOJ's pre-litigation investigation found no case in which a first-line supervisor was held accountable for the inadequate investigation or review of a use of force incident.  SPD has a pattern of failing to scrutinize use of force reports even when they plainly describe excessive force.

14.     SPD's inadequate systems of supervision demonstrate the City and SPD's deliberate indifference to the excessive force used by SPD officers.

15.     The United States seeks declaratory and injunctive relief to eliminate the Defendant's violations of the law and to ensure that SPD implements sustainable reforms that establish constitutional policing practices.  Constitutional policing is an essential element of effective law enforcement.  Implementation of constitutional policing practices will enhance public safety for the people of Seattle, enable the police to better ensure public safety, and restore public confidence in SPD.

**B.     Background**

16.     Seattle is the largest city in the State of Washington and the Pacific Northwest with a population of 608,660 people as of the 2010 census.

17.     The Seattle Police Department is the largest law enforcement agency in the State of Washington, staffing approximately 1,300 sworn officers.

18.     For many years, Seattle community members have experienced, documented, and objected to SPD's use of excessive force.  Widely publicized incidents in the last several years involving SPD officers' use of force, particularly inflicted upon minorities and persons with mental illnesses, have further deteriorated the public's trust of the Department.

COMPLAINT - 4
12-CV-

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
(206) 553-7970

19.     On March 31, 2011, DOJ publicly announced its investigation into allegations of excessive force and discriminatory policing by SPD.  As part of this investigation, DOJ reviewed hundreds of thousands of pages of documents, including SPD policies and procedures, training materials, internal use of force reports, public reports, the Office of Professional Accountability's ("OPA") complaints and investigative files, and data generated from SPD and OPA databases. The investigation also included hundreds of interviews and meetings with SPD officers, supervisors and command staff, as well as Seattle City officials and community members.  In May and September of 2011, DOJ conducted on-site tours of SPD and hosted six full days of interviews with community members.

20.     The City and SPD were fully cooperative throughout the investigation.  They provided free access to documents and SPD personnel.

21.     On December 16, 2011, DOJ released its report ("DOJ Report") announcing that it had found reasonable cause, under § 14141, to believe that SPD engages in a pattern or practice of excessive force.  The 67-page DOJ Report is attached hereto, and incorporated by reference, as **Exhibit 1.**   DOJ's investigation also identified serious concerns about certain practices that could have a disparate impact on minority communities and about troublesome patterns in SPD's use of force that tended to support allegations of discriminatory policing, including the fact that over half of the excessive force cases identified by DOJ involved minorities.

22.     Many of the issues related to discriminatory policing are both aggravated by and contribute to the issues regarding the excessive use of force.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
(206) 553-7970

**C.    SPD Engages in a Pattern or Practice of Conduct That Violates the Fourth Amendment to the Constitution.**

23.    The United States re-alleges and incorporates by reference the allegations set forth above.

24.    SPD officers engage in a pattern or practice of deploying excessive force in violation of the Fourth Amendment.  This pattern or practice of unconstitutional conduct results directly from the Department's inadequate policies, procedures, training, and oversight.

25.    SPD officers engage in a pattern or practice of using force that is objectively unreasonable under the circumstances in which the force is applied, including the threat posed by the suspect and the severity of the alleged underlying crime.  This pattern or practice manifests itself through various types of unconstitutional force applied by SPD officers, including:

     a.    The unjustified use of impact weapons, such as batons and flashlights. SPD officers deploy impact weapons without adequate legal justification and when less intrusive alternatives to these weapons are available, unnecessarily causing serious bodily harm.

     b.    The use of excessive force on subjects who are already restrained.  SPD officers use excessive force against individuals who have already been taken into custody, handcuffed, or otherwise restrained.  These uses of force are unjustified based on the diminished threat posed by the restrained suspects and often inflict significant injuries.

     c.    The use of excessive force by multiple SPD officers at a time against a single subject.  Multiple SPD officers have applied force simultaneously against a lone subject in a manner that is constitutionally excessive.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
(206) 553-7970

d.     <u>The escalation of situations leading to the use of excessive force when arresting individuals for minor offenses or during improper investigatory stops, particularly during encounters with individuals in mental health crisis, or individuals under the influence of drugs or alcohol</u>.  A high percentage of SPD's uses of force are against individuals with mental illness and/or under the influence of intoxicants.  In many cases, minor offenses and disturbances involve individuals with mental health or substance abuse issues – the same individuals who often bear the brunt of police uses of force when situations escalate.  In addition, SPD officers' improper investigatory stops lead to escalation and unnecessary or excessive force.

e.     <u>The use of excessive force against persons of color</u>.  SPD officers disproportionately apply force against persons of color.  Over half of the subjects of excessive force identified in DOJ's review of a two-year sample of SPD's use of force reports were non-white.  DOJ's analysis of SPD's Street Check database likewise found that the recorded encounters disproportionately affect minority and disenfranchised communities.  Consistent with the DOJ Report, the City has acknowledged the need to provide better and consistent training to officers so they can recognize the difference between social contacts and custodial stops.

26.     This pattern or practice of excessive force pervades SPD's law enforcement operations.  DOJ's review of a random, statistically valid, and stratified sample of SPD's own use of force statements from January 1, 2009, through April 4, 2011, revealed that a significant

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
(206) 553-7970

1  percentage of the sampled incidents involved force exceeding the limits prescribed by the Fourth

2  Amendment.

3        27.     Further evidence of the pattern or practice exists in other records, including

4  accounts of excessive force contained in OPA complaints, community member interviews, and

5  prior settled and pending civil lawsuits.

6        28.     The cases described below are not exclusive, but rather illustrate this pattern or

7  practice.

8        29.     On August 30, 2010, an SPD officer shot and killed John T. Williams, a Native

9  American woodcarver.  SPD's Firearms Review Board ("FRB") concluded that the shooting was

10  "unjustified."  While patrolling downtown Seattle in the afternoon, the officer observed

11  Mr. Williams crossing the street with a knife in his right hand, carving a piece of wood held in

12  his left hand.  Within seven seconds, the officer shot and killed Mr. Williams, despite the fact

13  that he posed no immediate threat to the public or to the officer.  Further, the FRB concluded that

14  the officer did not take reasonable steps to ensure that Mr. Williams received sufficient warning

15  that a Seattle police officer was directing him to put down his knife.  In fact, evidence suggested

16  that Mr. Williams was not facing the officer, as four rounds from the officer's firearm struck

17  Mr. Williams's side.  SPD's failure to supervise an inexperienced officer on how to make

18  appropriate decisions about when to use deadly force, how to appreciate cultural traditions of

19  Native Americans, and how to determine when to call for supervisory assistance, led to this

20  tragic death.  In addition, after Mr. Williams was shot, responding officers lacked sufficient

21  training to determine the degree to which he represented a threat, or whether aid should be

22  called.  SPD ultimately settled the claim brought by Mr. Williams's family for $1.5 million.

23

COMPLAINT - 8
12-CV-

30.     On April 17, 2010, SPD officers stopped Martin Monetti, Jr., a Latino man they believed might be a robbery suspect.  After ordering Mr. Monetti to lie face down on the ground, video shows that an officer threatened to "beat the fucking Mexican piss" out of him and referred to Mr. Monetti as "homey."  Despite the fact that Mr. Monetti was under control and did not pose a threat, the officer kicked his head and stepped on his hands.  Another officer stepped on his lower back or legs with her foot.  Although two supervisors were present at the scene, no officer filed a use of force report or otherwise reported the conduct until a video was later made public.  Only after the incident became widely publicized in the media, sparking an outcry in the Seattle community, did SPD take a harder look at the incident and discipline one of the involved officers.  During a deposition in a subsequent civil lawsuit, the officer who stomped on Mr. Monetti testified that the racially inflammatory language was a "control tactic" and acknowledged that SPD had a culture of tolerating such language.  The supervisor on the scene justified the failure to report the event by testifying that the threat to beat the "fucking Mexican piss out of you" was racially neutral and not derogatory, and that the use of force did not rise to the reportable level.  After a federal district court denied the City's motion for summary judgment, SPD settled the lawsuit brought by Mr. Monetti for $150,000.

**D.     SPD Has Failed to Institute Adequate Policies, Supervision, Training, and Procedures Relating to its Officers' Use of Force.**

31.     SPD's pattern or practice of using unlawful force derives from Defendant's systematic failure to implement adequate policies, procedures, training, and oversight.

32.     SPD has a pattern or practice of failing to supervise its officers' use of force. SPD fails to demand full reporting of, and then to investigate adequately, individual use of force incidents; fails to hold officers accountable for uses of excessive force; fails to hold supervisors

1   accountable for inadequate supervision or deficient investigations; and fails to provide

2   appropriate training or policy guidance.

3         33.    Defendant's failures to supervise patrol officers' use of force occur at every level

4   of SPD management, from the sergeant's on-scene investigation and review, to the chain of

5   command and command staff's failure to hold officers or supervisors accountable for uses of

6   excessive force.

7         34.    SPD's use of force policy requires that use of force packets be forwarded through

8   the chain of command, typically from a sergeant, to the watch lieutenant, to the precinct

9   commander, and then to the employee's bureau commander, typically the Assistant Chief over

10   Patrol Operations.

11         35.    Sergeants routinely sign off on use of force reports without truly investigating

12   whether the use of force is lawful and consistent with SPD policy.  These deficient investigations

13   fail to uncover unlawful uses of force, and almost never lead to the referral of an excessive use of

14   force incident to OPA for investigation.  Supervisors further fail to hold patrol officers

15   accountable for insufficient use of force reports or for a failure to report use of force at all, which

16   is a common occurrence.

17         36.    Of the 1,230 use of force reports reviewed from January 1, 2009, through

18   April 4, 2011 – many of which described plainly excessive force – only *five* were ever marked by

19   reviewing supervisors as requiring further review.  This means that a supervisor in the entire

20   chain of command – sergeant, lieutenant, precinct commander, and bureau commander – only

21   formally sought further review, investigation, or clarification of *0.4%* of the use of force packets

22   over a two-and-a-quarter year period of time.

23

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
(206) 553-7970

37.     SPD has not only failed to properly supervise individual use of force incidents, but has also engaged in a widespread failure to effectively monitor officers who use force repeatedly.

38.     SPD's Early Intervention System ("EIS") does not serve as a meaningful mechanism for either mentoring/training officers or for identifying and curbing officers' use of force problems.  For example, in one 14-month period, an officer participated in 20 uses of force and was the subject of four OPA complaints regarding his use of force.  This led to four EIS interventions where supervisors were required to review the officer's use of force reports and identify any problematic behavior or issues that flag training or tactical questions.  No issues were identified by the supervisors for the 20 uses of force.  Instead, during each intervention, the reviewing supervisor approved the officer's use of force, without providing any additional training or tactical suggestions to avoid uses of force.

39.     DOJ's investigation revealed that these failures are not isolated; SPD routinely failed to identify patterns of excessive force and take adequate measures to prevent their recurrence.

40.     Similarly, SPD's OPA system has not provided the intended backstop for the failures of the direct supervisory review process.  For years, SPD disposed of nearly two-thirds of citizens' complaints by sending them to SPD's precincts, where the quality of investigations is deficient, and where SPD provided no additional monitoring for alleged attempts to provide remedial training or other interventions for officers.

41.     SPD's failure to supervise means that SPD leadership is unaware of which of its officers use force frequently, or why.  In 2010, just 20 officers (four percent of its officers) used force seven or more times, participating in eighteen percent of the acknowledged use of force

COMPLAINT - 11
12-CV-

incidents for the year.  SPD did not conduct reviews of these officers' uses of force to understand why they used force, when they used force, and what training, rotation of duties, or other steps might be necessary to ensure that they are not continually put in situations where they need to use force.  SPD's lack of oversight risks both officer and community safety.

42.     SPD's systemic deficiencies in supervision extend to its failure to provide appropriate or adequate use of force training to SPD officers.  This failure includes a lack of appropriate supervision and training to officers regarding impact weapons, such as batons and flashlights.  Consistent with this, DOJ's pre-litigation investigation found that roughly half of all impact weapon use was excessive.  Despite these high levels of excessive force, SPD has no policies in place governing the use of these weapons.

43.     SPD's use of force policies are vague on their face, place a burden on subjects to complain, leave too much room for officer discretion in reporting force, and exclude the reporting of certain types of force that should be reported.

**E.      The City Knew or Should Have Known that SPD's Inadequate Policies, Supervision, Training, and Procedures Would Cause Constitutional Violations.**

44.     SPD has long been on notice that its officers frequently use excessive force.   In addition to the numerous incidents described above, the City has received notice of SPD's deficient policies, training, and oversight, and the resulting constitutional violations, from several sources:  warnings from OPA officials; successful litigation against SPD and the City; and high profile incidents of SPD officers' alleged misconduct.

45.     Indeed, for years OPA officials have repeatedly warned the City about SPD's deficiencies in policies, supervision, training, and procedures.  Since as early as 2004, OPA's auditors have repeatedly recognized many of the same issues that DOJ's investigation uncovered, including the necessity of implementing training that assists officers in de-escalating

COMPLAINT - 12
12-CV-

situations and the failure to report uses of force.  SPD has not made substantial progress towards implementing any of the recommendations made by OPA.

46.     Further, SPD knew or should have known of its deficient policies, supervision, training, and procedures through the lawsuits the City has litigated and settled.  The City has spent millions of dollars in attorneys' fees defending police misconduct cases.   In the last six years, it has paid approximately $3 million in settlements, verdicts and attorneys fees to plaintiffs.  Many of these cases have provided the City with notice of, and are further evidence of, the pattern or practice alleged herein.

47.     In short, SPD knew or should have known that its policies or practices, particularly its inadequate policies, training, supervision, and practices, would inevitably cause Fourth Amendment violations.

48.     Despite these clear warnings, SPD has failed to implement policies, systems of supervision, adequate training or procedures that will protect against uses of excessive force. The fact that these institutional failures and constitutional violations persist, despite SPD's awareness of its deficiencies and officer use of force problems, demonstrates SPD's indifference to the risk of excessive force.

## IV.     CLAIM FOR RELIEF:  DEFENDANT'S CONDUCT VIOLATES § 14141 AND THE FOURTH AMENDMENT

49.     The United States re-alleges and incorporates by reference the allegations set forth above.

50.     Defendant engages in law enforcement practices that result in excessive force against persons in Seattle.

COMPLAINT - 13
12-CV-

51.     Defendant's actions constitute a pattern or practice of conduct by law enforcement officers that deprives persons of their rights under the Fourth Amendment, in violation of § 14141.

52.     Unless Defendant is restrained by this Court, SPD will continue to engage in the illegal conduct averred herein, or other similar illegal conduct, targeted against the people of Seattle.

## V.     PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

53.     Declare that the Defendant has engaged in a pattern or practice of conduct by SPD officers that deprives persons of rights, privileges or immunities secured or protected by the Constitution or laws of the United States, in violation of § 14141;

54.     Order the Defendant, its officers, agents, and employees to refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of conduct described herein;

55.     Order the Defendant, its officers, agents, and employees to adopt and implement the following to prevent SPD officers from depriving persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States:

   a.     Policies, procedures, and training regarding use of force, the reporting of use of force, and supervisory responsibilities regarding use of force;

   b.     Improved supervision at the scene of use of force incidents, in the review of use of force reports, and in the review of officer activity;

COMPLAINT - 14
12-CV-

c.   Policies, procedures, training, and supervision to address issues of discriminatory policing, including prohibiting the use of racially charged language directed towards individuals;

d.   Policies, procedures, training, and supervision regarding crisis intervention, social contact, and investigatory stops, and strategies to prevent discriminatory policing; and

e.   Accountability measures to hold officers and supervisors accountable for uses of excessive force and discriminatory policing.

56.   Order such other appropriate relief as the interests of justice may require.

Respectfully submitted on July 27, 2012.

For the UNITED STATES OF AMERICA:

ERIC H. HOLDER, JR.
Attorney General of the United States of America


/s/ Jenny A. Durkan                          /s/ Thomas E. Perez
JENNY A. DURKAN                         THOMAS E. PEREZ
United States Attorney for the             Assistant Attorney General
Western District of Washington             Civil Rights Division

Kerry J. Keefe, Civil Chief                    Jonathan M. Smith, Chief
J. Michael Diaz, Assistant United States Attorney       Timothy D. Mygatt, Special Counsel
Rebecca S. Cohen, Assistant United States Attorney     Michelle L. Leung, Trial Attorney
United States Attorney's Office              Michael J. Songer, Trial Attorney
Western District of Washington             United States Department of Justice
700 Stewart Street, Suite 5220             Civil Rights Division
Seattle, Washington 98101-1271           Special Litigation Section
Phone: (206) 553-7970                      950 Pennsylvania Avenue, NW
Fax: (206) 553-4073                          Washington, DC 20530
E-mail:  Michael.Diaz@usdoj.gov         Phone:  (202) 514-6255
                                                         Fax:  (202) 514-4883
                                                         E-mail:  Michelle.Leung@usdoj.gov