UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | CASE NO. C12-1282JLR<br><br>ORDER REGARDING MOTION TO INTERVENE AND MOTIONS FOR DEADLINE EXTENSIONS |

## I. INTRODUCTION

Before the court are three motions: (1) the Community Police Commission's ("CPC") motion for leave to intervene in these proceedings (Mot. to Intervene (Dkt. # 90)), (2) the CPC's motion to extend certain deadlines contained in Appendix A to the Monitoring Plan for the First Year ("Appendix A") and the Memorandum of Understanding ("MOU") between Plaintiff United States of America ("the United States") and Defendant City of Seattle ("the City") (CPC's Mot. (Dkt. # 91)), and (3) the City's motion to extend certain deadlines in Appendix A (City Mot. (Dkt. # 92)). The

ORDER- 1

court has reviewed the motions, all submissions filed in support of and opposition thereto, the balance of the record, and the applicable law.[1]  Being fully advised, the court DENIES the CPC's motion to intervene in this action, but will permit the CPC to serve as amicus curie in these proceedings.  Despite its opposition to the CPC's motion to intervene, the United States, nevertheless, urges the court to take notice of and consider the CPC's requests for additional time based on the court's "wide discretion to manage this litigation" (Resp. (Dkt. # 3) at 3), and the court will do so.  Having carefully reviewed all of the requests for deadline extensions in the CPC's and the City's motions, the court GRANTS in part and DENIES in part those requests as more fully described below.

## II.   BACKGROUND

On July 30, 2012, the parties jointly moved the court to enter a Consent Decree (Dkt. # 3-1) with respect to the United States' complaint (Dkt. # 1) alleging a pattern or practice of excessive force unconstitutional conduct by the Seattle Police Department ("SPD").  (*See* Joint Mot. (Dkt. # 3).)  The court provisionally approved the Consent Decree on August 30, 2012, following a public hearing in open court.  (8/30/12 Order (Dkt. # 8).)  Upon the parties' stipulated motion to modify the Consent Decree in certain ways, the court entered preliminary approval of the Consent Decree on September 21, 2012. (9/21/12 Order (Dkt. # 13).)  The court also entered the parties' stipulated and

---

[1] No party, nor the proposed intervenor, has requested oral argument on any of the three motions, and the court considers each motion to be appropriate for disposition without it.

1  joint findings of fact and conclusions of law, filed pursuant to Federal Rule of Civil
2  Procedure 52(a)(3). (Stip. Findings (Dkt. # 14).)
3       Paragraph 6 of the Consent Decree required the City to establish the CPC by
4  Executive Order. (Consent Decree (Dkt. # 3-1) ¶ 6.) On October 9, 2012, the Mayor of
5  Seattle issued an Executive Order, and on October 12, 2012, the City Council passed an
6  ordinance establishing the CPC. The Mayor appointed the members of the CPC on
7  January 14, 2013, and they were confirmed on March 13, 2013.
8       The Consent Decree required Monitor Merrick Bobb to develop a Monitoring Plan
9  within four months of his appointment. (Consent Decree ¶ 183.) Mr. Bobb filed his
10 Monitoring Plan with Appendices on March 5, 2013. (Dkt. ## 59, 60.) Appendix A set
11 forth the timelines for (a) the City to deliver draft materials to the Monitor for review and
12 approval and (b) the City's draft policies to be formally deemed by the Monitor "in
13 compliance" with the Consent Decree (pursuant to its paragraph 177). Both the City and
14 the United States filed statements indicating their approval of the Monitoring Plan. (Dkt.
15 ## 62, 65.)
16      On March 13, 2013, following another public hearing in open court, the court
17 approved the Monitoring Plan. (Dkt. # 67.) The court indicated on the record during the
18 public hearing that any modification to the Monitoring Plan would require court
19 approval.
20      On August 20 and August 30, 2013, the CPC sent letters to the court requesting
21 additional time to review the first set of use of force policies. (Dkt. ## 82, 84.) On
22

ORDER- 3

September 3, 2013, the court sua sponte granted that request, in part, extending the deadlines but not as far as the CPC requested. (Dkt. # 83.)

On September 10, 2103, the United States moved to extend the deadline for the CPC's review of the first set of use of force policies even further than originally allowed by the court's September 3, 2013, order. (Dkt. # 85.) The City indicated its assent to the United States' motion (Dkt. # 86), and the court granted the United States' motion (Dkt. # 87), which in effect allowed the CPC the full amount of additional time it had requested in its August letters to the court. The court further required "the City and the CPC to identify, within 30 days . . . , any other deadlines in Appendix A that they believed should be modified to allow the CPC to carry out its obligations under the [Consent Decree] and [MOU] and provide this information and reasoning to the parties and the Monitor." (Dkt. # 88.) The City and the CPC provided this information by letter on October 10, 2013. (*See* Dkt. # 91-2 at 6-8.)

On October 24, 2013, the CPC filed its motion to intervene (Dkt. # 90), and on October 31, 2013, the City and the CPC filed their respective motions to modify certain deadlines in Appendix A and the MOU (Dkt. ## 91, 92). The United States opposes the CPC's motion to intervene (Resp. at 6-14), and opposes portions of the CPC's and the City's motions for various deadline extensions (*id.* at 14-16). Nevertheless, the United States has urged the court to consider the CPC's requests concerning deadlines in the Appendix A and the MOU. (*Id.* at 14.)

//

//

### III. ANALYSIS

**A. Motion to Intervene[2]**

The CPC, as the party seeking to intervene, bears the burden of showing that it has met all the requirements for intervention. *United States v. Allisal Water Corp.*, 370 F.3d 915, 918 (9th Cir. 2004). The CPC has acknowledged that it "does not seek intervention as of right." (CPC Intervention Reply (Dkt. # 104) at 5, n.9.) Thus, the only basis for its motion is permissive intervention under Federal Rule of Civil Procedure 24(b). Fed. R. Civ. P. 24(b). Rule 24(b) states, in pertinent part, that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The United States concedes that "[t]he CPC's claim shares a common question of law or fact with the main action." (Resp. at 12.) However, the United States argues that the CPC's motion to intervene is not timely.[3] (*Id.* at 11-12.)

Even if an applicant satisfies the foregoing requisites, the court still has discretion to deny the motion. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "In

---

[2] The United States argues that the CPC is not a jural entity with the capacity to sue and be sued under Federal Rule of Civil Procedure 17, and therefore, intervention under Federal Rule of Civil Procedure 24 is not permissible. (Resp. at 6-8.) Because the court denies the CPC's motion to intervene on other grounds, it need not decide this issue.

[3] In addition to timeliness and "a common question of law or fact," the Ninth Circuit has stated that permissive intervention may only be granted where the applicant demonstrates "an independent ground for jurisdiction." *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). As the United States points out, the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor, like the CPC, is not raising new claims. (Resp. at 12-13 (citing *Freedom from Religious Foundation, Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away.")).)

exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Donnelly*, 159 F.3d at 412 (the question is whether intervention will unduly delay the main action or will unfairly prejudice the parties). In addition, the court also should consider whether the interests of the proposed intervenor are adequately represented in the proceedings already. *Venegas*, 867 F.2d at 530. The court may also consider whether the party seeking intervention will significantly contribute to the just and equitable adjudication of the legal issues presented. *See Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (citing *Hines v. Rapides Parish School Bd.*, 479 F.2d 762, 765 (5th Cir. 1973)). "Finally, judicial economy is a relevant consideration in deciding a motion for permissive intervention." *Id.* at 531. In determining whether intervention is appropriate, courts are guided by practical and equitable considerations. *Donnelly*, 159 F.3d at 409. The court will consider each requirement or factor in turn.

The court first considers timeliness, which the Ninth Circuit Court of Appeals has indicated involves three considerations: (1) the stage of the proceedings, (2) whether the parties are prejudiced, and (3) the reason for the delay in moving to intervene. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 826 (9th Cir. 1996). Timeliness is analyzed more stringently where permissive intervention is sought rather than intervention as of right. *See League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citing *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir.1984)).

With respect to the stage of the proceedings, the court entered preliminary approval of the Consent Decree in September 2012, over one year ago, following a public hearing in August 2012. The Consent Decree requires the completion of a Monitoring Plan and sets out relevant deadlines. The court approved the Monitoring Plan on March 13, 2013, following a public hearing, on or about the same day the CPC members were confirmed. Obviously, the CPC could not have sought intervention prior to its members' confirmation. However, even considering this latter event as the trigger for timeliness, more than seven months lapsed before the CPC brought its motion to intervene.

More important than the delay itself, however, is the impact or prejudice the delay would have on the parties and the process if intervention is permitted.[4] The purpose of the CPC's motion to intervene is to modify deadlines the parties previously agreed upon and the court previously approved with respect to implementing the Monitoring Plan and Consent Decree.[5] (*See* Mot. to Intervene at 1 ("The [CPC] . . . moves . . . to intervene for

---

[4] The court's analysis of this aspect of timeliness overlaps its analysis of whether granting the CPC's motion will unduly delay the proceedings or prejudice the parties under Rule 24(b)(3), and therefore the court considers both simultaneously. *See* Fed. R. Civ. P. 24(b)(3).

[5] The CPC suggests that the underlying reason for its motion to intervene is irrelevant to the court's analysis concerning delay because the CPC's intervention itself, considered separately from its motion to modify deadlines, "will not delay anything." (Intervention Reply at 6.) The court recognizes that at certain points in its papers the CPC appears to be seeking a broad or more generalized intervention in these proceedings. (*See* 11/18/13 Daugaard Decl. (Dkt. # 105) ¶ 4 ("[T]he CPC is amenable to any reasonable formal arrangement for access to the Court . . . ."); *id.* ("[T]he CPC has reached out to the [United States] to explore alternative formal channels for the CPC to communicate directly with the [c]ourt in this litigation . . . .").) However, in its motion and reply memorandum, the CPC specifically limits its motion to intervene to the narrow purpose of presenting its present motion to amend certain deadlines in Appendix A and the MOU. (*See* Mot. to Intervene at 2 ("CPC seeks leave to intervene for the limited purpose of filing a motion identifying the deadlines it believes should be extended and

the purpose of proposing modifications to deadlines in Appendix A . . . and the [MOU].").) The specific deadlines that the CPC seeks to modify are related to the first step in the reform process: the completion of policies. Delaying the completion of policies will in turn delay training on and implementation of the policies and, ultimately, implementation of reform to a significant degree. The parties, the Monitor, and the SPD have relied upon the existing deadlines in planning for implementation of the Monitoring Plan and Consent Decree, preparing budgets, retaining consultants, and other matters. Delaying these initial deadlines at this late date risks an adverse cascading effect throughout the process of implementing reform. Had the CPC's request for a delay come earlier in the process—even by a few months—the parties might have had more time to prepare in terms of planning, budgets, and personnel or consultant retention, which might have mitigated any prejudice caused by the delay. At this late date, however, the adverse impacts on the process are magnified, and thus this factor weighs against granting the motion.

Finally, the court considers the CPC's reason for the delay in moving to intervene. The CPC states that its October 24, 2013, motion to intervene was prompted by the court's September 16, 2013, order directing the CPC and the City to identify deadlines it believed should be modified and, therefore, "[i]t is difficult to conceive of a motion that could be more _timely_." (9/16/13 Order (Dkt. # 88) at 2 (underlining in original).) The

---

setting forth the reasoning for those proposed modifications."); Intervention Reply at 2.) If so, then the purpose behind the motion for limited intervention would certainly be relevant to court's analysis of delay.

ORDER- 8

court, however, did not require the CPC to move to intervene or to independently move to alter any deadlines. Rather, in response to a motion by the United States, the court directed the CPC and the City to identify any deadlines in Appendix A that they believed should be modified and "to provide this information and reasoning to the parities and the Monitor." (*Id.*) In addition, nothing in these proceedings prevented the CPC, following its inception in mid-March 2013, from moving to intervene earlier in the process.

Based on the court's analysis of the foregoing "timeliness" factors, the court concludes that the CPC's motion to intervene is untimely.[6] Because timeliness is a threshold issue for intervention, *see United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990), the court may deny the CPC's motion on this ground alone. *See* Fed. R. Civ. P. 24. However, analysis of other relevant issues also supports the court's denial of the CPC's motion for permissive intervention.

---

[6] In its reply memorandum, the CPC states that "it was the understanding of the parties (through communications from the Monitor) that the [c]ourt wished to have the requests for deadline extensions made by motion, and that it would entertain a motion by the CPC to intervene for the limited purpose of making such a filing." (Intervention Reply (Dkt. # 104) at 2.) The CPC implies in its motion papers that this direction to follow the court's procedural rules somehow predisposed the outcome of its motion to intervene. (*See, e.g.*, 11/18/13 Daugaard ¶ 6 ("Should the [c]ourt revise its direction to the CPC regarding limited intervention and deny the CPC's present motion, we respectfully request that the [c]ourt convene a status conference at which the CPC may present the barriers we confront in the absence of a formal avenue of access to the [c]ourt.").) All requests for relief with respect to this litigation from the parties or their affiliates must be on the record and therefore made by motion. As the CPC itself acknowledges, the Federal Rules of Civil Procedure require that "a request for a court order must be made by motion." (*Id.* (citing Fed. R. Civ. P. 7(b)).) For the CPC to bring such a motion, it must first seek leave to intervene under Federal Rule of Civil Procedure 24. *See* Fed. R. Civ. P. 24. That the court would require its ordinary rules and procedures to be followed by all persons or entities appearing before it, however, does not in any way predispose the outcome of any such motion.

ORDER- 9

First, the court concludes that the CPC's interests are adequately represented in this litigation without formal intervention.  The CPC asserts that, due to its "unique role" under the Consent Decree, which is distinct from the role of either the City or the United States, neither party adequately represents its interests here.  (Intervention Reply at 4-5.)  The argument that the CPC has a unique role under the Consent Decree, however, cuts both ways.  The CPC, as an entity, was initially imagined by and created through the Consent Decree as a tool to aid the parties in effectively implementing reform.  (*See* Settlement Agreement and Stip. Order of Resolution (Dkt. # 3-1) ¶¶ 3-12, *as modified and approved by* 9/21/12 Order (Dkt. # 13).)  The Consent Decree directed the City to engage in the necessary formalities to create the CPC.  Thus, without the parties' agreement in and the court's approval of the Consent Decree, the CPC would not exist.  (*See id.*)  The "unique role" of the CPC, as an aid in implementing the Consent Decree, is therefore defined by that document.  The Consent Decree does not provide for the CPC to exercise party status in this litigation.  (*See id.*)  Its role is indeed distinct from that of the parties, and it is not one.

In any event, the court concludes that the interests of the CPC are adequately represented here.  Like the community groups who sued to intervene with respect to the Consent Decree between the United States and the City of Los Angeles regarding unconstitutional police practices in that city, no aspect of the current litigation prevents the CPC from continuing to work on police reform.  *See United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002).  Indeed, as noted above, it is because of the

litigation herein and Consent Decree that is an outgrowth of that litigation that the CPC exists as an entity to pursue its laudable goals.

More importantly, the CPC fails to "overcome the presumption that the United States, as a government litigant, is adequately protecting [its] interests." *See City of L.A.*, 288 F.3d at 402; *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009*)* ("Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary.") (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003)). The CPC acknowledges that its ultimate objective—constitutional and effective policing—is shared by the United States. (*Id.* at 5.)

Further, the fact that the United States and the CPC have distinct roles in the process of accomplishing the goal of constitutional and effective policing, or that the CPC, the City, and the United States have divergent views with respect to the deadlines set forth in Appendix A or the MOU, does not mean that the CPC's interests are inadequately represented. Where the parties' overall goals are the same, divergent strategies in accomplishing those goals is not tantamount to a divergence of interests. *See Perry*, 587 F.3d at 949 ("Divergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit."). Although the United States opposes some, but not all, of the deadline extensions proposed by the CPC, it nevertheless expressly asked the court to consider the CPC's positions. The United States made this request despite the fact that it opposes the CPC's formal intervention in this proceeding.

ORDER- 11

Further, although the City also presents a different view with respect to the deadlines at issue herein, the City nevertheless provided representation to the CPC through the City's Attorney's Office. Finally, just as the parties and other interested entities have access to the Monitor in this litigation, so too does the CPC. (Consent Decree ¶ 192 ("The Monitor may periodically meet with the [CPC] and/or other interested community stakeholders to discuss the Monitor's reports, and to receive community feedback about SPD's progress and/or compliance with the [Consent Decree].").) Under the Consent Decree, the Monitor serves as an agent of the court for purposes of assessing the City's compliance herein. (*See* 9/21/13 Order (Dkt. # 13) at 2 (¶ 172).) The CPC may express any concerns that it has about implementation of the Monitoring Plan or, more broadly, the Consent Decree to the Monitor. Under the circumstances described above, the CPC's interests are adequately represented herein.

      Finally, the court considers whether permitting the CPC to intervene will significantly contribute to the just and equitable adjudication of the legal issues presented or impact judicial economy. The Consent Decree expressly sets forth a role for the CPC in furthering the process of reform. As the court has previously expressed during public hearings, the CPC's role is significant and central to the goal of attaining constitutional and effective policing in the City. That role, however, need not be coterminous with the role of a party litigant. Indeed, as the CPC has repeatedly noted, its role under the Consent Decree is distinct from that of the parties herein. Because, as discussed above, the CPC has already been granted a defined and robust role in the process of reform, permitting formal intervention in the legal proceedings will not "significantly contribute"

to the adjudication of any remaining issues herein. *See Spangler v. Pasadena Bd. of Educ.*, 552 F.2d at 1329. It does, however, threaten to have an adverse impact on judicial economy. Indeed, as discussed more fully below, the CPC's attempts to expand its role beyond the one described in the Consent Decree and related documents already threatens to slow the process of reform and full implementation of the Consent Decree. Thus, permitting intervention would likely result in undue delay without a corresponding benefit to existing litigants, the court, or the process of reform because the existing parties are zealously pursuing the same ultimate objectives as the CPC. Based on the foregoing, the court DENIES the CPC's motion to intervene.

The court, nevertheless, emphasizes that it values the role carved out for the CPC in the Consent Decree and wants to hear its views on issues raised by the parties herein. Therefore, the court will grant the CPC amicus curiae status in this litigation. *See, e.g.*, *United States v. State of Washington*, 86 F.3d 1499, 1502, 1507 (9th Cir. 1996) (noting the district court's grant of amicus status following denial of motion to intervene); *United States v. Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (same); *see also Francis v. Chamber of Commerce*, 481 F.2d 192, 194-96 (4th Cir. 1973) (affirming district court's decision to deny a motion to intervene and instead permit the would-be intervenor to file an amicus brief). In the future, as amicus curiae, the CPC may not file motions independently with the court, but may file memoranda commenting on any issue or motion raised by the

parties in court proceedings.[7] "While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation." *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013). The court anticipates that the CPC will make such contributions in its new role as amici curiae.

### B. Motions to Extend Deadlines

Both the City and the CPC have moved to extend certain deadlines contained within Appendix A and the MOU. (*See generally* CPC's Mot.; City's Mot.) Despite the fact that the United States opposed the CPC's motion to intervene and only supports the CPC's requests for deadline extensions in part, the United States has urged the court to consider the CPC's requests for deadline extensions (Resp. at 14), and the City has not objected. Based on this request and the CPC's new position as amicus curiae, the court considers both the City's and the CPC's positions with respect to deadlines extensions.

The court notes that the process of reform is complex, involving many overlapping issues, and requiring coordination among a variety of entities and individuals. Moving just one deadline can have a cascading and delaying effect on the entire process. On occasion, such adjustments may be necessary. The court, however, will not alter deadlines, previously agreed to by the parties and approved by the court, lightly or absent good cause.

### 1. The Final Draft Deadline for Bias Free Policing and Stops and Detentions Policies: The City and the CPC request a 45-day extension to this deadline from

---

[7] In addition, the CPC may not participate in oral argument without prior permission from the court.

November 16 to December 31, 2013.  (City Mot. at 2; CPC Mot. at 2; 11/18/13 Daugaard Decl. (Dkt. # 103) ¶¶ 4-6.)  The United States asserts that this 45-day extension would necessitate an accompanying delay in the "compliance deadline," such that the policies could not be published or begin to be implemented until mid-February, 2014.  (Resp. at 14.)  The United States offers a compromise position by proposing a shorter extension of the final draft deadline to from November 16 to November 30, 2013, along with an accompanying reduction in the 45-day "meet and confer" period to 30 days.  This compromise would permit the final "compliance deadline" to remain on December 31, 2013.  The court agrees that the United States' approach is reasonable and more appropriately balances the need for additional time requested by the CPC and the City with the parties' interests in continuing to move reform forward.  The court, therefore, grants in part and denies in part the City's and the CPC's requests for an extension by adopting the United States' compromise position with respect to the foregoing deadlines.

**2. The Initial Draft Deadline of Crisis Intervention ("CI") Training Curriculum:**  The City requested a three-month extension in this deadline, from December 31, 2013 to March 16, 2014, in order to allow the CI policy (on which training is based) to be completed prior to development of the training curriculum.  (City's Mot. at 2-3.)  The United States joins this request. (Resp. at 15.)  Accordingly, the court grants this aspect of the City's motion and extends this deadline from December 31, 2013, to March 16, 2014.  As a result of this extension, the court also grants an extension of the deadline to provide a "final" draft to the Monitor to May 15, 2014, and grants an extension of the final "compliance deadline" to June 30, 2014.

**3. The Initial Draft Deadline for Use of Force Training Curricula:** The CPC requests a 31-day extension to this deadline, from December 31, 2013, to January 31, 2014. (*See* CPC Mot. at 2; 11/18/13 Daugaard Decl. ¶ 7.) The United States objects to this request. (Resp. at 15.) The United States argues that SPD, upon which the burden of this deadline falls, has not indicated that it cannot comply. (*Id.*) More importantly, there is still sufficient time for a collaborative process and CPC input into that process. The December 31, 2013, date is simply a deadline to produce an initial draft for the purpose of collaborative discussions. (*Id.*) The deadline for the City to provide a final draft to the Monitor is not until March 16, 2014, which then triggers a 45-day meet and confer period. (*Id.*) Under the current schedule the use of force training curricula would not be complete until April 30, 2014. (*Id.*) The court considers the current deadlines to be sufficient for a robust collaborative process.

Further, although the CPC has indicated that it would like to review and provide comments to the training curricula, these duties are not specified for the CPC in the Consent Decree. (*See id.*) Although the parties have indicated no objection to the CPC undertaking this added role, the court is unwilling to alter deadlines the parties and the court have previously established to accommodate this additional, voluntary role by the CPC. Accordingly, the court denies this requested extension.

**4. Deadlines Related to the Early Intervention System ("EIS"):** The CPC requests a 60-day extension to this deadline, from January 15, 2014, to March 16, 2014. (CPC Mot. at 2; 11/18/13 Daugaard Decl. ¶¶ 8-9.) The United States objects. (Resp. at 15.) The SPD delivered the first draft of the EIS on September 30, 2013. (*Id.*) The

parties will work collaboratively to present a final draft to the Monitor by January 15, 2014. (*Id.*) This then triggers a 45-day review period for the Monitor to formally comment on the final draft by March 1, 2014. (*Id.*) The court, therefore, considers the current deadlines to provide sufficient time for meaningful community comment without unduly disrupting the deadlines previously established by the parties and the court.

Further, review of the EIS is not one of the CPC duties enumerated in the Consent Decree. In early 2014, the CPC will be reviewing policy or training related to (1) use of force, (2) biased policing, (3) *Terry* stops, and (4) CI. (*Id.*) In addition, the CPC will be considering revisions to SPD's accountability system and assessing SPD's community engagement. (*Id.*) The court is mindful of CPC's volunteer composition, and the volume of work it has been assigned. Although the parties have not objected to the CPC's review of the EIS, the court agrees with the United States that the CPC's assigned duties should remain paramount. The court is unwilling to modify the schedule previously established to accommodate the CPC's desire to take on additional roles, particularly in light of the fact that the CPC has indicated that it is already stretched with respect to its expressly assigned roles. (*See* 10/31/ Daugaard Decl. (Dkt. # 91-2) Ex. A at 2 ("We . . . are all meeting for 10-20 hours per month in regular CPC meetings and workgroups, and . . . are devoting many more hours to an extensive community engagement process . . . to inform the CPC position on pending policy revisions in the areas of use of force, stops and detentions, and bias free policing.").) Such an extension is not in the best interests of reform. The court, therefore, denies the CPC's request.

ORDER- 17

**5. The Initial Draft Deadline for the Office of Police Accountability ("OPA") Policy Manual:** The CPC requests a 90-day extension to this deadline, from December 31, 2013 to March 31, 2014. (CPC Mot. at 2; 11/18/13 Daugaard Decl. at ¶ 10.) The United States objects to this requested extension. (Resp. at 16.) The OPA Director has not indicated that he cannot comply with the current deadline and has not requested an extension. (*See id.*) In contrast to delaying a final draft, delaying an initial draft also delays all discussions on that topic among the various entities. Once the initial draft is presented, the parties have over five months to collaborate on a 'final' draft, which in turn is presented to the Monitor. (*Id.*) The Monitor then has an additional 45-day period to provide comments, with compliance due by June 30, 2014. (*Id.*) Thus, the City has time to include the CPC prior to the December 31, 2013, initial draft deadline. In addition, the United States has stated that it "would welcome [the CPC's] input during the period between December 31, 2013, and May 16, 2014, when the 'final' documents are due to the Monitor." (*Id.*) Accordingly, the court considers the present deadlines to be sufficient and denies the CPC's request to extend this deadline.

**6. The CPC's Deadline for Assessment of SPD's Community Outreach Efforts:** The CPC has requested an over 120-day extension to this deadline from March 13, 2014, to July 31, 2014. (CPC Mot. at 2; 11/18/13 Daugaard Decl. ¶ 11.) The United States offers a compromise position. (Resp. at 16.) The United States suggests that the CPC provide an initial assessment by the current deadline of March 13, 2014, and a more comprehensive follow-up assessment by July 31, 2014. (*Id.*) The court agrees that this is a reasonable compromise that will both safeguard the CPC's "vital role" in "ensuring that

SPD creates and maintains effective, and broad connections to the community" (Resp. at 16), while ensuring that the process of reform continues to move forward at a measured and reasonable pace. The court, therefore, grants in part and denies in part the CPC's request, and adopts the United States' compromise position with respect to this deadline.

## IV.  CONCLUSION

Based on the foregoing, the court DENIES CPC's motion to intervene (Dkt. # 90), but GRANTS the CPC amicus curiae status as described above. In addition, the court GRANTS in part and DENIES in part the CPC's and the City's motions to extend certain deadlines in Appendix A and the MOU (Dkt. ## 91, 92) as described above.

Dated this 26th day of November, 2013.

JAMES L. ROBART
United States District Judge