THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>          Plaintiff,<br><br>vs.<br><br>CITY OF SEATTLE<br><br>          Defendant. | CASE NO. C12-1282JLR<br><br>**MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE DEPARTMENT POLICIES** AND ORDER APPROVING SAME  |

     The Monitor hereby submits proposed Seattle Police Department ("SPD") policies on *Terry* stops and bias-free policing. All parties and the Monitor concur that the policies comply with the requirements of the Consent Decree. The policies will guard against the risk of discriminatory policing, as well as stops and searches, without the requisite reasonable suspicion or probable cause. The Parties and the Monitor respectfully request this Court's approval of these policies.

     Importantly, the policies call for the collection of data from which assessments can be made as to the existence of discriminatory policing or disparate impact. The data collected will also include the specific reasons in a narrative form as to why a police officer decided to stop or

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

search. The data will be collected in a relational database that will ultimately permit supervisors and managers to compare officer- to- officer performance, shift to shift, and precinct to precinct. The parties and the Monitor have committed to confer and add any additional data points by the Monitor's birthday on February 17, 2014.

These policies have been posted on the Monitor's website for review and comment by the public. Additionally, among other individuals and organizations, the Community Police Commission ("CPC")—which received the draft policies in May 2013 but did not provide final comments and suggestions until a few days before Christmas—met with the parties.

Finally, the Monitor and the Monitoring Team actively evaluated and considered these important policies. The Monitor and Monitoring Team researched and critiqued similar policies in place elsewhere, as well as model policies by leading police organizations and academicians. As we did with the respect to the use of force policies, we reached out to community representatives and civil rights, civil liberties, and grassroots organizations. The Monitor and the Monitoring Team considered at length whether these new policies dealing with stop and frisk and discriminatory policing will increase community trust and public confidence in the police. We determined that they would.

## I.    *Terry* Stops

Among the highlights of the new policy and the areas in which Consent Decree provisions open new ground are the following:

Under the new policy, a Seattle police officer must have a reasonable suspicion that a crime has or is about to occur before stopping a pedestrian or driver. Reasonable suspicion must be documented using specific articulable facts. (Policy 6.220-1.)

MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE
DEPARTMENT POLICIES - 2
Case No.  C12-1282JLR

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

Not every reasonable suspicion of a crime may legitimately lead to a stop. For example, a reasonable suspicion of misdemeanors may not give rise to a stop unless the suspect's conduct itself poses a public safety risk or has the potential to escalate. (Policy 6.220-3.)

During a *Terry* Stop, officers will limit the seizure to a reasonable scope. Actions that would indicate to a reasonable person that they are being arrested or indefinitely detained may convert a *Terry* stop into an arrest requiring probable cause or an arrest warrant. Unless justified by the articulable reasons for the original stop, officers must have additional articulable justification for further limiting a person's freedom during a *Terry* stop, such as:

- Taking a subject's identification or driver license away from the immediate vicinity

- Ordering a motorist to exit a vehicle

- Putting a pedestrian up against a wall

- Directing a person to stand or remain standing, or to sit on a patrol car bumper or any other place not of their choosing

- Directing a person to lie or sit on the ground

- Applying handcuffs

- Transporting any distance away from the scene of the initial stop, including for the purpose of witness identification

- Placing a subject into a police vehicle

- Pointing a firearm

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

- Frisking for weapons

- De minimis force

(Policy 6.220-4.)

The policy specifically provides that merely because a *Terry* stop occurs in a high-crime area is not by itself sufficient to justify a frisk. A frisk is not a generalized search of the entire person. The decision to conduct a frisk or pat-down is based upon the totality of the circumstances and the reasonable conclusions drawn from the officer's training and experience. The frisk for weapons is strictly limited to what is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Generally, the frisk must be limited to a pat-down of outer clothing. Once the officer ascertains that no weapon is present, the officer's limited authority to frisk must stop. (Policy 6.220-8.)

Under Washington state law, traffic violations may not be used as a pretext to investigate unrelated crimes for which the officer lacks reasonable suspicion. Pretext is stopping a suspect for an infraction to investigate criminal activity for which the officer has neither reasonable suspicion nor probable cause. The Washington State Constitution forbids use of pretext as a justification for a warrantless search or seizure. Officers must actually, consciously, and independently determine that a traffic stop is reasonably necessary in order to address a suspected traffic infraction. (Policy 6.220-9.)

Officers must be able to clearly articulate the objective facts they rely upon in determining reasonable suspicion. Officers must document all *Terry* stops and have a supervisor approve the documentation before they leave at the end of their shift. The data will be collected in an electronic form suitable for analysis. The documentation must contain at least the following elements:

MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE
DEPARTMENT POLICIES - 4
Case No.  C12-1282JLR

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

- Original and subsequent objective facts for the stop or detention

- The reason (including reasonable suspicion or probable cause) and disposition of the stop (including whether an arrest resulted; whether a frisk or search was conducted and the result of the frisk or search; and whether the subject was moved or transported from the location of the initial stop)

- Demographic information pertaining to the subject, including perceived race, perceived age, perceived ethnicity and perceived gender.

As noted above, the Parties and Monitor will continue to confer about the full scope of the data to be collected on *Terry* stops. A more comprehensive list of data to be collected will be completed by February 17, 2014.

A supervisor shall approve the documentation of *Terry* stops. Absent extenuating circumstances, by the end of each shift, supervisors will review their officers' reports that document the *Terry* stops made during the shift to determine if they were supported by reasonable suspicion and are consistent with SPD policy, federal, and state law. (Policy 6.220-10, 11.)

## II.    Bias-Free Policing

The Parties negotiated at length, in meetings facilitated by the Monitor and the Monitoring Team, to determine how best to encapsulate in policy the concerns about possible discriminatory or biased policing described in the Department of Justice's Findings Letter and in the Consent Decree. The policies described below define expansively on persons and characteristics which may not be discriminated against.

Bias-based policing is the different treatment of any person by officers motivated by any characteristic of protected classes under state, federal, and local laws as well other discernible

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

personal characteristics of an individual.  Such "discernible personal characteristics" include, but are not limited to, the following:

- Age
- Disability status
- Economic status
- Familial status
- Gender
- Gender Identity
- Homelessness
- Mental illness
- National origin
- Political ideology
- Race, ethnicity, or color
- Religion
- Sexual Orientation
- Status as a veteran

(Policy 5.140.)

Employees shall not make decisions or take actions that are influenced by bias, prejudice, or discriminatory intent.  Law enforcement and investigative decisions must be based upon observable behavior or specific intelligence.  Officers may not use discernible personal characteristics in determining reasonable suspicion or probable cause, except as part of a suspect description.  Employees shall not express—verbally, in writing, or by other gesture—any prejudice or derogatory comments concerning discernible personal characteristics.  Employees

MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE
DEPARTMENT POLICIES - 6
Case No.  C12-1282JLR

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

who engage in, ignore, or condone bias-based policing will be subject to discipline.  Supervisors and commanders who fail to respond to, document and review allegations of bias-based policing will be subject to discipline.  (Policy 5.140-2.)

The policies place responsibility and accountability not only on the officer who engages in discriminatory policing but also on supervisors, managers, and executives:

> Employees who have observed or are aware of others who have engaged in bias-based policing shall specifically report such incidents to a supervisor, providing all information known to them, before the end of the shift during which they make the observation or become aware of the incident.  Supervisors, commanders and civilian managers have an individual obligation to ensure the timely and complete review and documentation of all allegations of violation of this policy that are referred to them or of which they should reasonably be aware.

(Policy 5.140-4.)

An officer or other SPD employee who hears a complaint of discriminatory policing must call a supervisor to the scene to review the circumstances and determine the appropriate course of action.  Policy 5.140-5  The officer must fully document the encounter and collect identifying information from the complainant.  (Policy 5.140-6.)

The new SPD policies are distinctive in their approach to disparate impact.  These policies are noteworthy for the lack of rigidity or ideological bias:

> The Seattle Police Department is committed to eliminating policies and practices that have an unwarranted disparate impact on certain protected classes.  It is possible that the long term impacts of historical inequality and institutional bias could result in disproportionate enforcement, even in the absence of intentional bias.  The Department's policy is to identify ways to protect public safety and public order without engaging in unwarranted or unnecessary disproportionate enforcement.
>
> This policy requires periodic analysis of data which will assist in identification of SPD practices – including stops, citations and arrests – that may have a disparate impact on particular protected classes relative to the general population.
> When disparate impacts are identified, the Department will consult as appropriate with neighborhood, business and community groups ... to explore equally effective alternative practices that would result in less disproportionate impact.

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

Alternative enforcement practices may include addressing the targeted behavior in a different way, de-emphasizing the practice in question or other measures. Initially, disparate impact analysis will focus on race, color, and national origin.

(Policy 5.140-9.)

### III. Conclusion

The task of the Monitor was to duly consider if the proposed SPD policies on *Terry* stops and bias-free policing policies embody the requirements of the Consent Decree. The Monitor and the Monitoring Team have determined that the proposed SPD *Terry* stops and bias-free policing policies do so. Accordingly, the Monitor respectfully requests that this Court accept these policies and order them effective forth with.

DATED this 31st day of December, 2013.

_____

Merrick J. Bobb, Monitor

The Court hereby approves the consensus SPD Policies filed herewith as Exhibits A and B and orders them effective forth with.

DONE IN OPEN COURT this 17th day of January, 2014.

_____

THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

1

**CERTIFICATE OF SERVICE**

2

I certify that on the 31ST day of December, 2013, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

4

the following attorneys of record:

5

6
| J. Michael Diaz | michael.diaz@usdoj.gov |

7
Jenny A. Durkan           jenny.a.durkan@usdoj.gov

Jonathan Smith            jonathan.smith2@usdoj.gov

8
Kerry Jane Keefe          kerry.keefe@usdoj.gov

9
Michael Johnson Songer    michael.songer@usdoj.gov

10
Rebecca Shapiro Cohen      rebecca.cohen@usdoj.gov

11
Emily A. Gunston          emily.gunston@usdoj.gov

Timothy D. Mygatt         timothy.mygatt@usdoj.gov

12
Jean M. Boler             jean.boler@seattle.gov

13
Peter Samuel Holmes       peter.holmes@seattle.gov

14
Brian G. Maxey            brian.maxey@seattle.gov

Sarah K. Morehead         sarah.morehead@seattle.gov

15
Gregory C. Narver         gregory.narver@seattle.gov

16
John B. Schochet          john.schochet@seattle.gov

17

18

DATED this 31ST day of December, 2013.

19

20

*/s/ Carole Corona*
Carole Corona

21

22

23

24

25

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

# EXHIBIT A

# Seattle Police Manual

# 6.220 – Voluntary Contacts & *Terry* Stops

Effective Date: TBD

### 6.220-POL

This policy applies to all voluntary contacts and *Terry* stops conducted by officers.

## 1. *Terry* Stops are Seizures and Must Be Based on Reasonable Suspicion in Order to be Lawful

A *Terry* stop must be based on reasonable suspicion and documented using specific articulable facts as described in this policy.

This policy prohibits *Terry* stops when an officer lacks reasonable suspicion that a subject has been, is, or is about to be engaged in the commission of a crime.

Searches and seizures by officers are lawful to the extent they meet the requirements of the 4th Amendment and Washington Constitution Art. 1, Section 7. [1] [2] [3]

A *Terry* stop is a seizure for investigative purposes.  A seizure occurs any time an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.  A seizure may also occur if an officer uses words, actions, or demeanor that would make a reasonable person believe that he or she is not free to go.

---

[1] See Terry v. Ohio, 392 U.S. 1 (1968).  (hyperlink)

[2] See Art. 1, Sec. 7. (hyperlink)

[3] See 4th Amendment (hyperlink)

## 2. Officers Must Distinguish Between Voluntary Contacts and *Terry* Stops

### a. Voluntary Contacts Defined

There are two categories of voluntary contacts:

- *Social Contact:* A voluntary, consensual encounter between the police and a subject with the intent of engaging in casual and/or non-investigative conversation. The subject is free to leave and/or decline any of the officer's requests at any point; **it is not a seizure.**

- *Non-Custodial Interview:* A voluntary and consensual investigatory interview that an officer conducts with a subject during which the subject is free to leave and/or decline any of the officer's requests at any point. **It is not a seizure.**

Voluntary contacts are not seizures. During voluntary contacts, officers must not use any words, actions, demeanor, or other show of authority that would tend to communicate that a person is not free to go.

### b. *Terry* Stops Defined

- *Terry Stop:* A brief, minimally intrusive seizure of a subject based upon articulable reasonable suspicion in order to investigate possible criminal activity. The stop can apply to people as well as to vehicles. The subject of a *Terry* stop is not free to leave. A *Terry* stop is a seizure under both the State and Federal constitutions.

  - *Reasonable Suspicion:* Specific, objective, articulable facts, which, taken together with rational inferences, would create a well-founded suspicion that there is a substantial possibility that a subject has engaged, is engaging or is about to engage

2

in criminal conduct.

- The reasonableness of the *Terry* stop is considered in view of the totality of the circumstances, the officer's training and experience, and what the officer knew before the stop.  Information learned during a stop can lead to additional reasonable suspicion or probable cause that a crime has occurred, but cannot provide the justification for the original stop.

A *Terry Stop* is a detention short of an arrest. All other detentions must be made pursuant to the policies for arrests without a warrant (6.010-Reporting Arrests and Detentions), warrant arrests, (6.280-Warrant Arrests), traffic stops (16.230-Issuing Tickets and Traffic Contact Reports), or seizure of a person for a psychological evaluation (16.110-Crisis Intervention).  (hyperlinks)

### 3. Officers May Conduct *Terry* Stops for Completed Misdemeanors Only Where There is a Risk to Public Safety

Where there is no probable cause for an arrest and only reasonable suspicion justifying a *Terry* stop, officers may make *Terry* stops for completed misdemeanor crimes only when there is an associated public safety risk.

A public safety risk may exist when:

- The misdemeanor crime *by itself* poses a public safety risk (e.g., Assault, Harassment, Reckless Endangerment, Riot, DUI, Reckless Driving, weapons offenses), or
- There is a likelihood that the suspect will repeat the misdemeanor offense, or

3

- There is a potential for escalating conduct (e.g., a violation of a court order, domestic violence misdemeanors, Menacing, Stalking)

## 4. During a *Terry* Stop, Officers Will Limit the Seizure to a Reasonable Scope

Actions that would indicate to a reasonable person that they are being arrested or indefinitely detained may convert a *Terry* stop into an arrest requiring probable cause or an arrest warrant.

Unless justified by the articulable reasons for the original stop, officers must have additional articulable justification for further limiting a person's freedom during a *Terry* stop, such as:

- Taking a subject's identification or driver license away from the immediate vicinity
- Ordering  a motorist to exit a vehicle
- Putting a pedestrian up against a wall
- Directing a person to stand or remain standing, or to sit on a patrol car bumper or any other place not of their choosing
- Directing a person to lie or sit on the ground
- Applying handcuffs
- Transporting any distance away from the scene of the initial stop, including for the purpose of witness identification
- Placing a subject into a police vehicle
- Pointing a firearm
- Frisking for weapons
- De minimis force

Taking any of these actions does not necessarily convert a *Terry* stop into an arrest.

4

## 5. During a *Terry* Stop, Officers Will Limit the Seizure to a Reasonable Amount of Time

Subjects may be seized for only that period of time necessary to effect the purpose of the stop.  Any delays in completing the necessary actions must be objectively reasonable.

Officers may not extend a detention solely to await the arrival of a supervisor.

## 6. During all *Terry* Stops, Officers Will Take Reasonable Steps to Be Courteous and Professional, Including Identifying Themselves

When reasonable, as early in the contact as safety permits, officers will inform the suspect of the following:

- The officer's name
- The officer's rank or title
- The fact that the officer is a Seattle Police Officer
- The reason for the stop
- That the stop is being recorded, if applicable (See Seattle Police Manual Section 16.090 – In-Car Video System)

When releasing a person at the end of a stop, officers will offer an explanation of the circumstances and reasons for the stop.

## 7. Officers Cannot Arrest Subjects Solely for Failure to Identify Themselves or Answer Questions on a *Terry* Stop

In general, subjects are not obligated to provide identification upon request and have the right to remain silent.  However, there are certain statutory

5

exceptions that do require the subject to identify himself or herself and which describe the officer's authority to take action if the person does not do so, such as:

- When the subject is a driver stopped for a traffic infraction investigation (RCW 46.61.021)

- When the subject is attempting to purchase liquor (RCW 66.20.180)

- When the subject is carrying a concealed pistol (RCW 9.41.050)

Officers may not transport a person to any police facility or jail merely for the purpose of identifying them unless they have probable cause.

## 8. Officers May Conduct a Frisk or Pat-Down of Stopped Subject(s) Only if They Reasonably Suspect That the Subject(s) May Be Armed *and* Presently Dangerous

The purpose and scope of the frisk or pat-down is to discover weapons or other items which pose a danger to the officer or those nearby. It is not a generalized search of the entire person. The decision to conduct a frisk or pat-down is based upon the totality of the circumstances and the reasonable conclusions drawn from the officer's training and experience.

- A weapons frisk is a limited search determined by the state and federal constitutions.
- All consent searches must be conducted and memorialized pursuant to Manual Section 6.180.
- Officers may not frisk for weapons on a social contact or noncustodial interview.
- A frisk or pat down may not be used as a pretext to search for incriminating evidence.

6

- The fact that a *Terry* stop occurs in a high-crime area is not by itself sufficient to justify a frisk.

In addition to the basis for the stop itself, the officer must have reasonable suspicion that the subject may be armed and pose a threat to the officer and/or others. This may include, but is not limited to:

- Prior knowledge that the subject carries a weapon
- Suspicious behavior, such as failure to comply with instructions to keep hands in sight
- Observations, such as suspicious bulges, consistent with carrying a concealed weapon

The frisk for weapons is strictly limited to what is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Generally, the frisk must be limited to a pat-down of outer clothing. Once the officer ascertains that no weapon is present after the frisk or pat-down is completed, the officer's limited authority to frisk is completed. (i.e. the frisk must stop).

## 9. Under State Law, Traffic Violations May Not Be Used as a Pretext to Investigate Unrelated Crimes for Which the Officer Lacks Reasonable Suspicion

- Pretext is stopping a suspect for an infraction to investigate criminal activity for which the officer has neither reasonable suspicion nor probable cause.
- The Washington State Constitution forbids use of pretext as a justification for a warrantless search or seizure.
- Officers must actually, consciously, and independently determine that a traffic stop is reasonably necessary in order to address a suspected traffic infraction.
- Reasonableness of the stop is based on an objective view of all the facts, not the officer's subjective belief.

7

## 10.  Officers Must Document All *Terry* Stops

Officers must be able to clearly articulate the objective facts they rely upon in determining reasonable suspicion.

Officers must document all *Terry* stops and have a supervisor approve the documentation before they leave at the end of their shift.  The data will be collected in an electronic form suitable for analysis.  The documentation must contain at least the following elements:

- Original and subsequent objective facts for the stop or detention
- The reason (including reasonable suspicion or probable cause) and disposition of the stop (including whether an arrest resulted; whether a frisk or search was conducted and the result of the frisk or search; and whether the subject was moved or transported from the location of the initial stop)
- Demographic information pertaining to the subject, including perceived race, perceived age, perceived ethnicity and perceived gender; and
- Delays in completing necessary actions

## 11. Supervisors Shall Approve the Documentation of *Terry* Stops

Absent extenuating circumstances, by the end of each shift, supervisors will review their officers' reports that document the *Terry* stops made during the shift to determine if they were supported by reasonable suspicion and are consistent with SPD policy, federal and state law.

If the *Terry* stops reviewed appear not to be supported by reasonable suspicion or are not consistent with SPD policy, federal and state law, the supervisor, in consultation with the watch commander, shall document and establish a strategy to remediate the situation.  If a supervisor finds the documentation to be inaccurate or insufficient, that supervisor first shall require that the officer supplement the documentation before the end of

8

that shift.  The supervisor will also determine if the incident requires referral to OPA.

# EXHIBIT B

# Seattle Police Manual

# 5.140 – Bias-Free Policing

Effective Date:  TBD

## 5.140-POL

The Seattle Police Department is committed to providing services and enforcing laws in a professional, nondiscriminatory, fair, and equitable manner.

Our objective is to provide equitable police services based upon the needs of the people we encounter.

The intent of this policy is to increase the Department's effectiveness as a law enforcement agency and to build mutual trust and respect with Seattle's diverse groups and communities.

Bias-based policing is the different treatment of any person by officers motivated by any characteristic of protected classes under state, federal, and local laws as well other discernible personal characteristics of an individual. Such "discernible personal characteristics" include, but are not limited to, the following:

- Age
- Disability status
- Economic status
- Familial status
- Gender
- Gender Identity
- Homelessness
- Mental illness
- National origin
- Political ideology
- Race, ethnicity, or color
- Religion

- Sexual orientation
- Use of a motorcycle or motorcycle-related paraphernalia – RCW 43.101.419
- Veteran status

## 1. Every Employee is Responsible for Knowing and Complying With This Policy

The Chief of Police will reinforce that bias-based policing is unacceptable through specific yearly training, regular updates, and such other means as may be appropriate.

Supervisors are responsible for ensuring all personnel in their command are operating in compliance with this policy.

## 2. Officers Will Not Engage in Bias-Based Policing

Employees shall not make decisions or take actions that are influenced by bias, prejudice, or discriminatory intent.  Law enforcement and investigative decisions must be based upon observable behavior or specific intelligence.

Officers may not use discernible personal characteristics in determining reasonable suspicion or probable cause, except as part of a suspect description.

Employees shall not express—verbally, in writing, or by other gesture—any prejudice or derogatory comments concerning discernible personal characteristics.

No employee shall retaliate against any person who initiates or provides information or testimony related to an investigation, prosecution, OPA complaint, litigation or hearings related to the

Department or Departmental employees, regardless of the context in which the complaint is made, or because of such person's participation in the complaint process as a victim, witness, investigator, decision-maker or reviewer.

Employees who engage in, ignore, or condone bias-based policing will be subject to discipline.

Supervisors and commanders who fail to respond to, document and review allegations of bias-based policing will be subject to discipline.

## 3. The Characteristics of an Individual May Be Appropriately Considered in Limited Circumstances

Officers may take into account the discernible personal characteristics of an individual in establishing reasonable suspicion or probable cause only when the characteristic is part of a specific suspect description based on trustworthy and relevant information that links a specific person to a particular unlawful incident.

Officers must articulate specific facts and circumstances that support their use of such characteristics in establishing reasonable suspicion or probable cause.

Officers are expected to consider relevant personal characteristics of an individual when determining whether to provide services designed for individuals with those characteristics (e.g., behavioral crisis, homelessness, addictions, etc.).

## 4.  All Employees Share Responsibility for Preventing Bias-Based Policing

Employees who have observed or are aware of others who have engaged in bias-based policing shall specifically report such incidents to a supervisor, providing all information known to them, before the end of the shift during which they make the observation or become aware of the incident.

Supervisors, commanders and civilian managers have an individual obligation to ensure the timely and complete review and documentation of all allegations of violation of this policy that are referred to them or of which they should reasonably be aware.

## 5.  Employees Will Call a Supervisor in Response to Complaints

If a person complains of bias-based policing, the employee shall call a supervisor to the scene to review the circumstances and determine an appropriate course of action.  For purposes of this policy, a complaint of bias-based policing occurs whenever, from the perspective of a reasonable officer, a subject complains that he or she has received different treatment from an officer because of any discernible personal characteristic listed above.

If the person declines to speak with a supervisor or wishes to leave before the supervisor arrives, the employee will attempt to offer the person the supervisor's contact information and information on how to file a complaint with the Office of Professional Accountability.

Officers may not extend a detention solely to await the arrival of a supervisor.

If officers have completed their business with the complainant, and the supervisor has not yet arrived, the officer will wait at the location for the supervisor to arrive.

## 6.   Employees Will Document All Allegations of Bias-Based Policing

Where there has been a complaint of bias-based policing, the employee will complete a GO report to document the circumstances of the complaint and steps that were taken to resolve it. This GO must include the following information, if the person is willing to provide it:

- The person's name,
- Address,
- Phone number, or email address, and
- Contact information for witnesses who observed the events.

All reports involving a complaint of bias-based policing must be reviewed and approved by a supervisor before the end of the employee's shift.

If the supervisor believes the matter has been resolved to the satisfaction of the complainant, and that no misconduct was involved, the supervisor will draft a supplemental to the employee's GO report to-document their actions in the inquiry.  The supervisor will then send a memo with the report attached, via the chain of command, to the bureau chief.

## 7.  Supervisors Conduct Preliminary Inquiry into Bias

If the person wishes to speak with the supervisor about the biased-policing concerns, the supervisor will discuss the incident with the complainant. If the complainant has left the scene the supervisor shall make efforts to contact the complainant by phone or letter.

The reviewing supervisor shall explain to the complainant the option to refer the complaint to OPA.  If the complainant asks that the matter be referred to OPA then the reviewing supervisor shall refer it.

If the reviewing or approving supervisor determines that there may have been misconduct, that supervisor shall refer the matter to OPA for further investigation.

## 8.  An Annual Report Will be Prepared for the Chief of Police and the Public

This report shall describe and analyze the year's bias-based policing complaints and the status of the Department's effort to prevent bias-based policing.

After review by the SPD command staff, and after names of individual officers have been removed, this report will be made available to the community.

## 9. Disparate Impacts

The Seattle Police Department is committed to eliminating policies and practices that have an unwarranted disparate impact on certain protected classes. It is possible that the long term impacts of historical inequality and institutional bias could result in disproportionate enforcement, even in the absence of intentional bias. The Department's policy is to identify ways to protect public safety and public order without engaging in unwarranted or unnecessary disproportionate enforcement.

This policy requires periodic analysis of data which will assist in identification of SPD practices – including stops, citations and arrests – that may have a disparate impact on particular protected classes relative to the general population.

When disparate impacts are identified, the Department will consult as appropriate with neighborhood, business and community groups, including the Community Police Commission, to explore equally effective alternative practices that would result in less disproportionate impact. Alternative enforcement practices may include addressing the targeted behavior in a different way, de-emphasizing the practice in question or other measures. Initially, disparate impact analysis will focus on race, color, and national origin. The Department will consult with the Community Police Commission about whether to examine disparity with respect to other classifications.

The Disparate Impacts section of the policy is not a basis to impose discipline upon any employee of the Department, nor is it intended to create a private right of action to enforce its terms.

## a.  The Chief of Police or Designee Will Enforce Policy

The Chief or designee will ensure that this policy is
in effect and carried out.

## b.  Officers Document Enforcement Activity

See Seattle Police Manual Section 6.220 –
Voluntary Contacts & Terry Stops.

## c.  The Department Analyzes Officer-Initiated Activity

The analysis focuses on enforcement practices
(stops, citations, and arrests) that are not
primarily driven by reports from crime victims.
These include, but are not limited to:

- VUCSA
- Prostitution
- Obstructing
- Resisting arrest
- Driving crimes/infractions
- Pedestrian interference
- Illegal camping
- Pedestrian violations (e.g., "Jaywalking")
- Drinking in public
- Public consumption of marijuana
- Public urination/defecation

## d.  An Annual Report will be prepared for the Chief of Police and the Public

This report shall describe the year's data collection
and analysis and efforts to address disparate
impact of policing.

After review by the SPD command staff, and after
names of individual officers have been removed,
this report will be made available to the
community.

# 5.140–PRO-1 Handling a Bias-Based Policing Allegation

Employee

1. **Receives** a complaint of bias-based policing.

2. **Calls** a supervisor to the scene.

    2a. If the officer's sergeant is not available, the officer **notifies** a sergeant from the officer's precinct.

    2b. If no sergeant is available, the officer **notifies** a lieutenant who may assigns a specific sergeant or who will personally respond to conduct the same review as would have been required of a sergeant had one been available.

3. **Documents** the complaint and action taken on a GO report.

Next Level Supervisor

4. **Responds** to the scene.

5. **Gathers** all relevant information from the complainant and any witnesses, if they are willing to provide it.

    Relevant information is defined as any information that may tend to explain, prove, or disprove the allegations being made.

6. **Provides** specific information to the person on how to file a complaint or if warranted, **refers** the matter to OPA for further investigation.

    See SPM Section 5.002 – Public and Internal Complaint Process.

7. **Documents** the preliminary investigation in a supplement to the employee's GO

8. **Sends** the report and a cover memo to the bureau chief via the chain of command.