THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA

                    Plaintiff,

         vs.

CITY OF SEATTLE

                    Defendant.

CASE NO.  C12-1282JLR

**MEMORANDUM SUBMITTING
CONSENSUS SEATTLE POLICE
DEPARTMENT CRISIS
INTERVENTION POLICY**

Pursuant to this Court's Order of September 21, 2012 (Dkt. 13. ¶ 178), the Monitor hereby approves and submits to the Court the proposed Seattle Police Department ("SPD") Crisis Intervention Policy (the "Policy").  Both parties and the Monitor agree that, as required by ¶ 177 of the Consent Decree (Dkt. No. 3-1), the Policy is consistent in letter and spirit with the relevant substantive provisions of that document and the accompanying Memorandum of Understanding ("MOU").  The Parties and the Monitor therefore respectfully request the Court's approval of the Policy.

The Policy defines persons experiencing "behavioral crises" as those diagnosed with mental illness, suffering from substance abuse, and other personal crises.  The Policy recognizes that many people suffer behavioral crises and that only a small percentage have committed crimes or qualify for an involuntary evaluation.  The Policy attempts to ensure that members of

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

the public experiencing behavioral crises will be treated with dignity and will be given access to the same law enforcement, government, and community services provided to all persons in the Seattle community.  The Policy's overarching goal is to resolve crisis incidents by connecting those experiencing behavioral crises with community services that can provide long-term stabilizing support.  At its core, this is a community Policy that formalizes and institutionalizes the Department's relationship with community resources for the purpose of public safety and to assist and resolve behavioral crisis issues.

The Policy provides SPD officers with clear expectations when interacting with people experiencing behavioral crises.  The Policy specifically provides that when officers are engaged with a person in behavioral crisis, they will attempt to de-escalate the situation, when feasible and reasonable.  This expectation is consistent with the Department's recently implemented Use of Force policies.  The purpose of de-escalation is to afford the subject with the opportunity to be referred to the appropriate community service(s).

The Policy also initiates important organizational and operational changes in the Department's approach to crisis intervention.  The Policy's intent is to provide all officers with resources to interact with people who are in behavioral crises.  The Policy sets forth a new CIT (Crisis Intervention Team) program that consists of three distinct levels of expertise: (1) officers who have undergone basic CIT training; (2) officers who have undergone advanced CIT training (CIT-Certified officers); and (3) a squad of officers, the Crisis Response Team (CRT), dedicated to following-up on criminal investigations where mental illness is suspected, on crisis events, and with people who have been identified as being a risk to themselves or others.   SPD Communications (9-1-1 and dispatch) will be trained to identify crisis events and dispatch at least one CIT-Certified officer to each call that appears to involve a person in behavioral crisis. Moreover, CIT-Certified officers will take primary responsibility at the scene of crisis events. After the event has been stabilized, the CRT will engage in follow-up.  Importantly, this new structure falls under the command of the Patrol Operations Bureau, and will be managed by an

MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE
DEPARTMENT CRISIS INTERVENTION POLICY - 2
Case No.  C12-1282JLR

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

already identified CIT coordinator, who is the SPD's primary point of contact for the mental health provider/clinician/advocacy community.

The process that created the Policy is reflective of its overarching community goal to provide long term stabilizing support for those experiencing a behavioral crisis.  The Crisis Intervention Committee (the "CIC") played an invaluable role in creating the Policy.  The basic structure of the CIC was created by the MOU (¶¶24-25).  The goal was to bring together the best and brightest of regional mental health providers, clinicians, advocates, academics, outside law enforcement representatives, members of the SPD and the judiciary, to create a problem-solving forum for interagency issues, including the development of policy and procedures and the evaluation of training for SPD's officers engaged with this population.  SPD and the DOJ jointly identified and invited the members of the current CIC to join the committee.  The CIC members, who volunteer their time, then organized themselves into four different subcommittees: Policy/Curriculum, Systems, Data, and an Executive Steering Committee.  The Policy/Curriculum subcommittee, DOJ, and SPD then collaboratively developed the Policy over several months with the guidance and assistance of the Executive Steering and Systems subcommittees.  It is the Parties and Monitor's sincere hope that, not only the formal structures, but the relationships developed by the creation of the CIC will long outlast the Consent Decree.

To aid the efforts of the CIC, the DOJ arranged for two experts to be available to consult: Randy Dupont, Ph.D, from the University of Memphis, an expert who played a crucial role in creating the Crisis Intervention Team for the Memphis (Tennessee) PD and dozens of other departments; and Sgt. Elisabeth Eddy (retired), who played a similarly major role in formulating CIT in the Seattle PD and was an instructor at the Washington State Criminal Justice Training Center.  From the Monitoring Team, Ellen Scrivner provided her knowledge of relevant issues gained as a result of her role in the creation of CIT operations at the Chicago Police Department.  SPD Captain Chris Fowler was responsible for the execution of the CIC meetings and policy development.

MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE
DEPARTMENT CRISIS INTERVENTION POLICY - 3
Case No.  C12-1282JLR

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

1   The CIC actively utilized the knowledge of experts from medicine, law, law enforcement,

2   social welfare, and academia to explore new approaches to critical incident intervention to link

3   social service providers with SPD officers.  The CIC also considered intervention policies from

4   other law enforcement agencies from around the country including the Memphis Police

5   Department (Tennessee), the Hillsborough County Sheriff's Office (Florida), and the Seminole

6   County Sheriff's Department (Florida) to create this Policy, which reflects best practices in

7   responding to persons experiencing behavioral crises.  Captain Fowler, his assistant Carrie Tittle,

8   and the many members of the CIC should be recognized for their outstanding work and service

9   to the City of Seattle.

10   **<u>Conclusion</u>**

11   Pursuant to the Consent Decree, the Monitor's duty was to consider if the proposed SPD

12   Crisis Intervention policy embodies the requirements of the Consent Decree.  The Monitor and

13   the Monitoring Team have determined that the Policy does so. Accordingly, the Monitor

14   respectfully requests that this Court accept the Policy and orders its implementation forthwith.

15

16   DATED this 31st day of January, 2014.

17

18

19

20   _____

Merrick J. Bobb, Monitor

21

22

23

24

25

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The Court hereby approves the consensus Seattle Police Department Crisis Intervention Policy

filed herewith as Exhibit A and orders its implementation forthwith.

DONE IN OPEN COURT this _____ day of _____, 2014.


_____
THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

**CERTIFICATE OF SERVICE**

I certify that on the 31ST day of January, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

| | |
|---|---|
| J. Michael Diaz | michael.diaz@usdoj.gov |
| Jenny A. Durkan | jenny.a.durkan@usdoj.gov |
| Jonathan Smith | jonathan.smith2@usdoj.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Michael Johnson Songer | michael.songer@usdoj.gov |
| Rebecca Shapiro Cohen | rebecca.cohen@usdoj.gov |
| Emily A. Gunston | emily.gunston@usdoj.gov |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Jean M. Boler | jean.boler@seattle.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Brian G. Maxey | brian.maxey@seattle.gov |
| Sarah K. Morehead | sarah.morehead@seattle.gov |
| Gregory C. Narver | gregory.narver@seattle.gov |
| John B. Schochet | john.schochet@seattle.gov |

DATED this 31ST day of January, 2014.

*/s/ Carole Corona*
Carole Corona

MEMORANDUM SUBMITTING CONSENSUS SEATTLE POLICE
DEPARTMENT CRISIS INTERVENTION POLICY - 6
Case No.  C12-1282JLR

Merrick J. Bobb, Monitor
Police Assessment Resource Center
PO Box 27445
Los Angeles, CA 90027
(213) 623-5757

# EXHIBIT A

# Seattle Police Manual

# 16.110 – Crisis Intervention

Effective Date:  TBD

16.110 – POL

This policy applies to the Department's response to subjects in behavioral crisis.  This includes people diagnosed with mental illness, as well as people suffering from substance abuse and personal crises.  (For fuller definition, see 16.110-POL-5.9.) The Seattle Police Department recognizes the need to bring community resources together for the purpose of safety and to assist and resolve behavioral crisis issues.  The Department further recognizes that many people suffer crises, and that only a small percentage has committed crimes or qualifies for an involuntary evaluation.  Persons suffering crises will be treated with dignity and will be given access to the same law enforcement, government and community service provided to all citizens.

Seattle Police officers are instructed to consider the crises that subjects may be experiencing during all encounters.  Officers must recognize that subjects may require law enforcement assistance and access to community mental health and substance abuse resources.  The ideal resolution for a crisis incident is that the subject is connected with resources that can provide long-term stabilizing support.

Officers are trusted to use their best judgment during behavioral crisis incidents, and the Department recognizes that individual officers will apply their unique set of education, training and experience when handling crisis intervention.  The Department acknowledges that officers are not mental health professionals.  Officers are not expected to diagnose a subject with a mental illness, nor are they expected to counsel a distraught subject into composure.  When officers need to engage with a subject in behavioral crisis, the Department's expectation is that they will attempt to de-escalate the situation, when feasible and reasonable.  The purpose of de-escalation is to provide the opportunity to refer the subject to the appropriate services.  This expectation does not restrict an officer's discretion to make an arrest when probable cause exists, nor are officers expected to attempt de-escalation when faced with an imminent safety risk that requires immediate response.  An officer's use of de-escalation as a reasonable alternative will be judged by the standard of objective reasonableness, from the perspective of a reasonable officer's perceptions at the time of the incident.

The intent of this policy is to provide all officers with resources to deal with subjects who are in behavioral crisis.  The CIT (Crisis Intervention Team) program has three distinct components:  officers who have undergone basic CIT training; officers who have undergone advanced CIT training (hereafter referred to as "CIT-Certified officers"); and a squad of officers, the Crisis Response Team (CRT), dedicated to following-up on criminal investigations where mental illness is suspected, crisis events, and people who have been identified as being a risk to themselves or others.  CRT and CIT-Certified officers are available as a resource, and officers shall make every

reasonable effort to request their assistance as appropriate. As described below, communications will be trained to and will dispatch at least one CIT-Certified officer to each call that appears to involve a subject in behavioral crisis and CIT-Certified officers will take primary at the scene of crisis events. After the event has been stabilized, the CRT will engage follow-up.

## 16.110-POL-1  Crisis Intervention Committee (CIC)

### 1.  CIC is a Community and Regional Partnership

The purpose of the CIC is to build an effective regional crisis incident response built upon best practices, innovation and experience. The CIC works in cooperation with the Department to make sure that crisis intervention training and policies are consistent with legal standards, best practices and community expectations. The intent is to include representatives of entities that can assist the Department in achieving the purpose of the CIC. These entities will come from several categories: city and county government (including law enforcement agencies and line patrol officers), mental health professionals and advocates, academia, and others deemed appropriate.

### 2.  CIC Works Collaboratively With the Department to Advise on Crisis Intervention Training and Policies

The CIC has five specific tasks:

- Evaluate SPD's overall CIT program, study national models, and make recommendations on whether SPD should modify the structure and design of its crisis intervention program
- Develop a checklist of resources available to refer individuals in crisis
- Review and validate the Department's CIT training
- Develop policy and procedures for the disposition or voluntary referral of individuals to jails, receiving facilities and local mental health and/or social service agencies that clearly describe the roles and responsibilities of those entities and of the SPD CIT-Certified officers in the process
- Enhance community connections with advocates and social service professionals, as well as provide for a seamless system of care for persons in crisis

**16.110-POL-2  CIT Coordinator**

### 1.  CIT Coordinator Oversees the CIT Program, to Include the CRT Unit

The CIT Coordinator, appointed by the Chief, provides command-level oversight for the CRT Program, both the CIT Unit and the CIT-Certified officers.  The CIT Coordinator serves many roles with an emphasis on examining, reviewing, and making recommendations to ensure the CIT Program is implemented and sustained as a community program.  The CIT Coordinator furthermore serves as a community liaison representing and primary point of contact for the Program, both for law enforcement and other community partnerships to the residents of Seattle.  Leadership, planning and problem-solving skills are essential attributes for the CIT Coordinator.

The Department will work in conjunction with the CIC to develop the job description for the CIT Coordinator and will post the job description on the Department's website.

**16.110-POL-3  CIT- Certified Officers**

### 1.  CIT- Certified Officers Undergo Specific Training

All SPD officers will receive basic training on crisis intervention.  To be considered "CIT- Certified," officers are required to successfully pass a 40-hour initial comprehensive CIT training and eight hours of annual CIT-specific in-service training thereafter.

### 2.  CIT- Certified Officers Will Take the Lead, When Appropriate, In Interacting With Subjects in Behavioral Crisis

See 16.110-POL-5.2. (hyperlink)

### 3.  The Department Will Ensure That CIT- Certified Officers Are Available on All Shifts

**16.110-POL-4  Crisis Response Team (CRT)**

**1.  CRT is a Unit of the Patrol Operations Bureau**

The CRT Unit is distinct from officers who are CIT-Certified and assigned to other units.  (See 16.110-POL-3 CIT-Certified Officers.) (hyperlink)

**2.  CRT has Follow-Up Responsibility for Incidents Involving Subjects in Crisis**

CRT follows-up on cases involving behavioral crisis through intervention at the lowest-level, least-intrusive intercept point, in order to prevent and reduce harm.  CRT works to gain a subject's behavioral self-control through engagement with treatment.

**a. CRT Utilizes an Intercept Continuum**

1. Harmless symptomatic behavior
   - o Non-criminal: Provide contact information for obtaining services/treatment
   - o Criminal:  Verbal warning
2. Indication of mental-health needs
   - o Non-criminal: Refer to appropriate service partner for outreach
   - o Criminal:  Document crime, warn
3. Indication of urgent mental-health needs
   - o Non-criminal: Contact subject's case manager, CRT outreach, transport to voluntary services
   - o Criminal:  Document crime, warn
4. Imminent risk of serious harm to self, others or property
   - o Non-criminal: Emergent detention, involuntary transport to hospital
   - o Criminal:  Request charges through Mental Health Court or refer to CSC

4

5. Escalation of harmful symptomatic behavior

- o Non-criminal: Coordinate with DMHPs, commit for involuntary treatment
- o Criminal:  Arrest and booking with referral to Mental Health Court

6. Escalated risk of serious harm to others, resistant to all other interventions

- o Non-criminal: Coordinate with DMHPs, commit for involuntary treatment
- o Criminal:  Arrest and booking

**b. CRT Utilizes a Descending Scale of Urgency When Prioritizing Cases**

1. Imminent risk of serious harm

- o Subject is out of custody or possible release following serious incident, danger to public or victims.

2. Pattern of escalation

- o Subject has been involved in a series of incidents indicating decompensation or decline in behavioral self-control, which constitutes an increased risk of serious harm to self or others.

3. High utilization of police resources

- o Subject has made or been the reason for frequent, unfounded calls which unreasonably exploit patrol resources.

4. Request from officers or service provider

- o A patrol officer or service provider requests CIT assistance for problem-solving.

**16.110-POL-5  Responding to Subjects in Behavioral Crisis**

**1.  Officer Shall Make Every Reasonable Effort to Request the Assistance of CIT-Certified Officers, as Appropriate**

## 2. Communications Shall Dispatch at Least One CIT-Certified Officer to Each Call That Appears to Involve a Subject in Behavioral Crisis

If circumstances dictate that there is not a CIT-Certified officer available to respond to a call that appears to involve a subject in behavioral crisis, non-CIT-Certified officers shall be dispatched and a CIT-Certified officer shall respond as soon as possible.

CIT-Certified officers will take the lead, when appropriate, in interacting with subjects in behavioral crisis.  If a sergeant or above has assumed responsibility for the scene, he or she will seek the input of CIT-Certified officers on strategies for resolving the crisis event when it is reasonable and practical to do so.

### a.  A Sergeant and at Least Two Officers Shall Respond to Each High-Risk Suicide Call

A high-risk suicide call is one where the likelihood of suicide is imminent, and the subject may be armed with a weapon or may be barricaded.

If, during the course of an incident, an officer determines that a subject meets the above criteria, he or she shall advise dispatch and request a sergeant and back-up.

## 3. Officers May Call the Crisis Clinic to Connect with the On-Duty Designated Mental Health Professional (DMHP) During any Incident Involving a Subject in Behavioral Crisis

The Crisis Clinic is the resource through which officers can be referred to the available resources that are located throughout the region.

Officers may call the Crisis Clinic for an on-site evaluation by the on-duty designated mental health professional (DMHP).

- When communicating with a DMHP, the **officer:**

  - **Calls** (206) 263-9202 Monday through Friday, 0830 hours to 2230 hours

  - **Calls** (206) 461-3210 ext. 1 outside of the above hours

- If the incident requires immediate action, officers may take the subject into protective custody and arrange for a transport to the nearest appropriate hospital.  See 16.110–PRO–2 Involuntary Mental Health Evaluation.

6

**a. Officers Are Encouraged to Call the Crisis Clinic When Contacting Subjects Who Are in a Behavioral Crisis but Are Not Going to Be Referred for Involuntary Mental Health Evaluation or Criminal Charges**

See 16.110–TSK–2 Contacting Subjects Who are in a Behavioral Crisis but are Not Going to Be Referred for Involuntary Mental Health Evaluation or Criminal Charges.

**4. Officers May Refer Eligible Subjects with Mental Illness and/or Substance Use Disorders to the Crisis Solutions Center (CSC)**

See 16.110–PRO–4 Referring a Subject to CSC.  Voluntary referrals may take place:

- As part of an officer's community caretaking function, or
- During a *Terry* stop, or
- When an officer has probable cause to believe that an individual has committed one of the following **eligible criminal offenses:**

  - Alcohol in a Park
  - Criminal Possession of Marijuana (>28 grams by an adult)
  - Criminal Trespass I and II
  - Disorderly Conduct
  - DWLS 3
  - Drug Traffic Loitering
  - Failure to Obey
  - False Reporting
  - Misuse of the 911 System
  - NVOL
  - Obstructing a Public Officer
  - Possession of a Fraudulent Driver License
  - Property Damage/Malicious Mischief
  - Prostitution
  - Prostitution Loitering
  - Theft 3
  - Theft of Rental Property
  - Unlawful Bus Conduct
  - Unlawful Issuance of Bank Checks
  - Use of Drug Paraphernalia
  - VUCSA: Possession of Legend Drugs (Prescription Drugs without Proper Prescription)
  - VUCSA: Simple Possession of Cocaine < 1 gram
  - VUCSA: Simple Possession of Heroin < 1 gram

o VUCSA: Simple Possession of Methamphetamine < 1 gram

**a. Certain Subjects are not Eligible for CSC Referral**

Individuals who meet at least one of the following criteria are not eligible for CSC referral:

- Suffer from an acute mental health crisis which meets the criteria for a mental health evaluation under RCW 71.05.153 (*hyperlink*)
- Require medical treatment
- Have an active and extraditable criminal warrant
- Violent offender status in the past ten years
- Sex offender status in the past ten years
- Juveniles (under 18)

**b. Officers Shall Notify Potential Crime Victim(s) of the Diversion Option**

Officers shall consider any strong opposition presented by the potential crime victim(s) when determining whether to make the referral.  This does not negate officer discretion.

**c. Officers Shall Inform Subjects that Referral is Voluntary**

**5. Officers May Facilitate Voluntary Mental Health Hospitalizations**

Officers shall document officer-facilitated voluntary mental health hospitalization.   See 16.110–TSK–1 Voluntary Mental Health Hospitalization.

**6.  Officers May Facilitate Involuntary Mental Health Evaluations**

See 16.110– PRO–2 Referring a Subject for an Involuntary Mental Health Evaluation.

**7. Officers Shall Complete the *Emergent Evaluation Card* When Referring a Subject in Behavioral Crisis to a Hospital, Whether for Voluntary or Involuntary Evaluation**

**8. Officers May Take a Subject into Custody Based on a Written or Verbal Order From a DMHP**

See 16.110–PRO–3 Taking a Subject into Custody by Order of a DMHP.  When a DMHP is unable to accompany officers, officers

shall make an independent determination as to whether to order
an involuntary mental health evaluation.

**9. Officers Shall Document All Contacts With Subjects Who are in Behavioral Crisis, are Suspects in a Crime, and/or are Detained for a Mental Health Evaluation**

For the purposes of this policy, a behavioral health crisis is defined as an episode of mental and/or emotional distress in a person that is creating significant or repeated disturbance and is considered disruptive by the community, friends, family or the person themselves.

Officers will use a General Offense (GO) report for all hospitalizations – voluntary and involuntary - which is routed to CRT.

For other behavioral crisis calls or contacts, officers will document the contact by using either a GO report or a Street Check.

**10.  There Are Five Options for Resolving Behavioral Crisis-Related Misdemeanor Property Crimes**

- Investigate and release with routing to CRT for follow-up
- Referral to the Crisis Solutions Center (See policy statement 4 and 16.110-PRO-4  Referring a Subject to CSC.)
- Investigate and release with a request for charges through Seattle Municipal Mental Health Court (MHC)
- Jail booking with MHC flag
- Investigate and detain for a mental health evaluation, with a request for charges through Seattle Municipal Mental Health Court (MHC)

**11. When an Officer has Made the Decision to Book a Felony Suspect into Jail, the Subject Shall Not Be Diverted for a Mental Health Evaluation**

- Exceptions must be screened by the CRT sergeant. *Link to PRO*
- If the jail refuses to accept a suspect due to a behavioral crisis, officers shall have the suspect sent to the Harborview Medical Center (HMC).  See 16.110–PRO–1 When Jail Staff Decline to Accept a Suspect in Behavioral Crisis for Booking.

**12. CRT Triages Cases for Follow-Up**

See 16.110-POL-4.2.b. (hyperlink)

## 13. SPD Collects and Analyzes Data

The Department's intent with collecting data is two-fold:

- To collect data based on the capabilities of existing and future software, and
- To evaluate the overall CIT program

## a.  There Are Five Components That Are Analyzed to Answer Key Questions

- Communication procedures
    - o  Ensure that communications procedures are effective in appropriately identifying people in behavioral crisis.
- CIT-Certified officers
    - o  Ensure that CIT-Certified officers are effective in responding to incidents involving people in behavioral crisis.
- CRT Unit
    - o  Ensure that the CRT Unit is effective in terms of improving efficiency of police response to and the resolution of incidents involving people in behavioral crisis.
        - ▪  Are subjects getting the services they need?
        - ▪  Are call volume and patrol workload being reduced?
- CIT curriculum
    - o  Ensure that the CIT curriculum is delivering in terms of its intended goals and learning outcomes.
- SPD culture
    - o  Determine how each aspect of the CIT program is viewed within the SPD culture.
        - ▪  Training
        - ▪  Response
        - ▪  Follow-up

**16.110—PRO—1 When Jail Staff Decline to Accept a Suspect in Behavioral Crisis for Booking**

**Officer**

1. **Attempts** to book subject into jail

   a. If jail **declines** subject, **transports** subject to HMC

2. **Screens** the incident with a sergeant to determine if there will be a police hold

**Sergeant**

3. **Screens** the disposition with CRT sergeant, via Communications

4. **Decides** if there will be a police hold

   a. If there will be a police hold, **determines** whether to assign hospital guard (See 11.030 – Guarding Detainees at a Hospital) *(hyperlink)*

**Officer**

5. **Completes** *Emergent Evaluation Card*

   a. **Indicates** that there is a police hold, if applicable

   b. Through Communications, **calls** the appropriate hospital to explain the circumstances behind the police hold, if applicable

   c. **Gives** the *Emergent Evaluation Card* to the ambulance driver/social worker

6. **Completes** a General Offense report

   a. **Lists** "Crisis" in the offenses block, in addition to any offenses that were committed

   b. **Describes** the circumstances of the incident and the disposition of the subject

11

**Communications**

    7. **Dispatches** officer to retrieve the subject, if Harborview calls to notify that a subject on police hold is about to be released

**Officer/Secondary Officer**

    8. **Transports** subject to jail

## 16.110–PRO–2 Referring a Subject for an Involuntary Mental Health Evaluation

**Officer**

    1. **Determines** that the subject may be eligible for evaluation

    2. **Requests** that Communications call the Crisis Clinic, if time allows, or **calls** the Crisis Clinic directly at (206) 461-3210

    3. **Determines** (with or without the assistance of a DMHP) that the subject meets the involuntary mental health evaluation criteria, per RCW 71.05.153(2): Emergent Detention of Persons with Mental Disorders *(hyperlink)*

    4. **Screens** the incident with a sergeant, either at the scene or telephonically

**Sergeant**

    5. **Reviews** the incident and **advises** the officer whether to order the evaluation

**Officer**

    6. **Takes** the subject into protective custody

    7. **Arranges** for the subject to be transported via ambulance or patrol car to the closest appropriate hospital

    8. **Completes** the *Emergent Evaluation Card*

9. **Provides** the *Emergent Evaluation Card* to the ambulance driver or hospital social worker

10. **Completes** a General Offense report with the emergent evaluation template

    a. **Lists** "Crisis" in the offenses block, in addition to any offenses that were committed

    b. **Describes** the circumstances of the incident and the disposition of the subject

    c. **Includes** witness information

**Sergeant**

11. **Approves** GO report and **routes** it to HEMDET queue

**Data Center**

12. Immediately **transcribes** GO report

13. **Release-tracks** with *"M" release code* and **lists** appropriate hospital in release information section

14. **Faxes** released GO with confidentiality cover sheet to appropriate hospital

- HMC: (206) 744-9919
- UWMC: (206) 598-6111
- Northwest: (206) 368-1409
- Swed. Ballard: (206) 781-6198
- Swed. Cherry Hill: (206) 320-3396
- Swed. First Hill: (206) 386-2577
- Virginia Mason: (206) 223-6677

**16.110—PRO—3 Taking a Subject into Custody by Order of a Designated Mental Health Professional (DMHP)**

**Communications**

1. **Receives** request from a DMHP for officers to assist with field evaluation, an

emergent detention, or service of a court order

2. **Dispatches** two officers to the call

a. **Dispatches** at least one CIT-Certified officer, if one is available

**Officers**

3. Upon the request of the DMHP, **take** the subject into protective custody

4. **Screen** the incident with a sergeant before taking the subject into custody or entering if:

- The subject is likely to resist custody,
- The subject is barricaded,
- The subject has a history of violence or weapons, or
- Forced entry is necessary

**Sergeant**

5. If necessary, **consults** with the CRT sergeant or a CIT-Certified sergeant via Communications

**Officers**

6. **Arrange** for the subject to be transported via ambulance or patrol car to the closest appropriate hospital, or the hospital requested by the DMHP

7. **Complete** the *Emergent Evaluation Card*

8. **Provide** the *Emergent Evaluation Card* to the ambulance driver or hospital social worker

9. **Complete** a General Offense report with the emergent evaluation template

a. **List** "Crisis" in the offenses block, in addition to any offenses that were committed

b. **Describe** the circumstances of the incident and the disposition of the subject

14

c. **Include** witness information

**Sergeant**

10. **Approves** GO report and **routes** it to HEMDET queue

**Data Center**

11. Immediately **transcribes** GO report

12. **Release-tracks** with *"M" release code* and **lists** appropriate hospital in release information section

13. **Faxes** released GO with confidentiality cover sheet to appropriate hospital

- HMC: (206) 744-9919
- UWMC: (206) 598-6111
- Northwest: (206) 368-1409
- Swed. Ballard: (206) 781-6198
- Swed. Cherry Hill: (206) 320-3396
- Swed. First Hill: (206) 386-2577
- Virginia Mason: (206) 223-6677

## 16.110—PRO—4 Referring a Subject to CSC

**Officer**

1. **Conducts** a complete investigation

a. **Checks** subject's name through WACIC and FORS for excluding factors:
- Warrants
- Violent offense conviction within the past 10 years
- Sex offender status within the past 10 years
- Juvenile (Under 18)

b. **Assesses** subject's imminent danger of serious harm to self, others, or property; or grave disability

c. **Identifies** elements of crime, if any

2. **Determines** that the subject is appropriate for CSC referral (See 16.110-POL-5.4a)

15

3. **Notifies** potential crime victim(s) of the diversion option

     a. **Considers** any objection to diversion

4. **Asks** the subject if he or she is interested in being referred to CSC

     a. **Emphasizes** that referral is voluntary
     b. If the subject does not want to be referred and arrest is possible, **considers** making the arrest

5. **Screens** incident with sergeant (either in-person or telephonically, unless this Manual requires an in-person screening {i.e., Type II force}) if:

     a. The subject was **handcuffed**
     b. The officer will be **transporting** the subject to CSC
     c. There was a use of reportable **force**
     d. The officer is **unsure** as to if the subject meets the intake criteria
     e. The officer will be **diverting** the subject to CSC instead of KCJ

6. **Advises** Communications to contact the CSC, or **contacts** the CSC via phone (682-2371) to screen for availability

7. **Arranges** for transport to CSC, either in a patrol car or the Mobile Crisis Team (MCT) vehicle

     a. If the subject is being referred to CSC instead of jail, it is preferable, but not necessary, for an officer to make the transport

8. **Completes** a GO report
     a. **Documents** the incident, including witnesses and victims
     b. **Describes** elements of crime, if applicable
     c. **Confirms** that no disqualifying criteria exist
     d. **Selects** "CSC Diversion" from the "Arrest Disposition" box in GO suspect linkage, if applicable

       • Subjects diverted to CSC will be listed as "arrested" in the entity section of the GO report

**CSC Staff**

9. **Completes** the "Arrest Referral Tracking Sheet" and "Notice of

16

Diversion to CSC," if applicable

a. If the referring officer requested notification, **contacts** the referring officer as soon as they are able to advise if the individual declined services and will be leaving the facility or has already left the facility

b. If an individual who was subject to arrest declines services, **contacts** the appropriate prosecuting attorney

## 16.110—TSK—1 Voluntary Mental Health Hospitalization

When facilitating a voluntary mental health hospitalization, the **officer:**

1. **Receives** request from a subject for voluntary mental health hospitalization

2. **Arranges** for the subject to be transported via ambulance to the closest appropriate hospital

3. **Completes** the *Emergent Evaluation Card*

4. **E-mails** the *Emergent Evaluation Card* to CRT, the hospital and Data

5. **Completes** a General Offense report

a. **Lists** "Crisis" in the offenses block

b. **Describes** the circumstances of the incident and the disposition of the subject

c. **Routes** GO report to CRT

## 16.110—TSK—2 Contacting Subjects Who are in a Behavioral Crisis but are not Going to be Referred to the Crisis Solutions Center, for Involuntary Mental Health Evaluation or Criminal Charges

When contacting subjects who are in a behavioral crisis but are not going to be referred for involuntary mental health evaluation or criminal charges, the **officer** (at his or her discretion)**:**

17

1. **Contacts** the Crisis Clinic Supervisor at (206) 461-3210 ext. 1


2. **Obtains** case management history, as applicable


3. **Obtains** contact information for the case manager, as applicable


4. **Contacts** the case manager (or after-hours staff) to advise of police contact


5. **Completes** a General Offense Report, routed to CRT.  (All behavioral crisis contacts, must be documented consistent with 16.110-POL-5.9.)