# EXHIBIT A



May 16, 2015

Honorable Judge James L. Robart
United States District Court
Western District of Washington

Dear Judge Robart:

The Seattle Community Police Commission (CPC) appreciated the chance to engage with the Seattle Police Department, the U.S. Attorney's Office, the Civil Rights Division, and the Monitor Team in conversations over the past few months regarding revisions to the Use of Force policy. We assisted in obtaining constructive feedback from SPD employees in a series of listening sessions as noted in the Monitor's recent filing, and we conducted at least six work group sessions of our own with various parties to suggest revisions. Many of our suggestions, some of which originated in the input we received from officers, have been incorporated in the proposed revised policy, which we very much appreciate.

The revised policy that was filed with the Court, however, omitted three key changes about which the CPC feels strongly, and which we believe would enhance community and officer confidence in the reform process. It is possible that not all the parties were aware of the reasoning behind our recommendations, and the implications of omitting them. We respectfully ask Your Honor to consider these suggested changes, and would of course be glad to talk further with the Court, Monitor Team and the other parties about these points. An attachment to this letter details the specific language revisions we seek.

- 8.000 (Use of Force—CORE PRINCIPLES)
  At the end of the first paragraph of Section 8.000, the CPC recommended inserting this language: "When officer actions are in conformance with current Department training, the actions shall be considered to be within policy." An alternative and more nuanced approach, suggested subsequently by the OPA Director, would be: "When officer actions are in conformance with current Department training, this fact shall be given weight in determining whether a Sustained finding should be entered against the officer. When it is found that Department training was inconsistent with Department policy, OPA has the option of recommending a finding of Not Sustained (Management

1

Action) rather than Sustained." This is substantially what the CPC intended to accomplish.

This recommendation arose out of several conversations we had with thoughtful officers who shared that they had received what they felt to be inconsistent guidance on the meaning of the policy. (The specific examples officers gave pertained to inconsistent direction on when to report force under certain circumstances, although the discrepancy between training and policy could arise in other areas.) We made this recommendation after consultation with the OPA Auditor and OPA Director, both of whom noted the problem of OPA having to make a "sustained" finding even if an officer was acting as he or she had been trained in current SPD Use of Force trainings. All CPC members who participated in any discussion of this proposal supported it, and it was unanimously adopted in a full CPC meeting, notably, with strong support from the civil rights and police accountability activists on the Commission.

If our approach were adopted, the burden of production in any OPA proceeding would be on the employee to show that he or she *was* relying on current training, and to establish the content of that training. If he or she can do so, however, the CPC strongly believes that it would be unfair and unhelpful for OPA to have to make a "sustained" finding that the officer committed a policy violation. We believe this to be the case even if any discipline were mitigated because training was inconsistent with the policy, which we understand to be the alternative solution. Sustained findings are publicly reported, may trigger Performance Mentoring steps, and are stigmatizing and discouraging, especially if the officer was faithfully following direction received in official training – even if no serious disciplinary measures are imposed. Further, it puts OPA in a position of unnecessary tension with employees to have to make a sustained finding under such circumstances. It is a high priority to ensure that officers experience the OPA process as fair and reasonable.

This recommendation is common ground among police employees and police accountability advocates, and would remove a legitimate cause for concern that was repeatedly voiced by thoughtful officers.

- 8.500-POL-1 (Use of Force—GENERAL PRINCIPLES)
  The CPC strongly urges removal of language in the revised policy (8.500-POL-1, #4) that provides an exception to SPD Policy 5.002, which requires all Department employees to notify the Office of Professional Accountability (OPA) of cases involving possible misconduct. The exception provides that Force Review Board (FRB) members not be required to notify OPA when a case of possible misconduct comes to their attention due to their roles as FRB members. The exception language further states that it "does not prohibit any individual member of the board making a personal referral to OPA" but does not require it. The CPC believes strongly that there should be no exception to

2

SPD Policy 5.002 reporting requirements for employees who become aware of possible misconduct cases in their capacity as FRB members. (This recommendation is closely connected to the next point, about the provision which substitutes a vote of the FRB for the judgment of each individual member about whether an incident should be referred to OPA.)

We fully understand and support the *intent* behind this provision – that individual FRB members should not feel the burden and stigma of individually reporting a high volume of cases to OPA. We believe our approach in the following point accomplishes that goal equally well, without having to carve out an exemption to a pillar of our accountability structure (5.002's reporting requirement) for employees who are highly likely to encounter reportable cases.

- 8.500-POL-4 (Use of Force—FORCE REVIEW BOARD)
  The revised policy (8.500-POL-4, #9) provides that the referral of a case from FRB to OPA may be made by the FRB chair or by a majority vote of the FRB. This policy section also reiterates provisions cited in 8.500-POL-1, #4 above that the CPC recommended be removed. The CPC proposed instead that 8.500-POL-4, #9 read: "When possible misconduct comes to the attention of any member of the FRB and POL 5.002 would require an employee to make an OPA referral, than a referral must be made." The CPC also inserted language that explicitly provides that OPA observers may self-refer FRB cases for investigation of possible misconduct. The CPC believes that each FRB member should have a duty to comply with SPD Policy 5.002 reporting requirements and that if <u>any</u> member suggests a case should be referred to OPA, the FRB as a body should be required to make that referral (thus insulating the individual member from the stigma and burden of being a high-volume reporter).

  We cannot stress enough the importance of this point to the integrity of the hybrid civilian police accountability structure in Seattle. In our recommendations for improving the accountability system, which we were charged to make under the Memorandum of Understanding between the City of Seattle and the Department of Justice, one key point was ensuring that SPD's various internal investigation units *not* function parallel to or in lieu of OPA. All possible misconduct needs to be referred to OPA so that we have a single, transparent, unitary, comprehensible accountability system overseen and reviewed by civilians. This provision in the proposed revised policy sets up a gatekeeping process for OPA referrals at the FRB, such that, if 1, 2 or even 3 members of the FRB believe that a case presents possible misconduct, it may still not ever be presented to OPA for review, and thus, made available for public scrutiny. The CPC feels strongly that if even one member of the FRB (individuals all hand selected for this duty and presumably not inclined to make frivolous referrals) believes a case should go to OPA, it needs to go to OPA.

It is not enough to say that the individual member "may, but is not required to" make the referral. If the FRB votes not to send the case, the stigma and pressure on the individual member who nonetheless chooses to refer it voluntarily, without any duty to do so, would be that much greater.

Nor is it adequate that OPA observers can self-refer cases they heard presented to the FRB. While OPA is entitled to be present, there is no requirement that that occur, and OPA's staffing does not allow it to attend all meetings of all the discrete SPD internal investigation processes. This is a useful supplement to the universal reporting requirement of 5.002, but it cannot be a substitute for that requirement, which should have no exceptions.

It is also problematic that the proposed policy's voting process for OPA referral decisions purports to decide whether a case presents "misconduct." Under Seattle's civilian-led accountability structure, only OPA should be making such a determination. The relevant question for FRB members is whether a case presents *possible* misconduct or policy violations, the standard in 5.002.

Finally, by introducing a voting process for OPA referrals, the FRB is making a collective decision applying an unstated standard. If one member of the FRB believes there is "possible misconduct," clearly, it is possible for a reasonable SPD employee to believe that to be the case. Thus, the relevant standard is already met. Requiring agreement of 4 members introduces an unstated, undefined heightened standard for an OPA referral. This either will be, or will be perceived by outsiders to the department to be, a substitute for, and an end run around, the OPA misconduct determination process, as well as a situation in which the police are policing themselves. Even when the decision by the FRB is in fact a sound one, the fact that the FRB is set up as a gatekeeper to the civilian-led accountability process for cases in which force was used, will cause the accountability system overall to lose legitimacy in the community.

*** 

Finally, we want to underscore the urgency of re-examining the Department's proposed revisions to, and the other parties' approach to, the Demonstration Management Policy. A number of tools referenced in the proposed revised Use of Force Policy are germane to demonstration management, and requirements for the use of less lethal tools in both the Use of Force Policy and the Demonstration Management Policy should be consistent. Our preliminary assessment is that they are not, and that there is room for considerable confusion over the appropriate use of various tools, including bicycles, pepper spray, "blast balls" and other projectiles, in the context of crowd management generally, and in the context of constitutionally protected speech activity in particular. Further, there is a lack of clarity about when police may order demonstrators to relocate or redirect their assembly activities that urgently needs to be addressed in policy. Given recent events in Seattle, revisions to the Use of Force policy that do

not resolve these questions leave an important gap. We hope to collaborate with SPD and the other parties to suggest an approach that meets the needs of, and protects the rights and safety of, all community members.

Thank you very much for Your Honor's consideration of our recommended changes to the revised Use of Force Policy.

Respectfully submitted,

Rev. Harriett Walden, Co-Chair             Lisa Daugaard, Co-Chair
Seattle Community Police Commission        Seattle Community Police Commission


Cc: Community Police Commission

Attachment
Proposed CPC Language for Use of Force Policy
CPC Revisions Redlined

**8.000**
**Use of Force—CORE PRINCIPLES**

This section outlines the Seattle Police Department's core principles relating to the use of force. These general principles provide the foundation for the more specific policies governing the application, reporting, investigation and review of force. The Department recognizes that officers will face unique and challenging circumstances not specifically addressed in this policy. Officers are expected to apply these core principles reasonably in unanticipated situations. When officer actions are in conformance with current Department training, the actions shall be considered to be within policy.

*NOTE: The OPA Director's subsequently suggested language would also accomplish the intention of the CPC:* "When officer actions are in conformance with current Department training, this fact shall be given weight in determining whether a Sustained finding should be entered against the officer. When it is found that Department training was inconsistent with Department policy, OPA has the option of recommending a finding of Not Sustained (Management Action) rather than Sustained."

**8.500-POL-1**
**Use of Force—GENERAL PRINCIPLES**

3. Reviewers Shall Refer Misconduct, Other Than Minor Misconduct (see POL 5.002.5), as well as Potential Criminal Conduct to the OPA

   If it appears that misconduct may have been involved in the use of force, the supervisor shall ensure that the Office of Professional Accountability is contacted and consult the FIT commander regarding reclassification of the incident as a Type II or Type III investigation, if appropriate.

   The supervisor will note the OPA referral in Blue Team, as applicable, but shall not take disciplinary action.

   **Exception**: When possible misconduct comes to the attention of the FRB members only through their participation on the Board and reviewing cases in connection with the Board, the member is not required to notify OPA. If the FRB determines that there is possible misconduct the referral to OPA shall be made by the FRB chair. This provision does not prohibit any individual member of the board making a personal referral to OPA.

   **Exception**: Minor misconduct (see POL 5.002.5) may be handled directly by the chain of command.

**8.500-POL-4**
**Use of Force—FORCE REVIEW BOARD**

9. FRB ~~Chair~~ Shall Refer Possible Misconduct to OPA

   When possible misconduct comes to the attention of any member of the FRB and POL 5.002 would require an employee to make an OPA referral, then a referral must be made. The FRB shall refer all possible misconduct, other than minor misconduct (as defined at POL 5.002.5) to OPA. ~~The determination of whether the act at issue warrants such referral shall be determined by majority vote of the FRB or at the discretion of the Chair.~~

   ~~When possible misconduct comes to the attention of a FRB member only through their participation on the FRB, the member is not required to make an FRB referral that might otherwise be required under 5.002. This~~

6

~~provision does not prohibit any individual member of the board making a personal referral to OPA.~~

The FRB will not make recommendations concerning discipline.

<u>New Number</u>
   <u>OPA Observers May Self-Refer Cases of Possible Misconduct at Any Time during the Review</u>