# MERRICK BOBB, MONITOR
### MBOBB@PACBELL.NET
### 213.623.5757



August 1, 2016


Dear Judge Robart:

This letter sets forth the Monitoring Team's synthesis of the views of the Parties, the Monitor, and various stakeholders regarding accountability. The contents of this letter reflects discussions with the Mayor's Office, the City Attorney, and SPD management. It repeats or paraphrases specific recommendations by Barney Melekian and the CPC, in its capacity as amicus. We hope that it provides a useful framework in advance of the hearing on August 15. It reflects what we hope the SPD will be like at the point the Court decides that the Consent Decree has fulfilled its mission. It is, however, squarely within the Court's purview to accept or reject the understandings and assumptions set forth in this letter.

The Monitoring Team has considered at length the various filings of the Parties and the amicus regarding the application of best practice to the SPD's current accountability and disciplinary systems. Based upon the recommendations and analysis of the Parties, the City Attorney, and the amicus, this memorandum will apply current best practices to elaborate needed changes in the accountability and disciplinary systems and legislation. This memorandum will not discuss termination of the Consent Decree, initial compliance, full and effective compliance, or partial compliance. Those topics continue to be discussed by the Parties and the Monitoring Team.

There appears to be a consensus that the power to impose discipline belongs solely to the Chief of the SPD. The ability of the Chief to manage the department and the ability of the Mayor and other stakeholders to hold the Chief accountable diminish substantially if the Chief is not in charge of adjudication and discipline. Likewise, there is a consensus that there should be significant and meaningful oversight of the investigatory and disciplinary systems by civilians — as discussed below, the Office of Inspector General and the Director of OPA.

## I. OPA

The mission of the Office of Professional Responsibility (OPA), along with the Office of the Inspector General, is to provide oversight, guidance, and leadership in matters related to police accountability for the Seattle Police Department (SPD); to strive to ensure that the actions of SPD employees are Constitutional; comply with federal, state, and local laws, and City and SPD policies; and are respectful, effective, and conducive to the public good. The work of the OPA is intended to instill confidence and public trust in the fairness and integrity of the police accountability system and in the effectiveness and professionalism of SPD.

The Parties, Bernard Melekian, the Amicus, and the OPA Director have reached a consensus that OPA, as currently organized, is not sufficiently independent of the SPD. OPA should receive and investigate allegations of police misconduct pursuant to investigations which are fair, impartial, consistent, thorough, timely, understandable, and transparent. OPA on its own motion should have the authority to initiate and investigate complaints of misconduct or policy violations. OPA should also have the authority to audit and review all administrative investigation processes at SPD. OPA may also assign Type I and Type II minor cases to mediation or to the precinct or the Chain of Command to provide effective solutions and help reduce future misconduct or policy violations. No officer-involved shooting, Type III, or a subset of Type II investigations described below should be closed or deemed ended without the written concurrence of the Inspector General (IG).

OPA should audit administrative investigations of lower level policy violations or minor misconduct performed, in accordance with SPD policy, by supervisors and the chain of command, to assess their completeness, fairness, consistency, and appropriateness. OPA has the discretion to investigate any specific policy violation it chooses, regardless of the seriousness. The goal is that all policy violations are appropriately addressed, and that OPA focuses its investigative resources on less routine allegations or cases that require a higher level of expertise, but that OPA and the IG have general oversight of all accountability systems at SPD. To achieve these ends, the following measures should be taken:

A.    OPA should identify and make recommendations to the Chief of Police and the IG to correct systemic problems in SPD policies, training, supervision, and management, identified in the course of OPA's investigation of possible misconduct or policy violations, to help improve SPD standards and enhance employee conduct.

B.    OPA should work with SPD and the IG to make disciplinary processes fair, impartial, consistent, thorough, timely, understandable, and transparent. OPA should identify and make recommendations to the Chief of Police and the IG to correct systemic problems in SPD policies, training, supervision, and management, identified in the course of OPA's investigation of possible misconduct or policy violations to help improve SPD standards and enhance employee conduct.

C.    OPA should support the appropriate role of SPD line supervisors in the accountability system, including their responsibilities to mentor and actively manage employees and to investigate, document, and address low-level minor policy violations, performance, and customer service concerns at the precinct or unit level.

D.    OPA should work with SPD, the IG, and the City Attorney's Office to help reduce or prevent misconduct through identification of trends or patterns arising through complaints, investigations, and lawsuits, and, without waiving any

attorney-client privilege, should report to the public recommendations made by OPA to City officials based on those patterns or trends. OPA should work with SPD, IG, and the City Attorney's Office to release information associated with police misconduct or policy violation cases as quickly and with as much transparency as legally and practically possible.

E.   OPA should collaborate with SPD and the IG in the development and delivery of SPD in-service training related to the accountability system.

F.   OPA will be housed outside of any SPD facility. OPA should be operationally independent of SPD as far as possible in all respects, although OPA will be an office deemed to be within SPD to increase and strengthen OPA's capacity by providing it access to SPD resources, including unfettered and immediate access to all relevant SPD data systems, personnel, and evidentiary information necessary for proper investigation and oversight responsibilities.

G.   A budget with sufficient staffing and resources for effective OPA operations should be submitted to the City Council annually by the OPA Director separate and distinct from the SPD budget.

H.   OPA should continue to be involved in Type III and officer-involved shootings as set forth in the FIT-OPA Protocol of June 2014. OPA should continue to refer possible criminal misconduct to the appropriate criminal prosecutors.  The pendency of the criminal investigation will not impede OPA's ability to conduct a parallel administrative investigation. Rollouts will continue to be conducted in the same manner as detailed in the FIT-OPA Protocol.

I.   The sworn positions in OPA at all ranks will be replaced by civilians. A sworn SPD employee of the rank of assistant chief or higher will be a liaison and responsible for receiving and fulfilling OPA requests.

## II. OPA REPORTING REQUIREMENTS

A. Timely and informative reporting to the public and its elected officials by OPA is important to sustain public trust and help the City's police accountability system function effectively and allow for regular and continuous improvement.

B. OPA should maintain an easily accessible website with comprehensive, substantive, and timely information on matters of public interest concerning SPD's accountability system.

C. OPA should post online, in a timely manner, summaries of completed investigations, including, to the extent permissible under law, the allegations, the analysis, the findings, and the results of disciplinary appeals without officers' names and addresses.

D. OPA should post online timely updates on the outcome of supervisory actions directed as a result of OPA investigations or complaints, including the status of changes recommended to SPD policies or practices.

E. OPA should regularly report on the effectiveness of the disciplinary system and the nature of discipline imposed.

F, OPA should post online and electronically distribute a report each year to the Mayor, the City Attorney, the City Council, the Chief of Police, the IG as well as to the City Clerk for filing as a public record. This report by the OPA Director should describe the work of OPA and include any recommendations for policy or practice changes arising from investigation of complaints.

G. OPA Director's annual report should include the following:

5

1. The number and percentage of all complaints by classification and nature of allegation received by OPA;

2. The number and percentage of all complaints and allegations sustained and the specific disciplinary or other remedial action taken in sustained cases;

3. The number and percentage of cases which were appealed or grieved, and the number and percentage of these cases in which findings or discipline determinations were changed, and the nature of those changes, as a result of appeals or for other reasons;

4. The number and percentage of all complaints and allegations not sustained, and the basis for all not sustained findings, e.g., unfounded, inconclusive, lawful and proper;

5. The number and percentage of all complaints handled directly by frontline supervisors, referred for supervisory action, training or alternative resolution;

6. The geographic and shift distribution of incidents underlying complaints;

7. The racial, ethnic, gender, and geographic distributions of complainants;

8. The racial, ethnic, gender, assignment, shift and seniority distributions of named employees who are subjects of complaints;

9. The number of named employees who have received two or more sustained complaints within one year;

10. Data regarding the timeliness and thoroughness of OPA and SPD processes, including but not limited to complaint handling, investigations handled by frontline supervisors, mediations, rapid adjudications, and Training Referrals;

11. Patterns and trends in all OPA complaints, including year-to-year comparisons of demographic data that can help identify problems, deter misconduct, and inform SPD policy and practice improvements; and

12. A summary of all cases of significant public concern related to public confidence and trust, including the outcome of reviews by SPD units of officer-involved shootings and in-custody deaths.

H.  The OPA Director should make available to the IG information necessary for its respective auditing and oversight functions in a timeframe allowing for the timely performance of those auditing and oversight functions.

## III. OPA DIRECTOR

A. Qualifications.

The OPA Director should be a civilian with significant legal, investigative, human resources, law enforcement oversight, or prosecutorial or other legal experience. The Director of OPA should remain a mayoral appointment, following a national selection process that includes formal community involvement and the majority vote of City Council. A nationwide search should be undertaken to find applicants for Director. Individuals and groups within Seattle should be encouraged to suggest names to the Mayor. A full background check will be conducted of all finalists. The Director should have the following additional qualifications and characteristics:

1.  A reputation for integrity and professionalism, and the ability to maintain a high standard of integrity in the office;

2.  A commitment to and knowledge of the need for and responsibilities of law enforcement, as well as the need to protect the basic constitutional rights of all affected parties;

3. A history of leadership experience;

4. The ability to gain the respect of complainants, SPD employees, and the public;

5. The ability to work effectively with the Mayor, City Council, City Attorney, Chief of Police, the IG, SPD employees, other public agencies, private organizations, and the public;

6. The ability to work with diverse groups and individuals; and

7.  The ability to maintain independence, fairness, and objectivity, and to advocate where appropriate in an environment where controversy is common.


B. Selection

7

The Director will serve a total of nine years maximum broken down into three three-year segments. Otherwise, the Director may only be removed by the Mayor for cause with the concurrence of the majority of City Council. The Director should be appointed by the Mayor with formal community involvement and the concurrence of the majority of City Council.

C. Duties and Responsibilities

1. The Director will prepare all performance reviews for all personnel, sworn or otherwise. The performance reviews of sworn officers will be transmitted to the SPD for inclusion in personnel files.

2. Manage all functions and responsibilities of OPA.

3. Prepare and maintain the OPA Internal Operations and Training Manual that details OPA policies and procedures, and review OPA processes for compliance with the Manual.

4. Review the effectiveness, accessibility, transparency, and responsiveness of the complaint system.

5. Review and manage the complaint process with the goal that all complaints of police misconduct or policy violations be initiated or referred, classified, and resolved or investigated appropriately.

6. Establish a protocol for investigation of allegations against OPA staff.

7. Make written recommendations to the Chief of Police with regard to findings and discipline upon completion of investigations and the Loudermill hearing, and, where requested, advise the Chief and City Attorney with regard to the re-consideration of recommended findings and discipline, and of disciplinary appeals.

8. Manage the OPA investigative process with the goal of employing best practices for administrative investigations and review investigations for

compliance with the OPA Internal Operations and Training Manual. Direct OPA investigative processes; classify complaints with input from the IG; address any additional investigative work requested or directed by the IG; certify in writing the completion and recommended findings of all OPA investigations and convey these recommendations to the Chief of Police; participate in meetings related to recommended findings and discipline and in due process hearings; and testify as needed in disciplinary appeals.

9. Provide any investigations required by the IG for review and certification as soon as possible after the investigator submits them, to afford sufficient time to conduct additional investigation if requested by the IG, or to consider new material facts raised by the named employee during the due process hearing. Any further investigation should be re-submitted to the IG for review in a timely manner, so as not to unnecessarily delay the completion and certification of the investigation.

10. When necessary, issue a subpoena at any stage in an investigation if evidence or testimony material to the investigation is not provided to OPA voluntarily, in order to compel non-SPD witnesses to produce such evidence or testimony. If the subpoenaed individual or entity does not respond to the request in a timely manner, the OPA Director may ask for the assistance of the City Attorney to pursue enforcement of the subpoena through a court order.

11. Report on the timeliness and effectiveness in resolving all OPA complaints, including those investigated by OPA, those referred by OPA for Supervisor Action, those handled directly by frontline supervisors, and those mediated, as well as those addressed by other means.

12. Report on the implementation of, or response to, OPA recommendations for Training Referrals providing information on whether follow-through was timely and substantive.

13. Manage OPA with the goal that OPA maintains frequent, legally permissible, and regular communications with complainants and named

employees about the status of their investigation, including general information to complainants about disciplinary appeal and grievance, processes and the outcome of such challenges to final findings and discipline determinations.

14. Oversee, strengthen, and report on the effectiveness of mediation programs and other alternative resolution processes.

15. Manage OPA with the goal that investigators and investigative supervisors receive orientation and training about the accountability system and training in administrative investigation best practices, including cross-examination and other techniques; the importance of being respectful to all; interacting and communicating with complainants, witnesses, and employees in fair ways; exercising independence and objectivity; and having expertise on tactics; equipment, procedures, and relevant policy and law.

16. Provide materials and information for the public about OPA processes, how to access the accountability system, the possibility and results of disciplinary appeals; maintain a robust website that is easy to navigate.

17. Provide recommendations to the Mayor, City Attorney, City Council, Chief of Police, and the IG for improving SPD policies and practices.

18. Make recommendations to policymakers with regard to needed improvements to collective bargaining agreements, City ordinances, and state laws.

19. Collaborate with the Chief of Police and other SPD leadership to strengthen the involvement of supervisory personnel in the accountability system so as to build a culture of accountability throughout SPD.


# IV. OPA Investigators

1. The court may wish to consider whether to retain sworn investigators at all. If so, sworn investigators should be permanently returned to SPD from OPA over a 24 month period.

2. The job of serving as a civilian investigator should be posted widely throughout Seattle and the greater metropolitan area. Applicants should submit applications and be subject to a background check. The Director will select the best qualified applicants in consultation with the Inspector General.

3. OPA All investigators must attend classes or training by professional instructors outside the SPD to attain and retain certification to perform as an independent investigator thoroughly versed in contemporary use of force policies, de-escalation, decision point analysis, evidence, cross-examination, and other techniques to establish the truth. The investigators in addition should receive training from the SPD on current policies and procedures.

## V. Inspector General

1. The Parties and amicus are in agreement that there should be an inspector general to monitor and evaluate the work of OPA and all operations of the Seattle Police Department. The Office of the Inspector General (IG) is key to long-standing reform and will serve a monitoring function now and in the future, after the Consent Decree has been dissolved. The IG will be a civilian with no connection to the Department who will monitor, audit, and oversee the Department's investigative and disciplinary systems. The IG may appoint a full-time professional staff consistent with the IG's broad charge.

2. The IG should provide for a full-time program of investigation, audit, inspections, and performance review to provide increased accountability and oversight of the SPD and other entities of city government or entities receiving funds through the city, and to assist in improving agency

operations and deterring and identifying, fraud, waste, abuse, misconduct, and illegal acts. The IG is specifically authorized to conduct audits of the SPD.

3. The IG's primary responsibility should be to monitor the SPD, including the FIT, and OPA, particularly in the areas of: civilian and internally-generated complaints; internal investigations; misconduct; policy violations; discipline; use of force; and in-custody deaths. The IG should review and analyze the numbers and types of complaints; assess the quality and timeliness of OPA and FIT investigations; review the adequacy of data collection and analysis; conduct risk management reviews; review the operations and effectiveness of SPD's "early warning system"; review specific issues regarding supervision, training, and discipline; conduct relevant pattern analysis; and other tasks to ensure the SPD's accountability, transparency, and responsiveness to the community it serves.

4. The office of the OPA Auditor is abolished and the office of Inspector General will take its place. The staff should receive copies of every personnel complaint filed.

5. OPA and the IG may roll to the scene of all SPD officer-involved shootings and other serious uses of force. At the scene, the FIT, OPA, and IG representatives if any should ensure the integrity of the initial investigation process. This includes ensuring that the investigation is being conducted in accordance with all Department policies and procedures.

6. The IG is specifically responsible for overseeing investigations of all serious Type II and III use of force, including but not limited to

   - Officer-involved shootings
   - Any death of a person in police custody
   - Any use of force that results in the subject being admitted to a hospital or taken to an emergency room

- Canine bites
- Strikes with an impact weapon to the head, groin, kidneys or other area susceptible to serious permanent injury.
- Neck restraints
- Broken bones

7. In the days following an officer-involved shooting or a Type III use of force, the IG or an IG representative may attend a preliminary presentation, if any, by Department investigators. At this phase of the investigation process, areas of potential concern are identified that the IG will closely monitor as the investigation proceeds. The IG monitors investigations by evaluating investigators' work at each step of the process and working with those investigators to ensure a comprehensive, objective investigation.

8. The Inspector General should:

   A. Be selected by the Mayor and confirmed by City Council pursuant to a nationwide search with formal community involvement.
   B. The IG will serve a total of nine years maximum broken down into three three-year segments. Otherwise, the IG may only be removed by the Mayor for cause with the concurrence of the majority of City Council. The IG should be appointed by the Mayor with formal community involvement and the concurrence of the majority of City Council.
   C. Be a member in good standing of the bar.
   D. Meet and confer with the Director on classification of a statistically significant sample of Type I cases, a larger statistically significant sample of Type II cases, and all Type III and officer-involved shooting cases.
   E. Review each Type II case as described at ¶6 above, as well as any Type III and officer-involved shooting case prior to closing for thoroughness, completeness, timeliness, fairness, and reasonableness. The case may not be closed until the IG is able to so certify.

F. Review of a specific incident, trend, or pattern at the direction of the Chief of Police, the Mayor, or City Council.

G. Continually review the accountability and disciplinary process.

9. Once the investigation into each incident has been completed, the IG maintains constant contact with the internal Department officials responsible for reviewing the use of force. IG staff routinely meets with SPD officials as they develop an analysis of the incident. IG staff is also present at the SPD Force Review Board.

10. The IG should produce its own, independent written analysis of each officer involved shooting incident, each Type III incident, and each Type II investigation described at ¶6 above, addressing both the quality of the Department's investigation and performance of the involved officers. This independent analysis includes an objective assessment of the OPA or FIT's analysis of each incident, and makes recommendations as to how the incident should be adjudicated. IG staff attends the Force Review Board (FRB) session where each case is adjudicated. IG staff should present its independent analysis to the FRB and be available for any questions posed by the FRB and later to the Chief, post- Loudermill. The IG will also periodically report upon systemic issues and trends related to the use of force, as well as identifying potential areas for improvement.

11. The IG should review patterns relating to civil claims and lawsuits alleging SPD misconduct, payout amounts over time, units disproportionately represented as subjects of claims and lawsuits, related training, and other issues. The IG should review the investigation of the underlying incidents described in such claims and lawsuits, whether those investigations predated the filing of a claim or lawsuit or the investigations were initiated following such filings.

12. The IG will produce semiannual reports and an annual performance evaluation of the OPA and the Director.

13. The IG should deliver a preliminary draft of the semiannual report to the OPA Director and Chief of Police for review and comment. The OPA Director and the Chief of Police should review and comment on the preliminary report to the IG within ten working days after receipt of the report. The IG then should issue the final report within ten working days after receipt of comments from the OPA Director and the Chief.

14. The IG should issue these reports to the Mayor, City Attorney, City Council, the Chief of Police, and the OPA Director as well as to the City Clerk for filing as a public record. The IG will establish and maintain a website upon which these reports and other relevant data should be posted.

15. The IG's public reports should not contain any recommendations concerning the discipline of any particular named employee, nor should the reports comment upon or make any recommendation concerning potential civil or criminal liability of any employee, police officer, or member of the public.

16. The proposed budget for the Office of the IG should be submitted annually by the IG to the City Council. The final budget for the IG must afford sufficient independence and resources to fulfill the responsibilities of the IG set forth herein.

## VI. Disciplinary Review Board

The Disciplinary Review Board should be abolished in favor of a right to appeal to a highly qualified neutral arbitrator with no ties, present or former, to the SPD, police unions, OPA, the appellant, or the city.

15

## VII.    CPC

During the pendency of the Consent Decree, the CPC will continue to perform the functions assigned to it in the Consent Decree and MOU. All proposed changes that would alter or modify the Consent Decree or MOU shall be submitted to the court prior to submission to legislative bodies. As provided in the Consent Decree, the CPC will cease to exist when the Consent Decree terminates. At that time, the continued existence of civilian oversight will be the responsibility of the City.

Yours Truly,

Merrick J. Bobb, Monitor

16