# Seattle
## Community
### Police Commission
Our City. Our Safety. Our Police. Better Together.

August 2, 2016

VIA EMAIL

Dear Judge Robart,

> *"Every community should define the appropriate form and structure of civilian oversight to meet the needs of that community."*[1]

We respectfully ask that Your Honor sign the proposed stipulation submitted jointly by the City of Seattle and the United States on July 11, 2016. That stipulated order was based on the parties' agreement that, for the most part, police accountability remains within the City's legislative authority. The stipulated order provides a framework for the City Council to consider and adopt police accountability system reforms subject to subsequent review by this Court, to ensure the legislation is not at odds with the Settlement Agreement, or to amend the Settlement Agreement to facilitate the legislated reforms if the Court approves them.

We have reviewed the Monitor's August 1, 2016 letter to you, identifying certain accountability changes that the Monitor team says they "would like to see" in place before the consent decree ends. While some of the provisions listed by the Monitor resemble recommendations the CPC or others are likely to propose to the City Council, the Monitor's package as a whole is not as comprehensive or sweeping as the reform package developed by the CPC pursuant to our role under the Settlement Agreement to analyze the existing accountability system and recommend improvements. We believe the City Council must be free to consider and legislate additional measures to ensure Seattle puts in place a highly effective police accountability system, with political independence and a robust community oversight structure. Both the CPC and the OPA Auditor are recommending changes that rectify deficiencies that are not fully addressed in the Monitor's letter to the Court. The CPC's recommendations detail many specific provisions to strengthen the jurisdiction of OPA, ensure broad authority for an Inspector General, and institutionalize community-based oversight. Critically, the CPC's structural recommendations underscore the urgent need for these three oversight bodies to operate with

---

[1] <u>Final Report of the President's Task Force on 21st Century Policing</u>, May 2015, page 26.

1

maximum political independence. The CPC's recommendations also call for open and transparent collective bargaining by the City with its police unions.

**Cornerstone pieces of the CPC's recommendations include:**

### Independence

The Monitor's letter does not address the pressing need to ensure political and budgetary independence of the civilian accountability oversight leaders and offices, and to ensure that the entire system would not be vulnerable to a lack of understanding or commitment to these issues by a future Mayor. Under the CPC's plan, OPA, the Office of Inspector General (OIG), and the CPC are fully independent offices. The OPA Director, the Inspector General, and the CPC Executive Director would have complete budget and program control of their operations and workplans, including authority to hire, supervise, and discharge all of their staff. Interference with, or retaliation against, the staff of OPA, the OIG, or the CPC, or Commissioners, by elected officials, the Chief of Police, or SPD employees is expressly prohibited. To ensure independence and insulate the system from political winds, the OPA Director would be appointed by the Mayor, the Inspector General would be appointed by the City Council, and some Commissioners would be appointed by the Mayor and some by the CPC. All would be confirmed by the City Council.

### Community Oversight

The Monitor's letter makes no provision for a community-based police oversight structure, which most cities have or are striving to create. Under the CPC's plan, the CPC would become the permanent community-based oversight body whose Commissioners represent a range of key perspectives and bring specific expertise to the job of community oversight. The CPC is intended to ensure that not only are police services delivered in a lawful and nondiscriminatory manner, but that they align with community values and expectations. The CPC would be charged with engaging in extensive community outreach to obtain the perspectives of community members and SPD employees on police-community relations, and on SPD policies and practices. The CPC would also monitor and report on the implementation by City elected officials, SPD, and OPA of policy and practice recommendations made by the civilian oversight entities, including monitoring, tracking and reporting on the City's budget, state legislative agenda, and collective bargaining agenda as these relate to advocacy for, and implementation of, recommendations by the civilian oversight entities. The CPC would annually review the effectiveness of the OPA Director and the Inspector General, and identify OPA Director and Inspector General finalists for appointment.

### Collective Bargaining

Bringing transparency and sunlight to the City's position in collective bargaining with the police unions is not included in the Monitor's letter, but is among the CPC's recommendations. Under the CPC's plan, the City's collective bargaining with police unions would be conducted in an open and transparent manner to the maximum extent permitted by state law, and its bargaining agenda must incorporate recommendations made by the civilian oversight entities. Representatives from the civilian oversight entities would serve in a technical advisor capacity during the bargaining process to ensure such recommendations are thoughtfully prioritized and the ramifications of alternative proposals are correctly understood. Should the City not be prepared to bargain these recommendations, automatic re-openers

must be provided. All separate agreements entered into by the City and SPD must be incorporated into new or updated collective bargaining agreements or eliminated.

The CPC has offered many other detailed recommendations for improving Seattle's police accountability system. All of the CPC's recommendations, and those of others, should be vetted through the City's legislative process. This deliberative process is vitally important to ensure that Seattle creates a police accountability system that meets the expectations and needs of our diverse community by allowing the city's elected officials to carefully consider a range of views, weigh competing values, and make decisions in an open forum.

Sincerely,

Rev. Harriett Walden, Co-Chair
Community Police Commission

Lisa Daugaard, Co-Chair
Community Police Commission