# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>     v.<br><br>CITY OF SEATTLE,<br><br>                    Defendant. | CASE NO. C12-1282JLR<br><br>ORDER REGARDING ACCOUNTABILITY ORDINANCE |

Before the court are (1) the City of Seattle's ("the City") July 28, 2017, letter (Letter (Dkt. # 408)) and (2) its supplemental brief concerning the Seattle Police Department ("SPD") accountability ordinance ("Ordinance") (Supp. Br. (Dkt. # 412)). In its letter, the City requests that the court give expedited review to two portions of the Ordinance governing the selection and appointment of the Director of the Office of Police Accountability ("OPA") and the Inspector General for Public Safety ("IG"). (Letter at 1; *see* Ordinance (Dkt. # 396-1) at 24 (§ 3.29.115(A)-(B)), 48 (§ 3.29.230(A)-(B)).) In its supplemental brief, the City renews its broader request for a ruling "that the

Ordinance, as enacted, is consistent with the Consent Decree, that the City may continue to implement the Ordinance, including meeting its bargaining obligations, and that the City must return to the Court for review of any changes to the provisions of the Ordinance and their impact on the accountability system as a whole" following the collective bargaining process. (Supp. Br. at 9-10.) Plaintiff United States of America ("the Government") does not oppose either request. (*See* Letter at 1 ("The [Government] has consented to this request."); *see also* Br. on Account. Ordinance (Dkt. # 396) at 25.)

At the hearing, the court expressed concern that the collective bargaining process was essentially a "black hole" whose impact on the Ordinance and the SPD accountability system could not be predicted. (*See* July 18, 2017, Status Conf. Transcript ("Tr.") (Dkt. # 407) at 21-22.) In order to reassure the court concerning the collective bargaining process, the City agreed to provide: (1) a list of the Ordinance's provisions that the City intends to submit to collective bargaining prior to implementation (Dkt. # 412-1), and (2) a list of the Ordinance's provisions that are unchanged from the draft legislation, previously reviewed and approved by the court, and that do not require collective bargaining (Dkt. # 412-2). (*See* Tr. at 13; Letter at 1.) The court has reviewed those lists but is not reassured. In particular, despite the lists, the City acknowledges that "no provision of the Ordinance is categorically exempt from bargaining" and the relevant unions may disagree with the City's assessment concerning which provisions of the Ordinance are subject to collective bargaining. (Letter at 2; Supp. Br. at 4 (noting that the City's assessments as to which provisions of the Ordinance are mandatory subjects of

collective bargaining "are subject to disputes by the unions impacted by the Ordinance, disputes that will be addressed in the first instance in forums other than this Court.").)

For the same reasons expressed at the July 18, 2017, status conference, the court declines to rule on the entirety of the Ordinance as it relates to the SPD accountability system at this time. (*See* Tr. at 8-9, 21-22.) Until the collective bargaining process is complete, the court cannot be assured that the Ordinance, as it stands today, is a final product. The court declines to rule on a variant of the Ordinance, but will await the final version that is ultimately implemented following collective bargaining.

In withholding its approval, the court is not suggesting that the City should not implement those portions of the Ordinance that the City understood would take effect 30 days after the Mayor signed the Ordinance (*see* Supp. Br. at 3), or that the City should refrain from entering into collective bargaining concerning those aspects of the Ordinance that require it (*see id.* at 9 (suggesting that court approval is necessary for the City to engage in collective bargaining over the Ordinance)). The court simply declines to place its final imprimatur on what is essentially a work-in-progress. The court cautions the parties who either are or will be engaged in collective bargaining over provisions of the Ordinance that the United States Constitution and the right of the City's citizens to have constitutional policing ultimately trumps all other concerns at issue here.

The court, however, is not without some flexibility in providing the parties with guidance. In its July 28, 2017, letter, the City asks more narrowly for the court to provisionally approve just two portions of the Ordinance related to the selection and appointment of the OPA Director and the IG. (*See* Letter at 1 (citing §§ 3.29.115(A)-(B),

3.29.230(A)-(B)).) The City states that the OPA Director and IG "are vital to the City's implementation of the remainder of the Ordinance, and the national selection process for each position will take months." (*Id.*) The court does not wish to impede those selection processes. Thus, to the extent that the City believes the court's approval is necessary before it can engage in those selection processes, the court grants that approval. Indeed, the court is willing to review other specific provisions of the Ordinance in the future should the parties believe such review is necessary to keep the reform process moving forward. The court's approval of sections 3.29.115(A)-(B) and 3.29.230(A)-(B)) of the Ordinance, however, is conditional. If these provisions change in any way, as a result of the collective bargaining process or otherwise, the parties must so inform the court and resubmit the provisions to the court for further review.

IT IS SO ORDERED.

Dated this 7th day of September, 2017.

JAMES L. ROBART
United States District Judge