THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:12-cv-01282-JLR |
| | ) | |
| Plaintiff, | ) | **CITY'S MOTION TO DECLARE IT IN** |
| | ) | **FULL AND EFFECTIVE COMPLIANCE** |
| v. | ) | **WITH THE CONSENT DECREE** |
| | ) | |
| CITY OF SEATTLE, | ) | **RESPONSE TO MONITOR'S** |
| | ) | **COMPLIANCE STATUS REPORT** |
| Defendant. | ) | |
| | ) | **Noted For: October 20, 2017** |
| | ) | **Oral Argument Requested** |

## I.    Introduction

The efforts of the City (especially the officers of the Seattle Police Department ("SPD")), the Department of Justice ("DOJ"), the Monitor, and the Court have taken this case to a milestone: the end of its first phase. The Monitor's ten systemic assessments, which span every requirement of the Consent Decree, show both that SPD has complied with the Decree's terms and has ended any "pattern or practice" of excessive force. The Decree makes either showing an independent basis to declare the City in "full and effective compliance," confirming this case has reached its second phase – a period in which the City must prove that it has sustained compliance for two years.

Reform will continue in the sustainment period. The City must prove that it has sustained compliance with any portion of the Decree for two years before Court can terminate that portion. The

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 1
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Decree mandates that the DOJ and the Monitor verify SPD's sustained compliance. The sustainment period is also an opportunity to use lessons learned to consider amending the Decree to ensure even more accountability and transparency in the ongoing effort to increase community trust in SPD.

The Court should not require City to address the "outstanding elements" and other tasks in the Monitor's recent Compliance Report before declaring full and effective compliance, despite the Monitor's well-intentioned interest in exceeding the requirements of the Consent Decree. The City shares that interest; it has embraced reform and taken it beyond what the Decree requires. SPD's revised policies and practices exceed the requirements of the Decree and have become nationally-lauded models. The City enacted ordinances overhauling its police accountability system and giving residents the right to sue for violations of SPD's bias-free policing policy. The accountability ordinance gives an independent Inspector General broad power to audit SPD policies and practices.[1] Well before SPD officers' secondary employment became the subject of headlines, the accountability ordinance mandated a new civilian unit to manage and regulate secondary employment, and the Mayor issued an Executive Order days ago to carry out that mandate. The parties and the Monitor have spurred reform that goes further than the Consent Decree, but those reforms are not a prerequisite to "full and effective compliance." The ten assessments document SPD's hard work to reach that milestone. It would be contrary to the letter and spirit of the Decree to move that milestone farther down the road.

The City moves for a declaration that it has achieved "full and effective compliance" with the Consent Decree and that this case is in its sustainment period. The Court should also order the parties and Monitor to develop a framework for fulfilling their responsibilities during the sustainment period. A proposed order is attached.

---

[1] The parties should discuss the parallel efforts of the Monitor and the soon-to-be-named Inspector General as they plan oversight in the sustainment period.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 2
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## II.     Overview: The Consent Decree, Its Two-Part Compliance Framework, and the Sustainment Period.

The parties entered the Consent Decree to settle the DOJ's claim invoking 42 U.S.C. § 14141, which authorizes a suit to "eliminate" "a pattern or practice of conduct by law enforcement officers … that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."[2] In findings leading to its preliminary approval of the settlement, the Court found that the Consent Decree "is tailored to the alleged deficiencies identified by the United States" and that its "substantive provisions relate directly to the policies, procedures, training, and oversight that the United States alleges contribute to a pattern or practice of SPD officers using excessive force in violation of the Fourth Amendment and Section 14141." Findings of Fact & Conclusions of Law (Dkt. #14) ¶¶ 17, 25. Because "consent decrees 'have attributes both of contracts and of judicial decrees,'" *Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986) (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235-37 & n.10 (1986)), and "the parties' consent animates the legal force of a consent decree" "in addition to the law which forms the basis of the claim," 478 U.S. at 523, a consent decree is construed according to its terms.  *See United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) (noting that a consent decree "must be construed as it is written, and not as it might have been written").

The Consent Decree requires SPD to comply with it in two phases: SPD must attain "full and effective compliance," then sustain compliance for two years. ¶¶ 229-30.[3] The Decree maps two paths to full and effective compliance. As to any requirement, the City can show that it has

---

[2] Congress recently re-codified 42 U.S.C. § 14141 at 34 U.S.C. § 12601.

[3] The City uses bare "¶" symbols to cite the Consent Decree, which consists of the original Settlement Agreement the parties' amendments, and the Court's provisional approval of the Agreement as amended. Dkt. ##3-1, 13. The Decree also references an MOU between the City and DOJ (Dkt. #3-1, "Introduction"). The MOU expired last year.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 3
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

"incorporated the requirement into policy," trained personnel to "fulfill their responsibilities pursuant to the requirement," and "ensured that the requirement is being carried out in practice." ¶ 184. The Consent Decree tasks the Monitor with "compliance reviews and audits" covering "each requirement of the Settlement Agreement." ¶ 183. Alternatively, the City can reach "full and effective compliance" with the Decree as a whole, rather than with "specific process terms," if it shows via Monitor-conducted "outcome assessments" that "the standard and established practice of SPD officers is to use force within constitutional limits and that no pattern or practice of the use of excessive force exists." ¶¶ 186-187.

After years of effort developing and implementing new SPD policies and putting them into practice, the parties and Monitor planned the ten systemic assessments to evaluate whether those dedicated efforts had resulted in compliance with the Consent Decree. As the City will soon explain in detail, the Monitor's ten systemic assessments show that SPD has achieved full and effective compliance with every requirement of the Consent Decree and has achieved the use-of-force outcomes that demonstrate full and effective compliance with the Decree as a whole.

Full and effective compliance is a milestone, but it is not the end of this case or federal oversight of SPD. The City cannot move to terminate any portion of the Consent Decree unless it sustains full and effective compliance with that portion for two years. ¶ 230.[4] The City expects that the Monitor will fulfill the promise that he and his team will continue "robust, substantive, and probing" monitoring in the sustainment period. Compliance Rep. at 2. The Monitor will retain the "overall duties" that the Decree assigns, including "public reports every six months," and providing

---

[4] Other courts overseeing consent decrees have used a portion-by-portion compliance and termination process. *See, e.g., United States v. City of Pittsburgh* (W.D. Pa. 2002), *order at* https://www.justice.gov/crt/united-states-district-court-western-district-pennsylvania; *United States v. City of Los Angeles* (C.D. Cal. 2009), *order at* https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/US_v_LosAngeles_TA-Order_071709.pdf; *United States v. District of Columbia* (D.D.C. 2001), *available at* https://www.justice.gov/crt/mpd-moa-modifications.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 4
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

"technical assistance." ¶ 173(b)-(c). Whereas the first phase of the case tasked the Monitor with evaluating SPD's "full and effective compliance" with the Decree via compliance reviews and audits or outcome assessments, ¶¶ 182-190, the Monitor's compliance role in the second phase is to "certify whether he or she agrees that the City is in compliance" when the City petitions to terminate all or part of the Consent Decree. ¶ 230. In considering certification, the Monitor (like the DOJ) can conduct "any additional audit or evaluation" after consulting with the parties, "including on-site observations, document review, or interviews" with SPD personnel. *Id.*

The parties and Monitor have already begun discussions about meeting the requirements of the Decree in the sustainment period. Those discussions should crystallize, after a declaration of full and effective compliance, into a plan and timetable for the City to prove sustained compliance.

Finally, although the parties and the Monitor need only meet the requirements of the Consent Decree, everyone with a stake in these reforms has pushed for more. As the Monitor has noted, SPD has implemented policies, training, and data collection practices and analysis capabilities that exceed what the Decree requires. The City overhauled its police accountability system, recognizing that the Court would verify that the overhaul was "consistent with the terms of the Settlement Agreement." ¶ 219. Those efforts have led to a landscape different than anyone foresaw when the Consent Decree was last amended more than five years ago. Dkt. #13. Among other things, the City will soon appoint its first Inspector General for Public Safety, whose wide-ranging duties (including unfettered access to SPD data and the power to audit and report on any aspect of SPD's operations)[5] resemble the Monitor's more than those of any previous police oversight official in Seattle. The City also

---

[5] *See* Ordinance No. 125315 (Dkt. #396-1) at 51-56 (Seattle Municipal Code ("SMC") § 3.29.240), 59-65 (SMC § 3.29.270). Unlike the role the ordinance assigns to the Inspector General in reviewing OPA investigations, the portions of the ordinance giving the Inspector General oversight of SPD policies and practices largely do not require collective bargaining. *See* City's Supp. Br. on Accountability Ordinance (Dkt. #412), Exs. A-B. The City thus expects an Inspector General to begin SPD oversight during the sustainment period.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 5
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

continues to resolve disputes at the bargaining table and at the Public Employment Relations Commission over implementing the accountability ordinance and other policies essential to police reform (like the City's recent body-worn video program for patrol officers). The City just this week began implementing a portion of the accountability ordinance with an Executive Order to create a civilian-operated unit to regulate and manage secondary employment by SPD officers.[6]

The parties and the Monitor should assess this changed landscape and consider amendments to the Consent Decree. *See* ¶ 175 (requiring annual conference as to amendments), ¶ 225 (stating amendment procedures). They should discuss tailoring the Decree to account for the independent Inspector General as she or he begins oversight of SPD, to help ensure that an always-reforming SPD endures beyond this case. The City is also committed to resolving disputes with SPD officers' unions before termination of the Decree, so that the Court can finish its assessment of whether the accountability ordinance and any other essential reform in dispute are consistent with the Decree. If needed, the City will propose amendments consistent with that commitment.

## III.   The City is in Full and Effective Compliance Notwithstanding the "Outstanding Elements" and Other Tasks the Monitor Identifies in the Compliance Status Report.

The Monitor's ten assessments show by both outcome measures and compliance reviews and audits that the City has reached full and effective compliance. The "outstanding elements" and other tasks that the Monitor identifies are not prerequisites to full and effective compliance.

### A.  Background on the Ten Systemic Assessments

The parties and Monitor conceived the ten assessments three years ago. They had collaborated, as the Decree required, on new policies and procedures that the Court approved, and SPD had begun to implement them in training and in practice. A third-year monitoring plan was due

---

[6] *See* Exec. Ord. 2017-09 (http://www.seattle.gov/Documents/Departments/Mayor/Executive-Order-2017-09-Secondary-Employment.pdf).

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 6
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

in a few months. A series of meetings led to the third-year monitoring plan's summary of plans for comprehensive collaborative assessments of "the extent to which various Consent Decree[] provisions have taken root in the real world." 3d-Yr. Monitoring Plan (Dkt. #195) at 7.

### B. The Ten Systemic Assessments Found SPD in "Initial Compliance" with Every Requirement of the Consent Decree.

True to their design, the Monitor's ten systemic assessments were comprehensive: "Collectively, these assessments will cover every area of the Consent Decree." 1st Systemic Assessment ("SA") (Dkt. #231) at 4; *see also* 5th Semiannual Rep. (Dkt. #212) at 11 (stating that the ten assessments cover "all major areas of the Consent Decree"), 6th Semiannual Rep. (Dkt. #251) at 3 (assessments will chart "SPD's progress toward complying with each area of the Consent Decree"), 7th Semiannual Rep. (Dkt. #317) at 3-4 (describing "comprehensive assessments" of SPD's "progress in complying with major areas of the Consent Decree"). The assessments cover 100 paragraphs that the Decree calls the "Commitments" of SPD. ¶¶ 69-168. The Monitor explained that the remaining paragraphs of the Decree are either subsumed within other assessments or not "appropriate for consideration in a systemic assessment because they … do not independently create specific obligations or requirements." 7th Semiannual Rep. (Dkt. #317) at 7.

As the table below summarizes, the Monitor's ten assessments concluded that SPD achieved "initial compliance" with each of the 100 paragraphs of the Commitments of the Decree.[7] For most

---

[7] There are three exceptions. The Monitor did not assess compliance with paragraph 126, which requires the DOJ and the City to confer about policies regarding so-called "*Garrity* warnings" in investigative interviews of police officers. The parties conducted the conference years ago. The Monitor also did not assess paragraph 168, perhaps because it imposes no obligation on SPD, only an option to identify an officer in each precinct to serve as a liaison with the Office of Professional Accountability ("OPA"). ¶ 168. Finally, the Monitor did not assess paragraph 99, which requires SPD to prepare an "annual public report" on its use of force. In January 2017, SPD published its Use of Force Report covering July 2014 through August 2016. *See https://www.seattle.gov/police/information-and-data/use-of-force-data*. The Monitor raised no concerns. SPD's public disclosure of reports and data on the use of force and other Consent-Decree-related topics, like crisis intervention, goes beyond the Decree. *See* 9th SA (Dkt. # 383) at 29 (noting that SPD's publication of data on use of force, along with public-facing "dashboards" to permit public to analyze that data, is "another highly commendable step in SPD's evolution").

---

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 7
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

paragraphs, the Monitor declared SPD's initial compliance in the Executive Summary of each assessment. For the remainder, the Monitor's compliance finding is elsewhere in an assessment or other filing.

| | Topic | Date | Dkt. # | Consent Decree ¶s in compliance (Exec. Summ.) | Other ¶s in compliance |
|---|---|---|---|---|---|
| 1st | Force Investigation & Reporting | Sept. 24, 2015 | 231 | 100-103, 112-114, 117-118 | 91-98, 115-116 |
| 2nd | Force Review Board | Nov. 24, 2015 | 247 | 119-125 | |
| 3rd | Community Confidence | Jan. 27, 2016 | 263 | not applicable | |
| 4th | Office of Professional Accountability ("OPA") | Jan. 22, 2016 | 259-1 | not applicable | 164-167 |
| 5th | Crisis Intervention | Feb. 16, 2016 | 272 | 130-137 | |
| 6th | Supervision | Dec. 31, 2016 | 351 | 153-156 | |
| 7th | Type II Force Investigation | Jan. 27, 2017 | 360 | 103-111 | |
| 8th | Early Intervention System | Mar. 23, 2017 | 374 | 157-163 ("in large part") | |
| 9th | Use of Force | Apr. 6, 2017 | 383 | 69-90 | 127-129 |
| 10th | Stops, Search, & Seizure | Jun. 18, 2017 | 394 | 138-144, 145-152 | |

In Appendix A, the City pinpoints each compliance finding not stated in an Executive Summary.

The Monitor's systemic assessments have elements of both "compliance reviews and audits" (¶¶ 183-185) and "outcome assessments" (¶¶ 186-190). Compliance reviews and audits, like the systemic assessments, were intended to cover every requirement of the Consent Decree, ¶ 183(b), with the option for the Monitor to stop auditing any requirement with which SPD had attained "full and effective compliance," ¶ 185. "Outcome assessments" were not intended to assess individual requirements of the Decree, but instead whether SPD had achieved outcomes consistent with the Decree's goal of ending any pattern or practice of excessive force. ¶ 187. The Monitor's systemic assessments address SPD's compliance with individual requirements of the Decree, but they also measure the outcomes of the City's reform process.

### C. The Monitor's Use-of-Force Assessment Demonstrates that the City Has Achieved Full and Effective Compliance with the Consent Decree as a Whole.

Ending any pattern or practice of excessive force by SPD officers is so central to the Consent

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 8
(12-CV-01282-JLR)

Decree that SPD can show full and effective compliance with the Decree as a whole by "showing that the standard and established practice of SPD officers is to use force within constitutional limits and that no pattern or practice of excessive force exists," ¶ 187, without demonstrating compliance with "specific process terms" of the Decree, ¶ 186.

The Monitor's Ninth Systemic Assessment shows that there is no pattern or practice of excessive force by SPD officers. Giving credit "first and foremost to the men and women of the Seattle Police Department," 9th SA (Dkt. #383) at 10, the Monitor found sharp decreases both in the use of force overall and in the use of more serious force (Type II and Type III). *Id.* at 2-3. The Monitor considered data on uses of force from July 2014 to October 2016 (the earlier date representing when SPD began implementing its Monitor- and Court-approved use-of-force policies), *id.* at 26, and further parsed that data into periods covering July 2014 to August 2015 and September 2015 to October 2016. Where possible, the Monitor compared uses of force during those periods to the 2011 findings of the DOJ that led to this case. The results are striking:

- In the 760,000 incidents to which SPD officers were dispatched during the two-year study period, they used force in just under 2,400 incidents, less than 0.5% of all incidents. 9th SA (Dkt. #383) at 30.

- Use of force decreased 11% from the first half of the study period to the second. *Id.* at 31.

- About 80% of those uses of force were at the lowest level (Type I force – force causing "transient pain" but no injury, or firearm pointing but not discharge, ¶ 64). *Id.* at 31.

- Only 39 incidents over the two-year study period involved serious uses of force (Type III – force that is likely to result in serious injury, ¶ 66), including 15 officer-involved shootings. *Id.* at 32.

- More serious uses of force (Type II and Type III) declined by 60 percent compared with the DOJ's findings covering January 2009 to April 2011. *Id.* at 31.

- More serious uses of force declined across the study period, suggesting that officers were not only using less force overall, but using lower levels of force. *Id.* at 32-33.

- The number of incidents in which officers used force in each of SPD's five precincts was

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 9
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

roughly proportional to the number of arrests in each precinct. *Id.* at 34.

- Although a group of 109 SPD officers accounted for almost 40% of force used during the study period, those officers did not use serious force more frequently than other SPD officers who used force. *Id.* at 39.

- Crime rates remained flat while use of force rates fell. *Id.* at 62-63.

Although the Monitor noted that overall reductions in the use of force did not rule out a pattern or practice of excessive force, *id.* at 64, the Monitor identified no pattern or practice, finding instead that "many of the issues identified in the DOJ's [2011] investigation with respect to the application of force have been eliminated or, otherwise, substantially eliminated," *id.* at 8. *See also id.* at 4 ("[D]eclines in the use of less lethal weapons … directly alleviate one of the key patterns of unconstitutional behavior that the DOJ found in its 2011 investigation"), at 8 (finding no "force incidents that implicated the prohibitions against using force on individuals who had solely verbally confronted officers," a pattern that DOJ identified in 2011). The Monitor had "recommendations" for improved data collection to allow more nuanced analysis of use of force, *id.* at 43 & n.125, 52 & n.144, but pointed to no improvement that was necessary to achieve full and effective compliance.

The Ninth Systemic Assessment is an "outcome assessment" satisfying paragraphs 187 to 190 of the Consent Decree. It shows that there was no pattern or practice of excessive force by SPD officers from July 2014 to October 2016, and thus shows full and effective compliance. ¶¶ 186-187.

### D. The Monitor's "Initial Compliance" Findings Show that SPD Has Reached Its Full and Effective Compliance with Every Requirement of the Consent Decree.

Although the Ninth Systemic Assessment shows the absence of a pattern or practice of excessive force and is thus an independent basis for a finding of full and effective compliance, the ten assessments collectively show SPD's full and effective compliance with every requirement of the Consent Decree, an alternate basis for a full and effective compliance finding.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 10
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    **1.  "Initial Compliance" is Equivalent to "Full and Effective Compliance."**

2        The Monitor couched its systemic assessments that SPD had complied with every paragraph

3    of the Consent Decree (*see* Appendix A) as findings of "initial compliance." Compliance Rep. at 3.

4    The Compliance Report adopts the Monitor's previous definition, that "'initial compliance' in a

5    given area or for particular Consent Decree provisions means that SPD's performance over[] a

6    material time period and across incidents suggests that the Department has reached a level of

7    performance in that defined area that is consistent with complying with the terms of the Court-

8    enforced Settlement Agreement." Compliance Rep. at 3 (quoting 1st SA (Dkt. #231), at 6-7).

9        The City respectfully submits that there is no distinction consistent with the Consent Decree

10   between "full and effective compliance" and "initial compliance." In the Compliance Report, the

11   Monitor takes no position as to whether its "initial compliance" findings amount to "full and

12   effective compliance," reserving that decision for the Court. Compliance Rep. at 2-3. The language

13   of the Consent Decree and the Monitor's past assessments show that the two terms are equivalent.

14       The City disagrees with the Monitor's previous distinctions between "initial compliance" and

15   "full and effective compliance." The Monitor has stated that SPD reaches "initial compliance" when

16   it complies with a specific requirement of the Consent Decree, whereas SPD can reach "full and

17   effective compliance" only when it complies with *every* requirement of the Consent Decree. 1st SA

18   (Dkt. #231) at 1 n.3 ("[I]t connotes that … SPD has initially satisfied the requirements of some

19   provisions of the Consent Decree, but that such initial compliance must be maintained as the SPD

20   moves systematically toward full and effective compliance with the Consent Decree as a whole."), at

21   5 ("'Full and effective compliance' requires clear, sustained evidence that SPD is where it needs to

22   be not just in a few instances or temporarily across some of the Consent Decree's provisions – but

23   that it has reached and maintained the appropriate outcomes and compliance with the whole of the

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE**
**WITH CONSENT DECREE** - 11
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Consent Decree…."). Those explanations are not consistent with the Decree, which allows SPD to achieve "full and effective compliance" on a portion-by-portion basis. ¶¶ 184-185; *supra* Part II.

For the same reason, the Consent Decree does not support the Monitor's assertion that "full and effective compliance," unlike "initial compliance," requires the City to show that reforms are "baked in" or that SPD has "reset its culture." *See, e.g.*, 1st SA (Dkt. #231) at 5, 7th Semiannual Rep. (Dkt. #317) at 3, at 4 n.7 (stating that Monitor "envisions that the Court must look beyond simple fulfillment of the reforms to see whether the culture and ethos of the department has actually changed"). Culture change at SPD and elsewhere in the City has been an important result of the Consent Decree and the broader reforms it has spurred, but the Decree measures compliance with objective benchmarks. As noted above, the City welcomes a discussion of amendments to the Consent Decree or other measures to address concerns about reform outlasting this case. The City does not support disregarding the Consent Decree's objective compliance framework.

### 2. The Monitor Was Unambiguous in the Single Assessment Finding that SPD Had Failed to Attain "Initial Compliance."

The lack of a distinction between "initial compliance" and "full and effective compliance" is apparent in the sole instance in which the Monitor found that SPD had not achieved "initial compliance" with a portion of the Consent Decree. In the First Systemic Assessment, the Monitor found that SPD's sergeants' investigations of Type II force were "not yet where they need to be," and that review of those investigations by lieutenants and captains was similarly deficient. 1st SA (Dkt. #231) at 3; *see also id.* at 35-45 (detailing findings on Type II force investigation and review). That led to more work at SPD to address those deficiencies, and the Monitor's reassessment of SPD's compliance with Type II reporting requirements in the Seventh Systemic Assessment. There, the Monitor found SPD in "initial compliance" with paragraphs 103-111 of the Consent Decree. 7th SA (Dkt. #360) at 7. The First and Seventh Systemic Assessments show the Monitor's approach

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 12
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1  when it found that SPD had yet to achieve compliance.

2         In contrast to the deficiencies that the Monitor pinpointed and reassessed between the First

3  and Seventh Systemic Assessments, other recommendations in the assessments were not a basis for

4  reassessment. For example, the Monitor found "some room for continued progress in FIT [Force

5  Investigation Team] investigations" with respect to the quality of interviews of officers and civilian

6  witnesses. 1st SA (Dkt. #231) at 2. But the Monitor neither reassessed FIT's performance nor

7  suggested a reassessment was necessary. The Monitor instead concluded that if FIT completed its

8  operations manual, it would "be able to maintain compliance" with those requirements. *Id.* at 3. The

9  Court later approved SPD's FIT operations manual. Dec. 13, 2016 Ord. (Dkt. #341).

10        In the Compliance Status Report, the Monitor singles out a few recommendations from prior

11  assessments and deems them "outstanding elements" or other tasks to complete before the Court can

12  find SPD in compliance. A review of those tasks shows that there is no basis to transform the

13  Monitor's past technical assistance into prerequisites for full and effective compliance.

14        **E.  The "Outstanding Elements" Are Not Barriers to Full and Effective Compliance.**

15        The Compliance Report reiterates the paragraph-by-paragraph "initial compliance" findings

16  from the systemic assessments, offers no view as to whether SPD has achieved full and effective

17  compliance with any portion of the Consent Decree, and states that the Court could "consider as

18  adequate" SPD's progress "after the completion of the outstanding elements" that the Monitor

19  describes. *E.g.*, Compliance Rep. at 3-4. The "outstanding elements" and other tasks are as follows:[8]

20        • a finding that the "administrative lieutenants" SPD has assigned to each precinct to

_____

[8] The City does not understand the Monitor to assert that its "recommend[ation] that SPD expand its community
engagement strategies" is a prerequisite to full and effective compliance. Compliance Rep. at 10. The Monitor has
acknowledged the "deserved[] national attention and praise" SPD has received for its approach to community
policing, and agrees that there is "more hard work to be done." *Id.* at 8. The Third Systemic Assessment notes that
the Decree does not require particular community policing approaches or outcomes. 3rd SA (Dkt. #263) at 1-2.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE
WITH CONSENT DECREE** - 13
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

review chain-of-command force reporting and investigation "are in fact curing deficiencies in precinct-level investigations," Compliance Rep. at 5;

- a "recommend[ation] that the Court seek the Monitor's investigation and assurance that chain of command has, since November 2015, identified more policy violations where they exist and that the Department is addressing and incorporating lessons from FRB [(Force Review Board)] review of force cases in a more systematic and systemic manner," *id.* at 7;

- "Accountability and discipline constitute unfinished business and need to be addressed, in the Monitoring Team's view, prior to this Court's ruling overall that the SPD is in full and effective compliance," *id.* at 7;

- a suggestion that SPD follow up on unspecified "recommendations to the system as to OPA investigations," and that a new OPA Director and Inspector General must "meet this Court's standards of independence," *id.* at 14;

- a "further inquiry into SPD's performance across incidents with respect to the use of force in incidents involving subjects experiencing a behavioral crisis," *id.* at 15, including an inquiry into whether the recent shooting of Charleena Lyles is "indicative of systemic issues," *id.* at 17;

- a suggestion that the Monitor must verify that SPD's data analytics platform has improved its early intervention system ("EIS"); *id.* at 16;

- a requirement that "SPD and the City" analyze the causes of an alleged disparity in the proportion of Latino and African-American people who are stopped and frisked by SPD officers, *id.* at 17.

The Compliance Report does not cite any requirement of the Consent Decree with which SPD would comply by completing these tasks. The Consent Decree does not require the "outstanding elements," the Monitor did not previously identify them as necessary for compliance, and the Court should not treat them as prerequisites to full and effective compliance.

      **1.  SPD is in Compliance with the Consent Decree as to "Stops and Detentions" and "Bias-Free Policing," Notwithstanding the Monitor's Interest in Assessing the Causes of Any Racially Disproportionate Outcomes.**

The last of the Monitor's systemic assessments found SPD in compliance with paragraphs 138 to 144 and 145 to 152 of the Consent Decree, which cover "Stops and Detentions" and "Bias Free Policing." 10th SA (Dkt. # 394) at 7. The assessment pointed to no systemic deficiency that

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 14
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   SPD needed to remedy to achieve full and effective compliance.

2          In the Compliance Report, the Monitor points to SPD's policy on bias-free policing, which

3   directs the Department to periodically analyze data to determine if its practices (including stops,

4   citations, and arrests) "may have a disparate impact on particular protected classes relative to the

5   general population," and to consult with the Community Police Commission ("CPC") and

6   community groups to explore alternative practices when it identifies a disparate impact. Seattle

7   Police Manual 5.140-POL(9) (cited in Compliance Rep. at 17). That policy incorporates no

8   requirements of the Consent Decree as to bias-free policing, it is one of many examples where the

9   Monitor and parties worked together to adopt a policy, later approved by the Court, that exceeds the

10  requirements of the Consent Decree. Dkt. ##116, 118. Indeed, the City took another step beyond the

11  Consent Decree, incorporating most of SPD's bias-free policing policy into an ordinance creating a

12  private right of action against the City for any police practice with a disparate impact on traditionally

13  disadvantaged groups. Seattle Ord. No. 125358 (to be codified at SMC Ch. 14.11).[9] The City's

14  reform efforts beyond the requirements of the Decree are not a basis to assess its compliance with

15  those requirements. ¶ 184, *infra* n.11.

16         Although there is no basis to transform the Monitor's interest in SPD's ongoing compliance

17  with the bias-free policing policy into a failure to reach full and effective compliance, this is one of

18  the many inquiries the Monitor has proposed that resemble the inquiries a future Inspector General

19  might make of SPD. Ord. No. 125315 (Dkt. #396-1) at 61 (SMC § 3.29.270(A)(9)) (noting that

20  Inspector General may audit "[p]atterns, including disparate impacts, in … stops, arrests, [and]

21  searches"). The bias-free policing ordinance requires SPD to compile detailed data so that the

22  _____

23  [9] Ord. No. 125358 (https://seattle.legistar.com/View.ashx?M=F&ID=5348643&GUID=5930B6C8-670D-46AC-89C6-C0CEC41680C5).

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE
WITH CONSENT DECREE** - 15
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Inspector General can assess any disparate impact in officers' traffic and Terry stops. SMC 14.11.060(C)-(D), *supra* n.9. Again, the City supports discussions about the impact of the parallel efforts of the Monitor and independent Inspector General during the sustainment period.

### 2.  The Monitor Has Already Determined that SPD is in Compliance with the Consent Decree with Respect to FRB Referrals.

The Monitor reviewed FRB referrals in its Second Systemic Assessment. 2nd SA (Dkt. #247) at 16-19. It found that that the FRB largely acted appropriately in referring cases in which an officer violated SPD policy for internal follow-up (for minor violations) or to OPA (for serious violations). *Id.* at 16-17. It expressed valid concerns about SPD's follow-up on FRB referrals to other bureaus within the Department of possible policy or training issues, *id.* at 18, while noting SPD's proactive steps to improve follow-up, *id.* at 18-19 & n.44. As SPD can show during the sustainment period, it has taken many steps to verify that FRB recommendations are documented and addressed. But the paragraphs of the Consent Decree that apply to the FRB do not impose requirements on SPD's follow-up on FRB policy or training recommendations. ¶¶ 123, 125. That is likely one of the reasons that the Monitor found SPD in initial compliance with all paragraphs of the Decree governing the FRB. 2nd SA (Dkt. #247) at 2. The Decree does not require SPD to comply with policies to the extent they exceed its requirements. ¶ 184 (requiring SPD to enshrine Consent Decree requirements into policy and "ensure that *the requirement* is being carried out in practice") (emphasis added). The Monitor "is not authorized to require implementation in a manner that requires more or different actions on the part of the City than is mandated by the terms of the Settlement Agreement." ¶ 170.

### 3.  The Monitor Praised SPD's Work Complying with the Decree's Crisis Intervention Policies.

The Consent Decree requires SPD to aim for the goal of "reducing the use of force against individuals in behavioral or mental health crisis, ¶ 130, by implementing crisis intervention policies,

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 16
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

training its officers, and tracking data. ¶¶ 130-137. The Monitor found that "SPD is using significant and appropriate restraint in difficult situations, making decisions that preserve safety and reduce use of force," and that this "significant finding" was "supportive of initial compliance." 5th SA (Dkt. #272) at 12, *see also id.* at 13 (noting that "narratives and significant incident reports provided anecdotal support for the notion that SPD is almost always handling crises with a high level of skill and avoiding the unnecessary use of force in difficult situations"). When the Monitor later assessed SPD's use of force outcomes in the Ninth Systemic Assessment, 9th SA (Dkt. # 383) at 45-48, it noted neither concerns about excessive force in encounters with suspects in crisis nor the need for additional steps to achieve compliance.

Since the Monitor's assessments ended, and after SPD's most recent report on its Crisis Intervention Program,[10] the officer-involved shooting death of Charleena Lyles has raised questions about the consistent implementation of SPD's crisis intervention practices. Those are valid and important questions, questions that no one can fully answer until a thorough investigation is complete. The City addresses those questions in more detail below. The City welcomes the scrutiny of the Monitor, the community, and its own accountability system as it looks for answers. That scrutiny, and the conclusions it yields, will be a crucial part of the sustainment period.

### 4.   Compliance Does Not Depend on Recommendations for OPA Investigations or Court Approval of a New OPA Director or Inspector General.

As the Monitor has stated, "the City's requirements [as to OPA] under the Consent Decree were to complete … two policies [regarding SPD officers' obligation to report misconduct to OPA and barring retaliation against people who file OPA complaints] and the OPA Manual, both of which

---

[10] *See* 2016 Crisis Intervention Report (Dkt. #411-1) (use of force in crisis incidents addressed at 16-20 and Appendix A); 2015 Crisis Intervention Report (*http://spdblotter.seattle.gov/wp-content/uploads/2016/08/2015_ Crisis_Intervention_Report.pdf*) (use of force in crisis incidents addressed at 18-20).

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 17
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

in fact were approved by the Court in July 2014." 4th SA (Dkt. #259-1) at 2 (citing ¶¶ 165-167); *see also* Appx. A n.3. The Monitor's suggestions for OPA investigations, Compliance Rep. at 11-14, are not requirements of the Decree, and therefore not prerequisites to full and effective compliance.

The City's new accountability ordinance strengthens OPA (now known as the "Office of Police Accountability") and strengthens oversight of SPD and OPA by empowering the independent Inspector General to address almost every aspect of SPD's operations. *see supra* n.5. The Consent Decree requires the City, when "establish[ing] or reorganiz[ing] a government agency or entity whose function includes overseeing, … investigating, or otherwise reviewing the operations of SPD," to "ensure these functions and entities are consistent with the terms of the Settlement Agreement." ¶ 219. The Court has taken an active role, which is still ongoing, in reviewing the ordinance for consistency with the Decree. Although the City has already stated its commitment to allowing the Court to complete that review before the termination of the Decree, the Decree does not make the Court's review a condition of "full and effective compliance."

The Monitor asserts that the Court will have a role in approving the City's selection of an Inspector General or new OPA Director. Compliance Rep. at 14, 18. But that responsibility belongs to the City Council and Mayor, in a selection process that the ordinance describes. Ordinance No. 125315 (Dkt. #396-1) at 24 (SMC § 3.29.115(A)-(B)), at 58 (SMC § 3.29.230(A)-(B)). The Court recently, without opining as to whether its review of those portions of the ordinance was necessary, stated that it "does not wish to impede those selection processes." Sept. 7, 2017 Ord. (Dkt. #413) at 4. The Consent Decree does not provide for Court approval of the IG or OPA Director.

### 5.   The City Has Complied with the Consent Decree's EIS Requirements.

Earlier this year, the Monitor found SPD "in initial compliance in large part with paragraphs 157 through 163," the Consent Decree's requirements for SPD's early intervention system ("EIS").

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 18
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

8th SA (Dkt. #374) at 1. The Monitor did not, however, identify any shortcoming that left SPD short of compliance with a specific requirement. The Monitor noted that the Court had approved SPD's EIS policy, *id.* at 5, Mar. 20, 2014 Ord. (Dkt. #128), thus satisfying the paragraphs of the Decree that require only policy changes. ¶¶ 158-159, 163. The Monitor recommended policy revisions to address potential conflicts when a supervisor is involved in incidents recorded in a subordinate's EIS file, *id.* at 12-13, but did not assert that the Decree required the change. The Monitor did not contest SPD was collecting the data that paragraphs 160 and 161 require. It did not suggest that supervisors were failing to "periodically review EIS activity of officers in their chain of command," ¶ 162, but thought that some did not adequately document what they reviewed, noting a "significant opportunity" for SPD to provide future training. 8th SA (Dkt. #374) at 11-12.[11]

The sole issue the Compliance Report raises as to EIS is the need to verify the Monitor's expectation that SPD's relatively new data analytics platform ("DAP") will "perform well" in allowing "more sophisticated, effective, and efficient inquiries of officer performance history." Compliance Rep. at 16. The Monitor's prior assessment, however, shows that SPD has already met the requirements of the Consent Decree. SPD shares the Monitor's interest in improving EIS, but EIS's implementation on the DAP is not a prerequisite to full and effective compliance.

### 6.   SPD Has Complied with Its Type II Force Review Requirements, and Will Sustain Compliance Using Its Administrative Lieutenants.

The Monitor has noted that SPD's use of "administrative lieutenants to improve and

---

[11] In the EIS assessment, as in others, the Monitor conflated instances of officers not complying with SPD policies with not complying with the Consent Decree. 8th SA (Dkt. #374) at 11 (questioning whether documentation of EIS reviews showed that "supervisors had complied with the EIS policy's requirements to conduct a sufficiently thorough review of the case file"). The Consent Decree requires compliance assessments to verify that the Decree's requirements are incorporated in policy, that SPD trains personnel "to fulfill their responsibilities pursuant to *the requirement*," and to "ensure[] that *the requirement* is being carried out in practice." ¶ 184 (emphasis added). The City, including SPD, the CPC, and the soon-to-be-appointed Inspector General are entrusted with ensuring that SPD follows polices to the extent they take reform beyond what the Consent Decree requires.

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 19
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

hopefully cure deficiencies in the precinct-level investigations [of Type II use of force] … was not a Consent Decree requirement, but rather a voluntary step evidencing SPD's commitment to full, fair, and complete investigations." 7th SA (Dkt. # 360) at 7. The Monitor found SPD to be in "initial compliance" with paragraphs 103-111 of the Consent Decree, which govern Type II force investigation, reporting, and review, even before SPD began assigning administrative lieutenants to help with review. *Id.* at 7. The sustainment period will permit SPD to prove its continued compliance with those requirements, an obligation that will be easier to discharge because of the assistance of administrative lieutenants. Despite concerns about force review and reporting for Type II uses of force, the outcome assessments of the Ninth Systemic Assessment (Part III.C, *supra*) show no pattern or practice of excessive force. The sustainment period will permit SPD to show, and the Monitor and DOJ to verify that it has maintained compliance with Type II reporting obligations.

### 7.   The Monitor's Appropriate Focus on Inquiries into the Death of Charleena Lyles Does Not Undermine His Past Compliance Determinations.

The City, like the Monitor, awaits the conclusion of SPD's investigation into the shooting death of Charleena Lyles, and knows that the end of that investigation will not end scrutiny of that tragedy. *See* Compliance Rep. at 10, 15, 17. Those inquiries, however, should not undermine the Monitor's conclusions based on past data, conclusions that show that SPD has achieved full and effective compliance with every requirement of the Consent Decree. The Monitor's use-of-force findings, for example, cover thousands of police interactions with Seattle residents from July 2014 to October 2016. If the investigation into Ms. Lyles's death reveals "systemic issues" that lead the Monitor to find that SPD has fallen out of compliance with a requirement of the Consent Decree,[12]

---

[12] The City queries whether the law allows a single incident, even one with as tragic an outcome this one, to serve by itself as proof of "systemic issues." The statute upon which the Court's jurisdiction is founded makes it unlawful to engage "in a pattern or practice of conduct by law enforcement officers" in violation of the Constitution or other

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 20
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

the Monitor can and should address those issues during the sustainment period.

If Ms. Lyles's death is indicative of "systemic issues" within the City's control and the requirements of the Consent Decree, then the City procedures that the Court and Monitor have approved should identify them. The ongoing inquiry into the shooting will reveal, under substantial public scrutiny, the functioning of SPD use-of-force reporting, investigation, and review processes that the Court and Monitor have approved. The investigation will end with an FRB assessment of whether the incident reveals deficiencies in SPD policies, training, or practices, and a mandate that SPD act on the FRB's assessment. If the FRB finds possible officer misconduct, it must, report that misconduct to the OPA. Jul. 27, 2015 Ord. (Dkt. #225) at 5-8. That mandate applies not only to officers involved in the shooting, but any SPD supervisor who was aware of possible misconduct but failed to report it to OPA. Moreover, an OPA investigation can also be initiated by any member of the public who makes a complaint. OPA will evaluate potential misconduct using a process that the Monitor has deemed "exceptionally strong and very well structured," conduct an investigation that the Monitor has deemed "generally satisfactory or better" in the "great majority of cases," and its Director will recommend findings to the Chief of Police in a "back-end" review process that the Monitor called "among the strongest we have seen." 4th SA (Dkt. #259-1) at 3. The Chief will make any decision on discipline, subject to the obligation to report any discrepancy between her findings and the findings of the OPA Director. If these systems should fail, the City assumes the Monitor will take an active role in highlighting systemic issues and opining whether they show that SPD is out of compliance with the Consent Decree. Nothing in the Consent Decree makes the Monitor less able to

---

federal laws. 34 U.S.C. § 13601. It is perhaps for that reason that the Consent Decree prohibits the Monitor from "issu[ing] statements or mak[ing] findings with regard to any act or omission of any Party, or their agents or representatives, except as required by the terms of the Settlement Agreement." ¶ 199. Regardless, it is premature to suggest, before investigatory findings, that Ms. Lyles's death indicates "systemic issues."

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE WITH CONSENT DECREE** - 21
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1  take that active role during the sustainment period.

2  **IV.    Conclusion**

3  A declaration of full and effective compliance will not end the Consent Decree or this case. It

4  is, however, a crucial milestone on the path to lasting police reform in Seattle. It gives the police

5  officers and other women and men serving SPD and the City the recognition for carrying out the

6  hard day-to-day work of policing and reform. It recognizes the work of the community and the

7  Community Police Commission in spurring those reforms. A declaration of full and effective

8  compliance puts to rest questions of whether City personnel – sworn officers and others – have done

9  enough to comply with the Consent Decree, and allows them to focus on the next step, sustaining

10  compliance. The Court, the Monitor, and the DOJ deserve credit for initiating and measuring reform,

11  but the Consent Decree from its inception recognized that lasting reform depends on the City's

12  ability to drive and sustain reform on its own. The City is ready to demonstrate to the Court, the

13  Monitor, the DOJ, and, most importantly, the people of Seattle, that it will sustain reform not just

14  through the sustainment period, but long after.

15  For the reasons stated above, the City requests that the Court grant its motion, declare that the

16  City has achieved full and effective compliance with the Consent Decree, and order the parties and

17  Monitor to prepare a plan for discharging their obligations during the sustainment period.

18  DATED this 29th day of September, 2017.

19  For the CITY OF SEATTLE
    *s/Josh Johnson*
20  Josh Johnson
    Assistant City Attorney
21  Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
22  Phone: (206) 233-7808
    Email: josh.johnson@seattle.gov

23

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE
WITH CONSENT DECREE** - 22
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system on the following counsel of record:

Annette L. Hayes          Annette.Hayes@usdoj.gov

Brian G. Maxey            brian.maxey@seattle.gov

Christina Fogg            Christina.Fogg@usdoj.gov

Eric M Stahl              ericstahl@dwt.com

Gregory C. Narver         gregory.narver@seattle.gov

J. Michael Diaz           michael.diaz@usdoj.gov

Kerry Jane Keefe          kerry.keefe@usdoj.gov

Matthew Barge             matthewbarge@parc.info

Peter S. Holmes           peter.holmes@seattle.gov

Peter S. Ehrlichman       ehrlichman.peter@dorsey.com

Puneet Cheema             puneet.cheema2@usdoj.gov

Rebecca Boatright         rebecca.boatright@seattle.gov

Rebecca S. Cohen          rebecca.cohen@usdoj.gov

Ronald R. Ward            Ron@wardsmithlaw.com

Timothy D. Mygatt         timothy.mygatt@usdoj.gov

Andrew T. Myerberg        andrew.myerberg@seattle.gov,

DATED this 29th day of September , 2017, at Seattle, King County, Washington.

*s/Josh Johnson*
Josh Johnson, Assistant City Attorney
E-mail:  josh.johnson@seattle.gov

**CITY'S MOTION RE: FULL & EFFECTIVE COMPLIANCE
WITH CONSENT DECREE** - 23
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200