THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:12-cv-01282-JLR |
| Plaintiff, | ) | |
| | ) | **CITY OF SEATTLE'S RESPONSE TO** |
| v. | ) | **COURT'S ORDER TO SHOW CAUSE** |
| | ) | |
| CITY OF SEATTLE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO
SHOW CAUSE** - i
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 1

   A.      In 2017 the City Enacted the Accountability Ordinance to Strengthen its System for Police Accountability. ........................................................................................ 1

   B.      The City Is Obligated Under State Labor Law to Collectively Bargain Provisions of the Accountability Ordinance. ................................................................................... 3

   C.      The City Has Now Completed Bargaining with the Two SPD Labor Unions. ................ 5

   D.      Collective Bargaining Resulted in Numerous Changes to the Accountability Ordinance ..5

III.    SCOPE OF THE COURT'S REVIEW .............................................................................. 9

IV.     THE CITY CONTINUES TO BE IN FULL AND EFFECTIVE COMPLIANCE WITH THE CONSENT DECREE. ............................................................................................. 10

   A.      Neither the Shepherd Arbitration Decision Nor the Underlying Incident Bring the City Out of Compliance With The Consent Decree. ...................................................... 11

      i.      The City is vigorously contesting the arbitration order and will ensure that Shepherd does not return to patrol. ...................................................................................... 11

      ii.     The Shepherd incident occurred before many of the Consent Decree reforms had been implemented. ................................................................................................ 12

      iii.    The decision of one arbitrator does not undo six years of progress and reform ......... 13

   B.      By Advancing Key Accountability and Disciplinary Reforms, the CBAs Complement and Build Upon the Progress that the City Has Achieved Under the Consent Decree. ............. 15

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - ii
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

i.    The Office of the Inspector General for Public Safety can now exercise its authorities under the Ordinance. ........................................................................................ 16

ii.    The CBA implements Ordinance provisions intended to make the Office of Police Accountability function more efficiently and effectively. .................................... 17

iii.    The CBA gives the Chain of Command greater authority over and flexibility to make supervisory decisions. ....................................................................................... 19

iv.    SPOG's challenge to SPD's Body-Worn Video policy is withdrawn, allowing this important reform to continue unhindered. ......................................................... 21

v.    The CBA delivers modifications to the disciplinary appeals process for police misconduct. ....................................................................................................... 23

vi.    Consistent with its obligation to bargain, the City made calculated compromises to achieve gains in accountability; if any of those compromises unexpectedly turn out to hinder accountability, they will be high priority goals in the next round of negotiations. .............. 27

vii.    Neither the CBAs nor the Ordinance as modified by the CBAs are inconsistent with the Consent Decree. ........................................................................................... 29

C.    The Provisions Highlighted in City Council's Companion Resolution Do Not Present a Conflict With the Consent Decree. ......................................................................... 29

V.    CONCLUSION .............................................................................................................. 30

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - iii
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# TABLE OF AUTHORITIES

**Cases**

*Cherry v. D.C.*, 170 F. Supp. 3d 46 (D.D.C. 2016) ...................................................... 14

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).................................................. 14

*City of Seattle v. Seattle Public Safety Civil Service Commission*, 155 Wn. App. 878 (Div. 1 2010) ............................................................................................................... 27

*Gen. Drivers, Helpers & Truck Terminal Employees Local No. 120 v. Sears, Roebuck & Co.*, 535 F.2d 1072 (8th Cir. 1976) .................................................................... 25

*Int'l Ass'n of Fire Fighters, Local Union 1052 v. Pub. Employment Relations Comm'n*, 778 P.2d 32 (Wash. 1989)......................................................................................... 3

*Keith v. Volpe*, 118 F.3d 1386 (9th Cir. 1997).............................................................. 4

*Linthicum v. Johnson*, No. 1:02-CV-480, 2006 WL 1489616 (S.D. Ohio May 26, 2006).......... 14

*Monell v. N.Y. Dept. of Social Servs.*, 436 U.S. 658 (1978) ......................................... 14

*Rose v. Erickson*, 721 P.2d 969 (Wash. 1986).......................................................... 4, 25

*Spokane v. Spokane Police Guild*, 553 P.2d 1316 (Wash. 1976) ................................... 4

*Teamsters Union, Local 378, vs. Mason Cnty*, Decision 3706, 1991 WL 733717 (Wash. Pub. Emp. Rel. Com. Jan 31, 1991)............................................................................. 4

*United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975)............................. 14

*United Steelworkers of Am. v. Enter. Wheel & Car*, 363 U.S. 593 (1960)................... 24

**Statutes**

42 U.S.C. § 14141, *recodified at* 34 U.S.C. § 12601................................................... 13

Accountability Ordinance § 1(K)................................................................................... 2

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - iv
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Accountability Ordinance § 3.29.125 ................................................................. 9

Accountability Ordinance § 3.29.130 ................................................................. 6

Accountability Ordinance § 3.29.135(F) ......................................................... 6, 7

Accountability Ordinance § 3.29.140(C) ........................................................... 28

Accountability Ordinance § 3.29.240 ............................................................. 9, 16

Accountability Ordinance § 3.29.300(E) ............................................................. 6

Accountability Ordinance § 3.29.420 ................................................. 7, 8, 27, 28

Accountability Ordinance § 3.29.510 ................................................................. 4

Accountability Ordinance § 4.08.040(A) ........................................................... 27

RCW 41.12.090 ................................................................................................. 27

RCW 41.56.1440(4) ............................................................................................. 4

RCW 41.56.905 ................................................................................................... 3

Seattle Municipal Code § 4.08.040 ................................................................... 27

Seattle Municipal Code § 4.08.100 ................................................................... 27

**Treatises**

Elkouri & Elkouri, *How Arbitration Works* (8th ed) ...................................... 27,

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - v
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## I.     INTRODUCTION

Defendant City of Seattle ("City") respectfully submits this response to the Court's December 3rd order to show cause. As shown below, the Seattle Police Department ("SPD"), remains in full and effective compliance with the Consent Decree.  The Accountability Ordinance, as modified by SPD's latest collective bargaining agreements, is consistent with both the Consent Decree and with the requirements of constitutional policing. Robust police reform continues in Seattle, moreover, despite a single arbitration award that the City is vigorously seeking to overturn. The City should be permitted to continue to build upon its diligent reform work during this sustainment phase of the Consent Decree.

## II.     BACKGROUND

### A.     In 2017 the City Enacted the Accountability Ordinance to Strengthen its System for Police Accountability.

The Court previously directed the parties to file "an approach for SPD accountability and review systems" to assist the Court in creating "a better framework for independent review of the various policies, organizations and systems that will monitor the performance of the Seattle Police Department." Court's Aug. 26, 2015 Order (Dkt.  228). The City Attorney convened a working group that included representatives of several City entities, including the Mayor's Office, SPD, and the Community Police Commission (CPC), as well as counsel for the United States and members of the Monitoring Team, to answer questions posed by the Court regarding SPD's accountability system, and to consider options for Seattle's ideal police accountability system.[1] Dkt. 289.

---

[1] A series of six weekly work group sessions comprised of representatives from SPD, the Office of the Mayor, the Office of Professional Accountability (now the Office of Police Accountability) (OPA), the OPA Auditor and the OPA Review Board (organizations no longer in existence), the

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 1
(12-CV-01282-JLR)

1    The Court laid out a process for Court review and approval of aspects of the accountability

2   legislation that implicate the Consent Decree. Court's Aug. 9, 2016 Order at 2 (Dkt. 305). On October

3   7, 2016, the City submitted to the Court a draft legislative package containing a proposal for a police

4   accountability system. Dkt. 320. The Court approved the draft legislation with limited caveats.

5   Court's Jan. 6, 2017 Order (Dkt. 357).

6    On February 1, 2017, the Mayor transmitted revised legislation consistent with the Court's

7   January 6, 2017 Order to the Gender Equity, Safe Communities and New Americans (GESCNA)

8   committee of the City Council. The GESCNA committee, chaired by Councilmember M. Lorena

9   González, held nine public meetings between January and May 2017 with the participation of

10   various City stakeholders, and the opportunity for public comment. During that same period of

11   time, well over 50 additional meetings and discussions were held between City stakeholders,

12   including the City's police unions, to reach a final product.  The Ordinance was unanimously

13   passed by the Council on May 22, 2017, and signed by the Mayor on June 1, 2017.

14    The legislation envisioned a new police accountability system for Seattle. The stated goal of

15   the Ordinance is to: "institute a comprehensive and lasting police oversight system that ensures

16   that police services are delivered to the people of Seattle in a manner that fully complies with the

17   Constitution and laws of the United States and State of Washington, effectively ensures public and

18   officer safety, and promotes public confidence in SPD and the services that it delivers." *See*

19   Accountability Ordinance ("Ordinance") § 1(K) (Dkt. 396-1). The Ordinance created an

20   independent Office of the Inspector General for Public Safety (OIG) focused on systemic auditing

21

22   _____

23   CPC, the United States Attorney for the Western District of Washington, the Civil Rights Division
     of the U.S. Department of Justice, and the federal Monitoring Team, commenced on March 9,
     2016, and concluded on April 6, 2016.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO
SHOW CAUSE** - 2
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1  and oversight of the Seattle Police Department's policies and practices; increased the duties and

2  modified the appointment process for the independent CPC to give the people of Seattle a voice in

3  SPD's policies and practices; and augmented the authority of the Office of Police Accountability

4  (OPA), which investigates claims of police misconduct.

5         The City submitted the final, adopted legislation to the Court and provided briefing describing

6  the changes that had been made to the draft legislation. Dkt. 305 at 3; Dkt. 396. Because provisions

7  in the Ordinance were subject to collective bargaining, the Court, while issuing limited rulings on

8  aspects of the final Ordinance, declined to undertake a complete review of the Ordinance until the

9  collective bargaining process was complete.  Court's Sept. 7, 2017 Order (Dkt. 413 at 3). The Court

10 conditionally approved sections 3.29.115(A)-(B) and 3.29.230(A)-(B), which pertain to the selection

11 and appointment of the OPA Director and the Inspector General, provided that the provisions do not

12 change during the collective bargaining process.[2] Court's Sept. 7, 2017 Order at 4 (Dkt. 413).

13       **B.    The City Is Obligated Under State Labor Law to Collectively Bargain Provisions of the Accountability Ordinance.**

14       In Washington, cities must engage in collective bargaining when its ordinances, such as the

15 Accountability Ordinance, affect "mandatory subjects of bargaining," including wages, hours and

16 working conditions.  *See generally Int'l Ass'n of Fire Fighters, Local Union 1052 v. Pub.*

17 *Employment Relations Comm'n*, 778 P.2d 32, 35 (Wash. 1989) (interpreting bargaining

18 requirement of Public Employees' Collective Bargaining Act (PECBA)). State law recognizes a

19 strong policy in favor of collective bargaining rights; any provision in state or local law that conflicts

20 with the PECBA is superseded.  *See* RCW 41.56.905 ("if any provision of this chapter [governing

21 public employees' collective bargaining] conflicts with any other statute, ordinance, rule or

22

23 ───────────────

[2] Neither of these provisions changed during collective bargaining.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 3
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

regulation of any public employer, the provisions of this chapter shall control"); *see also Rose v. Erickson*, 721 P.2d 969, 971 (Wash. 1986) ("a liberal construction should be given to all of RCW 41.56 and conflicts resolved in favor of the dominance of that chapter"). If a local law or regulation is inconsistent with a collective bargaining agreement (CBA), then the CBA supersedes. *See Teamsters Union, Local 378, vs. Mason Cnty.*, Decision 3706, 1991 WL 733717 (Wash. Pub. Emp. Rel. Com. Jan 31, 1991) (county violated RCW 41.56.1440(4) because it implemented a no-smoking ordinance without first engaging in collective bargaining); *see also Spokane v. Spokane Police Guild*, 553 P.2d 1316 (Wash. 1976) (Spokane Police Guild's CBA superseded local regulation issued by the Spokane Civil Service Commission).

For this reason, the Accountability Ordinance acknowledges that certain of its provisions must be collectively bargained with the unions whose members are affected. *See* Ordinance § 3.29.510(A). The City Council specified that provisions subject to bargaining would not take effect until the City's "collective bargaining obligations are satisfied." Ordinance § 3.29.510(C). Indeed, under state labor law, those provisions *could not lawfully* be implemented without being collectively bargained. *See Mason Cnty*, 1991 WL 733717, at *9.

The City is not suggesting that Washington's collective bargaining law takes precedence over federal law. If this Court holds that there are provisions of the CBAs which conflict with federal law, then federal law will prevail. However, unless there is a direct conflict between the PECBA and a federal statute or a provision of the U.S. Constitution, the City must comply with its state-law obligations. *See Keith v. Volpe*, 118 F.3d 1386, 1392-94 (9th Cir. 1997) (reversing where "district court . . . concluded, improperly, that the [federal consent] decree prevailed over state law").

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 4
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

C.     **The City Has Now Completed Bargaining with the Two SPD Labor Unions.**

The City completed bargaining with the Seattle Police Management Association (SPMA) in November 2017. S*ee* Dkt. 425 (notifying Court of completed negotiations). The final CBA between the City and SPMA is attached as Exhibit A. The SPMA CBA covers the period from 2014 through 2019.

After extensive negotiations, including consultations between Mayor Durkan's Office, OPA, OIG, and the CPC, the City reached a tentative agreement with the Seattle Police Officers Guild (SPOG) covering 2015 to 2020.  The City's Labor Relations Policy Committee, responsible for establishing the City's bargaining parameters and any changes to those parameters that become necessary during bargaining, approved the tentative agreement prior to its introduction to the full City Council. Unless otherwise noted, throughout this brief "the CBA" refers to the SPOG CBA.

City Council approved the agreement in Ordinance Number 125693 on November 13, 2018, with companion Resolution Number 31855, which seeks this Court's review of the agreement, including a request that the Seattle City Attorney ask the Court to review specific provisions. Mayor Durkan signed the agreement, making it final, on November 14, 2018. The SPOG CBA is attached as Exhibit B and, for additional clarity, a redline comparing the previous CBA to the new CBA is attached as Exhibit C. The Council's Resolution is attached as Exhibit D.

D.     **Collective Bargaining Resulted in Numerous Changes to the Accountability Ordinance.**

As previously contemplated, the final CBAs reached with SPMA and SPOG contain provisions that are inconsistent with—and therefore supersede—provisions in the Ordinance. This Section describes the primary areas of conflict between the CBAs and the Ordinance. The City's position as to the effect and import of these inconsistencies is provided in Section IV.B. In addition,

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 5
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

to aid the Court's review of those changes, the City attaches as Exhibit E[3] an annotated version of the final Accountability Ordinance in a form designed to highlight each provision of the Ordinance that was affected by bargaining. Exhibit E identifies Ordinance provisions (1) that were identified as concerns by the CPC but which, in fact, are neither overridden nor modified by the CBAs (green highlights) and therefore may stand as enacted; (2) provisions that have been modified or supplemented by the CBAs, although the City does not believe result in any meaningful departure from the accountability scheme set forth in the Ordinance (yellow highlights); and (3) provisions that, through bargaining, have been changed substantively (blue highlights).[4]

The most significant changes include[5]—

---

[3] Exhibit E responds to the Court's direction numbered (3) in its December 11, 2018 Order.

[4] The vast majority of the text is not highlighted, either because it represents provisions of the Ordinance that do not directly affect union members and so were not subject to collective bargaining; or because SPOG and SPMA chose to accept them without bargaining.  These provisions were not changed in any way by the CBAs.  This version of the Ordinance is the "bill draft," in which text that is underscored or struck through denotes amendment to previous versions of the Seattle Municipal Code. Such textual designations do *not* indicate changes made by the CBAs.

[5] Other substantive differences include—
- Retaining an obligation to provide Officers with early notice of complaints. *Cf.* Ordinance § 3.29.130(A).
- Modifying the approach to beginning and tolling the 180-day deadline for completion of OPA investigations. *Cf.* Ordinance § 3.29.130(B).
- Changing the consequences when an Officer fails to provide or identify all witnesses or evidence during an OPA investigation. *See* Ordinance § 3.29.130(I).
- Adding a more specific definition of "material dishonesty." *Cf.* Ordinance § 3.29.135(F).
- Removing examples of topics of acceptable CPC advocacy. *See* Ordinance § 3.29.300(E).
- Modifying the circumstances in which SPD may place an employee on unpaid administrative leave pending the outcome of an investigation. *See* Ordinance § 3.29.420(A)(4).
- Eliminating a requirement that disciplinary appeals be open to the public, at least insofar as the requirement applies to grievance hearings. *See* Ordinance § 3.29.420(A)(7)(a).
- Postponing changes to the composition of the PSCSC until bargaining with other affected unions. *See* Ordinance § 3.29.420(A)(7)(b).

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 6
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

<u>Maintaining arbitration as a method for resolving disciplinary appeals</u>. The Ordinance specifically contemplates elimination of the Disciplinary Review Board (DRB) for resolving disciplinary appeals, requiring all appeals to proceed through the City's Public Safety Civil Service Commission (PSCSC). *See* Ordinance § 3.29.420(A)(6). Both SPOG and SPMA sought to retain a bargained-for arbitration system that would have jurisdiction over disciplinary appeals. While the City ultimately agreed to retain arbitration in both contracts, the former DRB panel was abolished and replaced by a grievance arbitration system similar to that applicable to other union employees at the City. *See* SPOG CBA Art. 14; SPMA CBA Art. 16.

<u>Modifying the description of the quantum of proof needed to sustain dishonesty cases and termination cases involving stigmatizing conduct in arbitration</u>. In 2008, the SPOG CBA was amended to provide that, in return for creating a presumption of termination in cases of dishonesty, all such cases require clear and convincing evidence to meet the burden of proof. *See* Art. 3.1 of 2008-2010 SPOG CBA ("In the case of an officer receiving a sustained complaint involving dishonesty in the course of the officer's official duties or relating to the administration of justice, a presumption of termination shall apply. For purposes of this presumption of termination the Department must prove dishonesty by clear and convincing evidence."); Art. 3.1 of 2010-2014 SPOG CBA (same). The Ordinance retains the presumption of termination for "material dishonesty," but removes the "clear and convincing" evidentiary standard. *See* Ordinance § 3.29.135(F). The Ordinance provides that cases involving termination for dishonesty are to be resolved using the "same evidentiary standard used for any other allegation of misconduct." *See id*.

- Allowing discipline reversals in all cases, including minor discipline, through grievance processing. *See* Ordinance § 3.29.420(A)(7)(c).

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 7
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

In accordance with the goal expressed in the Ordinance, the City and SPOG agreed to treat dishonesty in the same manner as other cases of misconduct.  *See* SPOG CBA Art. 3.1. SPOG did not agree, however, to abandon a broader, long-standing arbitration principle that generally allows an arbitrator to apply a higher evidentiary standard in well-accepted circumstances, such as discipline of an employee with long tenure, a good record, or facing career-damaging allegations. The new SPOG CBA thus requires arbitrators to apply a burden of proof "consistent with established principles of labor law." *See id*. Article 3.1 further provides an example of such established principles: the arbitrator may use an "elevated standard of review … for termination cases where the alleged offense is stigmatizing to a law enforcement officer."

Reducing the limitations period for the City to take disciplinary action from five years to four. The Ordinance states that "No disciplinary action will result from a complaint of misconduct where the misconduct comes to the attention of OPA more than five years after the date of the misconduct." Ordinance § 3.29.420(A)(5). This provision essentially increases the limitations period for disciplinary actions from three years, under the old SPOG CBA, to five years. In bargaining, the City and SPOG reached a compromise, establishing a four-year limitations period in the new SPOG CBA. *See* SPOG Art. 3.6.G. The parties also agreed to apply the limitations period to cases in which the alleged misconduct involves dishonesty or Type III Force.[6] *See id*.

---

[6] The Ordinance designated these cases as exceptions to the limitations period. However, SPD's Force Investigation Team and Force Review Board extensively investigate incident involving a Type III use of force, and so it is exceedingly unlikely that the City would ever need the statute-of-limitation exception. The dishonesty exception is also unnecessary, because the exception that covers cases when an employee "conceals acts of misconduct" encompasses the situations involving dishonesty in which the City has needed additional time in the past. *See* SPOG CBA Art. 3.6.G & App. E.12.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 8
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1     <u>Restriction on subpoena power for OIG and OPA</u>. The Ordinance grants subpoena power to

2 both OIG and OPA. *See* Ordinance §§ 3.29.125; 3.29.240(K). In bargaining, the City and SPOG

3 allowed OPA and OIG to issue subpoenas, but agreed to refrain from implementing the use of

4 subpoenas upon officers and their families. *See* SPOG Appendix E.12. They agreed not to implement

5 those elements of the subpoena power at this time, but they will reopen negotiations once further

6 information is obtained, including information about OIG's and OPA's need for such subpoenas.

7     **III.    SCOPE OF THE COURT'S REVIEW**

8     For purposes of ensuring that no provision of the Ordinance, as modified by the CBAs,

9 conflicts with the Consent Decree, the provisions of the Ordinance that have been so modified must

10 be approved by the Court prior to becoming effective. Court's Jan. 6, 2017 Order (Dkt. 357).

11     With respect to the Ordinance, the Court has emphasized that "any number of legislative options

12 might fit within the parameters of the Consent Decree." Court's Jan. 6, 2017 Order at 4 (Dkt 357)

13 "The court notes that the Consent Decree does not mandate that the City make specific changes to

14 its discipline and accountability structures." Dec. 3, 2018 Order at 4. "[T]he court's review

15 considers only whether the . . . legislation conforms to both the terms and the purposes of the Consent

16 Decree." Jan. 6, 2017 Order at 9 (Dkt 357).

17     Finally, the Court has supplied a "test for reviewing legislation related to SPD's accountability

18 systems: Does the legislation conflict with the terms or the purposes of the Consent Decree, which

19 include delivering to the people of Seattle (1) constitutional policing, (2) effective policing, and

20 (3) policing in which the community can have confidence?" Jan. 6, 2017 Order at 4-5 (Dkt. 357).

21     The Court has also indicated that it will examine the CBAs reached with SPMA and SPOG

22 to determine whether, apart from changes to the Ordinance, any of the other provisions conflict

23 with the terms or purpose of the Consent Decree. *See* Nov. 5, 2018 Status Conf. Trans at 51:13-20;

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 9
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Oct. 23, 2018 Order at 2 & n.2 (Dkt. 485).  The Court has indicated that its review will focus in part on the question of whether the disciplinary processes "ensure[] that appropriate oversight and accountability mechanisms are in place . . . to secure[] constitutional and effective policing in this City beyond the life of the Consent Decree." Dec. 3, 2018 Order at 5 (Dkt. 504). Finally, the Court has asked the City to provide information regarding the discipline, DRB process, and outcome in the appeal of Officer Adley Shepherd's termination.

## IV. THE CITY CONTINUES TO BE IN FULL AND EFFECTIVE COMPLIANCE WITH THE CONSENT DECREE.

The parties, the Monitor, and the Court agreed to measure the City's continued compliance with the Consent Decree based on the audits and assessments set forth in the Sustainment Plan. *See* Sustainment Plan (Dkt. 444) and Court Order Approving Sustainment Plan (Dkt. 448). Thus far SPD has demonstrated sustained compliance in all areas, including successful and timely completion of the first three audits which evaluated (1) supervision; (2) reporting, investigation, and review of uses of force; and (3) crisis intervention and the use of force against people in crisis. *See* Dkts. 497-1, 497-2, & 511. The Monitoring Team and the Department of Justice reviewed randomly selected samples of data underlying each report and independently verified SPD's findings of compliance.

The City's efforts to achieve full and effective compliance with the Consent Decree have not been frustrated by collective bargaining or by the recent successful disciplinary appeal by Shepherd. Former Chief O'Toole terminated Shepherd's employment on November 19, 2016, for violating SPD's policies regarding use of force. Under the CBA, SPOG had the right to appeal the disciplinary decision to the DRB, composed of one management representative, one officer

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 10
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   appointed by SPOG, and a neutral arbitrator selected by the parties. The neutral arbitrator issued a

2   decision to reinstate Shepherd on November 20, 2018.

3          The City has filed a petition for a writ of review or certiorari in King County Superior

4   Court, contending that Shepherd's reinstatement is contrary to public policy. Regardless of the

5   outcome of the writ proceeding, the City believes that this single, erroneous arbitration decision

6   based on an incident that occurred in 2014 cannot undo the successful reforms that the City and

7   the Department have carried out over the past six years under the Consent Decree. That progress

8   and the further reforms of the Accountability Ordinance will ensure that the Shepherd incident

9   remains an outlier.

10         Moreover, as set forth below, the City's successes in bargaining—including

11   implementation of body-worn video and substantial progress in reaching the goals of the

12   Accountability Ordinance—has resulted in concrete and meaningful advances in police

13   accountability, transparency, and discipline.

14   **A.     Neither the Shepherd Arbitration Decision Nor the Underlying Incident Bring the City Out of Compliance With The Consent Decree.**

15              *i.    The City is vigorously contesting the arbitration order and will ensure that Shepherd does not return to patrol.*

16

17         First and most importantly, the City and SPD are committed to preserving the important

18   progress in community relations and public confidence that has been made under the Consent

19   Decree. ***The City will not reinstate Shepherd until it is ordered to do so by a Court. If ordered to***

20   ***reinstate Shepherd, the City will comply, but it will place him in a "suitable position" as***

21   ***described by the arbitrator, which will not include patrol or training duties.*** Exhibit F[7] at 30.

22

23   _____

[7] Copies of the arbitrator's written decision and the briefs in *Shepherd* are included as Exhibit F to this filing. These materials provide important context about the position taken by the City in the

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 11
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

SPD terminated Shepherd because of his conduct, and the City has already filed a writ of review or certiorari in King County Superior Court contesting the arbitrator's order of reinstatement. Exhibit G.

> ii. *The Shepherd incident occurred before many of the Consent Decree reforms had been implemented.*

The Shepherd incident occurred in June 2014. The City does not believe this particular incident was the result of inadequate policies or training. No matter how robust a police department's policies and training, there will be rare instances when an officer uses force in a way that violates policy or the law. That is why the Consent Decree sets forth requirements not only for policies and training, but also systems for critical review of officer actions that will ensure (1) systematically good performance, and (2) that when out-of-policy incidents arise, these incidents are timely reported, investigated, reviewed, and – where appropriate – referred for disciplinary review. In this incident, Shepherd's supervisor referred the incident to OPA for investigation within hours, and when the matter came before Chief O'Toole she took decisive action to hold Shepherd accountable.

SPD's current policies and training are vastly improved since the Shepherd incident and, in fact, receive national recognition as exemplars. For example, SPD's Crisis Response Unit provides crisis intervention and de-escalation training to other law enforcement agencies through the Department of Justice, Bureau of Justice Assistance's VALOR program. Since 2016, SPD officers have trained thousands of officers in at least 23 states. Under the Consent Decree, in consultation with the Monitor, the Department of Justice, and community stakeholders, the

---

Shepherd matter and are responsive to the Court's directions numbered (1) and (2) in its December 11, 2018 Order.

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Department developed new Use-of-Force policies that were approved by the Court in late 2013.

Dkt. 115. Shepherd had not completed training on these new policies at the time of the June 2014

incident. Since the 2013 policies, the Department has continued to revise and improve upon its

Use-of-Force policies. In the most recent set of revisions, approved by this Court in August, SPD

substantially reworked the language regarding de-escalation, making it explicit that de-escalation

tactics must be used even when the subject is not receptive to engagement:

> De-escalation may take the form of scene management, team tactics, and/or individual engagement. Even when individual engagement is not feasible, de-escalation techniques including scene management and team tactics such as time, distance, and shielding, should still be used unless doing so would create undue risk of harm to any person due to the exigency/threat of a situation.

Dkt. 471-1 at 13 (proposed revisions); Dkt.477 (order approving revisions).

The Department has also overhauled its use-of-force training since 2014. In notifying the

Court that it had approved SPD's 2015 training program, the Monitor reported that "de-escalation

is the foundation of SPD's new tactical skill set and woven throughout the training." Dkt. 254 at

2.

>           iii.    *The decision of one arbitrator does not undo six years of progress and reform.*

Finally, one wrongly decided arbitration decision does not constitute grounds for the City

to be held non-compliant with the Consent Decree. This case was initiated by the Department of

Justice under 42 U.S.C. § 14141, *recodified at* 34 U.S.C. § 12601, which authorizes civil actions

when law enforcement "engage[s] in a pattern or practice of conduct . . . that deprives persons of

rights, privileges, or immunities secured or protected by the Constitution or laws of the United

States." In keeping with these parameters, the Consent Decree provides that "a temporary or

isolated failure to comply, during a period of otherwise sustained compliance, will not constitute

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 13
(12-CV-01282-JLR)

a failure to maintain full and effective compliance." ¶ 184; *see also United States v. ITT Continental Baking Co*., 420 U.S. 223, 238 (1975); ("[C]onsent decrees are essentially contractual agreements that are given the status of a judicial decree.").

Similarly, in the context of section 1983, a single instance of failure to discipline does not establish an unconstitutional custom, policy or practice under *Monell v. N.Y. Dept. of Social Servs.*, 436 U.S. 658 (1978). *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").

Here, moreover, there was no failure to discipline; the City terminated Shepherd. At least two federal courts have held that a City is not responsible under section 1983 for an arbitrator's decision to reinstate a police officer. *See Cherry v. D.C.*, 170 F. Supp. 3d 46, 50 (D.D.C. 2016); *Linthicum v. Johnson*, No. 1:02-CV-480, 2006 WL 1489616, at *31-32 (S.D. Ohio May 26, 2006).

In this instance, aside from an erroneous penalty decision by a third-party arbitrator, the City's system of accountability worked as it should. The force was immediately reported and investigated. The wrongful conduct was quickly identified by the Chain of Command and referred to both OPA and then to the Washington State Patrol and Federal Bureau of Investigation, due to the potentially criminal nature of the conduct. Although no criminal charges were filed, the Department adopted the most severe disciplinary option it could—termination. The City strongly disagrees with the arbitrator's decision, but it is important to recognize that the force reporting, investigation, and review process established under the Consent Decree worked here.

Regardless of the outcome of the City's appeal of the arbitrator's decision, the Department sent a clear message to officers with its decision to terminate Shepherd: unnecessary or excessive uses of force will not be tolerated.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 14
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The Department's performance under the Consent Decree cannot be assessed based on a single incident. That is why the parties, the Monitor, and the Court approved a schedule of audits and outcome reports during the sustainment period. The City's continued compliance with the Consent Decree should be measured by this standard.

### B. By Advancing Key Accountability and Disciplinary Reforms, the CBAs Complement and Build Upon the Progress that the City Has Achieved Under the Consent Decree.

The disciplinary system and accountability measures in the CBAs will effectuate ongoing reforms in accountability and constitutional policing. The Consent Decree addresses police accountability and discipline in general terms but does not mandate any particular structure or processes. Consent Decree ¶ 170. The Accountability Ordinance envisions a particular system of accountability, but the City's elected leaders passed the Ordinance knowing that its terms would have to be collectively bargained with SPOG and, to a lesser extent SPMA, because it affected the working conditions of police officers. The results of the City's labor negotiations should therefore be compared against the status quo—not against the terms of the Accountability Ordinance (which could not legally take effect until after bargaining).

Consistent with its obligation to bargain, the City reached compromises during negotiations. None of the Ordinance's provisions were cast aside or ignored during bargaining. Rather, the City believes that the outcomes achieved are the product of robust, interest-based negotiations by the parties. The City considers SPOG and SPMA to have been responsible, thoughtful participants in the bargaining process. The final agreements represent a balancing of interests in the disciplinary and accountability system. It is important to note, in addition, that any accountability goals set forth in the Ordinance may be achievable in future CBA negotiations. The

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 15
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

City is confident that both completed and future negotiations will unequivocally advance the goals of police accountability and reform.

This Section addresses the Court's request for a description of the changes the SPOG CBA makes to the SPD disciplinary and appeals processes that were in place at the time of the Shepherd incident.[8] In addition, the City provides as Exhibit I a chart that visually depicts the primary changes to these processes. *See* Court's Dec. 11, 2018 Order at 2, no. (4).

>    i.   *The Office of the Inspector General for Public Safety can now exercise its authorities under the Ordinance.*

One significant improvement in the Ordinance, as negotiated, is the creation of a new OIG to be headed by the Inspector General. Ordinance § 3.29.240. The OIG is an independent body entrusted with conducting audits and analyses of SPD policies, procedures and practices. The Ordinance afforded OIG responsibilities and authorities, which had to be collectively bargained to the extent they affect the handling of alleged misconduct involving police officers or other working conditions. The work of collective bargaining is now complete and the new agreement explicitly recognizes that OIG will have "full and unfettered access" to the operations of the Department. *See* CBA App. E.12 (regarding Ordinance § 3.29.240(C). With minor exceptions described below, OIG can now assume its role as envisioned by the City Council and the many community groups that contributed to the Ordinance.

Section 3.29.240(G) directs the OIG to review and audit SPD's handling of incidents involving death, serious injury, serious use of force, mass demonstrations, and serious property damage. Section 3.29.270(A) establishes an even broader audit role for OIG, authorizing it to audit

---

[8] The contract in effect at the time of the Shepherd incident was two versions earlier than the SPOG CBA approved by the Council on November 13, 2018. For present purposes, there are no significant differences between the two earlier versions.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 16
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

"any and all police operations" for the purpose of determining whether SPD is meeting its mission to address crime and improve quality of life through constitutional, professional, and effective policing. Collective bargaining with SPOG and SPMA had no effect on these critical review and audit roles.

Sections 2.29.240(G)(1) & G(2) give OIG access to "any incident scene" and allow it to participate in SPD administrative investigations and reviews of SPD's Force Investigation Team. As a result of the CBA, OIG can now make use of this right of access. Included in this right of access is the ability to attend all OPA interviews as a neutral observer, CBA Art. 3.6.F.5, and have full access to SPD's Force Review Board, *id.* App. G

Section 2.29.240(K) authorizes OIG to issue subpoenas necessary to carry out its statutory duties, and the CBA implements OIG's subpoena power as to third party witnesses, but does not provide for subpoenas to police officers and their families. *See* CBA App. E.12. The effects of the limit on OIG's subpoena power are probably very limited. First, it is exceedingly rare for an officer to refuse to participate in an OPA interview (the City is unaware of this ever happening), because of the disciplinary consequences, and OIG will have the right to attend such OPA interviews. Second, OIG's role is to examine policies, procedures and practices—a system-wide focus that is not likely to require issuing subpoenas to individual officers or their families. However, if the limit on its subpoena power impedes OIG's ability to do its job over the next year, then the City can raise the issue through the "reopener" provision in the CBA. *See id.*

        ii.    *The CBA implements Ordinance provisions intended to make the Office of Police Accountability function more efficiently and effectively.*

First, the SPOG and SPMA CBAs made important strides with respect to civilianizing OPA. Prior to these negotiations, all OPA investigators and supervisors were sworn officers. The

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

SPMA CBA enabled the City to civilianize a captain and two lieutenants who were supervisors in OPA. The SPOG CBA provided that two OPA investigators—positions currently held by sergeants—can be civilianized. *See* SPOG CBA App. D.

Second, Article 3.6.A addresses OPA intake requirements for classifying and providing the named officer and SPOG with notice for new complaints. The section simplifies the burden on OPA by eliminating the requirement that OPA specify each and every policy or rule that could be implicated.

Third, the SPOG CBA also made important improvements in calculating the 180-day time period within which OPA must conduct misconduct investigations. SPOG CBA Art. 3.5.F. The 180-day period will be extended if new material evidence is produced by SPOG at a due process hearing so that OPA will have up to sixty additional days to investigate. CBA Art. 3.5.F. In addition, the language—which was in both the old CBA and the Ordinance—stating that the 180-day clock would start when any sworn supervisor (including SPOG sergeants and SPMA lieutenants and captains) was "in receipt of" a complaint has been eliminated. That formulation created issues for the City, especially in situations when the sworn supervisor had learned of the misconduct but took no action. The new contract relaxes the trigger for the 180-day period for matters handled by the Chain of Command by removing the subjectivity of the former provision often referred to as the "knew or should have known standard."

The new SPOG CBA addresses that problem by providing that the clock will start not when a supervisor receives a complaint, but when the supervisor affirmatively takes action to ensure the matter will be reviewed and investigated. For serious misconduct, *the supervisor must forward a formal complaint to OPA within 48 hours*. *See* Art 3.6.B.ii. For matters involving less serious misconduct that are submitted to the Chain of Command, the 180-day time period does not start to

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 18
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

run until fourteen days after the initial supervisor actually submits the incident up the Chain of Command. In addition, the CBA expands the list of reasons for which the City can receive an extension of the 180-day time period and requires that SPOG must put in writing its reason for denying such a request. Art. 3.6.C.

### iii. The CBA gives the Chain of Command greater authority over and flexibility to make supervisory decisions.

The CBA negotiations resulted in a number of operational and discipline-related improvements, including, first, the Chief's expanded authority to impose pre-investigation suspensions. The new CBA allows the Chief to suspend an officer **without pay** pending investigation for gross misdemeanors alleging moral turpitude, or a sex or bias crime, where the misconduct could lead to termination. SPOG CBA Art. 3.3 (emphasis added). Previously, the Chief was only allowed to impose unpaid suspensions for felonies. *See* 2010-2104 SPOG CBA Art. 3.3.

Second, a robust system of accountability requires active involvement by supervisors, who must have a clear understanding of their responsibility to appropriately deal with less serious matters that are not sent to OPA. The new CBA enables the Department to handle relatively small performance issues through an officer's supervisor providing feedback, instruction, or training—rather than requiring that all issues be submitted through the formal OPA process—by establishing a new procedure for investigating and resolving such issues. SPOG CBA Art. 3.8. By creating a new alternative to making a formal OPA complaint, this provision is intended to empower supervisors to address small problems quickly, before they become larger problems. The prior SPOG contract did not provide procedures for such reviews. The new Article 3.8 allows minor policy violations to be handled as a performance matter rather than discipline.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 19
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Third, the new contract recognizes that there may be times where the Chain of Command investigates a matter, and for whatever reason does not either recognize or have evidence suggesting that a serious policy violation may have occurred. The new SPOG agreement provides that an investigation will in fact still occur if the Chain of Command concludes that no misconduct occurred, and (i) material new evidence (such as a video) is later produced that suggests serious misconduct did occur (which would then trigger a new 180-day period), *see* Art. 3.6.B; or (ii) a community member subsequently complains about a matter involving a Type II use of force, bias, or pursuit (which would allow the 180-day time clock to be re-calculated such that an investigation still can be conducted), *see* Art. 3.6.D.  The City believes that these mechanisms and backstops will significantly bolster the public's confidence in having the Chain of Command review and investigate less serious matters, and concomitantly ensure OPA is better able to efficiently and effectively handle all of its important functions.

Fourth, new Article 7.4.4 establishes a process allowing the Department to transfer employees for performance reasons after providing notice and an opportunity to improve.  Under the old CBA, employees with performance issues generally were entitled to select their new assignment. *See* Exhibit D, Art. 7.4 (redline comparing previous CBA to new CBA).

Article 3.11 creates a new system, envisioned as a "pilot program," allowing for the rapid adjudication of matters in which the officer agrees to waive a formal investigation and accept discipline. The Chief's decision in rapid adjudication cases will be final, binding, and not subject to appeal. This provision is intended to make a clear option available to officers who wish to accept responsibility, thereby avoiding a time-consuming investigation and preserving the officer-employer relationship.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 20
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

    *iv. SPOG's challenge to SPD's Body-Worn Video policy is withdrawn, allowing this important reform to continue unhindered.*

   SPOG had previously filed an unfair labor practice complaint seeking to overturn the 2017 Mayoral Executive Order mandating the use of body-worn video (BWV).  Under the terms of the SPOG CBA, the Guild is required to withdraw this unfair labor practice.  *See* CBA App. A. Ongoing implementation of BWV throughout the Department could have been significantly complicated by the pending claim, and if litigation had proceeded on the matter, then the use of BWV may even have been suspended. There is no longer any risk of that progress being undermined.

   The SPOG CBA provides a 2% premium to officers who are required to wear BWV as part of their duties. Paying a premium to officers who are required to wear BWV does not conflict with the Consent Decree.  The SPD's body-worn video policy is mandatory and does not permit officers to choose whether to wear or when to activate video. The policy was developed based on thorough research, a pilot program, community surveys, community outreach and discussions with stakeholder groups, and input from the Monitoring Team and the Department of Justice. *See generally* Dkts. 361 & 379. The policy,[9] set forth in Title 16 of the Department's Manual, took effect on July 19, 2017, after being reviewed and approved by the Court.[10]  *See* Dkt. 390. The Department implemented the policy on a rolling basis throughout 2017 and early 2018, so that all officers could receive appropriate training before they deployed with BWV.

---

[9] The policy is available at https://www.seattle.gov/police-manual/title-16---patrol-operations/16090---in-car-and-body-worn-video .

[10] The Court held in its order approving the policy that, while BWV is not addressed by the Consent Decree, nonetheless "both the Monitor and the court have the authority to examine whether Section 16.090-POL-2, Paragraph 3—which relates to officer reporting—conflicts with the reporting requirements set forth in the Consent Decree or any other Consent Decree provision." Dkt. 390 at 4-5.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 21
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

In its order approving the policy, the Court observed that, while BWV is not addressed by the Consent Decree, the reporting, review and investigation of uses of force are covered extensively. Dkt. 390 at 4. Accordingly, the Court held that it and the Monitor had the authority to evaluate aspects of the BWV policy related to officer reporting in order to determine whether they conflict with the Consent Decree.  Dkt. 390 at 4-5.

SPD's body-worn video policy is mandatory and allows exemptions only for the purposes of protecting the rights of community members. Section 16.090 Policy 1, Paragraph 5(b), of the Seattle Police Manual requires, when safe and practical, that all sworn officers in uniform must record the following police activities from start to finish:

- Dispatched calls, starting before the employee arrives on the call to ensure adequate time to turn on cameras

- Traffic and Terry stops

- On-view infractions and criminal activity

- Arrests and seizures

- Searches and inventories of vehicles, persons, or premises

- Transports (excluding ride-alongs and passengers for meetings)

- Vehicle eluding/pursuits

- Questioning victims, suspects, or witnesses (This does not include conversations with persons merely wishing to pass on information about general criminal activity not tied to a specific event.)

To protect the privacy, dignity, and First Amendment rights of community members, the policy recognizes limited exceptions to the requirement that officers record their police activities on BWV. SPM § 16.090 POL-1 Section 5(c-g).

The CBA does not change any aspect of this policy, including the provision that relates to officer reporting of force, which was previously examined by this Court. The relevant provision of the CBA provides that:

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 22
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

> Effective the first pay period after January 1, 2018, an additional two percent (2%) of the base monthly, top-step salary for the classification held by the affected employee shall be paid to employees required to wear BWV while on duty for the City. . . . *The determination of which officers will wear (or not wear) BWV will be made by the Department.*

SPOG CBA Art. 6.5.2 (emphasis added).

The two-percent premium does not constitute "paying for constitutional policing." First, the language makes it clear that SPD retains the authority to require officers to wear BWV; *officers cannot opt out of the requirement*. If an officer wears a uniform, then he or she must wear a camera.

Second, providing additional compensation for officers wearing body cameras is appropriate given that their use adds an additional layer of complexity and responsibility for such officers. BWV-equipped officers must follow policies regarding camera activation. They must also exercise additional discretion when balancing privacy, dignity, and free-speech rights during police activities. Finally, the premium is particularly appropriate for the implementation phase of the new BWV program. Once BWV has been fully integrated into police operations, justification for a premium may be reduced, and the City can seek to eliminate it in negotiations for the successor CBA, to be effective in 2020.

> v. *The CBA delivers modifications to the disciplinary appeals process for police misconduct.*
>
> a) The CBA eliminates the Disciplinary Review Board and adopts in its place a new system for selecting an arbitrator.

Arbitration under the new CBA will be different from the system that produced the Shepherd decision. A DRB panel issued the decision reinstating Shepherd and the SPOG CBA eliminates the DRB. In place of the DRB, the CBA adopts an updated method for selecting an arbitrator, which the City anticipates will lead to faster processing of appeals.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 23
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The CBA retains arbitration as an alternative to the PSCSC for disciplinary appeals. Binding arbitration has significant advantages and it is a fundamental feature of both federal and state labor law.  Arbitration is a relatively fast, inexpensive method of resolving labor disputes.

Binding arbitration is an integral part of federal labor law. The Supreme Court recognized the critical importance of arbitration in one of its Steelworkers Trilogy cases:

> The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960), the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level—disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements.

*United Steelworkers of Am. v. Enter. Wheel & Car*, 363 U.S. 593, 596 (1960).

Because public safety employees are prohibited from striking, arbitration is considered to especially critical in this setting.

> While private-sector unions utilize alternative dispute resolution, they have the right to strike—a compelling inducement for private employers to resolve disputes before even considering whether binding alternative dispute resolution is appropriate and worthwhile. The right to strike generally does not belong to public-sector employees, because such employees provide services, often essential, to the public. As a result, public-sector employers and unions may use alternative dispute resolution more than their counterparts in the private sector. Indeed, states have passed laws creating procedures for alternative dispute resolution as a remedy to reduce the incentive for employees, such as school teachers, to strike, or as a remedy for the inability of employees, such as police officers, to strike in the first place.

Elkouri & Elkouri, *How Arbitration Works,* Ch. 22.4 (8th ed) (treatise excerpt is provided as Exhibit H to this filing).

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 24
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Arbitration of discipline and other disputes is a recognized method for resolving disagreements in union contracts at the City. *See Rose v. Erickson*, 721 P.2d 969, 971 (Wash. 1986) ("as a matter of policy, arbitration is strongly favored."). ***Under all twenty-eight of the collective bargaining contracts to which the City is a party, employees have the ability to challenge discipline through arbitration.*** This includes firefighters, utility workers, carpenters, court marshals, IT professionals, parking enforcement, and every other City employee under a collective bargaining contract. The City is not aware of any CBA for public safety employees in Washington state that does not allow for arbitration of major disciplinary decisions. It would have been untenable for the City to take the position that SPD officers, alone, should be denied an appeal option that is guaranteed to other public bargaining units throughout the City and state.

b)       The SPOG CBA removes the burden-of-proof language that this Court held to be problematic and replaces it with a background labor law principle that has long featured in City arbitrations.

Under labor law, the arbitrator generally has authority to set procedural rules and must decide whether to apply the preponderance of the evidence standard or an elevated standard, such as clear and convincing evidence.[11] The old SPOG CBA, as well as the previous version, provided that when an officer's conduct involves dishonesty, termination of employment is presumed to be the appropriate discipline and that the City must prove its case by clear and convincing evidence. As the Court previously noted, *see* Dkt. 357 at 8, that provision singled out dishonesty and treated it differently than all other forms of misconduct. The new SPOG CBA removes the clear-and-convincing standard, but—importantly—preserves the presumption of termination for dishonesty.

---

[11] See, e.g., *Gen. Drivers, Helpers & Truck Terminal Employees Local No. 120 v. Sears, Roebuck & Co.*, 535 F.2d 1072, 1076 (8th Cir. 1976) ("Because collective bargaining agreements are generally silent on procedural matters such as rules of evidence, an arbitration panel must be vested with the inherent authority to make procedural rulings.").

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 25
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   In place of the clear-and-convincing standard, the City and Guild agreed that the burden of proof

2   in a disciplinary appeal will be determined using the same evidentiary standards that arbitrators

3   apply to other types of misconduct.

4         The CBA provides that:

5             The standard of review and burden of proof in labor arbitration will be
            consistent with established principles of labor arbitration. For example, and
6             without limitation on other examples or applications, the parties agree that
            these principles include an elevated standard of review (i.e. – more than
7             preponderance of the evidence) for termination cases where the alleged
            offense is stigmatizing to a law enforcement officer, making it difficult for
8             the employee to get other law enforcement employment.

9   Section 3.1. The labor negotiators drew the example of termination for stigmatizing offenses

10  from an authoritative arbitration treatise.

11            Concerning the quantum of required proof, many, if not most arbitrators
            apply the "preponderance of the evidence" standard to ordinary discipline
12            and discharge cases. However, *in cases involving criminal conduct or
            stigmatizing behavior, many arbitrators apply a higher burden of proof,
13            typically a "clear and convincing evidence" standard*, with some arbitrators
            imposing the "beyond a reasonable doubt" standard.

14  Elkouri & Elkouri, *How Arbitration Works,* 15-27 (8th ed. 2016) (emphasis added).

15        Contrary to the CPC's suggestions, Article 3.1 does not substantially change the status quo,

16  because arbitrators already generally apply an elevated standard of proof for offenses that are

17  "stigmatizing" and have done so for a long time.  For example, an arbitrator in a 2004 case

18  addressed allegations of cheating on the sergeant's exam, conduct that was both dishonest and

19  criminal, and—citing *Elkouri*—applied a clear-and-convincing standard.

20        The definition of "stigmatizing" offenses includes only a subset of termination cases.

21  Examples of conduct recognized as stigmatizing include: any offense that is a criminal felony,

22  demonstrations of racial bias, and dishonesty. In the past, in City arbitrations, absenteeism,

23

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO
SHOW CAUSE** - 26
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

insubordination, and violation of workplace policies all have been treated as warranting a preponderance-of-the-evidence standard, and that should not change under the new CBA.

        c)      There is no reason to believe the Public Safety Civil Service Commission will rule for the City more often than arbitrators.

The Ordinance eliminated arbitration as an option for SPD employees, leaving the PSCSC as the only avenue for disciplinary appeals. *See* 3.29.420(A)(7)(c). In bargaining, the City retained the PSCSC as one of two appeal options for major disciplinary offenses. The PSCSC is composed of three commissioners, one member each is appointed by the Mayor and the City Council. Seattle Municipal Code § 4.08.040.  The third member is elected by the police and firefighter unions. *Id.* Although the Ordinance calls for replacement of the employee-elected member with a second mayoral appointee, (*see* § 4.08.040), the City and SPOG have agreed to postpone implementation of this change until it can be bargained with all affected unions.

Regardless of its composition, the PSCSC will remain a neutral body that is not inherently pro-management or pro-police reform.  Seattle police officers can be removed, suspended, or demoted only "in good faith for cause." RCW 41.12.090. The PSCSC applies that standard in reviewing disciplinary decisions under SMC 4.08. *See* Seattle Municipal Code § 4.08.100. The Commission is entitled to use standards similar, if not identical to, those used in labor arbitration. *See City of Seattle v. PSCSC*, 155 Wn. App. 878 (Div. 1 2010).

        vi.    *Consistent with its obligation to bargain, the City made calculated compromises to achieve gains in accountability; if any of those compromises unexpectedly turn out to hinder accountability, they will be high priority goals in the next round of negotiations.*

The provisions of the CBA described above constitute major advances in the areas of discipline and accountability. Due to its obligation to bargain in good faith, however, the City was unable to simply force the unions to adopt the Accountability Ordinance in its entirety. In order to

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 27
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

achieve gains in accountability, the City made compromises that can be revisited in future negotiations. One example is the statute of limitations for disciplinary action. The old CBA established a three-year limitation period, and the Ordinance provided a five-year period. *Compare* 2010-2014 SPOG CBA Art. 3.6.G, *with* Ordinance § 3.29.420(A)(5). The City and the SPOG compromised on four years. SPOG CBA Art. 3.6.G.

The issue of bringing civilians into OPA also illustrates the give-and-take of the negotiations. The Ordinance gives the OPA Director discretion to set the mix of sworn and civilian investigators at OPA. Ordinance § 3.29.140(C).   The SPMA contract allowed the City to civilianize all three of the SPMA supervisory positions in OPA. The SPOG CBA provides that two investigator positions will be civilianized. SPOG CBA App. D. While the City compromised on this issue, it did so with the recognition that the transition to hire and train three new civilian supervisors, as well as civilian investigators, will take time, especially in light of the consistently heavy workload at OPA. While the City pushed for at least three civilian investigators, the City ultimately agreed on two in exchange for SPOG allowing the City to also civilianize the sworn sergeant who currently holds a human resources position at SPD. *See* SPOG CBA App. G. The Department saw significant value in filling that position with someone who has human resources expertise and training and freeing up the sergeant position for police functions.

Changes to the 180-day time limit for OPA investigations included both gains (described above) and areas of compromise.  For example, the Ordinance provides that the 180-day time period for investigation begins when a matter is received or initiated by OPA. During bargaining, SPOG expressed concern that since some matters are not significant enough to be handled by OPA, and are instead submitted to the SPD Chain of Command for review, there would be no time limit for such investigations under the Ordinance formulation. Recognizing the concern of SPOG, the

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 28
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

City agreed to add language that specified a trigger for when the 180-day clock would start for matters that are not investigated by OPA. In doing so, however, the City insisted on changing the existing language in the SPOG CBA that provided the clock would start when any sworn supervisor (including SPOG sergeants and SPMA lieutenants and captains) was "in receipt of" a complaint. SPMA Art. 1.6.B; SPOG CBA Art. 3.6.B. As explained above, that formulation had created problems for the City in situations when the sworn supervisor took no action. The new SPOG agreement thus adds a provision that meets the Guild interest of ensuring there is a time limit on chain of command investigations, and also meets the City interest of not starting the clock until a supervisor takes affirmative documented action to handle the matter.

In short, the bargain reached between the City and the Guild significantly improves accountability as part of a reform process that will go beyond the sustainment period.

> vii.    Neither the CBAs nor the Ordinance as modified by the CBAs are inconsistent with the Consent Decree.

Nothing in the CBAs or in the Ordinance as modified by the CBAs contradicts the terms of the Consent Decree. The Consent Decree contains requirements regarding Use of Force; Use of Force Reporting, Investigation, and Review; Crisis Intervention; Stops and Detentions; Supervision; and certain limited changes to OPA. *See* Consent Decree at 12-48. These requirements are not altered or affected in any way by the CBAs. Rather, the CBAs complement the progress made under the Consent Decree by bringing about concrete, meaningful progress in the areas of discipline and accountability as described above.

### C.    The Provisions Highlighted in City Council's Companion Resolution Do Not Present a Conflict With the Consent Decree.

When City Council approved the SPOG CBA on November 13, 2018, by an eight-to-one vote, it also passed companion Resolution Number 31855, which seeks this Court's review of the

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 29
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

agreement, including a request that the City Attorney ask for the Court to review specific provisions. It "requests that the City Attorney's Office jointly file this resolution, including Attachments 1-3, and the SPOG CBA with the Court to request a judicial review of the labor contract."

The resolution also requested that the Court review these specific provisions of the CBA: Article 3.1 (burden of proof in arbitrations for disciplinary appeals), Article 3.6.B-D (180-day timeline for OPA investigations); and Appendix E.12 (limits placed on the subpoena powers of OPA and OIG). As described above, these provisions were the product of compromises made at the bargaining table and the City does not dispute they resulted in changes to the Ordinance. However, each of these provisions in the SPOG CBA represents a concrete and meaningful accountability reform with respect to the status quo. They do not conflict with any of the terms of the Consent Decree; to the contrary, these provisions represent progress for the City. The City intends to continue negotiations with SPOG and SPMA regarding future contracts, seeking to further implement the goals of the Ordinance.

## V.     CONCLUSION

A fair and effective accountability system is the prerequisite to meaningful police reform lasting long after the Consent Decree concludes. The accountability gains that can be implemented because of the new CBAs between the City and the police officer unions will not only ensure that the City does not roll back any of the important progress it has made, but will also continue to advance the cause of police accountability. For the foregoing reasons, the City asks that the Court approve the Accountability Ordinance as modified by the SPOG and SPMA CBAs and hold that the City remains in full and effective compliance with the Consent Decree.

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 30
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

DATED this 17th day of December, 2018.


For the CITY OF SEATTLE


PETER S. HOLMES
Seattle City Attorney


*s/ Kerala T. Cowart*
Kerala T. Cowart, WSBA #53649
Assistant City Attorney
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Phone: (206) 733-9001
Fax: (206) 684-8284
Email: kerala.cowart@seattle.gov

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 31
(12-CV-01282-JLR)

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sends notification of such filing to the following counsel of record:

| | |
|---|---|
| Annette L Hayes | Annette.Hayes@usdoj.gov |
| Christina Fogg | Christina.Fogg@usdoj.gov |
| Gregory Colin Narver | gregory.narver@seattle.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Rebecca Boatright | rebecca.boatright@seattle.gov |
| Ronald R. Ward | Ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Michael K. Ryan | michael.ryan@seattle.gov |
| Carlton Seu | carlton.seu@seattle.gov |
| Gary T. Smith | gary.smith@seattle.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |

DATED this 17th day of December, 2018, at Seattle, King County, Washington.

*s/ Kerala T. Cowart*
Kerala T. Cowart, WSBA #53649
Assistant City Attorney
E-mail: kerala.cowart@seattle.gov

**CITY OF SEATTLE'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** - 32
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200