THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:12-cv-01282-JLR |
| Plaintiff, | ) | |
| | ) | **CITY OF SEATTLE'S UNOPPOSED** |
| v. | ) | **MOTION FOR COURT APPROVAL OF** |
| | ) | **REVISIONS TO SEATTLE POLICE** |
| CITY OF SEATTLE, | ) | **DEPARTMENT'S USE OF FORCE** |
| | ) | **POLICIES** |
| Defendant. | ) | |
| | ) | **NOTE ON MOTION CALENDAR: August** |
| | ) | **16, 2019** |
| | ) | |
| | ) | |
| | ) | |

The City of Seattle moves for an order approving the proposed revisions of the Seattle Police Department ("SPD") to its Use of Force Policies. The Department of Justice ("DOJ") and the Monitor have approved the proposed revisions. They are attached in redline format as Exhibits A-G.[1]

I.      **Background**

The Consent Decree required SPD to draft or revise policies addressing its core topics. The City drafted, revised, and implemented those policies with the assistance of the Monitor, the

---

[1] Grammatical and formatting changes are not reflected in the redline. To make the redline easier to read, if text was moved, unchanged, that change is not reflected.

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 1
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Department of Justice ("DOJ"), and the Community Police Commission ("CPC"), and with the approval of the Court and Monitor in the years leading to the Court's January 2018 ruling that the City had achieved full and effective compliance with the Consent Decree.

During the sustainment period following full and effective compliance, the City, DOJ, and the Monitor agreed that SPD would review Consent-Decree-mandated policies annually, consult with the DOJ and Monitor about any proposed changes, and seek Court approval of any changes. *See* Phase II Sustainment Period Plan (dkt. 444) at 10. In accordance with the schedule established by the Court-approved Sustainment Plan, the City now submits revisions to SPD's Use of Force Policy, set forth in Title 8 of the Seattle Police Manual.

## II.    SPD's Policy Review Process

SPD's Audit, Policy, and Research section ("APRS") is primarily responsible for the policy review process at SPD. APRS is led by a captain who reports to the assistant chief who oversees SPD's Professional Standards Bureau ("PSB"). Within APRS, a "policy squad" consisting of a sergeant and three detectives takes responsibility for policy reviews. APRS currently maintains a calendar that ensures that every policy in the Seattle Police Manual is reviewed at least once every three years. APRS reviews Consent Decree policies annually.

SPD's standing policy committee helps guide APRS's work. The committee, comprised of the APRS Captain, the Assistant Chief overseeing PSB, SPD's Executive Director of Legal Affairs, and its Chief Operating Officer, meets weekly (along with APRS officers assigned to the policies under review) to discuss scheduled policy reviews and any acute policy concerns that have come to the committee's attention. Those concerns can be raised by any SPD unit or bureau chief, but they often come directly from the recommendations of SPD's Force Review Board, which meets weekly to review the most serious uses of force by SPD officers, as well as less

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 2
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

serious uses of force as dictated by policy. Patrol officers are also encouraged to contact APRS directly to discuss policy issues.

APRS also incorporates policy suggestions from many sources. The Office of Police Accountability ("OPA") routinely submits letters to the Chief of Police, many of which focus on policy change recommendations.[2] The Office of the Inspector General for Public Safety (OIG) participates in SPD policy discussions, in addition to making policy recommendations through reports and audits. In addition, APRS has shared its policy review calendar with the CPC, which offers suggestions about policy changes.

For most policies, APRS develops proposed changes in coordination with the Assistant Chief overseeing PSB by consulting with SPD subject-matter experts and the SPD units most impacted by the policy under review. When appropriate, APRS detectives also reach out to police departments across the country to review policies addressing the same topics. Once APRS has completed proposed policy changes, the standing policy committee reviews them and, if it approves, forwards the revised policy to the Chief of Police (or her designee, typically the Deputy Chief) for final approval.

Consent Decree policies are reviewed in much the same way, with a few additional steps. Once APRS and the policy committee have approved proposed changes, the City forwards the proposed changes to the Monitoring Team and DOJ for review and input. Where the DOJ or Monitoring Team identify concerns, the City discusses those concerns and, where appropriate,

---

[2] OPA publishes its Management Action Recommendations and SPD's responses at *https://www.seattle.gov/opa/management-action-recommendations*.

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 3
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

makes additional modifications. The City also solicits feedback from OIG, OPA, and CPC. Once that process is complete, the City submits the policies to the Court for approval.

Once a policy change receives final approval (from the Chief of Police, her designee, or the Court, depending on the policy), SPD uses its "e-Directive" system to notify every officer and civilian employee. The e-Directive system forwards policy changes to everyone at SPD, it requires each employee impacted by the policy (for the use of force policy, this includes all sworn personnel) to answer online questions about the policy and verify that he or she has reviewed it. Unit supervisors are notified and expected to take corrective action when officers or employees in their units have not completed e-Directive certifications. For policy changes that require training to implement, SPD also ensures that each officer mandated to complete the training has done so.

## III.   Proposed Changes to Use of Force Policy

The proposed revisions to Title 8 accomplish several goals. First, the revisions bring greater consistency to force-related terms and definitions. A second set of edits is intended to increase operational efficiency.  Third, SPD, working closely with the Monitor, has developed a new policy for the use of patrol canines. Finally, several of the proposed policy changes incorporate OPA recommendations.

*1.   A majority of the proposed revisions consolidate and refine the definitions and usage of force-related terms.*

The proposed edits reduce repetition and provide consistency by consolidating definitions that used to be in section 8.200 with the other definitions in 8.050. The proposed revisions also address minor variations in terminology to avoid confusion. For example, the requirement that force must be "objectively reasonable, necessary, and proportional"—which appears in numerous

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 4
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

places throughout Title 8—is now always stated using those exact words, instead of sometimes using slightly different wording as shorthand.

Another example includes replacing the term "serious physical injury" with "great bodily harm." The current policy treats these phrases as interchangeable. By consistently using "great bodily harm," a term which is codified and defined under Washington state law, the proposed revisions improve clarity and uniformity. *See* Rev. Code Wash. 9A.04.110(4)(c) (defining "great bodily harm"). For the same reason, "substantial physical injury" has been replaced by "substantial bodily harm." *See* Rev. Code Wash. 9A.04.110(4)(b) (defining "substantial bodily harm").

In addition, small variations in the definitions used in Title 8 and the SPD Force Investigation Team (FIT) manual have been standardized.

*2. SPD proposes several changes that will increase operational efficiency.*

Section 8.500 has been edited to formalize SPD's existing practice of having operations lieutenants conduct the final review chain-of-command review for most Type I force.  As noted by the Monitor and DOJ last October, this delegation is already current practice and it does not reduce the quality of the review. Dkt. 497-1 at 23. It is frequently practical and convenient for the operations lieutenant, instead of the captain, to review Type I force, because of the great volume of material. However, as noted by the Monitor and DOJ, it is important that delegation be done appropriately and not in a way that undermines effective review. *See id*. The operations lieutenant is well positioned to ensure effective review. There is only one operations lieutenant per precinct, which preserves continuity of command. Moreover, the operations lieutenant has an active role in field supervision, is regularly called upon to serve as the acting captain, and communicates frequently with the captain. The operations lieutenant is thus in a strong position to identify and,

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

with the captain, address any potential issues with Type I force overall or with a particular officer's Type I force.

Another minor operational change involves FIT. Language is added to 8.300-POL-9 regarding inadvertent contact with a subject's neck. This edit relieves FIT of screening and investigating when an officer makes such contact while using a control technique, when the contact is "momentary," and when there is no risk that blood or oxygen flow was restricted. This revision appropriately maintains FIT's efforts on more serious uses of force.

Further edits are made to clarify lieutenants' and captains' existing authority to reclassify force at a higher or lower level if warranted by the sergeant's investigation. *See* 8.400-POL-2(11). The chain has in the past been reluctant to reclassify force, generally deferring to FRU or FRB. Correcting misclassifications of force early on in the review process will improve efficiency.

   *3. The most substantive change is the adoption of a new, proposed canine policy.*

Based on the insights of the Force Review Board, SPD command staff, OPA, OIG, the Monitor, and DOJ, the Department identified the need for a new policy addressing the use of patrol canines. An interim policy took effect on March 20, 2019, and was accompanied by substantial training efforts. The Deputy Chief of Operations and the Assistant Chief of Special Operations met with members of the K-9 unit and the training sergeant to reiterate the Department's expectations on the use of canines as a force tool. In addition, six of the canine officers received additional, outside training to support implementation of the new policy. In parallel, the Deputy Chief of Operations oversaw the drafting of a robust permanent policy, with substantial technical assistance from the Monitor. The City now presents this policy to the Court.

The policy includes specific language governing when officers are required to release a canine's bite. 8.300-POL-1(13) (Bite must be released "at the first possible moment the canine can

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 6
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

be safely released."). This provision is intended to eliminate any possibility of confusion as to when and how a handler should release a dog from a bite.

The policy also addresses the circumstances under which canines may be deployed. The policy provides that, in the absence of explicit supervisor authorization, canines will be deployed only in investigations of enumerated felony crimes and misdemeanors that present a potential for violence. 8.300-POL-1(3) (listing out specific felonies and misdemeanors). The policy also places strong restrictions on the use of canines in investigations with a possible juvenile subject. 8.300-POL-1(8). Also, importantly, officers are explicitly prohibited from using a canine to gain pain compliance. 8.300-POL-1(9).

To ensure that canines are deployed in appropriate circumstances, canine handlers are required to obtain a briefing of the incident beforehand. 8.300-POL-1(4).

It is significant that the new policy defines a canine-officer team is a "single officer unit." 8.300-POL-1(6). That means officers cannot consider the dog as a second, back-up officer. Rather, canine officers must request back-up when needed in the same way that other officers do.

The policy also reiterates the reporting and investigation requirements that apply for any canine use of force, regardless whether a bite is accidental or otherwise. 8.300-POL-1(16) to (18).

Finally, a new section is added to Title 16, addressing patrol operations, that contains procedures and tasks associated with the canine unit.

*4. A number of policy changes incorporate OPA management action recommendations.*

In addition to investigating allegations of misconduct, OPA recommends policy changes to SPD when its investigations indicate that issues with Department policy, rather than actions of individual officers, gave rise to a complaint. Those investigations result in a finding of "Not

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 7
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Sustained – Management Action" and form the basis of OPA's management action recommendations.

Examples of these recommendations include a new definition of "roadblock" in 8.050 and additional language about roadblocks in 8.300-POL-6(4). These edits clarify what a roadblock is and when it is considered to be reportable force. In another example, the de-escalation policy is revised in order to more clearly distinguish between a threat of force (which is is not de-escalation), and a warning given in a calm and explanatory manner (which can be an example of de-escalation). OPA also recommended clarifying that each application of a taser must be objectively reasonable, necessary, and proportional—regardless of how the taser is being used. 8.300-POL-2(4).

## IV.     Conclusion

For the reasons stated above, the City respectfully requests that the Court approve the proposed revisions to SPD's policies.

DATED this 31st day of July, 2019.

For the CITY OF SEATTLE

PETER S. HOLMES
Seattle City Attorney

*s/ Kerala T. Cowart*
Kerala T. Cowart, WSBA #53649
Assistant City Attorney
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Phone: (206) 733-9001
Fax: (206) 684-8284
Email: kerala.cowart@seattle.gov

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES** - 8
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT
APPROVAL OF REVISIONS TO SPD'S POLICIES** - 9
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31st, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian T. Moran | bmoran@usdoj.gov |
| Christina Fogg | Christina.Fogg@usdoj.gov |
| Matt Waldrop | james.waldrop@usdoj.gov |
| Gregory Colin Narver | gregory.narver@seattle.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Ronald R. Ward | Ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Gary T. Smith | gary.smith@seattle.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| David A. Perez | dperez@perkinscoie.com |
| Anna Thompson | annathompson@perkinscoie.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |
| Merrick Bobb | mbobb@pacbell.net |
| Bruce E.H. Johnson | brucejohnson@dwt.com |
| Eric M. Stahl | ericstahl@dwt.com |

DATED this 31st day of July, 2019, at Seattle, King County, Washington.

*s/ Kerala T. Cowart*
Kerala T. Cowart, WSBA #53649
Assistant City Attorney
E-mail: kerala.cowart@seattle.gov

CITY OF SEATTLE'S UNOPPOSED MOTION FOR COURT APPROVAL OF REVISIONS TO SPD'S POLICIES - 10
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200