THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:12-cv-01282-JLR |
| v. | ) **CITY OF SEATTLE'S DECEMBER 2019 QUARTERLY REPORT** |
| CITY OF SEATTLE, | ) |
| Defendant. | ) |

Once the Court declared the City had achieved full and effective compliance with the Consent Decree, a new phase began in which the City must demonstrate its ability to sustain its progress. The Court-approved "Sustainment Plan," Dkt. 444, includes a commitment to provide seven quarterly reports updating the Court on the City's progress. The Sustainment Plan provides that each quarterly report will include recent data on use-of-force and crisis intervention practices, an update on the Seattle Police Department's Force Review Board and Unit, and a discussion of relevant activities of the Office of Police Accountability. This is the final quarterly report.

I.  BACKGROUND

During Phase II, the City must maintain compliance with the Consent Decree for two years. The City must also demonstrate the ability to identify and address any obstacles to further reform. To

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 1
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

these ends, the Sustainment Plan provides that the City will conduct three sets of self-assessments to verify whether it is continuing to comply with the Consent Decree: Audits,[1] Policy Reviews, and Outcome Reports. The Plan sets out more than two hundred deadlines detailing when the City must complete each step of each assessment through January 2020. On March 13, 2018, the Court approved "the Sustainment Plan and the attached matrix of deadlines as the governing documents for the parties' and the Monitor's conduct of Phase II of the Consent Decree." Court's Order (Dkt. 448). Thus far, the City has successfully and timely met all of the milestones set forth in the plan.

Audits: Throughout the Sustainment Period, the parties, the Monitor, and the Office of Inspector General for Public Safety (OIG) have collaborated on developing methodologies for the Department's audits and assessments. Thus far, in keeping with the Sustainment Plan deadlines, the City has filed nine such audits or assessments, each of which documents compliance with specific paragraphs in the Consent Decree.[2] These documents, and the independent verification of DOJ and the Monitoring Team, demonstrate sustainment compliance with these requirements.

Since the City's previous quarterly report, SPD completed Part II of its Early Intervention System Audit and Part II of its Supervision Audit, which were submitted to the Court on November 29, 2019. Dkts. 595-1 & 595-2.

---

[1] The audits required by the Sustainment Plan are not audits in a formal sense, because they do not follow auditing guidelines nor are they conducted by an outside body. Rather, in keeping with the two phases set out in the Consent Decree, the parties and the Monitor agreed that these reports would be largely comprised of assessments conducted by SPD in order demonstrate SPD's ability to engage in critical self-analysis and to identify and address any obstacles to further progress that may arise.

[2] The audits completed thus far address the following requirements: Supervision (Dkt. 497-2); Reporting, Investigation, and Review of Type I & II Force (Dkts. 497-1 & 570-1); Crisis Intervention and Use of Force (Dkt. 511); Stops and Detentions (Dkt. 547-1 & 588-2); Early Intervention System (Dkt. 550-1); the Force Review Board (Dkt. 570-2); and Comprehensive Use of Force (Dkt. 588-1).

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 2
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

SPD's Early Intervention System Audit – Part II:

The analysis of SPD's Early Intervention System (EIS) demonstrates sustained compliance with the related Consent Decree requirements. Paragraph 157 requires SPD to use EIS for risk management purposes. In keeping with this requirement, SPD adopted and maintains an EIS that is threshold based. A "threshold" is the number of events and the time period that result in an EIS "alert" for an officer. For example, the threshold for Office of Police Accountability complaints is 4 complaints within 12 months. When an officer receives an alert, the EIS Coordinator reviews it and then, depending on the circumstances, the officer's supervisor may complete an assessment or develop a mentoring plan for the officer.

The Consent Decree requires SPD to regularly monitor, review, and adjust, where appropriate, the EIS events and thresholds to ensure that the program is meeting its objectives. ¶¶ 157-58, 163. As described in the Audit, SPD has continued to fulfill these requirements.

The Part II Audit also follows up on key findings and recommendations of the Part I Audit. In Part I, SPD determined that proactive officers were being "overtriggered." In collaboration with DOJ and the Monitor, SPD adjusted the thresholds in an attempt to address this issue. SPD also determined that proactive officers were receiving EIS alerts based on the routine and proper application of handcuffs. With the approval of the Monitor and DOJ, SPD revised the definition of Type I force to distinguish between pain resulting from the improper application of handcuffs versus pain that can be attributed solely to the inherent discomfort of wearing handcuffs. SPD also deployed new handcuffs that are beveled and made of lighter-weight aluminum in order to reduce discomfort. The current Part II Audit reports that these adjustments have achieved their intended effect and helped to bring the EIS program back in line with its goals. During the study period, there was a substantial increase in the percentage of Early Intervention assessments that led to

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 3
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

mentoring plans, which indicates fewer "false positives." Accordingly, SPD believes that the new thresholds better capture the SPD employees who are at risk of negative performance issues, employee discipline, and/or employee or department liability *See* Dkt. 595-1 at 8-11.

Another key aspect of Part I, as discussed in more detail below, was a recommendation from DOJ and the Monitor to revise the EIS policy to incorporate "peer to peer" analysis. That proposed policy revision is being submitted to the Court today in a separate motion.

SPD's Supervision Audit – Part II:

This audit demonstrates sustained compliance with paragraphs 153, 154, and 155 of the Consent Decree. It concludes that the Department has maintained an adequate number of first-line supervisors to respond to the scene of uses of force and investigate. In addition, the Department's staffing assignments provide officers with consistent, clearly identified supervisors who work the same scheduled work week. Finally, new sergeants receive new supervisor training promptly.

In addition to demonstrating sustained compliance, the audit also highlights opportunities for SPD to further improve in this area. For example, as a result of the audit, SPD determined that it would be ideal to offer front-line supervisor training quarterly rather than annually and will do so starting in 2020.

For both audits, the Department of Justice and the Monitor reviewed a sample of the underlying data and concluded that the Department has demonstrated sustained compliance with the Consent Decree. A summary of their findings can be found in the validation section at the end of each of the City's audit reports.

Policy Reviews: The SPD Audit Policy and Research Section ("APRS") reviews all Department policies on a three-year cycle. The Consent Decree-mandated policies are being reviewed annually. SPD's proposed revisions to its Use of Force Policies are being submitted

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 4
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

concurrently with this filing, per the Sustainment Plan. The Department of Justice and the Monitor reviewed and approved SPD's revisions to each of these policies. After the Consent Decree ends, SPD will continue to participate in national efforts to identify best police practices and incorporate those findings into its policies.

The proposed EIS Policy revisions are discussed in the City's motion seeking the Court's approval of the policies. Dkt. 599.  As noted above, the most significant revision incorporates DOJ's and the Monitoring Team's recommendation that SPD incorporate "peer to peer" analysis into its policy. As they explained in their joint validation section to SPD's Part I EIS Audit: "[I]nstead of setting up a trigger for numbers of uses of force across all officers, triggers would be calibrated to compare only officers with like assignments . . . This approach is much better suited to truly identifying outliers." Dkt. 550-1 at 30.

In order to implement DOJ's and the Monitoring Team's recommendation, the proposed policy revisions create five separate peer groups by bureau within SPD: the Patrol Operations Bureau, the Collaborative Policing Bureau, the Criminal Investigations Bureau, the Homeland Security / Special Operations Bureau, and the Professional Standards Bureau. The policy assigns each group its own set of force-related thresholds designed to detect anomalies within that peer group.

<u>Outcome Reports</u>: In addition to the audits and policy reviews, SPD has continued the practice it began in 2016 of publishing periodic reports summarizing policing data for the public. These "outcome reports" demonstrate the concrete effects of SPD's work under the Consent Decree, such as reductions in serious uses of force. SPD's next and final outcome report is due to the Court on January 10, 2020.

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 5
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Disparity Review Part II: Concurrently with this report, Part Two of SPD's Disparity Review Report is also being submitted to the Court. In the Sustainment Plan, SPD committed to conduct a rigorous look at racial disparities in policing and to examine what it might do to reduce them. In addition, SPD's Court-approved, Bias-Free Policing Policy requires it to study data regarding racial disparity. The policy sets forth the Department's values of providing services and enforcing laws in a professional, nondiscriminatory, fair, and equitable manner and expresses the Department's commitment to study and eliminate unwarranted racial disparities:

> The Seattle Police Department is committed to eliminating policies and practices that have an unwarranted disparate impact on certain protected classes. It is possible that the long-term impacts of historical inequality and institutional bias could result in disproportionate enforcement, even in the absence of intentional bias. The Department's policy is to identify ways to protect public safety and public order without engaging in unwarranted or unnecessary disproportionate enforcement.
>
> In consultation with the Community Police Commission, and the Office of the Inspector General for Public Safety, the Department shall periodically analyze data which will assist in identification of SPD practices – including stops, citations and arrests – that may have a disparate impact on particular protected classes relative to the general population.

Seattle Police Manual, § 5.140.

Together, Part I and Part II of SPD's Disparity Review reports confirm that racially disparate impacts exist in policing, as in almost every aspect of our society. In Part I, SPD analyzed different police-community interactions and determined that *Terry* stops involving frisks and firearm pointings accounted for the highest rates of racial disparity. Part II builds on this finding to identify possible changes to policies, trainings, and communications that could potentially reduce the identified disparities.

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 6
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

For Part II, the Department held a series of community meetings to pilot the approach of "community reviews" to examine videos and reports of the types of incidents—street stops with frisks and the pointing of firearms—with heightened levels of disparity. These reviews helped the Department to identify a series of steps that it will undertake to evaluate their effect on disparity:

- Enhance SPD's training regarding when a subject sufficiently matches a description of a wanted person to justify a stop;
- Review policies and trainings that establish safety-related guidance regarding when the pointing of a firearm is recommended;
- Improve the skills of call takers/dispatchers in the 911 Call Center to identify and mitigate implicit bias communicated during calls; and
- Continue to hold and improve on the pilot process of community review sessions.

After the Consent Decree is complete and federal oversight has ended, the City will continue to conduct the audits, reviews, and outcome reports on regular cycles to ensure that progress continues and that the Department remains accountable to the public.

## II.     Use-of-Force and Crisis Intervention Data

This section provides data on SPD's use-of-force and crisis intervention practices for the two-month time period from October 1, 2019, through November 30, 2019. It is not possible to provide a full quarter of data, because this report is due to the Court only two months after the last quarterly report, and, accordingly, accurate, quality-checked data for the full month of December will not be available for several days. As noted below, the data for the entirety of 2019 will be provided to the Court on January 10, 2020, in a specialized, in-depth report.

The report does not undertake to analyze or contextualize the data for two reasons. First, it would be speculative to infer trends or draw comparisons based on one quarter of cross-sectional data. Second, the Sustainment Plan, approved by the parties and the Court, sets forth a series of annual audits and outcome reports which contain the Department's analyses and conclusions. As

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 7
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

contemplated in the Sustainment Plan, the Department's annual report on 2019 use-of-force data is due to the Court on January 10, 2020.

In addition to the numbers below, comprehensive data on these topics are available to the public through the Department's "dashboards" on its webpage at <https://www.seattle.gov/police/information-and-data/public-data-sets>. The public dashboards can be used to analyze and display data from numerous, disparate sources within SPD through a data analytics platform ("DAP").

A. *Use of Force*

One hundred and forty-six uses of force were reported during the two-month period from October 1, 2019, to November 30, 2019. Because of the way "use of force" is defined, a single incident often results in multiple reported uses of force. One hundred and fourteen of the reported applications of force involved no greater than low-level, Type I force.[3] Twenty-nine involved Type II force. During the two-month period, there was one incident that involved an officer discharging a firearm, leading to no injuries. *See* Figures 1 & 2.

**Figure 1. Use of Force By Quarter***

| | 2018 Q4 | 2019 Q1 | 2019 Q2 | 2019 Q3 | 2019 Q4 | Total |
|---|---|---|---|---|---|---|
| Type I Force | 462 | 292 | 260 | 231 | 114 | 1,359 |
| Type II Force | 67 | 71 | 77 | 89 | 29 | 333 |
| Type III Force | 4 | 2 | 1 | 3 | 1 | 11 |
| Type III - OIS | 1 | 6 | 3 | 2 | 2 | 14 |
| Total | 534 | 371 | 341 | 325 | 146 | 1,717 |

**Q4 2019 data is for 10/01 to 11/30/19 only.*

---

[3] The types of force are defined in Title 8 of the SPD manual. In brief: Type I is low-level force that may involve transitory pain. Type II force causes or is reasonably expected to cause physical injury greater than transitory pain but less than great or substantial bodily harm. Type III force causes or is reasonably expected to cause great or substantial bodily harm.

**CITY'S DECEMBER 2019 QUARTERLY REPORT** - 8
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**Figure 2. 10/1-11/30/19 Types of Force Used:**



In the context of overall encounters with the community, force is used rarely. During the two-month period from October 1, 2019, to November 30, 2019, the computer-aided dispatch ("CAD") database recorded 61,067 unique events to which officers were either called by a dispatcher or which officers observed or were alerted to while on patrol. Seventy-eight of these events involved one or more reportable applications of force. That means approximately one tenth of one percent of all events involved any use of force. Fourteen (approximately two one-hundredths of one percent) of the 61,067 unique CAD events ultimately involved a use of force greater than Type I (i.e., Type II or Type III).

The demographic characteristics of subjects of force for the two-month period are presented below in Figure 3.

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 9
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**Figure 3. 10/01-11/30/19 Race of Subjects of Force**

| Subject Race | % of Total | UoF Count |
|---|---|---|
| Black or African American | 33.56% | 49 |
| White | 32.19% | 47 |
| Not Specified | 24.66% | 36 |
| Asian | 4.11% | 6 |
| American Indian/Alaska Native | 2.74% | 4 |
| Hispanic or Latino | 2.74% | 4 |
| **Grand Total** | 100.00% | 146 |

B. *Crisis Intervention*

Between October 1, 2019, and November 30, 2019, officers reported 1,536 incidents involving a person experiencing a behavioral crisis. Officers used force in 16 of those incidents (approximately 1%). The breakdown of types of force used in crisis responses is similar to the breakdown for all uses of force, although Type II force is slightly more frequent.

**Figure 4. 10/01-11/30/19 Use of Force in Crisis Events:**



CITY'S DECEMBER 2019 QUARTERLY REPORT- 10
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Of all the incidents involving a subject experiencing a behavioral crisis, approximately 17% were resolved by voluntary commitment, calling the mobile crisis team, or by referral to or notification of a community or social service support agency or shelter. The most common disposition was a decision to detain the person for their own safety under the Involuntary Treatment Act (36%). The second most common resolution was "No Action Possible or Necessary," which means the person in crisis had left the scene or did not pose an imminent threat of self-harm or harm to others (19%).  *See* Figure 5 below.

**Figure 5. 10/01-11/30/19 Disposition of Crisis Contacts:**

| Disposition | % of Total |
|---|---|
| Emergent Detention / ITA | 35.85% |
| No Action Possible / Necessary | 19.37% |
| Resources Offered / Declined | 10.16% |
| Arrested (requires arrest report) | 7.98% |
| Voluntary Committal | 6.92% |
| MCT (Mobile Crisis Team) | 5.36% |
| Other | 5.25% |
| Chronic Complaint | 2.40% |
| Unable to Contact | 2.40% |
| CSC / CDF (Crisis Solution Center / Cris.. | 2.01% |
| DMHP / Referral (DCR) | 1.23% |
| Courtesy Transport | 1.23% |
| Case Manager / MH Agency Notified | 0.84% |
| Crisis Clinic (Crisis Connections) | 0.34% |
| CCORS (Children's Crisis Outreach Res.. | 0.28% |
| Detox | 0.17% |
| Social Service / Alcohol and Drug / Trea.. | 0.17% |
| Shelter Transport | 0.06% |
| Spruce Street | 0.06% |

*Note: Percentages total more than 100% because a crisis contact often leads to more than one disposition.*

### III.  SPD Force Review Board and Unit

The SPD Force Review Board ("FRB") and Force Review Unit ("FRU") review all uses of force to determine if they were compliant with SPD's Use of Force Policy. A brief summary of internal

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 11
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

review is provided here, while the complete procedures are specified in Title 8 of the SPD Manual. After using Type I force, an officer must screen the incident with a sergeant and complete a use of force report. The sergeant investigates the incident and then elevates the review up the chain of command. Type II uses of force are reviewed in depth first by an administrative lieutenant, through the chain of command to the section captain, and then by the Force Review Unit (described below). Type III uses of force are investigated by a specially trained unit called the Force Investigation Team. The Force Review Board (described below) provides an additional layer of review for all Type III uses of force, to include officer-involved shootings, and the most serious Type II uses of force.

FRB is "the Department's hub of internal accountability, analysis, and continual improvement with respect to force." *Monitor's Second Systemic Assessment*, Dkt. 247 at 4. The FRB is a select group of SPD personnel who are specially trained to investigate officer uses of force which meets regularly to make determinations as to (1) whether a use-of-force investigation is thorough and complete; (2) whether the force was compliant with SPD policy, and consistent with training, and core principles; and (3) whether any broader, systemic issues need to be addressed with respect to policy, tactics, equipment, or otherwise.

By policy, the FRB reviews all cases in which Type III force is used, including all officer involved shootings. The FRU, comprised of a captain, a lieutenant, a sergeant, and two detectives, reviews all Type II uses of force. When certain factors are present in a Type II case—such as the use of less-lethal tools or use of a canine—the FRU places it on the calendar to be reviewed by the FRB. Between October 1, 2019, and November 30, 2019, the FRB and FRU reviewed 31 unique cases.[4]

---

[4] Because FRB reviews 10% of the cases reviewed by FRU for quality control, some of these cases were reviewed twice, first by FRU and then by FRB.

**CITY'S DECEMBER 2019 QUARTERLY REPORT** - 12
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**Number of Cases Reviewed By Quarter:**

| Quarter | FRB | FRU |
|---|---|---|
| Q1 (1/01/19-3/31/19) | 28 | 11 |
| Q2 (4/01/19-6/30/19) | 20 | 14 |
| Q3 (7/01/19-9/30/19) | 23 | 15 |
| Q4 (10/01/19-11/30/19 *only*) | 24 | 8 |

A total of 116 officers were involved in the 31 cases reviewed by FRU and FRB during the two-month period. The numbers below represent the number of officers involved across the cases, aggregated, and the determination by FRB and FRU as to whether each officer's actions were approved as consistent with policy and training.

**10/01-11/30/19 Most Serious Type of Force Used in Each Case**

| | |
|---|---|
| Type I | 0 |
| Type II | 29 |
| Type III | 1 |
| Officer Involved Shooting | 2 |
| In-Custody Death | 0 |
| Total | 32 |

**10/01-11/30/19 Force Review Findings by Officer:**

| | |
|---|---|
| Approved | 85 |
| Not Approved | 2 |
| Referred to OPA | 5 |
| N/A[5] | 24 |
| Total | 116 |

---

[5] In the cases reviewed by FRB/U, 24 officers were involved in tactics and decision making who did not use force. In reviewing the actions of these officers, FRB/U made no findings on the use of force.

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 13
(12-CV-01282-JLR)

For 85 of the officers reviewed by the FRB and FRU between October 1, 2019, and November 30, 2019, the force used was found to be reasonable, necessary, proportional, and in conformance with the Department's Use of Force Policy. Two officers' uses of force were found not to conform to policy. In 5 instances, a matter was referred to OPA, and the FRB/U made no determination, per policy.

Since late 2015, the FRB/U has generated recommendations for all systemic issues identified during its discussions of force incidents. Once the FRB or FRU identifies an issue and determines that policy, procedure, training, or other action is appropriate, the recommendation is entered into SPD's workflow management system (IAPro) and the Assistant Chief of the Professional Standards Bureau then assigns it to the appropriate bureau chief for consideration. Recommendations that have significant budget implications, arise from high-profile cases, and those that stem from officer-involved shootings go through an additional step: they are reviewed directly by the Deputy Chief of Operations or Command Staff as appropriate, and then distributed to the appropriate bureau chief. The Professional Standards Bureau ensures that all recommendations receive a response; if a unit commander does not implement the recommendation then the commander provides a response to the Professional Standards Bureau Assistant Chief in closing out the assignment.

Examples of FRB recommendations implemented or adopted between October 1, 2019, and November 30, 2019, include:

- On FRB's recommendation, the Professional Standards Bureau developed a protocol to clarify Traffic Collision Investigation Squad call-outs when a FIT investigation does not warrant a CSI response but still requires a specialty investigation involving traffic matters.

- FRB observed issues with a delay in identifying injuries and providing first aid immediately to a subject whose injuries were hidden by clothing. This issue was addressed in the two-hour first aid refresher course required for all officers and also in a FIT eLearning.

**CITY'S DECEMBER 2019 QUARTERLY REPORT** - 14
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

### IV. Office of Police Accountability

The Office of Police Accountability ("OPA") has authority over allegations of misconduct against SPD employees relating to SPD policy and federal, state, and local law. It investigates and makes recommended findings to the Chief of Police. The organization is led by a civilian director and deputy staff, while its investigations are currently carried out by SPD sergeants. OPA is continuing to civilianize its investigators.

Between October 1, 2019, and November 30, 2019, OPA received 146 contacts. Contacts include "external" complaints from members of the community and "internal" referrals from SPD employees (primarily the chain of command). Sixty-four percent of the contacts in the two-month period were external and 36% were initiated internally by SPD. Professionalism was the most frequent misconduct allegation made to OPA, and it comprised 18% of all allegations received. Fifty-four of one hundred forty-six contacts classified by OPA during the two-month period, or 37%, were classified for investigation. One was classified for Rapid Adjudication, meaning that there will be discipline with no investigation.  In 5% of the cases in which findings were issued, OPA recommended that at least one allegation be sustained. The Chief of Police did not overturn any OPA recommended findings in the second quarter.

In addition to investigating allegations of misconduct, OPA recommends policy changes to SPD when its investigations indicate that issues with Department policy, rather than actions of individual officers, gave rise to a complaint. Those investigations result in a finding of "Not Sustained – Management Action" and form the basis of OPA's management action recommendations. In the second quarter of 2019, OPA issued six new management action recommendations.

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 15
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**V.     Conclusion**

The recent assessments of SPD's supervision practices and Early Intervention System demonstrate that the City has continued to comply with those portions of the Consent Decree. SPD's force review entities are scrutinizing the chain of command's use-of-force investigations; referring possible misconduct to OPA; and identifying and helping to address systemic challenges.

DATED this 31st day of December, 2019.

      For the CITY OF SEATTLE

      PETER S. HOLMES
      Seattle City Attorney

      *s/ Kerala T. Cowart*
      Kerala T. Cowart, WSBA #53649
      Assistant City Attorney
      Seattle City Attorney's Office
      701 Fifth Avenue, Suite 2050
      Phone: (206) 733-9001
      Fax: (206) 684-8284
      Email: kerala.cowart@seattle.gov

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 16
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian T. Moran | bmoran@usdoj.gov |
| Christina Fogg | Christina.Fogg@usdoj.gov |
| Gregory Colin Narver | gregory.narver@seattle.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Matthew Waldrop | James.waldrop@usdoj.gov |
| Ronald R. Ward | Ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Gary T. Smith | gary.smith@seattle.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |
| Merrick Bobb | mbobb@pacbell.net |
| Bruce E.H. Johnson | brucejohnson@dwt.com |
| Eric M. Stahl | ericstahl@dwt.com |
| David A. Perez | dperez@perkinscoie.com |
| Anna Thompson | annathompson@perkinscoie.com |
| John Wolfe | wolfe@orrick.com |

DATED this 31st day of December, 2019, at Seattle, King County, Washington.

*/s/ Kerala Cowart*
Kerala Cowart, WSBA #53649
Assistant City Attorney
E-mail: kerala.cowart@seattle.gov

**CITY'S DECEMBER 2019 QUARTERLY REPORT**- 17
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200