THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>CITY OF SEATTLE,<br><br>                Defendant. | Case No. 2:12-cv-01282-JLR<br><br>THE COMMUNITY POLICE COMMISSION'S RESPONSE TO 21CP's ASSESSMENT OF POLICE ACCOUNTABILITY |

146743935.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

I. INTRODUCTION ........................................................................................................... 1
II. BACKGROUND .............................................................................................................. 1
III. 21CP'S ASSESSMENT UNDERSCORES THE NEED FOR REFORM ........................ 3
    A. Reforming the Calculation of the 180-Day Timeline for Disciplinary Investigations. ......................................................................................................... 3
    B. Restoring Subpoena Authority to the OPA and OIG. ............................................. 5
    C. Pegging Burden of Proof at Preponderance for All Disciplinary Actions. ............. 6
    D. Reforming Features of the Disciplinary Process Affecting Public Confidence. ............................................................................................................. 7
    E. Next Steps Concerning Compliance and the Monitor's Ongoing Role ................. 7
IV. CONCLUSION ................................................................................................................ 8

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – i

146743935.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I. INTRODUCTION

Seven months ago, the Court ordered the City to provide (i) an assessment of the current accountability regime, (ii) a proposed methodology to achieve compliance, and (iii) a proposal concerning the Monitor's ongoing role in assessing accountability. The City's submission only addressed the first part of that order. The assessment itself is not a basis to reconsider the Court's May 21 order; on the contrary, the report underscores the critical need for reform before the City can achieve compliance under the Consent Decree.

The City recently invited the Community Police Commission (CPC) to collaborate on the methodology to achieve compliance. The CPC looks forward to working with the City. But unless the City is willing to craft a methodology that directly addresses the failings in the last round of contract negotiations with the police unions, the process will fall short once again.

## II. BACKGROUND

In its May 21, 2019, order the Court emphasized that "the statements and conduct of the parties throughout these proceedings reveal the inadequacy of the past accountability regime, [and] the critical need for reform to that regime." Dkt. # 562 at 7. Agreeing with the CPC, the Court explained that the City's collective bargaining agreement (CBA) with the police union (SPOG) "(1) retains significant attributes of the old appeals system that the parties admit needs reform, and (2) abrogates critical reforms in the Accountability Ordinance that the parties put in place." *Id*. at 11. Citing to the parties' own statements and admissions, the Court made clear "that the old accountability system is inadequate for purposes of compliance with the Consent Decree." *Id*. at 13.

The Court therefore concluded that because "the CBA eliminates reforms instituted by the Accountability Ordinance and leaves the old arbitration regime 'materially unchanged' the City and SPD have fallen out of full and effective compliance with the Consent Decree concerning SPD discipline and accountability." *Id*. at 13. Based on that conclusion, the Court

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 1

146743935.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

ordered the City, "with the assistance of the Monitor and the CPC," to (1) assess the present accountability regime, and (2) propose a methodology to achieve compliance. *Id*. at 13-14.

In a subsequent order, the Court cautioned the City not to use its assessment "to justify its current accountability system," because if so, "the exercise will be a failure, reform will be delayed, and full and effective compliance with the Consent Decree will recede further into the future." Dkt. # 585 at 4.  The Court further warned that because it "has already determined that the City is out of compliance with the Consent Decree on accountability," the City should not try to use its assessment "as a stealth method of bringing an out-of-time motion for reconsideration of that ruling." *Id*. at 7.  Confident that the City would "heed this warning," the Court authorized the City to proceed with its assessment. *Id*.

The City appears not have heeded the warning after all.  The City submitted 21CP's assessment on December 13, 2019, which only addressed the first part of the Court's May 21, 2019, order.  Dkt. # 598-2 ("the *21CP Assessment*").  With the *21CP Assessment* completed, the City now intends to address the second part of the Court's order: developing a methodology to address the Court's concern that "the old accountability system is inadequate for purposes of compliance with the Consent Decree." Dkt. # 562 at 13.  Despite the Court's warnings, however, the City is already using the assessment to *justify* the current accountability regime, which the Court has found to be inadequate.  According to the City, the *21CP Assessment* "concludes that Seattle's disciplinary and oversight system is **working as intended**," and that there may be some areas "in which the system **could benefit** from improvement." Dkt. 598 at 1 (emphasis added).

The CPC disagrees.  The City's synopsis is contrary to the Court's conclusion that there is a "critical need for reform to that [accountability] regime." Dkt. # 562 at 7.  For the accountability system to work "as intended" it must be transparent, fair, just, and instill public confidence. The current regime falls short.  That is why the City fell out of compliance with the Consent Decree.  Vaguely referencing that the system "could benefit" from improvements

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

146743935.2

suggests that the City does not appreciate the "critical need for reform," and does not intend to submit a methodology strong enough to bring the City back into compliance. Any methodology should fully address the four areas the Court has highlighted: (1) calculation of the 180-day timeline for disciplinary investigations; (2) lack of subpoena authority for the Office of Professional Accountability (OPA) and Office of the Inspector General (OIG); (3) the standard of review and quantum of proof in disciplinary appeals; and (4) other areas affecting public confidence.

The City recently invited the CPC and its counsel to meet in person to discuss how to craft a methodology that would bring the City back into compliance on the issue of accountability. The CPC welcomes this opportunity, although significant time has already been lost as preparations for bargaining are already well underway. The CPC is confident that the City, the Monitor, OPA, OIG, and CPC are capable of working collaboratively to develop a robust methodology to bring about compliance, but at this time both the nature and depth of the collaboration the City has in mind and the outlines of a methodology remain undefined.

### III.  21CP's Assessment Underscores the Need for Reform

**A.  Reforming the Calculation of the 180-Day Timeline for Disciplinary Investigations.**

On November 25, 2019, the CPC sent the City its recommendations concerning the City's collective bargaining agenda with SPOG and the Seattle Police Management Association (SPMA). Declaration of David A. Perez, Ex. A ("CPC Bargaining Agenda Letter"). In that letter, the CPC urges the city to reform the calculation of the 180-day timeline for disciplinary investigations so that the start/end times are consistent, the timing is tolled under appropriate circumstances, and to remove the requirement that the union approve any extension. *Id*. at 2 (Priority 2).

The *21CP Assessment* illustrates the need for reform. 21CP points out that "the requirements for an investigation extension request by OPA to the Guild due to a criminal investigation lack precise definitions that could create a risk that *serious misconduct could be*

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 3

146743935.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

held unaccountable." *21CP Assessment* at 35 (emphasis added).  In fact, 21CP found that on this issue Seattle is an outlier: "[t]he calculation of time and extension request process appears to be a practice that is *exclusive to Seattle*." *Id*. (emphasis added).

First, 21CP found that Seattle appears to be the *only* jurisdiction that "require[s] the investigative agency [e.g., OPA] . . . to seek permission from a police union" to obtain an extension.  *Id*. at 35-36.  In most jurisdictions the union "has no role in determining or giving consent to tolling or extending an investigation."  *Id*. at 35.  Giving the union the ability to veto an extension request "raises questions" about whether this provision can ensure "certainty, timeliness, and fairness" over the process.  *Id*. at 38.

Second, 21CP points out that the SPOG agreement allows for tolling when a "*complex criminal investigation*" is ongoing *and* the City has exercised due diligence during the investigation.  *Id*. at 37.  But what makes an investigation "complex" is unclear and undefined.  *Id*. at 38.  Limiting the tolling to "complex criminal investigations," rather than all criminal investigations, makes no sense because any criminal investigation might take a long time, no matter its underlying complexity.  That's why other jurisdictions allow for tolling for *any* criminal investigation, without an inquiry into whether the investigation is complex enough to warrant such tolling.  *See id*. at 38, n.65.  In theory the unions in Seattle could exercise their unprecedented veto authority over an extension request based on their view that the underlying criminal investigation was not complex enough to warrant an extension.

Third, 21CP cautions that the 180-day timeline might run out without a proper investigation because the clock restarted without OPA's knowledge.  *Id*. at 38-39.  There currently is no formal process to ensure "that OPA receives prompt notification" that a criminal investigation has ended.  *Id*. at 39.  This creates a risk that OPA may be prevented "from taking any action" even if there *was misconduct*.  *Id*.

Taken together, the 180-day timeline must be reformed.

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 4

146743935.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**B.     Restoring Subpoena Authority to the OPA and OIG.**

The Accountability Ordinance made clear that OIG and OPA both had full subpoena authority to obtain relevant evidence and testimony. But the SPOG agreement drastically curtailed the authority by blocking OIG and OPA from issuing subpoenas "to bargaining unit employees and their family members, and third party subpoenas seeking personal records of such employees and their family members." *21CP Assessment* at 41 (citing SPOG CBA). In its November 25 letter, the CPC emphasized the need to restore full subpoena authority to OIG and OPA. CPC Bargaining Agenda Letter at 2 (Priority 3). 21CP's report provides further support for the reforms that the CPC has identified.

First, 21CP explains that there is "uncertainty about the tools available to OPA and OIG to obtain evidence." *21CP Assessment* at 40. This far into the Consent Decree process, it is unacceptable for the oversight agencies to have unclear and undefined authority to obtain the very evidence they need to do their job. The authority should be clear, transparent, precise, and effective. But right now it isn't any of those things.

Second, the report notes that the OPA may be "'self-limit[ing]' investigations knowing it can't obtain certain records." *Id*., at 41. That is a troubling finding. OPA should be robustly investigating all allegations of misconduct, and when necessary and appropriate seeking relevant evidence that can only be obtained through a subpoena.

Third, far from leading on this issue, Seattle is *backtracking* relative to its peers. According to 21CP, the limitation on OPA and OIG's subpoena authority "is *clearly more restrictive* as to officers, their families and records in the possession of officers or their families than found in the five benchmark cities that also have civilian-led oversight agencies with the authority to investigate alleged misconduct." *Id*. at 45 (emphasis added). In fact, "*[n]one* of the five cities with investigative civilian agencies have restrictions on issuing subpoenas." *Id*. (emphasis added).

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 5

146743935.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

The City must make the restoration of full subpoena authority to OIG and OPA a priority in the next round of labor negotiations.

**C.     Pegging Burden of Proof at Preponderance for All Disciplinary Actions.**

In its November 25 letter, the CPC urged the City to return to the "preponderance standard for all allegations of misconduct." CPC Bargaining Agenda Letter at 2 (priority 1). The SPOG agreement established an "elevated standard of review (i.e. – more than preponderance of the evidence)" for those cases where the discipline might be stigmatizing to the officer. *21CP Assessment* at 47 (citing SPOG CBA). And for misconduct involving dishonesty, the CBAs further elevated the standard to "clear and convincing." *Id*. The 21CP report illustrates the urgent need for reform on this issue.

First, Seattle is once again an outlier on this issue: the "majority" of departments who responded to 21CP's survey indicated that they use "preponderance of evidence" as the standard in disciplinary appeals. *Id*. at 51. In fact, 77% of the agencies that responded to 21CP's assessment indicated that the quantum of proof for the chief or sheriff to impose discipline is "preponderance of evidence." *21CP Assessment* at 28.

Second, making matters worse, the CBAs do "not define alleged offenses that are stigmatizing." *21CP Assessment* at 16. As the CPC has pointed out, any serious allegation of misconduct can (and likely would) be viewed as stigmatizing; applying an "elevated standard of review" for such offenses makes it much more difficult to hold officers accountable for the most egregious instances of misconduct. By making the standard of review a moving (and elevated) target, "the quantum of proof is not certain or predictable and dependent on the norms of the individual arbitrator." *Id*. at 52.

Applying a standard higher than preponderance can significantly damage public confidence in the accountability system, and may even violate public policy. In fact, 21CP points out that applying higher burdens "does not always survive judicial scrutiny." *Id*. at 53. If it is "more likely than not"—the preponderance standard—that an officer lied or committed

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

some other act of serious misconduct—it would be absurd to keep that officer on the force simply because there may be some residual doubt that would not pass muster under some elevated standard such as clear and convincing. *See id*. at 53, n.89.

D.     **Reforming Features of the Disciplinary Process Affecting Public Confidence.**

In its November 25 letter, the CPC also identified various other reforms to features of the disciplinary process that affect public confidence. CPC Bargaining Agenda Letter at 2 (priorities 4 – 10). The 21CP report provides further support for several of the CPC's recommendations.

For instance, the Accountability Ordinance required that all disciplinary appeals be "open to the public and shall be heard by the PSCSC." SMC 3.29.420. As 21CP points out, "[t]he agreements eliminated the requirement in the accountability ordinance that disciplinary appeals be open to the public." *21CP Assessment* at 47. This ensures that the appeals remain shrouded in secrecy, eliminating the transparency key to public confidence. To some, the process is "like a 'black box.'" *Id*. at 53. According to 21CP's own analysis, closing these hearing off to the public makes it "difficult for the public to track the status of sustained discipline cases through the grievance and appeals process." *21CP Assessment* at 4 (Finding 8).

The disciplinary process should be transparent. The Court well recalls the outrage that ensued when the decision to overturn the discipline in the Adley Shepherd case was withheld until *after* the City Council approved the latest CBA. *See* Lewis Kamb and Steve Miletich, *Seattle, police union delayed release of ruling to reinstate fired officer until after labor contract was approved*, Seattle Times (Jan. 14, 2019), *available at* https://www.seattletimes.com/seattle-news/city-police-union-delayed-release-of-ruling-to-reinstate-fired-officer-until-after-approval-of-contentious-new-police-contract/ (last visited: Dec. 31, 2019).

E.     **Next Steps Concerning Compliance and the Monitor's Ongoing Role**

The Court ordered the City to "submit 'a methodology . . . for how the City proposes to achieve compliance' on the issue of accountability." Dkt. 585 at 8. That methodology should

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 7

146743935.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

have been submitted at the same time as the assessment—but it wasn't.  The CPC intends to work with the City on this methodology to ensure it is responsive to the Court's order.

The Court also ordered the parties to submit joint or separate proposals "concerning the Monitor's role in assessing accountability compliance."  *Id*. at 9.  But the City omitted any mention of this issue in its filing.  The CPC will respond to the parties' proposal(s) when they are submitted.  The CPC notes that the Monitor has been extremely effective (and efficient) in moving the City towards compliance with the Consent Decree.  Retaining the Monitor could help in the overall efforts to reform the accountability regime in ways that bring the City into compliance with the Consent Decree.  Unless and until the City get into compliance, and maintains that compliance for two years, it is critically important that the Court and the Monitor remain involved in this process.

## IV.    CONCLUSION

Far from demonstrating that the current accountability regime is working "as intended," the *21CP Assessment* underscores the Court's previous findings that there is a "critical need for reform."  The CPC is encouraged by the City's overtures to collaborate on a methodology to achieve compliance.  The CPC looks forward to working with the City, the Monitor, OIG, and OPA to put the City and SPD back into compliance on the issue of accountability.

DATED: January 6, 2020

*/s/ David A. Perez*
David A. Perez, WSBA No. 43959
DPerez@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for *Amicus Curiae* Community Police Commission

CPC'S RESPONSE TO
21CP's ASSESSMENT
(No. 2:12-cv-01282-JLR) – 8

146743935.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on January 6, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

DATED this 6th day of January, 2020.

*s/ David A. Perez*
DPerez@perkinscoie.com

CERTIFICATE OF SERVICE
(No. 2:12-cv-01282-JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

146743935.2