# EXHIBIT A

**Seattle Community Police Commission**

Our city. Our safety.
Our police. Better together.

November 25, 2019

VIA E-MAIL

Mayor Jenny Durkan
Seattle City Hall
600 Fourth Avenue, 7th Floor
Seattle, Washington 98104

Council President Bruce Harrell
Councilmember Sally Bagshaw
Councilmember M. Lorena Gonzalez
Councilmember Lisa Herbold
Councilmember Debora Juarez
Councilmember Teresa Mosqueda
Councilmember Mike O'Brien
Councilmember Kshama Sawant
Seattle City Hall
600 Fourth Avenue, 2nd Floor
Seattle, Washington 98104

RE:   Community Police Commission's Recommendations Concerning City of Seattle's Labor Negotiations with Seattle Police Officers Guild and Seattle Police Management Association

Dear Mayor Durkan and City Councilmembers:

On behalf of the Seattle Community Police Commission (CPC), we thank you for the opportunity to provide our thoughts and recommendations concerning the City's collective bargaining agenda as the City begins another round of negotiations with the Seattle Police Management Association (SPMA) and the Seattle Police Officers Guild (SPOG).[1]

At the outset, the CPC continues to call for full implementation of the reforms in the Accountability Ordinance.[2]  That law, which passed unanimously, represented a watershed moment in our City's ongoing efforts to ensure fair, transparent, and equitable police accountability.  But many of those reforms did not survive the City's collective bargaining with its police unions.  We recall, and are heartened by, the City's pledge at the conclusion of the last rounds of bargaining to continue building upon the reforms from the ordinance that were included in the contracts at that time.

---

[1] SMC 3.29.450 provides as follows: "Those who provide civilian oversight of the police accountability system shall be consulted in the formation of the City's collective bargaining agenda for the purpose of ensuring their recommendations with collective bargaining implications are thoughtfully considered and the ramifications of alternative proposals are understood. These individuals shall be subject to the same confidentiality provisions as any member of the Labor Relations Policy Committee." The same accountability processes should apply to all ranks.  SMC 3.29.100.D.

[2] *See United States v. City of Seattle*, 2:12-cv-01282-JLR, Dkt. 533 (Levinson Decl.), which we incorporate by reference.

Given the complexity of these issues, we strongly recommend the City appoint an external advisor with accountability expertise, jointly recommended by the OPA, OIG, and CPC to assist the City in bargaining and navigating the impacts of any proposed contract changes. The City has the authority to make this appointment.[3] And to build community trust, the advisor should participate with the Labor Relations Policy Committee during development of bargaining agendas, during the bargaining process, and in any re-opener discussions, and be tasked with reporting out to the community after the conclusion of bargaining on the process, to the extent possible considering confidentiality limitations.

The CPC also takes this opportunity to highlight **10 key priorities**:[4]

1. **Burden of Proof and Standard of Review**: Return to use of the preponderance standard for all allegations of misconduct.

2. **Reforming the Calculation of the 180-Timeline for Disciplinary Investigations**: Ensuring that start and end of the 180-day timeline is consistent, ends once OPA issues its findings, and is tolled or otherwise extended in various circumstances, including (i) any type of criminal investigation that delays the disciplinary investigation; (ii) witness or labor representative unavailability; (iii) failure to refer a complaint to OPA in a timely manner; (iv) new evidence being brought forward after the investigation that reasonably requires additional time; and (v) vacancy of the OPA Director position. Union approval of extensions to the 180-day timeline should not be required when OPA is not responsible for the delay.

3. **Subpoena Authority for OPA and OIG**: Align the SPOG contract with the Accountability Ordinance and with the SPMA contract to provide OIG and OPA with full subpoena authority.

4. **Reforming Features of Disciplinary Process Affecting Public Confidence**:

    a. *Standard of review*: Disciplinary decisions should only be overturned applying the good faith for cause standard.

    b. *Deference*: Modifications to disciplinary decisions should be narrowly tailored to address any underlying defect in the process, and otherwise defer to the factfinder (e.g., the Chief).

    c. *Dishonesty*: Remove requirements that intentionality must be proven or that the information must be knowingly incorrect to sustain allegations of dishonesty. The obligation to be honest should extend to all actions and statements, not only OPA interviews.

---

[3] SMC 4.04.120.B
[4] These priorities are not ranked in any precedential order.

   d. *Transparency*: Disciplinary appeal hearings should be open to the public.

   e. *Timelines*: Firm timelines should be required for each step of the disciplinary process (including appeals) to reduce the length of time for cases to be resolved.

   f. *Neutral panelists*: Align the SPOG contract with the Accountability Ordinance and the SPMA contract so that no member of the Public Safety Civil Service Commission is a peer, subordinate, or supervisor of officer appealing discipline, but instead a neutral third party, appointed by the Mayor using a merit-based selection process.

   g. *Public Policy*: Clearly stating right to appeal to Superior Court for decisions that violate public policy (should arbitration be maintained).

5. **Ensure Civilian Oversight Authority Includes Allegations of Criminal Misconduct**: If an alleged misconduct claim triggers potential criminal liability, OPA should have the authority to *refer* the criminal investigation to an independent agency (e.g., another police department), *oversee* both the administrative and criminal investigations, and *coordinate* with the investigative agency and prosecutors (e.g., determine sequencing of investigations, sit in on interviews, review documents, etc.) to ensure that the most effective, thorough, and rigorous criminal and administrative investigations are conducted.  The tolling reforms outlined above would dovetail with this reform.

6. **Revising Statute of Limitations and Record Retention**: The statute of limitations should not apply for serious excessive force (*e.g.*, Type III force), dishonesty, criminal conduct, or where the underlying allegations were concealed by anyone. Otherwise, the statute of limitations should be five (5) years.  And to ensure an adequate record, personnel files (including OPA files) should be preserved for at least six years after the officer is no longer employed by the City.

7. **Disclosure of Material Information During Investigations**: The named employee or bargaining representative must disclose material evidence or witnesses during OPA investigation as soon as possible. If not disclosed, the information may not be used in an exculpatory manner, either at the due process hearing or on appeal.

8. **Chief Should Be Empowered to Place Employee on Leave Without Pay**: Where the allegations in a complaint, if true, could lead to termination, or where the Chief determines that it is necessary to ensure public safety, public trust, or otherwise warranted under the circumstances, the Chief should have the authority to immediately suspend an employee without pay. This authority should be discretionary and not subject to appeal, and if the employee is subsequently acquitted or the charges are dropped, the employee's wages and benefits would be restored.

9. **Reforms to Secondary Employment**: Secondary employment is a practice by which police agencies permit officers to work for other employers when off-duty, while still wearing SPD

uniforms, carrying weapons, and maintaining the powers and authority of on-duty officers.  But various allegations relating to the management of secondary employment have demonstrated that the practice is not sufficiently regulated.  The Mayor's Office issued an executive order in September 2017 "directing a coordinated interdepartmental effort to require [SPD] to provide greater oversight through internal regulation and management of all secondary employment for SPD officers.[5]  The substantive requirements concerning secondary employment in the Accountability Ordinance, the oversight officials' recommendations, and the executive order should be included in the City's bargaining agenda.

10. **Whether Complainants and Victims Should Be Allowed to Appeal Disciplinary Decisions**: When a complainant alleges that she has been a victim of excessive force, an officer is typically allowed to appeal—but the complainant/victim is not allowed to do the same.  The City Council discussed this topic in 2017 when it passed the Accountability Ordinance, passing a resolution expressly directing the CPC to lead stakeholders in assessing the need for developing a complainant right of appeal process. That work is about to get underway.

We look forward to meeting with each of you at your earliest convenience to discuss these issues and how we can cooperate with the City to ensure these priorities are placed on the bargaining agenda.  Again, we strongly suggest that the City appoint an advisor jointly recommended by the oversight agencies to facilitate this process.

Sincerely,

Rev. Harriett Walden             Isaac Ruiz                    Emma Catague

**Co-Chairs, Community Police Commission**

cc:

Peter Holmes, Esq., Seattle City Attorney (via e-mail)
Chief Carmen Best, Seattle Police Department (via e-mail)
Merrick Bobb, Police Assessment Resource Center (via e-mail)
Commissioners, Seattle Community Police Commission
David A. Perez, Esq., Perkins Coie, outside counsel to Community Police Commission (via e-mail)

---

[5] Executive Order 2017-09: Reforming Secondary Employment at the Seattle Police Department (Sept. 27, 2017), *available at* http://www.seattle.gov/Documents/Departments/Mayor/Executive-Order-2017-09-Secondary-Employment.pdf.