THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>       v.<br><br>CITY OF SEATTLE,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 2:12-cv-01282-JLR

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS**

**NOTE ON MOTION CALENDAR: May 7, 2020**

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - i
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## I.  INTRODUCTION

Nearly a decade ago, the United States Department of Justice (DOJ) began its investigation of the Seattle Police Department (SPD). The tremendous progress made by SPD since then demonstrates that enduring, sustainable police reform requires continuous improvement, innovation, and the commitment of local leaders working with the community. The Consent Decree reforms transformed SPD's policies and training, and they instilled a culture of continuous improvement in its officers.

The City of Seattle and the United States (the "Parties") seek an order terminating the provisions of the Settlement Agreement (the "Consent Decree") assessed under the Sustainment Plan. The Parties also request that the Court conclude all monitoring activities related to these provisions. Evidence presented in dozens of reports, assessments, and reviews conducted pursuant to the Consent Decree compellingly demonstrates that the City has achieved and sustained full and effective compliance in these areas. The Court's appointed Monitor has confirmed and validated these findings.

SPD is a transformed organization. Force used by SPD today presents a night-and-day contrast to the practices documented by DOJ in 2011. This case began because DOJ found that *twenty percent* of SPD's serious uses of force were unconstitutional. DOJ's Findings Letter (Dkt. 1-1) at 10. Today, as a result of the Consent Decree reforms, more than 99% of force used by SPD officers complies with policy—a standard that exceeds constitutional requirements—and there has been a sixty percent reduction in the use of serious force. Monitor's Ninth Assessment (Dkt. 383) at 8, 31-32. Any pattern or practice of excessive force that existed has been eliminated.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 1
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

To ensure that these reforms are embedded within its culture, SPD has adopted robust internal accountability mechanisms, such as overhauling its force reporting system and assembling an elite team of detectives specially trained to investigate force used by police officers. The City also went beyond the requirements of the Consent Decree and reformed its independent police oversight system. It created a powerful Office of Inspector General for Public Safety (OIG) to "ensure the fairness and integrity of the police system as a whole" and "oversee ongoing fidelity to organizational reforms implemented" by SPD under the Consent Decree. Accountability Ordinance § 3.29.010(B). The City established the Community Police Commission (CPC) as a permanent body and broadened its authority to encompass advocacy and engagement related to police-community relations, SPD policies and practices, and police oversight. *Id.* § 3.29.360. The City also increased the effectiveness of the Office of Police Accountability (OPA) to further strengthen mechanisms for holding officers accountable, including by bolstering its independence and improving the investigations process. *Id.* §§ 3.29.115(F) & 3.29.130.

The City acknowledges the Court's May 21, 2019 Order regarding accountability and discipline issues and, without waiving any objections to the Order, seeks to implement its commitments to making ongoing, systemic improvements to ensure constitutional policing. The City has taken significant steps to address the Court's concerns and intends to respond to the issues raised by the Court's May 21, 2019 Order, in a pleading to be filed by August 1, 2020. The City is unable to fully address the accountability issues in this filing, because it is now confronting an unprecedented public health crisis caused by the COVID-19 pandemic. As a result, the City is required to focus substantial resources—both human and financial—on addressing a myriad of urgent issues in order to protect the public health and safety of its residents. *See* Noble Decl. An order from the Court

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 2
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

terminating the Consent Decree provisions covered by the Sustainment Plan and associated monitoring activities would allow the City to reallocate scarce resources toward pressing new demands.[1] Despite these extraordinary circumstances, the City remains committed to maintaining and continuing the reforms achieved under the Consent Decree. The City views reform as an ongoing process of continuous innovation, accountability, and improvement that requires the sustained investment of public resources.

## I.       BACKGROUND AND PROCEDURAL HISTORY

### A.       The Parties negotiated a Consent Decree tailored to address DOJ's complaint alleging that SPD was engaging in a pattern or practice of excessive force.

In March 2011, at the request of community groups, DOJ began an investigation of the City's police practices. DOJ's Findings Letter (Dkt. 1-1) at 1. At the conclusion of its investigation, DOJ reported in December 2011 that 20% of SPD's serious use-of-force incidents involved the unnecessary or excessive use of force. *Id.* at 4. Although excessive force was the only issue DOJ found that rose to the level of a constitutional violation, DOJ's investigation also identified other

---

[1] The City has invested over $100 million in SPD to implement the reforms required by and complementary to the Consent Decree, including the purchase and implementation of new technology platforms. Noble Decl. ¶ 7. SPD's achievements in the areas of force, crisis intervention, and Terry stops, alone, demonstrate that this investment was worthwhile. This total includes monitoring costs of approximately one million dollars annually for a total of $7.9 million over seven and a half years. *Id.* ¶ 9. Monitoring in the Sustainment Plan areas is no longer contemplated by the Consent Decree, because the City has achieved full and effective compliance and sustained it for two years. Going forward, this work will be carried out by the independent OIG, created by the City to "objectively ensure the ongoing integrity of SPD processes and operations," "review OPA's misconduct complaint-handling and investigations," and "conduct risk management reviews and performance audits . . . of any and all SPD and OPA operations." Accountability Ordinance, § 3.29.200.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 3
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

practices raising "serious concerns." *Id.* at 3.  DOJ attributed these issues to deficient policies, training, and supervision. *Id.* at 4.

Based on its investigation, DOJ filed a complaint against the City under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, *recodified at* 34 U.S.C. § 12601, which authorizes civil actions to eliminate patterns or practices of governmental conduct that deprive persons of federal rights. DOJ alleged that SPD officers were engaged in a pattern or practice of subjecting individuals to excessive force, in violation of the Fourth Amendment, including the use of impact weapons, the use of force on restrained subjects, and using force in encounters with persons with mental illness or under the influence of alcohol or drugs. Complaint (Dkt. 1) ¶ 9.

The Parties negotiated a comprehensive settlement agreement, or "Consent Decree," to be enforced by the Court.  The Parties entered into the Consent Decree "with the goal of ensuring that police services are delivered to the people of Seattle in a manner that fully complies with the Constitution and laws of the United States, effectively ensures public and officer safety, and promotes public confidence in the Seattle Police Department ('SPD') and its officers." Consent Decree § I.

The Consent Decree mandates that the City make extensive policy, training, and operational changes to its police practices.  The City's obligations—referred to as "Commitments"—are specified in enumerated paragraphs intended to "provide clear, measurable obligations." ¶ 1. The Commitments comprise one hundred paragraphs and six subject areas: force (¶¶ 69-129); responding to people who are experiencing behavioral crisis (¶¶ 130-37); stops and

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 4
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

detentions (¶¶ 138-44); bias-free policing (¶¶ 145-51); supervision (¶¶ 152-63); and the OPA (¶¶ 164-68).

The Court provisionally approved the Consent Decree with amendments to ensure regular progress reporting to the Court and the public. 8/30/2012 Order (Dkt. 8). In findings leading to its preliminary approval of the settlement, the Court found that the Consent Decree "is tailored to the alleged deficiencies identified by the United States" and that its "substantive provisions relate directly to the policies, procedures, training, and oversight that the United States alleges contribute to a pattern or practice of SPD officers using excessive force in violation of the Fourth Amendment and Section 14141." Findings of Fact & Conclusions of Law (Dkt. 14) ¶¶ 17, 25.

The Parties also negotiated a separate Memorandum of Understanding[2] (MOU) which represents "a contract between the City of Seattle and the United States." Consent Decree ¶ 2. Among other provisions in the MOU, the Parties agreed that the City would create the CPC to represent "the many and diverse communities in Seattle." MOU ¶ 4. The Court granted CPC amicus curiae status in this matter. 11/26/2013 Order (Dkt. 106).

### B. The Court found that the City had achieved full and effective compliance.

The Consent Decree establishes two phases for compliance. First, the City is required to attain "full and effective compliance" with the Decree ("Phase I"). Second, it is required to sustain compliance for two years ('Phase II' or "Sustainment Period"). ¶¶ 223, 229-30. To achieve "[f]ull and effective compliance" with a material requirement of the Consent Decree, the City must: "(a) incorporate[] the requirement into policy; (b) train[] all relevant personnel as necessary to fulfill

---

[2] Available at https://www.justice.gov/sites/default/files/crt/legacy/2012/07/27/spd_mou_7-27-12.pdf.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 5
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

their responsibilities pursuant to the requirement; and (c) ensure[] that the requirement is being carried out in practice." ¶ 184. To assess compliance, the Consent Decree tasks the Monitor with conducting "compliance reviews and audits" to cover "each requirement of the Consent Decree." ¶ 183.

After developing new SPD policies and implementing them through a comprehensive training initiative, the Parties and the Monitor planned a series of assessments to evaluate whether these efforts had resulted in compliance with the "Commitments" paragraphs of the Consent Decree.  ¶¶ 69-168. As the Monitor explained, "[c]ollectively, these assessments will cover every area of the Consent Decree." Monitor's First Assessment (Dkt. 231) at 4; *see also* Monitor's Fifth Rept. (Dkt. 212) at 11 (The assessments cover "all major areas of the Consent Decree."); Monitor's Sixth Rept. (Dkt. 251) at 3 (The assessments will chart "SPD's progress toward complying with each area of the Consent Decree."); Monitor's Seventh Rept. (Dkt. 317) at 3-4 (describing "comprehensive assessments" of SPD's "progress in complying with major areas of the Consent Decree"). The Court approved the subject matter and schedule of the assessments.[3]

The Monitor conducted the ten planned assessments over three years. In them, the Monitor documented and confirmed the City's compliance with each assessed Consent Decree requirement.[4]

---

[3] *See* Dkt. 195, App. A at 12-35 (March 17, 2015) (Monitor's submission setting forth initial description and schedule of assessments); Dkt. 294-1, Ex. A at 10-21 (June 6, 2016) (Monitor's submission setting forth updated description and schedule of Monitor's assessments); Dkts. 196 & 298 (Court's orders approving Monitor's plans).

[4] The Monitor initially found that certain force investigations were inadequate. Monitor's First Assessment (Dkt. 231) at 3. In a follow-up assessment, the Monitor determined that SPD has achieved compliance. Monitor's Seventh Assessment (Dkt. 360).

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 6
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

A table listing these Phase I compliance assessments is attached. Ex. A to Cowart Decl. The City subsequently moved the Court for a declaration that it had achieved full and effective compliance. Dkt. 419. DOJ supported the City's motion, confirming that "SPD's use of force, stops, and related data show that it has complied with all of the terms of the Decree, and has eliminated the pattern or practice of unconstitutional policing that led to DOJ's investigation and findings." Dkt. 422 at 2.

On January 10, 2018, based on the Monitor's assessments, the Court found that the City has achieved full and effective compliance with the Consent Decree's Phase I requirements:

> In Phase I, the court evaluates whether SPD has incorporated the Consent Decree's requirements into policy and training and has carried them out in practice—at which point the court declares SPD to be in "full and effective compliance" with the Consent Decree. In Phase II, the court evaluates whether SPD has maintained those reforms for at least two years—at which point the court terminates the Consent Decree. The only issue presently before the court is whether the City and SPD have satisfied Phase I. The court agrees with the Government that the answer to that question is driven by the ten assessments conducted by the Monitor.

1/10/2018 Order (Dkt. 439) at 12 (citations omitted).

The City's attainment of full and effective compliance initiated a two-year sustainment period. *Id.* at 13-14; Consent Decree ¶ 223. The Court approved a Sustainment Plan and accompanying schedule as the governing documents for the Parties' and the Monitor's conduct of Phase II of the Consent Decree. 3/13/2018 Order (Dkt. 448). These documents set out a schedule of reports, reviews, and self-assessments through which the City was required to demonstrate continued compliance.  Dkts. 444 & 444-1.

**C.      The City has successfully completed all of the Sustainment Plan requirements.**

The Parties and the Monitor agreed that the assessments performed during the Sustainment

CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF
PARTIES' JOINT, STIPULATED MOTION TO TERMINATE
CONSENT DECREE SUSTAINMENT PLAN PROVISIONS - 7
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Period would be conducted primarily by SPD's Audit Policy and Research Section in order to demonstrate the Department's ability to engage in critical self-analysis and to identify and address any obstacles to further progress. Sustainment Plan (Dkt. 444) at 4. The City's newly created OIG conducted an assessment of SPD's Force Review Board. The primary role of DOJ and the Monitor was to verify the quality and accuracy of the City's self-assessments. Accordingly, for each of the compliance reports conducted by the City, the Monitoring Team and DOJ analyzed the underlying data and confirmed that the City has maintained compliance.[5]

As of January 10, 2020, the Parties and the Monitor have successfully completed the reports, reviews, and assessments set forth in the Sustainment Plan, which together document that the City has sustained compliance in these areas for two years.[6]  A table listing the Phase II compliance reports is attached as Exhibit B.

---

[5] DOJ's and the Monitor's process for ensuring quality and accuracy included watching body-worn video of incidents, examining officers' written reports, evaluating the reviews conducted by the chain of command, conducting interviews of SPD and OPA employees, and attending Force Review Board meetings. *See, e.g.*, Dkt. 570-1 at 28, Dkt. 570-2 at 39-50, Dkt. 588-1 at 27, Dkt. 588-2 at 23. In addition, throughout the Sustainment Period, the Monitor has continued to observe all FRB deliberations of officer-involved shootings and Type III force incidents. Monitor's Second Assessment (Dkt. 247) at 4.

[6] The Sustainment Plan also contemplates that SPD shall continue to refine Consent Decree mandated policies and outcomes. Throughout the Sustainment Period, SPD proposed many important revisions to these policies, and, in collaboration with the Monitor and DOJ, sought and received Court approval. These policy revisions addressed force (Dkts. 471, 477, 500, 509, 569 and 580); stops and detentions (Dkts. 496, 501, 587, and 593); the early intervention system (Dkts. 502, 510, 599, and 607); crisis intervention (Dkts. 555-1 and 563); and bias-free policing (Dkts. 555-2 and 563).  SPD also provided periodic reports summarizing policing data to the Court. These "outcome reports" demonstrate the concrete effects of SPD's work under the Consent Decree, such as reductions in serious uses of force and meaningful changes in outcomes of crisis incidents. SPD produced and filed seven outcome reports during the Sustainment Period containing data on the use of force, crisis intervention, community engagement, and stops and detentions. *See* Dkts. 443, 452, 458, 524, 564, 588-3, 605.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 8
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## II.     ARGUMENT

The end of the two-year Sustainment Period, or "Phase II," marks a milestone in this case. The Sustainment Plan was designed to measure the City's compliance with the "Commitments" section of the Consent Decree which comprises paragraphs 69-168. *See* Sustainment Plan (Dkt. 444) at 5-9; Exhibit B (table listing Sustainment Plan compliance reports.) As of January 10, 2020, each of the compliance reports required by the Sustainment Plan has been completed successfully and filed with the Court. The City seeks termination of the Consent Decree provisions assessed under the Sustainment Plan because the City has achieved and maintained full and effective compliance with these requirements for two years. Consent Decree ¶¶ 223, 229-30.

The Monitor's ten Phase I assessments, together with the thirteen compliance reports completed during Phase II, comprise more than 1,000 pages and resoundingly demonstrate that SPD has achieved and sustained compliance with paragraphs 69-168 of the Consent Decree.  By doing so SPD has eliminated the pattern or practice of excessive force which led to DOJ's 2011 complaint and the resulting Consent Decree.

### A.     SPD has reduced the incidence of serious force by officers by 60 percent and virtually all uses of force now meet constitutional requirements, demonstrating that there is no longer a pattern or practice of excessive force.

DOJ's  2011 investigation found that SPD used excessive, unconstitutional force in 20% of all incidents involving a serious use of force. DOJ's Findings Letter (Dkt. 1-1) at 4. DOJ determined that "[t]his pattern or practice is . . . the product of inadequate policy, training and supervision." DOJ also concluded that "[t]he chain of command does not properly investigate, analyze, or demand accountability from its subordinate officers for their uses of force." *Id.* at 4. To address these findings, the Consent Decree mandates substantive principles governing the

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 9
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

permissible use of force, ¶¶ 69-90, and imposes rigorous procedures for the reporting, investigation, and review of force, ¶¶ 91-129.

### (1) Constitutionality of Force

Overhauling SPD's use-of-force policy and training were immediate and urgent priorities, and the area where the first and most far-reaching changes were made. The Monitor submitted the reformed use-of-force policy to the Court on November 27, 2013. Monitor's Mem. Re Force Policy (Dkt. 107). After receiving input from the City, DOJ, and CPC, the Court reviewed and approved the policies. 1/17/2014 Order (Dkt. 118). The Monitor praised the new policies: "SPD's use of force policy, approved by the Court in December 2013, is the embodiment of the Consent Decree. It provides officers with clear guidance and expectations consistent with constitutional imperatives." Monitor's Fourth Rept. (Dkt. 187) at 20. The Monitor also observed that the new policy contains "detailed, precise guidelines that provide line officers and supervisors alike with clear guidance on performance expectations." Monitor's Third Rept. (Dkt. 154) at 13-16. Critically, the CPC provided substantial input which shaped the use-of-force policy. Monitor's Mem. Re Force Policy (Dkt. 107) at 4. The Court recognized "CPC's attempts to reach out to SPD officers and the community." 7/27/2015 Order (Dkt. 225) at 3.

After the Court approved the use-of-force policy, SPD undertook a "herculean" effort to train all of the Department's approximately 1,300 officers on the use of force policies. Monitor's Third Rept. (Dkt. 154) at 7. Thereafter, the Monitor conducted an assessment of the force used by the Department to determine if it was constitutional and complied with policy.

The Monitor documented a dramatic contrast to DOJ's 2011 findings. He found that SPD has reduced the use of serious force by 60% and achieved a better than 99% rate of compliance

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 10
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

with its use-of-force policy—a standard that exceeds constitutional requirements. *Compare* Monitor's Ninth Assessment (Dkt. 383) at 8, 31-32 *with* DOJ Findings Letter (Dkt. 1-1) at 4.

Force used by SPD today presents a night-and-day contrast to the practices documented by DOJ in 2011. The use of force by Seattle police officers is now an empirically rare occurrence, and serious uses of force are exceedingly rare. In 2019 officers reported using force of any type a total of 1,264 times, a rate of just under one fifth of one percent (0.17%) of all dispatches. SPD' Use of Force Rept. (Dkt. 605-1) at 5. Of these uses of force, as in prior years, the overwhelming majority (77%) involved no greater than the lowest type of reportable force (such as the pointing of a firearm or a complaint of minor pain with no sign of injury). *Id.* at 6. Notably this lowest level of force was not even reported or tracked before the Consent Decree. Monitor's First Assessment (Dkt. 231) at 9. The most serious force—Type III force, defined as force that causes or may be reasonably expected to cause substantial bodily injury—is extraordinarily rare, occurring only 20 times in 2019, or 0.0023% of all dispatches. SPD's Use of Force Rept. (Dkt. 605-1) at 2.

These findings demonstrate that the pattern or practice of excessive force found by DOJ in 2011 has been eliminated.

### (2) Force Reporting, Investigation, and Review

DOJ concluded in 2011 that "[t]he chain of command does not properly investigate, analyze, or demand accountability from its subordinate officers for their uses of force." DOJ's Findings Letter (Dkt. 1-1) at 4. The Monitor conducted three, detailed evaluations of the Consent Decree requirements in this area, and these reports portray a dramatically transformed Department. *See* Monitor's First, Second, and Seventh Assessments (Dkts. 23, 247 & 360).

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 11 (12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    All force is now reported and reviewed by an officer's chain of command. The most serious

2    uses of force are investigated by an elite, interdisciplinary team of detectives who are specially

3    trained in investigating force used by officers. Monitor's Fourth Rept. (Dkt. 254) at 37. After each

4    investigation is completed, SPD's reformed Force Review Board (FRB) determines whether the

5    force complied with policy, training, and tactics. The Monitor has lauded the FRB as "the

6    Department's hub of internal accountability, analysis, and continual improvement with respect to

7    force." Monitor's Second Assessment (Dkt. 247) at 4. In addition, extensive data about SPD's use

8    of force is made available to the public through SPD's online dashboards and detailed annual

9    reports.[7]

10   The Sustainment Period compliance reports demonstrate the Department's continued

11   compliance with the Consent Decree requirements in these areas.  DOJ and the Monitor concluded:

> The overall the quality of SPD's review and investigation was high
> and the care that officers and their chain of command took in writing
> reports, reviewing information, ensuring complete reporting,
> probing issues of concern, and addressing shortcomings was
> impressive. . . . DOJ and the Monitoring Team believe SPD's
> thorough and established system of internal checks and balances in
> its force process (reporting, investigation and review) will help
> ensure organizational accountability from the officer that uses force
> through the Chief of Police who is responsible for the process and
> its outcomes.

17   Type I & II Use of Force Reporting, Investigation & Review Audit I (Dkt. 491-1) at 23. In addition,

18   OIG's recent assessment of FRB found that FRB continues to maintain compliance and that it

19   "welcomes internal debate and dissent" and "displays a high level of professionalism." OIG's FRB

---

[7] Available at https://www.seattle.gov/police/information-and-data

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF
PARTIES' JOINT, STIPULATED MOTION TO TERMINATE
CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 12
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Assessment (Dkt. 570-2) at 10. OIG also provided numerous, important suggestions to enhance the effectiveness and efficiency of the FRB. *See generally id*.

**B.      SPD has become a national leader in crisis response training and its rate of using force in crisis incidents is extraordinarily low.**

DOJ's 2011 investigation found that "SPD officers escalate situations and use unnecessary or excessive force when arresting individuals for minor offenses. This trend is pronounced in encounters with persons with mental illnesses or those under the influence of alcohol or drugs." DOJ's Findings Letter (Dkt. 1-1) at 4.

Consistent with the Consent Decree's requirements, SPD made significant training and program changes to prepare its officers to respond to people experiencing behavioral crisis. SPD now requires all officers to receive a minimum of eight hours of annual crisis intervention training. Monitor's Fifth Assessment (Dkt. 272) at 7. In addition, all officers have the opportunity to take a forty-hour crisis intervention course and over 60% of patrol officers have completed this voluntary, advanced training. SPD's Crisis Intervention Rept. (Dkt. 588-3) at 16. SPD convened a Crisis Intervention Committee comprised of cross-disciplinary members of government, mental health professionals and advocates, and academia, who meet regularly to advise SPD to ensure that its training and policies remain consistent with best practices and community expectations.

To coordinate across the Department, SPD established a specialized Crisis Response Unit (CRU) made up of a sergeant, five officers and a mental health professional. Monitor's Fifth Assessment (Dkt. 272) at 4. CRU provides real-time, expert advice to officers city-wide; it also reviews and analyzes crisis data collected by the Department and uses it to inform program decisions. Crisis Intervention - Use of Force Evaluation (Dkt. 511) at 5. SPD's extensive tracking of information

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 13
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

about crisis incidents has equipped CRU with the ability to identify members of the community who frequently use crisis intervention services and develop profiles and response plans for them, which are shared with officers in the field. *Id*. Moreover, the Monitor has observed, "SPD is the only agency in the nation that is currently tracking [force used in crisis incidents] with any level of detail." Monitor's Fifth Assessment (Dkt. 272) at 12.

When the Monitor evaluated SPD's compliance with Consent Decree mandated crisis intervention practices, it found that SPD meets the requirements in this area. *Id.* at 1. The Monitor remarked that "SPD has, in a relatively brief amount of time, created a full-fledged crisis intervention program that is successfully being woven into the SPD organization." *Id.* at 4.

Subsequent Phase II reports provide even stronger evidence of SPD's exemplary crisis intervention program. When needed, SPD is able to dispatch officers with specialized skills to calls involving individuals in crisis. In 2019, on average 62% of personnel assigned to and responsible for 911 response were "CI certified," having received more than forty hours of crisis intervention training. SPD's Crisis Intervention Rept. (Dkt. 588-3) at 17. In 82% of crisis calls, a CI-certified officer was on-scene. *Id.* at 20.

Due to SPD's training and programmatic changes, the use of force in crisis incidents has become infrequent. Of all crisis contacts reported between January 1, 2018, and June 30, 2019, reportable force occurred in only two percent. *Id.* at 27. SPD maintained these improvements when crisis-related 911 calls unexpectedly increased by 26% during the first six months of 2018. SPD's Crisis Intervention Rept. (Dkt. 495-1) at 7. Even during this period of increased demand, SPD was able to place a CI-certified officer on-scene for 80% of all crisis calls, and the rate of force in crisis contacts remained below two percent. *Id.* at 18, 29.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 14 (12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**C.   SPD does not engage in the "no suspicion" stop-and-frisk tactics decried in other jurisdictions, and the legality of its stops and frisks does not vary by race.**

DOJ concluded in 2011 that "SPD officers exhibit confusion between a casual, social contact and an investigative detention (a "*Terry*" stop)." DOJ's Findings Letter (Dkt. 1-1) at 6. DOJ further determined that SPD's "policies and practices, particularly those related to pedestrian encounters, could result in unlawful policing." *Id.* at 3. In addition, DOJ's "[a]nalysis of limited data suggest[ed] that, in certain precincts, SPD officers may stop a disproportionate number of people of color where no offense or other police incident occurred." *Id.* at 6. To address these findings, the Consent Decree requires SPD to revise its policies on search and seizure, stops, and bias-free policing; improve and expand its training and supervision; and track and analyze data about stops. ¶¶ 140-52.

In close consultation with the Monitor, DOJ, and CPC, SPD reformed its policy and training related to stops and detentions. SPD also overhauled its data collection for *Terry* stops.  Monitor's Mem. Re Collection of Data on Stops (Dkt. 143). Officers are now required to fill out a report after every *Terry* stop that documents,  among other items, important demographic information about the subject (such as perceived race), the duration of the stop, and a description of the circumstances giving rise to articulable reasonable suspicion. *Id.*, Ex. A.

The Monitor's Tenth Assessment found that SPD has achieved compliance:

> SPD and its officers are complying with the legal and policy requirements related to stops, searches, and seizures. The number of stops and detentions of individuals that are not supported by sufficient legal justification is exceedingly small. Importantly, an individual's odds of being a subject of a "bad" stop do not depend on that individual's race. This means that, regardless of who a subject is, the Department is complying with the requirements of law and SPD policy in a vast majority of instances.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 15
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Monitor's Tenth Assessment (Dkt. 394) at 3.

The Sustainment Period reports demonstrate that SPD continues to use *Terry* stops appropriately. The Stops & Detentions Audit, which reviewed a random sample of SPD's stops, confirms that SPD officers document articulable reasonable suspicion for the vast majority of stops and frisks. Dkt. 547-1 at 2-3; Dkt. 588-2 at 3. The data establish that SPD does not use the "no suspicion" stop-and-frisk tactics that have been decried in other jurisdictions.

> **D.     SPD and CPC have collaborated to design and implement high quality implicit bias training and to study the sources and effects of racial disparity in policing.**

Although DOJ did not find that SPD was engaging in racially discriminatory policing, it did raise "serious concerns about practices that could have a disparate impact on minority communities." DOJ's Findings Letter (Dkt. 1-1) at 6.  DOJ's "[a]nalysis of limited data suggests that, in certain precincts, SPD officers may stop a disproportionate number of people of color where no offense or other police incident occurred." *Id.* at 6. In addition to finding fault with SPD's policies, supervision, and training in this area, DOJ observed, "[o]f the deficiencies we identified, perhaps the most important is SPD's failure to collect and analyze data that could address and respond to the perception that some of its officers engage in discriminatory policing." Dkt. 1-1 at 6. The Consent Decree, accordingly, mandates the creation of a bias-free policing policy, improved officer training, and expanded supervisory responsibilities in this area. ¶¶ 145-52.

To address these issues, SPD, with input from DOJ, the Monitor, and CPC, adopted a strong and comprehensive bias-free policing policy. *See* Seattle Police Manual ("SPM")[8] § 5.140; Monitor's

---

[8] Available at https://www.seattle.gov/police-manual/

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 16
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Third Rept. (Dkt. 154) at 13-14. The City Council took the further step of codifying the policy into local law. S.M.C Ch. 14.11. Under the policy, any officer who learns of a biased-policing complaint must call a supervisor to document the complaint and investigate in person. In addition, all bias allegations are forwarded to OPA for review or investigation. SPM §§ 5.140-PRO-1, 5.002-POL-5.

New reporting procedures require officers to document the perceived race of a subject—and other important demographic information—any time an officer uses force, makes an arrest, conducts a *Terry* stop, or interacts with a person in crisis. CPC had a central role in helping SPD determine which data should be gathered by SPD officers when documenting *Terry* stops. *See* Monitor's Mem. Re Collection of Data on Stops & Detentions (Dkt. 143) at 2.

The Consent Decree also requires that command staff and supervisors be trained to study and identify unwarranted racial disparities. ¶ 149. The Monitor lauded SPD's bias-free training, writing that it "incorporates critical features and key insights from numerous fields, well-established research, and existing law enforcement and professional training programs." Monitor's Mem. Re Bias-Free Policing Training (Dkt. 176) at 6. The Monitor observed that "[t]he dynamic collaboration between [SPD] and CPC across multiple iterations of [drafts] has helped to ensure that the training addresses some of the central concerns of Seattle's diverse communities with respect to differential treatment and issues relating to procedural justice." *Id.* at 7.

In Phase I, the Monitor reported that SPD has achieved compliance with the Consent Decree requirements in the area of bias-free policing. Monitor's Tenth Assessment (Dkt. 394) at 7. During Phase II, SPD issued two important studies examining disparities in police-community interactions in order to inform changes in policy, training and operations to address disparities and further its commitment to bias-free policing. Disparity Review Pts. I & II (Dkts. 554-1 & 600-1).

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 17
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

OIG contributed to this work by validating SPD's statistical methodology.[9] In addition, these reports describe ongoing work that SPD has undertaken in partnership with CPC to address the factors leading to disparities in policing. *See* Dkt. 600-1 at 15-26.

The City is not satisfied with simply meeting Consent Decree requirements in this area. SPD has explained, "[a]s is reflected in statistics nationwide, racial disparity is of significant ongoing concern, and is an important issue that requires continued discussion and analysis within the limited role of law enforcement but also beyond." SPD's Use of Force Annual Rept. (Dkt. 605-1) at 9. To that end, SPD has "committed to continuing these avenues of inquiry into where disparity is occurring in its interactions with the public, and what the possible causes of that disparity are." Disparity Review Pt. II (Dkt. 600-1) at 26.

### E. SPD overhauled its patrol staffing and supervision to ensure that all patrol officers have a consistent, highly trained supervisor.

DOJ's 2011 investigation found that SPD's use of excessive force was due, in part, to inadequate supervision. DOJ's Findings Letter (Dkt. 1-1) at 4. In 2011, officers routinely reported to two or more different sergeants during their work week. Supervision Audit (497-2) at 10. While they were supervised at all times, they did not consistently report to the same supervisor. *Id.*

Under the Consent Decree, SPD changed its patrol staffing approach to ensure that all officers have consistent, clearly identified supervisors who work the same scheduled work week. *Id.* "All interviewed sergeants reported working the same scheduled days and hours as the officers they supervise." Monitor's Sixth Assessment (Dkt. 351) at 19.

SPD also developed training specific to new supervisors to prepare them for effective

---

[9] https://www.seattle.gov/Documents/Departments/OIG/Policy/DisparityMethodEval031819.pdf

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 18
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

leadership. The Monitor described these new training materials as "comprehensive" and observed that they "captured the Department's goals to prepare their sergeants for effective supervision and leadership." *Id.* at 24. The Department also adjusted staffing to ensure that it has an adequate number of first line supervisors to respond to the scene of uses of force and investigate. *Id.* at 43.

As a result of these changes, the Monitor found that SPD has achieved compliance with these Consent Decree requirements. *Id.* at 1-2. The Monitor observed that, "[t]hroughout the ranks, supervisors also reported taking appropriate action with their officers when use of force was found to be problematic, including counseling officers, initiating referrals to their chain of command, making [performance appraisal system] entries noting performance issues, and referring incidents that may implicate policy violations to [OPA]." *Id.* at 1. The two follow-up supervision audits conducted in the Sustainment Period confirmed that these achievements have been sustained. Dkts. 497-2 & 595-2.

The Consent Decree also addresses supervision by requiring SPD to bolster its early intervention system. In 2011 DOJ concluded that a small percentage of officers accounted for an outsized number of use of force incidents and that "SPD has no effective supervisory techniques to better analyze why these officers use force more than other officers, whether their uses of force are necessary, or whether any of these officers would benefit from additional use of force training." DOJ's Findings Letter (Dkt. 1-1) at 4. To that end, DOJ recommended an early intervention system (EIS)—a risk management tool designed to identify officers who may be experiencing symptoms of job stress. Although SPD did at that time, have an EIS, DOJ identified deficiencies, concluding that the thresholds for intervention were "far too high and intervention on officers' behavior far too late." *Id.* at 23.

To address these findings, SPD revised its EIS thresholds and developed protocols for

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 19
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

identifying officers who could benefit from assessment. In Phase I, the Monitor determined that SPD's EIS has achieved compliance and described SPD's "dramatically overhauled EIS" as "significant progress and a noteworthy milestone." Monitor's Eighth Assessment (Dkt. 374) at 10. The Monitor noted that "SPD is among only a few agencies that have provided detailed training for supervisors about how to respond when notified that an officer has been flagged for closer review. SPD is to be applauded for those efforts." *Id.* at 5.

DOJ and the Monitor confirmed that SPD has remained in compliance throughout the Sustainment Period. EIS Audit (Dkt. 595-1) at 27. SPD's EIS program continues to accomplish risk-management goals, develop supervisory skills, and provide mentoring to officers. *Id*. at 8, 11.

## F. OPA conducts thorough, complete investigations and has adopted key recommendations from the Monitor and DOJ.

DOJ's 2011 investigation found "that the OPA system is sound and that investigations of police misconduct complaints are generally thorough, well-organized, well-documented, and thoughtful." Consent Decree ¶ 164. However, DOJ identified three issues related to OPA's handling of complaints:

- OPA disposes of nearly two-thirds of citizens' complaints by sending them to SPD's precincts, where they are not adequately investigated.
- OPA's current classification and findings systems are so complex that they damage OPA's credibility and undermine public confidence in OPA.
- OPA consistently overuses and misuses the finding "Supervisory Intervention," which results in neither a true finding nor a remediation of the officer.

DOJ's Findings Letter (Dkt. 1-1) at 5. To address these findings, the Consent Decree mandates that the OPA Manual be updated and requires revisions to SPD's policies on reporting misconduct and retaliation to OPA. ¶¶ 165-167.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 20
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The City satisfied these requirements in 2014. Monitor's Fourth Assessment (Dkt. 259-1) at 2. The Monitor reported that, as an immediate step, OPA eliminated the practice of sending community member's complaints to SPD precincts to be handled by the chain of command.[10] *Id.* SPD issued revised policies for reporting misconduct and retaliation to OPA which were approved by the Monitor, DOJ, and the Court. Monitor's Mem. Submitting OPA Manual & SPD Policies (Dkt. 156). Finally, OPA worked with the Monitor, DOJ, and City stakeholders, including CPC, to develop an OPA manual. *Id.* In the manual, OPA adopted "streamlined" categories for classifying investigations and findings to "ensure that [the complaint process] is accessible to the public." *Id.* at 2. Notably, OPA eliminated the "supervisory intervention" finding category and adopted new findings categories which the Monitor praised as "an important advance." Monitor's Fourth Assessment (259-1) at 2.

These reforms have had a profound impact on the compliance culture within SPD. In 2011, DOJ found that referrals from SPD supervisors about misconduct to OPA were "rare to non-existent." DOJ's Findings Letter (Dkt. 1-1) at 2. OPA's most recent report documents that 71% of complaints came from the community and 29% from SPD employees. 2019 OPA Annual Report at 8. Officer referrals allow OPA to learn about potential misconduct that the community does not observe or report.

Because of OPA's important role in ensuring constitutional policing, the Parties and the Monitor agreed that the Monitor also would conduct two reviews of OPA's performance to provide

---

[10] OPA worked with the Monitor and DOJ to further refine its policies for supervisor review of complaints in 2019. *See* OPA's 2019 Annual Report at 21-22, available at http://www.seattle.gov/Documents/Departments/OPA/Reports/2019-Annual-Report.pdf

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 21
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

technical assistance and recommendations. Monitor's Fourth Assessment (Dkt. 259-1) at 2. In its first review, the Monitor confirmed that OPA's investigations continue to be thorough and adequate, concluded that OPA's "back-end review phase is among the strongest we have seen," and wrote that "SPD's review process should lend greater credibility to the entire investigative process." *Id.*

In a follow-up report, the Monitor addressed the recommendations that he had made in the earlier report. In his initial OPA report, the Monitor had found that 25% of OPA's investigations were untimely. *Id.* at 28. The Monitor also documented deficiencies in OPA investigations that involved potential criminal or terminable offenses. *Id.* at 4. In his follow-up report, the Monitor found that 95% of OPA's investigations were timely and in no case did a missed deadline prevent the imposition of discipline. Monitor's OPA follow-Up Review (Dkt. 604-1) at 2. Moreover, OPA accomplished this reduction in untimely cases despite an increase in the number of investigations, while maintaining the quality of investigations. *Id.* In contrast to his earlier finding, the Monitor found no systemic problems with investigations that involved criminal or terminable offenses. *Id.* Finally, the Monitor applauded the civilianization of supervisor and investigator positions. *Id.* at 5-6.

With the strong participation of the Monitor, the City has vastly improved its independent police oversight system since 2011. In addition to the improvements to OPA, the City now has the permanent CPC, the community-based prong of the independent police accountability system. CPC's expanded statutory authority will ensure that it continues to have an important role in shaping SPD and OPA policies and practices. Accountability Ordinance, §§ 3.29.360. Since it was created in 2018, the independent OIG has exercised broad authority to ensure the ongoing integrity of SPD's systems, processes, and operations. *Id.* § 3.29.200. The City's strong independent

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 22 (12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

oversight system and SPD's robust internal accountability mechanisms will ensure that reform continues.

## IV.  CONCLUSION

This case began nearly a decade ago when DOJ investigated SPD's use of force. The City voluntarily entered into a Consent Decree that requires far-reaching reforms. As a result of the joint efforts by this Court, the Court-appointed Monitor, DOJ, and the City, including SPD and the accountability partners, SPD is a different organization than it was nine years ago. SPD has embraced the reforms required by the Consent Decree and become a nationally lauded model of successful police reform for other police departments. Of all SPD's achievements, the dramatic reduction in the use of force is the most noteworthy. Today as a result of the Consent Decree reforms, more than 99% of SPD's force complies with policy (a standard that exceeds constitutional requirements) and there has been a 60% reduction in the use of serious force.  The most serious force (Type III force) occurred in less than one one-hundredth of one percent of all officer calls for service in 2019.  The facts support the indisputable conclusion that any pattern or practice of unconstitutional policing by SPD officers that existed in 2011 has been eliminated.

The data contained in dozens of reports, assessments, and reviews mandated by and conducted pursuant to the Consent Decree irrefutably demonstrate that the City has successfully achieved and sustained full and effective compliance for the required two-year period under the Sustainment Plan. Indeed, the Monitor has stated, "Seattle has come to be seen as a national model on how to address fundamental issues relating to use of force, stops and detentions, and bias-free policing." Monitor's Sixth Rept. (Dkt. 251) at 3-4. The Court itself has recognized this

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 23
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

transformation: "[T]hese aspects of the Seattle Police Department, many of them are cited as national models. We should be proud of that." 5/15/2019 Hearing Trans. at 10.

The City acknowledges the accountability concerns raised by the Court in its May 21, 2019 Order. Without waiving any objections to that order, the City has taken significant steps to address these concerns and will submit a filing responding to them by August 1, 2020.

The success of the Consent Decree reforms and SPD's accomplishments deserve to be recognized. Accordingly, because full and effective compliance has been achieved and sustained for two years, the City requests that the Court terminate paragraphs 69-168 of the Consent Decree—the paragraphs within the "Commitments" section that were assessed under the Sustainment Plan—and all related monitoring responsibilities. *See* Consent Decree ¶¶ 223, 229-230.

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 24
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Respectfully submitted,

DATED this 7th day of May, 2020.

For the CITY OF SEATTLE
PETER S. HOLMES
Seattle City Attorney

*s/ Kerala T. Cowart*
Kerala T. Cowart, WSBA #53649

*s/ Paul Olsen*
Paul Olsen, WSBA #29873

Assistant City Attorneys
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Phone: (206) 733-9001
Fax: (206) 684-8284
Email: kerala.cowart@seattle.gov
Email: paul.olsen@seattle.gov

*s/John W. Wolfe*
John Wolfe
Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: (206) 839 4300
Fax: (206) 839 4301
Email: wolfe@orrick.com

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF
PARTIES' JOINT, STIPULATED MOTION TO TERMINATE
CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 25
(12-CV-01282-JLR)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian T. Moran | bmoran@usdoj.gov |
| Christina Fogg | Christina.Fogg@usdoj.gov |
| Matt Waldrop | james.waldrop@usdoj.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Ronald R. Ward | Ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| David A. Perez | dperez@perkinscoie.com |
| Anna Thompson | annathompson@perkinscoie.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |
| Merrick Bobb | mbobb@pacbell.net |
| Bruce E.H. Johnson | brucejohnson@dwt.com |
| Eric M. Stahl | ericstahl@dwt.com |
| John Wolfe | wolfe@orrick.com |

DATED this 7th day of May, 2020, at Seattle, King County, Washington.

_s/ Kerala T. Cowart_
Kerala T. Cowart, WSBA #53649
Assistant City Attorney
E-mail: kerala.cowart@seattle.gov

**CITY OF SEATTLE'S MEMORANDUM IN SUPPORT OF PARTIES' JOINT, STIPULATED MOTION TO TERMINATE CONSENT DECREE SUSTAINMENT PLAN PROVISIONS** - 26
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200