THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:12-cv-01282-JLR |
| Plaintiff, | SEATTLE COMMUNITY POLICE COMMISSION'S RESPONSE TO PARTIES' STIPULATED, JOINT MOTION TO TERMINATE PARAGRAPHS 69-168 OF THE CONSENT DECREE |
| v. | |
| CITY OF SEATTLE, | |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 3

    A. The Court found the City out of compliance on the issue of accountability. ........ 3

    B. Over the past year, the City failed to formulate a methodology to achieve compliance on the issue of accountability. ............................................................ 4

    C. Ignoring its obligation to achieve compliance on accountability, the City moved to end federal oversight. Two weeks later, George Floyd was murdered, and widespread protests ensued. ........................................................ 6

III. RESPONSE ...................................................................................................................... 7

    A. This is not the time to end federal oversight of policing in Seattle. ..................... 7

    B. Paragraphs 69-168 cannot be terminated while the City remains out of compliance on accountability because they remain important for the Court's analysis of accountability changes. .......................................................... 10

IV. CONCLUSION ............................................................................................................... 12

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.   INTRODUCTION

The events of the past week and a half have confirmed what many in the community already knew:  Now is not the time to end federal oversight over the Seattle Police Department ("SPD").  But that is what the City requested in its now-withdrawn motion to terminate paragraphs 69-168 of the Consent Decree ("Motion").  The City's Motion sought to eliminate all the substantive commitments of the Consent Decree.  Community leaders urged the City not to file its Motion without first achieving (and sustaining) compliance on the issue of accountability.[1]  Nevertheless, the City insisted that now was the time to end the Monitor's oversight and to terminate its substantive obligations under the Consent Decree.

In announcing its decision to withdraw the Motion, the City explained that recent events justified a "pause . . . so that the City and its accountability partners can conduct a thorough assessment of SPD's response to the demonstrations."[2]  The City also cited the unprecedented number of public complaints that have been filed with the Office of Police Accountability ("OPA"), which now exceed 15,000 since protests began.  Most critically, the City explained that withdrawing its Motion was the right thing to do because recent events will "test our accountability system to ensure complaints are investigated by the Office of Police Accountability, policies and practices are reviewed by Office of the Inspector General, and the Community Police Commission is providing meaningful community accountability."[3]  In other words, the City now acknowledges what the Court and the Community Police Commission

---

[1] Press Release, Seattle King Cty. NAACP #1136, President's Statement read at Seattle City Council today on ending the Consent Decree (May 11, 2020), https://www.seattlekingcountynaacp.org/press-releases-and-statements/presidents-statement-read-at-seattle-city-council-today-on-ending-the-consent-decree (also attached as Ex. A to the Declaration of David A. Perez in Support of Community Police Commission's Response to Parties' Stipulated, Joint Motion to Terminate Paragraphs 69-168 of the Consent Decree [hereinafter "Perez Decl." or "Perez Declaration"]).
[2] Press Release, Seattle City Attorney's Office, City Attorney to Withdraw Consent Decree Motion (June 3, 2020), https://news.seattle.gov/2020/06/03/city-attorney-to-withdraw-consent-decree-motion/ (also attached as Ex. B to the Perez Declaration).
[3] Press Release, Seattle Office of the Mayor, Statement from Mayor Durkan on the Consent Decree (June 3, 2020), https://durkan.seattle.gov/2020/06/statement-from-mayor-jenny-durkan-on-the-consent-decree/ (also attached as Ex. C to the Perez Declaration).

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

("CPC") recognized long ago: Accountability "may well be a linchpin to the long-term success of th[e] entire [Consent Decree] process." Dkt. # 504 at 5. Without achieving and sustaining compliance on the issue of accountability, the City cannot terminate the Consent Decree or any of its substantive commitments. For years, the City and the U.S. Department of Justice ("DOJ") have steadfastly **refused** to acknowledge that accountability has any bearing on the Consent Decree. It appears that recent events have caused the parties to reconsider that position.

Back in 2018, in the wake of an arbitrator's decision to reinstate SPD Officer Adley Shepherd, the Court issued an order to show cause why the City should not be found out of compliance with the Consent Decree. Dkt. # 504 at 1. His offense of punching a handcuffed subject looks very similar to what we have seen this past week and a half. Peaceful demonstrators were tear gassed by armored police officers. A man was thrown to the ground and repeatedly punched. A little girl was pepper sprayed. "Blast balls" were thrown into peaceful crowds for no apparent reason other than to incite fear and frustrate the right to assemble.

The City's Motion painted the picture of a police force that had achieved compliance **on paper**. It made the request to terminate the substantive commitment paragraphs in the Consent Decree at a time when the data showed that SPD's use of force and *Terry* stops are used disproportionately against people of color, especially Black people. The past week and a half further tested that compliance, and the results speak for themselves: The OPA has received reports that use of force policies were ignored, de-escalation tactics were cast aside, officer badge numbers were covered, and over 15,000 complaints were filed by community members.

The events playing out in Seattle are demonstrating the limits of what is possible through the Consent Decree process. But this does not mean that the City can go back on the commitments it made to the community when it entered into the Consent Decree nearly eight years ago, and when it promised to enshrine the provisions of the 2017 Accountability Ordinance in the agreements with the Seattle Police Officers Guild ("SPOG") and Seattle Police Management Association. Therefore, the CPC respectfully requests that the Court issue an order

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

to show cause why the City has not fallen further out of compliance with the Consent Decree in other areas (i.e., in addition to accountability) and ask for further briefing from the parties and the CPC on this question in the coming weeks and months.

## II. BACKGROUND

**A.  The Court found the City out of compliance on the issue of accountability.**

On January 10, 2018, the Court held that the City was in full and effective compliance with the Consent Decree. *See* Dkt. #439. This "milestone" followed the development of new SPD policies and a comprehensive training initiative, *id.* at 14, along with Monitor sign-off on a series of assessments in 10 areas: (1) force investigation and reporting, (2) the Force Review Board, (3) community confidence, (4) the OPA, (5) crisis intervention, (6) supervision, (7) Type II force investigation, (8) the Early Intervention System, (9) use-of-force, and (10) stops, search, and seizure, *id.* at 4 n.3. At that time, the Court commended the City for its "dramatic improvements [thanks] in large part to the diligent and on-going work of the SPD—both its rank and file officers and its command staff." *Id.* at 11. But in the very same order, the Court cautioned that upcoming collective bargaining with the SPOG could lead to outcomes "inconsistent with the Consent Decree," in which case "the City's progress in Phase II [would] be imperiled." *Id.* at 15.

Nearly a year later, the Court issued an order to show cause "whether . . . [the City] has failed to maintain full and effective compliance with the Consent Decree." Dkt. # 504 at 1. That order was motivated by two events: ***First,*** the City had recently completed its collective bargaining with the SPOG and, in doing so, rejected a number of reforms proposed in the Accountability Ordinance—which had been carefully designed, after years of recommendations from independent oversight officials, the community, and policymakers, to establish a system that was both fair to police officers and deterred unconstitutional and ineffective policing. ***Second,*** the Disciplinary Review Board had decided to overturn former Chief of Police Kathleen

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

O'Toole's decision to terminate SPD Officer Adley Shepherd, who had punched a handcuffed subject in the face while she was sitting in a patrol car.

The parties responded to the Court's order by arguing strenuously that the City had not fallen out of compliance and that the Adley Shepherd incident was a singular event. *See* Dkt. # 512, 528.  The CPC disagreed and opined that the reinstatement was "a feature of the old system that the City had agreed to bring back" through the SPOG collective bargaining agreement. Dkt. # 531 at 32. The CPC therefore asked the Court to convey to the parties that that the Consent Decree could not be resolved until the City secured accountability reforms.

On May 21, 2019, the Court held that the City had fallen out of compliance with the Consent Decree in the area of accountability. Dkt. # 562. The Court expressly found that "**the old accountability system is inadequate for purposes of compliance with the Consent Decree**." *Id*. at 13 (emphasis added). It then ordered the City and the DOJ, in collaboration with the Monitor and the CPC, to report back by July 15 with a plan to remedy those deficiencies and show the Court how the City would come back into compliance. *Id*. at 14. The Court made clear at that time that the Consent Decree cannot be "terminate[d] . . . as it pertains to accountability" until the City "bring[s] itself into compliance in this area and then sustain[s] that compliance for two years." *Id*. at 13.

**B.    Over the past year, the City failed to formulate a methodology to achieve compliance on the issue of accountability.**

The City did not immediately set about to formulate a methodology to bring itself back into compliance, nor did it accept the CPC's invitations to collaborate on such efforts. Instead, on August 15, 2019, the City filed a stipulated motion that asked the Court to approve its methodology for assessing the current accountability regime. Dkt. # 576 (titled as a "Motion to Approve Accountability Methodology"). The CPC asked the Court to deny this motion because—in reality—the submission did not include a plan to achieve compliance with the Consent Decree in the area of accountability and was instead a plan to once again review

CPC'S RESPONSE TO JOINT MOTION TO TERMINATE (No. 2:12-cv-01282-JLR) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Seattle's accountability system and compare it against the systems of other cities in the country. Dkt. # 581.

The Court declined to either grant or deny the City's motion. Dkt. # 585 at 2. Instead, it clarified that the City did not need to seek approval for a specific methodology in advance and that its prior order was instead meant "to set a deadline for the parties to formulate a plan to resolve the City's non-compliance with the Consent Decree." *Id*. The Court "authorize[d] the City to proceed subject to [its] continuing supervision," *id*., but cautioned the City not to use its forthcoming **assessment** (as opposed to methodology) "to justify its current accountability system" because "the exercise will be a failure, reform will be delayed, and full and effective compliance with the Consent Decree will recede further into the future," *id*. at 4. The Court further warned that because it "**already determined that the City is out of compliance with the Consent Decree on accountability**," the City should not try to use its assessment "as a stealth method of bringing an **out-of-time motion for reconsideration** of that ruling." *Id*. at 7 (emphasis added). With the expectation that the City would "heed this warning," the Court authorized the City to proceed with its assessment. *Id*.

On December 13, 2019, the City submitted an assessment by 21CP Solutions, LLC. The City summarized in its notice of the assessment that "Seattle's disciplinary and oversight system is **working as intended**," although there may be some areas "in which the system could benefit from improvement." Dkt. # 598 at 1 (emphasis added). The assessment said nothing about the needed methodology to get back into compliance. After all, if the system is "working as intended," then presumably there would be no need for a methodology—so the City continued to ignore the Court's order and continued to ignore the CPC's entreaties to work on a methodology.

The City's insistence that nothing is wrong in the area of accountability could explain why, a full year after the Court's order, the City has yet to propose a methodology. It could further explain why the City has not convened a work group or solicited the CPC's help in crafting a methodology for coming back into compliance. Up until now, the City has failed to

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

take to heart the Court's May 2019 order, it has failed to sincerely accept the need for reform in the area of accountability, and it has failed to recognize why that reform is so critical for compliance with the Consent Decree.

**C.  Ignoring its obligation to achieve compliance on accountability, the City moved to end federal oversight.  Two weeks later, George Floyd was murdered, and widespread protests ensued.**

On May 7, 2020, despite its failure to comply with the Court's May 2019 order or come back into compliance on the issue of accountability, the City filed a stipulated motion asking the Court to "terminate paragraphs 69-168 of the Consent Decree." Dkt. # 611 at 1.  Those paragraphs constitute the **entire** "Commitments" section of the Consent Decree.  On May 12, 2020, the CPC voted to file a brief opposing the City's Motion.

On May 25, 2020, a Minneapolis Police Department officer murdered George Floyd. The officer knelt on his neck for 8 minutes and 46 seconds until Mr. Floyd died of asphyxia.  Mr. Floyd was unresponsive for three minutes.  This unspeakable tragedy sparked a series of protests around the country.  In Seattle, there have been daily protests since Friday, May 29, which were initially met by nightly curfews.

As of June 1, 2020, the OPA was processing "12,000 individual complaints concerning the Seattle Police Department's (SPD) response to th[e] weekend's demonstrations."[4]  Most of those complaints involve the following events:

(1) Pepper spraying a young girl (Saturday): **2020OPA-0322**.
(2) Punching a person on the ground who was being arrested (Friday): **2020OPA-0323**.
(3) Placing a knee on the neck area of two people who had been arrested (Saturday): **2020OPA-0324**.
(4) Covering up badge numbers: **2020OPA-0325**.
(5) Failing to record law enforcement activity on body-worn video: **2020OPA-0326**.
(6) Pepper spraying peaceful protestors (Saturday): **2020OPA-0327**.

---

[4] Press Release, Seattle Office of Police Accountability, Office of Police Accountability processing 12,000 complaints after weekend demonstrations (June 1, 2020), https://www.seattle.gov/Documents/Departments/OPA/PressReleases/06-01-20_OPA-Press-Release-Following-Demonstrations.pdf (also attached as Ex. D to the Perez Declaration).

CPC'S RESPONSE TO JOINT MOTION TO TERMINATE (No. 2:12-cv-01282-JLR) – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

    (7)      The use of flashbangs, including causing a significant thumb injury (Saturday): **2020OPA-0328**.

    (8)      Failing to secure rifles in the rear of a patrol vehicle (Saturday): **2020OPA-0329**.

    (9)      Punching a person on the ground who was being arrested (Sunday): **2020OPA-0330**.

    (10)    Officers breaking windows of a Target store (date unknown): **2020OPA-0331**.

On June 3, 2020, the City announced that it would withdraw its Motion until it could "thoroughly review and assess SPD's response to recent demonstrations," noting that it would also "continue to refine its proposal to address the Court's concerns relating to accountability."[5]

### III.    RESPONSE

**A.    This is not the time to end federal oversight of policing in Seattle.**

This is not the time to end federal oversight of policing in Seattle.  In its now-withdrawn Motion, the City claimed that the "SPD is a transformed organization," that "[f]orce used by SPD today presents a night-and-day contrast to the practices documented by DOJ in 2011," and that it "instilled a culture of continuous improvement in its officers." Dkt. # 612 at 2.  The DOJ agreed.  Dkt. # 615 at 2.

As outlined in the parties' briefing, the City and DOJ spent considerable time focusing on the deliverables outlined in the Sustainment Plan, which they insist were completed as of January 2020.  As further outlined in the parties' briefing, the resulting reports, reviews, and assessments paint a rosy picture regarding police reform in Seattle.  However, paper only goes so far.  The events of the past week and a half have served as a real-world stress test, and early indicators are that SPD has not performed well.  Instead of proving that it is a transformed organization, the SPD fell back on its old ways.

For example, the newly revised Seattle Police Department Manual includes a policy on crowd management and provides that the SPD may order a crowd to disperse upon determining that there are acts or conduct that "create a substantial risk of causing injury to any person or

---

[5] Press Release, *supra* note 2 (also attached as Ex. B to the Perez Declaration).

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

substantial harm to property."[6]  Before doing so, the policy states that SPD must "consider whether less restrictive means of crowd management are available," "ensure that there is an avenue of egress sufficient to allow the crowd to depart," and "issue the order to disperse prior to instructing officers to disperse the crowd, if feasible."  The policy further provides that "blast balls" and oleoresin capsicum ("OC") spray will not be deployed "until a dispersal order has been issued to the crowd and the crowd has been given a reasonable amount of time to comply" and that officers should "avoid deploying blast balls and OC spray in the proximity of people who are not posing a risk to public safety or property."

*The Seattle Times* reported on a protest in Capitol Hill that "had for hours been passionately but peacefully protesting" when the SPD used "flash bangs" (also known as blast balls), pepper spray, and tear gas on the crowd.[7]  The dispersal was captured on video from two different perspectives and widely circulated on social media.  *See, e.g.*, Converge (@WWConverge), Twitter (June 1, 2020, 11:06 PM), https://tinyurl.com/yadmr3nu (ground level footage); Seatecd, Reddit (June 3, 2020), https://tinyurl.com/y8oloabu (aerial footage).  Investigations are ongoing, but as the City notes in its withdrawal notice, the SPD's actions will bear on the polices that brought the City into compliance in the first place.

Other City leaders observed that the Capitol Hill protestors were not alone in their experience.  Councilmember Lisa Herbold received numerous reports "that [protestors] were not receiving advance notice or receiving orders to disperse [as] required under city law."[8]

---

[6] Seattle Police Department Manual § 14.090(9) (2020), https://www.seattle.gov/police-manual/title-14---emergency-operations/14090---crowd-management (also attached as Ex. E to the Perez Declaration).

[7] *See* Daniel Beekman, *'No sense of de-escalation' at crucial moment during latest Seattle protest, videographer says*, SEATTLE TIMES (June 3, 2020), https://www.seattletimes.com/seattle-news/politics/no-sense-of-de-escalation-at-crucial-moment-during-latest-seattle-protest-videographer-says/ (also attached as Ex. F to the Perez Declaration).

[8] Nick Bowman, *Seattle council questions SPD's use of tear gas, mace during weekend protests*, MYNorthwest (June 1, 2020), https://mynorthwest.com/1907176/seattle-council-police-tear-gas-mace-protests/ (also attached as Ex. G to the Perez Declaration).

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Councilmember Teresa Mosqueda also described "multiple reports that audible warnings were not given to a diverse crowd, including children, elderly, and people with disabilities." *Id*.[9]

In fact, the CPC warned years ago about the dangers of using these grenade-like devices. *See* Perez Decl., Ex. I at 1 (2016 CPC letter raising concern over blast balls for their "documented serious injuries to bystanders and observers").[10] But the City largely brushed aside the CPC's letter, paving the way for the SPD to use these grenade-like weapons on peaceful protestors.

Media accounts publicly reported that "one SPD officer put his knee on a protester's neck (before another officer pushed it off); another punched a man on the ground; and a third sprayed a young girl with chemical spray."[11] Cellphone video of these incidents has been widely circulated on social media, *see, e.g.*, Matt M. McKnight (@mattmillsphoto), Twitter (June 2, 2020, 10:48 PM), https://tinyurl.com/y82955el; DÆ (@daeshikjr), Twitter (May 30, 2020, 12:56 AM), https://tinyurl.com/ybzah9r4; Eaglesfan1297, Reddit (June 1, 2020), https://tinyurl.com/y8n5g6hl, along with an incident where a Washington State Patrol officer (who was deployed with SPD) told his team "**don't kill them, but hit them hard**" in reference to Seattle protesters, *see* Krystal Marx (@Bishop_Krystal), Twitter (June 2, 2020, 7:41 PM), https://tinyurl.com/ycfvewae.

Policy without compliance is just a piece of paper.

---

[9] *See, e.g.*, Mike Baker, *Corrosive Effects of Tear Gas Could Intensify Coronavirus Pandemic*, N.Y. TIMES (June 3, 2020), https://www.nytimes.com/2020/06/03/us/tear-gas-risks-protests-coronavirus.html (also attached as Ex. H to the Perez Declaration).

[10] *See also* Lewis Kamb, *Seattle police continue to use 'flash-bang' grenades during protests, despite recommendations*, SEATTLE TIMES (June 3, 2020), https://www.seattletimes.com/seattle-news/seattle-police-continue-to-use-flash-bang-grenades-during-protests-despite-recommendations/ (describing "scrutiny and concern from civilian watchdogs" regarding the use of flash-bang grenades) (also attached as Ex. J to the Perez Declaration).

[11] Naomi Ishisaka, *Now isn't the time to backpedal on consent decree in Seattle as George Floyd protests unfold*, SEATTLE TIMES (June 1, 2020), https://www.seattletimes.com/seattle-news/george-floyd-protests-spotlight-need-for-police-reform-even-in-times-of-coronavirus/ (also attached as Ex. K to the Perez Declaration).

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

To top it all off, the OPA received more than 15,000 complaints about the SPD's treatment of protestors in Seattle during the first week of protests.[12] To put that in perspective, the OPA received a total of 928 complaints in 2019, and a combined total of 6,861 complaints since 2015.[13]

This is not a sign of a police force that has been "transformed." It is abundantly clear that it is too soon to release the City from federal oversight.

**B.      Paragraphs 69-168 cannot be terminated while the City remains out of compliance on accountability because they remain important for the Court's analysis of accountability changes.**

According to the Motion now pulled by the parties, termination of paragraphs 69-168 was "warranted and appropriate" because "all of the work required by the Sustainment Plan is complete." Dkt. # 611 at 2. The City argued that terminating paragraphs 69-168 would allow it "to reallocate scarce resources toward pressing new demands." Dkt. # 612 at 4.[14] The parties also insisted that these provisions have nothing to do with accountability—in which case the Court could supposedly terminate them without implicating its prior order finding the City partially out of compliance. *See, e.g.*, Dkt. # 611 at 2; Dkt. # 615 at 13 n.9.

The CPC respectfully disagrees, and believes it is important to point out the problems with these arguments even though the Motion has been pulled following recent events and recent demands from community members.[15]

---

[12] *See* KUOW Staff, *Updates on demonstrations in Seattle and Washington* (June 3, 2020), https://www.kuow.org/stories/live-updates-on-demonstrations-in-seattle-and-western-washington ("Seattle's Office of Police Accountability (OPA) has received roughly 15,000 complaints about the police response to protests and the numbers keep going up, according to OPA director Andrew Myerberg.").

[13] *See* Office of Police Accountability, 2019 Annual Report (April 2020), https://www.seattle.gov/Documents/Departments/OPA/Reports/2019-Annual-Report.pdf (excerpts also attached as Ex. L to the Perez Declaration).

[14] The DOJ does not offer a similar rationale as to why it makes sense to terminate these paragraphs—it states only that termination is warranted and appropriate.

[15] *See* Steve Miletich et al., *As complaints pour in about police at Seattle protests, city will withdraw request that could lift federal oversight*, SEATTLE TIMES (June 3, 2020), https://www.seattletimes.com/seattle-news/crime/after-days-of-seattle-protests-city-will-withdraw-request-to-remove-police-force-from-federal-oversight/ (noting that before the City announced its plan to withdraw the Motion, Seattle City Council President M. Lorena González

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 10

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*First*, the Court has repeatedly emphasized that accountability "may well be a linchpin to the long-term success of th[e] entire [Consent Decree] process," Dkt. # 504 at 5, which is inextricably woven into the various substantive Commitments to constitutional policing.[16] To be clear, Paragraphs 69-168 are not "Sustainment Plan Provisions" of the Consent Decree as the title of the Motion would suggest. Rather, they comprise the *entire* substantive "Commitments" section of the Consent Decree. *See also* Dkt. # 562 at 5 (admonishing that although the 10 assessment areas of the Sustainment Plan are "clearly important" they do "not constitute all of the requirements of the Consent Decree"). If those provisions are terminated, that would leave only the sections entitled "Introduction," "Definitions," "Monitoring," and "Jurisdiction, Termination and Modification of the Settlement Agreement." *See* Dkt. # 3-1 ¶¶ 1-68, 169-230.

Where does accountability fit in those remaining sections? How is the Court supposed to analyze accountability changes if there are no remaining Consent Decree Commitments?

This inconsistency between the position taken in the Motion and reality makes it difficult to see the Motion as anything but an attempt to undermine the Court's jurisdiction by indirectly challenging its holding that accountability is part of the Consent Decree.

*Second*, the City's stated motivation for the Motion (to save costs) never made sense. Cost savings do not depend on terminating the Commitments paragraphs; cost savings will instead follow as a result of the City having completed the specific deliverables required under the Sustainment Plan and do not depend on eliminating those paragraphs. The City also cited costs relating to the Monitor's work as justification for its Motion, but paragraphs 69-168 say nothing about the nuts-and-bolts of monitoring. If anything, the "Monitoring" section of the Consent Decree does that. *See* Dkt. # 3-1 ¶¶ 169-213. With the completion of the Sustainment

---

told *The Seattle Times* she supported withdrawing the Motion) (also attached as Ex. M to the Perez Declaration).

[16] *See, e.g.*, Dkt. # 3-1 ¶ 150 ("[O]fficers who engage in discriminatory policing will be subject to discipline[.]"); *id.* ¶¶ 91-126 (entire section on Use of Force Reporting and Investigation); *id.* ¶¶ 153-63 (entire section on Supervision); *id.* ¶¶ 164-68 (entire section on Office of Professional/Police Accountability).

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 11

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  Plan, the Monitor's reporting will naturally diminish, thereby saving costs. In other words, the
2  costs have already been paid, and there should be no prospective costs associated with non-
3  accountability areas of responsibility.

4      *Third*, and perhaps most importantly, the last week and a half has shown why the
5  Monitor's ongoing role must continue. The CPC recently learned that before filing its Motion
6  the City unilaterally decided to **end** the Monitor's contract by the end of June 2020. *See* Perez
7  Decl., Ex. N (May 15, 2020 email to Monitor team, noting that "the City cannot agree to extend
8  the timeline past the end of June without a ruling from the Court"). The City **never consulted**
9  the CPC about the Monitor's ongoing role or bothered to comply with the Court's order asking
10 the City to submit a proposal "concerning the Monitor's role in assessing accountability
11 compliance." Dkt. # 585 at 9. Instead of complying with the Court's order, the City planned to
12 end the Monitor's role by not renewing his contract—despite the Court's request that the City
13 submit a proposal for the Monitor's ongoing role on the issue of accountability.

14     In short, the Motion never offered a coherent justification for terminating the Consent
15 Decree's Commitments paragraphs—even before recent events led the City to pull the Motion.

### IV.   CONCLUSION

17     Two weeks ago, a police officer murdered George Floyd in Minneapolis. That tragic
18 death sparked protests around the country by people enraged by systemic injustice and violence
19 against people of color. The protests in Seattle have been focused on current police practices in
20 the City of Seattle. The SPD's response to those protests casts doubt on both the City's
21 insistence that the SPD has been "transformed" and on whether the City remains in compliance
22 with the Consent Decree in areas besides accountability.

23     As the City observed in its notice withdrawing the Motion, SPD's actions over the past
24 week and a half "are governed by policies implemented under the Consent Decree, including
25 crowd management and use of force," and directly implicate "the processes put in place by the
26 Consent Decree." Dkt. # 621 at 1. The CPC respectfully requests that the Court issue an order

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

to show cause why the City should not be found further out of compliance with the Consent Decree and asks the parties to brief this question in the coming weeks and months.

DATED: June 9, 2020

*/s/ David A. Perez*
David A. Perez, WSBA No. 43959
DPerez@perkinscoie.com

*/s/ Anna Mouw Thompson*
Anna Mouw Thompson, WSBA No. 52418
AnnaThompson@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for *Amicus Curiae* Community Police Commission

CPC'S RESPONSE TO JOINT
MOTION TO TERMINATE
(No. 2:12-cv-01282-JLR) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on June 9, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

DATED this 9th day of June, 2020.

*/s/ David A. Perez*
DPerez@perkinscoie.com

CERTIFICATE OF SERVICE
(No. 2:12-cv-01282-JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000