UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>  v.<br><br>CITY OF SEATTLE,<br><br>    Defendant. | CASE NO. C12-1282JLR<br><br>ORDER REGARDING THE CITY'S NOTICE OF THE COUNCIL'S ORDINANCE REGARDING CROWD CONTROL WEAPONS |

Before the court is Defendant City of Seattle's ("the City") "Notice of Ordinance Regarding Crowd Control Weapons." (*See* Notice (Dkt. # 625).) The City denominates its filing as a "notice" but—in substance—it is more than a notice; it is a motion. Indeed, contained within the City's notice is the Seattle Police Department's ("SPD") request to "enjoin" the July 26, 2020, effective date of the Seattle City Council's ("the Council") Ordinance No. 126102, which places restrictions on SPD's use of certain crowd control weapons ("CCW Ordinance"). (Notice at 6.) The City's notice states that City of Seattle Mayor Jenny Durkin joins SPD's request. (*Id.*)

ORDER - 1

1    The Council's CCW Ordinance prohibits the City's use or possession of "crowd control weapons," which are defined to include "kinetic impact projectiles, chemical irritants, acoustic weapons, direct energy weapons, water cannons, disorientation devices, ultrasonic cannons, or any other device that is designed to be used on multiple individuals for crowd control and is designed to cause pain or discomfort." (*See* Notice at 2; *see also id.*, Ex. 1 (attaching a copy of the CCW Ordinance) §§ 1(A), 1(B).)  The CCW Ordinance makes an exception for the use of oleoresin capsicum spray ("OC spray") outside the setting of a "demonstration, rally, or other First Amendment-protect event." (*Id.* Ex. 1 § 1(D)(2).)  However, when used, OC spray must not "land on anyone other than" "an individual in the process of committing a criminal act or presenting an imminent danger to others." (*Id.*)  Finally, the CCW ordinance also creates a private right of action for individuals against whom a prohibited crowd control weapon is used. (*Id.*, Ex 1 §§ 1(E)-(F).)  Because Mayor Durkan returned the CCW Ordinance to the City Council without a signature, the Ordinance will take effect on July 26, 2020. (*See* Notice at 3; *see also id.*, Ex. 1 § 5 ("This ordinance shall take effect and be in force 30 days after it is approved by the Mayor, but if not approved and returned by the Mayor within ten days of presentation, it shall take effect as provided by Seattle Municipal Code Section 1.04.020.").)

    SPD's and the Mayor's request to enjoin the July 26, 2020, effective date of the CCW Ordinance is the equivalent of a motion for either a preliminary injunction or a temporary restraining order ("TRO"). (*See* Notice at 6 ("SPD respectfully request that the effective date of the CCW Ordinance be enjoined until a thorough review is

conducted by . . . the [c]ourt . . . , and Mayor Durkin joins that request.").) Therefore, the court construes the City's notice as a motion for a preliminary injunction or a TRO and analyzes it as such.

The standard the court must consider before imposing either a preliminary injunction or a TRO is the same. *Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1304557, at *1 (W.D. Wash. Mar. 19, 2020) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977)). These remedies are "'extraordinary'" and "'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *See Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). To obtain such relief, "[a] plaintiff . . . must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "A plaintiff must make a showing as to each of these elements, although in [the Ninth Circuit] 'if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Feldman*, 843 F.3d at 375 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1282, 1291 (9th Cir. 2013)). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable

1 injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1135 (9th Cir. 2001).

Neither SPD nor the Mayor have made the required showing for the court to impose such extraordinary relief. Although in her June 29, 2020, letter sending the new ordinance back to the City Council unsigned, Mayor Durkan expressed concern that the CCW Ordinance may conflict with court orders under the Consent Decree[1] (*see* Notice at 3; *see also id.*, Ex. 3 (attaching the 6/29/20 Durkan letter)), such concerns are a far cry from establishing "a likelihood of success on the merits" or even "serious questions going to the merits" of the claim. *Feldman*, 843 F.3d at 375. Indeed, the City's notice makes no attempt to even identify the specific provisions of the Consent Decree that the CCW Ordinance may implicate. (*See generally* Notice.) Nevertheless, the City argues that the new ordinance will require changes to SPD policies that the court previously approved and that the Monitor and Plaintiff United States of America ("the Government") have taken the position that the Consent Decree prohibits SPD from implementing changes to the policies the Consent Decree governs until after the court has had an opportunity to review and approve those changes. (*See id.* at 3-4.) Yet, the City admits that the Consent Decree is silent about what should happen when the City Council passes legislation requiring SPD to change its practices to address complaints about alleged police misconduct, as is the case with the CCW Ordinance. (*See id.* at 4-5.)

//

---

[1] (Consent Decree (Dkt. # 3-1) (attaching Settlement Agreement); (Dkt. # 8) (order provisionally approving the Settlement Agreement); (Dkt. # 13) (order modifying and preliminarily approving the Settlement Agreement).)

The court also notes that other restrictions on SPD's use of crowd control weapons have been recently imposed without eliciting the same reaction from the City or the Government concerning any conflict with the Consent Decree. For example, on June 12, 2020, the Honorable Richard A. Jones issued a TRO limiting SPD's use of chemical irritants and projectiles against individuals engaged in peaceful protests or demonstrations in Seattle. (*See Black Lives Matter Seattle-King County, et al., v. City of Seattle*, No. C20-0887RAJ (W.D. Wash.), Dkt. # 34.) Moreover, on June 17, 2020, the City stipulated to the entry of preliminary injunction also limiting SPD's use of chemical irritants and projectiles in the same matter. (*Id.*, Dkt. # 41.) Judge Jones granted the parties' stipulation and entered a preliminary injunction on the same day. (*Id.*, Dkt. # 42 ("Judge Jones PI").) Judge Jones's preliminary injunction does not expire until September 30, 2020.[2] (*Id.* at 3.) Further, on June 5, 2020, Seattle Police Chief Carmen

---

[2] Judge Jones's preliminary injunction states in pertinent part:

> The City . . . , including [SPD] and any other officers, departments, agencies, or organizations under [SPD's] control . . . , is hereby enjoined from employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations. This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC spray ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," rubber bullets, and foam-tip projectiles. This Order does not preclude individual officers from taking necessary, reasonable, proportional, and targeted action to protect against a specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property. Further, tear gas may be used only if (a) efforts to subdue a threat by using alternative crowd measures, including pepper spray, as permitted by this paragraph, have been exhausted and ineffective and (b) SPD's Chief of Police has determined that use of tear gas is the only reasonable alternative available. The Chief of Police may only authorize limited and targeted use of tear gas and must direct it to those causing violent or potentially life-threatening activity. To the extent that chemical irritants or projectiles are used in accordance with this

Best issued her own suspension of SPD's use of CS gas for at least 30 days. (Notice Ex. 6 (Dkt. # 625-3) at 2 ("As you know, earlier today Chief Best announced that [SPD] is suspending the use of CS gas for at least thirty (30) days or longer . . . .").) Although the City Council's new ordinance may go further than either Judge Jones's order or Chief Best's suspension, neither of these other actions provoked the City or the Government to notify the court of any potential inconsistency with the Consent Decree or the need to impose injunctive relief. Accordingly, the court concludes that neither SPD nor the Mayor have established either a likelihood of success on the merits or even serious questions going to the merits of the claim.

In addition to failing to establish a likelihood of success on the merits or at least serious questions going to the merits, the City's notice also fails to address any of the other required elements for a TRO or preliminary injunction, including a likelihood of irreparable injury, that the balance of the equities favors the entry of a TRO or preliminary injunction, and that such extraordinary relief would be in the public interest. *Winter*, 555 U.S. at 20. Having failed to establish any of the requisites necessary to impose either a TRO or preliminary injunction against the effective date of the new ordinance, the court DENIES SPD's and the Mayor's request for one without prejudice if

//

---

paragraph, they shall not be deployed indiscriminately into a crowd and to the extent reasonably possible, they should be targeted at the specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property.

(Judge Jones PI at 2.)

circumstances warrant a renewed motion and the City has a good faith belief that it can meet the necessary standards for obtaining a TRO or preliminary injunction.

In any event, the court recognizes that it will eventually need to assess what effect the CCW Ordinance may have on SPD's current policies in areas governed by the Consent Decree and whether the CCW Ordinance conflicts in any way with the Consent Decree. The City Council recognized the court's authority in this regard when it expressly asked the City Attorney to notify the court about the CCW Ordinance. (*See* Notice, Ex. 1 (attaching a copy of the CCW Ordinance) at 5 ("In accordance with United States of America v. City of Seattle, . . . during the pendency of the [C]onsent [D]ecree [the City] Council requests that notice of this action be submitted by the City Attorney to . . . the [c]ourt . . . .").)

Toward that end, the court will be guided by the recommendations of the Seattle Office of Police Accountability ("the OPA") and the Seattle Office of Inspector General ("the IG"). (*See* Notice, Ex. 5 (Dkt. # 625-3) (attaching a joint statement from the OPA and the IG).) The IG is an office created through work performed under the Consent Decree, and similar work under the Consent Decree has modernized the OPA. These entities are now fully operational and engaged in the oversight work they were designed to perform. The OPA and the IG inform the court that they are

> . . . working in collaboration with the Community Police Commission [("CPC")] to identify evidence-based recommendations concerning modifications to SPD policies that are consistent with national best practices, consider the specific needs and concerns of Seattle, and recognize the potential appropriate roles less-lethal tools may play during demonstrations and during patrol operations to reduce the need to use potentially more harmful force options."

(*Id.* at 1.)  The OPA and the IG state that they also anticipate that the CPC will conduct outreach to assess the wider community perspective.  (*Id.* at 2.)  Thus, these entities "are engaged in a comprehensive look at SPD's current policies, industry best standards, and Seattle community expectations regarding the use of less lethal weapons."  (*Id.*)  The City Council has asked for their input by August 15, 2020, and the OPA and the IG have committed to do so.  (*See id.*)  Finally, the OPA and the IG request that the court "reserve any ruling on the specific language or provisions of SPD policy regarding the use of less lethal weapons until the City submits a copy of [their] recommendations to the [c]ourt for its consideration."  (*Id.*)

The OPA and the IG propose a sound of course of action, which the court adopts.  Absent unexpected developments, the court will refrain from any substantive rulings concerning the new ordinance, its effect on current SPD policies, or its possible interaction with the Consent Decree until the OPA and the IG have completed their analysis and submitted their report.  Accordingly, the court ORDERS the City to submit a copy of the OPA and IG's anticipated report to the court as soon as practicable after the City receives it but, in any case, no later than August 15, 2020.  In addition, the court ORDERS the parties to submit memoranda by August 22, 2020, analyzing the interaction of the CCW Ordinance with the Consent Decree, as well as with any SPD policies that the Consent Decree governs.  The court also directs the parties to respond to the OPA and IG's anticipated report in their memoranda.  Finally, the CPC may, but is not required to, submit its own analysis of the CCW Ordinance, its interaction with the Consent Decree

1  and SPD policies governed by the Consent Decree, and the OPA and IG's report by

2  August 22, 2020.

3      Dated this 22nd day of July, 2020.

                                    _____
                                    JAMES L. ROBART
                                    United States District Judge

ORDER - 9