THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | No. 2:12-cv-01282-JLR<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER ENJOINING IMPLEMENTATION OF THE DIRECTIVE ISSUED ON JULY 23, 2020**<br><br>NOTED FOR: July 24, 2020 |

The United States files this motion for a temporary restraining order ("TRO") in response to the Seattle Police Department ("SPD")'s directive to officers on July 23, 2020 at 5:38 p.m. ("Directive"). *See* Declaration of Christina Fogg, Exhibit A. The Directive instructs officers to cease use and possession of the less lethal implements known as 40 mm launchers, blast balls, CS gas, and oleoresin capsicum spray ("OC"). *Id.* The Directive is set to become effective on Saturday, July 25, 2020 at 3:00 a.m. *Id.* Implementation of the Directive as scheduled will conflict with both the procedural and substantive requirements of the Consent Decree. The Consent Decree requires review by the United States and Monitor and approval of this Court before changes to policies covered by the Consent Decree may be implemented, including by directive. *See* (Dkt. 3-1) at ¶¶ 53, 177. Further, the Consent Decree contains a commitment to

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the use of force "principles" that officers' actions: (1) increase public safety, (2) be reasonable given the circumstances, and (3) employ "de-escalation techniques, when appropriate and feasible, in order to reduce the need for force." *Id*. at ¶¶ 69 and 70(a).  Implementation of the Directive, which will significantly limit officers' ability to moderate force, will conflict with these terms of the agreement.[1]

If the Directive is permitted to take effect on July 25, 2020, the United States and the public are likely to suffer irreparable harm resulting from officer confusion and the inability to modulate force or de-escalate situations in which force may be needed.  Further, if these changes proceed under the usual course of policy review and approval, they are likely to be found to violate the Consent Decree.  At the very least, there is a serious question regarding whether the removal of these less lethal options (in particular without additional guidance or training to officers) is in violation of the Consent Decree's provisions.  Accordingly, the United States now seeks a TRO from this Court prohibiting the Directive from becoming effective on July 25, 2020.

A.     **The United States Satisfies the Requirements of a TRO**

To obtain such a TRO, "[a] plaintiff . . . must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  "A plaintiff must make a showing as to each

---

[1] The Consent Decree provides a mechanism for Court intervention when the United States believes that the City of Seattle is acting in violation of a provision of the agreement. *See Id.* at ¶ 224.  As discussed below, the United States has followed the notice and cure provisions of this term of the Consent Decree. *Id*. at ¶ 222.

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of these elements, although in [the Ninth Circuit] 'if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied." *See Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1282, 1291(9th Cir. 2013)). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1135 (9th Cir. 2001). The United States' request satisfies these requirements.[2]

**B.    Implementation of the Directive Will Violate the Consent Decree's Requirements**

As an initial matter, the United States notes the difficult position that the Chief of Police and SPD find themselves in given Ordinance 119805, which by its terms, requires SPD to cease use of the same less lethal implements addressed by the Directive, or in the case of OC spray, restrict its use. However, there is no city ordinance exception to the terms of the Consent Decree. It requires that all changes to policy in areas covered by the Consent Decree must be reviewed by the United States and the Monitor with time for comment, and approved by the Monitor prior to implementation. Accordingly, it is the act of changing SPD policy that renders the City's actions in violation of the Consent Decree.

---

[2] Pursuant to LCR 65(b)(1), the United States has provided notice to the City of Seattle of this motion in advance of filing and will provide copies of this motion contemporaneously with filing to the City.

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1. The Consent Decree's Procedural Requirements

As the Court is well aware, the United States investigated SPD for a potential pattern or practice of unconstitutional policing and excessive force in 2011. Subsequent to the investigation, the United States issued findings that such a pattern or practice of excessive force existed. Rather than pursue litigation to contest this finding, the City of Seattle opted to enter a Consent Decree in 2012 by which it agreed to abide by a number of prescriptive requirements designed to eliminate unconstitutional uses of force. Specifically, the Decree required revisions to SPD's use of force policies, including the use of less lethal weapons and crowd management. (Dkt 3-1), ¶¶ 69-129. The Decree also requires those policies to be submitted to the Monitor and DOJ before they are implemented: "SPD will submit the policies, procedures, training curricula, and training manuals required to be written, revised, or maintained by the Settlement Agreement to the Monitor and DOJ for review and comment prior to publication and implementation." (Dkt 3-1), ¶ 177.[3] Paragraphs 177 and 178 then provide up to 45 days for the Parties and the Monitor to meet and confer regarding the policies "if necessary", and 14 days following that period to put any issues before the Court.

From 2012 onward, the City has abided by these requirements,[4] including by following this exact process for every revision of SPD's Use of Force policies since the case's inception.

---

[3] "Policies" and "procedures" include directives issued by the Chief. *See* (Dkt 3-1), ¶ 53 ("'Policies and Procedures' means regulations or directives, regardless of the name, describing the duties, functions, and obligations of SPD officers and/or employees, and providing specific direction in how to fulfill those duties, functions, or obligations").

[4] *See* (Dkts. 59, 127, 221-1, 294-1) (Agreed Monitoring Plans in place during Phase I of the litigation, which set forth the procedure for submitting draft revisions to the Monitor, DOJ, and the Court); *see also* (Dkt. 444) (City's Sustainment Plan, stating "APRS will seek the input of the DOJ and Monitor in reviews of Consent Decree-mandated policies").

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*See* (Dkt. 107-1 to 107-6, 204-1, 388-1, 471-1 to 471-3, 500-1 to 500-5, 569-2 to 569-4). The last revision of which occurred in July 2019 and currently governs SPD's use of less lethal implements. *See* (Dkt. 569-2 to 569-4). Likewise, the City abided by this process in passing the current version of SPD's Crowd Management policy. *See* (Dkt. 359-1) (January 27, 2017); (Dkt. 363) (approved by Court February 7, 2017).[5] Directives were similarly submitted to DOJ and the Monitor and received their approval prior to being published and implemented. Accordingly, the United States is likely to succeed on the merits that failure to provide a draft of the Directive to the United States and the Monitor, and receive their approval as well as the approval of this Court, prior to implementation is a violation of the Consent Decree's terms and past practices in this case.

### 2. The Consent Decree's Substantive Requirements

Under the Consent Decree, the City of Seattle agreed to abide by a series of principles intended to govern all use of force issues, including changes to policy, training, supervision, and the like. The first of which, is that "[o]fficers' actions should increase public safety, be effective and constitutional, and embrace principles of procedural justice." *See* (Dkt. 3-1) at ¶ 69. The second of which is the principle that all uses of force will be consistent with *Graham v. Connor* (*i.e.* reasonable under the circumstances) and "[o]fficers should use de-escalation techniques,

---

[5] In 2017, the City of Seattle sought a finding of "full and effective compliance" with the Consent Decree from this Court in 2017. The United States supported that motion, in part, on the basis of the City's conformance with the requirements of Paragraph 177's mandates (*i.e.* the City consistently provided draft revisions to all Consent-Decree related policies to the United States and the Monitor for review and conference and sought and obtained approval by the Court prior to their adoption). The Court granted the City's motion, however, the City remains under a "Sustainment Period" in which it must continue to comply with the terms of the Consent Decree.

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

when appropriate and feasible, in order to reduce the need for force." *Id*. at ¶ 70.  Further, the City agreed to the governing idea stated in the introduction to the Consent Decree that policing must be delivered to the people of Seattle in a manner that ensures both public and officer safety. *Id*. at 5.  The Parties drafted and revised all Consent Decree-related policies, including use of force and crowd management, with these principles and goals in mind.  The Directive that is set to take effect tomorrow will run directly contrary to these principles and requirements.

To begin with, it is likely that removing nearly all forms of less lethal implements from all police encounters will not "increase[s] public safety" nor provide the means for SPD officers to abide by the de-escalation mandate.  Indeed, while City Council may have intended the ban on these less lethal implements to prevent the use of excessive force, the Directive – which removes them without providing training or alternative mechanisms to de-escalate and resolve the dangerous situations officers routinely find themselves – may cause it.  Removing force options means officers will lack other options to choose from in moderating their force to the threat presented and will, therein, increase the likelihood of use of hands-on force (punches, kicks, etc.), batons, and potentially deadly force. As stated by Chief Best:  "Left only with the options of a baton, a Taser (effective distance of approximately 7-12 feet), and an officer's body, the likelihood of greater injury – to both officer and subject in those (again) empirically rare but foreseeable situations where some level of force is necessary – should be patent and concerning." (Dkt. 625-2 at 4) (Memorandum from Chief Carmen Best to City Attorney Peter Holmes).

These risks are not just hypothetical with respect to force encounters that may or may not occur at some future date.  Rather, the City of Seattle is anticipating significant and potentially dangerous protests this weekend, at the very same time that these changes to SPD's policies (and

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

therein, tactics and decision-making) are being rolled out.  Chief Best has made statements regarding how the Ordinance and therein, implementation of the Directive, will directly impact SPD's response to these protests.  She states:

> This weekend we know that several events are planned across the city that will foreseeably involve many of the same violent actors from recent days. There is no reason not to assume we will continue to experience property destruction, arson, looting, and attempts to injure additional officers throughout the weekend and beyond . . . .
>
> Under these circumstances, as created by Council, we cannot manage demonstrations as we have in the past. If I am not allowed to lawfully equip officers with the tools they have been trained to use to protect the community and themselves, it would be reckless to have them confront this level of violence under the current legal restrictions imposed by Council. . . .
>
> SPD's de-escalation principles are premised on the expectation, consistent with policy and best practices, that officers have the full array of approved tools. In large crowds, there is no safe way for officers to effect arrests when their colleagues do not have the tools necessary to protect them. . . .
>
> As City Council's legislation goes into effect, it will create even more dangerous circumstances for our officers to intervene using what they have left – riot shields and riot batons.

*See* Fogg Dec. at Exhibit C.  Accordingly, the Chief further states: "SPD will have an adjusted deployment in response to any demonstrations this weekend. The Council legislation gives officers no ability to safely intercede to preserve property in the midst of a large, violent crowd." *Id.*  The Chief of Police has therefore made clear that this Directive (implementing the Ordinance) will result in changes to SPD procedures such that will increase the danger to either the public or officers.  This is a clear conflict with the Consent Decree and, thus, the United States is likely to succeed on the merits in challenging their adoption.  At the very least, this impact raises serious questions about the City's compliance with the terms of the Consent Decree

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

related to use of force principles. For the exact same reasons already discussed, implementation of the Directive also creates a likelihood of irreparable harm to the public.[6]

**C.      The United States Satisfied the Notice and Cure Provisions of the Consent Decree**

This motion is filed consistent with the notice-and-cure provisions of the Consent Decree set forth in paragraphs 222 and 224. Paragraph 224 allows the United States to seek enforcement of a provision of the Consent Decree when it has determined that the City and SPD have failed to comply with the provision. (Dkt. 3-1) at 73. Paragraph 222 provides procedures for notice and opportunity to cure that must be followed before such a petition. *Id.* at 72. After the United States received notice of the Ordinance, the City of Seattle notified the United States that it would need to modify SPD policies in order to effectuate the terms of the Ordinance. Following informal discussion, the United States formally notified the City that any such changes would require compliance with Paragraphs 177 and 178 of the Consent Decree prior to implementation. *See* Fogg Dec. at Exhibit B (Notice). The City indicated that it did not intend on complying with this provision. *Id.* The parties then met and conferred about this issue via conference call on July 16, 2020, but were unable to resolve the issue. *Id*. The issuance of the July 23, 2020 Directive now ripens the issue before the United States and this Court[7] as its implementation

---

[6] Further, the issuance of this immediate change, without additional direction or training by which to navigate their duties, is likely to result in significant officer confusion, particularly given that additional policy revisions are likely to occur after the process contemplated by the Ordinance in which the OPA, OIG, and CPC provide input and guidance. These additional changes to policy would whipsaw officers through three varying set of expectations in approximately one month. Officer confusion presents risks to both the officers themselves and the safety of the public. It is hard to think of a greater public interest than that.

[7] The Court notes in its Order of July 22, 2020 that other restrictions on crowd control weapons – including Judge Jones' TRO and the City's June 17, 2020 prohibition on CS gas – have not been challenged. The United States submits that failing to challenge those has not effectuated any form of

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

would be in direct conflict with the procedural and substantive requirements of the Consent Decree.

**D.    Conclusion**

For the foregoing reasons, the United States requests that the Court issue an order prohibiting the City of Seattle from enacting any changes to policies covered by the Consent Decree, without first engaging in the review, comment, and approval process set forth in Paragraphs 177 and 178 of the Consent Decree. In particular, the United States requests that the Court's order make clear that the July 23, 2020 Directive may not take effect on July 25, 2020.

//

---

waiver, in particular because those circumstances are legally and factually distinguishable. For one, Judge Jones' TRO is an order of a federal court, not the action of a City employee subject to the Consent Decree. One is not appropriately challenged in a separate federal court proceeding, one is. Further, Judge Jones' order provided for significant exceptions to the blanket prohibition on less lethal implements, such that SPD can (and has) continued to use them as necessary for the protection of officers and the public. Indeed, Judge Jones' order appears to simply require that the City use less lethal implements in a manner that is consistent with the existing policy. As such, it is actually in furtherance of the Consent Decree, not at odds with it. The prohibition on CS gas is also distinguishable because: (1) it did not ban the many other types of less lethal implements or their procedures and training that were previously reviewed and approved though the Consent Decree and its processes; and (2) there is no policy created, approved, or revised through the Consent Decree process that relates to CS gas. For these reasons, the United States believes that this Directive poses a reviewable issue for the Court where the others did not.

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DATED on July 24, 2020.

Respectfully submitted,

| | |
|---|---|
| BRIAN T. MORAN | ERIC S. DREIBAND |
| United States Attorney for the | Assistant Attorney General |
| Western District of Washington | Civil Rights Division |
| | |
| s/Christina Fogg | s/Timothy Mygatt |
| Kerry J. Keefe, Civil Chief | Steven H. Rosenbaum, Chief |
| Christina Fogg, Assistant United States Attorney | Timothy D. Mygatt, Deputy Chief |
| Matt Waldrop, Assistant United States Attorney | Jeffrey R. Murray, Trial Attorney |
| United States Attorney's Office | United States Department of Justice |
| Western District of Washington | Civil Rights Division |
| 700 Stewart Street, Suite 5220 | Special Litigation Section |
| Seattle, Washington 98101-1271 | 950 Pennsylvania Avenue, NW |
| Phone: (206) 553-7970 | Washington, DC 20530 |
| Fax: (206) 553-4073 | Phone: (202) 514-6255 |

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2020, I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record:

| | |
|---|---|
| Brian T. Moran | bmoran@usdoj.gov |
| Annette L. Hayes | Annette.Hayes@usdoj.gov |
| Christina Fogg | Christina.Fogg@usdoj.gov |
| Matt Waldrop | James.Waldrop@usdoj.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Rebecca Boatright | rebecca.boatright@seattle.gov |
| Ronald R. Ward | Ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Gary T. Smith | gary.smith@seattle.gov |
| Kerala T. Cowart | kerala.cowart@seattle.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |
| Anna Mouw Thompson | annathompson@perkinscoie.com |
| David Perez | dperez@perkinscoie.com |
| Merrick Bobb | merrickbobb@gmail.com |
| Bruce E.H. Johnson | brucejohnson@dwt.com |
| Eric M. Stahl | Ericstahl@dwt.com |
| Paul A. Olsen | Paul.Olsen@seattle.gov |

DATED on July 24, 2020.

        *s/ Brittany Cirineo*
        Brittany Cirineo, Legal Assistant (Contractor)

UNITED STATES' MOTION FOR TRO
Case No. 2:12-cv-01282-JLR - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970