THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>CITY OF SEATTLE,<br><br>              Defendant. | No. 2:12-cv-01282-JLR<br><br>**MEMORANDUM SUBMITTING 2021 MONITORING PLAN** |

The Consent Decree between the United States and the City of Seattle addressing the Seattle Police Department ("SPD") (the "Consent Decree," "Decree," or "Settlement Agreement") requires the submission of a monitoring plan "setting out deadlines for policy, training, development, and implementation for conducting the compliance reviews and audits." Dkt. 3-1 at ¶ 183. Extensive discussions with the Parties have resulted in a proposed Monitoring Plan for 2021 (the "Monitoring Plan," "2021 Plan," or "Plan"), attached hereto as Exhibit A.

The Plan seeks to provide a defined framework for a host of initiatives aimed at "ensuring that police services are delivered to the people of Seattle in a manner that fully complies with the

MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 1
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

Constitution and laws of the United States, effectively ensures public and officer safety, and promotes public confidence . . . . " Dkt. 3-1 at 5. Because the Plan sets specific milestones, deliverables, and deadlines for ensuring compliance with the requirements of the Consent Decree while ensuring that individuals and organizations across Seattle's diverse communities drive the discussion of how policing services are delivered going forward, the Monitor and Parties together respectfully request that the Court approve the Plan.

## I.    PROCEDURAL HISTORY

The Consent Decree requires that the City demonstrate "full and effective compliance" with the requirements of the Consent Decree and "maintain[] such compliance for no less than two years." Dkt. 3-1 at ¶ 223. The Decree is not a self-terminating document. Instead, it may only be concluded, per its terms, through one of two ways. Regardless of the path, the City must move to conclude the Consent Decree, and the Court must concur. The first way is through a joint motion of the Parties to the Court within the first five years of the Consent Decree, which elapsed in 2017. Dkt. 3-1 at ¶ 229. The second way is for the City to "petition the Court to terminate this Agreement or portions of this Agreement at any time," Dkt. 3-1 at ¶ 230, and for the United States, Monitor, and Court to follow a prescribed process. The City "may demonstrate 'full and effective compliance' with the terms of the Agreement either through Compliance Reviews and Audits . . . or through Outcome Assessments . . . . " Dkt. 3-1 at ¶ 182. The ten Audits conducted by the prior Monitor were a combination of both Compliance Reviews and Audits, evaluating whether SPD had implemented required Decree provisions and Audits, and Outcome Assessments, evaluating the overall results of SPD's policing across the streets of Seattle. *See* Dkt. 3-1 at ¶ 189 (listing various "outcome data . . . related to the provisions of this Settlement Agreement").

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 2**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

The Court ruled on January 10, 2018 that the City and SPD were in "full and effective compliance of the Consent Decree." Dkt. 439 at 16.  That determination "was based, in part" on the prior Monitor's conclusion across the ten Audits that the City had reached "initial compliance" with the Decree's obligations.  Dkt. 562 at 4 (summarizing Dkt. 439 at 3–5).  On May 21, 2019, the Court concluded "that the City is out of compliance with the Consent Decree in one of its additional areas of responsibility – accountability."  Dkt. 562 at 2.  At that time, "the Court [did] not find that the City is out of compliance with any of the [ten] areas . . . covered by the Audits," Dkt. 562 at 12, though the two-year period under a Party- and Court-approved Sustainment Plan continued to run until January 10, 2020.  On May 7, 2020, the City and United States moved the Court to terminate the areas of the Consent Decree covered by the Audits, indicating that various follow-up "reports, reviews, and assessments" that had been conducted throughout a two-year compliance sustainment period demonstrated "that the city has sustained compliance in these areas for [the] two years" that the Decree requires.  Dkt. 612 at 9.  The City withdrew that motion on June 3, 2020.

As of this filing, the City has not moved the Court to terminate the Decree.  That, along with the Court's express indication that the City is out of compliance with respect to the issue of accountability, means that the Consent Decree and all attendant obligations remain in full effect and under the oversight of the Court and the Monitor.

In September 2020, the Court appointed this Monitor and a three-member team (the "Monitoring Team") to help oversee the implementation of the Settlement Agreement.  Between October and December 2020, this new Monitoring Team convened with a number of City and community stakeholders to understand the various priorities, needs, demands, and desires with

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 3**
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

respect to the areas of policing and public safety that the Consent Decree addresses.  After constructing a preliminary draft plan, the Monitoring Team sought feedback from City stakeholders and worked with the Parties to revise and strengthen the Plan, as appropriate and as the Consent Decree requires.  Dkt. 3-1 at ¶ 183.  The City and United States agreed to the 2021 Monitoring Plan addressed here in January 2021.

## II.   ABOUT THE 2021 MONITORING PLAN

### A.  Scope of the Plan

Like prior monitoring plans in this matter, the 2021 Plan covers a period of approximately one year. *See, e.g.*, Dkt. 127, 195.  The 2021 Plan provides for a process, beginning in November 2021, for constructing a 2022 Monitoring Plan as progress and evidence warrant.  Ex. A at Line 16.

The 2021 Plan is organized around four key areas: (1) evaluating the status of compliance; (2) improving accountability, including both back-end and front-end accountability; (3) providing technical assistance to support SPD innovation and risk management; and (4) providing technical assistance to support re-imagining public safety.

### B.  Evaluating the Status of Compliance

The Monitoring Team will work to provide the Court, and the community, with updates on SPD's performance and progress on the six areas that constitute the Consent Decree's primary Commitments.  Dkt. 3-1 at 3.  These include use of force, crisis intervention, stops and detentions, and supervision.  Issues relating to bias-free policing and officer misconduct, because they are closely related to and surface significantly in the other core areas for consideration, will be addressed throughout all aspects of the evaluation process.  Ex. A at Line 9.  The purpose of the

MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 4
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

Compliance Status Update process is to provide the Court and Seattle community with up-to-date information and data on where the Department stands across the areas that the Consent Decree covers.  The final Compliance Status Update will be filed by November 15, 2021.  Ex. A at Line 16.

Meanwhile, the Monitor will "publicly issue reports . . . every six months detailing the Parties' compliance with and implementation of" the Decree.  Dkt. 3-1 ¶ 196.  The Monitor will file these reports by June 1, 2021 and November 8, 2021. Ex. A at Line 6.  The two reports will address the status of the City and SPD's progress in implementing the Monitoring Plan and overall progress under the Consent Decree.

### A. Accountability

The Court, as outlined above, ruled that the City was out of compliance in the area of accountability.  Dkt. 562 at 2.  "When people talk about accountability in policing, they usually are referring to the back end.  Something bad has happened, it is not what should have happened, and so someone must be held accountable."  Maria Ponomarenko & Barry Friedman, *Democratic Accountability and Policing, in* 4 REFORMING CRIMINAL JUSTICE: PUNISHMENT, INCARCERATION, AND RELEASE 5, 5 (Erik Luna ed., 2017) [hereinafter "Ponomarenko & Friedman"].  The Court's "two considerations [that] prompted its order" – the status of the City's collective bargaining with SPOG about "provisions related to officer discipline and accompanying appeals" and a particular discipline decision – refer to what the Monitoring Plan therefore calls "back-end accountability." Dkt. 3-1 at 4, 6.  Discussions with the Parties and community stakeholders affirmed the importance of back-end accountability to police legitimacy in Seattle.  As the Court's 2019 order recognized, the City has the opportunity through ongoing collective bargaining with the Seattle Police Officers

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 5**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

Guild ("SPOG") to ensure that systems for addressing officer misconduct and deficient performance are fair, rigorous, unbiased, and thorough.  As such, the Monitoring Plan requires the City to update the Court quarterly, and update the United States, City stakeholders, and Monitoring Team monthly, on the status of its efforts in the area of officer misconduct and police discipline.

Meanwhile, the Monitoring Plan addresses another critical type of accountability: front-end accountability, which involves ensuring that there are clear "rules in place before officials act, which are transparent, and formulated with public input." Ponomarenko & Friedman at 8.  Where back-end accountability focuses on imposing consequences for the failure to meet expectations, front-end accountability focuses on ensuring that policing is aligned with community needs and priorities and therefore democratically and publicly accountable.

Especially in the aftermath of protests surrounding the killing of George Floyd that began in May 2020, and community concerns about the police response to those protests, the Parties and Monitoring Team have agreed that the development of revised SPD policies and programs are critical in at least three major areas: Use of Force, Crowd Management, and Active Bystandership & Peer Intervention.

In the closely-related areas of Use of Force and Crowd Management, SPD, the Office of Professional Accountability ("OPA"), the Office of Inspector General for Public Safety ("OIG"), and a collaborative of City stakeholders are engaging in several post-protest investigations, reviews, and a Sentinel Event Review ("SER") process that all seek to establish what transpired. The Monitoring Plan provides specific deadlines and milestones for the completion of OIG's SER process and the provision of OPA's "management action recommendations [to help] SPD to

MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 6
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

1   address systemic issues it identifies" in individual investigations of incidents relating to protest

2   cases.  Ex. A at Lines 34–35.

3        SPD and other City stakeholders – including the Community Police Commission ("CPC"),

4   OPA, and OIG – are working to determine what changes, revisions, or improvements should be

5   made to Seattle's policies relating to the use of force in crowd situations and the operational

6   management of protests and circumstances involving large numbers of people.  The Monitoring

7   Plan presents specific deadlines for milestones for revisions.  Critically, it requires that the City

8   engage in "a comprehensive, affirmative, intensive initiative to obtain community input regarding

9   [SPD's] Crowd Management Policies."  Ex. A at Line 28.  The Monitoring Team will be evaluating

10  that process to ensure that it uses all appropriate mechanisms as possible to engage all of Seattle's

11  many communities in a substantive process that establishes a community vision for crowd and

12  protest management.

13       SPD is also joining the Active Bystandership for Law Enforcement ("ABLE") Project.  The

14  ABLE Project, which "prepare[s] officers to successfully intervene to prevent harm," avoid

15  misconduct, "and to create a law enforcement culture that supports peer intervention."

16  Georgetown Innovative Policing Program, Active Bystandership for Law Enforcement (ABLE)

17  Project, https://www.law.georgetown.edu/innovative-policing-program/active-bystandership-for-

18  law-enforcement/.  The program recognizes that having officers actively step in and prevent

19  misconduct or potential harm by one of their peers can help avoid or mitigate bad outcomes in the

20  first instance.  Officer training in this initiative began in early January 2021, and the Monitoring

21  Plan requires certification to the Court by the end of April 2021 that all eligible SPD officers have

22  completed the training.  Ex. A at Line 38.

23

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 7**
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

1

**B.  Technical Assistance to Support SPD Innovation & Risk Management**

2      As the Monitor has learned since being appointed, the Consent Decree process in Seattle

3  has previously, and appropriately, emphasized the importance of SPD becoming an organization

4  committed to critical self-analysis, learning, innovation, and improvement.  The Monitoring Plan

5  sets out defined mechanisms for the Parties and Court to remain aware of various initiatives and

6  innovations that SPD and the City may implement in the upcoming year and ensure that they are

7  consistent with Consent Decree requirements.  Ex. A at Lines 43–45.  Initiatives currently

8  underway in this regard include the Compstat for Justice ("C4J") initiative undertaken with the

9  Center for Policing Equity, which focuses on addressing disparate impacts with respect to SPD's

10 activities; an overhauled Early Intervention System ("EIS") for identifying potentially problematic

11 officer performance trends; and a new Officer Wellness Initiative focused on officer mental health

12 and well-being.

13      **C.  Technical Assistance to Support Re-Imagining Public Safety**

14      The City is currently engaged in a process of re-imagining public safety.  As with SPD's

15 internal innovations, the City's potential initiatives related to identifying and implementing new

16 public safety paradigms and approaches will be the subject of ongoing discussions with and

17 updates to the Parties, Monitoring Team, and Court to ensure that any innovations do not run

18 counter to compliance with the Consent Decree.  Ex. A at Lines 46–48.

19 **III.    CONCLUSION**

20      The task of the Monitor was to craft a plan for monitoring SPD's compliance with the

21 Consent Decree during 2021.  Because the 2021 Monitoring Plan sets substantive goals, establishes

22 specific milestones, and provides mechanisms to ensure meaningful community participation, the

23

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 8**
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

1

Monitor and Parties together respectfully request that the Court approve the 2021 Monitoring Plan

2

and order it effective.

3

DATED this 4th day of February, 2021.

4

   */s/ Antonio M. Oftelie*

5

   Dr. ANTONIO M. OFTELIE
   Monitor

6

   65 Nicollet Mall Suite 1812
   Minneapolis, MN 55401

7

   Phone: (617) 909-4173
   Email: antonio.oftelie@seattlepolicemonitor.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 9**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2021, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian T. Moran | bmoran@usdoj.gov |
| Christina Fogg | christina.fogg@usdoj.gov |
| Matt Waldrop | james.waldrop@usdoj.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Ronald R. Ward | ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| David A. Perez | dperez@perkinscoie.com |
| Anna Thompson | annathompson@perkinscoie.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |
| Bruce E.H. Johnson | brucejohnson@dwt.com |
| Eric M. Stahl | ericstahl@dwt.com |

Dated this 4th day of February, 2021.


/s/ Matthew Barge
Matthew Barge
Monitoring Team
Email: matthew.barge@seattlemonitor.org

**MEMORANDUM SUBMITTING 2021 MONITORING PLAN - 10**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173