# EXHIBIT D

# Seattle Police Department

# **Directive**

**Effective Date: <span style="color:red">_Pending Court review_</span>**

**Directive Number 20-000XX**

**Manual Section 14.090 – Crowd Management has been renamed and revised.**

**This Manual Section is now titled: 14.090 – Crowd Management, Intervention, and Crowd Control**

This section has been revised to incorporate changes to the Department's crowd control policy to include the addition of the CMIC (Crowd Management, Intervention, and Control) Matrix (see below).

Many sections of this policy have changed. Please review these changes as indicated in <span style="color:red">red</span> text below.  In addition, sections duplicative of principles contained in Manual Section 14.100 and Title 8 are removed from this manual section with hyperlink to the appropriate section.

# Crowd Management, Intervention, and Control Strategies (CMIC)

| Lawful Assembly | Isolated Unlawful Behavior | Unlawful Assembly |
|---|---|---|
| Free speech and peaceable assembly are protected First Amendment activities.<br><br>Examples include:<br><br>• Speeches<br>• Marches<br>• Demonstrations<br>• Rallies<br>• Picketing<br>• Public assemblies<br>• Protests<br>• Celebratory events | Individual violent acts within the crowd, property damage, unpermitted traffic disruption, and defacement are not protected activities. However, isolated unlawful activity by individuals or small groups within a crowd should not automatically form the basis for declaring an assembly unlawful.<br><br>Examples include:<br><br>• Isolated destruction of property<br>• Isolated acts of violence<br>• Isolated rock or bottle throwers<br>• Individual sit-down demonstrators | Where unlawful behavior within or of a crowd cannot be controlled through intervention strategies, assemblies may be dispersed.  Examples of such behavior include:<br><br>Examples of such behavior include:<br><br>• Violent acts by four or more persons or acts that pose an imminent threat of violence against persons or property (RCW 9A.84.010)[1]<br>• Significant unpermitted traffic disruption that poses an imminent threat of harm to members of the assembly or the traveling public<br>• Other criminal acts in the crowd that cannot be addressed through crowd intervention strategies |
| **Police Action** | | |
| Crowd Management Strategies (Manual Sections 14.090, .100)<br><br>• Meet with event organizers and stakeholders<br>• Determine the history and risk of the group<br>• Check permit limitations<br>• Develop Incident Action Plan and objectives<br>• Identify and assign resources<br>• Determine appropriate uniform for the event<br>• Provide direction and expectations at roll call<br>• Monitor and assess crowd behavior<br>• Engender facilitation, not confrontation<br>• Attempt to interact with organizers and gain cooperation<br>• Separate opposing factions | Crowd Intervention Strategies<br><br>• Attempt to use organizers and monitors to gain voluntary compliance<br>• Isolate, arrest and remove law violators as quickly as possible<br>• Video action of officers and law violators<br>• Use amplified sound to communicate intent or to gain compliance<br>• Use low profile tactics when possible<br>• Use force that is reasonable, necessary, and proportional force to effect necessary arrests consistent with Title 8<br>• When it is not possible to make an immediate arrest, identify and track subjects for later arrest<br>• Continue to assess and modulate response as behavior changes | Crowd Control and Dispersal Strategies<br><br>• Issue an order to disperse<br>• Identify dispersal routes<br>• Identify appropriate area for media and legal observers<br>• Use force that is reasonable, necessary, and proportional to disperse or move a crowd<br>• Continue to assess and modulate response as behavior changes |

---

[1] While this definition tracks the legal standard, the presence of four more persons acting to pose an imminent threat of violence against persons or property does not presumptively justify law enforcement action under policy. In all cases, Incident Commanders are expected to consider the number of individuals acting unlawfully in the context of available resources and intervention strategies short of dispersal.

# Seattle Police Manual

## 14.090 - Crowd Management, Intervention, and Control Crowd Dispersal

Effective Date: 021021 Draft

## 14.090 – POL 1 – Purpose

The rights to free speech and peaceable assembly are guaranteed by the First Amendment to the United States Constitution and Article 1, § 4 and 5 of the Washington State Constitution.  The Seattle Police Department takes seriously its responsibility and commitment to support and facilitate the exercise of these rights in fair and equitable manner, without consideration as to content or political affiliation, with as minimal a footprint as is reasonably necessary to preserve public safety and order.

This policy recognizes that assemblies in Seattle may range from small gatherings that require no police support, to permitted celebratory and/or protest marches, to large-scale, unpermitted demonstrations where activities outside of First Amendment protections, including significant traffic disruption, property destruction, and/or threats of violence may require a greater police presence.  This policy is intended to provide clear guidance to officers, supervisors, and commanders in employing appropriate crowd management, intervention, and control strategies in a manner so as to facilitate, to the extent safe and feasible, the right to free expression and peaceable assembly. This policy is also intended to provide guidance by which officers and supervisors may objectively determine at what juncture a demonstration or assembly leaves the realm of legal protest and becomes an abridgement on the life-safety and property rights of others, which SPD is equally responsible to safeguard. See RCW 9A.84.010. At all times, SPD's response will be based upon the conduct of those assembled, not the content of their speech or affiliation.

The Department recognizes that the visible appearance and/or actions of law enforcement may affect the demeanor and behavior of a crowd. It is the Department's mission to de-escalate whenever safe and feasible to do so, without compromising public order and safety.

# Seattle Police Manual

4

The Department also recognizes that the unlawful acts of some members of a crowd do not automatically turn an assembly from peaceable to unpeaceable. It is the Department's ~~goal~~ commitment to provide officers and supervisors with crowd management and intervention strategies that allow for the peaceable expression of federal and state rights while at the same time removing individuals whose illegal behavior jeopardize the safety of lawful activity.

This policy is intended solely to guide the decisions, actions, and operations of Department personnel in planning for and responding to crowd management situations within the City of Seattle.  It is not intended to expand or abridge Constitutional analyses with respect to the parameters of First Amendment protections and restrictions more appropriate for a court of law.

This policy is to be read in conjunction with Section 14.100 (Special Events) and Title 8 (Use of Force).

## 14.090 – POL 2 – Definitions

Where used in this section, the following terms shall have the meanings ascribed:

**Crowd Management** – strategies and tactics that employ communication and dialogue with event leaders to obtain voluntary compliance with lawful orders and allow for minimal enforcement action.

**Crowd Intervention** – strategies and tactics that are designed to facilitate continued exercise of constitutional rights by isolating and arresting law violators within an otherwise lawful assembly.

**Crowd Control ~~and Dispersal~~** – strategies and tactics, including dispersal, that are employed in the event a crowd or portion of a crowd becomes involved in violent or otherwise destructive behavior and which are intended to protect life, restore and maintain order, allow for the arrest of law violators, and the protection of vital facilities and property.

**CMIC Matrix** – Crowd Management, Intervention, and Control Concepts and Strategies.  See Appendix A.

**De-escalation** – ~~Actions~~ Strategies and tactics used by officers and commanders, when safe and feasible without compromising law enforcement priorities, that seek to minimize the likelihood

# Seattle Police Manual

of the need to use force during an incident and increase the likelihood of gaining voluntary compliance from a subject.

**Legal Observers** – Individuals, usually representatives of civilian human rights agencies, who attend public demonstrations, protests and other activities where there is a potential for conflict between those assembled and law enforcement or security.

The following may be indicia of a legal observer:  Wearing a green National Lawyers' Guild issued or authorized Legal Observer hat and/or vest (a green NLG hat and/or black vest with green labels) or wearing a blue ACLU issued or authorized legal observer vest.

**Media** – Consistent with RCW 5.68.010, "media" means any person who is an employee, agent, or independent contractor of any newspaper, magazine or other periodical, book publisher, news agency, wire service, radio or television station or network, cable or satellite station or network, or audio or audiovisual production company, or any entity that is in the regular business of news gathering and disseminating news or information to the public by any means, including, but not limited to, print, broadcast, photographic, mechanical, internet, or electronic distribution.

For purposes of this policy, the following are indicia of being a member of the media: visual identification as a member of the press, such as by displaying a professional or authorized press pass or wearing a professional or authorized press badge or some distinctive clothing that identifies the wearer as a member of the press.

## 14.090 – POL – 3 The Department Uses the Incident Command System for Crowd Management Events

### 1. When Assigned, an Incident Commander (I/C) Will Plan and Oversee the Department's Response Before, During, and Following an Event

The Incident Commander may delegate authority and assignments.

### 2. The Incident Commander Retains Ultimate Responsibility for the Decisions of Subordinates

# Seattle Police Manual

6

In order to fulfill this obligation, the Incident Commander will be available for on-scene consultation.

**3.** The **Incident Commander** Will be a Sergeant or Above

- **Exception**: An officer can serve as Incident Commander until a sergeant responds. ~~can respond.~~

- If feasible, a lieutenant will assume command when there are two sergeants and/or two squads involved in the event.

- If feasible, a captain will assume command when there are two lieutenants involved in the event.

- For more information, see Manual Section 1.020 – Chain of Command.

## 14.090 - POL - 4 The Incident Commander Will Follow Section 14.100 and 8.500 for Planning, Staffing, and Documenting a Crowd Management Response

## 14.090 - POL - 5 The Incident Commander Will Use the Crowd Management, Intervention, and Control Concepts Strategies (CMIC) Matrix

Any public assembly of individuals or groups, lawful or unlawful, may require support and/or intervention by law enforcement. Depending upon the situation, the response of law enforcement can range from observation and crowd management strategies, to crowd intervention and control strategies, as outlined in the Crowd Management, Intervention, and Control Strategies Matrix (CMIC).

The CMIC is a guide for the Incident Commander and allows for agility in police action in response to dynamic crowd events. Such considerations may include the overall positioning of a crowd, whether static or mobile.  The Incident Commander shall document their considerations in their statement.

## 14.090 - POL – 6 The Incident Commander Will Employ Crowd Management Strategies Prior to and During an Event, Whenever Feasible

# Seattle Police Manual

7

The Incident Commander will consider strategies in the CMIC Matrix when planning for an event and in managing peaceable assemblies.

## 14.090 - POL - 7 Officers Will Use Crowd Intervention Strategies Whenever Safe and Feasible

Whenever isolated unlawful activity by individuals or small groups in an otherwise peaceable assembly can be addressed through targeted enforcement, commanders and sergeants directing a law enforcement response will use crowd intervention tactics as provided in the CMIC to intervene and remove law violators such that a peaceable assembly may proceed.

## 14.090 - POL - 8 Crowd Control and Dispersal

### 1. Upon Determining that there are acts or Conduct Within a Crowd that Create a Substantial Risk of Causing Injury to Persons or Substantial Harm to Property, the Incident Commander May Order that a Public Safety Order be Issued to Move, Disperse, or Refrain from Specified Activities in the Immediate Vicinity

The Incident Commander will not order a public safety order to be issued unless the Incident Commander has determined that the risk observed cannot be contained through crowd management or intervention tactics.

### 2. Upon Determining that a Public Safety Order to Disperse is Necessary, the Incident Commander ~~Shall~~ Will Ensure that there is an Avenue of Egress Sufficient to Allow the Crowd to Depart

### 3. Where Available, the Sound Amplification Equipment Will be Used to Issue the Public Safety Order

The Incident Commander will make reasonable effort to ensure that the order is heard or received.  The Incident Commander may direct the Public Affairs unit to broadcast the public safety order on social media.

### 4. The Incident Commander Shall Document the Circumstances Upon Which a Public Safety Order was Issued, Including any

# Seattle Police Manual

**Considerations as to Less Restrictive Means to Restore Public Order**

**5. After Ordering a Public Safety Order, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit**

The goal of a public safety order to disperse is to restore and maintain public order.  If the Incident Commander determines that a crowd no longer poses a substantial risk of injury to persons or harm to property, the incident commander will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC.

See 14.090-TSK-3 Issuing the Order to Disperse.

## 14.090 – POL 9 - Media and Legal Observers

**1. It is the Department's Goal to Provide the Media and Legal Observers as Much Access as is Safely Possible to Assist them in their Duties and Responsibilities**

**2. With the Exception of Spontaneously Occurring Events, and when Practicable, the Incident Commander Will Consider Identifying an Area Outside of the Anticipated Impacted Area, but Within Viewing Distance and Audible Range of the Event, for Members of the Media or Legal Observers to Assemble**

Nothing about this policy restricts any member of the media or legal observer to such identified areas and officers shall not take enforcement action solely because members of the media or legal observers do not remain within the identified area.

**3. Officers Will Not Arrest Members of the Media or Legal Observers for Failure to Disperse, Unless they are Physically Obstructing Lawful Efforts to Disperse the Crowd**

Nothing about this policy authorizes members of the media or legal observers from otherwise complying with lawful commands, nor prohibits arrests based on probable cause on other offenses.

## 14.090 - POL 10 - Use of Force

# Seattle Police Manual

It is the Department's ~~goal~~ mission to facilitate crowd management events with as minimal force as is reasonably necessary to protect life and property.  In both crowd intervention and crowd control situations, officers may be required to physically engage individuals who exhibit conduct ranging from obstructive to violent behavior.  In these situations, officers may have to utilize force to move crowd members who do not respond to verbal orders, control violent individuals, or to effect an arrest. In considering strategies and tactics, officers should weigh the risk of harm resulting from officer action against the risk of harm that may otherwise continue.

This policy is to be read and applied in conjunction with Title 8 of this manual.  While the Department recognizes that officers will face unique and challenging circumstances that cannot be exhaustively addressed in policy, officers and commanders are expected to apply core principles of de-escalation and modulation of force where safe and feasible to do so.  Nothing about this policy creates an exception to the requirement that officers may use only force, which is objectively reasonable, necessary, and proportional to bring an incident or person under control, while protecting the life and safety of all persons.

## 1. Officers May Make Individual Decisions to Use Force Consistent With Title 8 to Take Reasonable, Necessary, and Proportional Action to Protect Against a Specific Imminent Threat of Physical Harm to Themselves or Identifiable Others Or To Respond to Specific Acts of Violence or Substantial Destruction of Property

Officers will employ de-escalation strategies and tactics within all crowd management contexts, whenever safe and feasible under the circumstances, to reduce or eliminate the necessity to use physical force.  See Manual Section 8.100.

Where feasible, officers will consult with a supervisor prior taking action to protect against destruction of property.

## 2. The Incident Commander Has Authority to Direct the Use of Less Lethal ~~Tools~~ Weapons Other than CS to Disperse the Crowd (See Manual Section 8.300 – Use-of-Force Weapons and Tools)

Exception:  A lieutenant may authorize the use of less lethal ~~tools~~ weapons to move or disperse a crowd if an immediate life safety

# Seattle Police Manual

10

emergency exists that requires this action be taken and there is insufficient time to obtain incident command approval.

- An immediate life safety emergency is an unplanned, dynamic situation where immediate police action is necessary to protect the officers' and/or the public's safety.

**3.** **Only Personnel Trained to Deploy Less Lethal ~~Tools~~ Weapons (Blast Balls, OC Spray, 40mm, and Pepperballs) are Authorized to Carry and Use these ~~Tools~~ Weapons Under the Supervision of the Incident Commander or their Designee**

Training shall include information about the less lethal ~~tools~~weapons, how to effectively deploy them, safety considerations, the specific effects on people and the environment, and how to decontaminate persons.

Only SWAT is authorized to carry and deploy 40 mm less-lethal impact rounds for crowd control purposes.

**4. Officers Will Not Deploy Less-Lethal ~~Tools~~ Weapons (Blast Balls, OC Spray, 40 mm, and Pepperballs) to Move a Crowd Until <u>an Incident Commander Instructs Officers to Deploy Them (Which Will Be After</u> a Dispersal Order has Been ~~Issued~~ Given and the Crowd Has Been Given a Reasonable Amount of Time to Comply) ~~as Determined by the Incident Commander~~.**

**5. As the Level of Violence Within a Crowd that Justified the Dispersal Order Diminishes, the Incident Commander Shall Affirmatively Ensure Personnel are Directed to Modulate their Force**

**6. Uses of Force that Occur During the Course of Crowd Management Are Reported, Investigated and Reviewed in Accordance with Manual Section 8.500-POL-6**

## 14.090 - POL 11 – Providing Medical Aid

**1. Officers Will Provide Aid to Subjects Exposed to OC, Blast Balls, 40mm, Pepperballs if Feasible and Within their Training**

Medical aid may include summoning medical assistance if more appropriate.

# Seattle Police Manual

**2.** **Officers Will Request Medical Response or Assistance for Subjects Exposed to OC and/or Pepperballs When They Complain of Continued Effects After Having Been Decontaminated, or They Indicate That They Have a Pre-Existing Medical Condition (e.g. Asthma, Emphysema, Bronchitis, Heart Ailment, Etc.) That May be Aggravated by OC or Pepperballs**

**3.** **Officers Will Request Medical Response or Assistance for Subjects Who Appear to Have Been Injured by a Less-Lethal ~~Tool~~ Weapon or Who Complain of Pain or Injury From a Less-Lethal ~~Tool~~Weapon.**

## 14.090 – POL - 12.  Debrief of Crowd Management Events of Short Duration

### 1. Following the Event, Sergeants and Incident Commanders Will Conduct a Day-of-Event Debrief

- Sergeants will conduct a debriefing of their assigned officers and document any observations or suggestions on an Event Debrief Form (form 23.5).

- Sergeants and the Incident Command staff will then have a separate debrief to discuss the following subjects:

- Event staffing

- Deployment

- Command issues

- Communication issues

- Logistical issues

- Use of less-lethal ~~tools~~weapons

- Areas of success

- Areas for improvement

### 2. The Incident Commander Will Complete an After-Action Report (See: 14.010-After-Action Reports)

# Seattle Police Manual

## 14.090-POL-13 Debrief of Large Scale and/or Prolonged Events

**1. For Incidents Which are Large in Scale, or Whose Duration is Multiple Days or Weeks, the Day of Event Debrief Will Consist of the Post Event Briefing form**

**2. The Incident Commander (or designee) will complete the Post Event Briefing Form**

**3. The AAR Report Will be Written by the Chief's Designee, the Completion Date of Which Will be Determined by the Chief Depending Upon the Length of the On-Going Incident**

## 14.090–TSK–1 Responsibilities of the Incident Commander

The **Incident Commander:**

1. If feasible, **contacts** the event organizer to discuss Department facilitation

2. **Develops** contingency plan regarding staffing and tactics

- SPD task force callout criteria

3. Considers utilizing specialty units

4. **Reviews** Mutual Aid callout criteria and which tools Mutual Aid may bring into the City of Seattle and how they will document their use of force

5. **Provides** a staffing plan to the SPD Budget Section based on the Staffing Matrix, if feasible

6. **Communicates** each unit's mission to the relevant supervisor or commander

a. **Instructs** the supervisor or commander to develop and provide plans

b. **Approves** unit plans

# Seattle Police Manual

c. **Ensures** the event plans are detailed in the Incident Action Plan (IAP), to include the goals, objectives, Rules of Engagement, and the CMIC Matrix.

7. **Briefs** officers and supervisors using the SPD ICS briefing format

8. **Remains** available for on-scene consultation

9. For Short Duration Events – **debriefs** supervisors and commanders

a. **Collects** Event Debrief Forms from the supervisors

b. **Considers** including the Wellness Unit

10. **Completes** an After-Action Report consistent with the requirements of Manual Section 14.010 – After-Action Reports

a. **Routes** the After-Action Report and Event Debrief Forms to the Patrol Operations Bureau Commander, via the chain of command

11. For Prolonged Events – **Coordinates** with the Chief of Police regarding the AAR and ensures the Incident Commander or designee completes the Post Event Briefing form.

## 14.090–TSK–2 Responsibilities of the Operations Section Chief

The **Operations Section Chief**:

1. **Develops** methods or tactics that will be used to accomplish the mission, as directed by the Incident Commander

a. **Submits** plans to the Incident Commander

2. **Debriefs** assigned officers after the incident

3. **Documents** observations and suggestions on an Event Debrief Form (form 23.5)

a. **Submits** Event Debrief Forms to Incident Commander

4. **Attends** separate debrief with Incident Commander

# Seattle Police Manual

## 14.090–TSK–3 Issuing the Order to Disperse

Upon determining that the crowd presents an imminent risk to public safety or that large-scale property destruction appears likely, the **Incident Commander or their designee**, as feasible:

1. Where available, **utilizes** sound amplification equipment so the crowd can hear the dispersal order

2. **Considers** using the Media Relations unit to broadcast dispersal orders on social media

3. Places~~Considers placing~~ officers at the rear of the crowd to verify that the order to disperse will be heard by all

4. The Incident Commander (or their designee) **shall issue** the following order:

**"I am (rank and name) of the Seattle Police Department. For safety reasons and to prevent further crimes in the crowd, I am now issuing a public safety order to disperse, and I command all those assembled at (specific location) to immediately disperse, which means leave this area. If you do not ~~do so~~leave the area, you may be arrested or subject to other police action. Other police action could include the use of chemical agents or less-lethal ~~munitions~~weapons, which may inflict significant pain or result in serious injury. If you remain in the area just described, regardless of your purpose, you will be in violation of city and state law. The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse.**

**(Repeat) The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse.**

**(Repeat) The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse."**

5. ~~Where feasible, p~~**P**rovides direction to media

6. **Allows** a reasonable amount of time for the crowd to disperse

# Seattle Police Manual

15

7. **Repeats** the order to disperse, if feasible

8. **Considers** issuing the order in multiple languages where feasible and depending upon the situation

9. Continually **assesses** the balance of dispersal time and the goal of retaining control of the situation

Where the IC has determined it is not safe or feasible to accomplish any of the above, the IC will document that reasoning in their statement.

# EXHIBIT E

# 8.000 - Use of Force Core Principles

Effective Date: **Pending court approval**

This section outlines the Seattle Police Department's core principles relating to the use of force. These general core principles provide the foundation for the more specific policies governing the application, reporting, investigation and review of force. The Department recognizes that officers will face unique and challenging circumstances not specifically addressed in this policy. Officers are expected to apply these core principles reasonably in unanticipated situations.

It is the policy of the Seattle Police Department that officers hold the highest regard for the dignity and liberty of all persons. The Department respects the sanctity of every human life, and the application of deadly force is a measure to be employed in the most extreme circumstances where lesser means of force have failed or could not be reasonably considered.

The Seattle Police Department is committed to protecting people, their property and rights while providing the best in public safety and service. The proper use of force is essential for ensuring impartial policing and for building trust in the community. While there are circumstances where individuals will not comply with the law unless compelled or controlled by police officers through the use of force, officers must remain mindful that they derive their authority from the community and that unreasonable force degrades the legitimacy of that authority.

The Department seeks to manage use of force by officers beyond the Graham v. Connor (1989) standard and its minimum requirements by establishing further parameters for the application of force and to offer explicit direction to officers. Sound judgment, the appropriate exercise of discretion, and the adherence to Department policy will always be the foundation of officer decision-making in the broad range of possible use of force situations.

**1. Every Member of the Seattle Police Department is Committed to Upholding the Constitution, Laws of the United States, Laws of the State of Washington, and Defending the Civil Rights and Dignity of All Individuals, While Protecting All Human Life and Property and Maintaining Civil Order**

It is the policy of the Seattle Police Department to accomplish the police mission with the cooperation of the public and as effectively as possible, and with minimal reliance upon the use of physical force.

The community expects and the Seattle Police Department requires that officers use only the force necessary to perform their duties and that such force be proportional to the threat or resistance of the subject under the circumstances.

An officer's commitment to public safety includes the welfare of members of the public, the officer, and fellow officers, with an emphasis on respect, professionalism, and protection of human life, even when force is necessary.

Officers who violate those values by using objectively unreasonable force degrade the confidence of the community, violate the rights of individuals upon whom unreasonable force is used, and may expose the Department and fellow officers to legal and physical hazards.

Conversely, officers who fail to use timely and adequate force when it is necessary may endanger themselves, the community and fellow officers.

## 2. When Safe, Under the Totality of the Circumstances, and Time and Circumstances Permit, Officers **Will** Use De-Escalation Tactics to Reduce the Need for Force

Additional guidance on how to reduce the need to use force may be found in 8.100.

## 3. Sometimes the Use of Force Is Unavoidable, and an Officer Must Exercise Physical Control of a Violent, Assaultive, or Resistive Individual to Make an Arrest, or to Protect Members of the Public and Officers from Risk of Harm

In doing so:

- Officers will recognize that their conduct prior to the use of force, including the display of a weapon, may be a factor which can influence the level of force necessary in a given situation.

Additional guidance on how to reduce the need to use force may be found in 8.100.

- Officers will take reasonable care that their actions do not precipitate an unnecessary, unreasonable, or disproportionate use of force, by placing themselves or others in jeopardy.

- Officers will continually assess the situation and changing circumstances and modulate the use- of-force appropriately.

## 4. An Officer **Will** Use Only Force That Is Objectively Reasonable, Necessary, and Proportional to the Threat or Resistance of a Subject

Definitions of objectively reasonable, necessary and proportional may be found in 8.050.

Guidance on when force is authorized may be found in 8.200.

## 5. Each Officer Is Responsible for Explaining and Articulating the Specific Facts, and Reasonable Inferences From Those Facts, Which Justify the Officer's Use Of Force

The officer's justification will be reviewed to determine whether or not the force used was in or out of policy.

Failure to adequately document and explain the facts, circumstances, and inferences when reporting force may lead to the conclusion that the force used was out of policy.

Additional guidance on reporting force may be found in 8.400.

## 6. The Department Is Committed to Upholding Lawful, Professional, and Ethical Standards Through Assertive Leadership and Supervision Before, During, and After Every Force Incident

The Seattle Police Department recognizes the magnitude of the responsibility that comes with the constitutional authority to use force. This responsibility includes maintaining vigorous standards and transparent oversight systems to ensure accountability to the community in order to maintain their trust. This includes:

- Force prevention efforts,

- Effective tactics, and

- Objective review and analysis of all incidents of reportable force

4

Additional guidance on the Department's review of force may be found in <u>8.500</u>.

## 7. A Strong Partnership Between the Department and the Community Is Essential for Effective Law Enforcement and Public Safety

Uses of force, even if lawful and proper, can have a damaging effect on the public's perception of the Department and the Department's relationship with the community.

Both the Department and individual officers need to be aware of the negative effects of use-of-force incidents and be empowered to take appropriate action to mitigate these effects, such as:

- Explaining actions to subjects or members of the public, when feasible

- Offering reasonable aid to those affected by a use-of-force

- Treating subjects, witnesses, and bystanders with professionalism and courtesy

- Department follow-up with neighbors or family to explain police actions and hear concerns and feedback

- Department follow-up with the involved officer(s) and support, as needed, throughout the process

# EXHIBIT F

# 8.050 - Use of Force Definitions

Effective Date: **Pending Court review**

**An Officer <u>Will</u> Use Only Force That Is Objectively Reasonable, Necessary, and Proportional to the Threat or Resistance of a Subject:**

>    **Objectively Reasonable**: The reasonableness of a particular use of force is based on the totality of circumstances known by the officer at the time of the use of force and weighs the actions of the officer against the rights of the subject, in light of the circumstances surrounding the event. It must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

>    The calculus of reasonableness must allow for the fact that police officers are often forced to make split-second decisions— in circumstances that are tense, uncertain, dynamic and rapidly evolving—about the amount of force that is necessary in a particular situation.

>    The reasonableness inquiry in an excessive-force case is an objective one: whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

>    Factors to be considered in determining the objective reasonableness of force include, but are not limited to:

>      - The seriousness of the crime or suspected offense;

>      - The level of threat or resistance presented by the subject;

>      - Whether the subject was posing an immediate threat to officers or a danger to the community;

>      - The potential for injury to ~~citizens~~ members of the public, officers or subjects;

>      - The risk or apparent attempt by the subject to escape and the government interest in preventing the escape;

>      - The conduct of the subject being confronted (as reasonably perceived by the officer at the time);

>      - The time available to an officer to make a decision;

- The availability of other resources;

- The training and experience of the officer;

- The proximity or access of weapons to the subject;

- Officer versus subject factors such as age, size, relative strength, skill level, injury/exhaustion and number of officers versus subjects;

- The environmental factors and/or other exigent circumstances; and

- Whether the subject has any perceived physical disability;

**Necessary**: "Necessary" means that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended. See RCW 9A.16.010 – Definitions. Necessity is based on the totality of the circumstances known by the officer at the time of the use of force.

**Proportional:** To be proportional, the level of force applied must reflect the totality of circumstances surrounding the situation at hand, including the nature and immediacy of any threats posed to officers and others. Officers must rely on training, experience, and assessment of the situation to decide an appropriate level of force to be applied. Reasonable and sound judgment will dictate the force option to be employed.

Proportional force does not require officers to use the same type or amount of force as the subject. The more immediate threat and the more likely that the threat will result in death or serious physical injury, the greater the level of force that may be proportional, objectively reasonable, and necessary to counter it.

## Types of Force:

**Force**: Any physical coercion by an officer in performance of official duties, including the following types of force:

**De Minimis Force**: Physical interaction meant to separate, guide, and/or control without the use of control techniques that are intended to or are reasonably likely to cause any pain or injury.

For more guidance on what constitutes de minimis force see
8.400.

Includes:

- Use of control holds or joint manipulation techniques in a
manner that does not cause any pain ~~and are not
reasonably likely to cause any pain.~~

- Using hands or equipment to stop, push back, separate, or
escort a person without causing any pain, or in a manner
that would reasonably cause any pain.

- Deployment of stationary tire deflation device resulting in
no vehicle contact.

**Handcuff Discomfort**: discomfort or minor transient pain caused
solely by wearing handcuffs after they have been properly
applied.

**Type I** – Force that causes transitory pain or the complaint of
transitory pain

Other examples include:

- ~~Disorientation~~

- Use of a hobble restraint

- Deployment of stationary tire deflation device with
confirmed contact and deflation of tires

- Deployment of a blast ball away from people (bang-out), or

- ~~Intentionally~~ Pointing a firearm at a person

  Simply displaying a weapon is not reportable force, nor is
holding a firearm without aiming at a person, as with the
sul and low ready positions, where the muzzle of the
firearm is not pointed at any part of a person's body.

  For further guidance, see 8.300 and 8.400.

~~Un-holstering or displaying a firearm without intentionally
pointing it at a person, including the sul and low-ready
positions, or simply displaying any weapon, is not a
reportable use of force.~~

**Type II** – Force that causes or is reasonably expected to cause physical injury greater than transitory pain but less than great or substantial bodily harm.

The use of any of the following weapons or instruments is a Type II:

- TASER

- OC spray

- Impact weapon

- Deployment of a canine ~~or vehicle, and~~

- ~~Deployment of stop sticks against a vehicle other than a motorcycle~~

For further guidance, see <u>8.400</u>.

**Type III** – Force that causes or is reasonably expected to cause, great bodily harm, substantial bodily harm, loss of consciousness, or death.

<u>The use of impact weapon strikes to the head is a Type III</u>

~~The use of the following is a Type III:~~

~~- Use of stop sticks on motorcycles~~

~~- Impact weapon strikes to the head~~

For further guidance, see <u>8.400</u>.

**Deadly Force**: The application of force through the use of firearms or any other means reasonably likely to cause death, great bodily harm. For further guidance, see <u>8.400</u>.

When reasonably likely to cause death or Great Bodily Harm, Deadly Force includes:

- Shooting a firearm at a person

- Hard strike to a person's head, neck, or throat with an impact weapon

- Striking a person's head into a hard, fixed object (examples include but are not limited to concrete objects or surfaces, or solid metal structures such as bars or guardrails).

~~- Using stop-sticks on a moving motorcycle.~~

Additional guidance on reporting force may be found in 8.400.

**Reportable Force**: All uses of force other than de minimis are reportable. Reportable force includes the intentional pointing of a firearm at a subject, Type I, Type II, Type III, and force used in Crowd Management as described in 14.090.

**Use of Force**: See "Force."

**Medical Procedure:** Medical interventions and life-saving techniques. Such efforts are not considered force.

## De-Escalation:

**De-escalation**: Taking action to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources are available to resolve the situation. The goal of de-escalation is to gain the voluntary compliance of subjects, when feasible, and thereby reduce or eliminate the necessity to use physical force. See 8.100 for further guidance.

**De-escalation Techniques**: Actions used by officers, when safe and feasible without compromising law-enforcement priorities, that seek to minimize the likelihood of the need to use force during an incident and increase the likelihood of gaining voluntary compliance from a subject. See 8.100 for examples of de-escalation tactics and techniques.

**Pattern Interrupt**: A de-escalation technique that is used as trained to temporarily disrupt the pattern or process of communication of the person the officer is contacting. The intent of the interruption is to lead a person in a more controlled and focused direction.

## Injury Classifications:

**Physical or Bodily Injury (also "Injury")**: Physical pain or injury, illness, or an impairment of physical condition greater than transitory pain but less than great or substantial bodily harm. (SMC 12A.02.150, RCW 9A.04.110)

**Substantial Bodily Harm** (RCW 9A.04.110): Bodily injury which involves:

- Temporary but substantial disfigurement

- Temporary but substantial loss or impairment of the function of any bodily part or organ

- Fracture of any bodily part

**Great Bodily Harm** (RCW 9A.04.110): *Synonymous with Serious Physical Injury*

Bodily injury which either:

- Creates a probability of death

- Causes significant serious permanent disfigurement

- Causes a significant permanent loss or impairment of the function of any bodily part or organ

## Force Investigation Terms:

**FIT (Force Investigation Team)**: The Department personnel tasked with conducting Type III use-of-force investigations, to include investigations of officer-involved shootings.

**Involved Officer:** An "Involved Officer" in regard to this policy chapter, is a sworn officer of any rank or assignment who uses reportable force as defined by Department Policy either on-duty or off-duty.

**Public Safety Statement (PSS)**: A "Public Safety Statement" is a compelled statement in which a supervisor (typically a Sergeant or Acting Sergeant) orders an "Involved Officer" to answer standardized questions directly related to an "Involved Officer's" use of force. The cards with the standardized questions that officers use to take the statement are also called a PSS.

The Seattle Police Department utilizes two different Public Safety Statements:

- Public Safety Statement Officer Involved Shooting Card

- Use of Force Public Safety Statement Card

**Witness Officer:** A "Witness Officer" in regard to this policy chapter, is a sworn officer of any rank or assignment who witnesses an officer's use of force, but who does not use reportable force himself/herself.

## Head and Neck:

**Head Control**: A trained technique utilized to control the movement of a subject's head or neck that does not involve a neck or carotid restraint <span style="color:red">or obstruction of the airway</span>.

**Neck Restraint (Prohibited)**: Any technique involving the use of an arm or other firm object to attempt to control or disable a subject by applying pressure against the windpipe, or the frontal area of the neck with the purpose or intent or effect of controlling a subject's movement or rendering a subject unconscious by blocking the passage of air through the windpipe.

**Carotid Restraint (Prohibited)**: Any technique which is applied in an effort to control or disable a subject by applying pressure to the carotid artery, the jugular vein, or the sides of the neck with the purpose or intent or effect of controlling a subject's movement or rendering a subject unconscious by constricting the flow of blood to and from the brain.

## Canine Terms:

For terms specifically related to canine operations see 16.300 Patrol Canines

## Vehicle Tactics:

**PIT (Pursuit Intervention Technique)**: A controlled and trained forced rotational stop of a non-compliant suspect vehicle used to reduce the risks in bringing a pursuit to a conclusion. PIT is always a use of force.

**Ramming**: The intentional use of a vehicle to strike another vehicle for the purpose of interrupting or incapacitating that vehicle. Ramming is always a use of force.

**Roadblock:**  The intentional positioning of a police vehicle to obstruct the flow of traffic. A roadblock used on a fleeing or eluding vehicle is considered a use of force – the classification of force depends on the totality of the circumstances.  Roadblocks used as force require approval of a lieutenant or above. Approval will be based on the severity of the crime and potential harm to occupants of the vehicle and the public.

**Vehicle-to-Vehicle Contact**: Contact between vehicles designed to guide or prevent movement of a vehicle, but without significant impact (ramming) and <span style="color:red">not</span> reasonably <span style="color:red">~~un~~</span>likely to cause injury.

**Stationary Tire Deflation Device**: A small, tire deflation device designed to be placed under the tire of a stationary vehicle to avoid flight.

**Weapons:**

**Approved Weapon**: A tool used to apply force that is both specified and authorized by the Department.

**Approved Use of a Weapon**: Use of an approved weapon by an officer who has been properly trained ~~and certified~~ in the use of that weapon.

**Impact Weapon:** Any object, whether a tool or fixed object (such as a hard surface), that is used to interrupt or incapacitate a subject and is capable of causing serious physical injury.

**Improvised Weapon:** Any ~~untrained~~ object, other than those approved and trained by the Department, used in a force application

**Less-Lethal ~~Tools~~ Weapons**: Devices designed and intended to apply force not intended nor likely to cause the death of the subject or Great Bodily Harm. For the intended purpose of Less Lethal ~~Tools~~ Weapons see 8.300. Examples include: TASER, impact weapons, OC spray, blast balls.

**Spark Display**: A non-contact demonstration of a TASER's arcing ability to discharge electricity.