THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:12-cv-01282-JLR ) |
| v. | ) **CITY OF SEATTLE'S APRIL 2021** ) **QUARTERLY ACCOUNTABILITY** ) **UPDATE** |
| CITY OF SEATTLE, | ) |
| Defendant. | ) ) ) ) ) |

      The Court-approved "Monitoring Plan," Dkt. 655-1, includes a commitment to provide quarterly reports updating the Court on the City's progress. This report includes quarterly data from the Office of Police Accountability regarding police discipline and appeals. The City also provides updates regarding state legislative reforms on arbitration and a significant recent Washington Court of Appeals ruling upholding the City's firing of former Officer Adley Shepherd.

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 1
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## I. Ongoing Work Over the Last Quarter Under the Monitoring Plan

The Office of Inspector General (OIG) has been facilitating a community-centered process, called a Sentinel Event Review, to examine SPD's response to the protests through a non-blaming, forward-looking framework. A panel of community members and subject matter experts have been meeting to review critical incidents that occurred during the protests. SPD is actively participating Sentinel Event Review. The panels goals are to focus on the perspectives and concerns of the community, identify root causes of negative outcomes, and discuss ways to improve systems to prevent future negative outcomes. The Sentinel Event Review goals, framework, and process are described at length on OIG's website.[1] On July 30, 2021, pursuant to the Court-approved monitoring plan, OIG will submit a report to the Court describing the work accomplished and the recommendations of the panel. Dkt. 655-1 at 6. At the same time, OPA will report to the Court with updates to its August 2020 recommendations and additional lessons learned based on in-depth review of more than one hundred individual protest-related complaints.

In addition, over the past quarter, the parties and the Monitor have been working closely to develop a methodology for the Monitor's Compliance Status Update, which includes an in-depth examination of SPD's crowd management response to protests last year and a general assessment of SPD's continued compliance with the requirements of the Consent Decree. Pursuant to this methodology, the City will be providing agreed information and reports to the Monitor and DOJ for their review and assessment. The Monitor will complete a compliance assessment based on this information on November 15, 2021.

---

[1] http://www.seattle.gov/oig/sentinel-event-review

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 2
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**II.  SPD has changed its crowd management policies and tactics, worked to inform the public about these changes, undertaken a major effort to provide updated crowd management training to its officers.**

As noted before, police departments across the country last year faced significant challenges in responding to protests and Seattle was no exception. As described at length in the City's previous quarterly report and in its motion in support of policy revisions, since last year SPD has made numerous changes to its crowd management practices and training to incorporate feedback and address shortcomings. *See* Dkts. 657 and 658. This Court approved SPD's revisions to its Use of Force and Crowd Management policies on February 26, 2021. Dkt. 662. Among the many changes are:

- Reducing officers' visible presence, when safe and feasible, in recognition of the fact that the appearance of officers at a demonstration can affect interactions with a crowd.
- Taking additional measures to provide media, legal observers, and protest medics safe avenues to carry out their important roles.
- Placing greater emphasis on de-escalation whenever it is safe and feasible.
- Improving technology and strategies to convey public safety messages to large crowds.
- Implementing new tactics to address specific individuals who are taking unlawful actions in otherwise lawful crowds.

Consistent with recommendations from OIG, improved communication and public education are one of the most important areas in which SPD has made changes. At the suggestion of OIG, to better communicate with crowds, SPD invested in sound amplification technology[2] to

---

[2] SPD bought a Long-Range Acoustical Device, or LRAD. LRAD systems have come under scrutiny for their capacity, when used in "alert" (or "siren" or "alarm") mode, to emit sounds at a frequency and decibel level that has been associated with hearing loss. This functionality is created by using an MP3 file of the offensive sound. In the model that SPD purchased, the City permanently eliminated this capacity by overriding it with a recording of silence, such that the remaining capacity of the device is one of public address only. In addition, protocols require officers to use the system within a safe range of sound levels.

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 3
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

ensure that, if a crowd must be dispersed for public safety reasons, officers' orders can be heard even by those at the back of the crowd. Officers also now give more detailed and clear instructions about why they are issuing a dispersal order and how and where to depart, acknowledging it can be difficult for someone in the middle of a large crowd to find a clear pathway to exit. As part of its efforts to communicate effectively, SPD also has listed specific acts that create the greatest life-safety risks and worked to educate community members about these. These acts include: marching on freeways; blocking traffic (which can impede emergency fire and medical services); throwing items such as rocks, bottles, or fireworks; interfering with an officers' efforts to address crimes or arrest individuals; starting fires or using incendiary devices; breaking windows or shattering glass bottles.[3]

SPD has also worked to increase public awareness of its policies and priorities through community engagement activities. It published information about the changes on its website.[4] SPD has given presentations on these changes and provided demonstration of less lethal tools to a diverse range of groups. In addition to SPD's regular precinct and demographic advisory council engagement, it has also participated in numerous peace circle dialogues and other facilitated dialogues with community members about these topics.

To accompany these public awareness efforts and its tactical and policy changes, SPD is conducting a major effort to provide updated training to nearly 1,200 officers. Starting on April 6, SPD began implementing a mandatory Crowd Management, Intervention, and Control training for

---

[3] *Id.*

[4] *See generally* SPD's Crowd Management Changes - SPD Blotter (seattle.gov)

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 4
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

all sworn personnel with the rank of Captain or below. Every officer must complete a full day of training; half of the training is in the classroom and half focuses on practical skills. The classroom training covers lessons learned from the 2020 protests which include:

- Policy updates (including focus new crowd management matrix which maps out decision-making for how and when SPD should intervene in a crowd setting[5])
- Tactics updates (including refresher training on the appropriate use of blast balls)
- Use of force report writing
- Officer wellness

The practical portion of the training gives officers the opportunity to perform crowd management drills and scenarios. By the end of May, SPD anticipates that all active[6] officers will have completed the training.

### III. Washington State recently enacted reformed arbitrator selection for law enforcement disciplinary appeals and passed legislation restricting tear gas.

Washington state recently reformed arbitration selection procedures for police officer disciplinary appeals. The Law Enforcement Disciplinary Grievance Arbitration Act[7] provides that the Public Employment Relations Commission (PERC) shall appoint at least nine arbitrators for three-year terms to decide disciplinary appeals for law enforcement. The arbitrator or panel of

---

[5] Seattle Police Manual 14.090-POL-5, available at http://www.seattle.gov/police-manual/title-14---emergency-operations/14090---crowd-management-intervention-and-control

[6] This excludes officers who are currently out on extended leave.

[7] Available at 5055-S.SL.pdf (wa.gov)

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 5
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

arbitrators shall be assigned to an appeal according to the roster in alphabetical order by last name; the parties (the union and the employer) are not permitted to participate in selection.[8]

The law requires that arbitrators must have at least six years of labor experience and directs PERC to consider additional factors, including: experience and training in cultural competency, racism, implicit bias, and familiarity and experience with the law enforcement profession. PERC shall develop and implement training that every arbitrator must complete within six months of appointment—including training on cultural competency, racism, implicit bias, and the daily experience of police officers.

These arbitrator selection procedures are mandatory for any officer covered by a collective bargaining agreement that provides for arbitration of disciplinary appeals. The law applies to collective bargaining agreements negotiated or renewed on or after January 1, 2022.

Another notable piece of state legislation, House Bill 1054[9], was passed by the legislature on April 23, 2021. It imposes new restrictions on law enforcement uses of force. Governor Inslee has not taken action yet. It provides that tear gas cannot be used by law enforcement "unless necessary to alleviate a present risk of serious harm posed by (a) Riot; (b) barricaded subject; or (c) hostage situation." Among other restrictions, the officers must exhaust all available and appropriate alternatives before using tear gas in any of these situations. Further, in the event of a

---

[8] In 2019, the City and SPOG agreed to a similar arbitrator selection process, with a list of sixteen arbitrators in a randomly generated order. Dkt. 598-4.

[9] Available at http://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/House%20Passed%20Legislature/1054-S.PL.pdf?q=20210426134924

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 6
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

riot, any use of tear gas must be authorized by "the highest elected official of the jurisdiction in which the tear gas is to be used."

HB 1054 would have little effect on SPD's crowd management practices regarding tear gas, with the exception of requiring that the Mayor, instead of the Chief of Police, must approve any use of tear gas. SPD's policy currently does not authorize the use of tear gas under any circumstances, unless it is explicitly authorized by the Chief of Police.[10] In addition, SPD is subject to an injunction issued by Judge Jones which provides very similar restrictions to HB 1054 regarding the use of tear gas:

> [T]ear gas may be used only if (a) efforts to subdue a threat by using alternative crowd measures, including pepper spray, as permitted by this paragraph, have been exhausted and ineffective and (b) SPD's Chief of Police has determined that use of tear gas is the only reasonable alternative available. The Chief of Police may only authorize limited and targeted use of tear gas and must direct it to those causing violent or potentially life-threatening activity.

Black Lives Matter – King County et al v. City of Seattle, Preliminary Injunction, Dkt. 42 at 2 (June 17, 2020).

In addition, HB 1054 would do the following:

- Ban chokeholds and neck restraints, which are already prohibited in Seattle, both by City ordinance, S.M.C. § 3.28.145, and SPD Manual, § 8.200(2).
- Ban vehicular pursuits, unless there is probable cause to believe the subject has committed or is committing a violent offense, a sex offense, has escaped from prison or other detention facility, or is driving under the influence. This provision is less restrictive than SPD's vehicular pursuits policy. *See* SPD Manual § 13.031.
- Explicitly ban "no-knock" search and arrest warrants. Because SPD adheres strictly to the "knock-and-announce" rule of RCW 10.31.040, SPD policy does not authorize officers to obtain or execute such warrants. *See generally* SPD Manual § 6.185

---

[10] Because SPD's policy does not authorize the use of tear gas or address it at all, that means tear gas can be used only if it is explicitly authorized by the Chief of Police, the person ultimately responsible for setting policy. *See* SPD Manual § 1.010(3); Seattle City Charter, Art. VI, Sec. 4.

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 7
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

- (addresses search warrants and does not authorize officers to apply for no-knock search warrants), § 6.280 (same as to arrest warrants).
- Prohibit acquiring or using military equipment.
- Direct the Washington Criminal Justice Training Commission to convene a work group to develop model policies for the training and deployment of canines. In addition, police departments are prohibited from acquiring or using military equipment.

While this law may bring important changes throughout the State, its effect on SPD operations will be limited. SPD already has greater or equal restrictions on the use of tear gas, chokeholds, neck restraints, vehicular pursuits, and "no-knock" search and arrest warrants.

The State Legislature also passed HB 1310,[11] which establishes detailed standards regarding when officers can use force. Governor Inslee has not taken action yet. It also sets forth specific factors that must be present to use deadly force, thus narrowing the state's existing deadly force statute and providing that deadly force can be used only during "an imminent threat of serious physical injury or death." HB 1310 will be implemented through model policies that are to be developed and published by the Attorney General by July 1, 2022; all law enforcement agencies must to conform their policies to the model policies by December 1, 2022. Until the Attorney General has developed and published the model policies, it would be premature for the City to advise the Court regarding the potential impacts of this legislation on SPD operations.

Another initiative that passed in Olympia and is awaiting signature is House Bill 1267.[12] It creates a new Office of Independent Investigations to investigate deadly use of force. If this bill becomes law, then this yet to be created body would begin investigating police officer uses of force

---

[11] Available at http://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/House%20Passed%20Legislature/1310-S2.PL.pdf?q=20210426112222

[12] Available at 1267-S.PL.pdf (wa.gov)

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 8
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

as soon as July of 2022. Within five years of the date it begins conducting investigations, the bill provides for a transition to civilian investigations. As with HB1310, many of the details and specifics remain to be seen.

Despite efforts by the City, including the Mayor, the City Attorney, and Councilmembers, the Legislature did not reform arbitration procedures in police disciplinary appeals. The City had proposed legislation that would have limited an arbitrator's decision to the record reviewed by the Chief, prohibited de novo review or the consideration of new evidence (with limited exceptions), required given deference to the Chief's findings, and instituted a preponderance of the evidence as the quantum of proof.  Unfortunately, the proposed legislation did not receive broad labor support.

**IV.     Quarterly data on police disciplinary investigations and appeals.**

Under the Court-approved Monitoring Plan, the City committed to submit data to the Court regarding disciplinary investigations and appeals. The City provides quarterly data on these topics below.

When it receives a complaint alleging that one or more officers have committed a serious policy violation, OPA opens a new investigation. The police union contracts require that OPA must complete its investigations within 180 days, with some exceptions. Between January 1, 2021, and March 31, 2021, OPA opened 170 new investigations. As of March 31, 2021, OPA had a total of 269 open investigations.

During the quarter, OPA completed 99 investigations. For each of these investigations, the OPA Director issued a memo with his conclusions and recommended findings to the Chief of Police. All OPA findings issued since 2016 are available on OPA's website.[13] If the evidence

---

[13] https://www.seattle.gov/opa/news-and-reports/closed-case-summaries

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 9
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

shows that a serious violation of SPD policy occurred, the OPA Director will recommend a "sustained" finding. If the evidence shows that misconduct did not occur, the Director will likely recommend a "not sustained" finding. Out of the 99 completed investigations, OPA recommended sustaining allegations in 22 of these cases (22%) against a total of 37 SPD employees. Six of the cases involved sustained use-of-force findings; one involved a sustained force reporting violation.

If the OPA Director recommends finding that an employee committed misconduct, then the Chief of Police decides whether to impose discipline and what the discipline should be. Examples of discipline include oral reprimand, written reprimand, demotion, reassignment, suspension from work (without pay), and termination. If the Chief decides not to follow one of the OPA Director's recommended findings, then the Chief must issue a public statement explaining the reasons. Thus far in 2021, the Chief has not overturned any of OPA's findings. Between January 1 and March 31, 2021, as a result of OPA's investigations, the Chief imposed discipline on 34 officers.[14] During this time, no disciplinary appeals were filed related to an OPA misconduct recommended finding.[15]

OPA has shown strong capabilities given the swell of protest related cases. It has resolved the majority of protest related complaints. There were over 19,000 contacts, resulting in 144 investigations. So far over 90 have been resolved.

---

[14] Because the Chief must review and contemplate disciplinary matters before reaching a decision, there is a time lag. Some of the cases in which the Chief imposed discipline in the first quarter were closed by OPA during late 2020.

[15] One appeal was filed by a parking enforcement officer to challenge discipline related to a complaint alleging illegal workplace discrimination (i.e., an "EEO" complaint).

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 10
(12-CV-01282-JLR)

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## V.     Less Lethal Weapons Draft Legislation

On June 15, 2020, the Seattle City Council enacted an ordinance banning the use of crowd control weapons by SPD. Dkt. 625-1. Upon DOJ's motion, the Court restrained the implementation of the Ordinance. Dkt. 630. The Court held that the Ordinance had not followed the required Consent Decree process for revising SPD's policies, and the Court also found a substantial likelihood that implementation of the ordinance would increase the risk of officers engaging in excessive force. *Id.* at 8. The temporary restraining order was later converted to a preliminary injunction by stipulated of the parties. Dkts. 647.

In response to the Court's ruling, the Public Safety and Human Services Committee of the City Council developed and voted to approve a draft bill that would amend the ordinance that the Court enjoined. The Public Safety Committee also voted to submit the draft bill to DOJ and the Monitor to as to enable conversations, seek feedback, and promote collaboration with respect to any concerns that they may raise. Aside from the Committee's approval of a draft bill for discussion purposes, no other formal legislative action has been taken and conversations are ongoing. Accordingly, it would be premature to brief the Court on the contents of the draft bill or submit the draft to the Court. The City will continue to keep the Court apprised of this matter.

## VI.    The Washington Court of Appeals ruled for the City, holding that the City does not have to reinstate former Officer Adley Shepherd.

The Washington State Division 1 Court of Appeals issued a decision on April 5, 2021, which upheld a Superior Court order vacating an arbitrator's decision to reinstate Officer Adley Shepherd.[16] Former Seattle Police Chief O'Toole had terminated Shepherd after he punched a

---

[16] Available at https://www.courts.wa.gov/opinions/pdf/804677.pdf

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 11
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

handcuffed suspect in the face while she was seated in the back of a patrol car, fracturing her skull. In 2018, after an arbitrator decided that Shepherd was entitled to less severe discipline and should be reinstated, the City made the decision to not reinstate him and, instead, to seek review in King County Superior Court. Under the Court of Appeal's ruling, the original termination decision from 2016 has been upheld, which means Adley Shepherd remains terminated.

## CONCLUSION

The parties and the Monitor continue to collaborate on carrying out the work set out in the Court-approved monitoring plan. SPD is undertaking a significant effort to update training on crowd management policy and tactics, in order to implement the community feedback and lessons learned from last year's protests. In addition, recent state legislative reforms on arbitrator selection mark a critical step forward in police accountability.

Respectfully submitted,

DATED this 30th day of April, 2021.

>For the CITY OF SEATTLE
>PETER S. HOLMES
>Seattle City Attorney
>
>*s/ Kerala T. Cowart*  \_\_\_\_
>Kerala T. Cowart, WSBA #53649
>
>Assistant City Attorney
>Seattle City Attorney's Office
>701 Fifth Avenue, Suite 2050
>Phone: (206) 733-9001
>Fax: (206) 684-8284
>Email: kerala.cowart@seattle.gov

**CITY OF SEATTLE'S APRIL 2021 QUARTERLY ACCOUNTABILITY UPDATE** - 12
(12-CV-01282-JLR)

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200