THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY OF SEATTLE,

Defendant.

No. 2:12-cv-01282-JLR

**MEMORANDUM ON STATUS OF
CONSENT DECREE IMPLEMENTATION**

A primary role of the Monitoring Team is to advise the United States District Court for the Western District of Washington on the progress of the City of Seattle ("the City") on meeting the requirements of the federal consent decree involving the Seattle Police Department ("SPD" or "the Department"). To accomplish this, the Monitoring Team, in collaboration with the United States Department of Justice and Seattle accountability partners, developed a 2021 Monitoring Plan.[1]

---

[1]This memorandum summarizes some elements of, and incorporates some language contained in, the Monitoring Team's 2021 Monitoring Plan. For the sake of readability, this memorandum does not individually cite every instance of summary or incorporation.

**MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 1**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

1
2
3
4

The purpose of this filing is to brief the Court, City stakeholders, and the Seattle community on progress in 2021 and actions to be taken in 2022 to evaluate the status of Seattle's compliance with the Consent Decree, improve accountability, foster innovation, cultivate enhanced risk management, and support Seattle's efforts to reimagine public safety.

5

## I.      EVALUATING THE STATUS OF COMPLIANCE

6
7
8
9
10
11

To evaluate the status of compliance with the Consent Decree, the Monitoring Team nearly completed comprehensive assessments of SPD that address use of force, crisis intervention, stops and detentions, and supervision.   The purpose of these assessments is to provide updated information to the Court and community about SPD's performance across the core areas of the Consent Decree since 2018, when the prior Monitoring Team last certified similar, comprehensive overview of SPD's progress.

12
13
14
15
16
17

As a next step, the Monitor will be collaborating with the Seattle Community Police Commission to convene a series of Community Engagement Sessions around the completed comprehensive assessments of the Seattle Police.   The goal of the Community Engagement Sessions is to inform the public on overall progress of the Consent Decree, communicate results of the assessments, and gain insights and ideas directly from the community on progress needed in 2022 to work toward compliance and closure of the Consent Decree effectively and legitimately.

18
19
20
21

The Monitor and the Community Police Commission will conduct three Community Engagement Sessions – each dedicated to one assessment area of Crisis Intervention, Stops and Detentions, and Use of Force – along with corresponding assessment of Supervision relative to each.

22
23

**MEMORANDUM ON STATUS OF CONSENT DECREE IMPLEMENTATION - 2**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

Community Engagement Sessions include:

1. **Crisis Intervention: January 11, 2022.**  The Monitoring Team will report on SPD's capacity to respond to a person in crisis as well as statistics related to SPD's crisis intervention response, including the frequency of crisis response and the outcomes of these events.  The Team will also discuss data and trends related to officer training, the frequency of use of force in crisis situations, and misconduct allegations related to crisis intervention.

2. **Stops and Detentions: February 8, 2022.**  The assessment of stops and detentions will include statistical analysis of SPD stop trends overall, and broken out by demographics, over time.  The Community Engagement Session will summarize statistics regarding the frequency of frisks and how often frisks result in the discovery of weapons.  It will consider how the Department is assessing its own stop practices, and how supervises are overseeing such practices, to assess SPD's compliance with Constitutional requirements pertaining to stops and frisks.

3. **Use of Force: March 8, 2022.**  The Monitoring Team will update the public on statistics related to SPD's use of force practices, both overall and specifically related to protests in 2020.  It will discuss SPD's use of force review and investigation systems and statistics on misconduct allegations related to use of force.  The Monitoring Team also anticipates providing an overview of how the City and SPD have responded to issues with SPD's handling of protests in the wake of the murder of George Floyd.

**MEMORANDUM ON STATUS OF CONSENT DECREE IMPLEMENTATION - 3**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

The Monitoring Team's analysis of supervision, while embedded in the three areas noted above, independently assesses the rigor of SPD's supervision of patrol officers.  This analysis is critical in ensuring that SPD is effective and efficient in its operations and in improving the capabilities and wellness of officers. It considers, for instance, how many supervisors SPD employs, number of patrol officers with consistent and appropriate supervision, and the quality of supervision.   In addition, the Monitoring Team is considering how proactively supervisors intervene to manage risk as well help patrol officers improve their skills through mentorship and enhanced training.  This area also considers how well the Early Intervention System is performing and areas for development.

During these upcoming Community Engagement Sessions, as well as asynchronously through the Monitor website, community input and ideas will be generated in three categories:

- Based on this assessment data and insights, what ideas on policy and practices, systems, measures, and/or general innovations and change do you have to improve policing services for the City of Seattle?

- Based on this assessment data and insights, what new policies, research, and/or general innovations should the Seattle Community Policing Commission pursue in 2022?

- Based on this assessment data and insights, what policy and practice areas, if any, should the Federal Monitor oversee implementation on in 2022?

Upon completion of the Community Engagement Sessions, ideas from the community will help to inform the Monitoring Team's analysis of the data and to help determine action items in 2022 for the City and federal oversight.

**MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 4**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

II.     **IMPROVING ACCOUNTABILITY**

Accountability is core to public trust and legitimacy in policing, as it links the expectations of community with the governance, decisions, actions, and results of the police department.  As the Monitoring Team has previously outlined, the Consent Decree process provides an opportunity to assess and improve accountability, and the Monitoring Plan focuses on two focal points of systemic accountability: back-end accountability and front-end accountability.

A.  **Back-End Accountability**

The first type of accountability involves how and whether officer misconduct is addressed – that is, whether there are appropriate outcomes when officers fail to follow SPD policy or the law.  On this front, the Monitor, Parties, and Court all receive regular updates on the City's efforts in the areas of misconduct and discipline, including the City's ongoing collective bargaining with the Seattle Police Officers Guild on the terms of a new contract. In addition, members of the Monitoring Team are working closely with the Washington State legislature to track changes to law and inform implications for policing in Seattle.

Regarding collective bargaining and accountability, progress is being made on both the Seattle Police Management Association ("SPMA") and Seattle Police Officers Guild (SPOG) contracts.  Specifically, the City and SPMA are working with a Mediator assigned by the Washington Public Employment Relations Commission on a successor contract.  The City and SPMA have had several mediation sessions in the last few months and have two more scheduled in December.  They are working collaboratively to reach agreement on a successor contract.  Both parties are making good progress and anticipate that a tentative agreement could be reached shortly after the first of the year.  During the negotiations, the Monitoring Team understands that the City

MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 5
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

1   and SPMA have spent a significant amount of time and effort exploring innovative approaches to

2   handling discipline appeals, seeking to address accountability concerns that have been raised about

3   the current discipline appeals process.

4     With respect to SPOG, the City's Labor Relations Policy Committee ("LRPC") has reached

5   agreement on the operational and accountability parameters for SPOG bargaining.  During the

6   parameter setting process, the LRPC received substantial input from the Inspector General for

7   Public Safety, the OPA Director, and a representative appointed by the CPC.  The Monitoring

8   Team understands that the City's bargaining team is working to prepare opening proposals that

9   reflect these parameters.  The City anticipates that negotiations will begin after the first of the year.

10   **B.  Front-End Accountability**

11     The second type of accountability at the heart of the Consent Decree involves ensuring that

12   officer performance is aligned with community needs and expectations *before* anything goes

13   wrong.  This type of accountability focuses on establishing clear, transparent expectations aligned

14   with public input and priorities that officers follow.  For example, in 2021 SPD joined the Active

15   Bystandership for Law Enforcement ("ABLE") Project.  That initiative aims to "prepare officers

16   to successfully intervene to prevent harm," avoid misconduct, "and to create a law enforcement

17   culture that supports peer intervention."  Georgetown Innovative Policing Program, *Active*

18   *Bystandership for Law Enforcement (ABLE) Project*,

19   https://www.law.georgetown.edu/innovative-policing-program/active-bystandership-for-law-

20   enforcement/ (last visited Dec. 15, 2021).  ABLE's purpose is to empower officers with the tools

21   necessary to step into situations involving peers to prevent harm, stop misconduct, and avoid bad

22   outcomes. To date, 951 sworn personnel have completed the ABLE training, with 46 additional

23

1  registered for the remaining courses, 21 who have not yet registered, and 66 personnel that have

2  not taken the course but are out on long-term leave and expected to retire.

3  ### C.  2020 Protests and Demonstrations

4  As a distinct area of accountability, the Monitor and the United States Department of

5  Justice ("DOJ") will conduct an in-depth examination of SPD's force used at protests and

6  demonstrations in 2020 and make findings regarding compliance with the Consent Decree

7  requirements related to use of force, use of force reporting, investigation and review, and

8  constitutional policing generally.  In early 2021, SPD engaged in a process of revising and updating

9  its policies and procedures regarding use of force and crowd management.  During the remainder

10  of 2021, SPD and other City stakeholders – including the Community Police Commission

11  ("CPC"), OPA, and OIG – have been working to determine what changes, revisions, or

12  improvements should be made to Seattle's policies relating to the use of force in crowd situations

13  and the operational management of protests and circumstances involving large numbers of people.

14  The Monitoring Plan required that the City engage in "a comprehensive, affirmative, intensive

15  initiative to obtain community input regarding [SPD's] Crowd Management Policies."

16  On November 2, 2021, SPD requested technical assistance from DOJ and the Monitoring

17  Team in reconciling the terms of City Ordinance 126422 into SPD policy. The DOJ, on December

18  13, 202 subsequently declined technical assistance, citing its role, as a party to the Settlement

19  Agreement, is not to create and propose new policies.

20  The Monitoring Team is in a different position than the DOJ in that the Consent Decree

21  does specifically contemplate a role for the Monitoring Team in providing technical assistance,

22  where requested, in matters of policy and training.

23

**MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 7**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

However, for multiple reasons, the Monitoring Team also declined to provide the requested technical assistance for the following reasons.  First, at this point, there appears to be limited meaningful opportunity for the Monitor's engagement.  The process of drafting policy is not a "technical exercise" of memorializing terms, but an iterative process whereby terms are typically memorialized after discussion and resolution of practical and legal considerations, among others.  It is at that discussion stage in the process where the Monitoring Team has, in past practice, provided SPD with technical assistance.  In this case, where fixed terms have been legislatively prescribed, the Monitoring Team sees little avenue to provide technical assistance in a manner that would not require changes to the terms of the Ordinance itself.

Second, it is a grounding principle of the Consent Decree that policy be based upon, and evolve with, best practices.  In approving SPD's Crowd Management and Use of Force policies earlier this year, the Monitoring Team agreed that the interim policy revisions – many of which reflected lessons learned over the course of 2020 and as informed through discussion with national and international experts – were current and consistent with best practices.

Separately, OPA's ongoing Sentinel Event Review ("SER") process focusing on the also promises to provide SPD with specific, actionable recommendations and issues that it might address to further improve its approach to managing crowds and using force within crowd contexts. The Monitoring Team has continued to participate in the SER process as observers and, to date, is encouraged by the rigor, candor, and thoughtfulness that the process has so far entailed.

It is the Monitor's hope that the new year may bring a new chapter in the ability of core City stakeholders to connect multiple work streams and collaborate on developing optimal policy and process for crowd and protest management. Thus, in 2022, the Monitoring Team will be

MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 8
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

designing a process to ensure that the City uses all appropriate mechanisms as possible to engage all of Seattle's many communities in a substantive process that achieves lawful and equitable policy and practice.

## III.   ADVISING ON INNOVATION & RISK MANAGEMENT

The Consent Decree does not prevent SPD from continuing to innovate and identify areas where it should make additional progress so long as those efforts are not inconsistent with the Decree's basic requirements.  The Monitoring Team and Parties have been engaged with SPD with respect to several the Department's innovation and risk management initiatives including:

- **Officer Wellness Initiative.**  Police officers can encounter a high degree of trauma and stress on a day-to-day basis, which over time can affect job performance and overall personal health and wellness.  The Monitoring Team recognizes that officer wellness is integral to not only job performance, but also for enabling innovation and change from all levels of the Seattle Police Department.  To date, SPD has established and operationalized a Peer Support Team, a Mentoring Program, an app for peer support and mental health information, a Smart Dollar Financial program, a Vet Corp program, and an app-based health and fitness program. The work streams of the Monitoring Plan factor officer wellness into account as a foundation for effective transformation.

- **Early Intervention System ("EIS").**  Leading organizations across industries and sectors are building systems which can improve performance and minimize risk by understanding the factors that lead to positive and negative outcomes.  The Monitoring Team is working with SPD to advance an EIS that not only helps individual officers and supervisors understand root cause of outcomes, but also informs the organization

MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 9
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

on how structures, systems, and processes can be modified to improve enterprise-wide outcomes.  To facilitate development, the system is being moved to the cloud and SPD is working with Accenture Data Science resources to enhance the quality of EIS predictions before they are put into production.  The projected completion of this refinement is first quarter of 2022.

- **Performance Monitoring.**  Beginning in January, the Department will be among the first in the nation to use a metric other than the crime rate to manage police performance.  Equity Accountability and Quality ("EAQ") is a program designed to focus continuous improvement on an agile cadence.  Much like the CompStat program, commanders and eventually managers and supervisors will engage in a discussion of trends and patterns in observable disparity, accountability for police resources (measure of over and under policing) and service quality.

- **Correlation One Collaboration.**  Through this novel collaboration, Correlation One, an organization that provides free data and analytics training programs for underrepresented and diverse students, worked with the monitoring team, SPD, and OIG to have cohorts of students develop a problem statement and methodology for gaining insights via SPD data.  *See* Correlation-One, https://www.correlation-one.com/ (last visited Dec. 15, 2021).  The cohort capstone projects helped not only educate aspiring data analysts on real-world issues, but also provide SPD and the Monitoring Team with real-time insights on the performance of policing.  Nine Correlation One teams finished their projects in August of 2021.  Among the findings, the City is looking to adopt one of the project's products, a community Sentiment Analysis from

multiple local newspapers and periodicals in different languages. In addition, institutional learning for SPD and OIG, in particular, was that community is interested in understanding Use of Force and Crisis Intervention, that there is an area of opportunity in improving accessibility to data dictionaries for all public dashboards, and that SPD and OIG have a gap in use of technology for learning and understanding community sentiment.

## IV.    SUPPORTING RE-IMAGINING PUBLIC SAFETY

The Consent Decree does not prevent the City from exploring new and different ways of providing for public safety and community well-being so long as those efforts are not inconsistent with the minimum requirements to which the City previously agreed in the Decree.  The Monitoring Team, Parties, and City stakeholders continue to engage in regular, active discussions about the City of Seattle's efforts to develop new solutions for community challenges and issues. The purpose of this continuing dialogue is to ensure that any new initiatives do not compromise the ability of the City and SPD to comply with the terms of the Consent Decree.

The City, under the leadership of Mayor Durkan, has worked to launch the following alternatives to a sworn response including:

- **Health One.**   The City of Seattle has been committed to investing in alternatives to police response including the successful Health One program. Launched in 2019, it is designed to respond to individuals immediately in their moment of need and help them navigate the situation - whether they need medical care, crisis intervention, shelter or other social services. Health One is a multi-disciplinary

MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 11
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

team, with specially-trained firefighters and social work case managers, each bringing unique skills and approaches to the scene.

In April of 2021, the City added a second Health One unit to service additional neighborhoods. In addition to urgent care, referral and transport, resources utilized by the program include primary care, next-day appointments, connection with behavioral health organizations, referral to city-contracted homeless outreach providers and shelters, short-term case management within the SFD/HSD Mobile Integrated Health High Utilizer and Vulnerable Adult programs, and more. In addition to standard emergency medical services equipment, the vehicle is also equipped with outreach supplies including food, beverages, and clothing for unsheltered clients.

- **Community Service Officers.** Housed in the Seattle Police Department – but comprised of non-sworn individuals – is the City's Community Service Officer program. CSO's are civilian employees who help residents and businesses involved in non-criminal calls navigate services, engage with communities and neighborhoods, and support programming for at-risk youth. The City's 2022 budget expands this program, adding 6 new positions to help address community concerns and public safety incidents that do not require a sworn police response.

- **Triage Team.** Building off of the successful Health One model, the Seattle is also creating a new "triage team," a rapid-response unit that is designed to help provide an initial/high level assessments of individuals experiencing various crisis, with an

MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 12
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

understanding of the varied community resources available to support such individuals.

- **Community Safety and Communications Center.** As part of the City's efforts to improve community safety, the Community Safety and Communications Center was established in May of 2021 to allow dispatchers to play a larger role in the routing of emergency calls. Separately, Washington State has passed a law establishing a 9-8-8 call line for behavioral health crises. Washington State Hospital Association, "Washington Passes Law Establishing Call Line for Behavioral Health Crises and Plans Redesign of Crisis Behavioral Health System" (Sept. 9, 2021), https://www.wsha.org/articles/washington-passes-law-establishing-9-8-8-call-line-for-behavioral-health-crises-and-plans-redesign-of-crisis-behavioral-health-system/.

- **Violence Prevention Initiatives.** In 2021, the City of Seattle created a new division within the Seattle Human Services Department (HSD) called Safe and Thriving Communities ("STC"). STC consolidates HSD's safety investments in prevention of gun violence, domestic violence and sexual assault, and initiatives that help young people harmed by the criminal legal system. Key strategies include initiatives related to diversion, street outreach, safety hubs, addressing hate crime, regional safety initiatives, intervention, diversion.

## V.   ASSESSING OVERALL COMPLIANCE

The past year has continued to present significant challenges to the City of Seattle, the Police Department, and the Seattle community. Even amidst those circumstances, and as the

MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 13
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

summary of activities above emphasizes, SPD and the City have been actively addressing mechanisms for advancing just, safe, effective, and constitutional public safety services in Seattle.

These activities, and the Monitoring Team's assessment activities, are geared toward determining precisely where, overall, SPD stands in relation to ultimate compliance with the Consent Decree.  To this end, the Decree provides no specific formula regarding the precise point at which deficient performance is indicative of a "pattern or practice."  Instead, the Decree expressly contemplates a balancing of factors.  Specifically, "[n]on compliance with mere technicalities, or temporary or isolated failure to comply during a period of otherwise sustained compliance, will not constitute failure to maintain full and effective compliance." Dkt. 3-1 ¶ 184.  Likewise, "temporary compliance during a period of otherwise sustained noncompliance will not constitute full and effective compliance." *Id.*  As the prior Monitoring Team articulated, and the Court endorsed, "compliance with provisions of the Consent Decree depends not just on the number or percent of instances where SPD is adhering to requirements but also on the quality or nature of those instances where SPD is falling short." Dkt. 231 at 6.

Consequently, in evaluating all of the evidence to determine SPD's overall status with respect to Consent Decree compliance, the Monitoring Team will seek to balance:

- The Department and its officers' performance during a material span of time, number of incidents or encounters, and number of officers;

- The Department's trends with respect to its aggregate performance over time, including comparisons of more-recent material spans of time with prior, similar spans;

- The severity or significance of a performance or incident that deviates from policy, law, or Consent Decree requirements; and

**MEMORANDUM ON STATUS OF CONSENT DECREE IMPLEMENTATION - 14**
12-CV-01282-JLR.

**ANTONIO M. OFTELIE, MONITOR**
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

- The extent to which SPD and/or its accountability partners appropriately identify performance contrary to law, expectations, or Consent Decree requirements and take appropriate remedial action that is consistent with the significance and severity of the identified performance deficiency.

In early 2022, and directly after the Community Engagement Sessions, the Monitor will file its Compliance Status Report with the Court. The report will present the Court and community with the finalized, up-to-date information and data as to SPD's current performance (which will be the subject of the community engagement process outlined above) and status with complying with the Consent Decree. The Monitor looks forward to working with the incoming Harrell Administration to further compliance and closure of the Consent Decree.

DATED this 23rd day of December, 2021.

*/s/ Antonio M. Oftelie*

Dr. ANTONIO M. OFTELIE
Monitor
65 Nicollet Mall Suite 1812
Minneapolis, MN 55401
Phone: (617) 909-4173
Email: antonio.oftelie@seattlepolicemonitor.org

**MEMORANDUM ON STATUS OF CONSENT DECREE
IMPLEMENTATION - 15**
12-CV-01282-JLR.

ANTONIO M. OFTELIE, MONITOR
465 Nicollet Mall Suite 1812
Minneapolis, MN 55401
(617) 909-4173

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian T. Moran | bmoran@usdoj.gov |
| Christina Fogg | christina.fogg@usdoj.gov |
| Matt Waldrop | james.waldrop@usdoj.gov |
| Kerry Jane Keefe | kerry.keefe@usdoj.gov |
| Peter Samuel Holmes | peter.holmes@seattle.gov |
| Jeff Murray | jeff.murray@usdoj.gov |
| Ronald R. Ward | ron@wardsmithlaw.com |
| Timothy D. Mygatt | timothy.mygatt@usdoj.gov |
| Hillary H. McClure | hillarym@vjmlaw.com |
| David A. Perez | dperez@perkinscoie.com |
| Anna Thompson | annathompson@perkinscoie.com |
| Kristina M. Detwiler | kdetwiler@unionattorneysnw.com |
| Bruce E.H. Johnson | brucejohnson@dwt.com |
| Eric M. Stahl | ericstahl@dwt.com |

Dated this 23th day of December, 2021.

/s/  Matthew Barge
Matthew Barge
Monitoring Team
Email: matthew.barge@seattlemonitor.org