EXHIBIT A

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1

2        **CITY OF SEATTLE**

         **ORDINANCE** <u>126628</u>

3        COUNCIL BILL <u>120337</u>

4

5    AN ORDINANCE relating to civilian and community oversight of the police; establishing a
6            process for investigating complaints naming the Chief of Police; adding a new subchapter
7            V to Chapter 3.29 of the Seattle Municipal Code; and amending Section 49 of Ordinance
8            125315 to renumber the existing Subchapter V of Chapter 3.29 and Sections 3.29.500 and
9            3.29.510 of the Seattle Municipal Code.

10

11

12   WHEREAS, The City of Seattle's accountability system established in Ordinance 125315 (the

13          "Accountability Ordinance") with a civilian-led misconduct investigations unit, an

14          independent police inspector general for public safety, and a strong community-based

15          oversight commission, has strengths not found in other models of oversight, and

16          addresses systemic weaknesses with which other systems have struggled; and

17   WHEREAS, the goals of Ordinance 125315 are to institute a comprehensive and lasting police

18          oversight system that ensures police services are delivered to the people of Seattle in a

19          manner that fully complies with the Constitution and laws of the United States and State

20          of Washington, effectively ensures public and officer safety, and promotes public

21          confidence in the Seattle Police Department (SPD) and the services that it delivers; and

22   WHEREAS, Ordinance 125315 establishes the role of the Office of the Inspector General (OIG)

23          as encompassing: (1) the review of misconduct complaint-handling, investigations, and

24          other activities performed by the Office of Police Accountability (OPA) and the

25          effectiveness, accessibility, timeliness, transparency, and responsiveness of the complaint

26          system; and (2) audit and review for any areas that may involve potential conflicts of

27          interest; involve possible fraud, waste, abuse, inefficiency, or ineffectiveness; undermine

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1    accountability or be unethical; or otherwise compromise the public's trust in the criminal

2    justice system; and

3    WHEREAS, a lasting police oversight system that ensures police services are delivered to the

4    people of Seattle benefits from an ongoing practice of re-examining and improving

5    processes, particularly after the occurrence of a significant event that becomes a catalyst

6    for system change or adaptation; and

7    WHEREAS, such an event occurred when three Office of Police Accountability (OPA)

8    complaints were filed in 2020 against the Chief of the Seattle Police Department, and the

9    complaints were logged by OPA as follows: (1) OPA 2020-0345 (tear gas used after 30

10   day ban); (2) OPA 2020-0355 (sharing misinformation about crime in CHAZ/CHOP);

11   and (3) OPA 2020-0476 (Chief was dishonest about dispatch error during CHOP

12   shooting); and

13   WHEREAS, with respect to those three complaints, the OPA Director requested over 18 months

14   ago that then-Mayor Durkan forward the complaints for investigation to an agency

15   external to The City of Seattle but they were not thus forwarded until Mayor Harrell took

16   office; and

17   WHEREAS, the OPA Policy Manual ("OPA Manual") identifies a process for determining

18   whether OPA or an outside agency would investigate the Chief of Police, but that manual

19   is subject to change and a strong police accountability system requires a standard,

20   codified process for making such determination; and

21   WHEREAS, OPA's current procedures do not provide for notification of elected officials upon

22   commencement of an investigation or for an evaluation of OPA's analysis of the

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1    credibility of the complaint, as should be conducted by an independent oversight entity

2    such as the Office of the Inspector General for Public Safety (OIG); and

3  WHEREAS, all sworn SPD staff are within the chain of command of the Chief of Police, and the

4    involvement of such staff in any investigation of a complaint that names the Chief of

5    Police creates in some cases an actual conflict of interest and potentially in all cases a

6    perceived conflict of interest; and

7  WHEREAS, any investigation of a complaint that names the Chief of Police that may result in a

8    criminal charge or charges poses a conflict of interest and should be referred to an outside

9    investigator; and

10  WHEREAS, the Seattle Department of Human Resources houses the City of Seattle's

11    Investigations Unit, which investigates complaints and alleged violations of applicable

12    City Personnel Rules and/or related policies, including allegations of harassment,

13    discrimination, and misconduct such as those that are prohibited under local, state, and

14    federal anti-discrimination laws; and

15  WHEREAS, the Accountability Ordinance did not contemplate the processes necessary to ensure

16    that a City-led investigation of the Chief of Police is fair, transparent, and free of any

17    potential conflicts of interest; and

18  WHEREAS, although the OPA Manual establishes a process and structure for complaint review

19    that is consistent with the relevant collective bargaining agreements, investigation into

20    the Chief of Police is not governed by a collective bargaining agreement thus that process

21    and structure are inapplicable; and

22  WHEREAS, for any City employee who is named in a complaint to OPA and is governed by a

23    collective bargaining agreement, all provisions of that agreement remain in force.

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1   NOW, THEREFORE,

2   **BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:**

3   Section 1. A new Subchapter V, which includes new Sections 3.29.500, 3.29.510,

4   3.29.520, 3.29.530, 3.29.540, 3.29.550, 3.29.560, 3.29.570, and 3.29.580, is added to Chapter

5   3.29 of the Seattle Municipal Code as follows:

6   **Subchapter V Investigation of the Chief of Police**

7   **3.29.500 Definitions**

8   As used in this Subchapter V:

9   "Contact log" means the term as it is defined in the OPA Manual. "Contact log" includes

10  circumstances when: (a) the complaint does not involve a potential policy violation by an SPD

11  employee; (b) there is insufficient information to proceed with further inquiry; (c) the complaint

12  has already been reviewed or adjudicated by OPA and/or OIG; or (d) the complaint presents fact

13  patterns that are clearly implausible or incredible, and there are no indicia of other potential

14  misconduct.

15  "Intake" means the receipt and evaluation of a complaint to determine whether an

16  investigation is warranted.

17  "Investigative plan," when used to describe a document, means a document that aims to

18  specify and direct, as required, the investigative aims and objectives, for which purpose it may be

19  continually updated until such time as the investigation is closed.

20  "Non-City entity" means an entity other than The City of Seattle.

21  **3.29.510 OPA intake, classification, and investigation scoping**

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1        A. If the Chief of Police is named in a complaint, the initial screening process shall

2  include the immediate creation of a case file and the immediate notification of the OPA Director

3  or the OPA Director's appointed designee.

4        B. If the Chief of Police is named in a complaint, OPA shall notify OIG as soon as is

5  practicable, but within 30 calendar days. OIG will ensure that OPA is pursuing its investigation

6  without unnecessary delay. In the event that OIG determines that unnecessary delay is occurring,

7  OIG shall promptly notify the President of the City Council, the Chair of the Council's public

8  safety committee, and the complainant. Notification shall consist of: (1) the nature of the

9  complaint, (2) the date the complaint was received, and (3) an explanation of why OIG has

10  determined that unnecessary delay is occurring.

11        C. A civilian investigator supervisor shall be assigned to complete the intake of the

12  complaint, which shall consist of a thorough examination of the complaint and available

13  information to determine whether an investigation should be conducted. This examination shall

14  be designed to answer relevant factual questions and ensure the collection and preservation of

15  time-sensitive evidence and, when possible, it will include an interview with the complainant.

16        D. OPA shall consult with OIG when examining a complaint, with the goals of

17  determining (1) whether any laws or SPD policies would have been violated if the alleged

18  actions are later proven to be true; and (2) whether criminal charges could result if the alleged

19  actions are later proven to be true. This examination shall result in OPA's classification of the

20  complaint for investigation, or as a contact log, as appropriate.

21        E.  If the OPA Director determines, upon conclusion of the examination, that

22  investigation is appropriate, they will determine:

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1        1. Whether OPA, the Seattle Department of Human Resources (SDHR), or a non-

2    City entity under subsection 3.29.540.C will perform the investigation. In making this

3    determination OPA shall consider and document whether there are any conflicts of interest, real

4    or potentially perceived, that could undermine the public trust if the investigation is conducted

5    by OPA or SDHR; and

6        2. Whether the investigation could result in a finding of a violation or violations

7    of local, state, or federal anti-discrimination laws and/or any applicable City and/or SPD policies

8    that prohibit harassment and/or discrimination.

9        F. If the OPA Director or a designee of the Director determines that the intake warrants

10    an investigation, then the Director or designee shall work with the assigned civilian investigator

11    supervisor to prepare an investigative plan that includes, at a minimum, information that will be

12    necessary in the case that OIG must issue a request for proposal for an investigation by a non-

13    City entity.

14    **3.29.520 OIG review**

15        A. OIG shall conduct a review of OPA's intake investigation and classification to ensure

16    that (1) the intake investigation was timely, thorough, and neutral, and (2) OIG concurs with the

17    classification determination.

18        B. If OIG does not concur with OPA's classification determination, the OIG

19    determination shall prevail and shall be considered definitive for the complaint.

20        C. If investigation is appropriate, OIG shall review the OPA recommendation on whether

21    that investigation should be (1) conducted by either OPA or SDHR; or (2) conducted by a non-

22    City entity under subsection 3.29.540.C. OIG shall then determine whether it concurs with

23    OPA's recommendations. In making this determination, OIG shall consider the factors in

*Template last revised December 2, 2021*                6

1   subsection 3.29.510.E.1.  If OIG and OPA do not concur, the OIG determination shall prevail

2   and shall be considered definitive for the complaint.

3       D. If OIG determines, either solely or with the concurrence of OPA, that the complaint

4   warrants investigation, OIG shall provide notice of the complaint to the Chief of Police as soon

5   as is practicable. Such notice shall consist of the basis of the complaint that named the Chief.

6       E. If OPA has determined the investigation could result in a finding of a violation or

7   violations of local, state, or federal anti-discrimination laws and/or any applicable City and/or

8   SPD policies that prohibit harassment and/or discrimination, then OIG shall review the OPA

9   recommendation on whether the investigation should be conducted by SDHR or by a non-City

10  entity under subsection 3.29.540.C. OIG shall then determine whether it concurs with OPA's

11  recommendations. In making this determination, OIG shall consider the factors in subsection

12  3.29.510.E.1. If OIG and OPA do not concur, the OIG determination shall prevail and shall be

13  considered definitive for the complaint.

14      F. Where OIG has determined, either solely or with the concurrence of OPA, that a non-

15  City entity under subsection 3.29.540.C should conduct the investigation, OIG shall consult with

16  OPA to (1) discuss which of these two agencies should manage the contract for that entity's

17  work and (2) identify one or more candidate entities to conduct the investigation. However,

18  following this consultation OIG shall solely make decisions about (1) whether the investigation

19  contract should be managed by OPA or OIG and (2) which non-City entity under subsection

20  3.29.540.C should conduct the investigation.

21      G. If OIG believes that criminal charges could result from the investigation, then it shall

22  consult with OPA and identify which non-City entity under subsection 3.29.540.C would be

23  most appropriate for the investigation. However, following this consultation OIG shall solely

1   make decisions about (1) whether the investigation should be managed by OPA or OIG and (2)

2   which non-City entity under subsection 3.29.540.C should conduct the investigation. If OIG and

3   OPA do not concur, the OIG determination shall prevail and shall be considered definitive for

4   the complaint.

5   **3.29.530 Notification and reporting**

6        A. Where the classification determination is a contact log, OIG shall include the finding

7   in its annual report required under Subchapter II of this Chapter 3.29.  No other notification or

8   reporting is required.

9        B. When an investigation will be:

10        1. Conducted by OPA or SDHR, OIG shall immediately notify the Mayor, the

11  President of the City Council, the Chair of the Council's public safety committee, the Executive

12  Director and Co-Chairs of the Community Police Commission, the City Attorney, the City

13  Director of Human Resources, and the complainant. Notification shall consist of: (1) the

14  classification type; (2) whether OPA or SDHR will conduct the investigation; and (3) the

15  rationale for the determination as supported by the factors in subsection 3.29.510.E.1.

16        2. Conducted by a non-City entity, OIG shall immediately notify the entities listed

17  in subsection 3.29.530.B.1. Notification by OIG pursuant to subsection 3.29.530.B.2 shall

18  consist of: (1) the classification type; (2) the non-City entity by whom OIG has determined,

19  either solely or with the concurrence of OPA, that the investigation be conducted; and (3) the

20  rationale for the determination as supported by the factors in subsections 3.29.510.E.1 and

21  3.29.510.E.2.

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1      C. Notification pursuant to this Section 3.29.530 shall include no more information than

2   would otherwise be available to the public on the OPA website, so as not to compromise the

3   integrity of the investigation.

4   **3.29.540 Assigning the investigation**

5      A. Any investigation conducted by OPA shall be conducted exclusively by civilian

6   personnel. If OIG, either solely or with the concurrence of OPA, has determined that an

7   investigation should be conducted by OPA and OPA is unable to commit that it will be

8   conducted exclusively by civilian personnel, then the investigation shall be reassigned to a non-

9   City entity under subsection 3.29.540.C.

10      B. If the investigation could result in findings of a violation or violations of local, state,

11   or federal anti-discrimination laws and/or any applicable City and/or SPD policies that prohibit

12   harassment and/or discrimination and OIG has determined, either solely or with the concurrence

13   of OPA, that it should be conducted by SDHR, then SDHR shall have the opportunity to decline.

14   In this case, OIG shall consult with OPA to (1) discuss which of these two agencies should

15   manage the contract for the investigation to be conducted by a non-City entity under subsection

16   3.29.540.C and (2) identify one or more candidate entities to conduct the investigation. However,

17   following this consultation OIG shall solely make decisions about (1) whether the investigation

18   contract should be managed by OPA or OIG and (2) which non-City entity should conduct the

19   investigation.

20      C. Investigation of a suspected violation of law will be referred to a non-Seattle law

21   enforcement agency. A non-City entity conducting an investigation of any other non-criminal

22   violations that name the Chief will not be a law enforcement agency.

D. If criminal charges could result from an investigation, OIG shall seek to consult with OPA and will identify an appropriate and qualified outside law enforcement agency to conduct the investigation. Care will be taken to select an agency that has particular expertise and a reputation for trust and transparency.

**3.29.550 Investigation**

A. The Chief shall fully cooperate with any investigation.  When necessary, the Inspector General for Public Safety or OPA Director may issue on behalf of an OPA investigation, or an investigation conducted by a non-City entity, a subpoena consistent with Section 3.29.125 and Ordinance 126264.

B. Where the investigation is conducted by OPA, the investigation shall follow the policies and procedures identified in the OPA Manual and accord with any relevant collective bargaining agreements as they may relate to employees other than the Chief. With regard to investigative findings related to the Chief: (1) no range of recommended discipline will be developed; and (2) the investigation file shall not be presented to the Chief.

C. Where the investigation is conducted by SDHR, the investigation shall be conducted consistent with that unit's standards and practices.

**3.29.560 OIG review of the intake investigation, classification, and investigation**

A. OIG shall immediately notify the entities listed in subsection 3.29.530.B.1 if it: (1) is unable to determine whether the OPA intake was timely, thorough, and neutral; or (2) disagrees with the OPA Director's classification decision.

B. OIG shall conduct a review of any completed investigation, consistent with the requirements of Section 3.29.260, to determine whether the investigation was timely, thorough, and neutral.

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1      C. To determine whether any completed investigation was timely, thorough, and neutral,

2      OIG shall retain the authority to access any investigative materials that will support making the

3      determination.

4      D. OIG shall immediately notify the entities listed in subsection 3.29.530.B.1 if it is

5      unable to determine whether an investigation was timely, thorough, and neutral or if it

6      determines that an investigation was not timely, thorough, and neutral. In such case, OIG shall

7      choose a new non-City entity to perform a new investigation.

8      **3.29.570 Transmittal of investigative results**

9      A. For any investigation completed by OPA, upon determination by OIG that the

10     investigation was timely, thorough, and neutral, OPA will transmit the investigation file and

11     findings to the Mayor.

12     B. For any investigation completed by SDHR, upon determination by OIG that the

13     investigation was timely, thorough, and neutral, OIG will transmit the investigation and findings,

14     as determined by SDHR, to the Mayor.

15     C. For any investigation conducted by a non-City entity, upon determination by OIG that

16     the investigation was timely, thorough, and neutral, OIG will transmit the investigation and

17     findings, as determined by the non-City entity, to the Mayor.

18     **3.29.580 Notification of investigative results**

19     Within 30 calendar days of receiving the results of the investigation, the Mayor shall

20     communicate to the entities listed in subsection 3.29.530.B.1:

21     A. A statement on the investigation and its findings, including whether the Chief's

22     actions were consistent with SPD department policy as articulated in the SPD police manual, the

23     City's values, and SPD's values to protect and serve;

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1        B. Notification of whether the Mayor intends to discharge the Chief or take any

2    disciplinary action against the Chief, regardless of when such action will be final; and

3        C. Investigative detail that mirrors the detail that would otherwise be provided to the

4    public by OPA in a closed case summary, discipline action report, or other related report.

5        Section 2. Section 49 of Ordinance 125315 is amended as follows:

6        Section 49. A new Subchapter V, which includes new Sections 3.29.600 and

7    3.29.610, is added to Chapter 3.29 of the Seattle Municipal Code as follows:

8    **Subchapter VI Construction and implementation**

9    **3.29.600 Construction**

10        A. In the event of a conflict between the provisions of this Chapter 3.29 and any

11    other City ordinance, the provisions of this Chapter 3.29 shall govern.

12        B. It is the express intent of the Council that, in the event a subsequent ordinance

13    refers to a position or office that was abolished by the ordinance introduced as Council

14    Bill 118969, that reference shall be deemed to be the new position or office created by

15    the ordinance introduced as Council Bill 118969, and shall not be construed to resurrect

16    the old position or office unless it expressly so provides by reference to the ordinance

17    introduced as Council Bill 118969.

18        C. It is the express intent of the Council that, in the event a subsequent ordinance

19    refers to or amends a section or subsection of the Seattle Municipal Code or a previously

20    enacted ordinance that is amended or recodified in the ordinance introduced as Council

21    Bill 118969, but the later ordinance fails to account for the change made by the ordinance

22    introduced as Council Bill 118969, the two sets of amendments should be given effect

1    together if at all possible. The code reviser may publish the section or subsection in the

2    official code with all amendments incorporated therein.

3           D. The terms and provisions of this Chapter 3.29 are not retroactive and shall

4    apply only to those rules, orders, actions, or proceedings that occur, or have been

5    initiated, on or after the effective date of the ordinance introduced as Council Bill

6    118969.

7           E. Nothing in this Chapter 3.29 creates or is intended to create a basis for any

8    private cause of action.

9           F. The provisions of this Chapter 3.29 are declared to be separate and severable.

10   The invalidity of any clause, sentence, paragraph, subdivision, section, or portion of this

11   Chapter 3.29, or the invalidity of its application to any person or circumstance, does not

12   affect the validity of the remainder of this Chapter 3.29, or the validity of its application

13   to other persons or circumstance.

14   **3.29.610 Implementation**

15          A. ((~~Provisions of the ordinance introduced as Council Bill 118969 subject to the~~

16   ~~Public Employees' Collective Bargaining Act, chapter 41.56 RCW, shall not be effective~~

17   ~~until the City completes its collective bargaining obligations.~~)) As noted in Section

18   3.29.010, the police are granted extraordinary power to maintain the public peace,

19   including the power of arrest and statutory authority under RCW 9A.16.040 to use deadly

20   force in the performance of their duties under specific circumstances. Timely and

21   comprehensive implementation of this ordinance constitutes significant and essential

22   governmental interests of the City, including but not limited to (a) instituting a

23   comprehensive and lasting civilian and community oversight system that ensures that

1    police services are delivered to the people of Seattle in a manner that fully complies with

2    the United States Constitution, the Washington State Constitution and laws of the United

3    States, State of Washington and City of Seattle; (b) implementing directives from the

4    federal court, the U.S. Department of Justice, and the federal monitor; (c) ensuring

5    effective and efficient delivery of law enforcement services; and (d) enhancing public

6    trust and confidence in SPD and its employees.

7    ~~((For these reasons, the City shall take whatever steps are necessary to fulfill all~~

8    ~~legal prerequisites within 30 days of Mayoral signature of this ordinance, or as soon as~~

9    ~~practicable thereafter, including negotiating with its police unions to update all affected~~

10   ~~collective bargaining agreements so that the agreements each conform to and are fully~~

11   ~~consistent with the provisions and obligations of this ordinance, in a manner that allows~~

12   ~~for the earliest possible implementation to fulfill the purposes of this Chapter 3.29.))~~

13   B. Until the effective date of the ordinance introduced as Council Bill 118969, the

14   current accountability system shall remain in place to the extent necessary to remain

15   consistent with provisions of the Consent Decree in the matter of *United States of*

16   *America v. City of Seattle*, 12 Civ. 1282 (JLR).

17   C. Provisions of the ordinance introduced as Council Bill 118969 for which the

18   City has fulfilled its collective bargaining requirements, if any, will go into effect (1)

19   after Court approval in the matter of *United States of America v. City of Seattle*, 12 Civ.

20   1282 (JLR); and (2) either 30 days after Mayoral signature, or after 40 days if the Mayor

21   fails to sign the bill. Consistent with Section 3.29.600, any provisions for which

22   bargaining is not yet complete shall not go into effect until collective bargaining

23   obligations are satisfied.

Greg Doss and Ann Gorman
LEG Investigating Complaints That Name COP ORD
D3

1         Section 3. This ordinance shall take effect and be in force 30 days after its approval by

2    the Mayor, but if not approved and returned by the Mayor within ten days after presentation, it

3    shall take effect as provided by Seattle Municipal Code Section 1.04.020.

4         Passed by the City Council the __19th__ day of __July_____, 2022,

5    and signed by me in open session in authentication of its passage this __19th__ day of

6    __July_____, 2022.


7    _Debora Juarez_____

8    President _____ of the City Council


9    ⦿ Approved / ◯ returned unsigned / ◯ vetoed this __27th__ day of __July_____, 2022.

10   _Bruce A. Harrell_____

11   Bruce A. Harrell, Mayor


12   Filed by me this __27th__ day of __July_____, 2022.

13   _Ann Adkisson_____

14   Elizabeth M. Adkisson, Interim City Clerk


15   (Seal)
16
17
18
19
20   Attachments: