THE HONORABLE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | **Civil Action No. 12-CV-1282**<br><br>**AGREEMENT ON SUSTAINED**<br>**COMPLIANCE AND STIPULATED**<br>**[PROPOSED] ORDER OF RESOLUTION** |

## I.   INTRODUCTION

After more than a decade of cooperation, the United States and the City of Seattle

(collectively "the Parties") agree that the Seattle Police Department (SPD) has implemented far-

reaching reforms and achieved remarkable progress through the hard work and dedication of SPD

officers and civilian staff at all levels of the organization and from extensive contributions by

community members and leaders throughout Seattle. The Parties agree that the City has achieved

and sustained compliance with the core requirements of the Consent Decree while also

acknowledging that important work remains in two areas: ensuring sustainable accountability

and improving policy and practices for using force in crowd settings.

**AGREEMENT ON SUSTAINED COMPLIANCE AND**
**STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 1
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Over the past decade, the City has created systems that will allow it to continue monitoring and improving its police department. SPD collects extensive data about its use of force, and the Force Review Unit uses it to inform systemic changes to policies and training. SPD also collects data on its stop and detention practices, and the Monitor found that "[f]ew, if any, law enforcement agencies in the United States have built . . . the internal capacity to produce ongoing disparity analyses at [SPD's] level of rigor and sophistication." Dkt. 709 at 137-38. These data and analyses, in turn, inform SPD's decision making. SPD makes its use-of-force and stop data available to the public in real-time through online dashboards and also shares its information and analyses about racial disparities so that members of the public can conduct their own analyses. The City created a robust Office of Inspector General for Public Safety (OIG) to "ensure the fairness and integrity of the police system as a whole" and "oversee ongoing fidelity to organizational reforms implemented" by SPD under the Consent Decree. Accountability Ordinance § 3.29.010(B). These accomplishments would not have been possible without the outstanding work of SPD leadership individual police officers, and civilian employees, nor without the support and oversight of community members, the OIG, the Community Police Commission, and the City's elected leaders.

Going forward, the Parties will focus on two important areas: (1) addressing the Court's concerns over accountability, Dkt. 562; and (2) continuing work to correct issues that the Monitor identified regarding SPD's response to the 2020 protests spurred by the murder of George Floyd. The Parties enter into this Agreement on Sustained Compliance ("Agreement") to focus efforts on these remaining areas and to continue the important process of returning police oversight to the City, through its accountability system and, ultimately, to the community. Based on the Court's 2019 ruling on accountability, the Monitor's findings, and in

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 2
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

light of the importance of these issues to the public, the Parties understand that additional work is warranted in these areas. The City commits to further its work to improve community trust and public confidence by continuing to address these matters.

While addressing these areas is critical, the Parties recognize that reform of policing services is an ongoing process that does not end even when sustained compliance has been achieved. The City is committed to the ongoing process of reform, including in many areas that go beyond the specific requirements of the Consent Decree or this Agreement. In particular, the City and SPD will continue their ongoing work in identifying, studying, and taking steps to mitigate racial disparities in policing, along with other efforts to improve policing for the people of Seattle.

Therefore, to address the remaining matters described above, the Parties agree and respectfully submit that the Consent Decree should be superseded by this Agreement upon entry of an Order of this Court. The mutual consent of the Parties to the superseding of the Consent Decree by this Agreement is conditional, subject to the entry of this Agreement by the Court. This Agreement specifies the obligations of the City necessary for the complete resolution of this matter.

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 3
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## II.   BACKGROUND

A.  <u>Compliance with Paragraphs 69-168 of the Consent Decree</u>

1.      Following the DOJ's 2011 investigation, the Parties negotiated a settlement to address allegations that SPD officers had engaged in a pattern or practice of using excessive force in violation of the Fourth Amendment. The Court approved and entered the Consent Decree and retained jurisdiction to oversee its implementation. SPD worked with the Monitor and DOJ, with community input, to develop comprehensive policies that comply with the Consent Decree's requirements. SPD trained its officers on the policies and then worked to ensure that the requirements were being carried out in practice.

2.      On January 10, 2018, based on assessments conducted by the Monitor, the Court found that the City had achieved full and effective compliance with the Consent Decree's requirements. Dkt. 439.

3.      Since January 10, 2018, the City has demonstrated sustained compliance with the requirements of the Consent Decree related to use-of-force (exception noted herein), crisis intervention, stops and detentions, bias-free policing, supervision, and the Office of Police Accountability. A table listing all of the Monitor's assessments is attached as Exhibit A. A table listing the Phase II and Phase III sustainment compliance reports is attached as Exhibit B.

4.      Notable accomplishments documented in the Monitor's assessments include the following:

a)      Force has become rare, occurring in fewer than one-quarter of one percent of all events to which officers respond. Dkt. 709 at 68. SPD has reduced the incidence of

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 4
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

serious force by 60 percent. Dkt. 383 at 8, 31-32; Dkt. 588-1 at 3. The Monitor found that virtually all uses of force met constitutional requirements. Dkt. 383 at 8.

b)      Force is reported and reviewed by an officer's chain of command. The most serious uses of force were investigated by an interdisciplinary team of detectives who are specially trained in investigating force used by officers.

c)      SPD has created an advanced crisis intervention program. A specialized unit made up of a sergeant, five officers, and a mental health professional coordinates crisis response across the department. This unit develops individualized profiles of subjects of crisis incidents and response plans for high utilizers which patrol officers can access in the field. Dkt. 511.  In addition, to this highly trained Crisis Response Team, SPD adopted a co-responder model involving community service officers and civilian mental health practitioners; SPD also coordinates with King County to dispatch mobile crisis teams to behavioral health incidents at the request of the responding officer. Finally, all patrol officers receive at least eight hours of crisis-intervention training each year. Due to these changes, the use of force in crisis incidents occurs in less than two percent of such incidents and, when force is used, the majority of force used (65%) is low-level, Type I force. Dkt. 709 at 102.

d)      SPD reformed its policy, training, and practices for investigative stops ("*Terry*" stops). It began extensive data collection of information about investigative stops and other detentions in order to track potential disparities and improve practices.  In nearly all instances, the Monitor found that officers comply with legal and policy requirements related to stops, searches, and seizures. Dkt. 394.

e)      SPD adopted a comprehensive bias-free policing policy and training as well as comprehensive procedures for addressing bias-related complaints. Any officer

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 5
(12-CV-01282-JLR)

who learns of a biased-policing complaint must document it and call a supervisor to the scene; the supervisor then investigates in person.

        f)      While the Consent Decree does not mandate the study of racial disparity in policing or the reduction of disparities, as a result of the Consent Decree, SPD now has the necessary data collection and analytical capacity to identify and mitigate disparities. Under SPD's bias-free policing policy, which was developed in consultation with the Community Police Commission, SPD commits to identifying, studying, and "eliminating policies and practices that have an unwarranted disparate impact on certain protected classes." SPD is committed to responding to recommendations made by the Monitor in the May 2022 Comprehensive Assessment concerning disparity in the use of force, stops, detentions, and searches. SPD also is working to develop a plan that details the technologies, policies, and practices that it will seek to employ to reduce disparities in policing. SPD's report and plan will be published on its website and filed with the Court.

        g)      SPD overhauled its patrol staffing model to ensure that all patrol officers have a consistent, highly trained supervisor. SPD developed training for new supervisors to prepare them for effective leadership. The Monitor described the new training as "comprehensive" and observed that it "captured the Department's goals to prepare their sergeants for effective supervision and leadership." Dkt. 351 at 1.

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 6
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

B.  The Court's Concerns Over Accountability

5.      On May 21, 2019, the Court held that the City had "fallen partially out of full and effective compliance with the Consent Decree . . . in one of its additional areas of responsibility—accountability." Dkt. 562 at 2.

6.      The City has embraced the critical importance of accountability and made improvements to its accountability and discipline systems. Spurred by the Court's 2019 ruling, City leadership united around common accountability goals, which included successfully advocating for structural reform at the state level. The following recent reforms have advanced community accountability priorities:

        a)      *Continuous improvements to disciplinary investigations.* In 2011, 2016, and 2020, DOJ and the Monitor determined that the Office of Police Accountability (OPA) conducts thorough, high-quality disciplinary investigations. Dkts. 1-1, 259-1, 604-1. Since then, OPA has made additional improvements. In the past two years, following recommendations of the Monitor and the OIG, OPA has augmented its training on interviewing techniques; added two new civilian investigators; increased standards for case documentation; and adopted changes to improve the experience of complainants.

        b)      *Continuous learning and building community trust.* OIG developed the Sentinel Event Review (SER) system for substantive city-wide learning, policy reform and innovation. In the aftermath of the 2020 protests, OIG facilitated SER panels to analyze important incidents from the protests and to achieve forward-looking goals of learning, problem-solving, building trust, and increasing transparency in policing services. OIG is working to transition the current SER process into a means to analyze officer-involved shooting incidents

**AGREEMENT ON SUSTAINED COMPLIANCE AND
STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 7
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1  where there is an intersection with mental health/crisis to better understand root causes and

2  identify broader system changes.

3              c)      *The City modified the process for collective bargaining to*

4  *incorporate more community input.* During the recent negotiations with the Seattle Police

5  Management Association (SPMA) and in current negotiations with the Seattle Police Officers'

6  Guild (SPOG), for the first time, a City Council policy analyst, who reports to all nine

7  councilmembers, joined the City's team as a member of the bargaining team. As a result, council

8  members have greater visibility into the day-to-day negotiations and the bargaining team

9  receives direct access to additional input. For the first time, the Community Police Commission

10  has a role in the bargaining process by selecting one of its members to be a Technical Advisor.

11  The recent negotiations with SPMA using this process culminated in a new contract that

12  transformed the disciplinary appeals system for lieutenants and captains.

13              d)      *Accountability advances in SPMA contract.* The City recently

14  finalized an agreement with SPMA that addresses priorities recognized by the Court. The

15  contract: (1) adopts an evidentiary standard that makes it easier for the City to prove misconduct;

16  (2) requires that arbitrators must uphold the Chief of Police's decision unless it is arbitrary or

17  capricious; (3) makes disciplinary appeal hearings more transparent and accessible to the public.

18  The agreement also retains full subpoena power for OIG and OPA.

19              e)      *Rulings by the Washington Court of Appeals have limited the*

20  *discretion of arbitrators in police disciplinary appeals.* First, the Washington Court of Appeals

21  upheld the City's termination of an officer who had used excessive force on a woman while she

22  was handcuffed and restrained in his patrol car. The court found that an arbitrator's award

23  reinstating the officer "was so lenient it violates the public policy against the use of excessive

24  **AGREEMENT ON SUSTAINED COMPLIANCE AND**
**STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 8
   (12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

force."[1] In a second case, not involving the City, an arbitrator reinstated a police officer who had been sexually harassing women in the community. The Court of Appeals held that reinstatement violated the "well-defined and dominant public policies aimed at ending current discrimination and preventing future discrimination . . . by officials acting under color of state law."[2]

            f)     *Reformed arbitrator selection procedures.* In 2021, the state legislature enacted a new law creating mandatory arbitration selection procedures for police unions.[3] As required, a state commission now appoints a roster of trained, experienced arbitrators to hear disciplinary appeals for police officers. Appeals are automatically assigned by the commission to the next available arbitrator on the list, eliminating negotiations between the parties over arbitrator selection.

            g)     *A new state law supports the termination of officers who use excessive force or exhibit racial bias.* It mandates the decertification of officers who have been terminated for using unlawful force or for failing to intervene to stop such force by another officer. RCW 43.101.105(2)(b) & (c). It also establishes discretionary authority to decertify officers who use force in violation of their department's policy and officers who discriminate based on a person's protected status. RCW 43.101.105(3)(e) & (h). The legislation will help prevent these officers from continuing to serve in law enforcement.

---

[1] *City of Seattle v. Seattle Police Officers' Guild*, 484 P.3d 485, 502 (Wash. App. 2021).

[2] *City of Prosser v. Teamsters Union Local 839*, 21 Wash. App. 2d 1058, 2022 WL 1151427, at *7 (2022).

[3] LAW ENFORCEMENT DISCIPLINARY GRIEVANCE ARBITRATION, SSB 5055.SL.

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 9
(12-CV-01282-JLR)

Paragraphs 6-18 are omitted.[4]

## III.    DEFINITIONS

Paragraphs 19-68 incorporate by reference paragraphs 19-68 of the Consent Decree which provide definitions.

## IV.    GENERAL PROVISIONS

69.    This Agreement supersedes the Consent Decree previously entered into by the Parties in this case, which was filed by the DOJ, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601; the anti-discrimination provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d ("Safe Streets Act"); and Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d ("Title VI").

70.    This Court maintains jurisdiction of this action pursuant to 28 U.S.C. § 1331, and § 1345. Venue remains proper in the Western District of Washington pursuant to 28 U.S.C. § 1391.

71.    This Agreement specifies (1) the remaining tasks the City must complete to achieve final resolution of this matter, (2) the ongoing monitoring and technical assistance to be provided by the Court Monitor during the pendency of this Agreement, and (3) the administrative procedures necessary for the implementation of this Agreement and the subsequent dismissal of the case.

---

[4] Some paragraph numbers are omitted in this Agreement in order to preserve the numbering for paragraphs that are incorporated by reference from the Consent Decree. For example, by omitting paragraphs 6-18 in this Agreement, that allows the definitions provisions of the Consent Decree to maintain the same paragraph numbers (19-68) in this Agreement.

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 10
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

72.    This Agreement is neither an admission by the City of any violation of the Consent Decree or any local, state, or federal laws, nor an admission by the DOJ of the merits of any of the City's potential defenses.

73.    This Agreement constitutes the entire agreement between the Parties in this matter and constitutes the full settlement of any and all claims the DOJ may have against the City, and its officers, employees or agents, regarding the allegations in DOJ's complaint. No other statement, promise or agreement, either written or oral, made by either Party, not included in this Agreement is enforceable.

74.    This Agreement is enforceable only by the Parties thereto. No other person or entity is intended to be a third-party beneficiary to the provisions of this Agreement.

75.    This Court will retain jurisdiction of the above-captioned matter for all purposes related to this Agreement during its pendency.

76.    The Parties anticipate that the work of the City will be completed in 2023. When completed, the City shall file a report demonstrating the status of its compliance with the requirements of this Agreement. The City may move the Court at any time to terminate this Agreement upon a demonstration of compliance with its requirements by a preponderance of the evidence. The Parties may also agree to jointly ask the Court to terminate this Agreement at any time after the City has demonstrated compliance with its requirements by a preponderance of the evidence. Upon a demonstration by the City of compliance with the requirements of this Agreement by a preponderance of the evidence, this Agreement shall terminate.

77.    One year from the Effective Date of this Agreement, if this case has not yet been dismissed, upon the motion of any Party, the Court will hold a hearing to assess the status of the City's compliance with the Agreement and to determine whether this Agreement should

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 11
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1  continue. If the City has achieved compliance as to some requirements of this Agreement, this

2  Agreement shall be terminated as to those requirements.

### V.    ONGOING REFORM IMPLEMENTATION & OVERSIGHT

78.    The obligations in this Section focus the Parties' efforts on the remaining areas

identified by the Monitor and the Court: using force in crowd settings (including the reporting

and investigation of force); and ensuring a sustainable system of accountability to oversee the

conduct of officers, as individuals, and the policies and priorities of SPD, as an organization. As

an important step to giving greater responsibility for police reform to the community, SPD and

the OIG are charged with carrying out this work, with oversight roles for the Monitor and DOJ.

Finally, to ensure that progress continues to be sustained since the Monitor's latest

Comprehensive Assessment, this Section requires the City to provide a further update on

outcome measures in the core areas of the Consent Decree.

79.    The Monitor will provide a brief report to the Court by September 29, 2023, as to

the City's compliance with the tasks and timelines in this Section.  If this case has not yet been

dismissed by December 29, 2023, the Monitor will provide a follow-up report to the Court by

that date. The Monitor will provide drafts of its reports to the Parties at least thirty days before

filing.

80.    SPD may request technical assistance from the Monitor as needed. The Monitor

may provide the requested technical assistance as long as the requested assistance will not

conflict with the Monitor's duties under this Agreement and falls within the Monitor's budget.

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 12
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

A.  Use of Force: Crowd Management Practices

81.     SPD will revise its crowd management policy to address feedback from the ongoing Sentinel Event Review process and ensure that officers are trained on the updated policy.

82.     SPD will develop an alternative reporting and review process for force used in crowd settings to address the Monitor's findings regarding breakdowns in reporting and review that occurred in 2020. The alternative process will be designed to ensure timely reporting and review even in the event that significant, sustained protests arise again.

83.     Consistent with City law, within 60 days of the effective date of this Agreement, the City will provide the draft crowd management policy and alternative reporting and review process to DOJ and the Monitor. The Parties and the Monitor will follow the Review Process set forth in paragraphs 177-79. The City will file the updated crowd management policy and alternative reporting and review process with the Court upon completion of the paragraph 177-79 Review Process.

84.     SPD will continue to consider and respond to the recommendations of the Sentinel Event Review (SER) process. SPD will provide a report on the status of all recommended policy changes arising out of the SER process to the Court no later than July 31, 2023. In the event a specific recommendation of the SER directed to SPD does not result in a policy change, the reasons will be explained in the report.

B.  Accountability: Strengthening & Continuing Practices

85.     In a technical assistance role, the Court Monitor will retain an independent consultant to complete the Seattle Accountability System Sustainability Assessment of the City's police accountability systems. The consultant's draft report will be submitted to the Parties no

**AGREEMENT ON SUSTAINED COMPLIANCE AND STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 13
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

later than July 14, 2023. The consultant's report will be filed with the Court no later than August 14, 2023.

86.     The City will develop a response to the consultant's report that provides explanations for any recommendations not adopted. This response will be provided to the Court no later than August 31, 2023.

C.   Ongoing Assessments: Ensuring that Police Reform Work Continues

87.     To ensure that the progress documented in previous assessments is sustained, SPD will update outcome measures around the use of force (including crowd management); crisis intervention; stops and detentions; bias-free policing; and supervision (including the early intervention system). OIG will review SPD's reporting and data analysis for accuracy. The City will submit these outcome measures to the Court by July 31, 2023.

88.     In collaboration with the Monitor, the OIG will develop a Workplan describing its approach for ensuring continued robust, independent monitoring of SPD. As part of the Workplan, OIG will develop a methodology and timeline for assessment of the following areas: use of force (including crowd management); crisis intervention; stops and detentions; bias-free policing; and supervision (including the early intervention system). The City will file OIG's Workplan with the Court by June 30, 2023.

89.     In addition, OIG will conduct a Use-of-Force Assessment examining 2021 and 2022 data on SPD's use of force. As components of the Use-of-Force Assessment, OIG will examine force used in crisis incidents, the use of less lethal devices, and force used in the crowd management context. The assessment also will provide an update on the force-related issues identified by the Monitor in the 2022 Comprehensive Assessment. Dkt. 709. OIG will provide its

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

draft Use-of-Force Assessment to DOJ and the Monitor by June 30, 2023. The City will file

OIG's Use-of-Force Assessment with the Court by July 31, 2023.

Paragraphs 90-168 are reserved.

## VI.   ADMINISTRATIVE PROVISIONS

Paragraphs 169-172, 174, 176-181, and 197-228 incorporate by reference paragraphs

169-172, 174, 176-181, and 197-228 of the Consent Decree, which address Monitoring,

Jurisdiction, and Policy Development. Paragraphs 173, 175 and 182-96 are omitted.


Agreed to this 28th day of March, 2023.


For the CITY OF SEATTLE                    For the UNITED STATES OF AMERICA

ANN DAVISON                                TESSA GORMAN
Seattle City Attorney                      First Assistant United States Attorney
                                           Western District of Washington
*s/ Kerala T. Cowart*                      Attorney for the United States
Kerala T. Cowart, WSBA #53649              Acting Under Authority Conferred by 28 U.S.C § 515
*s/ Jessica Leiser*
Jessica Leiser, WSBA #49349                *s/ Matt Waldrop*
Assistant City Attorneys                   Matthew Waldrop, Assistant United States Attorney
Seattle City Attorney's Office             Kerry Keefe, Assistant United States Attorney
701 Fifth Avenue, Suite 2050               Rebecca Cohen, Civil Division Chief
Phone: (206) 733-9001                      United States Attorney's Office
Fax: (206) 684-8284                        Western District of Washington
Email: kerala.cowart@seattle.gov           700 Stewart Street, Suite 5220
Email: jessica.leiser@seattle.gov          Seattle, Washington 98101-1271
                                           Phone: (206) 553-7970
                                           Fax: (206) 553-4073

                                           KRISTEN CLARKE
                                           Assistant Attorney General
                                           Civil Rights Division

                                           *s/ Timothy D. Mygatt*
                                           Steven H. Rosenbaum, Chief

**AGREEMENT ON SUSTAINED COMPLIANCE AND
STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 15
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Timothy D. Mygatt, Deputy Chief
Jeffrey R. Murray, Trial Attorney
Katherine Chamblee-Ryan, Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave, NW
Washington, DC 20530
Phone: (202) 514-6255

**AGREEMENT ON SUSTAINED COMPLIANCE AND
STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 16
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1
2

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

3

UNITED STATES OF AMERICA,

**Civil Action No. 12-CV- 1282**

4

Plaintiff,

**[PROPOSED] ORDER OF RESOLUTION**

5

v.

6

CITY OF SEATTLE,

7

Defendant.

8

9

Having read and considered the motions of the parties, IT IS HEREBY ORDERED AS

FOLLOWS:

10

    1.  The joint motion is GRANTED.

11

    2.  The Court approves and adopts the Agreement on Sustained Compliance attached to

12

        the parties' joint motion.

13

14

Dated this _____day of _____, 2023.

15

16

                               _____

17

                               Hon. James L. Robart
                               United States District Court Judge

18

19

20

21

22

23

24

**AGREEMENT ON SUSTAINED COMPLIANCE AND
STIPULATED [PROPOSED] ORDER OF RESOLUTION** - 17
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200