THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:12-cv-01282-JLR ) |
| v. | ) **DECLARATION OF** ) **GINO BETTS Jr.** ) |
| CITY OF SEATTLE, | ) ) |
| Defendant. | ) ) |

I, Gino Betts Jr., being familiar with the facts set forth herein based on my knowledge, and being competent to testify, hereby declare under penalty of perjury that the following is true and correct:

1.  I am, having been nominated by Mayor Bruce Harrell and confirmed by the City Council, the Director of the Office of Police Accountability (OPA). I took the oath of office on October 3, 2022, for a term ending on December 31, 2026. OPA investigates allegations of Seattle Police Department (SPD) employee misconduct, using SPD policy and local, state, and federal laws to recommend findings to the Chief of Police. As OPA Director, I am responsible for establishing and managing processes to initiate, receive, classify, and investigate individual allegations of SPD employee misconduct; promoting public awareness of, full access to, and

**DECLARATION OF GINO BETTS JR.** - 1
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

trust in OPA complaint processing; identifying SPD system improvement needs and recommending practical solutions; and helping reduce misconduct and enhance employee conduct.

2. I am a career public servant. I previously served as an attorney at Chicago's Civilian Office of Police Accountability, contributing to several high-profile cases, helping impose accountability, and exposing corruption and misconduct. I have also worked as a Cook County prosecutor, focusing on violent and complex felony cases.

3. I am humbled and honored to serve the people of Seattle as the OPA Director. In all my actions as Director, I aim to increase public and police confidence in policing and police oversight. That will be accomplished with timely, thorough, and fair investigations and proactively seeking and valuing the perspectives and insights of communities most impacted by policing— who are often overlooked.

4. Since I started at OPA, I have been impressed by the talent and commitment of OPA's employees. Our employees are committed to high-quality investigations that treat officers fairly and reflect evolving community expectations.

5. OPA has also made great strides toward addressing recommendations from the Court-appointed Monitor, 21CP Policing Solutions, and the Office of Inspector General for Public Safety. Although those recommendations were made before I joined OPA, I am familiar with OPA's current practices and recent improvements. I am pleased to provide the Court with substantive updates about OPA's implementation efforts and progress.

**DECLARATION OF GINO BETTS JR.** - 2
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**Monitor's Assessment of OPA**[1]

6. In 2020, the Monitoring Team examined the timeliness, quality, integrity, and consistency of a random sample of OPA investigations. Rather than assessing Consent Decree compliance, that review intended to provide information to City stakeholders "about how the OPA, a key component of Seattle's police accountability system, can continue to improve its performance" (pg. 2). It concluded OPA dramatically reduced untimely investigations and missed no deadline that prevented the imposition of discipline (pg. 2). The Monitor also found OPA maintained quality investigations and applauded the civilianization of supervisor and investigator positions (pp. 2, 5-6). The Assessment concluded with a series of recommendations which are addressed below:

7. *Update Operations and Training Manual—Complete*. The Seattle Police Accountability Ordinance requires the OPA Operations and Training Manual (OPA Manual) be updated "at least annually." The latest OPA Manual went into effect on January 1, 2022. OPA solicited input from City stakeholders, the Monitor, and DOJ and submitted its revised manual to the Court at docket no. 689-2. The OPA Manual is available at http://seattle.gov/Documents/Departments/OPA/Policy/2022-OPA-Manual-Final.pdf

8. *Expand Investigative Staff to Reduce Investigative and Case Closure Delays— Complete.* The Monitoring Team concluded "additional staffing could generally ameliorate investigative delays" and "lower caseloads and assist the OPA in producing faster, more detailed, and more thorough investigations." Accordingly, OPA added two civilian investigator positions and a position to focus on research and writing. The number of civilians in leadership and

---

[1] The Monitor's Assessment was submitted to the Court in 2020 and filed at docket number 604-1. The conclusions and recommendations appear at pages 29-33.

**DECLARATION OF GINO BETTS JR.** - 3
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

supervisor positions also increased (replacing previously sworn positions), and a former position dedicated to research and writing was elevated to general counsel. OPA also added an assistant general counsel, a civilian assistant director of investigations, and two civilian investigation supervisors.

9. *Improve Quality of Interviews—Complete.* The Monitoring Team concluded most OPA interviews were thorough and unbiased but would benefit from improved interviewing techniques. It further recommended OPA ensure investigators are adequately trained and critiqued on an ongoing basis. Since that assessment, all OPA investigators must complete rigorous investigative interview training where they are instructed on the Conversation Management Approach. That course is tailored for OPA and provides techniques for investigating police officers. [The Office of Inspector General (OIG) assisted with this training initiative.] OPA also contracted with a highly regarded international investigations consultant to provide investigators with follow-up coaching and performance feedback. Additionally, OPA revised the OPA Manual to include robust interview techniques, guidelines, and tips (pg. 28-33).

10. *Access Homicide Unit Documents While the Homicide Investigation is Pending—Complete.* Previously, SPD restricted OPA's access to evidence related to ongoing SPD criminal investigations—even with limitations or redactions. Now, under limited circumstances, if appropriate and necessary, OPA will closely consult with case detectives to ensure the administrative and criminal investigations are uncompromised, thorough, complete, and timely. The new practice is described in OPA's Manual (pg. 14).

11. *Take Additional Steps in Some Biased-based Policing Investigations to Examine Officers' Thought Processes—Complete.* Gathering all relevant information about the named officer's thought process is critical in bias investigations. That includes skillfully interviewing the

**DECLARATION OF GINO BETTS JR.** - 4
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

named officer and, sometimes, reviewing the officer's relevant citation history or other discretionary decisions, like looking up license plates. Moreover, OPA has consulted with other civilian oversight agencies in Chicago, Washington D.C., and New York to share best practices and lessons learned regarding these challenging investigations.

12. *Create a Single Report to Document All OPA Staff's Case and Investigative Actions—Complete.* The Monitoring Team recommended OPA create one report to capture its administrative, investigative, and supervisory staff's investigative actions from inception to disposition. OPA now records those investigative steps and summarizes evidence in a Report of Investigation ("ROI"). That report is maintained in OPA's records management system ("IAPro") as a single document, along with supporting evidence and case documents.

13. *Create an Independent Investigation Plan Form —Complete.* OPA accomplished this through training and revising the OPA Manual (pg. 26-27) to require investigation plans for all investigations.

14. *Structure the Case Summary Report and Create Model Reports to Make the Case Summary More Useful—Complete.* Revised case summary templates significantly improved report consistency and provided investigators with a template for highlighting relevant and material evidence. Additionally, OPA created model case summary reports to guide new investigators toward meeting OPA report writing standards. OPA also provides annual training covering investigative report writing.

**DECLARATION OF GINO BETTS JR.** - 5
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**Outside Consultant Recommendations for OPA[2]**

15. In response to the Court's 2019 ruling holding the City out of compliance in the area of accountability, the City hired 21CP Solutions, Inc. ("21CP") consultants, specializing in labor law, police discipline, and civilian accountability to assess the City's accountability system. 21CP identified several areas for improvement. OPA has addressed several 21CP findings. However, three of those findings (described below) require further bargaining with the Seattle Police Officers Guild (SPOG).

16. *When there are Parallel Criminal Proceedings, OPA May Not Get Adequate Time to Investigate* (pg. 35-40)—*Partially Fixed / Partially Subject to Bargaining*. Police union contracts and the Accountability Ordinance require OPA investigations to be completed within 180-days. 21CP examined the 180-day timeline's impact on discipline. 21CP concluded there was no impact on discipline over the past two years, but that risk exists—particularly when there are parallel criminal proceedings. Subsequently, OPA executed a memorandum of understanding requiring city and county prosecutors to notify OPA when prosecutorial review starts and ends (i.e., when the 180-day clock stops and re-starts). In addition, the recently executed SPMA contract tolls the investigative clock while criminal investigations pend (regardless of where the crime was committed). With that said, I believe it is essential for the current collective bargaining negotiations with SPOG to simplify the unnecessarily complex tolling rules.

17. *Lack of clarity regarding OPA's ability to obtain records or secure testimony* (pp. 40-45)—*In progress*. SPD policy requires officers to cooperate with OPA investigations, and

---

[2] 21CP's Report was submitted to the Court in 2019 and filed at docket number 598-2. A summary of its findings and recommendations appears at pp. 3-4.

**DECLARATION OF GINO BETTS JR.** - 6
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

21CP could not identify an officer refusing an OPA interview. In addition, OPA has full access to named employees' records. Nevertheless, I consider uncompromised subpoena authority a top priority in the current collective bargaining negotiations with SPOG to ensure OPA has unfettered access to relevant records for investigative purposes.

18. *The Public Has Concerns about Lack of Arbitrator Diversity and Impartiality (pp. 49-51)—State Enacted Legislation Intended to Address.* When 21CP wrote its 2019 report, the City and the unions had just negotiated a new arbitrator pool and selection process. 21CP concluded the pool and process's effectiveness were unproven. 21CP also learned the arbitrators' pool lacked diversity. Subsequently, in 2021, the state legislature enacted a new law creating mandatory arbitration selection procedures for police unions.[3] As required, a state commission now appoints a roster of trained, experienced arbitrators to hear police disciplinary appeals. That legislation also recognizes the diversity of career experience and lived experience as qualifications. Moreover, the commission automatically assigns appeals to the next available arbitrator on the list, eliminating negotiations between the parties over arbitrator selection and reducing concerns over impartiality.

19. *Arbitrators Apply an "Elevated" Quantum of Proof in the Most Serious Cases (pp. 51-53)—Fixed in SPMA, Subject to Collective Bargaining With SPOG.* The recently executed SPMA contract directs arbitrators to apply a preponderance of the evidence standard in all disciplinary appeals. I believe it is imperative for the current collective bargaining negotiations with SPOG to adopt that same standard.

---

[3] LAW ENFORCEMENT DISCIPLINARY GRIEVANCE ARBITRATION, SSB 5055.SL.

**DECLARATION OF GINO BETTS JR.** - 7
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

20. *Lack of Transparency in Disciplinary Appeals (pg. 53-54)—Fixed.* To increase transparency, in June 2020, OPA started posting redacted case summaries, imposed discipline, and the status of pending or open disciplinary appeals[4] on its website. As a result, community members can now search any OPA case from 2016 or later and read the OPA Director's findings, determine what discipline the Chief imposed, learn whether the discipline was appealed, and see the status and outcome of each appeal. To make that information as accessible and interactive as possible, OPA created a dashboard that aggregates complaint and case information and complainant and officer demographics (like gender, race, and age). The online database is fully searchable. Those resources are available at: https://www.seattle.gov/opa/case-data

### OIG Audit of Disciplinary System[5]

21. In 2021, OIG conducted a performance audit of the police disciplinary, grievance, and appeal system for cases from January 2018 through March 2021 to assess whether it was "timely, fair, consistent, and transparent," as required by provision 3.29.420(A) of the Accountability Ordinance. (pg. 2.) "OIG did not observe conditions generally thought to be most harmful to accountability or public trust (e.g., a pattern of arbitrators overturning discipline or a chronic failure to address repeated misconduct)." (pg. 3.) OIG concluded the system was "generally consistent and timely" and recommended steps to increase transparency and fairness for complainants and the public. (pg. 2.) Four Audit recommendations were directed at OPA, and all have either been implemented or are in progress.

---

[4] The City Attorney's Office provides disciplinary appeals data to OPA.

[5] OIG's Audit was completed on November 30, 2021, and is available at https://www.seattle.gov/documents/Departments/OIG/Audits/AuditofDisciplinarySystemforSPDSwornPersonnel.pdf  The recommendations are summarized at pp. 40-42.

**DECLARATION OF GINO BETTS JR.** - 8
(12-CV-01282-JLR)

22. *Identify Opportunities for Complainants to Speak with the Chief of Police—In progress.* OPA is actively working with SPD to implement this recommendation.

23. *Set an Internal Deadline to Provide Closed Case Summaries to Complainants—Complete.* OPA strives to do this within 30 days after findings are issued in not sustained cases and within 15 days after discipline is imposed in sustained cases. Those internal deadlines were added to the OPA Manual (pg. 39).

24. *Notify Complainants if the Officer Appeals—Complete.* OPA revised its process for notifying complainants about officer appeals. Additionally, OPA reviewed prior cases with then-pending appeals and notified the complainant as appropriate. The current process is increasingly streamlined and efficient.

25. *Notify All Parties Affected by Alleged Misconduct, Not Just the Complainants—In progress.* OPA is working to implement this recommendation while respecting affected individuals' communication preferences.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 28th day of March 2023 at Seattle, King County, Washington.

GINO BETTS JR.

**DECLARATION OF GINO BETTS JR.** - 9
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200