Exhibit 24
to DECLARATION OF NATHANIEL FLACK
IN SUPPORT OF BRIEF OF AMICUS
CURIAE ANTHONY SIMS

1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

ANTHONY SIMS,

Plaintiff,

vs.                          Case No. 2:22-cv-00483-TL

CITY OF SEATTLE,  a municipal

corporation, and ROBERT BROWN,

GREGORY NASH, GARRETT FOLLETTE,

and BRADLEY RICHARDSON, Officers

of the Seattle Police Department,

Defendants.

_____

DEPOSITION UPON ORAL EXAMINATION

VIA ZOOM OF

SCOTT MOURTGOS

_____

DATE:  March 9, 2023

REPORTED BY:  Holly J. Buckmaster, CSR

CSR No. 2859

---

2

A P P E A R A N C E S:

For Plaintiff:
NATHANIEL FLACK
LAUREN FREIDENBERG
Attorneys At Law
MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
nathanielf@mhb.com
laurenf@mhb.com
Appeared on behalf of Sims

For Defendant:
JESSICA LEISER
BRANDON RAIN
Attorneys At Law
SEATTLE CITY ATTORNEY'S OFFICE
701 Fifth Avenue, Suite 2050
Seattle, Washington  98104
Jessica.leiser@seattle.gov
Brandon.rain@seattle.gov
Appeared on behalf of City of Seattle, Brown, Nash,
Follette, Richardson

Also Present:
Anthony Sims

---

3

INDEX OF EXAMINATIONS

PAGE LINE

By Mr. Flack...................................... 4   14

INDEX OF EXHIBITS

PAGE LINE

Exhibit 29  Expert report of Scott Mourtgos
dated February 20, 2023..................... 4    9

Exhibit 27  Document titled Versadex NCIC
Gateway, Bates Nos. CITY_029693 - 696........ 48   23

Exhibit 5  Body Cam Video, Bates No. CITY_000672.. 70   22

---

4

SALT LAKE CITY, UTAH; THURSDAY, MARCH 9, 2023

2:00 P.M.

--oOo--

SCOTT MOURTGOS, being first duly sworn remotely, per agreement with counsel, testified as follows:

(Exhibit 29 was marked for identification.)

E X A M I N A T I O N

BY MR. FLACK:

Q.     (BY MR. FLACK) Good afternoon, sir.

A.     Good afternoon.

Q.     Can you hear me all right?

A.     I can, thank you.

Q.     All right.  I'd like to just ask you to start by stating and spelling your name for the record, please.

A.     My first name is Scott, S-C-O-T-T, my last name is Mourtgos, that is spelled M-O-U-R-T-G-O-S.

Q.     Okay.  And I want to make sure I am right about this kind of thing, is it Mr. Mourtgos or Dr. Mourtgos?

A.     You can call me Mr. Mourtgos.

37

one that I -- that I just had the court reporter read, I would ask that you, you know, please endeavor to answer with a yes or no before proceeding to discussing other issues, okay, does that make sense?

MS. LEISER: I am going to object, again you are harassing the witness.

Q.   (BY MR. FLACK) Does that make sense, sir?

A.   Well, I believe I have provided some yes and no answers when appropriate. There are times, though, where I don't believe I can answer questions simply with a yes or a no.

Q.   Okay. Was drawing firearms consistent with deescalation in the facts and circumstances of this case?

A.   It was certainly in line with generally accepted police principles and practices on a high-risk vehicle stop. And again, all of the actions taken during that high-risk vehicle stop is all part of setting the stage for deescalation and not running towards Mr. Sims and possibly creating an encounter that has less than ideal outcomes.

Q.   In your opinion, yes or no, was drawing firearms part of deescalation in this case?

A.   If you are including drawing firearms with the overall actions of these officers in this case, then

38

yes, I would say it is part of deescalating this particular scenario.

Q.   And would the use of firearms in the low ready position or the Sul position also be part of the deescalation in this overall circumstance?

A.   Same answer as what I said before, yes.

Q.   And what is your opinion about when officers can search a license plate number?

A.   I am sorry, you broke up there for a second.

Q.   What is your opinion about when an officer can search a license plate number in their MDT?

A.   Running regular checks on license plates, as far as registration checks, insurance checks and things like that is part of normal police patrol activity. License plates are state property and they are subject to being run by officers.

Q.   Do you have an opinion about whether Washington law -- strike that.

Is your opinion that there is no requirement of any justification to search a license plate?

A.   Well, the justification is that it is state property and it is subject to regular checks by law enforcement officers. I do think it is important to note though that in this particular case, Lieutenant Brown didn't run Mr. Sims' vehicle license plate simply because he

39

wanted to, there were other factors that drew attention to the vehicle, which is why he ran the license plate.

Q.   And what is the basis of your opinion about why he ran the license plate?

A.   He noticed the vehicle driving in the dark without its headlights and I believe taillights on and in his experience, according to him, he's seen an association between that and somebody driving intoxicated as well as stolen vehicles. And then he also noticed, and you can see it on his dashboard camera, Mr. Sims made an illegal wide turn.

Q.   So the -- your basis is the -- okay.

What is your opinion about whether decisions to run certain license plates as opposed to others might be the result of implicit bias?

A.   I am not sure how to answer that because I don't -- I don't know what my opinion on that is as far as what you are asking. I mean, is it possible that it can happen, I mean, I would imagine it is. I don't see any reason to believe that that is what occurred in this particular case, though.

Q.   And what about whether an officer's decision to run a license plate was the result of explicit bias?

A.   What -- what about, I don't understand the question.

40

Q.   Well, what is your opinion about whether Lieutenant Brown's decision to run the license plate could have been the result of explicit bias?

A.   I don't see any evidence of that being the case in this particular instance.

Q.   Do you have an opinion about whether Lieutenant Brown could see into the car -- see into Mr. Sims' car while he was behind it?

A.   From the video that I reviewed, I don't believe it was possible to see Mr. Sims' race before he exited the vehicle. It is -- obviously there is some ambient light, you can see that in the video, I am sure you have watched it as well, but it is still fairly dark, and which is why the street lights are on that is causing glare on the windows, as well as there appeared, at least to me, to be a headrest, you can't see through headrests. I didn't see any opportunity for him to notice Mr. Sims' race until he exited the vehicle.

Q.   Okay. Do you have an opinion about when one car is behind another and the car that is in front makes a turn, if that provides an opportunity to get a look at the driver?

A.   Could it provide an opportunity, yes, it could. Again, reviewing the video that I saw here, I

101

Q.    Is there anything I haven't asked you about that you -- you thought I might or you thought I should?

A.    No, sir.

MR. FLACK:  All right.  I think that is all the questions we have.  I want to thank you, Mr. Mourtgos, for your time this afternoon.  Appreciate it.

THE WITNESS:  Thank you, I appreciate that.  And when we are off the record, I just have a quick question for you.

MS. LEISER:  We have no questions.

MR. RAIN:  Me neither.

THE COURT REPORTER:  Are you ordering this?

MR. FLACK:  We will be, I will confirm over e-mail.

THE COURT REPORTER:  Okay.  And Jessica, did you want a copy if it is?

MS. LEISER:  Yep

THE COURT REPORTER:  And signature, reserve?

MS. LEISER:  Reserve.

(The deposition concluded at 5:10 p.m.)
(Signature was reserved.)

---

102

C E R T I F I C A T E

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING      )

I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010 authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify:

That the annexed and foregoing deposition transcript of the witness named herein was taken Stenographically before me and reduced to a typed format under my direction; that the transcript is a full, true and complete transcript of the proceedings, including all questions, objections, motions and exceptions of counsel, made and taken at the time of the foregoing proceedings, to the best of my abilities;

That I am not a relative, employee, attorney or counsel of any party to this action or relative or employee of any such attorney or counsel, and that I am not financially interested in the said action or the outcome thereof;

That the witness, before examination, was by me duly sworn, and the transcript was made available to the witness for reading and signing upon completion of transcription, unless indicated herein the waiving of signature;

I further certify that I am sealing the deposition in an envelope with the title of the above cause and the name of the witness visible, and I am delivering the same to the appropriate authority;

I further advise you that as a matter of firm policy, the Stenographic notes of this transcript will be destroyed three years from the date appearing on this Certificate unless notice is received otherwise from any party or counsel hereto on or before said date;

IN WITNESS WHEREOF, I have hereunto set my hand on this 11th day of April, 2023, at Mountlake Terrace, Washington.

Holly J. Buckmaster, CCR # 2859

---

103

E R R A T A   S H E E T

CASE:  SIMS vs CITY OF SEATTLE, et al.
CASE NO.:  2:22-cv-00483-TL
NAME OF WITNESS:  SCOTT MOURTGOS
DATE TAKEN:  03/09/2023

Please make all changes or corrections on this sheet.
If there are none, please write "NONE" across this sheet.
Please sign and date this sheet and the declaration.
Please do not mark the transcript.  Thank you.

PAGE #   LINE #   CHANGE/CORRECTION & REASON
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____
_____    _____   _____

EXECUTED this _____ day of _____,
2023, at _____ (City), _____ (State).

                    _____
                              SCOTT MOURTGOS

---

104

CASE:  SIMS vs CITY OF SEATTLE, et al.
CASE NO.:  2:22-cv-00483-TL
NAME OF WITNESS:  SCOTT MOURTGOS
DATE TAKEN:  03/09/2023

I, SCOTT MOURTGOS, do hereby declare under penalty of perjury that I have read the foregoing transcript of my deposition; that I have made such changes/corrections as noted herein, in ink, initialled by me or attached hereto; that my testimony contained herein, as corrected, is true and correct.

EXECUTED this _____ day of _____,
2023, at _____ (City), _____ (State).

                    _____
                              SCOTT MOURTGOS