THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:12-cv-01282-JLR |
| Plaintiff, | |
| v. | DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE |
| CITY OF SEATTLE, | NOTE ON MOTION CALENDAR: March 28, 2023 |
| Defendant. | |

Defendant City of Seattle hereby responds to amicus curiae briefs filed by the Seattle Community Police Commission (CPC) and the American Civil Liberties Union of Washington (ACLU), organizations, and Anthony Sims, an individual.

I. **CPC's and ACLU's briefs provide guidance and highlight areas in which continued reform is important to the public—both within the proposed Compliance Agreement and outside it.**

CPC and ACLU are critical to the City's police accountability ecosystem. The CPC was created by the Consent Decree, and CPC's role to provide feedback on SPD's policies and

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 1
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

priorities is an important one. ACLU, among other noteworthy projects, was one of 35 signatories on the 2010 letter to the U.S. Department of Justice that asked it to investigate SPD for civil rights violations. CPC and the ACLU represent diverse perspectives and opinions, and both are key stakeholders in the police accountability system.

In light of its historical involvement in the Consent Decree and role as a voice of the community, it is noteworthy that CPC supports the parties' joint motion to replace the Consent Decree with a focused Compliance Agreement. CPC agrees with the parties "that the City has made notable progress in complying with the Consent Decree." Dkt. 738-1 at 7.

The ACLU, for its part, neither supports nor opposes the motion and observes that the proposed Compliance Agreement "concentrate[es] on two broad, yet crucial, areas . . . ." Dkt. 744-1 at 3. However, the ACLU also believes that the parties are overstating the reforms implemented under the Consent Decree, positing that "the Department, regrettably, is not a 'transformed organization.'" Dkt. 744-1 at 3. The City disagrees with the ACLU's assessment of the evidence that is before the Court.

The City agrees with both CPC and the ACLU that work remains in the areas of mitigating racial disparities in policing and throughout civil society. The City also must continue to invest in its police accountability system and ensure its sustainability. As CPC observes, "compliance with the Consent Decree does not mean that police accountability work is finished." Dkt. 738-1 at 7. Similarly, the ACLU is correct that, if this Court approves the proposed Compliance Agreement, that will not mean it is time to declare "mission accomplished." Dkt. 744-1 at 3. With that being said, it is important not only to acknowledge that challenges remain in areas outside of the Consent Decree, but also to recognize the progress and

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 2
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

accomplishments brought about by the Consent Decree in the areas that it addresses. These accomplishments were achieved through the hard work of SPD, advocacy groups, members of the public, the U.S. Department of Justice, and the oversight of this Court.

If the proposed Compliance Agreement is approved by this Court, then throughout its duration and beyond, the City anticipates that CPC and the ACLU will continue their efforts to hold the City accountable. Indeed, the City depends on them to do this important work. The City as a whole must continue the hard work of reform—which is a continuous process, not a destination.

**II.    Mr. Sims' brief is not properly before this Court because it raises matters that are pending before The Honorable Judge Lin.**

None of Mr. Sims' assertions or claims are properly before this Court. In the past when an individual plaintiff in a civil rights case attempted to intervene, this Court explained:

> The court is presiding over a case focused on an alleged pattern or practice of the use of excessive force and a Consent Decree intended to end any pattern or practice in that regard. It is not presiding over any individual incident in which a party alleges excessive force.

Dkt. 439 at 8. Here, Mr. Sims' amicus brief is particularly inapposite, because the Consent Decree addresses allegations of excessive force, and SPD did not use any force against Mr. Sims.[1]

---

[1] Since 2014, SPD's policy has required a force report any time a firearm is pointed at a person. No report was filed here for the simple reason that no firearm was pointed at Mr. Sims. Although Mr. Sims *perceived* that a firearm was pointed at him, OPA determined based on the video evidence, that the officers "kept their firearms at the low ready." *See* 2020OPA-0303 Closed Case Summary at 4, available at https://www.seattle.gov/Documents/Departments/OPA/ClosedCaseSummaries/2020OPA-0303ccs111320.pdf )
A close review of all the video shows that the officer pictured on page 9 of Mr. Sims' brief was pointing the muzzle of his firearm toward the ground and the rear passenger side of Mr. Sims' car (i.e., a low-ready covering position consistent with training). After Mr. Sims' traffic stop (but

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 3
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Moreover, Mr. Sims' contentions in this Court are the subject of pending cross-motions before the Honorable Judge Lin of this Court.

The City also notes that Mr. Sims' assertions about SPD's policies and training are incorrect. In fact, these assertions are contradicted by his own exhibits.[2] While it is correct that SPD addresses high-risk felony vehicle stops through training, it is important to recognize that these stops also are addressed through policy. SPD's overall use-of-force policy (Title 8), de-escalation policy (sect. 8.100), *Terry* stop policy (sect. 6.220), and search policy (sect. 6.180) all apply to such stops.

There is an important reason why SPD has not adopted a specific policy addressing high-risk felony traffic stops. SPD has determined that a policy setting out guidelines in advance as to when a firearm should be drawn during a traffic stop is not the best way to promote compliance with the Fourth Amendment. The Fourth Amendment requires that an officer's actions be reasonable under the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *United States v. Cortez*, 449 U.S. 411, 417, (1981). In light of that requirement, SPD trains

---

unrelated to it), SPD expanded its policy and training to make it clear that if an officer accidentally points a firearm at a person without intending to do so the officer must complete a force report—adding an extra layer of review in these situations. *See* Dkt. 658-3 at 25 (policy revision).

[2] *See, e.g.*, Sims' Ex. 21 at 57:14-60:22 (officers are trained that the decision to draw or point firearm must be supported by totality of circumstances); Sims' Ex. 23 at 81:15-21 (listing numerous SPD policies that apply to high-risk felony stops; Sims' Ex. 23 at 82:21-83:6 (". . . the policy covers why you would be able to [stop and detain somebody], what information you have to have before you could do that, but . . . how to do it, when to do it and all that is covered in training"); *see also* Sims' Ex. 1 (in-car video showing that the entire traffic stop was 5 minutes long, and that the lead officer was respectful, attempted to de-escalate, and immediately admitted his own error reading the license plate number—in what was plainly a difficult and upsetting situation for Mr. Sims).

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 4
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

officers to continuously assess risk based on all of the facts known to them. SPD does not want officers to fall into a pattern of thinking, "if these certain factors are present, then I should always draw my firearm," because there are times when that will not be reasonable. A policy addressing high-risk stops could encourage such thinking.

Training, in contrast to policy, gives SPD officers the tools and skills to think critically and ensure that their actions are reasonable. In training, officers practice reacting on their feet to a wide range of different scenarios. In accordance with policy section 6.220, officers are taught repeatedly in training that they must be able to articulate a justification for every search and every seizure, as well as single action that extends the scope of a search or seizure (or places any additional limitation on a person's liberty). Similarly, in accordance with policy section 8.200, officers are taught repeatedly in training that they must be able to explain why every single use of force is reasonable, necessary, and proportional.

OPA has recommended that SPD consider adopting a specific policy that governs high-risk felony stops. That recommendation and the public dialogue between OPA and SPD over it, reflect a strength of the City's accountability system—not a weakness.

Finally, Mr. Sims' assertions about SPD's de-escalation policy and training are inaccurate. The assertions rely on statements taken out of context.[3] In the past, the City and the Monitor have provided

---

[3] SPD policy 8.100 does not define pointing a firearm as de-escalation. It identifies a number of de-escalation tactics, including "verbal persuasion," "advisements and warnings," "clear instructions," "verbal techniques … to calm an agitated subject," and consideration of whether a subject has a "physical or psychological inability to comply." Nor are officers trained that way. Mr. Sims did not provide the relevant testimony of SPD's 30(b)(6) designees in his submission to this Court. However, the City has provided that testimony in the appropriate forum (before Judge Lin). *See* Sims v. City et al, Civ. No. 2:22-cv-00483, Defendants' Resp. to Plfs.' Mot. for Summ. Judgment (Dkt. 53) at 4:10-21, and accompanying exhibits.

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 5
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

substantial briefing to the Court about SPD's policy and training on de-escalation, and the City will not replicate that material here.[4]

### III. Conclusion

For the foregoing reasons, the City asks this Court to consider the thoughtful contributions and weighty policy considerations raised in the briefs of CPC and ACLU. Mr. Sims' brief, however, raises issues that are more properly presented to The Honorable Judge Lin.

---

[4] *See, e.g.*, Dkt. 191 at 2:1-3 (Monitor's mem. submitting SPD's training, including de-escalation); Dkt. 212 at 13, 17-18 (Monitor's mem. describing how de-escalation is central to SPD's use-of-force policy); Dkt. 212 at 15 (SPD's de-escalation training audited by U.S. Department of Justice and Monitoring Team); Dkt. 383 at 19 (Monitor's description of training, including de-escalation); Dkt. 471 at 5:3-10 (describing updates to de-escalation policy, including that officers should consider a subject's possible fear and anxiety); Dkt. 658 at 13:14-12:6 (describing policy revisions and improved tactics for de-escalation in crowd settings aftermath of 2020 protests—implementing SPD's own lessons learned as well as recommendations of OIG, OPA, and CPC).

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 6
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Respectfully submitted,

DATED this 17th day of May, 2023.

    For the CITY OF SEATTLE
    ANN DAVISON
    Seattle City Attorney

    *s/ Kerala Cowart*
    Kerala Cowart, WSBA #53649
    Assistant City Attorney
    Phone: (206) 733-9001
    Fax: (206) 684-8284
    Email: Kerala.Cowart@seattle.gov

    *s/ Jessica Leiser*
    Jessica Leiser, WSBA #49349
    Assistant City Attorney
    Phone: (206) 727-8874
    Fax: (206) 684-8284
    Email: Jessica.Leiser@seattle.gov

    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050

DEFENDANT CITY OF SEATTLE'S RESPONSE TO BRIEFS OF AMICI CURIAE - 7
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200