# EXHIBIT

# A

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF SEATTLE,<br><br>  Defendant. | Case No. C12-1282 JLR<br><br>**BRIEF OF AMICUS CURIAE COMMUNITY POLICE COMMISSION IN SUPPORT OF JOINT MOTION TO APPROVE COMPLIANCE AGREEMENT** |

TO:         Clerk of the Court

AND TO:     All Parties and Counsel of Record

## I.     INTRODUCTION

The people of Seattle are the ultimate guarantors of police accountability. The people of Seattle—through their democratically elected representatives, community engagement bodies such as the Community Police Commission (CPC), and institutionalized accountability entities such as the Office of Police Accountability (OPA) and the Officer of Inspector General for Public Safety (OIG)—are the proper authority over the police, just as the people of Seattle are the proper authority over all government actions.

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - 1
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

The Department of Justice (DOJ), at the request of Seattle community groups, began an investigation in 2011 into Seattle policing practices, leading to the agreed Consent Decree in 2012 between the DOJ and the City of Seattle (City). Since 2012, the DOJ and the City have implemented police reform commitments outlined in the Consent Decree under this Court's supervision. But the Consent Decree is not a permanent substitute for the democratic process. Now, after more than a decade, it is time to begin the process of returning authority over policing to the people of Seattle. The CPC agrees with the DOJ and the City ("Parties") that the Parties' continued efforts and the Court's continued involvement should focus on two areas—use of force in crowds and accountability—that the Court has previously identified as areas of concern. The CPC thus submits this amicus brief in support of the Joint Motion to Approve Compliance Agreement (Dkt. # 727).

## II.  FACTUAL BACKGROUND

The Court is of course familiar with this litigation and police reform in Seattle, but the CPC offers this brief timeline of key events from the CPC's perspective:

- 2011: DOJ begins investigation of the City's policing practices at the request of community groups.

- July 27, 2012: DOJ files Complaint against the City under the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141, alleging that the Seattle Police Department (SPD) "engages in patterns or practices of using unlawful force that systematically deny the people of Seattle their constitutional rights." Dkt. #1. The same day, the DOJ and City enter into a Settlement Agreement and Memorandum of Understanding (MOU) (collectively, "2012 Agreements") to settle the Complaint, with the stated goal of "ensuring that police services are delivered to the people of Seattle in a manner that fully complies with the Constitution and laws of the United States, effectively ensures public and officer safety, and

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - 2
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

promotes public confidence in the Seattle Police Department and its officers." Dkt. # 3-1 at 1. The 2012 Agreements require the City to establish the CPC, recognizing that "[t]he community is a critical resource" and that "ongoing community input into the development of reforms, the establishment of police priorities, and mechanisms to promote community confidence in SPD will strengthen SPD and facilitate police/community relationships necessary to promote public safety." Id. at 2.

- Sept. 21, 2012: Court preliminarily approves the Settlement Agreement, along with certain agreed modifications. Dkt. # 13 ("Consent Decree").

- 2013-2017: CPC convenes an extensive public engagement program involving thousands of community members and 13 community organizations. CPC issues police accountability reform recommendations based on public engagement program. SPD implements reforms; Monitor assesses compliance with Consent Decree. City enacts 2017 Accountability Ordinance. Dkt. # 396-1.

- Sept. 29, 2017: City moves for declaration that it has achieved "full and effective" compliance with the Consent Decree and that the case should move forward to the Phase II sustainment period. Dkt. # 419.

- Oct. 13, 2017: CPC files amicus letter "agree[ing] that . . . the City has achieved 'full and effective compliance' with the Consent Decree, and that the focus of this case should now shift to the City demonstrating sustained compliance with the Consent Decree." Dkt. # 421-1. CPC notes that "'full and effective compliance' is neither the end of police reform in Seattle, nor a verdict on remaining community concerns about police practices. It does not mean 'mission accomplished.'" Id. CPC notes that the Consent Decree "does not address

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - 3
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

every important issue with respect to policing in Seattle," and specifically notes reform efforts that have gone beyond the Consent Decree's requirements. Id.

- Jan. 10, 2018: Court grants City's motion to declare full and effective compliance with consent decree, holding: "The Phase II sustainment period of the Consent Decree shall commence on the date this Order is filed." Dkt. # 439 at 16. However, Court notes: "If collective bargaining results in changes to the [2017 Accountability Ordinance] that the court deems to be inconsistent with the Consent Decree, then the City's progress in Phase II will be imperiled." Id. at 15.

- Mar. 13, 2018: Court issues Order (Dkt. # 448) approving the parties' agreed plan for proceeding under the Phase II sustainment period ("Sustainment Plan").

- Dec. 3, 2018: Court issues order to show cause "whether the court should find . . . the City . . . has failed to maintain full and effective compliance with the Consent Decree" (Dkt. # 504 at 1), in part because of the outcome of the City's "collective bargaining with SPOG [Seattle Police Officers Guild] and the impact of that bargaining on the [2017] Accountability Ordinance."

- May 21, 2019: Court finds City "has fallen partially out of full and effective compliance with the Consent Decree" as it relates to accountability. Dkt. #562 at 2.

- May 7, 2020: City and DOJ jointly move to terminate Consent Decree provisions assessed under Sustainment Plan. Dkt. #611.

- May 25, 2020: Derek Chauvin murders George Floyd

- June 4, 2020: City withdraws from joint motion to terminate, noting that "unprecedented levels of protests have occurred in the City that engaged [SPD] in significant crowd management actions," which are "governed by policies implemented under the Consent

BRIEF OF AMICUS CURIAE COMMUNITY POLICE COMMISSION - 4
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

Decree, including crowd management and use of force," and thus the City wished "additional time" to determine whether termination remained appropriate. Dkt. #621.

- 2020-2022: SPD continues reforms and Monitor continues assessing compliance.
- May 13, 2022: Monitor submits 2022 Comprehensive Assessment of the Seattle Police Department, concluding that SPD has "sustained full and effective compliance" in all areas except for use of force during the 2020 protests, and outlining actions to "continue . . . pursuit of full compliance with the Consent Decree." Dkt. # 709 at 8. Monitor notes that although the Consent Decree "is a powerful tool for ensuring safe, effective, and constitutional policing," "the Consent Decree does not, and cannot, alone ensure public safety services in Seattle that align with the needs, challenges, values, and vision of Seattle's community." Id. at 5.
- Mar. 28, 2023: City and DOJ file Joint Motion to Approve Compliance Agreement. Dkt. #727.

### III.   ARGUMENT

The Consent Decree exists not for the Parties or the Court but for the people of Seattle—specifically, it exists to "ensur[e] that police services are delivered to the people of Seattle in a manner that fully complies with the Constitution and laws of the United States, effectively ensures public and officer safety, and promotes public confidence in the Seattle Police Department and its officers." Dkt. # 3-1 at 1. From the beginning of this action, the Parties have recognized the critical importance of community input to ensure that the Court hears from the people of Seattle during the Consent Decree process. See Dkt. #1-1 at 3 (referring to meetings in February 2011 with "dozens of community stakeholders"); Dkt. # 3-1 at 2 (recognizing that "[t]he community is a critical resource"). But the Consent Decree process by its nature only permits limited community input: the

BRIEF OF AMICUS CURIAE COMMUNITY POLICE COMMISSION - 5
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

CPC exists as the official entity to give "ongoing community input into the development of reforms, the establishment of police priorities, and mechanisms to promote community confidence in SPD," (id.); however, the CPC is not a Party, nor is it the Monitor, nor does it have the Court's role in overseeing the Consent Decree.

The CPC agrees with the Parties that the City has made notable progress in complying with the Consent Decree, which is why the CPC writes in support of the Joint Motion to Approve Compliance Agreement (Dkt. # 727). In fact, the City's progress demonstrates why the CPC believes the Parties are correct to request that the Court replace the Consent Decree with the proposed Agreement on Sustained Compliance ("Compliance Agreement"), which will focus the Parties' work and the Court's further supervision on two specific areas—use of force in crowd management situations and accountability—rather than all the areas in the Consent Decree.

But compliance with the Consent Decree does not mean that police accountability work is finished. CPC believes that focusing the Parties and the Court's actions through the Compliance Plan will allow the ultimate guarantors of police accountability—the people of Seattle—to continue to improve policing outside of the judicial process, while retaining the Court's involvement in areas that have raised the Court's concern in the past. For example, the people of Seattle, through their elected representatives, enacted the 2017 Accountability Ordinance, which addresses the roles of the OPA, the OIG, the CPC, and also includes various provisions on accountability, such as the disciplinary appeals process, maintaining of records and databases, and coordination and meetings between accountability entities. See Dkt. # 396-1. However, the Accountability Ordinance was, as the Court noted, "still subject to alteration during the City's collective bargaining process with SPD's labor unions," (Dkt. # 562 at 5) and in fact subsequent bargaining "eliminat[ed] reforms instituted by the [2017] Accountability Ordinance." Id. at 13. That is, as the Court recognized, the

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - 6
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

2017 Accountability Ordinance established accountability reforms, but then—as the CPC noted at the time—the City and the Seattle Police Officers Guild ("SPOG") agreed to a contract that significantly undermined the reforms in the 2017 Accountability Ordinance. The Court thus ruled that the City had "fallen out of full and effective compliance with the Consent Decree concerning SPD discipline and accountability." Id.

After the Court's ruling, the City hired a consultant to make recommendations for further improvements to the City's accountability systems. See Dkt. #731 at ¶ 15 (Declaration of Gino Betts, Jr.). The City then addressed several recommendations in bargaining—for example, the City's bargaining with the Seattle Police Management Association (SPMA) resulted in accountability improvements that gave OPA adequate time to investigate misconduct complaints during parallel criminal proceedings (id. ¶ 16). The SPMA contract also changed the disciplinary appeals system in ways that enhance accountability—for example, by applying a preponderance standard (rather than the higher standard some arbitrators had used for misconduct cases) and requiring the arbitrators to uphold the Chief of Police's decision finding misconduct unless it is arbitrary or capricious. See Dkt. #733 at ¶ 15 (Declaration of Danielle Malcolm). This is precisely the type of democratic accountability improvements, started through legislation and then subsequently agreed in good-faith negotiations between the City and SPMA, that can occur even without the Consent Decree. The SPMA contract demonstrates that collective bargaining can result in meaningful accountability improvements: any future SPOG contract should contain, at a minimum, accountability provisions similar to the ones the City negotiated with SPMA.

The 2017 Accountability Ordinance was not the only police reform in the last several years that happened through the democratic process. In late 2020, SPD proposed changes to its use of force and crowd control process. The CPC solicited community feedback on these proposed

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - 7
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

changes through a town hall and a web platform and made recommendations based on this community feedback. (As far back as 2016, the CPC had asked SPD to suspend the use of "blast balls" (a type of grenade that emits loud noises and bright light) in crowd control situations.) Then, in 2021, the City passed new legislation restricting and regulating less lethal weapons by SPD, including blast balls. See https://council.seattle.gov/2021/08/16/council-passes-new-version-of-less-lethal-weapons-ban/. However, this legislation needs to go through the Consent Decree process, involving formal review by the DOJ, the Monitor, and the Court, and the CPC understands that this process has not yet occurred. Even so, this legislative action demonstrates that the people of Seattle can engage in police reform outside of the Consent Decree: the people of Seattle did not need the Consent Decree to pass this reform legislation.

The proposed Compliance Plan provides the Court with a process to ensure that accountability improvements similar to the ones in the 2017 Accountability Ordinance, the SPMA contract, or the less lethal weapons legislation continue even after the Consent Decree process is complete. Specifically, the Compliance Plan proposes that the Monitor retain an independent consultant to complete the Seattle Accountability System Sustainability Assessment of the City's police accountability systems. Dkt. #727-1 at 13 ¶ 85. This assessment will review whether the authorities that the people of Seattle have established—the OIG, the OPA, and the CPC—will sufficiently safeguard accountability so that the Court can feel comfortable in entrusting continued police accountability to these entities rather than the Consent Decree process. The Compliance Plan focuses appropriately on the systems that will replace the consent decree: it assesses whether the accountability systems the people of Seattle have instituted are strong enough to meet current and future police accountability challenges.

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - *8*
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

Recent events have demonstrated the need for this assessment. The 2017 Accountability Ordinance states that SPD shall "[i]n consultation with CPC, OIG, and OPA . . . establish a schedule and protocol for regular and timely review of proposed revisions to the SPD Policy Manual for the purpose of ensuring SPD's policies are consistent with best practices, which may include recommendations from civilian oversight entities," and provides specifically that SPD shall "allow opportunity for meaningful SPD Policy Manual reviews." Dkt. #396-1 at 83 (2017 Accountability Ordinance § 3.29.410.C.). However, according to a recent article in the Seattle Times, SPD has prepared a draft policy on the use of deception or "ruses"—for example, SPD's 2020 broadcast of false radio dispatches that the Proud Boys were gathering downtown (see https://www.seattletimes.com/seattle-news/politics/seattle-police-may-limit-when-officers-can-use-deception/ (Apr. 13, 2023)—but the CPC has not had meaningful input into or consultation about this draft policy. The assessment in the Compliance Plan would presumably include a review of exactly this type of issue, which would help inform the Court about whether the non-judicial oversight mechanisms that the people of Seattle have established are robust enough that the Court may end its oversight over police reform in Seattle.

But that is not the decision before the Court on this Motion. The Court may have the opportunity to assess whether the City has sufficiently demonstrated compliance with the areas in the Compliance Agreement upon a motion to terminate the Compliance Agreement. Dkt. #717-1 at 11 ¶ 76. If neither Party files such a motion, the Court will have the opportunity to assess compliance in a hearing a year from the Compliance Agreement's effective date. Id. at ¶ 77. This Motion relates only to narrowing the Court's continued supervision to two areas that have raised the Court's concern in the past—use of force in crowds and accountability—rather than all the areas in the Consent Decree. The CPC supports this Motion so that we can begin the process of returning

BRIEF OF AMICUS CURIAE COMMUNITY POLICE
COMMISSION - *9*
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195

authority over law enforcement to the ultimate guarantors of police accountability: the people of Seattle.

DATED April 26, 2023        Respectfully submitted,

By: /s/ Drew Hansen
Edgar G. Sargent, WSBA #28283
esargent@susmangodfrey.com
Daniel J. Shih, WSBA #37999
dshih@susmangodfrey.com
Floyd G. Short, WSBA # 21632
fshort@susmangodfrey.com
Drew D. Hansen, WSBA #30467
dhansen@SusmanGodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Phone: (206) 516-3880
Fax: (206) 516-3883

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Drew D. Hansen
Drew D. Hansen

BRIEF OF AMICUS CURIAE COMMUNITY POLICE COMMISSION - *10*
Case No. C12-1282 JLR

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

11729880v1/017195