UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SEATTLE,<br><br>　　　　　　　　　Defendant. | CASE NO. C12-1282JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART JOINT MOTION TO APPROVE PROPOSED AGREEMENT ON SUSTAINED COMPLIANCE |

**I.　INTRODUCTION**

In 2011, the United States Department of Justice (the "DOJ") completed an investigation in which it found reasonable cause to believe that Seattle Police Department ("SPD") officers had engaged in a pattern or practice of using excessive force in violation of the Fourth Amendment to the United States Constitution. (*See* 12/16/11 Investigation Report (Dkt. # 1-1).) Subsequently, Plaintiff the United States of America (the "United States") and Defendant the City of Seattle (the "City") (together, the "Parties") negotiated, and the court approved, a settlement agreement and memorandum of

ORDER - 1

understanding (the "Consent Decree") designed to address the DOJ's findings.  (Consent Decree[1]; *see also* Findings of Fact and Conclusions of Law (Dkt. # 14).)  The Parties now jointly move for approval of their proposed Agreement on Sustained Compliance (the "Compliance Agreement") and entry of an Order of Resolution.  (Joint Mot. (Dkt. # 727); Prop. Compliance Agreement (Dkt. # 727-1).)  The Parties each filed a memorandum in support of their joint motion.  (City Mem. (Dkt. # 728); US Mem. (Dkt. # 730).)  In addition, the court heard argument from the Parties during a public hearing on May 30, 2023.  (*See* 5/30/23 Min. Entry (Dkt. # 758).)

The court has reviewed the Parties' submissions, the relevant portions of the record, and the governing law.[2]  Being fully advised, the court GRANTS in part and DENIES in part the Parties' joint motion to approve the Compliance Agreement.  Specifically, the court agrees with the Parties that the City has achieved sustained compliance with the majority of the core commitments set forth in Paragraphs 69 through 168 of the Consent Decree.  (*See* Consent Decree ¶¶ 69-168.)  Thus, the court GRANTS the Parties' joint motion to the extent the Parties seek a finding that the City has sustained full and effective compliance, for at least two years, with the commitments set forth in the Consent Decree regarding crisis intervention, stops and detentions, bias-free

---

[1] The term "Consent Decree" refers collectively to the Parties' settlement agreement (Dkt. # 3-1); the Parties' Memorandum of Understanding, which established the Community Police Commission ("CPC") and the Crisis Intervention Committee ("CIC") as required by the settlement agreement; and the court's September 21, 2012 order modifying and preliminarily approving the settlement agreement (Dkt. # 13).

[2] The court has also reviewed *amici curiae* briefs filed by the CPC (Dkt. # 767-1), the American Civil Liberties Union (Dkt. # 744-1), and Anthony Sims (Dkt. # 739-1).

policing,[3] supervision, and the Office of Police Accountability and TERMINATES the Parties' obligations under Paragraphs 130 through 168 of the Consent Decree. In addition, the court GRANTS the Parties' joint motion to the extent the Parties ask the court to adopt many of their proposals for actions that the City and SPD must complete with respect to the use of force in crowd settings and ensuring a sustainable system of review and accountability regarding the conduct of officers and the policies and principles of SPD.

The court, however, DENIES the Parties' joint motion to the extent the Parties seek the court's approval of an agreement that supersedes the Consent Decree. The significance of the Consent Decree extends beyond the settlement agreement between the Parties. Rather, it is an order of the court, and therefore it is the responsibility of the court—rather than of the Parties—to determine when it is appropriate to terminate the Consent Decree and dismiss this action.

## II.   ORDER

The Consent Decree provides that the court will retain jurisdiction over this action for all purposes, until such time as the court determines that the City has achieved "full and effective compliance" with the Consent Decree and has maintained that compliance

---

[3] In the context of the Consent Decree, "bias-free policing" refers to SPD's commitments to revise its Unbiased Policing policy, develop training on bias-free policing, and reinforce to officers that discriminatory policing is unacceptable. (Consent Decree ¶¶ 145-52.) "Bias-free policing," within the meaning of the Consent Decree, does not include eliminating racial disparities in SPD's enforcement activities. (*See id.*) As discussed in more detail below, however, the court takes seriously the concerns raised by the community and by *amici* regarding racial disparities in policing.

for no less than two years.  (Consent Decree ¶ 223 (as modified).)  The court and the Parties refer to the City's maintenance of full and effective compliance with the commitments set forth in the Consent Decree for a period of two years or more as achieving "sustained compliance."

As the court stated in its remarks during its May 30, 2023 hearing on the Parties' joint motion, the court is immensely proud of the efforts SPD has undertaken since this matter began in 2012.  In particular, SPD has made tremendous improvements in its policies, methods of operation, and leadership with respect to the areas of use of force, stops and detentions, and crisis intervention.  SPD's efforts with respect to data collection and analysis, too, are like night-and-day when compared to the status of data collection and analysis before the implementation of the changes required under the Consent Decree.  The court is also extremely proud of the constructive approaches to policing that have resulted from the efforts of the accountability triad of the Office of Police Accountability ("OPA"), the Office of the Inspector General ("OIG"), and the Community Police Commission ("CPC").

Therefore, the court finds and concludes, consistent with the Monitoring Team's recommendations in its May 2022 Comprehensive Assessment of the Seattle Police Department ("2022 Comprehensive Assessment"), that the City has demonstrated sustained full and effective compliance with the sections of the Consent Decree regarding creation of the CPC (Consent Decree ¶¶ 3-12); crisis intervention (*id.* ¶¶ 130-37); stops and detentions (*id.* ¶¶ 138-44); bias-free policing (*id.* ¶¶ 145-52); supervision (*id.* ¶¶ 153-63); and the OPA (*id.* ¶¶ 164-68).  (*See* 2022 Comprehensive Assessment

(Dkt. # 709) (recommending findings of sustained compliance in these areas).)  Thus, the court TERMINATES the City's obligations under these provisions of the Consent Decree.

At the same time, however—as the Parties acknowledge and as the Monitoring Team found in the 2022 Comprehensive Assessment—the City and SPD have not yet demonstrated sustained compliance with the use of force provisions of the Consent Decree as applied to large-scale crowd management settings.  (*See* Prop. Compliance Agreement ¶ 78; Consent Decree ¶¶ 69-129; 2022 Comprehensive Assessment.)  The Parties also agree that the City has more work to do in ensuring that there exists a sustainable system of review and accountability.  (*See* Prop. Compliance Agreement ¶ 78.)  Indeed, the information generated by the review and accountability system is critical to ensuring that SPD can sustainably continue to improve accountability after the court's supervision ends.  Finally, as the Monitoring Team observed in the 2022 Comprehensive Assessment, the City and SPD have further work to do to mitigate racial disparities in SPD's provision of policing services.  (*See* 2022 Comprehensive Assessment.)

As a result, the court finds and concludes that the City and SPD must meet additional milestones to demonstrate sustained full and effective compliance with the use of force and accountability requirements of the Consent Decree and to achieve final resolution of this matter.  Therefore, the court ORDERS the City to complete the following tasks, by the deadlines set forth below.  As an important step to transitioning greater responsibility for police reform to the community, SPD and OIG are charged with

primary roles in carrying out this work, with oversight roles for the Monitor and the DOJ. After these tasks are complete, the City (either on its own or jointly with the United States) may move for an order terminating the Consent Decree and dismissing this case.

**A.    Use of Force**

1.    SPD shall revise its crowd management policy to address feedback from the ongoing Sentinel Event Review ("SER") process and ensure that officers are trained on the updated policy.

2.    SPD shall develop an alternative reporting and review process for force used in crowd settings to address the Monitor's findings regarding breakdowns in reporting and review that occurred in 2020. This alternative process shall be designed to ensure timely reporting and review in the event that significant, sustained protests arise again.

3.    Consistent with City law, within 90 days of the filing date of this order, the City shall provide the draft crowd management policy and alternative reporting and review process discussed above in Paragraphs 1 and 2 to the DOJ and the Monitor. The Parties and the Monitor shall follow the Review Process set forth in Paragraphs 177-79 of the Consent Decree. (*See* Consent Decree ¶¶ 177-79.) The City shall file the updated crowd management policy and alternative reporting and review process with the Court upon completion of the Paragraphs 177-79 Review Process.

4.    SPD shall continue to consider and respond to the recommendations of the SER process. SPD shall provide a report on the status of all recommended policy changes arising out of the SER process to the court no later than two weeks after the

filing date of this order. In the event a specific recommendation of the SER directed to SPD does not result in a policy change, the reasons shall be explained in the report.

5. SPD shall provide a report to the court no later than December 15, 2023, on the status of implementation of RCW 10.114.011 and RCW 43.102.020, regarding investigations of the use of deadly force. This report shall include an explanation of how this legislation affects SPD's Force Investigation Team (*see* Consent Decree ¶¶ 112-18).

**B.     Accountability**

6. In a technical assistance role, the Monitor shall retain an independent consultant to complete the Seattle Accountability System Sustainability Assessment of the City's police accountability systems. The consultant's draft report shall be submitted to the Parties no later than November 24, 2023. The consultant's report shall be filed with the court no later than December 29, 2023.

7. The City shall develop a response to the consultant's report that provides explanations for any recommendations not adopted. This response shall be filed with the court no later than 30 days after the filing of the consultant's report described in Paragraph 6.

8. SPD shall develop a data transparency, usability, and accessibility plan that addresses how to (1) improve the collection of data on race in stops, detentions, and use of force; (2) incorporate this data in reporting; and (3) provide public access to these reports and any other data that CPC and OIG identify as being critical to transparency. SPD shall file a report on the status of implementing the recommendations arising out of this planning process with the court no later than December 15, 2023.

ORDER - 7

9.  The court understands that collective bargaining between the City and the police unions is outside of the scope of its supervision of the Consent Decree. Nevertheless, in order to evaluate whether the City has achieved sustained compliance with those areas of the Consent Decree that remain open, it is critical for the court to understand whether and how the outcome of the collective bargaining process affects SPD's accountability and review systems.  (*See* 5/21/19 Order (Dkt. # 562) (finding the City partially out of compliance with the Consent Decree after the Seattle City Council's approval of the previous version of the collective bargaining agreement ("CBA") between the City and the Seattle Police Officers' Guild ("SPOG")).)  Accordingly, within 30 days of reaching a Tentative Agreement with SPOG regarding the 2021 renewal of the SPOG CBA, the City shall file with the court an analysis of the Tentative Agreement's effect, if any, on SPD's accountability and review systems and the implementation of the City's Accountability Ordinance.

**C.    Ongoing Assessments**

10.  To ensure that the progress documented in previous assessments is sustained, SPD shall update outcome measures regarding the use of force (including crowd management); crisis intervention; stops and detentions; bias-free policing; and supervision (including the Early Intervention System, now known as the Equity, Accountability & Quality System).  OIG shall review SPD's reporting and data analysis for accuracy.  The City shall file these outcome measures with the court by February 29, 2024.

1    11.    In collaboration with the Monitor, OIG shall develop a Workplan
2  describing its approach for ensuring continued robust, independent monitoring of SPD.
3  As part of the Workplan, OIG shall develop a methodology and timeline for ongoing
4  assessment of the following areas: use of force (including crowd management); crisis
5  intervention; stops and detentions; bias-free policing; and supervision (including the
6  Force Review Board and the Equity, Accountability & Quality System). The City shall
7  file OIG's Workplan with the court within 21 days of the filing date of this order.

8    12.    OIG shall conduct a Use of Force Assessment examining 2021, 2022, and
9  2023 data on SPD's use of force. As components of the Use of Force Assessment, OIG
10 shall examine force used in crisis incidents, the use of less lethal devices, and force used
11 in the crowd management context. The assessment also shall provide an update on the
12 force-related issues identified by the Monitor in the 2022 Comprehensive Assessment.
13 (*See* 2022 Comprehensive Assessment at 89-90.) OIG shall provide its draft Use of
14 Force Assessment to the DOJ and the Monitor by January 31, 2024. The City shall file
15 OIG's Use of Force Assessment with the court by February 29, 2024.

16    13.    SPD shall develop a comprehensive plan for applying best-practice
17 methodological approaches to identifying racial disparities in use of force, crisis
18 intervention, and stops and detentions. (*See, e.g.*, 2022 Comprehensive Assessment at
19 74-80 (discussing racial disparities in use of force); *id.* at 133-44 (discussing disparities
20 across SPD's enforcement activities).) This plan shall include approaches for identifying
21 disparities caused by police activities and evidence-based strategies for mitigating those
22

1 disparities.[4]  This plan shall be developed in collaboration with OIG, with technical

2 assistance by the Monitor and input from the CPC.  The City shall file this plan with the

3 court by no later than December 15, 2023.

**D.   Administrative Provisions**

14.  SPD may request technical assistance from the Monitor, as needed, in fulfilling the obligations set forth in this order.  The Monitor may provide the requested technical assistance as long as the requested assistance will not conflict with the Monitor's duties under the Consent Decree and falls within the Monitor's budget.

15.  The Monitor shall file a brief report with the court by March 29, 2024, regarding the status of City's compliance with the tasks and timelines set forth above.  The Monitor shall provide a draft of this report to the Parties at least thirty days before filing.

16.  When the City has completed the work set forth in Paragraphs 1-15, above, it shall file with the court a report demonstrating the status of its compliance with the requirements of this order.  The City may move the court at any time to terminate the Consent Decree and dismiss this matter if it demonstrates, and the court finds by a preponderance of the evidence, that the City has complied with the requirements of this order.  The Parties may also jointly ask the court to terminate the Consent Decree and

---

[4] The court recognizes that it is important to acknowledge and understand the extent to which disparities in policing arise from disparities upstream of police interactions.  These upstream disparities, however, call for whole-of-government intervention that is beyond the scope of the City's obligations under the Consent Decree.

dismiss this matter at any time after the City has demonstrated, and the court has found, compliance with the requirements of this order by a preponderance of the evidence.

17. One year from the filing date of this order, if this case has not yet been dismissed, the Monitor shall a file a follow-up report regarding the status of the City's compliance with the tasks and timelines set forth above. After reviewing the Monitor's report, the court will hold a hearing to assess the status of the City's compliance with the requirements of this order.

IT IS SO ORDERED.

Dated this 7th day of September, 2023.

JAMES L. ROBART
United States District Judge