1

2

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

Honorable James L. Robart

3

SEP 15 2023  MG

4

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

5

6

7

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

8

9

10

UNITED STATES OF AMERICA,

CASE NO.  2:12-cv-1282-JLR

11

Plaintiff,

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF

12

v.

13

CITY OF SEATTLE

14

Defendant.

15

16

## I.    INTRODUCTION

17

COMES NOW Petitioner Kurt Benshoof ("Petitioner") petitioning in good faith for leave

18

from this Court to file an Amicus Curiae Brief in order to assist this case of significant public

19

interest, to supplement the efforts of counsels for the United States of America, and to draw this

20

Court's attention to evidence and authority that may otherwise escape consideration.

21

Whatever the original intentions of the Department of Justice may have been more than a

22

decade ago, this is not an adversarial proceeding.  In layman's terms, the parties are playing

23

footsie under the table while they stage a dog-and-pony-show to deceive this Court and placate

24

the public.  The police officers have been blamed as the fall guys.  The public is being gaslit.

25

26

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 1 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## II.   STATEMENT OF FACTS

Petitioner incorporates by reference as if fully restated herein the following documents:

1) *Benshoof v. Admon, et. al.*, 2:23-cv-1392-JNW (see attached paper document),

2) *Benshoof v. Keenan et. al.*, 2:23-cv-00751-RAJ (including Brief in Support, Affidavit in Support, and all Exhibits),

Petitioner states the following upon his information and belief and will testify under oath to all alleged herein.

Petitioner contacted numerous Department of Justice and City of Seattle ("City") attorneys two weeks ago by email to address these substantive issues.  No one from the Department of Justice nor the City responded to Petitioner.

Petitioner has vast personal knowledge acquired over the last three years, including firsthand witness information he is willing to testify to under oath, hundreds of gigabytes of video evidence, and thousands of pages of documents.  In aggregate, they constitute clear and convincing evidence that the City's senior leadership knowingly and willfully acted to enable, authorize, and promulgate biased policing against any member of the public who attempts to address the City's *de facto* policies violative of the Civil Rights Act of 1964.

Former Mayor Jenny Durkan ("Durkan") was the U.S. Attorney for the Western District of Washington when this $200,000,000 case was initiated.  Durkan created a Civil Rights Department in her office prior to becoming Mayor of Seattle.  Upon Petitioner's information and belief Durkan was well acquainted with the Civil Rights Act of 1964 upon her election as Mayor.

Despite Durkan's ostensible knowledge of, and commitment to, civil rights the City has spent the last three years systematically arresting and persecuting Petitioner.  Simply stated, it is the most extensive conspiracy to deprive a reverend of First Amendment rights secured by the

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 2 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Constitution in the history of Washington state.  When such a pattern of conduct spans three years, two Mayors, and two City Attorneys, deductive reasoning produces the inescapable conclusion that senior City leadership continues to knowingly and willfully allow, enable, authorize or perpetrate systemic violations of the Civil Rights Act of 1964.

As a matter of spiritual and ethical principle, Petitioner acts as his brother's keeper regardless of gender, skin color, sexual orientation, religious belief, socioeconomic status, or political ideology.  With or for Seattle Police Department ("SPD") officers, Petitioner has played Dungeons and Dragons, attended potlucks, written letters of commendation, shared holidays and children's birthdays, bought flowers for dying loved ones, and offered moral counsel.   When appropriate, Petitioner has also filed Office of Police Accountability complaints to address matters of public concern.

SPD officers are not the problem plaguing Seattle.  SPD officers are trained to follow City *policies* even when those policies conflict with state or federal law.  Those policies have been promulgated by the City Attorney's Office.  Under policy directives of Peter Holmes and Ann Davison, by and through attorney liaisons with the SPD, police officers have been placed in the untenable position of either: 1) following City policies that violate state and federal laws, as well as our state and federal constitutions, or 2) violating City policies and facing reprimand or termination.

### III.    STATEMENT OF ISSUES

1. **Should this Court grant Petitioner leave to file an Amicus Curiae Brief in order to assist this case of significant public interest, to supplement the efforts of counsels for the United States of America, and to draw this Court's attention to evidence and authority that may otherwise escape consideration.**

Yes.  The public welfare and the interests of justice so require this Court's leave in order

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 3 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

that there may be a full and open accounting of Petitioner's evidence and briefing as it

relates to the instant case.

2. **Does Petitioner have an "axe to grind" with the City which would render Petitioner's briefing too prejudicial for this Court's consideration?**

No. If Petitioner has learned one thing it is that if the City is allowed perpetrate

discriminatory policies against *one person*, the City will be allowed to discriminate

against *any person*. The issues under consideration are the City's pattern of biased

policing and the interests of the public good. Petitioner is simply the proverbial "canary

in the coal mine" offering his uniquely voluminous experiential evidence.

### IV.   EVIDENCE RELIED UPON

Petitioner relies upon the following: *Benshoof v. Admon, et. al.,* 2:23-cv-1392-JNW,

*Benshoof v. Keenan et. al.,* 2:23-cv-00751-RAJ (including Brief in Support, Affidavit in Support,

and all Exhibits).

### V.   ARGUMENT AND AUTHORITY

Although there is no federal rule or statute governing participation by amicus curiae at

the district court level, see *United States v. Gotti, 755 F.Supp.* 1157, 1158 (E.D.N.Y. 1991), a

federal district court has the inherent authority to invite participation by amicus curiae to assist

the court in its proceedings. *United States v. Louisiana,* 751 F.Supp. 608, 620 (E.D. La. 1990);

*United States v. Michigan,* 116 F.R.D. 655, 660 (W.D. Mich. 1987).

The decision to invite or accept participation by an amicus is committed to the sound

discretion of the court. *Alexander v. Hall,* 64 F.R.D. 152, 155 (D.S.C. 1974). The classic role of

the amicus curiae is to assist in a case of general public interest, supplement the efforts of

counsel, and draw the court's attention to law that may otherwise escape consideration. *Miller-*

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 4 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1   *Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9th Cir. 1982); see also

2   *New England Patriots Football Club, Inc., v. University of Colorado*, 592 F.2d 1196, 1198 n. 3

3   (1st Cir. 1979) (historically, the role of an amicus was "to aid the court in resolving doubtful

4   issues of law").

5

6        There is no requirement that an amicus be disinterested. *Funbus Systems, Inc. v*

7   *California Public Utilities Commission*, 801 F.2d 1120, 1125 (9th Cir. 1986); *Hoptowit v. Ray*,

8   682 F.2d 1237, 1260 (9th Cir. 1982).

9                                **VI.    CONCLUSION**

10       For the reasons elucidated herein, Petitioner requests that this Honorable Court grant his

11  Petition for Leave to File Amicus Curiae Brief.

12

13                                **VERIFICATION**

14       I, Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my

15  knowledge under penalty of perjury in the State of Washington.   Executed this 14th day of

16  September in the year 2023, in the city of Seattle, in the county of King, in the state of Washington.

17

18

19

20       I certify that this petition contains 1190 words, in compliance with Local Civil Rule 7.

21                          By: _Kurt Benshoof_

22                              Kurt Benshoof *Pro Se*

23                              kurtbenshoof@gmail.com
                                1716 N 128th Street
24                              Seattle, WA 98133
                                Ph: (206) 460-4202
25

26  PETITION FOR LEAVE TO FILE                              Kurt Benshoof, Petitioner
    AMICUS CURIAE BRIEF                                         1716 N 128th ST
    Page 5 of 5                                            Seattle, Washington 98133
                                                                (206) 460-4202
                                                           kurtbenshoof@gmail.com

1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
8                        AT SEATTLE

9

10

11  KURT A. BENSHOOF,
                              Plaintiff,        Case No. 2:23-cv-1392-JNW
12                    v.

13  MOSHE ADMON, DANIEL AUDERER,
    JUSTIN BOOKER, FREYA BRIER, CITY OF
14  SEATTLE, NATHAN CLIBER, ZACHARY
    COOK, BENJAMIN COOMER, ANITA
15  CRAWFORD-WILLIS, JENNY DURKAN,         DEMAND FOR EMERGENCY
    JAMES ERVIN, DAVID ESTUDILLO,          INJUNCTIVE RELIEF,
16  MARSHAL FERGUSON, MICHAEL FOX,
    COREY FOY, AMY FRANKLIN-BIHARY,        DEMAND FOR DECLARATORY
17  WILLIAM GATES, III, STEVEN GONZALEZ,   JUDGMENT,
    TYLER GOSLIN, WILLIE GREGORY, OWEN
18  HERMSEN, JAY INSLEE, DAVID KEENAN,     VERIFIED CLAIM FOR DAMAGES,
    GABRIEL LADD, DANEIL LENTZ, MAGALIE
19  LERMAN, MARY LYNCH, SARAH              DEMAND FOR TRIAL BY JURY ON ALL
    MACDONALD, ANTHONY MARINELLA,          COUNTS APPLICABLE,
20  RICARDO MARTINEZ, BRADLEY MOORE,
    KATRINA OUTLAND, JESSICA OWEN, PCC     DEMAND FOR THE EMPANEMENT
21  NATURAL MARKETS, KYLE REKOFKE,         OF A GRAND JURY
    STEVEN ROSEN, BLAIR RUSS, UMAIR
22  SHAH, SPROUTS FARMERS MARKET,
    MICHAEL THURSTON, JORDAN WALLACE,
23  SANDRA WIDLAN,

24                          Defendants.

25

26

---

INJUNCTIONS, DECLARATORY JUDGMENT              KURT BENSHOOF
CLAIM FOR DAMAGES                              1716 N 128th ST
**Page 1 of 280**                             Seattle, WA 98133
                                              kurtbenshoof@gmail.com

1
2

# Table of Contents

3

I.    RELATED CASES ........................................................................... 8

II.   NOTICE TO COUNSEL ................................................................. 9

III.  INTRODUCTION ........................................................................... 10

V.    PARTIES ........................................................................................ 15

VI.   JUDICIAL NOTICE ..................................................................... 19

VII.  STATEMENT OF FACTS ............................................................ 19

   A.    BACKGROUND - PLAINTIFF ................................................ 20

     1)    *Plaintiff's Religious Beliefs* ................................................ 20

     2) *Plaintiff's Disability* ........................................................... 23

     3) *Plaintiff's Class* .................................................................. 23

     4) *Parenting Agreement* .......................................................... 24

   B.    RICO ENTERPRISE .................................................................. 24

     1)    *Deception and Coercion* ...................................................... 24

     2)    *Conduct* ................................................................................ 31

     3)    *Enterprise* ............................................................................ 32

     4)    *Pattern* ................................................................................. 33

     5)    *Rackateering Activity* .......................................................... 33

     6)    *State Officers* ....................................................................... 34

     7)    *City of Seattle* ...................................................................... 35

     8)    *Financial Harms* .................................................................. 37

     9)    *Enterprise Policy Changes* .................................................. 38

   C.    SPROUTS FARMERS MARKET ............................................... 38

     1)    *SPD Incident #2020-264905* ................................................ 39

     2)    *SPD Incident #2020-268834* ................................................ 44

   D.    PCC NATURAL MARKETS ....................................................... 47

     1)    *October 3, 2020* ................................................................... 48

     2)    *October 18, 2020: Civil Admonishment* ............................. 48

     3)    *SPD Incident 2020-304716* .................................................. 49

     4)    *Emails with Steve Mitchell* ................................................. 50

     5)    *SPD Incident #2020-311598* ................................................ 51

     6)    *SPD Incident 2020-314225* .................................................. 53

     7)    *SPD Incident 2020-317337* .................................................. 53

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 2 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

| | | |
|---|---|---|
| 8) | *SPD Incident 2020-323700* | 54 |
| 9) | *SPD Incident #2020-346192* | 55 |
| 10) | *SPD Incident #2020-346226* | 56 |
| 11) | *SPD Incident #2021-32411* | 61 |
| 12) | *SPD Incident #2021-38488* | 62 |
| 13) | *Cook Restraining Order Part One* | 63 |
| 14) | *PCC Ballard* | 65 |
| 15) | *Cook Restraining Order – Part Two* | 66 |
| 15) | *PCC Legal Counsel* | 68 |
| **E.** | **DENIAL OF PARENTAL RIGHTS** | 68 |
| 1) | *Case No. 21-2-11149-8* | 69 |
| 2) | *SPD Incident #2021-230480* | 70 |
| 3) | *SPD Auto-Theft  and DV Calls/Emails* | 71 |
| 4) | *SPD Incident #2021-241501* | 72 |
| 5) | *Jane Addams Middle School* | 73 |
| 6) | *SPD Incident #2021-unknown* | 78 |
| 7) | *Case No. 21-5-00680-6 Barratry* | 81 |
| 8) | *At INDABA Racketeering Activity* | 85 |
| 9) | *Challenges to Subject Matter Jurisdiction* | 86 |
| 10) | *SPD Incident 2022-154753* | 87 |
| 11) | *SPD Incident 2022-173684* | 88 |
| 12) | *SPD Incident #2022-177198* | 89 |
| 13) | *Case No. 21-5-00680-6 Plaintiff Withdraws* | 90 |
| 14) | *SPD Incident #2022-215424* | 91 |
| 15) | *SPD 2023-08-16 No Report* | 92 |
| 16) | *A.R.W. Considers Suicide* | 93 |
| 17) | *Case No. 21-5-00680-6 Commissioner Moore* | 94 |
| 18) | *Guardian ad Litem* | 94 |
| 19) | *Money Laundering* | 95 |
| 20) | *SPD 2023-08-20 No Report* | 95 |
| 21) | *SPD Incident #2022-262382* | 96 |
| 22) | *SPD Incident #2022-265177* | 97 |
| 23) | *Case No. 21-5-00680-6 Trial in Absentia* | 98 |
| 24) | *SPD Incident #2022-338690* | 99 |

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 3 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

25)     *SPD Incident #2023-021770* ................................................................. 99
26)     *SPD Incident Non-Report* .................................................................. 101
F.      **ADA TITLE III** .................................................................................. 102
G.      **KING COUNTY JAIL** ...................................................................... 103
1)      *September 11, 2020* ............................................................................ 104
2)      *September 16, 2020* ............................................................................ 104
3)      *December 17, 2020* ............................................................................ 105
4)      *September 3, 2021* .............................................................................. 105
5)      *August 15, 2022* ................................................................................. 106
6)      *ADA Liability – King County* .......................................................... 107
7)      *Monell Liability SPD - Jail* ............................................................. 107
H.      **KING COUNTY DISTRICT COURT** .............................................. 108
1)      *Case No. 220014354* .......................................................................... 108
I.      **KING COUNTY SUPERIOR COURT** .............................................. 110
1)      *Invidious Discrimination Policy* ....................................................... 110
2)      *Court Mask Orders* ............................................................................ 110
3)      *Clerks's Office* ................................................................................... 112
4)      *Case No. 22-2-02932-3 Replevin* ....................................................... 113
5)      *Case No. 22-2-11112-7* ....................................................................... 116
6)      *Case No. 22-2-03826-8* ....................................................................... 116
7)      *Case No. 22-2-15958-8* ....................................................................... 123
8)      *Social Media Censorship* .................................................................. 126
9)      *Rackateering Activity* ........................................................................ 127
J.      **SEATTLE MUNICIPAL COURT** ..................................................... 128
1)      *SMC case no. 656927* ........................................................................ 128
2)      *SMC case no. 656748* ........................................................................ 134
3)      *SMC case no. 656749* ........................................................................ 139
4)      *SMC case no.  662870* ....................................................................... 143
5)      *SMC case no. 669329* ........................................................................ 146
6)      *SMC case no. 671384* ........................................................................ 149
7)      *Rackateering Activity* ........................................................................ 149
8)      *Monell Liability* ................................................................................ 150
L.      **SEATTLE ATTORNEY'S OFFICE** .................................................. 153
1)      *Prosecutorial Retaliation* ................................................................. 153

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 4 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

| | | | |
|---|---|---|---|
| | *2)* | *Racketeering Activity* | 156 |
| | *3)* | *Monell Liability* | 157 |
| **M.** | **SEATTLE POLICE DEPARTMENT** | | 160 |
| | *1)* | *Monell Liability - SPROUTS* | 160 |
| | *2)* | *Monell Liability - PCC* | 161 |
| | *3)* | *Monell Liability – Parental Rights* | 162 |
| | *4)* | *Racketeering Activity* | 163 |
| **N.** | **OFFICE OF POLICE ACCOUNTABILITY** | | 164 |
| | *1)* | *Case No. 2020OPA-0614* | 164 |
| | *2)* | *Case No. 2020OPA-0650* | 164 |
| | *3)* | *Case No. 2020OPA-0767* | 164 |
| | *4)* | *Case No. 2022OPA-0182* | 164 |
| **O.** | **WASHINGTON STATE PATROL** | | 165 |
| **P.** | **SUPREME COURT OF WASHINGTON** | | 167 |
| **Q.** | **ADA TITLE II** | | 170 |
| **R.** | **UNITED STATES DISTRICT COURT** | | 171 |
| | *1)* | *General Orders* | 171 |
| | *2)* | *Plaintiff's Federal Habeas Corpus* | 172 |
| **VIII.** | **CAUSES OF ACTION** | | 173 |
| | DECLARATORY JUDGMENT | | 173 |
| | *Preamble to Claims for Damages* | | 176 |
| | VIOLATION OF FIRST AMENDMENT | | 182 |
| | **Right to Freedom of Speech and Expression** | | 182 |
| | **Content & Viewpoint Discrimination** | | 186 |
| | **Right to Free Exercise of Religion** | | 188 |
| | **Right of Father-Son Association** | | 191 |
| | **Right to Petition for Redress of Grievances** | | 194 |
| | **Forced Association** | | 196 |
| | VIOLATION OF 4TH AMENDMENT | | 197 |
| | **Medical Exemption Letter** | | 197 |
| | **Warrantless Blood Draw** | | 199 |
| | VIOLATION OF 8TH AMENDMENT | | 201 |
| | **Excessive Bail, Warrants & Punishments - SMC** | | 201 |
| | **Excessive Bail, Warrants & Punishments – Family Court** | | 203 |

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 5 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

VIOLATION 14TH AMENDMENT ........................................................204
   **Interference With Parent/Child Relationship** ...........................204
   **Due Process - SMC** .................................................................206
   **Right to Trial by Jury** ...........................................................209
   **Due Process – Family Court** ...................................................210
   **Due Process – Ferguson Court** ...............................................212
   **Due Process – Widlan Court** ..................................................213
   **Due Process Clause – Civil Commitment** ...............................215
   **Equal Protection Clause** .........................................................216
DENIAL OF SERVICE ..........................................................................218
COMMON LAW FRAUD .......................................................................220
COMMON LAW CONSPIRACY ............................................................222
VIOLATION OF U.S. Const. Art I, § 10 ...............................................224
VIOLATION OF U.S. Const. Art I, §§ 9; 10 ........................................226
VIOLATION OF ADA TITLE II .............................................................233
VIOLATION OF ADA TITLE III ............................................................234
BIVENS CLAIM ....................................................................................235
UNLAWFUL IMPRISONMENT 2020-264905 ......................................237
UNLAWFUL IMPRISONMENT 2020-268834 ......................................239
UNLAWFUL IMPRISONMENT 2020-346226 ......................................241
UNLAWFUL IMPRISONMENT 2021-003578 ......................................243
MALICIOUS PROSECUTION case no. 656877 ....................................246
MALICIOUS PROSECUTION case no. 656927 ....................................248
MALICIOUS PROSECUTION case no. 662870 ....................................251
VIOLATION OF RICO ..........................................................................254
VIOLATION OF RICO CONSPIRACY ..................................................259
CONSPIRACY TO OBSTRUCT JUSTICE ............................................261
CONSPIRACY TO DEPRIVE RIGHTS..................................................263
NEGLECT TO PREVENT .....................................................................264
SUSPENSION OF HABEAS CORPUS ..................................................265
VIOLATION OF 13TH AMENDMENT ...................................................267
PRELIMINARY INJUNCTION case no. 656749 ...................................268
EMERGENCY INJUNCTION case no. 656748 .....................................272
EMERGENCY INJUNCTION case no. 669329 .....................................274

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 6 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

EMERGENCY INJUNCTION case no. 671384 ................................................ 275

IX.    **PRAYER FOR RELIEF**.......................................................................... 277

X.   **EMPANELMENT OF GRAND JURY** ......................................... 278

XI.   **DEMAND FOR JURY TRIAL**...................................................... 280

XII.   **DEMAND FOR UNBIASED JUDGE** .......................................... 280

XIII.    **VERIFICATION AND CLOSING**................................................ 280

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

# I.   **RELATED CASES**

## A. 9TH CIRCUIT COURT OF APPEALS
- Case No. 23-35418

## B. U.S. DISTRICT COURT, WESTERN WASHINGTON
- Case No. 2:22-cv-01281-LK
- Case No. 2:23-cv-00751-RAJ

## C. WASHINGTON STATE SUPREME COURT
- Case No. 101964-5

## D. WASHINGTON STATE COURT OF APPEALS, Div. I
- Case No. 85092-3
- Case No. 85465-8

## E. KING COUNTY SUPERIOR COURT
- Case No.  21-2-11149-8
- Case No.  21-2-12270-8
- Case No.  21-5-00680-6
- Case No.  22-2-02932-3
- Case No.  22-2-15745-3
- Case No.  22-2-15959-8
- Case No.  22-2-11112-7
- Case No.  22-2-15745-3
- Case No.  23-2-cv-02503-2

## F. KING COUNTY DISTRICT COURT
- Case No. 2021-003578-KNJKINPFKCX
- Case No. 22-2-cv-11976-KCX

## G. SEATTLE MUNICIPAL COURT
- Case No. 656927
- Case No. 656748
- Case No. 656749
- Case No. 662870
- Case No. 669329
- Case No. 671384

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 8 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

## II.  NOTICE TO COUNSEL

Plaintiff Kurt Benshoof ("Plaintiff") will not abide prevarications, *ad hominem,* or tautologies employed to avoid or obfuscate the merits of his claims.  Frivolous and deceitful tactics violate the letter and spirit of Washington BAR Rules of Professional Conduct ("RPC") 8.4(c) and constitute sanctionable offenses pursuant to 28 U.S.C. § 1927.

Despite its length, this complaint is not a "shotgun" pleading, nor does it violate Fed.R.Civ.P. 8(a).  Do not waste this Court's time with frivolous motions asserting that this complaint is "too long."  The length and complexity of this complaint are a proximate and foreseeable result of defendants' refusal to follow the law for nearly three years; this is defendant problem, not a Plaintiff problem.

Counsel for defendants shall not assist a criminal or fraudulent act by their client (*see* RPC 3.3(a)(3)), nor shall counsel comfort or assist an offender to prevent his or her apprehension, trial, or punishment, lest counsel violate 18 U.S.C. § 3 Accessory after the fact.

RCW 9A.75.175 prohibits counsel from making false or misleading statements before this Honorable Court.  RCW 9A.72.080 states that every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he or she knows to be false.  UPEPA does not indemnify counsel if Plaintiff is a victim of their crime or common law fraud pursuant to RCW 4.105(3)(a)(iv)(viii).  As such, violations of law constituting false or misleading conduct intended to delay or prevent testimony may constitute an actionable claim under 18 U.S.C. §§ 1512(b)(1); 1962(c); or 42 U.S.C. §§ 1983; 1985(2)(3).

Knowledge of federal felony law violation requires witnesses to make such known to some judge or the Federal Bureau of Investigation pursuant to 18 U.S.C. § 4.

Violate the trinity of truth, equity, and law at your peril.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 9 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### III.   INTRODUCTION

The questions before this Court are elementary; their answers are axiomatic.

Can public officials, in joint action with businesses and private individuals, violate Plaintiff's inalienable rights under color of law by proxy?

Can public officials and businesses, in joint action with private individuals, retaliate against Plaintiff for the free exercise of his religious beliefs, his right to associate with his son, his right to control the care and upbringing of his son, his right to petition for redress, his right to free speech and expression, his right to life and liberty, his right to due process, and his right to equal protection under the law, under arbitrary and capricious face covering policies?

Can public officials and business, in joint action with private individuals, violate Plaintiff's fundamental rights under color of law policies which were not narrowly tailored in pursuit of a compelling state interest?

Do Washingtonians *have less legal protection* than civilian prisoners of war do against coerced medical experimentation under Article 32 of Geneva Convention IV?

Can corporations and public officials, in joint action with private individuals, violate the Racketeer Influenced and Corrupt Organizations Act with impunity?

Did legislators enact the Uniform Public Expression Protection Act to indemnify felony perjury, extortion, and maliciously false statements to public officials from civil suit, such that an honest father would have no legal recourse when police and prosecutors refuse to bring complaint against the criminal law violators?

These questions are not hypothetical musings; they are questions integral to the instant complaint which demand prompt inquiry into whether the rule of law is functionally operative.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 10 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

All *emphasis* herein that of Plaintiff.

Rosa Parks sat her derrière at the front of the bus without cowing to discriminatory prejudice. Plaintiff exposed his face while shopping for groceries without cowing to discriminatory prejudice.

The persecution and prosecution of Plaintiff has continued for three years. Defendants have resorted to increasingly vengeful and unlawful acts in their attempts to coerce or intimidate Plaintiff into submission and silence. His beliefs remain firmly held.

While Plaintiff's uncovered face was annoying to defendants for the first year, the heresy which ostensibly justified their retaliation of the past two years against Plaintiff was his objection to coerced medical experimentation, especially his minor son, A.R.W.

Defendants arrested Plaintiff for grocery shopping sans mask. Defendants stole his only car with his then 12-year-old son abducted inside; *police allowed, enabled, or facilitated it.*

Defendants conspired to perjuriously accuse Plaintiff of being a threat to his own son because Plaintiff's firmly held beliefs did not conform to orthodoxy. Malicious prosecutions ensued; *prosecutors allowed, enabled, or facilitated it.*

All communication between Plaintiff and his son was effectively criminalized nearly a year ago under color of law. The separation from his father led A.R.W. to consider jumping from a summer camp balcony to kill himself.

Defendants conspired to take Plaintiff's home church through fraud, attempting to put him out on the streets. Defendants imposed more than a half million dollars in bail and warrants for laws Plaintiff never violated; *judges allowed, enabled, or facilitated it.*

A half century ago, in *Norwood v. Harrison*, 413 U.S. 455, 465 (1973), the Supreme Court reaffirmed what the Justices called an "axiomatic" principle of constitutional law. The

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 11 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Court set forth this principle categorically, without qualification or dissent.  The principle was this: government "*may not induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish*." *Id.* (citation omitted).

The *Norwood* principle is "axiomatic" because, without it, government actors could evade nearly every prohibition in the Bill of Rights through the simple expedient of inducing private parties to do what the Constitution bars the government from doing directly. "Constitutional limitations on governmental action would be severely undercut if the government were allowed to actively encourage conduct by 'private' persons or entities that is prohibited to the government itself." *United States v. Davis*, 482 F.2d 893, 904 (9th Cir. 1973) (federal government may not constitutionally seek to induce private airlines to conduct searches that would violate the Fourth Amendment if engaged in by state actors).

A CITY OF SEATTLE ("CITY") attorney need not raise suspicion by overtly prosecuting a man for protesting and criticizing government discrimination.  Rather, prosecutors could simply encourage, enable, and abet grocers and police to twist a civil trespass admonishment into a criminal trespass allegation designed to obfuscate the denial of civil rights under color of law.  Few would even notice.

The *Norwood* principle fully applies to the First Amendment. As Justice Thomas recently put it, the government acts unconstitutionally if it "induces [a private entity] to take action the government itself would not be permitted to do, such as censor expression of a lawful viewpoint." *Biden v. Knight First Amendment Institute at Columbia Univ.*, 141 S. Ct. 1220, 1226 (2021) (Thomas, J., concurring).

Superior Court judges need not assert the authority to take a father's child in retaliation for the father's criticism of government discrimination. Rather, judges and police could simply

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 12 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

encourage, enable, and abet the mother's custodial interference under color of law.  Few would even notice.

Sixty years ago, in *Bell v. Maryland,* 378 U. S. 226, 230 (1964) and *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964) the Court held as unlawful the discriminatory refusal of service to patrons of any business open to the public.  Justice Black noted in his dissenting opinion, "The Court now interprets the Act as a command making it unlawful for the States to prosecute and convict "sit-in" demonstrators…"

Judges need not raise suspicion by overtly punishing a man for his protest and criticism of government discrimination.  Rather, a court could simply encourage and enable court marshals to deny the man entrance into courtrooms, and then encourage and enable police officers to arrest the man under a "failure to appear" bench warrant.  Few would even notice.

*Hamm* held that businesses cannot enlist the state's police powers in a civil dispute.  *Norwood* affirmed that the state cannot employ businesses as proxies for government to violate the rights of citizens.

Today, fifty years after *Norwood*, defendants denied or disregarded what is axiomatic in their concerted efforts to perpetuate a discriminatory, retaliatory Enterprise of which democratic socialists of the 1860's would be envious for its ruthless efficacy and indemnity.

## IV.   JURISDITION AND VENUE

Pursuant to RCW 4.16.080 the claims enumerated herein are within the three-year statute of limitation.

Pursuant to the 1871 Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, Session I, Ch. 22, § 6, this Court has jurisdiction of all causes, civil and criminal, arising under § 2 of said act.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 13 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    Pursuant to 5 U.S.C. § 552(a)(4)(B) of the Privacy Act of 1974 this Court has

2  jurisdiction.

3    Pursuant to 5 U.S.C. § 706 this Court has subject matter jurisdiction.

4    Pursuant to the 1871 Act and 18 U.S.C. §§ 241; 242 this Court has subject matter

5  jurisdiction for the empanelment of a federal grand jury.

6    Pursuant to 18 U.S.C. § 1962(c)(d), this Court has subject matter jurisdiction.

7    Pursuant to 18 U.S.C. § 3333 this Court has subject matter jurisdiction.

8    Pursuant to 28 U.S.C. §§ 1331; 1343(a); and 1367(a) this Court has subject matter

9

10  jurisdiction over Plaintiff's claims.

11    Pursuant to 28 U.S.C. § 1391(b)(1) venue is proper in the Western District of

12  Washington

13    because all claims arise out of King County, Washington.

14    Pursuant to 28 U.S.C. § 2283 this Court has subject matter jurisdiction over Plaintiff's

15  claims.

16    Pursuant to 42 USC §§1983 (civil action for deprivation of rights); 1985 (2)(3)

17

18  (conspiracy to interfere with civil rights) this Court has subject matter jurisdiction.

19    Pursuant to 42 USC § 1988(a)(b) this Court has subject matter jurisdiction.

20    Pursuant to 42 USC §§ 2000bb-1; 2000bb-2(1) this Court has subject matter

21  jurisdiction.

22    Pursuant to Title II of the *Civil Rights Act of 1964,* and Title 42 U.S.C. § 2000 (denial of

23  service at places of public accommodation) this Court has subject matter jurisdiction.

24    Pursuant to Title II of the Americans with Disabilities Act (Pub. L. 101-336); 28 C.F.R.

25  § 35; and 42 U.S.C. §12131 this Court has subject matter jurisdiction.

26

INJUNCTIONS, DECLARATORY JUDGMENT          KURT BENSHOOF
CLAIM FOR DAMAGES                          1716 N 128th ST
  **Page 14 of 280**                       Seattle, WA 98133
                                           kurtbenshoof@gmail.com

1    Pursuant to Title III of the Americans with Disabilities Act (Pub. L. 101-336); 28

2  C.F.R. § 36; and 42 U.S.C. §12181 this Court has subject matter jurisdiction.

3                              V.    **PARTIES**

4    Plaintiff Kurt Benshoof ("Plaintiff") is reverend father of A.R.W., and resident citizen

5  of Washington.  At all times material to this lawsuit Plaintiff resided in Seattle, Washington.

6
    Defendant CITY OF SEATTLE ("CITY") is a political subdivision of the State of
7
  Washington.  The CITY is a "person" for the purposes of liability under 42 U.S.C. § 1983.
8

9    Defendant PCC NATURAL MARKETS ("PCC") a corporation licensed to operate in the

10  State of Washington.

11    Defendant SPROUTS FARMERS MARKET ("SPROUTS") is a corporation licensed to

12  operate in the State of Washington.

13    Defendant Moshe Y. Admon, a man and attorney for defendants Owen Hermsen and

14  Magalie Lerman, in his individual capacity.

15    Defendant Daniel Auderer, a man employed by the SPD, in his individual capacity.

16
    Defendant Justin Booker, a man employed by Seattle Schools, in his individual capacity.
17
    Defendant Freya R. Brier, a woman employed as counsel for PCC Natural Markets in her
18
  individual capacity.
19
    Defendant Nathan L. Cliber, a family law attorney for defendant Jessica Owen, in his
20
21  individual capacity.

22    Defendant Zachary M. Cook, a man employed by PCC Natural Markets, in his individual

23  capacity.

24    Defendant Benjamin Coomer, a man employed by the SPD, in his individual capacity.

25

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 15 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    Defendant Anita Crawford-Willis, a woman employed as judge for CITY OF SEATTLE,

2    in her individual capacity.

3    Defendant Ann Davison, a woman employed as SEATTLE CITY ATTORNEY in her

4    individual capacity.

5    Defendant Jenny A. Durkan, a woman formerly employed as Mayor of CITY OF

6    SEATTLE, in her individual capacity.

7

8    Defendant James T. Ervin, a man employed by SPROUTS in his individual capacity.

9    Defendant David G. Estudillo, a man employed as Chief Justice of the U.S. District Court

10   for the Western District of Washington, in his individual capacity.

11   Defendant Marshall Ferguson, a man employed as a King County Superior Court judge,

12   in his individual capacity.

13   Defendant Michael E. Fox, a man employed by PCC, in his individual capacity.

14   Defendant Corey Foy, a man employed by the SPD in his individual capacity.

15   Defendant Amy Franklin-Bihary, a woman employed as Guardian ad Litem by defendant

16   Owen, in her individual capacity.

17   Defendant William H. Gates, III, a man in his individual capacity.

18   Defendant Steven Gonzalez, a man employed as Chief Justice for the Supreme Court of

19   Washington, in his individual capacity.

20

21   Defendant Tyler Goslin, a man employed by PCC, in his individual capacity.

22   Defendant Willie J. Gregory, a man employed as a CITY judge, in his individual capacity.

23   Defendant Owen Hermsen, a man in his individual capacity.

24   Defendant Peter Holmes, a man employed as SEATTLE CITY ATTORNEY in his

25   individual capacity.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 16 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2      Defendant Jay R. Inslee, governor of the state of Washington, in his individual capacity.

3      Defendant David S. Keenan, a man employed as a King County Superior Court judge, in

4

5  his individual capacity.

6      Defendant Gabriel Ladd, a man employed by the SPD, in his individual capacity.

7      Defendant Daniel Lentz, a man employed by the SPD, in his individual capacity.

8      Defendant Magalie E. Lerman, a woman in her individual capacity.

9      Defendant Mary E. Lynch, a woman employed as a judge for CITY of Seattle and King

10  County, in her individual capacity.

11      Defendant Sarah MacDonald, a woman formerly employed by the CITY of Seattle as a

12  prosecutor, in her individual capacity.

13      Defendant Anthony Marinella, an attorney for defendant Jessica Owen, in his individual

14  capacity.

15      Defendant Ricardo Martinez, a man employed as Chief Justice of the U.S. District for the

16  Western District of Washington, in his individual capacity.

17

18      Defendant Bradley Moore, a man employed as a King County Superior Court

19  commissioner, in his individual capacity.

20      Defendant Katrina Outland, a woman employed as a prosecutor for the CITY in her

21  individual capacity.

22      Defendant Jessica R. Owen, mother of A.R.W., in her individual capacity.

23      Defendant Kyle Rekofke, an attorney for defendant Nathan Cliber, in his individual

24  capacity.

25

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 17 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Defendant Steven Rosen, a man employed as a King County Superior Court judge, in his individual capacity.

Defendant Blair M. Russ, an attorney for defendant Jessica Owen, in his individual capacity.

Defendant Umair A. Shah, MD, MPH, a man employed as Secretary of Health for the state of Washington, in his individual capacity.

Defendant Michael Thurston, a man employed as a magistrate for the Washington Supreme Court, in his individual capacity.

Defendant Jordan Wallace, a man employed by the SPD, in his individual capacity.

Defendant Sandra E. Widlan, a woman employed as King County Superior Court judge, in her individual capacity.

Respondent Nicholas Brown in his official capacity as U.S. Attorney, regarding petition for declaratory judgement.

Respondent Ann Davison as CITY Attorney in her official capacity, regarding petition for declaratory judgment.

Respondent Robert Ferguson, a man employed as Washington Attorney General, in his official capacity, regarding petition for declaratory judgment.

Respondent Steven Rosen, a man employed by King County, in his official capacity, regarding petition for declaratory judgment.

Respondent Richard A. Jones a man employed as U.S. District Court Judge, in his official capacity, regarding petition for declaratory judgment.

Respondent Michael E. Thurston in his official capacity as Washington Supreme Court Commissioner regarding petition for declaratory judgment.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 18 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

At all times relevant herein, individual defendants were state actors living in the Western District of Washington, or individuals jointly engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1983.

Plaintiff reserves the right to join additional parties as defendants including, but not limited to: (1) BIG 5 SPORTING GOODS and its employees, (2) CENTRAL CO-OP and its it employees; (3) CENTRAL MARKETS (aka TOWN & COUNTRY MARKETS) and its employees; (4) CITY OF SHORELINE; (5) MOX CAFÉ and its employees; (6) TARGET and its employees; (7) WALGREENS and its employees; (8) WHOLE FOODS and its employees; and (9) any stockholders of corporations named herein pursuant to Wash. Const. art XII § 4 LIABILITY OF STOCKHOLDERS.

## VI.   **JUDICIAL NOTICE**

Allegations made in a pro se complaint are held "to a less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). To hold a pro se plaintiff to strict compliance "would be inequitable" as courts would punish a pro se plaintiff "for lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States,* 312 F.3d 191, 194–95 (5th Cir. 2002). To avoid such a result, "courts have adopted the rule that a pro se plaintiff's pleadings are liberally construed." Id. Even though pleadings by a pro se litigant are held to a less stringent standard, courts must be able to draw the reasonable inference from the pleadings that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal, 556 U.S.* 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

## VII.   **STATEMENT OF FACTS**

Plaintiff makes the following verified statements of fact upon his information and belief. Plaintiff incorporates by reference the cited exhibits with the same force and effect as if

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 19 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

herein set forth.

## A. BACKGROUND - PLAINTIFF

### *1) Plaintiff's Religious Beliefs*

The following are firmly held religious beliefs of Plaintiff:

1.  The Breath of Life is sacred and shall not be restricted nor impeded.

2.  The human body is a vessel of the Divine.  God designed and created human bodies with innate immune systems enriched from the mother's breast milk.  Injecting a pharmaceutical "vaccine" into a human body interferes with the innate immune system designed and created by God.

3.  Religious freedom of expression and personal choice, to trust our natural immunity and suffer the consequences or rewards of that personal choice, shall not be limited or taken away.

4.  The rights of The People are inalienable, that his rights were endowed by his Creator, and that the U.S. Constitution was written and ratified to prohibit public servants from infringing upon the inalienable rights of the people, including Plaintiff.

5.  The U.S. Constitution and Washington Constitution are sacred documents embodying the teachings of Christ, enshrining the natural law of Creation as enforceable contracts binding upon all duly sworn thereto; both *malum in se* and *malum prohibitum*.  A violation of a public official's oath constitutes a violation of the contract between a public servant and every citizen.

6.  Acts of Congress made law in accordance with the U.S. Constitution are sacred commandments.

7.  Acts of the Washington legislature made law in accordance with the federal and

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 20 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

state constitutions are sacred commandments.

8.     A violation of the U.S. Constitution or the Washington Constitution constitutes a violation of Plaintiff's firmly held religious beliefs.

9.     Plaintiff is precluded from being coerced or forced to wear a face mask or face shield (collectively "face covering"). Plaintiff's beliefs preclude injecting his body with a covid-19 "vaccine." In common parlance, "My body, my choice."

10.     The image and likeness of God is worn on the face of every man, woman, and child.

11.     Plaintiff's beliefs preclude from consenting to his minor son, A.R.W., wearing a face covering to mitigate viral transmission or infection and Plaintiff's beliefs preclude him from consenting to have A.R.W., injected with a Pfizer Covid "vaccine."

12.     Washington laws generally applicable to Plaintiff in his private affairs are those voted on, passed, enacted by the state legislature, and signed into law by the Governor, in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12.

13.     Seattle Municipal Codes are not *laws* applicable to Plaintiff in accordance with Wash. Const. art II §§ 18; 22; 32; as such, the CITY lacks the executive or judicial jurisdiction over Plaintiff to enforce, prosecute, or adjudicate said codes under Wash. Const. art XI § 11.

14.     A municipality has no immunity under the Civil Rights Act of 1964 flowing from constitutional violations and may not assert the good faith of its officers as a defense to such liability.

15.     Lies are the foundation of every evil. Liars must be held to account lest our communities, courts, and governments rot from the pernicious decay of festering, unchallenged lies. Plaintiff is spiritually oathbound to seek equal justice for all.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 21 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

16.     Those who are vulnerable, *especially children,* are to be protected *at all costs* to oneself, and *at all times;* parents have an inalienable right to control the upbringing and education of their children, and to protect them at all times.

17.     Children are born in purity and innocence from God, but demonic forces of evil can, and do, inhabit the minds and bodies of humans during their lifetimes on earth.

18.     Our courts are sacred temples of jurisprudence, overlooked by Lady Justice, a goddess in Plaintiff's spiritual pantheon. Lady Justice embodies the Holy Trinity of truth, law, and justice.

19.     State and federal crimes are also sins. These include, but are not limited to, perjury, selfish deception, unlawful imprisonment, extortion, theft, coercion, denial of rights, medical experiments upon children, and conspiracy to commit the same.

20.     Plaintiff's lawsuits are spiritual documents by which to perform exorcisms, removing demonic forces from the bodies of defendants; as such, frivolous attempts to dismiss Plaintiff's complaint without strict scrutiny would: 1) interfere with his sacred religious ritual performed to serve a public interest, 2) violate the free exercise of his religious beliefs, and 3) violate his right to petition for redress of his grievances.

21.     Defendants' beliefs and actions related to or derivative of covid policies, and their predicate acts accusing Plaintiff of being a mentally unstable criminal law violator due to the exercise of his religious beliefs, exhibit clinical presentation of Factitious Disease Imposed on Another ("FDIA"); within Plaintiff's religious beliefs, Defendants' minds and bodies have been possessed by demonic entities at war with objective reality and soothsayers.

22.     Defendant William H. Gates, III ("Gates") is a genocidal psychopath who has utilized his genius, his vast monetary resources, global connections, and his influence over

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 22 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

politicians and media to act as a primary architect of the Covid-19 ("C19") Enterprise pled hereinafter.

*2) Plaintiff's Disability*

23.    Plaintiff was sexually abused as a child by someone in a position of trust and authority; as such, demands by defendants that Plaintiff restrict his breathing or cover his face were perceived by Plaintiff as particularly *abusive* and *triggering.*

24.    Plaintiff has one, or more, invisible disabilities protected by the Americans with Disabilities Act ("ADA"), as well as Washington laws against discrimination.

*3) Plaintiff's Class*

25.    Plaintiff's firmly held religious beliefs constitute a protected class, prohibited from discrimination and retaliation by government officials or private individuals in joint action with state actors, regardless of whether they are deemed heterodox or orthodox.

26.    Plaintiff is also interchangeably a class of one for purposes of this complaint, resultant from him being the only person to his knowledge in the Seattle metropolitan area whose religious beliefs were so firmly held as to withstand the systemic, coordinated, years-long retaliation detailed herein; therefore, Plaintiff's "class" refers both to his protected religious class and his class of one status.

27.    The three-year discriminatory retaliation against Plaintiff's class was both expected and foreseeable.  The covid orders issued by Inslee, Shah, Martinez, Estudillo, Gonzalez, Rogers, Oishi, Durkan, and Gregory, conspicuously omitted acknowledgement that religious beliefs preclude some individuals from being coerced to comply with their orders.

28.    As all of these government officials received law degrees, they knew or should have known that omitting religious beliefs as an exempted class would be an expected and

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 23 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

foreseeable proximate cause of discrimination and retaliation against Plaintiff's class.

29.     Plaintiff, and others similarly situated, cannot be less protected from coerced medical experimentation, investigational procedures, or medical "countermeasures" than a prisoner of war under the Fourth Geneva Convention, Article 32.

### 4) Parenting Agreement

30.     Plaintiff and defendant Jessica Owen ("Owen") discovered she was pregnant with Plaintiff's child, A.R.W., in August 2008. Thereupon, Plaintiff and Owen entered into a verbal parenting contract at common law ("Agreement") after notice, consideration, and accord; thereby exercising their unlimited right to contract as private individuals.

31.     Under their Agreement as father and mother, they would henceforth have full, equal and inalienable rights as parents of their son-to-be, sharing all significant decisions regarding A.R.W.'s care and upbringing, such as education, family scheduling, medical and dental care, and nutrition.

32.     Though Plaintiff and Owen never married, they raised A.R.W. amicably for the following twelve years, prioritizing their son's well-being and sharing equally in all significant decisions regarding their son's education, medical care, dental care, and living arrangements.

33.     Plaintiff had good cause to believe that Owen would never violate their Agreement; doing so would harm A.R.W., and Plaintiff did not believe Owen would ever be so selfish as to harm their son.

## B. RICO ENTERPRISE

### 1) Deception and Coercion

**Prime Objective.**

34.     The covid-19 orders and policies were the foundation of the Covid-19 ("C19")

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 24 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Enterprise; designed, orchestrated, funded, and implemented to coerce Washingtonians to wear Experimental Use Authorization ("EUA") medical devices (e.g., face masks and face shields), and to coerce Washingtonians to be injected with EUA biologic or treatment (e.g., Pfizer BioNTech 162b2 "covid vaccine").

35.    Defendants knew, or should have known, that under 18 U.S.C. § 2331 §§ 802 of the USA PATRIOT Act (Pub. L. No. 107-52) a person engages in domestic terrorism if they do an act "dangerous to human life" that is a violation of the criminal laws of a state or the United States, if the act appears to be intended to: (i) intimidate or coerce a civilian population; (ii) influence the policy of a government by intimidation or coercion.

36.    Peter Daszak, through whom Anthony Fauci funded the Wuhan lab, stated in 2015, "We need to increase public understanding of the need for medical counter measures such as a pan corona virus vaccine. A key driver is the media, and the economics will follow the hype. Investors will respond if they see profit."

37.    The C19 Enterprise deceived the public to believe that people did not have the federally secured natural and God given right to refuse any activity or product: (1) in violation of their religious beliefs; (2) in violation of their bodily autonomy; or (3) covered by the Pandemic Response Emergency Preparedness ("PREP") Act.

38.    "Trust the Science" replaced common sense and critical thinking; the very act of questioning was ridiculed, despite it being foundational to the scientific method.

39.    Use of misinformation, disinformation and misinformation, commonly known as advertising and propaganda, created a two-tiered medical apartheid state; the favored class of individuals, Covidians, whose quasi-religious beliefs comported with the public-private orthodoxy promulgated by the C19 Enterprise, and the disfavored class, Covidiots, whose

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 25 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

religious beliefs and citations of law were deemed heretical, a direct and imminent threat to the C19 Enterprise and thereby targeted for predicate acts by defendants and their associates.

**C19 Enterprise Architect.**

40.   Billionaire, super-genius monopolist William H. Gates, III ("Gates") is the principal architect of the C19 Enterprise, utilizing his global network of media, pharmaceutical, and political connections, to orchestrate the C19 Enterprise.

41.   Gates directed the disbursement of millions and billions to the World Health Organization ("WHO"), to computer pandemic modeling by Professor Neil Ferguson at the Imperial College of London, stock purchases in Pfizer in 2019, to co-sponsor Event 201 in October 2019, and to media corporations.  Gates then appeared regularly on television to promote the C19 Enterprise and spoke with Anthony Fauci on a weekly basis during the pandemic.

42.   Gates has publicly stated his intention to reduce global population growth through increased vaccinations.  Two fundamental factors reduce population growth: (1) fewer births; or (2) shorter life spans.  Fewer births are a result of: (1) less sexual intercourse, (2) lowered fertility; (3) increased use of contraception; or (4) fetal death.

43.   To Plaintiff's knowledge, Gates has not stated that increased vaccinations will: (1) reduce sexual intercourse; (2) lower fertility; (3) increase use of contraception; or (4) increase fetal death; therefore, deductive reasoning evinces a prima facie case that Gates believes that increased vaccination will shorten the life spans of humans, and intends to enable, facilitate, or perpetrate the shortening of human life spans through increased vaccination.

44.   Gates had the means, the motive, and the opportunity by and through the C19 Enterprise to shorten the life spans of humans, while profiting as a proximate and foreseeable result of predicate acts done in furtherance of the C19 Enterprise.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 26 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

45.    "Shortening lifespans" is commonly known as "manslaughter" or "homicide."

**C19 Enterprise Directors.**

46.    Governor Jay Inslee ("Inlsee") and Secretary of Health Umair Shah ("Shah") acted as statewide directors.  Mayor Jenny Durkan ("Durkan") acted as a local director over Seattle. All defendants acted as associates-in-fact.

47.    Defendants either obtained a degree in law or had legal counsel to rely upon; absent a claim of insanity, defendants cannot claim ignorance of the law.

48.    Defendants knew by the Summer of 2021, or should have known, that 23% more people died in the Pfizer BioNTech 162b2 "vaccine" control group of approximately 22,000 participants than the placebo control group of approximately 22,00; that is, there was prima facie cause to believe that injection with the Pfizer "vaccine" correlated to a higher mortality rate than those who were not injected.

49.    To date, no defendant has publicly acknowledged such prima facie evidence, nor acted upon their knowledge of such evidence to warn or protect the public.

**Malinformation.**

50.    CISA.gov defines "malinformation" as information "based on fact, but used out of context to mislead, harm, or manipulate."

51.    Defendants asserted that Washington Supreme Court Order No. 25700-B-602, Secretary of Health Order 20-03, and Governor Inslee Proclamation 20-05 ("state emergency orders"), and their derivative amendments, empowered defendants to violate Plaintiff's inalienable rights.

52.    Defendants knew, or should have known, that RCW 43.06.010(12) authorized Governor Inslee pursuant to the existence of a ***"public disorder, disaster, energy emergency, or***

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 27 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

*riot.* "Covid-19" was not a "public disorder, disaster, energy emergency, or riot."

53.      Defendants knew, or should have known, that local health officers' authority to "control and prevent the spread of any dangerous, contagious or infectious diseases within his or her jurisdiction," did not authorize such health officers to violate the rights of Plaintiff.  (*See* RCW 70.05.070).

54.      Defendants knew, or should have known, that the authority to require personal protective devices and equipment in a public health emergency was limited to the jurisdiction of labor regulations and did not empower defendants to violate Plaintiff's rights.  Such authority covered "the jurisdiction *where the individual or business performs work*."  *See* RCW 49.17.485(1).  At no time did Plaintiff perform work during the incidents enumerated herein.

55.      Defendants knew, or should have known, that even during a tuberculosis epidemic nothing "shall be construed to abridge the right of any person to rely exclusively on spiritual means alone through prayer to treat tuberculosis in accordance with the tenets and practice of any well-recognized church or religious denomination…" *See* RCW 70.28.031(i).

56.      Defendants knew, or should have known, that even if Plaintiff had *active tuberculosis,* that he could not be discriminated against by denying his entrance to public accommodations and government buildings.

57.      Defendants knew, or should have known, that even if Governor Inslee's emergency orders legally applied to Plaintiff, the orders explicitly exempted him from wearing a face covering as a condition of entering a public accommodation or government building.

58.      Defendants utilized malinformation to mislead, harm, or manipulate Plaintiff and other Washingtonians.

59.      RCW 9A.72.080 states that every unqualified statement of that which one does

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 28 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

not know to be true is equivalent to a statement of that which he or she knows to be false.

60.     RCW 9A.76.175 prohibits any person from knowingly making false or misleading statements to a public servant reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties.

61.     18 U.S.C. § 1343 prohibits any person, by means of false or fraudulent pretenses, representations, or promises, from transmitting or causing to be transmitted by means of wire, radio, or television communication in interstate commerce any writings, signs, signals, pictures, or sounds for the purpose of any scheme or artifice to defraud, or for obtaining money or property.

**Disinformation.**

62.     CISA.gov defines "disinformation" as "deliberately created to mislead, harm, or manipulate a person, social group, organization, or country." Defendants spread disinformation to mislead the public, including Plaintiff, into believing that EUA biologics, treatments and devices were "safe," "effective," "FDA approved," "necessary," legally "required," and "protected" others.

63.     Defendants utilized disinformation to mislead, harm, and manipulate Plaintiff and other Washingtonians.

**Legally Effective Informed Consent.**

64.     Through the Federal Wide Assurance (FWA) agreement all U.S. States (i.e., state health agencies have FWA agreements) agreed to comply with 45 CFR 46 and the Belmont Report's ethical guidelines.

65.     Consensual medical experimentation involving investigational medical products can only exist under conditions that ensure individuals are free from outside pressures to participate.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 29 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

66.     Individuals have the explicit right to refuse an investigational drug, biologic, or device without incurring a penalty or losing a benefit to which they are otherwise entitled.

67.     The C19 Enterprise penalized Plaintiff's class for refusing the administration of EUA drugs, biologics, or devices undergoing clinical trials; that is, Defendants failed to comply with their duties to obtain the legally effective informed consent of Plaintiff.

**Psychological Manipulation.**

68.     The C19 Enterprise perpetrated psychological manipulation of the public with unprecedented intensity and scale in America's history, promulgated by an aggressively coordinated public-private media campaign in lock step with countries around the world.

69.     The fear-based messaging and policies of the C19 Enterprise constituted textbook compliance induction, as if defendants cut-and-pasted their messaging and policies from Dr. Biderman, a research social psychologist employed by the U.S. Air Force, who studied the techniques used to induce individual compliance in prisoners of war. (*See* Exhibit P71).

**Medical Apartheid.**

70.     The C19 Enterprise, through propaganda and the immense pressures of psychological manipulation, was orchestrated to create a system and practice that separated, ostracized, and excluded people whose spiritual beliefs dissented from Covidian orthodoxy.

**Congressional Prohibitions.**

71.     To ensure all people are protected when they are offered EUA drugs, treatments, biologics, and devices, Congress was explicit in that "[n]othing in this section [21 U.S.C. 360bbb-3] provides the Secretary *any authority to require any person to carry out any activity* that becomes lawful pursuant to an authorization under this section (21 U.S.C. 360bbb-3(l))."

72.     Governments (e.g., governors, mayors, school boards, police) and voluntary

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 30 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  participants (e.g., PCC or SPROUTS employees) were prohibited from having the authority to

2  require any person to participate in any 21 U.S.C. §360bbb-3 activity, at any time, under any

3  statute, regulation, or state policy or custom.

4      **2) Conduct**

5      73.     The complex command structure of the C19 Enterprise required numerous levels;

6  defendants occupied various positions in the chain of command or control, and each participated

7  in the management or operation.  Defendants either "knowingly implemented the enterprise's

8  decisions," or were "indispensable to achieving the enterprise's goal."

9

10     74.     By and through the covid-19 proclamations promulgated by Governor Inslee,

11 Washington Supreme Orders, King County Superior Court emergency orders, CITY policies,

12 Seattle Public Schools policies, and policies of Seattle businesses, a public-private partnership of

13 Covidian Retaliatory Apartheid Policy ("CRAP") was employed to coerce compliance with the

14 C19 Enterprise.

15     75.     CRAP included, but was not limited to, violations of USC 1201, 1512, and 1513

16 in order to unlawfully threaten, arrest, imprison, and prosecute Plaintiff; to take Plaintiff's son,

17 to steal Plaintiff's car, to evict Plaintiff from his home church, and to destroy Plaintiff's ministry.

18

19     76.     CRAP was used to coerce Washingtonians, including Plaintiff and A.R.W., to

20 wear face coverings and be injected with Pfizer BioNTech 162b2 shots arbitrarily, capriciously,

21 without objective reasonableness, and without a compelling state interest.

22     77.     CRAP violated Plaintiff's clearly established statutory and constitutional rights of

23 which a reasonable person would have known.

24     **Public Function.**

25     78.     PCC and SPROUTS, ("private entities") exercised powers traditionally

26

INJUNCTIONS, DECLARATORY JUDGMENT          KURT BENSHOOF
CLAIM FOR DAMAGES                          1716 N 128th ST
 **Page 31 of 280**                        Seattle, WA 98133
                                           kurtbenshoof@gmail.com

exclusively reserved to the state.

**Joint Action.**

79.     Private entities and individuals, in join action with state actors, utilized malinformation, misinformation, and disinformation to engage in the malfeasance, misfeasance and nonfeasance as the Civil Rights Act of 1871 proscribed executive officers, judicial officers, and private individuals in joint action with state actors, from acting under color of law to deny

80.     the substantial rights of those who stood against the terror campaign of the democratic socialists.

**State Compulsion or Coercion.**

81.     The State of Washington, by and through Inslee and Shaw, exercised such significant encouragement, either overt or covert, that in law the choice of the private entities and actors was deemed to be that of the state.

**Governmental Nexus.**

82.     The actions of private entities and actors were in a close nexus with state and CITY actors.  The discriminatory face covering and "vaccine" policies of public buildings and private entities were harmoniously integrated in lockstep such that the face covering policy and "vaccine" actions of private entities and individuals may be fairly treated as that of the state and CITY itself.

*3) Enterprise*

**Associates-In-Fact.**

83.     Individual defendants were associated together for a common purpose of engaging in the implementation of the C19 Enterprise through unlawful coercion, witness intimidation and tampering, theft, robbery, extortion, arrest, prosecution, or imprisonment of

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 32 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

those, such as Plaintiff, who stood in dissenting opposition to the enterprise.

84.    Individual defendants shared a purpose of persecuting Plaintiff and those similarly situated, had relationships in furtherance of this purpose, and acted over many months or years to accomplish this purpose.

85.    Individual defendants were aware of the nature and scope of the Enterprise to implement CRAP and to persecute dissenters such as Plaintiff.

*4) Pattern*

86.    Defendants engaged in multiple acts of racketeering activity over the last three years. The predicate acts were both related and continuous.

87.    Defendants perpetrated closed-ended enterprise continuity regarding face covering policies from 2020 to 2023. The threat of repetition exists that face covering policies will be re-imposed. Recent news reports suggest lockdowns may again be implemented this Fall.

88.    Defendants perpetrated open-ended enterprise continuity regarding the denial of Plaintiff's rights under color of law, which is ongoing and projects into the future.

*5) Rackateering Activity*

89.    Predicate acts by defendants, which were both related and continuous, included acts or threats of kidnapping, robbery extortion, witness tampering, witness retaliation, and fraud by wire, radio or television.

90.    Predicate acts by defendants, which were both related and continuous, included acts or threats regarding Pfizer BioNTech 162b2; the stockpiling, transfer, acquisition, retention, or possession of biological agents, toxins, or delivery systems for use as a weapon, or knowingly assisting an organization to do the same, or attempts, threats, or conspiring to do the same.

**Corporate RICO.**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 33 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

91.     Plaintiff possesses evidence of intra-corporate and inter-corporate agreements between individual defendant officers of corporate defendants, including inferences from words, actions, or interdependence of activities and persons involved, constituting a conspiracy under § 1962(d) to commit a pattern of substantive violations of RICO over many months or years.

92.     The CITY perpetrated an open-ended and closed-ended intracorporate conspiracy with its own officers.

93.     Open-ended and closed-ended intercorporate conspiracies were perpetrated between the CITY and Seattle businesses including, but not limited to, PCC and SPROUTS.

### 6) *State Officers*

**Pfizer Covid Vaccines.**

94.     Washington Governor Jay Inslee ("Inslee") stated publicly in 2020 that he did not trust the FDA regarding the covid "vaccines," and would need to verify their safety and efficacy prior to their roll-out to the public.

95.     Inslee and Washington Secretary of Health Umair Shah, M.D. ("Shah") knew, or should have known, that 23% more people died in the Pfizer BioNTech 162b2 "vaccine" control group than the placebo control group.

96.     Inslee and Shah did not know as true that Pfizer trialed the BioNTech 162b2 control groups to determine immunization or reduction in transmissibility of SARS CoV-2.

97.     Inslee and Shah did not know as true that Pfizer BioNTech 162b2 was a "vaccine" pursuant to RCW 70.290.010(10).

98.     Inslee and Shah did not know as true that Pfizer BioNTech 162b2 was FDA "approved" as either "safe" or "effective" after only completing Phase *Two* of Pfizer's *three-phase* clinical trial. *See* https://clinicaltrials.gov/ct2/show/NCT04368728.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 34 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

99.    Inslee and Shah did not know as true that Pfizer BioNTech 162b2 was proven to reduce infection with, nor transmission of, "SARS CoV2."

100.    Inslee and Shaw did not know as true that Pfizer BioNTech 162b2 was proven to reduce hospitalization due to "covid-19."

101.    Inslee and Shaw did not know as true that that Pfizer BioNTech 1621b2 was proven to reduce mortality directly caused by "covid-19."

102.    Inslee and Shaw did not know as true that there was an objective reason for Inslee or Shah to publicly state via wire, radio, or television that Pfizer BioNTech 162b2 was a "vaccine," nor that it was "safe," "effective," "necessary," "prevented transmission," "provided immunity," "reduced severe illness," "protected others," "saved lives," nor that it was "FDA approved" after only completing Phase Two of its clinical trial.

103.    Inslee and Shah did not know as true that interchangeability of face masks and face shields was not arbitrary and capricious, lacking objective reasonableness.

104.    As such, Inslee and Shah acted with negligent disregard of the facts, the law, the health and well-being of officers employed under their authority, and the safety and well-being of all Washingtonians, including Plaintiff and A.R.W.

*7) City of Seattle*

**Mayor Jenny Durkan.**

105.    As mayor and chief executive officer for the CITY during 2020-2021, Jenny Durkan ("Durkan") masterminded implementation of CRAP throughout Seattle. As former U.S. Attorney for the Western District of Washington, Durkan created an office of Civil Rights. Durkan knew, or should have known, what the Civil Rights Acts of 1871 and 1964 enacted.

"In addition, it is critical to note that ***there are valid reasons why some people can't wear face coverings – please do not discriminate***. If you experience or witness harassment or

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 35 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

an act of bias, report it to the Seattle Office for Civil Rights Anti-Bias hotline at 206-233-7100. You can also report online at seattle.gov/reportbias. If it is an emergency, please call 9-1-1 immediately." *See* https://durkan.seattle.gov/2020/05

106.    Durkan knew, or should have known, what Inslee and Shah knew, as aforementioned in section "*6) State Officers.*"

107.    School children, including A.R.W., were not allowed to enter public school unless they were subjected to the ***ongoing*** Pfizer BioNTech 162b2 clinical trial.  As a proximate result of Durkan telling the public that the "covid vaccines" were "approved," "safe," and "effective," thousands of minor children in Seattle were coercively subjected to the Pfizer BioNTech 162b2 clinical trial without informed consent, including A.R.W, against Plaintiff's will.

108.    The CITY's mask policies enforced under Durkan's direction allowed for anyone to wear a face shield in lieu of a disposable mask.  On November 24, 2020, it stated on doh.wa.gov, "the ***use of face shields alone is currently viewed as serving no purpose or providing any protection*** from the transmission of COVID-19 in the courtroom work environment." Durkan knew or should have known that CITY covid policies were arbitrary and capricious.

109.    Durkan's public statements and directives regarding covid policies contradicted her own behavior.  She was repeatedly photographed in public in her capacity as Mayor violating CITY covid policies.  She stood closer than six feet to strangers without wearing a mask.  (*See* Exhibits P72A; P72B; P72C).

110.    Durkan acted with negligent disregard of the facts, the law, the health and well-being of officers employed under her authority, the safety and well-being of approximately 75,000 minor children in Seattle, including A.R.W., and Plaintiff's right to direct the care and upbringing of his son.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 36 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

111.     By and through Durkan's public statements and executive directives as Mayor and final policymaker for the CITY, hundreds of Seattle Police Department ("SPD") officers were terminated, forced to resign, or coercively injected with a gene therapy.  Employees of the CITY Attorney's Office and Seattle Municipal Court were subjected to the same coercion as the SPD.  Dissenters were purged.  Those who remained implicitly understood that they could lose their job if they went against Durkan's directives and statements in respect of Plaintiff's rights.

**Final Policymaker Durkan.**

112.     Durkan acted under color of state law and had final policymaking authority from the CITY concerning face covering policies.

113.     The CITY's face covering policies were a deliberate choice by Durkan to follow a course of action made from among various alternatives.

114.     Durkan's acts were the 'moving force' behind the constitutional violations Plaintiff suffered.  Durkan's face covering policies were both causation-in-fact and proximate causation of the constitutional violations Plaintiff suffered, which are enumerated hereinafter.

115.     The CITY's liability attached when Durkan acted as a "final policymaker" regarding face covering policies.

*8) Financial Harms*

116.     The three-year pattern of predicate acts in furtherance of the C19 Enterprise have financially harmed Plaintiff, his ministry, his fellow clergy members, and his friends.

117.     Defendants' pattern of activity has forced the payment of hundreds of thousands of dollars in bail, bonds, attorney fees, and rental cars during the eight months that Enterprise associates-in-fact conspired to steal and withhold Plaintiff's only car.

118.     Defendants' pattern of activity has cost more than $100,000 to prevent defendants

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 37 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

from taking Plaintiff's home and church.

### 9) *Enterprise Policy Changes*

119.     While some racketeering activities of the Enterprise have ceased in whole or in part, the arrested Enterprise conduct can reasonably be expected to start up again at any time if the Enterprise corporations, directors, and associates are not brought to account; in fact, recent news reports indicate that face covering policies have already been reintroduced around the country.

## C. SPROUTS FARMERS MARKET

120.     If not for Plaintiff's class and disability, SPROUTS employees: (1) would have served Plaintiff at the deli; (2) would have served Plaintiff at the checkout stand; (3) would not have set in motion a series of events which would foreseeably lead to the unlawful imprisonment of Plaintiff; and (4) would have allowed Plaintiff to use his credit card and thereupon engage in interstate commerce;

121.     If not for Plaintiff's class and disability: (1) SPD officers would not have interfered with Plaintiff's shopping, nor accused him of any criminal law violation; nor (2) would CITY officials have used the U.S. Mail in furtherance of schemes to silence, seize or confine Plaintiff.

122.     If not for Plaintiff belonging to a class of people whose beliefs precluded Plaintiff from being coerced to wear a face covering, SPROUTS employees in joint action with SPD officers and CITY officials would not have acted with intent to silence, restrain, seize, or confine Plaintiff.

123.     SPROUTS employees allowed the wearing of a face shield in lieu of a face mask.

124.     SPD officers believed that Plaintiff was protesting mask policies.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 38 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

125.    Plaintiff informed SPROUTS employees and SPD officers that he had a disability precluding him from being coerced to wear a face covering as a condition of entrance to SPROUTS.

126.    Title III of the ADA precludes discrimination in a place of public accommodation based upon a disability or perceived disability. Plaintiff was perceived as being disabled with covid, and Plaintiff informed employees of his having a disability precluding him from face coverings.

*1)  SPD Incident #2020-264905*

127.    Early afternoon on September 11, 2020, Plaintiff went to SPROUTS Farmers Market ("SPROUTS"), located at 13010 Aurora Avenue N, Seattle, WA 98133, to purchase groceries.

128.    SPROUTS manager defendant James Ervin ("Ervin") demanded that Plaintiff leave the store and ordered the cashier to refuse service to Plaintiff because Plaintiff was not wearing a face covering.

129.    Plaintiff informed Ervin that he had a disability precluding him from wearing a face covering. Plaintiff informed Ervin that RCW 49.60.030 prevented SPROUTS from discriminating against Plaintiff due to his disability by denying Plaintiff his right to the full enjoyment of any public accommodation open to the public.

130.    Plaintiff called 911 to report discrimination and harassment by employees of SPROUTS Farmers Market. Ervin called 911, alleging criminal trespass by Plaintiff and accusing Plaintiff of shoplifting. Plaintiff left more than enough cash for his groceries on the check-out stand when he was refused check-out service by the cashier under Ervin's directive.

131.    Seattle Police Department ("SPD") officers Suzanne Parton #5830 ("Parton"),

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 39 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

David Sullivan #6953 ("Sullivan") responded.  Sullivan stated that Plaintiff would be subject to arrest for criminal trespass if Plaintiff returned *inside* SPROUTS to buy groceries.

132.    Plaintiff requested legal justification from Sullivan explaining what law Plaintiff was violating by entering SPROUTS to shop, absent a face covering.

133.    Sullivan replied that he would not interpret the law, as he was not an attorney.

134.    Plaintiff informed Parton and Sullivan that RCW 49.60.030 prevented SPROUTS from discriminating against Plaintiff due to his disability by denying Plaintiff his right to the full enjoyment of any public accommodation open to the public.

135.    After returning home, Plaintiff researched criminal trespass law under the Revised Code of Washington ("RCW"), determining that he had not been "unlawfully" in SPROUTS, was therefore not subject to a "criminal trespass warning" by SPD, and was well within his rights to legally shop at SPROUTS without a face covering.

136.    Plaintiff printed out three sets of copies of the relevant RCW statutes: (1) for police, (2) for SPROUTS employees, and (3) for Plaintiff; thereafter, Plaintiff returned to shop for groceries at SPROUTS later that afternoon.  *See* RCW 9A.52.070; .105; .105.

137.    As Plaintiff walked through the lobby of SPROUTS, approaching a second set of sliding doors in an interior eight-foot-wide doorway, a SPROUTS Employee #1 moved to physically block Plaintiff.  Plaintiff, despite turning sideways to avoid Employee #1, was forced against the south side of the doorframe while entering the store.  (*See* Exhibit P100).

138.    Employee #1 followed Plaintiff into the store, surrounding Plaintiff with two other SPROUTS employees, whereupon Employee #2 demanded that Plaintiff put on a face covering or leave SPROUTS.

139.    Plaintiff asked Employee #2 if he was qualified to give medical advice, and

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 40 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Employee #2 stated he was not so qualified.

140.    Employee #2 then grabbed all three copies of Plaintiff's printed RCW statutes and ran down an aisle.

141.    Plaintiff gave chase to secure his papers and effects from warrantless search and seizure; Plaintiff grabbed the fleeing Employee #2 around the shoulders with his left arm and retrieved his papers with his right hand.

142.    Plaintiff then went about his grocery shopping while phoning 911 to report the assault, harassment and theft by SPROUTS employees.

143.    SPD officers Parton, Sullivan, Benjamin Coomer #8443 ("Coomer"), Robert McClelland #8563 ("McClelland"), and Dain Munich #8662 ("Munich") responded to SPROUTS while Plaintiff was still shopping.

144.    Plaintiff explained to Coomer and McClelland that Plaintiff was lawfully shopping in the store, and that Plaintiff had a disability precluding his wearing of a face covering.

145.    Coomer demanded that Plaintiff hand Coomer his groceries and leave the store. Plaintiff complied and walked outside SPROUTS to make a victim complaint to SPD.

146.    Outside SPROUTS, Plaintiff explained to McClelland that SPD could not assert criminal jurisdiction over a discriminatory civil trespass allegation by SPROUTS employees.

146.    McClelland replied that Plaintiff's complaints were civil in nature, not criminal, and that Plaintiff should take any legal claims to an attorney.

147.    Plaintiff pointed out to McClelland that McClelland had admitted that the SPROUTS claims of trespass were civil, not criminal, thereby affirming Plaintiff's contention.

148.    Plaintiff provided McClelland the hypothetical corollary that just as SPROUTS could not deny entrance to Plaintiff in a wheelchair upon the assertion that employees feared it

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 41 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

would create the possibility of someone's toes being run over, neither could SPROUTS deny entrance to Plaintiff because employees believed that Plaintiff posed a health threat without a **face covering**.

149.    McClelland asserted that Plaintiff had been criminally trespassed.    Plaintiff explained that shopping for groceries without a mask complied with all "*lawful* conditions" and therefore could not constitute criminal trespass.

150.    Plaintiff asked McClelland if SPD had been provided with a signed declaration form pursuant to RCW 9A.52.105, .115.  McClelland did not cite or provide Plaintiff with a signed declaration authorizing SPD to issue a trespass warning or arrest Plaintiff.

151.    Plaintiff informed Sullivan that he was assaulted upon entering the store by Employee #1, harassed by employees in violation of Washington laws against discrimination in a public accommodation, and that Plaintiff's property [legal papers] was stolen by Doe-Employee #2.

152.    Plaintiff offered to show officers his GoPro video.  Plaintiff also suggested that officer review the SPROUTS security camera footage to confirm Plaintiff's statement.  Officers refused to review Plaintiff's GoPro video.  (*See* Exhibit P101).

153.    Plaintiff explained to Sullivan that both a warning and allegation of criminal trespass required Plaintiff entering or remaining ***unlawfully*** in SPROUTS; SPD did not cite a law requiring Plaintiff to wear a face covering inside SPROUTS.

154.    Plaintiff stated that he was, "trying with all of my heart to follow the law."

155.    Sullivan grabbed Plaintiff's papers out of his hand and officers surrounded Plaintiff and shoved Plaintiff to the ground, knocking his hat off and putting his forehead to the pavement.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 42 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

156.    Plaintiff was arrested for allegedly assaulting Employee #1 by entering SPROUTS, and for allegedly committing criminal trespass. (*See* Exhibit P102).

157.    Parton, Sullivan, Coomer, and McClelland had ample time to consider the evidence and law; evinced by the fact Sullivan took time to review SPROUTS security footage while McClelland and Plaintiff discussed the law at length outside SPROUTS.

158.    SPD officers believed that Plaintiff was protesting the mask mandates and policies; that is, officers knew, or should have known, that their threats of arrest, and arrest of Plaintiff, violated Plaintiff's right to protest.

159.    Pursuant to RCW 9.91.010, it is a crime to deny any person the full enjoyment of any place of public resort, accommodation, or assemblage because of the person's creed.

160.    Despite Employee #1 moving across an eight-foot-wide doorway to block Plaintiff from entering SPROUTS, thereby pushing Plaintiff into the door frame, it was Plaintiff who was charged with Assault in the fourth degree.

161.    Pursuant to RCW 9A.56.050 taking a person's property is a criminal act. Despite Employee #2 taking Plaintiff's property, no charges were filed against Employee #2.

162.    Plaintiff's property, including his GoPro and cell phone, were taken by SPD officers against his will by the fear of immediate injury to Plaintiff if he acted to prevent or resist the taking.

163.    Despite Plaintiff agreeing to talk to police outside of SPROUTS, giving his groceries to Coomer, and walking outside the store to discuss the law with police, McClelland asserted in the incident report that "Benshoof continued to refuse to leave the premises when officers informed him that he was committing criminal trespass."

164.    On February 24, 2023, both charges related to SPD incident #2020-264791 were

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
 **Page 43 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

dismissed with prejudice under consolidated case no. 656927.

### 2) SPD Incident #2020-268834

165.     Following Plaintiff's release from King County Jail on September 11, 2020, he attempted to contact the CITY Attorney's Office and SPD, yet, Plaintiff received no response from the CITY Attorney's Office and was told by SPD dispatch that officers would only respond to 911 calls.

166.     This left Plaintiff with no reasonable and timely means by which to seek redress of his grievances regarding his arrest and imprisonment on September 11, 2020; thereafter, Plaintiff faced arrest and imprisonment if he tried to enter grocery stores in Seattle to buy food without a face covering.

167.     To diminish the likelihood of SPROUTS employees again assaulting him or stealing his papers, Plaintiff decided to take precautions by calling 911 and reporting his allegations of criminal law violations perpetrated on September 11, 2020, by SPD officers and SPROUTS employees by visibly open carrying an unloaded and breech-locked gun.

168.     Plaintiff had witnessed numerous BLM protesters carrying loaded rifles during the previous months on Capitol Hill during the BLM protests.

169.     Before doing so, Plaintiff called SPD dispatch to verify that it was legal to open carry in Seattle, and to verify there was nothing in the SPD databases stating that Plaintiff could not lawfully carry a gun.

170.     The SPD officer confirmed to Plaintiff that it was legal to open carry and that nothing in the SPD computer systems indicated Plaintiff could not legally carry a gun, and the SPD officer suggested that Plaintiff also confirm this with the Washington State Patrol ("WSP").

171.     On September 15, 2020, Plaintiff made two calls to the WSP, speaking with

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 44 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

officers named Tara and Jesse, and Jesse confirmed to Plaintiff that there was nothing in the WSP databases that indicated Plaintiff could not lawfully carry a gun.

172.    On September 16, 2020, Plaintiff verified with a second SPD officer that open carrying a gun within CITY limits was legal.

173.    Plaintiff, who has never possessed ammunition for his home defense shotgun, then breech-locked the gun with a visible metal cable and padlock, leaving the padlock key at home when he drove to the parking lot of SPROUTS to call 911 and make his victim report to police.

174.    Plaintiff drove to SPROUTS parking lot and parked approximately one hundred fifty yards from the SPROUTS store.

175.    Upon exiting his vehicle, and strapping his gun to his back, Plaintiff immediately called 911 to report multiple crimes by SPD officers and SPROUTS employees that Plaintiff perpetrated against him on September 11, 2020.

176.    Plaintiff maintained a distance of approximately one hundred feet from SPROUTS while he called 911 and waited for officers to respond to take his complaints.

177.    Plaintiff never saw a SPROUTS employee while he called 911 and waited for officers to arrive, nor did he touch, or point to, the gun; it remained on his back the entire time.

178.    Plaintiff explicitly informed 911 dispatch that he: 1) was an absolute pacifist, 2) was legally open carrying a shotgun that was unloaded and breech-locked with a cable and padlock, 3) did not possess or own any ammunition, 4) left the padlock key at home, 5) had verified with SPD and WSP patrol that he could lawfully open carry his gun,  6) was not trying to scare anyone, and 7) was calling to report multiple law violations by SPD officers and SPROUTS employees on September 11, 2020, including theft and unlawful imprisonment.

179.    Approximately eight (8) SPD officers arrived from the back of the parking lot,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 45 of 280**                                                    KURT BENSHOOF
                                                                         1716 N 128th ST
                                                                         Seattle, WA 98133
                                                                         kurtbenshoof@gmail.com

some with guns drawn, including three who had been present on September 11, 2020: Coomer, McClelland and Parton.

180.    Plaintiff walked across the parking lot to meet with the SPD officers to make a crime victim report; SPD Officers took Plaintiff's gun and told him he was under arrest.

181.    Incredulous, Plaintiff asked McClelland what he was being arrested for.

182.    McClelland responded, "We don't know.  We're trying to figure that out."  (*See* Exhibit P103).

183.    Plaintiff reminded the officers that he had called 911 to report multiple felonies and misdemeanors perpetrated on September 11, 2020, as a victim witness.

184.    The officers denied Plaintiff's attempts to make complaint as a victim witness.

185.    SPD officers then asserted that the parking lot was owned by SPROUTS, and therefore Plaintiff had criminally trespassed upon SPROUTS property.

186.    The parking lot is not owned by SPROUTS.

187.    On September 11, 2020, SPD officers had only asserted that Plaintiff could not enter the SPROUTS *store* and SPD officers had made no mention of Plaintiff being prohibited from being in the parking lot. (*See* Statement #127).

188.    Plaintiff was thereupon arrested for allegedly violating SMC 12A.08.040(A) criminal trespass in the first degree and SMC 12A.14.075 unlawful use of a weapon to intimidate another, despite the fact Plaintiff never saw a SPROUTS employee or came within approximately 150 feet of the store entrance.

189.    Plaintiff's property, including his shotgun and cell phone, were taken by SPD officers against his will by the fear of immediate injury to Plaintiff if he acted to prevent or resist the taking.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 46 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

190.     Within a few hours, Plaintiff's 2011 Toyota FJ Cruiser ("FJ Cruiser") was towed from the parking lot by Lincoln Towing Company.

191.     The following week, Plaintiff sought to determine which SPROUTS employee had called Lincoln Towing to have Plaintiff's FJ Cruiser towed, and a SPROUTS employee confirmed that the parking lot was *not owned* or operated by SPROUTS and denied SPROUTS' responsibility for the towing of Plaintiff's FJ Cruiser.

**D.     PCC NATURAL MARKETS**

192.     On, or around, September 6, 2020, PCC instituted a "No Mask, No Entry" policy. PCC employees asserted the authority to deny Plaintiff in-store services as a public accommodation pursuant to Governor Inslee's covid proclamations.

193.     PCC employees allowed the wearing of a face shield in lieu of a face mask.

194.     SPD officers and PCC employees believed that Plaintiff was protesting State, County, CITY and store face covering mandates and policies.

195.     Plaintiff informed PCC employees and SPD officers that he had a disability precluding him from being coerced to wear a face covering as a condition of entrance to PCC.

196.     If not for Plaintiff's class and disability, PCC employees: (1) would have served Plaintiff at the deli; (2) would have served Plaintiff at the checkout stand; (3) would not have set in motion a series of events which would foreseeably lead to the unlawful imprisonment of Plaintiff; and (4) would have allowed Plaintiff to use his credit card and thereupon engage in interstate commerce;

197.     If not for Plaintiff's class and disability: (1) SPD officers would not have interfered with Plaintiff's shopping, nor accused him of any criminal law violation; nor (2) would

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 47 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   CITY officials have used the U.S. Mail in furtherance of schemes to silence, seize or confine
2   Plaintiff.
3       198.    If not for Plaintiff belonging to a class of people whose beliefs precluded Plaintiff
4   from being coerced to wear a face covering, PCC employees in joint action with SPD officers
5   and CITY officials would not have acted with intent to silence, restrain, seize, or confine Plaintiff.
6
7       199.    The following incidents at PCC Aurora, PCC Fremont, and PCC Ballard comprise
8   only a fraction of the times that Plaintiff was denied service, harassed, stalked, restrained,
9   threatened, confined, and otherwise subject to invidious discrimination.

10  *1) October 3, 2020*

11      200.    On October 3, 2020, Plaintiff entered PCC Aurora sans face covering, located at
12  7504 Aurora Ave North, Seattle, WA 98103.

13      201.    When Plaintiff approached the check-out stand he was refused service.

14      202.    PCC manager Tyler Goslin ("Goslin") approached Plaintiff, stating, "I'm not
15  going to have you go through one of my cashier registers, so if you want to just leave money,
16  just leave it somewhere away from us, please.  (*See* Exhibit P104).
17
18      203.    Plaintiff responded to Goslin, "Where would that be?"

19      204.    Goslin answered, "Anywhere you'd like."

20      205.    As he did every instance that he was denied checkout service, Plaintiff left cash
21  payment for his groceries inside the store, plus a tip.  Plaintiff did not receive change for his
22  purchase.

23  *2) October 18, 2020: Civil Admonishment*

24      206.    On October 18, 2020, Plaintiff entered PCC Aurora sans face covering and
25  shopped for groceries.
26

207.     PCC manager Steve Mitchell, ("Mitchell") approached Plaintiff, violating PCC's six-foot distancing policy, to hand Plaintiff a trespass admonishment document.  (*See* Exhibit P35A).

208.     Plaintiff declined Mitchell's offer and said, "No thanks."

209.     Mitchell asserted that Plaintiff was trespassed from PCC and subject to arrest.

210.     Plaintiff informed Mitchell that Plaintiff would have to be violating a criminal law statute to be subject to arrest, and that Plaintiff was not violating any law by shopping without a face covering.

211.     Plaintiff shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store, plus a tip, but received no change.

### 3) SPD Incident 2020-304716

212.     On October 27, 2020, Plaintiff entered PCC Aurora to buy groceries sans face covering.  Manager Mike E. Fox ("Fox") demanded that Plaintiff put on a face covering or leave.

213.     Plaintiff shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store, plus a tip, but received no change.

214.     Fox approached Plaintiff before Plaintiff had exited the store.

215.     Fox appeared visibly irate to Plaintiff; in sight and hearing of numerous employees and shoppers, Fox yelled at Plaintiff, ***"Fuck you!"***

216.     Sans mask, Plaintiff visibly smiled at Fox and exited the store.

217.     After Plaintiff left PCC Aurora and drove home, SPD officers Nathan Lemberg #7456 ("Lemberg") and Douglas Beard #7459 ("Beard") responded to the 911 call by Fox.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 49 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

218.    In the offense report, Lemberg and Beard accused Plaintiff of violating Seattle Municipal Code 12A.08.040(A); and 12A.08.060.

219.    Lemberg and Beard were absent evidence that said codes are laws under which Plaintiff was subject to criminal jurisdiction, arrest, and prosecution, pursuant to Wash. Const. art II §§ 22; 32; art III § 12, art XI § 11.

220.    Plaintiff was charged with violating Seattle Municipal Code 12A.08.040(A) criminal trespass, and 12A.08.060 theft on November 13, 2020, in case no. 656749.

221.    Case no. 656749 was tried in September 2021, yet Plaintiff has not been sentenced.

### 4)  Emails with Steve Mitchell

222.    On November 3, 2020, PCC Manager Steve Mitchell ("Mitchell") emailed Plaintiff, asserting that Plaintiff had been trespassed from all PCC stores because Plaintiff would not comply with PCC's "no mask-no entry" policy, (*See* Exhibit P35B).

223.    Mitchell alleged that 28 CFR § 36.208 authorized PCC to deny Plaintiff entrance because of Mitchell's belief that Plaintiff posed "a threat to the health and safety of others."

224.    Mitchell alleged that Plaintiff shopping without a facemask authorized PCC employees to refuse Plaintiff entrance to PCC stores pursuant to RCW 49.60.125: "behaviors… constituting a risk to….other persons can be grounds for refusal."

225.    Mitchell did not provide Plaintiff with reasonable judgment, nor the best available objective evidence, authorizing Mitchell to deny assert that Plaintiff was a risk to others.

226.    Mitchell's invidious discriminatory animus towards Plaintiff's class, his disability, and his exercise of rights protected by the First amendment were a proximal cause of Mitchell denying Plaintiff entrance to PCC stores.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 50 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

*5) SPD Incident #2020-311598*

227.     On November 4, 2020, Plaintiff called 911 while standing outside Aurora PCC to report that PCC employees had been engaging in months of discrimination and harassment against him.

228.     Plaintiff alleged violations of his Civil Rights by employees of PCC, and prima facie evidence of an ongoing criminal conspiracy between PCC employees and CITY of Seattle

*6)* ("CITY") employees.  Plaintiff cited RCW 9.91.010.

229.     SPD Officers Defendant Jonathan Kiehn #5849 ("Kiehn") and Michael Cruzan #5849 ("Cruzan") responded, meeting Plaintiff in the parking lot to discuss Plaintiff's complaints.

230.     Plaintiff informed Kiehn and Cruzan that RCW 49.60.030 prevented PCC from discriminating against Plaintiff due to his disability by denying Plaintiff his right to the full enjoyment of any public accommodation open to the public.

231.     Plaintiff provided Kiehn with printed copies of RCW 49.60.030, .040, RCW 9A.52.070, and RCW 9A.52.090, explaining that criminal trespass required mens rea to enter or remain unlawfully.

232.     Plaintiff informed Kiehn that PCC's entrance sign stating, "No Mask, No Entry," was not a law, and that the conditions for entry discriminated against Plaintiff's class, his disability, and his religious beliefs as a reverend of a church.

233.     Plaintiff informed Kiehn that RCW 9A.52.090(2) stipulated that it was a defense to any allegation of criminal trespass that public accommodation was open to the public and that Plaintiff complied with all lawful conditions.

234.     Plaintiff informed Kiehn he had a disability precluding him from wearing a mask.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 51 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

235.   Plaintiff informed Kiehn and Cruzan that it was a crime pursuant to RCW 9.91.010 for PCC employees to deny Plaintiff's civil rights by discriminating against Plaintiff's creed.   234.   Plaintiff informed Kiehn and Cruzan that there was prima facie evidence that CITY officials were engaged in a criminal conspiracy, in joint action with businesses such as SPROUTS Farmers Market and PCC, to deny Plaintiff's civil rights.

236.   After speaking with Kiehn for approximately twenty minutes, Kiehn stated that he would not be arresting *anyone,* which gave Plaintiff good cause to believe that Kiehn understood the law and would not accuse Plaintiff of criminal trespass for shopping without a mask.

237.   Plaintiff shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store, plus a tip, but received no change.

238.   When Plaintiff exited PCC with his groceries, Kiehn and Goslin were conversing in the parking lot; thereupon, Plaintiff had good cause to believe that Kiehn was explaining to Goslin that PCC could not discriminate against Plaintiff for not wearing a face mask.

239.   Because of Plaintiff's good cause belief that Kiehn and Cruzan understood trespass law after being informed by Plaintiff and provided supporting documentation, Plaintiff excitedly texted several friends later that day to inform his friends that the persecution by SPD and the CITY Attorney's Office had finally ended.

240.   In the subsequent SPD incident report, Kiehn recounted being informed by Plaintiff that he is a pastor for a small home church, primarily serving the underprivileged and homeless.

241.   Kiehn recounted that Plaintiff stated that allowing public accommodations to arbitrarily discriminate was a slippery slope that could easily lead to a public accommodation

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 52 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   denying service to **anyone** who looks like a homeless person by arguing that homeless people are

2   dirty and have more germs.

3       242.    Kiehn **consulted a Webster's dictionary** to conclude that PCC's sign stating, "No

4   Mask, No Entry" was a lawful order requiring Plaintiff's compliance; thereupon, Kiehn forward a

5   criminal trespass complaint against Plaintiff to the CITY Attorney's Office. (*See* Exhibit P38).

6

7       243.    On November 13, 2020, the CITY Attorney's Office filed a criminal complaint in

8   case no. 656748, charging Plaintiff with violating 12A.08.040(A).  The prosecution is ongoing.

9   *7)  SPD Incident 2020-314225*

10      244.    On November 7, 2020, Plaintiff entered PCC Aurora to buy groceries without a

11  face covering and Manager Steve Mitchell demanded that Plaintiff put on a face covering or

12  leave.

13      245.    Plaintiff shopped for groceries, was denied check-out service, and left cash

14  payment for his groceries inside the store, plus a tip, but received no change.

15

16      246.    After Plaintiff left PCC Aurora and drove home, SPD Officers Richard Lima

17  #7760 ("Lima") and Nathan Shopay #7470 ("Shopay") responded to the 911 call by Steve

18  Mitchell.

19      247.    Lima wrote the offense report.  Plaintiff was later charged with violating Seattle

20  Municipal Code 12A.08.040(A).  Lima and Shopay were absent evidence that 12A.08.040(A)

21  was a law under which Plaintiff was subject to criminal jurisdiction, arrest, and prosecution,

22  pursuant to Wash. Const. art II §§ 22; 32; art III § 12, art XI § 11.

23      248.    On March 25, 2021, the CITY Attorney's Office filed a criminal complaint in case

24  no. 656748, charging Plaintiff with violating 12A.08.040(A).  The prosecution is ongoing.

25  *8)  SPD Incident 2020-317337*

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 53 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

249.    On November 11, 2020, Plaintiff entered PCC Aurora to buy groceries without a mask and Mitchell demanded that Plaintiff put on a face covering or leave.

250.    Plaintiff provided Mitchell with written Notice of Violation informing Mitchell that he, and other PCC employees, were violating Plaintiff's rights under color of law, and may be subject to civil or criminal liability, (*See* Exhibit P35C).

251.    Plaintiff shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store, plus a tip, but received no change.

252.    After Plaintiff left PCC Aurora, SPD Officers Richard Lima #7760 ("Lima") and Jacob Masterson #8350 ("Masterson") responded to the 911 call by Steve Mitchell.

253.    Lima wrote the offense report, alleging that Plaintiff committed criminal trespass.

254.    On March 25, 2021, the CITY Attorney's Office filed a criminal complaint in case no. 656748, charging Plaintiff with violating 12A.08.040(A).  The prosecution is ongoing.

*9)  SPD Incident 2020-323700*

255.    On November 19, 2020, Plaintiff entered PCC Aurora to buy groceries without a mask AND Manager Tyler Goslin demanded that Plaintiff put on a face mask or leave.

256.    Plaintiff provided a store supervisor with a Notice of Violation to inform PCC employees were violating Plaintiff's rights in joint action with SPD officers, (*See* Exhibit P35A).

257.    Plaintiff shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store, plus a tip, but received no change.

258.    After Plaintiff left PCC Aurora, SPD officers Richard Lima #7760 ("Lima") responded to the 911 call by Goslin.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

259.    Lima completed an offense report alleging Plaintiff violated Seattle Municipal Code 12A.08.040(A).

260.    On April 5, 2021, the CITY Attorney's Office filed a criminal complaint in case no. 656748, charging Plaintiff with violating 12A.08.040(A).  The prosecution is ongoing.

**10) SPD Incident #2020-346192**

261.    At approximately 945pm on December 16, 2020, Plaintiff and his son entered PCC Fremont, located at 600 N 34th Street, Seattle, WA 9013, to buy groceries.

262.    Manager Zachary Cook ("Cook") followed Plaintiff and A.R.W. around the store, harassing them to leave, and called 911.

263.    Plaintiff also called 911 to report Cook's harassment and violation of RCW 9.91.010 Denial of civil rights.

264.    When SPD Officers Nicholas French #8696 ("French") and Matthew Lentz #8702 ("Lentz") responded, Plaintiff explained that he and his son were well within the law to shop in the store without wearing facemasks; A.R.W. began to cry.

265.    Cook, in joint action with French and Lentz, threatened Plaintiff with arrest if Plaintiff and A.R.W. did not leave the store.

266.    Plaintiff and A.R.W. were forced from PCC Fremont without their groceries by French and Lentz, officers carrying loaded firearms.

267.    French asserted that the PCC store sign stating, "No Mask, No Entry," was "the law" which precluded Plaintiff from entering the public accommodation without a face covering; authorized Cook to deny Plaintiff service; and authorized French and Lentz to arrest Plaintiff if Plaintiff did not immediately leave the store without his shopping cart of groceries.

268.    Plaintiff informed French and Lentz that their threatening Plaintiff with unlawful

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 55 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  imprisonment constituted a gross misdemeanor.

2      269.    Restraining another person by restricting that person's movement without their

3  consent, accomplished by intimidation or deception and without legal authority in a manner

4  which substantially interferes with their liberty, is a violation of RCW 9A.40.040, a class C

5  felony.

6

7      270.    When Lentz and French drove away, Plaintiff called 911 to request a superior

8  officer respond to PCC so that Plaintiff could make complaint against French and Lentz for their

9  unlawful imprisonment of Plaintff and A.R.W.

10     271.    Dispatch told Plaintiff that they would not dispatch an officer.

11  *11) SPD Incident #2020-346226*

12     272.    At approximately 10:50pm on December 16, 2020, while driving home from PCC

13  Fremont with A.R.W., Plaintiff saw an SPD Cruiser ahead of them, also traveling northbound on

14  Aurora Avenue North.

15     273.    As SPD dispatch had refused to send a superior officer to PCC and the SPD

16  precincts were all indefinitely closed to the public, Plaintiff concluded that speeding by the patrol

17  cruiser in order to be pulled over was the only means available by which Plaintiff could make a

18  victim complaint to an SPD officer about the threats made by Cook, French, and Lentz.

19

20     274.    Officer Corey Foy #8422 ("Foy") turned on his lights as Plaintiff passed the patrol

21  cruiser.

22     275.    Plaintiff pulled his FJ Cruiser into the empty parking lot of a closed Pho restaurant

23  at 12800 Aurora Ave N, Seattle, WA 98103.

24     276.    Plaintiff, driver license, registration and insurance in his clearly visible hands,

25  stepped out of his FJ Cruiser to speak with Foy, standing in the otherwise empty parking lot.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 56 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

277.     Plaintiff asked Foy if he would turn off the patrol car spotlight, because if was blinding Plaintiff's vision.

278.     Plaintiff could not see Foy, or any other SPD officer, as the headlights of the patrol car, in addition to the patrol car spotlight, cast Foy in darkness.

279.     Foy began screaming at Plaintiff to get back in his FJ Cruiser.

280.     Plaintiff stepped next to his FJ Cruiser and asked Foy what Plaintiff was doing wrong by standing next to his own car in an empty parking lot with his driver license, registration and insurance, trying to make a victim crime complaint.

281.     Foy yelled that Plaintiff was "obstructing justice."

282.     281. Foy screamed at Plaintiff to "get on the ground," and that Plaintiff was under arrest. 283. Plaintiff looked down at the dirty wet asphalt. Plaintiff did not understand how Foy had probable cause to place Plaintiff under arrest or require Plaintiff to lay down on cold, wet asphalt.

283.     284. At that moment, Plaintiff glimpsed Foy running toward him.

284.     285. Scared for his safety and physical well-being, Plaintiff tried to get into his FJ Cruiser for protection.

285.     Before Plaintiff was able to get into his FJ Cruiser, Foy grabbed Plaintiff's clothing and threw Plaintiff to the pavement, tearing the hood off Plaintiff's vest, ripping the side of the vest, and causing contusions and abrasions on Plaintiff's forearm.

286.     Plaintiff was thrown face down on the pavement.

287.     A second SPD officer, a female, pulled on Plaintiff's face from behind, demanding that Plaintiff put his arms behind his back to be cuffed.

288.     Plaintiff cried out, pleading that the officers stop. "Why are you doing this? My

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 57 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

son's in the car."

289.    A.R.W. went into visible shock at witnessing this.  A.R.W.'s legs began shaking uncontrollably.

290.    Plaintiff was handcuffed and then questioned by SPD officer Daniel Auderer #7499 ("Auderer").  Plaintiff asked to be released.

291.    Plaintiff stated that his questions to Foy seeking legal clarification of how Plaintiff could be violating any law evidenced Plaintiff's lack of *mens rea* to violate any law.

292.    Foy did not consider whether Plaintiff had criminal intent to violate any law.

293.    Plaintiff stated to the officers that he had intentionally sped past Foy's patrol cruiser in order to be pulled over to make a victim complaint regarding violations of law by Lentz, French and PCC manager Cook; that is, because SPD dispatch had refused to send a superior officer to PCC and the SPD precincts were closed to the public, this was the only means available by which Plaintiff could make a crime victim complaint to an SPD officer.

294.    SPD Officer Daniel Auderer #7499 ("Auderer") informed Plaintiff that he was suspected of driving under the influence.

295.    Plaintiff informed Auderer that Plaintiff had not even had a cup of coffee on December 16, 2020, let alone ingested any prescription or illegal drug.  Plaintiff asked to be released.

296.    Auderer stated in SPD Incident Report #2020-346226, "As I was speaking with [Plaintiff] I noted his pupils were *constricted* (sign of *opiate use*).

297.    In Plaintiff's personal experience, shining a flashlight in a human's eyes constricts their pupils.  *Opiate use dilates a human's pupils.*

298.    Neither Auderer nor any other SPD officer present read Plaintiff the implied

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 58 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

consent warnings of RCW 46.20.308.

299.    Auderer stated that Plaintiff was going to be taken to Northwest Hospital for a blood draw.  Plaintiff objected.

300.    Plaintiff was transported to Northwest Hospital where he was made to stand outside in the hospital parking lot; it was approximately 40 degrees Fahrenheit and Plaintiff was wearing a sleeveless t-shirt.

301.    Officers told Plaintiff they were waiting to obtain a search warrant for a blood draw to test Plaintiff's blood for drugs.

302.    After approximately an hour of waiting outside the hospital, Foy gave Plaintiff three

303.    pages of paper at approximately 1:15am on December 17, 2020.  Foy stated that the pages authorized the SPD to draw Plaintiff's blood without Plaintiff's consent.

304.    The search warrant was dated 12:08am December *16*, 2020.

305.    SPD does not own, possess, nor have access to a time-travel machine.

306.    The search warrant was signed by Auderer.  The search warrant did not state whether it was issued pursuant to the *electronic* or *telephonic* warrant procedure, despite the document stating in bold lettering, "(*select one*)."

307.    Plaintiff informed Foy, as well as other officers present, that Plaintiff had a disability precluding him from having his face covered.

308.    Foy, with the help of the other officers present, strapped Plaintiff to a stretcher and put a mask on Plaintiff's face against his will.

309.    No record of Judge Mary Lynch's permission to affix the magistrate's signature to the warrant was filed in the court record of SMC case no. 658268 nor case no. 662870.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 59 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

310.     Medical personnel at Northwest Hospital drew two vials of Plaintiff's blood. SPD officer wearing badge number #2525 asserted that Plaintiff was under the influence of cocaine, despite Plaintiff's slow heart rate.

311.     The assertion of amphetamine use directly contradicted Auderer's allegation that Plaintiff was under the influence of an *opiate* during the parking lot sobriety test.

312.     During the drive from the hospital to the King County jail, Foy told Plaintiff, "You're lucky I didn't pop you. Haven't you seen the videos of what happens to people?"

313.     Plaintiff reasonably interpreted Foy's statement to mean that Plaintiff was lucky that Foy hadn't shot and killed him for standing in an empty parking lot trying to make a complaint as a victim witness to the SPD.

314.     During the drive to jail Foy told Plaintiff that Foy would have only given Plaintiff a speeding ticket if Plaintiff had got back into his FJ Cruiser when Foy first demanded.

315.     Plaintiff reasonably interpreted Foy's statements to mean that Plaintiff was: (1) thrown to the pavement; (2) dog-piled; (3) arrested; (4) strapped to a stretcher; (5) subjected to having a mask forced onto his face; (6) subjected to a forced blood draw; and (7) imprisoned, as retaliation by SPD officers because of Plaintiff's class, his seeking redress for his grievances, and his seeking equal protection under the law.

316.     To obtain a search warrant, RCW 10.79.035(1) requires an "application supported by oath or affirmation."

317.     RCW 10.79.035(4) states, "The evidence in support of the finding of probable cause and a record of the magistrate's permission to affix the magistrate's signature to the warrant shall be preserved and shall be filed with the issuing court as required by CrRLJ 2.3 or CrR 2.3."

318.     CrRLJ 2.3(c) states, in part, "Sworn testimony must be in writing, recorded, or

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 60 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

otherwise preserved. The record shall include any additional evidence relied upon by the court. The recording, or a duplication of the recording, ***shall be a part of the court record*** and shall be provided if requested or if ordered by the court…..The warrant shall designate the court to which it shall be returned. The warrant shall be returned to the issuing court, ***filed in the court record and available for public review*** unless ordered sealed by the court.

319.    No evidence of sworn testimony by Auderer exists in the court record of SMC case no. 658268 nor case no. 662870 available for public view.

320.    If not for the discriminatory animus of Auderer and Foy against Plaintiff's beliefs and the exercise of his First Amendment protected rights, Auderer and Foy would not have arrested Plaintiff.

321.    Plaintiff was released the evening of December 17, 2020, without being brought before a judge.  The CITY chose not to file charges in SMC case no. 658268.

322.    On December 14, 2021, the CITY refiled charges in SMC case no. 662870.

323.    On February 24, 2023, Assistant CITY Attorney Christopher Karr, dismissed all charges under SMC case no. 662870 with prejudice for ***lack of proof.***

*12) SPD Incident #2021-32411*

324.    On February 7, 2021, Plaintiff and his then fiancé, Brian Gage ("Gage"), entered to shop at PCC Fremont.

325.    Gage, an African American woman, wore a facemask while shopping inside the store *for her groceries* to avoid harassment and discrimination by employees.

326.    Plaintiff and Gage, as they regularly did, shopped separately with their own individual shopping carts and payment methods.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 61 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

327.     Manager Zachary Cook called 911 to have Plaintiff removed from the store because Plaintiff was not wearing a face covering.

328.     Plaintiff was still shopping when SPD officer Matthew Lentz #8702 ("Lentz") responded to the store.

*13) when Lentz arrived.*

329.     Lentz, armed with a loaded gun, forced Plaintiff out of the store under threat of arrest.

330.     Gage was in the checkout line with her groceries when Lentz arrived and Cook then told Gage that, ***because she was friends with Plaintiff***, she would not be checked out by PCC cashiers.

331.     Cook asserted to Gage that Plaintiff was "exploiting" her, and therefore Cook had to prevent her exploitation by refusing to check her out.

332.     Gage was restrained from completing her purchase and was forced to leave without any groceries, thereby denying Gage the opportunity to use her credit card and engage in interstate commerce.

333.     Gage asked Lentz why the police were allowing PCC to discriminate against her ***even though she was wearing a mask,*** but Lentz refused to address Gage's question, so Gage then left the store.

334.     Shortly thereafter, exhausted by the constant discrimination she witnessed and experienced living in Seattle, Gage moved to Brooklyn, New York so that she would no longer be subject to harassment, and imprisonment because of her relationship with Plaintiff.

***14) SPD Incident #2021-38488***

335.     After six months of Plaintiff having felt terrorized by arrest or the threat of arrest

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 62 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

dozens of times at various stores, something changed in SPD policy in early March 2021.

336.     While shopping for groceries on or around March 5, 2021, SPD officer Stuart Parker #8484 ("Parker") responded to 911 calls by Plaintiff and PCC staff.

337.     Plaintiff informed Parker that he was tired of having his civil rights violated, citing RCW 9.91.010, the Civil Rights Act of 1964, and *Hamm v. CITY of Rock Hill.*

338.     Parker thereupon informed Plaintiff that he was not being removed from the store, nor detained, and that Plaintiff was free to go about his shopping.

339.     Parker informed PCC staff that SPD had no criminal jurisdiction to prevent Plaintiff shopping without a face covering.

340.     PCC staff were informed by SPD that the only way to lawfully prevent Plaintiff from grocery shopping without a mask was for an employee to obtain a restraining order against Plaintiff by alleging harassment.

### 15) Cook Restraining Order Part One

341.     On or around March 15, 2021, after SPD informed PCC employees that SPD could not prevent Plaintiff from maskless shopping, Fremont manager Zachary M. Cook ("Cook") was made aware that the only way for Cook to prevent Plaintiff from coming into the Fremont store was for Cook to obtain a restraining order against Plaintiff.

342.     Thereafter, with the financial assistance of PCC Natural Markets, Cook retained Christian Marcelo ("Marcelo"), an attorney for Perkins Coie, LLP.

343.     On March 19, 2021, Cook filed a petition for a protection order, and a temporary protective order, against Plaintiff., King County District Court case no. 21-CIV-24845-KCX, (*See* Exhibit P36).

344.     Cook's petition for restraining order against Plaintiff, Cook asserted that he was

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 63 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

the "victim of unlawful harassment" by Plaintiff and that "great or irreparable injury to Cook will result" if the immediate temporary protective order were not granted.

345.    Throughout Cook's declaration, signed under penalty of perjury, Cook repeatedly asserted that Plaintiff yelled and screamed at Cook, sometimes "inches away from my face."

346.    Plaintiff has never yelled or screamed at Cook inside of PCC.

347.    Plaintiff has never yelled or screamed at Cook outside of PCC.

348.    Cook asserted that Plaintiff "intimidates the staff under my supervision and also my customers," and that Plaintiff "is mentally unstable" and "creates an unsafe environment every time he steps in my store."

349.    Cook further asserted that Plaintiff's maskless shopping "puts me at risk for contracting COVID-19."

350.    Plaintiff has never put anyone at risk of contracting COVID-19.

351.    Plaintiff has never contracted COVID-19.

352.    Plaintiff has tested negative for "SARS CoV-2" every time he has been coerced to undergo a PCR nasal swab.

353.    Plaintiff began video recording his shopping trips in August 2020, including trips to Fremont PCC, and possesses hundreds of gigabytes of video documentation evidencing that Cook's sworn statements constitute felony perjury.

354.    Plaintiff's videos evince that Plaintiff *never* yelled at anyone inside *any store*.

355.    Plaintiff's videos evidence that Plaintiff never violated another shopper or store employee's personal space.

356.    Cook regularly and unnecessarily violated PCC's six-foot distancing policy to inform Plaintiff that he wasn't welcome in the store and that Cook had called 911 to have Plaintiff

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 64 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

removed from the store or arrested.

357.     Cook stated that Plaintiff would have been allowed to shop in Fremont PCC without a mask if Plaintiff had worn a face shield.

358.     Cook did not acknowledge Plaintiff had informed Cook Washington Department of Health ("DoH") guidelines explicitly informed the public that the use of face shield does not serve any purpose or provide any protection.

359.     On March 24, 2021, Judge Fa'aomoi Masaniai Jr. granted Cook's Petition, and entered a Temporary Protection Order against Plaintiff.

*16) PCC Ballard*

360.     On, or around, March 24, 2021, Plaintiff was served with Cook's temporary restraining order preventing Plaintiff from being within 500 feet of Cook's place of employment, PCC Fremont.

361.     Subject to immediate arrest at SPROUTS Farmers Market, PCC Aurora, and PCC Fremont, Plaintiff drove the extra miles to shop for groceries at PCC Ballard; located at 1451 NW 46th Street, Seattle, WA 98107.

362.     While shopping inside PCC Ballard, SPD Ofc. Matthew Lentz #8702 ("Lentz") appeared next to Plaintiff.

363.     Lentz asked Plaintiff if he was aware of Cook's restraining order, and Plaintiff confirmed he was.

364.     Lentz asserted that the restraining order prevented Plaintiff from entering *any* of the sixteen PCC stores throughout Puget Sound.

365.     Plaintiff denied that Cook's restraining order could legally prohibit Plaintiff from any PCC store besides the one that Cook was employed at in Fremont.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 65 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

366.    After Lentz informed Plaintiff that he would be subject to immediate arrest if Plaintiff did not immediately leave Ballard PCC without his groceries, Plaintiff cordially complied.

367.    Before Plaintiff had even reached the exit of the store, more SPD officers began entering the store; by the time Plaintiff had exited the store, approximately *eight SPD officers* stood guard between the store entrance and where Plaintiff stood in the parking lot.

368.    The use of eight or more SPD officers was intended to intimidate Plaintiff.

### 15) Cook Restraining Order – Part Two

369.    On April 19, 2021, Judge Pro Tem L. Stephen Rochon entered an Order for Protection against Plaintiff on behalf of Cook.

370.    Plaintiff respectfully waited a year for the protection order to expire, so that Plaintiff could again resume shopping at PCC Fremont.

371.    For the next year, Plaintiff had to drive the additional miles to PCC Ballard to obtain groceries.

372.    Cook, by and through his attorney, Mr. Marcelo, filed a motion to renew the protection order on, or around, March 21, 2022.

373.    On April 19, 2022, Plaintiff was denied access to attend the hearing in person because he would not wear a face covering to enter court.

374.    Plaintiff appeared for the hearing by WebEx video, before Judge Gregg Hirakawa, in King County District Court, Western Division.

375.    Mr. Marcelo, on behalf of Cook, presented Cook's sworn statements as factual evidence in the court record; Cook again claimed that Plaintiff had threatened and harassed Cook.

376.    Plaintiff testified under penalty of perjury that Cook had repeatedly lied in his

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 66 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

declaration.

377.    Plaintiff testified that he had never yelled at Cook in Fremont PCC, nor invaded anyone's personal space in Fremont PCC, nor threatened or harassed anyone inside Fremont PCC.

378.    Plaintiff testified that a "store policy" cannot authorize a public accommodation to discriminate against a class of people sharing Plaintiff's beliefs or disability simply because the store employees don't like, or are suffering from an irrational fear of, the minority religious beliefs or disabilities of others.

379.    Plaintiff testified that a "store policy," cannot legally impose a requirement upon Plaintiff to wear a face covering as a condition of entrance to a "public accommodation" under the Civil Rights Act of 1964 and RCW 49.60.030.

380.    Judge Hirakawa asserted that PCC's "store policy" superseded state and federal laws against discrimination and the rights of Plaintiff to enter a public accommodation without a face covering.

381.    Judge Hirakawa ordered that Cook's protection order against Plaintiff be extended for one year, until April 19, 2023.

382.    Judge Hirakawa's order threatened the use of physical force by SPD if Plaintiff tried to shop at PCC Fremont.

383.    Judge Hirakawa's order intentionally harassed Plaintiff, and thereby hindered, delayed, or dissuaded Plaintiff from shopping at PCC Fremont and reporting Cook's violations of the Civil Rights Act of 1964 between April 22, 2022, and April 21, 2023.

384.    Judge Hirakawa knew, or should have known, that the order was CRAP employed to tamper with Plaintiff as a witness and victim, and thereby violated 18 U.S.C. §

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 67 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1512.

### 17) PCC Legal Counsel

385.     On April 19, 2023, Plaintiff called PCC corporate office to corroborate that the protection order expired, and to inform staff that Plaintiff intended to resume shopping at Fremont PCC.

386.     On May 2, 2023, Plaintiff received a FedEx delivery containing a letter from Freya R. Brier, ("Brier"), Vice President of Legal at PCC Natural Markets.  Brier's letter stated, in part, "UNDER NO CIRCUMSTANCES are you allowed to shop in any PCC Community Market stores.  Should you fail to abide by this notice, we will contact police to have you removed and criminally prosecuted under Washington State statutes RCW 9A.52.070 or RCW 9A.52.080. (*See* Exhibit P37).

387.     Plaintiff then phoned and texted Bier, attempting to discuss Brier's threats and false statements regarding state trespass laws, ADA law, the Civil Rights Act of 1964, and *Hamm v. CITY of Rock Hill.*

388.     After Brier initially communicated to Plaintiff that she would call him later that day, Brier made no further contact with Plaintiff, refusing to discuss the facts and law.

## E.  DENIAL OF PARENTAL RIGHTS

389.     State, CITY, and private individuals in joint action with state actors as associates-in-fact employed CRAP of the C19 Enterprise as integral participants to set in motion a series of events by which to retaliate against Plaintiff's class.

390.     As such, State, CITY, and private individuals in joint action with state actors acted with deliberate indifference to truth and law to enable, facilitate, or perpetrate violations of the First and Fourteenth Amendments through the denial of Plaintiff's right to associate with A.R.W.,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 68 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

to direct the care and upbringing of his son, to the equal protection of the law, and to due process.

391.    Beginning in September 2021, Owen and her family law attorney, Nathan Cliber ("Cliber") would repeatedly cite the arrests and malicious prosecutions of Plaintiff resultant from Plaintiff shopping at SPROUTS and PCC with a face covering as "evidence" that Plaintiff was: (1) crazy; (2) a criminal scofflaw; and (3) a direct and imminent threat to A.R.W.

392.    Owen and Cliber knew that CITY and King County officials, by and through the C19 Enterprise CRAP, would allow, enable, facilitate, or perpetrate in concert, Owen's retaliation against Plaintiff's class; the last two years have proven this to be.

*1) Case No. 21-2-11149-8*

393.    On August 23, 2021, Owen attempted to seize permanent custody of A.R.W. and possession of Plaintiff's 2011 Toyota FJ Cruiser by seeking a protection order against Plaintiff.

394.    Owen stated under penalty of perjury that A.R.W. is Plaintiff's son, and that Plaintiff had acted as his father for A.R.W.'s entire life.

395.    Owen asserted that Plaintiff had no parental rights to A.R.W. because Plaintiff's name was not listed on A.R.W.'s birth certificate.

396.    Owen stated in her *ex parte* petition that Plaintiff was withholding A.R.W. from Owen. In fact, Plaintiff had repeatedly and expressly invited Owen to his home over the previous week to sit down for a family discussion with their son, (*See* Exhibit P1A, pg 6, para 3-5).

397.    Owen led the court to believe that Plaintiff's FJ Cruiser was Owen's, (*See* Exhibit P4A, pg 70, para 1).

398.    Plaintiff had paid Owen in full for his FJ Cruiser in 2018, yet Owen refused to give Plaintiff the title.

399.    Owen knew, or should have known, that it is a crime under RCW 9A.76.175 to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 69 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

knowingly make false or misleading material statements to a public servant which are reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties.

400.    Sworn statements of Owen and Plaintiff evidenced that Plaintiff: (1) was the biological father of A.R.W.; (2) had lived with A.R.W.; and (3) had held A.R.W. out as his son.

401.    As such, even though Owen had refused to put Plaintiff's name on the birth certificate of A.R.W., the verified statements of both Owen and Plaintiff were consistent and acknowledged under penalty of perjury that Plaintiff was and is the father of A.R.W.

402.    The trial court issued a full denial order of Owen's petition at approximately 10:30am on September 3, 2021.

*2) SPD Incident #2021-230480*

403.    Around noon on September 3, 2021, Lerman called 911 to report that Plaintiff had kidnapped "her stepson," A.R.W.

404.    Lerman and Owen were not in a legal domestic partnership whereby A.R.W. could be Lerman's "stepson."

405.    Lerman told SPD that Plaintiff was unlawfully in possession of *Owen's* FJ Cruiser.

406.    Lerman did not inform SPD that *Plaintiff had paid Owen in full* for his FJ Cruiser in 2018.

407.    Lerman did not inform SPD that Plaintiff was the sole legal owner entitled to the use and possession of the FJ Cruiser.

408.    SPD Gabriel Ladd #8461 ("Ladd"), called one of Plaintiff's friends, Daniel Heller. Heller informed Plaintiff that SPD alleged to Heller that A.R.W. had been kidnapped.

409.    Plaintiff immediately called the cell phone Ladd, informing Ladd that Plaintiff

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 70 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

had already scheduled with Owen to drop A.R.W. off at her house that afternoon.

410.    Halfway between Plaintiff's house and Owen's house, a distance of approximately two miles, Ladd and SPD Officer Trevor Willenberg #8661 ("Willenberg") pulled their patrol car in front of Plaintiff's FJ Cruiser.

411.    Despite Plaintiff handing Ladd the four-page denial order in King County case no. 21-2-11149-8, Ladd and Willenberg arrested Plaintiff.

412.    Ladd and Willenberg refused to look at Plaintiff's documented evidence that the FJ Cruiser was Plaintiff's sole and exclusive property.

413.    Ladd and Willenberg refused to look at Plaintiff's cellphone evidence that Owen had texted her threat on August 16, 2021, to steal Plaintiff's FJ Cruiser, and to use the police to take A.R.W. from Plaintiff.

414.    Lerman then drove off in Plaintiff's 2011 Toyota FJ Cruiser with A.R.W. inside in full view of Ladd, Willenberg, and a handcuffed Plaintiff.

415.    RCW 9A.56.070 states that it is a class B felony to take a motor vehicle without the permission of the person entitled to its possession when engaged in a conspiracy to sell the vehicle. (*See* Exhibit P15B).

416.    Owen's and Lerman's friend, Owen Hermsen, thereafter texted Plaintiff the threat that Owen would sell Plaintiff's FJ Cruiser if Plaintiff didn't give Owen $17,000. (*See* Exhibit P12B; P22C).

### 3)  *SPD Auto-Theft and DV Calls/Emails*

417.    Beginning on September 8, 2021, Plaintiff attempted to report the theft of his FJ Cruiser by Lerman, and the resulting unlawful possession of his FJ Cruiser by Owen and Lerman.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 71 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

418.    Plaintiff attempted to report Owen's and Lerman's ongoing custodial interference, facilitated by Owen's perjury in case no. 21-2-11149-8, in addition to Owen's and Lerman's false or misleading statements to SPD.

419.    Despite repeated 911 calls and emails to the auto theft unit and domestic violence unit, and providing verified documents notarized under penalty of perjury, SPD refused to act; officers repeatedly advised Plaintiff to seek an attorney for advice regarding a civil action.

*4) SPD Incident #2021-241501*

420.    After Plaintiff was released from King County Jail on September 4, 2021, Owen and Lerman continued to withhold A.R.W., preventing Plaintiff from even speaking with his son on the telephone.

421.    On the morning of Tuesday September 14, 2021, Plaintiff drove to NE 130th Street, Seattle, WA 98125, where Owen's house is located, hoping to speak with A.R.W. before Owen took him to school.

422.    As Plaintiff turned up the hill onto NE 130th Street, Plaintiff saw Owen driving down toward Plaintiff with A.R.W. in her truck.

423.    Plaintiff stopped his car and got out to wave Owen to stop so that Plaintiff could speak with his son.

424.    Owen immediately reversed her truck, backing into the driveway of her home.

425.    Plaintiff got back in his car and drove up the hill, parking on NE 130th Street.

426.    Plaintiff got out of his car as Owen began screaming at A.R.W. to run inside her house.

427.    A.R.W. walked to the front doorstep and stopped, looking upset and confused.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 72 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

428.    Plaintiff reminded Owen that she was not the "sole legal guardian" of A.R.W. and asked Owen why she was withholding A.R.W.

429.    Owen screamed at Plaintiff that she would call the police.

430.    Plaintiff did not step onto Owen's property, nor did he yell at Owen.

431.    Plaintiff decided to leave to diffuse the situation.

432.    440.  SPD officers Robert Stevenson #5859 ("Stevenson") and Ryan Beck #6898 ("Beck") arrived after Plaintiff left.

433.    Stevenson and Beck reported Plaintiff for violating RCW 9A.46.020.(2)(a).

434.    The report stated that Plaintiff "has a history of emotional and physical abuse against Owen," and that "Owen and Lerman believe that Benshoof is mentally ill and de-compensating."

435.    In the criminal offense report, Stevenson and Beck accused Plaintiff of violating Seattle Municipal Code 12A.09.020.

436.    Stevenson and Beck did not attempt to speak with Plaintiff before filing a criminal offense report.

437.    445.  On March 14, 2023, the CITY Attorney's Office filed a criminal complaint in case no. 671384, charging Plaintiff with stalking Owen in violation of Seattle Municipal Code 12A.09.020, along with *eighty-eight similar charges.*  The prosecution is ongoing.

   5)  *Jane Addams Middle School*

438.    On September 23, 2021, Plaintiff drove to A.R.W.'s school to speak to A.R.W., and to see A.R.W.'s school records in the office.

439.    When Plaintiff walked inside to the office, a Jane Addams Middle School ("JAMS") official demanded that Plaintiff, sans mask, leave the building.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 73 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2

440.    Outside the front entrance, Plaintiff was told by Vice Principal Justin Booker ("Booker") that Plaintiff could not come inside the school without a face covering.

3

4

441.    Plaintiff later discovered that JAMS also had a policy of denying entrance to any parent who had not received a "covid vaccine."

5

6

442.    Discrimination in public schools on the basis of creed or religion is prohibited under RCW 28A.624.010.

7

8

9

10

443.    Plaintiff was told by Booker that Plaintiff was not allowed to enter the school without a face covering to speak to A.R.W., nor would Booker have A.R.W. brought to the school entrance to speak with Plaintiff.

11

12

13

444.    Pursuant to RCW 28A.605.020 every school district board of directors shall, after following established procedure, adopt a policy *assuring parents access* to their child's classroom.

14

15

445.    Plaintiff informed Booker that he had a right to see his son's school records held in the office.

16

17

18

446.    Booker refused to allow Plaintiff to see the school records of A.R.W. held at Jane Addams.

19

20

447.    Pursuant to RCW 28A.605.030 the parent of a student who is in attendance at a school has the right to review all education records of the student.

21

22

23

24

448.    Plaintiff provided Booker with an affidavit which evidenced: (1) Plaintiff's full parental rights as the father of A.R.W.; (2) that Owen was unlawfully engaging in custodial interference by withholding A.R.W.; and (3) that Owen had falsified school records at JAMS in order to continue to withhold A.R.W. from Plaintiff, (*See* Exhibit P60).

25

**Child Abuse.**

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 74 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

449.   Pursuant to RCW 9A.16.100(4), it is "presumed unreasonable to correct or restrain a child" by "interfering with a child's breathing."

450.   JAMS staff under the direction of Booker and Principal Paula Montgomery corrected students at school, including A.R.W., for not wearing a facemask or not wearing a facemask "properly," during the 2021/2022 school year.

451.   Because A.R.W. was not wearing a facemask, JAMS staff corrected A.R.W. by demanding that A.R.W. wear a facemask; thus interfering with A.R.W.'s breathing.

452.   Plaintiff also contacted JAMS Principal Paula Montgomery by phone and email, seeking access to A.R.W.'s school records and an explanation for why staff were denying Plaintiff's right to speak with A.R.W. or enter JAMS without a mask, (*See* Exhibit P61A).

453.   Montgomery was made aware of Plaintiff's affidavit given to Booker.

454.   Neither Booker, nor Montgomery, provided Plaintiff with the lawful authority by which Booker and Montgomery could deny Plaintiff's right to access to school and to see A.R.W. pursuant to RCW 28A.605.020.

455.   Thereafter, Chief Legal Counsel for Seattle Public Schools ("SPS"), Gregory Narver ("Narver") emailed Plaintiff.

456.   Narver claimed that JAMS did not have to provide Plaintiff the school records of A.R.W. pursuant to FERPA, (See Exhibit P61B).

457.   FERPA does not restrict parental access to student records; to the contrary, it requires a school district to provide education records to parents.

458.   FERPA is a law that specifically empowers parents to receive information about their minor students; it mandates the school to make education records available to parents upon request. *See* 34 C.F.R. § 99.10(a) ("Except as limited under § 99.12, a parent or eligible student

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 75 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    must be given the opportunity to inspect and review the student's education records").

2        459.    Under FERPA, an education record is a record that is "directly related" to a

3    student and that is "maintained" by a school or party "acting for" the school. 34 C.F.R. § 99.3.

4        460.    Booker, Montgomery, and Narver never questioned or expressed doubt as to the

5    identity of Plaintiff.

6

7    **Kidnapping.**

8        461.    Booker acted, or threatened to act, in joint action with CITY OF SEATTLE,

9    Lerman, and Owen, to seize, confine, or carry away and hold A.R.W. and the school records of

10    A.R.W. under color of law.

11        462.    Seattle Public Schools ("SPS") School District No. 1, which includes JAMS,

12    entered into a Memorandum of Understanding ("MoU") with the Seattle Education Association

13    for the 2021-2022 school year.

14        463.    Under the terms of MoU, JAMS would follow guidelines from the Washington

15    State Department of Health, ("DoH"), (*See* Exhibit P62, pg. 1, para 4).

16        464.    Under the terms of MoU, JAMS would require that parents and students would

17    be required to wear a facemask or *face shield* to enter the school, (*See* Exhibit P62, pg. 5, para

18    5).

19

20        465.    No mention is made in the MoU that *in 2020* DoH guidelines explicitly stated that

21    *a face shield serves no purpose nor provides any protection*.

22        466.    Booker and Montgomery knew, or should have known, that requirements of the

23    MoU were arbitrary and capricious.

24        467.    Under the terms of the MoU, all visitors were required to follow District covid

25    health and safety protocols, (*See* Exhibit P62, pg. 10, para 8).

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 76 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

468.    Parents without proof of covid "vaccination" were denied entrance to JAMS, (*See* Exhibit P62, pg. 11, para 1).

469.    Secretary of Health and Human Services, Xavier Becerra ("Becerra") was questioned by Kevin Kiley (R-CA) on June 13, 2023.   Becerra testified before the House Education and Workforce Committee.

470.    Becerra stated that HHS conditioned federal funding to schools upon compliance with guidelines requiring children to wear facemasks to enter school.

471.    Becerra did not provide evidence that there was any public health benefit derived from coercing children to wear masks in schools.

472.    Becerra also conditioned federal funding to schools upon compliance with guidelines requiring children to receive covid "vaccinations."

473.    Booker and Montgomery knew, or should have known, that federal funding to JAMS was predicated upon Booker and Montgomery requiring students and parents to wear a facemask and receive a covid "vaccination" to enter JAMS.

474.    Booker and Montgomery knew, or should have known, that the Pfizer BioNTech 162b2 COVID "vaccine" was not a "vaccine" pursuant to RCW 70.290.010(10).

475.    Booker and Montgomery knew, or should have known, that by Becerra conditioning federal funding upon JAMS compliance with mask and "covid vaccine" requirements, that Becerra was effectively engaging in *de facto* bribery of JAMS, in order to coerce parents and children to wear masks and have proof of "covid vaccination" to enter JAMS.

476.    If not for the discriminatory animus of Booker and Montgomery against Plaintiff's beliefs and the exercise of his First Amendment protected rights, Booker and Montgomery would not have denied Plaintiff's right to enter JAMS, nor to speak with his son, nor to see his son's

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 77 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

school records in the possession of JAMS.

477.    If not for the pecuniary interest conferred upon JAMS and their employees by Becerra, in exchange for Booker and Montgomery requiring parents and students comply with mask and "vaccine" requirements, Booker and Montgomery would not have denied Plaintiff's right to enter JAMS, nor to speak with his son, nor to see his son's school records in the possession of JAMS.

### 6) SPD Incident #2021-unknown

478.    On the morning of Friday September 24, 2021, Plaintiff drove to the street of Owen's house, and parked on the street, hoping to take A.R.W. to school. Plaintiff was unable to reach A.R.W. by phone or text.

479.    Plaintiff called 911 to do a wellness check on A.R.W. and determine his son's location because Owen and Lerman were withholding A.R.W. from Plaintiff.

480.    Owen's statements in King County Superior Court case no. 21-2-11149-8, and Lerman's statements on FaceBook asserted that Plaintiff had no lawful rights to his son, (See Exhibit P7A).

481.    As such, Plaintif had good cause to believe that Owen and Lerman intended to retain A.R.W. and conceal A.R.W. from Plaintiff with the intend to hold his son permanently or for a protracted period.

482.    Plaintiff called Jane Addams Middle School ("JAMS") to verify if his son was already at school, but school staff refused to confirm or deny if A.R.W. was at school.

483.    Plaintiff then drove the couple miles to JAMS to verify in person whether A.R.W. was at school.

484.    A JAMS official refused to confirm or deny A.R.W.'s attendance.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 78 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

485.   Plaintiff then received a call from SPD stating that they had arrived at Jessica Owen's house, so Plaintiff drove back to Jessica Owen's house.

486.   Plaintiff was met by SPD Officer Kieran Barton #8747 ("Barton") and Adam Beatty #7453 ("Beatty").

487.   Barton and Beatty refused to take Plaintiff's complaint of custodial interference by Jessica Owen.

488.   Beatty asserted to Plaintiff that Owen was the "sole legal guardian" of A.R.W.

489.   Beatty did not cite or provide Plaintiff with a court order determining Jessica Owen to be the "sole legal guardian" of A.R.W.

490.   Plaintiff had previously texted Owen on September 19, 2021, to inform Owen that her claim under oath in case no. 21-2-11149-8 that Owen was the "sole legal guardian" of A.R.W. constituted felony perjury.

491.   On September 19, 2021, Plaintiff had granted Owen twenty-four hours to amend her false statement in writing, (*See* Exhibit P46).

492.   Owen did not acknowledge that her stating to King County Superior Court that she was the "sole legal guardian" of A.R.W., in case no. 21-2-11149-8, was a false statement.

493.   Owen lacked any evidence that she was the "sole legal guardian" of A.R.W.

494.   Owen continued to assert to SPD officers, including Beatty and Barton, that she was the "sole legal guardian."

495.   Plaintiff tried to provide Beatty and Barton with a sworn affidavit that Plaintiff was the father of A.R.W. with full rights as A.R.W.'s father.

496.   Beatty and Barton did not accept Plaintiff's affidavit, nor acknowledge that a court order was a legal requirement for Jessica Owen to be the "sole legal guardian" of A.R.W.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 79 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

497.    Barton refused to accept or read the affidavit and told Plaintiff, "I'm not taking anything from you.  We know you are trying to set us up."

498.    Barton and Beatty told Plaintiff that he would be subject to arrest for harassment of Owen if Plaintiff returned to the street trying to speak with, or see, A.R.W.

499.    Plaintiff informed Barton and Beatty that he was simply trying to speak with his own son; that is, no probable cause existed for Barton and Beatty to threaten Plaintiff with arrest.

500.    Barton stated, "*Your intent doesn't matter.*  What matters is *how [Owen] feels.*

509.    Barton stated, "If you continue to come back, this gets classified as domestic violence harassment and is a criminal event and you can go to jail for that.  That will significantly impact the chances of you getting to see your kid in the future.  I'm recommending you *don't violate any more laws* by showing up."  (*See* Exhibit P105).

501.    Plaintiff informed Barton that such a threat constituted a violation of RCW 9A.80.010 official misconduct, and threatening Plaintiff with unlawful imprisonment constituted a gross misdemeanor. RCW 9A.46.020(1)(a)(iii) Harassment.

502.    Under the First Amendment to the United States Constitution, a citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future.

503.    Barton and Beatty knew, or should have known, that it was a violation of 18 USC § 1512(d) to unlawfully threaten or harass Plaintiff.

504.    Upon Plaintiff's information and belief, Barton's threat against Plaintiff would chill a person of ordinary firmness from: (1) continuing to try to speak with their own son; and (2) further reporting to SPD officers to seek equal protection under the law.

505.    Barton's threat would lead an ordinary person to conclude that Barton intended to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 80 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

interfere with Plaintiff's right to associate and speak with A.R.W.

506.    Plaintiff's protected First Amendment activities on September 24, 2021, including numerous previous encounters with SPD involving Plaintiff's protected activities under the First Amendment, were a substantial or motivating factor in Barton's threatening conduct towards Plaintiff.

507.    If not for the discriminatory animus of Barton and Beatty against Plaintiff's class and the exercise of his First Amendment protected rights, they would not have refused to consider Plaintiff's evidence and testimony as a victim witness; nor would Barton have threatened Plaintiff with arrest; nor would they have filed an offense report against Plaintiff.

508.    On March 14, 2023, the CITY Attorney's Office filed a criminal complaint in case no. 671384, charging Plaintiff with stalking Owen on September 24, 2021, in violation of Seattle Municipal Code 12A.09.020, *among eighty-eight similar charges, along with a $250,000 arrest warrant.* The prosecution is ongoing.

### 7) *Case No. 21-5-00680-6 Barratry*

509.    Owen hired family attorney Nathan Cliber ("Cliber") in September 2021, filing a Petition to Decide Parentage ("parentage action").

510.    Case no. 21-5-00680-6 was a ruse so that Owen could get a second chance at petitioning for an emergency restraining order against Plaintiff to deny Plaintiff's rights as A.R.W.'s father.

511.    After Plaintiff was personally served Owen's parentage action, Plaintiff appeared under threat, duress, and coercion.

512.    Plaintiff did not consent to family court adjudicating his family affairs. Defendant David Keenan ("Keenan") was assigned as presiding judge.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 81 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

**Impairing the Obligation of Contracts.**

513.   No evidence of Owen's and Plaintiff's contractual privity with Washington state, by dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation was given to family court.

514.   The record showed that Owen and Plaintiff had a twelve-year parenting agreement at common law when Owen initiated her parentage action to seize custody of A.R.W.

515.   Cliber, and Owen knowingly and willfully acted in concert to impair the obligations of Owen to uphold the parenting agreement.

516.   By and through Cliber, Owen made materially false statements to initiate Family Court case no. 21-5-00680-6 in filing a petition to decide parentage.

517.   Owen's September 20, 2021, statement (*See* Exhibit P9D, pg. 254) that Plaintiff was not the presumed father of A.R.W. was an inconsistent material statement under oath which directly contradicted Owen's prior sworn statement weeks earlier in case no. 21-2-11149-8 SEA (*See* Exhibit P4B, pg. 77) on August 21, 2021, which affirmed that: (1) Owen and Plaintiff are the parents of A.R.W.; (2) A.R.W. is related to Plaintiff as his child; and (3) Plaintiff had raised A.R.W. his entire life.

518.   Owen's inconsistent material statements under oath also included her statement on September 22, 2021, that Plaintiff had "acted as [A.R.W.'s] father for [A.R.W.'s] whole life…" (*See* Exhibit P8B, pg. 229).

519.   In case no. 21-2-11149-8 and case no. 21-5-00680-6 Owen took two mutually exclusive positions.

520.   First, Owen declared on August 23, 2021, that Plaintiff: (1) was the biological father of A.R.W., (2) had lived with A.R.W. his entire life; and (3) had acted as his father his

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 82 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  entire life.

2       521.    Mere weeks later in case no. 21-5-00680-6, Owen and Cliber filed a parentage

3  action, the basis of which was that Plaintiff: (1) was not the biological father of A.R.W.; (2) had

4  never lived with A.R.W., and (3) had never held out A.R.W. as his son.

5       522.    In defiance of all logic or pretense of plausible honesty, ***two days after*** Owen

6  signed the petition to decide parentage on September 20, 2021, avowing that Plaintiff was not

7  the presumed father of their son, Owen signed her Declaration of Jessica R. Owen on September

8  22, 2021, stating, "***Kurt having acted as [A.R.W.'s] father for [A.R.W.'s] entire life…***" (*See*

9  Exhibit P9B pg. 229, para. 1).

10       523.    Owen then stated, "We moved in together in July of 2008.  [A.R.W.] was born

11  nine months later…" (*See* Exhibit P9B pg. 230, para 3).  "…September of 2020 that ***I finally***

12  ***moved out of our shared residence…***" (*See* Exhibit P9B pg. 231, para 3).

13       524.    Cliber reviewed Owen's statements, affixed his signature to the petition to decide

14  parentage and motion for immediate restraining order, and filed these documents along with

15  Owen's declaration.

16       525.    At no time did Owen ever claim that there was another possible biological father

17  of A.R.W. Owen and Plaintiff have known since August 2008 that A.R.W. was conceived during

18  sexual intercourse involving only Owen and Plaintiff on July 18, 2008; this date is also Plaintiff's

19  birthday.

20  **TRO Hearing.**

21       526.    On October 25, 2021, Commissioner Jason Holloway ("Holloway") heard

22  Owen's petition for temporary restraining order.

23       527.    Owen sought to obtain sole custody of A.R.W. and prevent Plaintiff from

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 83 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

associating with his son.

528.   Holloway consulted the Judicial Information System, but did not disclose this fact to Plaintiff in accordance with the requirement of RCW 2.28.210(2).

529.   Cliber asserted that Plaintiff had engaged in "domestic violence" against Owen and A.R.W.

530.   Plaintiff has never engaged in domestic violence against anyone.

531.   Plaintiff has never spanked either of his children, nor yelled at them.

532.   Holloway stated on the record, "I'm not requiring that [Plaintiff] do a domestic violence assessment.  That would have been something that would have been ordered if he had been found to be a domestic violence perpetrator, *which he is not.*"

533.   been found to be a domestic violence perpetrator, *which he is not.*"

534.   Holloway thereby implicitly acknowledged that Owen's claims of being stalked by Plaintiff, and her claims that Plaintiff inflicted fear upon her and A.R.W., were false. (*See* RCW 26.50.010(3)).

535.   Holloway asserted that Plaintiff was a "credible threat" to A.R.W. due to Holloways discriminatory animus toward Plaintiff's minority beliefs.

536.   A State must, if it is to invoke the statutes after injunctive relief has been sought, assume the burden of obtaining a permissible narrow construction in a noncriminal proceeding.

537.   After Plaintiff discovered that family court does not allow trial by jury, he filed a motion objecting to the violations of due process, demanding findings of fact and conclusions of law.

538.   Keenan denied Plaintiff's motion without providing findings of fact or conclusions of law, (*See* Exhibit P11).

**No Justiciable Issue.**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 84 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

539.    For a court to obtain jurisdiction, there must be a justiciable issue before said court.

540.    Owen, Cliber, and assigned Judge David Keenan ("Keenan"), knew or should have known that the evidence in the record of King County Superior Court as of the filing of the parentage action on September 28, 2021, evidenced that family court could not overcome Plaintiff's legal presumption as the father of A.R.W., pursuant to RCW 26.26A.115; .435.

541.    Family court had an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.

542.    Cliber, Holloway, and Keenan ("Keenan") knew that the doctrine of judicial estoppel and RCW 9A.72.020 precluded Owen from making inconsistent material statements under oath.

543.    Cliber, Holloway, and Keenan knew that the consent of Plaintiff was never given to adjudicate case no. 21-5-00680-6 without a trial by jury.

544.    Cliber, Holloway, and Keenan knew that through the Fourteenth Amendment the Seventh Amendment protects the right to trial by jury in all civil litigation.

545.    Cliber, Holloway, and Keenan knew that Wash. Const. art I §14 prohibits a public official from denying a civil litigant the right to trial by jury absent the consent of both parties.

**8) At INDABA Racketeering Activity**

546.    Pursuant to the temporary parenting plan and restraining order, Plaintiff could only see A.R.W. at a supervised visitation facility, At INDABA. Plaintiff and A.R.W. were forced to associate with a "supervisor" taking notes and observing every move and word between Plaintiff and A.R.W. in a windowless room with video cameras recording.

**Extortion.**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 85 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

547.    Plaintiff was required to pay approximately $1500 per month to see his son for four hours, one weekend day per month.  Said payments could only be paid by credit card to At INDABA, which constituted interstate commerce as the payment processing involved one or more businesses located in a state or states other than Washington.

548.    Wash Const. art I § 17 prohibits imprisonment for debt, yet Plaintiff was indefinitely imprisoned from his own son unless he paid $1500 per month.

**Kidnapping.**

549.    At INDABA employees acted, or threatened to act, in joint action with CITY OF SEATTLE, Cliber, Holloway, Moore, Keenan, O'Donnell, and Owen, to seize, confine, or carry away and hold Plaintiff under color of law through the temporary restraining order and temporary parenting plan.

### 9)  Challenges to Subject Matter Jurisdiction

550.    On, or around, March 10, 2023, Plaintiff discovered that family court plans and orders apply to fathers and mothers in contractual privity with the state via marriage, domestic partnership, declaration of invalidity, or legal separation; none of which Plaintiff and Owen were party to.  (*See* RCW 26.09.004(3)(4)).

551.    Between September 2021 and March 2022, Cliber failed to disclose that RCW 26.09.004(3)(4) did not apply to Plaintiff.

552.    Washington BAR Rules of Professional Conduct ("RPC") 3.3(A)(3) states that a lawyer shall not knowingly, "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing party."

553.    In March 2022, Plaintiff emailed Cliber upon his discovery of RCW 26.09.004.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 86 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Plaintiff informed Cliber that he believed Cliber had engaged in deceit to invoke family court jurisdiction.

554.   Cliber responded by stating that he had obtained the jurisdiction of family court by other means.

555.   Upon Plaintiff's request that Cliber disclose what this other means was, Cliber refused to disclose by what controlling authority he had done so.

556.   Plaintiff emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), informing Marquez that family court did not have jurisdiction to impose plans and orders involving Plaintiff and A.R.W. because Plaintiff and Owen were not in contractual privity with the state via marriage, domestic partnership, declaration of invalidity, or legal separation.

557.   Marquez instructed Plaintiff to bring the issue up before Keenan.

558.   On April 1, 2022, Keenan heard Plaintiff's motions to dismiss the case for lack of subject matter jurisdiction.

559.   Cliber could not, and did not, establish subject matter jurisdiction to maintain an action in case no. 21-5-00680-6.

560.   Cliber asserted *res judicata* and claimed that Plaintiff's motions quoting U.S. Supreme Court cases were "unintelligible" and "frivolous." (*See* Exhibits P13A; P13B).

561.   Keenan knowingly and willfully dismissed Plaintiff's motions without the requested findings of fact and conclusions of law.

562.   It is an abuse of discretion for a trial court to base its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.

***10) SPD Incident 2022-154753***

563.   On, or around, May 1, 2022, Plaintiff called 911 to report custodial interference

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 87 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

to SPD. Plaintiff made complaint to SPD Officer Ashlie T. Bissell ("Bissell").

564.    Plaintiff reported that Owen and Lerman had unlawfully taken Plaintiff's 2011 Toyota FJ Cruiser and, with the aid of their friend, Owen Hermsen, had attempted felony extortion of Plaintiff seeking $19,000 for the return of Plaintiff's stolen FJ Cruiser.

565.    Plaintiff reported that Owen and Lerman had engaged in felony custodial interference in order to deny Plaintiff's right of association with A.R.W. Plaintiff reported that Owen and Lerman had violated RCW 9A.36.070 by coercing A.R.W. to be subjected to a Pfizer medical experiment by threatening that A.R.W. would be restrained from going to school or seeing his friends.

566.    Bissell told Plaintiff that she could not file a complaint against Owen and Lerman for coercing A.R.W. to be subjected to Pfizer medical experimentation because all SPD officers had been required to get a "covid vaccine."

567.    Plaintiff reported that Owen and Lerman, both prostitutes, had brought their prostitution clients into their home while A.R.W. was present in the house.

568.    On June 29, 2022, Plaintiff emailed the General Investigation Unit and Bissell, providing them with verified documents evidencing felony and gross misdemeanor crimes perpetrated by Owen, Lerman, and family law attorney Nathan L. Cliber, (*See* Exhibits P63; P15A; P15B; P15C; P15D).

569.    No legal action was taken against Owen or Lerman by the CITY.

### 11) SPD Incident 2022-173684

570.    On July 6, 2022, A.R.W. ran away from Owen's to come home to Plaintiff.

571.    SPD Officers were dispatched to Plaintiff's home: Elias Williams #8767 ("Williams"), Charles Foreman #7569 ("Foreman"), and Eric Whitehead #7493 ("Whitehead).

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 88 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

572.   Plaintiff informed Williams that Owen and Lerman were welcoming their prostitution clients into their home when A.R.W. was present.

573.   Plaintiff informed Williams that Owen and Lerman had made false and misleading statements to police to take A.R.W. and Plaintiff's FJ Cruiser, that Owen had committed perjury and custodial interference to fraudulently initiate family court case no. 21-5-00680-6, and that A.R.W. was being subjected to mental and emotional abuse by Owen and Lerman.

574.   Plaintiff informed Williams Owen and Lerman, with the approval of family court, had coerced A.R.W., to engage in conduct that A.R.W. had the right to abstain from, by threatening him with confinement or restraint.

575.   Plaintiff informed Williams that Owen and Lerman had accomplished by deception the unlawful imprisonment of both A.R.W. and Plaintiff by restricting their movement without consent and without valid legal authority in a manner which interfered substantially with their individual liberty.

576.   Plaintiff informed Williams that Lerman had threatened a process server at Owen's home with an aluminum baseball bat, while screaming slanderous lies which disparaged Plaintiff in A.R.W.'s presence.

577.   Plaintiff informed Williams that Lerman's threats and intimidation of a legal server are process was a felony law violation, and that such threats were made to violate Plaintiff's right to petition for redress by scaring all of Plaintiff's friends away from serving court documents.

578.   Williams refused to take Plaintiff's complaints and A.R.W. was taken back to Owen's.

*12) SPD Incident #2022-177198*

579.   On July 7, 2022, A.R.W. did not appear on the court scheduled Zoom video call with

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 89 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Plaintiff, as allegedly required by Family Court case no. 21-5-00680-6.

580.    At approximately 6:00pm on July 9, 2022, Plaintiff called 911 to report Owen for custodial interference, perjury, and barratry, and Plaintiff asked SPD dispatch to send officers to do a wellness check on A.R.W.

581.    SPD Officers Hayden Hogg #8472 ("Hogg") and Jeremy Weiss #8793 ("Weiss") eventually phoned Plaintiff around 12:30am.

582.    Plaintiff met Hogg and Weiss at the street and attempted to give the officers evidence of Owen's violations of the allegedly valid family court restraining order, evidence of Owen's perjury and barratry in obtaining the restraining order, and evidence supporting Plaintiff's contention that the restraining order could not, and did not, apply to Plaintiff and A.R.W. because Plaintiff was not subject to the jurisdiction of Family Court in case no. 21-5-00680-6.

583.    Hogg and Weiss refused to take Plaintiff's documents and refused to even look at them or listen to Plaintiff's explanation of the crimes perpetrated by Owen, Cliber, and Lerman, which the documents evidenced.

584.    Hogg and Weiss refused to inform Plaintiff whether A.R.W. was okay or not, asserting that Plaintiff had no right to know pursuant to the restraining order.

*13) Case No. 21-5-00680-6 Plaintiff Withdraws*

585.    On August 9, 2022, Plaintiff filed his Notice of Withdrawal to Judge Keenan in family court case no. 21-5-00680-6.

586.    Thereafter, Plaintiff emailed Keenan's Bailiff, Beatrice Marquez ("Marquez"), to verify that the restraining order had been amended to reflect that Plaintiff was no longer a party subject to its terms, or that it had been dismissed.

587.    Marquez refused to confirm or deny and instructed Plaintiff to contact the King

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 90 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  County clerk.

2      588.    Plaintiff contacted the clerk and was told that Plaintiff would have to come to the

3  King County Courthouse in person, with a facemask on, to obtain confirmation regarding the

4  restraining order.

5      589.    When Plaintiff informed the clerk that wearing a facemask to come to the clerk's

6  office wasn't an option, the clerk instructed Plaintiff to obtain confirmation regarding the

7  restraining order by contacting the SPD.

8

9      590.    Plaintiff thereafter contacted SPD and spoke with Dispatcher #13 to determine

10  whether SPD possessed record, whether digital or paper, of a valid restraining order preventing

11  Plaintiff from contacting A.W.R.

12      591.    Dispatch #13 stated that SPD would not confirm any such record; Dispatch #13

13  told Plaintiff to seek verification at the King County Superior Court clerk's office.

14      592.    On, or around, August 14, 2022, Plaintiff called 911 to report that, if there was a

15  valid family court restraining order in effect, Owen had again violated it by withholding A.R.W.

16  from communicating with Plaintiff via Zoom video both Saturday and Sunday.

17

18      593.    Plaintiff reported to 911 that Owen was perpetrating custodial interference by

19  withholding A.R.W. from Plaintiff

20      594.    Neither the King County Superior Court, nor the SPD, would confirm the

21  existence of a valid order restraining Plaintiff from A.R.W.  911 refused to dispatch officers to

22  take Plaintiff's complaint.

23      *14) SPD Incident #2022-215424*

24      595.    On August 15, 2022, Plaintiff drove down NE 130th Street, where Owen's home

25  is located, to verify that A.R.W. was okay.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 91 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

596.    Owen was in her driveway and threatened to call the police, stating that A.R.W. was at summer camp; Plaintiff left without incident.

597.    When Plaintiff arrived home SPD Officers Jared Alden #8892 ("Alden"), Jordan Wallace #8382 ("Wallace") and Nicholas Hughes #8408 ("Hughes") followed Plaintiff's up his driveway, passing two clearly marked "No Trespassing signs.

598.    When Plaintiff tried to enter his home, Wallace accosted Plaintiff outside the front door by firmly grabbing his arm.

599.    Plaintiff stated that his right of association with A.R.W., protected by the First Amendment, had been violated since September 3, 2021, by and through the perjury of Owen and the abuse of discretion by King County Superior Court judges due to their discriminatory animus towards Plaintiff's religious beliefs.

600.    Plaintiff stated that Owen, Lerman, SPD officers, CITY prosecutors, CITY judges, King County sheriff deputies, and King County Superior Court commissioners and judges denied Plaintiff equal protection under the law in violation of the Fourteenth Amendment by knowingly and willfully ignoring Owen's felony perjury used to barratrously initiate case no. 21-5-00680-6.

601.    Plaintiff tried to give Alden, Hughes and Wallace verified documents evincing Plaintiff's claims.  Alden, Hughes and Wallace refused to take any documents from Plaintiff.

602.    Alden and Wallace arrested Plaintiff and took him to King County Jail.

**15) SPD 2023-08-16 No Report**

603.    On August 16, 2022, after getting out of King County Jail, Plaintiff called 911, and spoke to SPD Officers Ashlie Bissell #8559 ("Bissell") and Katrina O'dell #6600 ("O'Dell").

604.    Plaintiff made complaint of Owen's violation of RCW 9A.40.070 (2) Custodial

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 92 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    interference in the second degree by Owen's violation of the either the family court temporary

2    parenting plan, or unlawfully imprisoning Plaintiff and A.R.W. from each other.

3        605.    Bissell and Odell asserted to Plaintiff that it was a "civil matter".

4        606.    Plaintiff informed Bissell and O'Dell that they were either: 1) ignorant of the law,

5
     or 2) knowingly and willfully lying to Plaintiff, thereby violating the equal protection clause of

6
     the Fourteenth Amendment, in order to deny Plaintiff his right to equal protection under the law.

7
         607.    To ensure that Bissell and O'Dell were not ignorantly well-intentioned, Plaintiff

8
9    then read aloud the Washington Legislative intent for Custodial Interference from the state

10   website:

11       *Intent—2015 c 38: "It is the intent of the legislature to address the Washington supreme*
         *court's decision in State v. Veliz, 176 Wn.2d 849 (2013). The court held that a parent*
12       *cannot be charged with custodial interference under RCW 9A.40.060(2) if a parent*
         *withholds the other parent from having access to the child in violation of residential*
13       *provisions of a domestic violence protection order. The legislature intends that the*
         *provisions of RCW 9A.40.060(2) and 9A.40.070(2) be applicable in cases in which a*
14       *court has entered any order making residential provisions for a child including, but not*
         *limited to, domestic violence protection orders that include such residential provisions."*
15

16
         608.    Bissell and O'Dell refused to acknowledge that the state statute and legislative
17
     intent, coupled with the facts enumerated by Plaintiff, evinced Owen's felony law violation of
18
19   either RCW 9A.40.070 or RCW 9A.40.040.

20   *16) A.R.W. Considers Suicide*

21       609.    On, or around, August 16, 2022, A.R.W. informed Owen, as recounted in the

22   Guardian ad Litem report, "On August 16, [A.R.W.] disclosed considering jumping off a balcony

23   at summer camp to kill himself." (*See* Exhibit P64, GaL report pg. 11).

24       610.    Owen and Lerman isolating A.R.W. from Plaintiff has been mentally and

25   emotionally traumatizing to A.R.W. It has also mentally and emotionally traumatized Plaintiff.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 93 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

*17) Case No. 21-5-00680-6 Commissioner Moore*

2

611.    Plaintiff learned second-hand that a hearing was being held in family court before

3

Commissioner Moore.  Plaintiff emailed the family court a rough draft of his federal lawsuit,

4

later filed in U.S. District Court for Western Washing, *Benshoof v. Inslee,* 2:22-cv-01281-LK.

5

612.    On August 23, 2022, before Commissioner Brad Moore ("Moore"), Cliber,

6

Guardian ad Litem Franklin-Bihary, and Owen appeared by Zoom video.  Plaintiff made a special

7

appearance to speak on behalf of A.R.W.

8

613.    Moore was absent jurisdiction in case no. 21-5-00680-6.

9

614.    Moore stated that he had read most of the rough draft of Plaintiff's complaint.

10

615.    Moore asserted that Plaintiff reciting information from the CDC website

11

regarding Vaccine Adverse Event Reporting System ("VAERS") data constituted "child abuse."

12

616.    Moore ordered that all contact between Plaintiff and A.R.W. should therefore be

13

prohibited, even via third party text messages; that is, Plaintiff was subject to immediate arrest

14

by SPD if he communicated with A.R.W.

15

*18) Guardian ad Litem*

16

617.    Franklin-Bihary issued her report as Guardian ad Litem in September 2022.  In

17

her report, Franklin-Bihary asserted that Plaintiff is an "extremist."

18

618.    Franklin-Bihary believes Plaintiff to be a Covidiot; that is, Plaintiff is a direct and

19

imminent threat to A.R.W. because of Plaintiff's religious beliefs and the exercise of his rights

20

protected by the First Amendment.

21

619.    Franklin-Bihary advised the Keenan Court that Plaintiff should have no contact

22

whatsoever with A.R.W., not even third-party text messages, unless Plaintiff underwent a year

23

of psychotherapy with a PhD. Psychiatrist and ***took all prescribed medications.***

24

25

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 94 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

620.    Under Franklin-Bihary's C19 Enterprise CRAP guidance, Plaintiff could be coerced to receive a "covid vaccine" as a condition of seeing A.R.W. before October 2027.

621.    Franklin-Bihary was absent evidence that family court had subject matter jurisdiction to adjudicate the family affairs of Plaintiff and A.R.W.

*19) Money Laundering*

622.    Plaintiff provided Cliber and Franklin-Bihary with evidence that Owen was a prostitute; such evidence included: (1) Zoom video of A.R.W. recorded in June 2022 stating that Owen and Lerman had brought prostitution clients into their home with A.R.W. present; (2) screen shots of Lerman's prostitution website advertising herself and Owen; and (3) Twitter posts by Lerman advertising Lerman's and Owen's prostitution, (See Exhibit P7B, pg. 106).

623.    Neither Cliber nor Franklin-Bihary have denied that Owen is a prostitute.

624.    Cliber and Franklin-Bihary have received thousands of dollars that involved Owen's work as a prostitute.

625.    Plaintiff informed Cliber and Franklin-Bihary that conducting a financial transaction involving the proceeds of prostitution is a violation of RCW 9A.83.020 Money laundering, a class B felony.

*20) SPD 2023-08-20 No Report*

626.    On August 20, 2022, Owen again denied Plaintiff from his scheduled Zoom video call with A.R.W.  Withholding a child in violation of the terms of family court restraining order is a violation of RCW 9A.40.070 (2), as clarified in 2015 by the intent of the legislature.

627.    The family court restraining order alleged to be valid by Owen and the CITY Attorney's Office, made explicit provisions for Plaintiff and A.R.W. to associate by Zoom video.

628.    Owen repeatedly withheld A.R.W. from scheduled Zoom video calls with

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 95 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1 | Plaintiff.

2 |      629.    Plaintiff called 911, and eventually spoke to SPD Officer Aaron Chu

3 | #8865("Chu"), making complaint of Owen's violation of RCW 9A.40.070 (2) custodial

4 | interference in the second degree for Owen's violation of the temporary parenting plan.

5 |      630.    Plaintiff informed Chu that either: 1) the temporary parenting plan was valid, in

6 | which case Owen violated RCW 9A.070(2) by withholding A.R.W. from the family court

7 | stipulated Zoom video call schedule, or 2) the temporary parenting plan and restraining order are

8 | *not valid,* in which case Owen was violating RCW 9A.40.040 by unlawfully restraining A.R.W.

9 | and Plaintiff from each by deception, absent the consent of A.R.W. or Plaintiff.

10 |      631.    Chu asserted to Plaintiff that it was a "civil matter" and that SPD did not have

11 | criminal jurisdiction over.

12 |      632.    Plaintiff stated that the Fourteenth Amendment prohibited SPD from denying

13 | Plaintiff's right to equal protection under the law; asserting that Owen's criminal violation of

14 | RCW 9A.40.070 (2) was only a "civil matter" over which SPD did not have criminal jurisdiction

15 | to act constituted the denial of Plaintiff's right to "equal protection under the law."

16 |      633.    Plaintiff asked if Chu was aware that all SPD phone calls are recorded and

17 | available to the public.  Chu confirmed his knowledge thereof.

18 |      634.    Plaintiff then cited and started to read aloud the Washington legislative intent for

19 | custodial interference from the state website to Chu to correct Chu's false assertion that it was

20 | just a "civil matter" that SPD could legally avoid acting upon.

21 |      635.    Before Plaintiff finished reading aloud both sentences, Chu abruptly hung up on

22 | Plaintiff without verbal notice.

23 |    *21) SPD Incident #2022-262382*

24 |

25 | INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 96 of 280**

26 |

636.    On October 1, 2022, Owen called 911.  SPD officers Camryn Cambronero #8881

22) ("Cambronero") and Kieran Barton #7568 ("Barton") responded to Owen's home.

637.    Owen stated that Molly D. Anderson ("Anderson") attempted legal service of

process on September 29th and 30th.

638.    Pursuant to Washington CR 4, Anderson had attempted legal service of process

of legal documents filed in King County Superior Court by Plaintiff.

639.    Anderson was not a party to the proceeding and was over the age of eighteen.

640.    Owen alleged that Plaintiff had violated a family court restraining order by having

Anderson serve legal process to Owen's home. In the report Cambronero wrote, "It was informed

to Owens that the system we use, shows that the no contact order *has not been served*."  (*See*

Exhibit P76).

641.    Plaintiff has not been legally served any document recorded in case no. 21-5-

00680-6 since Plaintiff filed a Notice of Withdrawal from said case on August 9, 2022, (*See*

Exhibit P16B).

642.    Plaintiff was not legally served any final orders signed by Judge Keenan on

October 21, 2022, (*See* Exhibit 54).

*23) SPD Incident #2022-265177*

643.    On October 3, 2022, Owen called 911.  SPD officers Hans Stroo #8897 ("Stroo")

and Sierra Rambo #8446 ("Rambo") responded to Owen's home.

644.    Owen again reported that Anderson had attempted legal service of process, and

added that on October 3, 2022, a woman named Siri served legal documents to Owen's partner,

Magalie Lerman.

645.    Siri is one of Plaintiff's neighbors.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 97 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

646.    Stroo alleged Plaintiff violated RCW 26.09.300.  Stroo wrote in his report, "Owen has obtained a DV protection order against Benshoof that has *yet to be served to him*.  Owen provided a copy of that order to Officer Rambo.  The unserved DV protection order prohibits Benshoof from harassing Owen." (*See* Exhibit P77).

647.    Stroo knew or should have known, having been trained in law enforcement by the CITY, that a named respondent must be legally served a restraining order for the respondent to be bound thereby its terms.

### 24) Case No. 21-5-00680-6 Trial in Absentia

648.    On October 21, 2022, Keenan heard Owen's motions for final orders.

649.    Cliber, Keenan, and Owen had all been repeatedly informed that family court was absent subject matter jurisdiction.

650.    Plaintiff was not given legal notice of the hearing.

651.    As such, Plaintiff was not afforded the opportunity to appear in person, as Keenan continued to deny Plaintiff entrance to the courtroom in violation of Wash. Const. art I §§ 10, 22, nor was Plaintiff allowed to testify.

652.    Keenan declared Plaintiff to be a "credible threat" to A.R.W. and Owen, ordering that Plaintiff would be subject to immediate arrest if he had any contact with A.R.W. before October 21, 2027, *five months after the 18th birthday of A.R.W.*

653.    Keenan ordered that Plaintiff would be subject to immediate arrest if he effected legal service of process upon Owen by any other means than ABC Legal Services or Pegasus Process Service, (*See* Exhibit P18B, pg. 450).

654.    Keenan was not delegated the authority to effectively re-write Wash. CR 4 and Fed.R.Civ.P. 4, by which Plaintiff effectuating legal service of process could be criminalized.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 98 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    **25) SPD Incident #2022-338690**

2         655.    On December 19, 2022, Owen called 911.  SPD officers Sierra Rambo #8446

3    ("Rambo") responded to Owen's home.

4         656.    Owen reported that a woman attempted to serve legal process to Magalie E.

5
6    Lerman at Owen's home on December 17, 2022.

7         657.    Rambo wrote in his report, "I located protection orders in WACIC that stated

8    served." (*See* Exhibit P77).

9         658.    Plaintiff was not legally served any final orders for case no. 21-5-00680-6, signed

10   by Judge Keenan on October 21, 2022, (*See* Exhibit P54).

11        659.    Molly Anderson attempted to legally serve Lerman with a court document at

12   Owen's house.

13        660.    The Washington State voter registry listed Lerman's residence as 849 NE 130th

14   ST, Seattle, WA 98125, which is the house owned by Owen.

15        661.    Upon the allegations by Rambo, Plaintiff was charged in case no. 671384.

16
17   **26) SPD Incident #2023-021770**

18        662.    On January 23, 2023, A.R.W. left a note on his bed for his mother, Owen.

19        663.    The note stated that: (1) A.R.W. hated Owen; (2) that he was going to walk to

20   Plaintiff's house; and (3) to stop calling the police.

21        664.    Owen found the note while A.R.W. was walking en route to Plaintiff's house.

22        665.    Owen immediately drove toward Plaintiff's house, saw A.R.W. walking, and

23   drove A.R.W. back to Owen's house where Owen and A.R.W. talked.

24        666.    Owen then told A.R.W. that he could either go to school or walk to Plaintiff's

25   house.  A.R.W. decided to walk to Plaintiff's house.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 99 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

667.     When A.R.W. arrived at Plaintiff's house, he recounted what had happened. A.R.W. burst into tears and said, "I think mom disowned me. She said she was going to call her attorney and figure things out."

668.     Owen called 911 to report that A.R.W. was at Plaintiff's house in her attempt to have Plaintiff arrested.

669.     SPD Officers Nicholas Hughes #8408 ("Hughes") and Jordan Wallace #8362("Wallace") and a "Hostage Negotiation Team" responded to Plaintiff's house.

670.     Plaintiff informed Hughes and Wallace that he had never been legally served with any allegedly valid court orders issued by Judge Keenan on October 21, 2022.

671.     Hughes stated that SPD had legally served Plaintiff, and Plaintiff demanded proof of service.

672.     Hughes stated that he didn't have to provide Plaintiff proof of service.

673.     Plaintiff tried to give Hughes sworn documents evidencing numerous crimes perpetrated by Owen, Lerman and Cliber to take A.R.W. by lying to police and felony perjury, to steal Plaintiff's car, to extort Plaintiff for the return of Plaintiff's car, and to facilitate the unlawful imprisonment of Plaintiff.

674.     Hughes and Wallace refused to take the notarized documents from Plaintiff.

675.     As had previously happened on July 6, 2022, A.R.W. was again forced to return to Owen's house against his will.

676.     After A.R.W. left Plaintiff's house, SPD officers surrounded Plaintiff's house for the next hour, repeatedly blaring their sirens and using their PA system to demand Plaintiff's arrest.

**No Proof of Service.**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 100 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

677.     On November 15, 2022, SPD Detective Ryan Ellis ("Ellis") allegedly filed Proof of Service in family court case no. 21-5-00680-6, which stated on page one, "***Important! Do not use electronic service if your case involves the surrender of firearms…. After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service.***"

678.     Page two stated that Ellis served an Order to Surrender and Prohibit Weapons. Ellis did not ask for, nor receive, authorization from Judge Keenan to serve Plaintiff via electronic service.  Plaintiff never confirmed to Ellis that Plaintiff had received final orders in case no. 21-5-00680-6.

679.     Ellis did not date his signature under penalty of perjury on page three.  The ***date*** line stated, "Seattle."  GR 30(d)(3) requires compliance with GR 13(a)(2).  CR 4, GR 13(a)(2) and RCW 5.50.050 require that proof of service sworn under penalty of perjury ***be dated.***  (*See* Exhibit P54).

680.     Ellis did not legally serve Plaintiff the final orders in case no. 21-5-00680-6.

### 27) SPD Incident Non-Report

681.     On July 6, 2023, Plaintiff emailed SPD Detective Rande Christiansen #5366 ("Christensen") to report Owen's and Lerman's felony custodial interference and perjury, (*See* Exhibit P55A).

682.     Christiansen instructed Plaintiff to call 911 to make a crime report first. Christiansen cc'd Sgt. Samuel Byrd #6742 ("Byrd").

683.     Plaintiff called 911 dispatch and Dispatch #70 stated that SPD would not take Plaintiff's complaint over the phone or via Zoom video.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 101 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

684.   Plaintiff explained that he could not meet officers in person because he would be arrested on a fraudulent $250,000 arrest warrant that was issued **because of Owen's and Lerman's perjury and false statements** to public officials.

685.   Plaintiff emailed Christiansen and Byrd, explaining that Plaintiff needed to make

686.   complaint as a victim of felony custodial interference directly to them.

687.   Plaintiff attached his own verified affidavit as a crime victim and the verified affidavit of A.R.W.  (*See* Exhibits P19B; P19C; P55B).

688.   Christiansen stated, "You will need to make a report, we are only a follow-up unit.  That does mean per dispatch they make the decisions and will need to meet in person since it is a DV allegation.   The information you have will need to be wrote up by a responding Officer."

689.   Christiansen and Byrd knew that SPD reporting policy, as applied to Plaintiff's situation, prevented Plaintiff from making a custodial interference victim complaint in violation of SPD Policy Manual 15.110.  (*See* Exhibit P79).

**F.  ADA TITLE III**

690.   Plaintiff had a right to be free from discrimination, protected by Title III of the Americans with Disabilities Act ("ADA").

**Public Accommodations.**

691.   SPROUTS and PCC are "public entities" under Title III of the ADA, and public accommodations pursuant to 28 C.F.R. § 36.102(a)(1).

692.   28 C.F.R. § 36.105(a)(1)(i) prohibits a public accommodation from discrimination against someone with a physical or mental impairment that substantially limits one or more of the major life activities of such individual; and (iii) Being regarded as having

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 102 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

such an impairment as described in paragraph (f) of 28 C.F.R. § 36.105.

693.     Plaintiff clearly informed defendants and employees of the businesses that he had a disability precluding discriminatory exclusion from the businesses.

694.     Defendants and employees of the businesses regarded Plaintiff as having an impairment and subjected him to denial of service because of his perceived impairment.

695.     Defendants and employees of the businesses considered Plaintiff to be a direct and imminent threat because Plaintiff's disability precluded him from wearing a face covering.

696.     Defendants and employees of the businesses considered Plaintiff to be a direct and imminent threat because they considered Plaintiff to have a dangerous physical condition; that is, because Plaintiff had not injected his body with a "covid vaccine" defendants and employees of the businesses regarding Plaintiff as having a physical impairment.

697.     Defendants and employees of the businesses considered Plaintiff to be a direct and imminent threat because they perceived him as being an "asymptomatic carrier" of the SARS-CoV-2 virus for nearly three years, despite the fact that Plaintiff has tested negative every time he has been coerced to undergo a PCR against his will.

698.     Defendants and employees of the businesses demonstrated, by and through their consistently discriminatory conduct over nearly three years, that they did not perceive or regard Plaintiff's impairment as either "transitory" or "minor."

## G. KING COUNTY JAIL

699.     The King County jail is a "public entity" under Title II of the ADA and is subject to § 202 of Title II, 42 U.S.C. § 12132; that is, the jail was prohibited from discrimination on the basis of disability.

700.     As such, employees and agents of the jail were prohibited from discriminating

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 103 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

against someone: (1) with a physical or mental impairment that substantially limits one or more of the major life activities of such individual; or (2) someone regarded as having such an impairment.

701.    SPD Policy Manual 11.010.21 Detainees with Disabilities Require Special Consideration states, "Employees will provide reasonable accommodations to a detainee with a disability."

702.    SPD Policy Manual 11.010.22 Use of the Spit Sock states, "Officers *may* use the spit sock hood *if* the detainee is actively spitting on officers, or the officers have a reasonable belief that the detainee will spit on them."

*1) September 11, 2020*

703.    After Plaintiff was arrested at SPROUTS on September 11, 2020, he was taken to jail by SPD officers Brian Coomer and Robert McClelland.

704.    Plaintiff informed jail staff, Coomer, and McClelland that he had a disability, protected by RCW 49.60.030, precluding him from having anything put over his face.

705.    Plaintiff declined to wear a face mask and a spit sock hood ("spit sock") was put over his head against his will.

706.    Plaintiff was put into isolation because he would not consent to wearing a face mask.

*2) September 16, 2020*

707.    After Plaintiff was arrested at SPROUTS on September 16, 2020, he was taken to a North Precinct holding cell by Coomer and McClelland.

708.    Plaintiff informed Coomer, and McClelland that he had a disability, protected by RCW 49.60.030, precluding him from having anything put over or obstructing his face.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 104 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

709.    Plaintiff was subsequently transported to the king county jail, despite Coomer and McClelland knowing that jail staff were likely to put a spit sock over Plaintiff's head against his will.

710.    Upon arriving at the jail, Plaintiff declined to wear a face mask and a spit sock was put over his head against his will.

**3)  December 17, 2020**

711.    After Plaintiff was arrested on December 16, 2020, and taken to Northwest hospital for a forced blood draw, he was taken to jail by SPD officer Corey L. Foy.

712.    Plaintiff informed Foy and jail staff that he had a disability, protected by RCW 49.60.030, precluding him from having anything put over or obstructing his face.

713.    Plaintiff declined to wear a face mask and a spit sock was put over his head against his will.

714.    While in a jail holding cell, Plaintiff was told by jail staff that he would not be allowed into court unless he was subjected to a PCR test.

715.    Facing indefinite detention against his will, Plaintiff was coerced into having a swab inserted into his nose.  Plaintiff tested negative for the presence of "SARS CoV-2".

**4)  September 3, 2021**

716.    After Plaintiff was arrested on September 3, 2021, he was taken to jail by SPD officers Ladd and Willenberg.

717.    Plaintiff informed Ladd and Willenberg that he had a disability, protected by RCW 49.60.030, precluding him from having anything put over or obstructing his face.

718.    Plaintiff declined to wear a face mask.  A spit sock was put over his head against his will.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 105 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

719.    While in a jail holding cell, Plaintiff was told by jail staff that he would not be allowed into court unless he was subjected to a PCR test.

720.    Facing indefinite detention against his will, Plaintiff was coerced into having a swab inserted into his nose.  Plaintiff tested negative.

**5) *August 15, 2022***

721.    After Plaintiff was arrested on August 15, 2022, SPD Incident 2022-215424, he informed SPD officers Alden and Wallace that he had a disability protected by RCW 49.60.030, precluding him from having anything put over or obstructing his face.

722.    Plaintiff informed Alden and Wallace that his firmly held religious beliefs, protected by the First Amendment, precluded him from wearing a mask or spit sock.

723.    Plaintiff informed Alden and Wallace that if they took him to tail that he would be forced to wear a face mask or spit sock.

724.    Wallace stated that it wasn't their responsibility what King County officials did.

725.    Plaintiff informed Alden and Wallace that the non-delegation doctrine precluded them from transferring Plaintiff into the custody of jail officials when Alden and Wallace had reason to believe that a violation of Plaintiff's rights, state law, or the ADA was expected to occur.

726.    Upon arriving at the jail, Plaintiff informed jail staff that he had a disability, protected by RCW 49.60.030, preventing jail staff from putting a mask or spit sock over Plaintiff's face or head.

727.    Plaintiff declined to wear a mask and a spit sock was put over Plaintiff's head against his wishes.

728.    While in a jail holding cell, Plaintiff was told by jail staff that he would not be

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 106 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

allowed into court unless he was subjected to a PCR test.

729. Facing indefinite detention against his will, Plaintiff was coerced into having a swab inserted into his nose. Plaintiff tested negative.

730. Plaintiff has never spit at an officer, nor threatened to spit at an officer.

731. Neither Alden, Coomer, McClelland, Foy, Ladd, Wallace, Willenberg, nor jail staff had a "reasonable belief" that Plaintiff would spit on them.

732. SPD officers Alden, Coomer, McClelland, Foy, Ladd, Wallace, and Willenberg knew or should have known the conditional authorization for the use of a spit sock articulated in SPD Policy Manual 11.010.21; 11.010.22.

733. SPD officers Alden, Coomer, McClelland, Foy, Ladd, Wallace and Willenberg knew that delegating custody of Plaintiff to King County jail staff would result in a mask or spit sock being forced upon Plaintiff.

734. If not for the discriminatory animus of Alden, Coomer, McClelland, Foy, Ladd, Wallace, and Willenberg against Plaintiff's class, the officers would not have allowed, enabled, nor facilitated, the placing of a spit sock over Plaintiff's head.

*6) ADA Liability – King County*

735. King County employees working in the jail, including guards and medical staff, acted with deliberate indifference to RCW 49.60.030 and Title II of the ADA.

736. King County employees working in the jail, including guards and medical staff, acted with deliberate indifference to the right of Plaintiff to be free from unwanted medical procedures.

*7) Monell Liability SPD - Jail*

**Official Policy.**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 107 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

737.    By the actions of Alden, Coomer, McClelland, Foy, Ladd, Wallace and Willenberg, Plaintiff has good cause to believe that the officers acted under an official policy or widespread custom or practice to violate Plaintiff's rights through their disregard of: SPD Policy Manual 11.010.21; 11.010.22; RCW 49.60.030; RCW 9.91.010; and Title II of the ADA.

**Final Policymaker Diaz.**

738.    Diaz's acts as final policymaker for the SPD, directing the widespread practice of coercing, threatening, and arresting Plaintiff's class set in motion a series of events by which Plaintiff's class was subjected to the deliberate indifference of Alden, Coomer, McClelland, Foy, Ladd, Wallace and Willenberg.

**Failure to Train.**

739.    By their actions, Plaintiff has reason to believe that the CITY failed to properly train Alden, Coomer, McClelland, Foy, Ladd, Wallace and Willenberg to act in accordance with SPD Policy Manual 11.010.21; 11.010.22. (*See* Exhibit P78).

740.    By their actions, Plaintiff has reason to believe that the CITY failed to properly train Alden, Coomer, McClelland, Foy, Ladd, Wallace and Willenberg to not violate: (1) Plaintiff's right to bodily autonomy; (2) Plaintiff's right to be free from unwanted medical interventions; (3) RCW 49.60.030; (4) RCW 9.91.010; or (5) Title II of the ADA

**H.  KING COUNTY DISTRICT COURT**

*1)  Case No. 220014354*

741.    After being arrested at SPROUTS Farmers Market in the early afternoon, Plaintiff was booked into King County Jail on the evening of September 16, 2020.

742.    During the five days that Plaintiff was thereafter in King County Jail, he was first informed that bail was set at $2500.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
    **Page 108 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

743.    After the $2500 cash bail was posted, Plaintiff was informed that King County had charged him with felony weapon possession, and he could not bail out until he appeared before the court.

744.    On, or around, September 19, 2020, before Defendant Judge Mary Lynch ("Lynch"), bail was set at $100,000 for Plaintiff's release.

745.    On, or around, September 20, 2020, a person affiliated with Plaintiff's church paid the $100,000 cash bail.

746.    On September 21, 2020, the King County Prosecutor decided not to file charges against Plaintiff, and the court ordered his unconditional released.

747.    Plaintiff's $100,000 bail was five times the $20,000 bail set for the BLM protestor who threw an explosive at an SPD officer, sending the officer to a hospital emergency room with the concern that he could lose his leg.

748.    Lynch knew, or should have known, that setting Plaintiff's bail at $100,000 was excessive and prohibited by the state and federal constitutions.

749.    Approximately two months later the CITY released the $100,000 bail via a cashier's check drawn on U.S. Bank, which is involved in interstate commerce.

*2) Case No. 2021-003578*

750.    After being arrested on September 3, 2021, by Ladd and Willenberg, attorney Richard Pope ("Pope") represented Plaintiff the next day for arraignment.

751.    Pope revealed that Ladd had neglected to mention in SPD offense report #2021-230480 that Plaintiff handed Ladd the full denial order in case no. 21-2-11149-8, which was issued more than six hours prior to Ladd arresting Plaintiff.

752.    Ladd and Willenberg knew, or should have known, that making misleading

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 109 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

material statements which a prosecutor or judge would likely rely upon in a prosecution or adjudication is a violation of RCW 9A.76.175.

## I.   KING COUNTY SUPERIOR COURT

### 1)   Invidious Discrimination Policy

753.    If not for Plaintiff's belonging to a class of people whose beliefs precluded Plaintiff from being coerced to wear a mask, King County officials and employees (1) would have served Plaintiff in the clerk's office, thereby allowing him to use his credit card to engage in interstate commerce; (2) would not have denied Plaintiff's access to the clerk's office, armed with deadly weapons; (3) would not have denied Plaintiff's right to enter courtrooms; (4) would not have denied Plaintiff's right to testify on his own behalf; (5) would not have acted *ultra vires* to deny Plaintiff's right of association with A.R.W.; (6) would not have acted with intent to silence, seize or confine Plaintiff; (8) would not have allowed, enabled, or facilitated the fraud and perjury of private individuals in joint action with state actors; nor (9) denied Plaintiff his right to petition for redress of grievances.

### 2)   Court Mask Orders

754.    On July 22, 2021, No. 21-0-12050-3 Emergency Order #32 Re: Public Health was signed by Presiding Judge Jim Rogers. (*See* Exhibit P31.)

755.    On March 8, 2022, No. 22-0-12050-1 Emergency Order #36 Re: Public Health was signed by Presiding Judge Peter Oishi. (*See* Exhibit P32.)

756.    On February 21, 2023, No. 23-0-12050-0 Emergency Order #37 Re: Public Health was signed Judge Peter Oishi. (*See* Exhibit P33.)

757.    The emergency orders made no exception for people with disabilities or religious beliefs that precluded such individuals from covering their face.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 110 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

758. From January 5, 2021, to present, the King County Superior Court website has stated, "You will not be required to wear a mask if you need to keep your mouth and nose clear for medical or mental health reasons." (*See* Exhibit P34).

759. Judge Jim Rogers and Judge Peter Oshi knew, or should have known, that the Washington Department of Health stated that face shields not to mitigate the transmission of a virus.

760. By allowing Plaintiff to wear a face shield in lieu of a mask, the emergency orders were arbitrary and capricious.

761. All King County judges, commissioners, clerks, and deputies knew, or should have known, that the Civil Rights Act of 1964 prevents discrimination within public accommodations.

762. King County Superior Courthouse sells food and beverages on one or more floors of the courthouse.

763. All King County judges, commissioners, clerks, and deputies knew, or should have known, that Wash. Const. art I §§ 10; 22 prohibit public officials from denying Plaintiff's class from entering a public courtroom.

764. All King County judges, commissioners, clerks, and deputies knew, or should have known, they were absent a compelling interest in requiring Plaintiff to wear a mask or face shield as a condition of entering the courtroom; mask and face shield interchangeability constituted an arbitrary and capricious stipulation.

765. All King County judges, commissioners, clerks, and deputies knew, or should have known, that Title II and Title III of the ADA prevents discrimination within public entities, and that king county courthouse is both a "public entity" and a "public accommodation."

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 111 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

### 3)  Clerks's Office

766.    During August, September, and October of 2021, Plaintiff was able to access case records at the clerk's office without a face covering.

767.    On November 12, 2021, Plaintiff went to King County Courthouse in person to obtain documents from the clerk's office.

768.    County clerk Denise Fuseini ("Fuseini") refused to provide Plaintiff with records for family court case no 21-2-11149-8 SEA and 21-5-006890-6 SEA including, but not limited to, the FTR audio files for the hearings of the *ex parte* emergency restraint petitions made by Owen and Cliber.

769.    Fuseini summoned a squad of King County Sheriff Deputies, armed with loaded weapons, to deny Plaintiff access to court records and remove Plaintiff from the clerk's office because Plaintiff was not wearing a mask.

770.    These deputies included, but were not limited to, R.C. McMenamy, S.P. Coffin.

771.    Plaintiff was asked by deputies if he had a medical exemption, and Plaintiff confirmed that he had obtained a medical exemption in September.

772.    Plaintiff was given the option of wearing a face shield in lieu of a mask.

773.    Plaintiff declined and was thereupon denied access to court records in case no. 21-2-11149-8 and case no. 21-5-00680-6, (*See* Exhibit P106).

774.    That afternoon, Plaintiff emailed Ronda Bliey, ("Bliey") Public Access Specialist for King County Superior Court Administration, and Bliey replied that she would work to ensure that Plaintiff had equal access to court records.

775.    On November 15, 2021, Plaintiff was denied access to the clerk's office.

776.    County clerk Danielle Anderson ("Anderson") refused to provide Plaintiff with

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 112 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

records for family court case no 21-2-11149-8 SEA and 21-5-006890-6 SEA including, but not limited to, the audio recordings for the hearings of the *ex parte* emergency restraint petitions made by Owen and Cliber in the aforementioned family court cases.

777.    Anderson summoned deputies, armed with loaded guns, to deny Plaintiff access to court records and remove Plaintiff from the clerk's office because Plaintiff was not wearing a mask.

778.    These deputies included, but were not limited to, I.J. Clark, B.J. McClennen, (*see* Exhibit P107).

779.    Bliey eventually informed Plaintiff that he could not access the clerk's office or any courtroom without wearing a face mask or face shield, as ordered by all King County Superior Court judges.  Bliey stopped responding to Plaintiff's emails as of June 28, 2022.

780.    This denial of Plaintiff's access to court records continued through March 2023.

### 4) Case No. 22-2-02932-3 Replevin

781.    On, March 1, 2022, Plaintiff filed his Petition for Writ of Replevin ("replevin") in King County Superior Court to effectuate the return of his stolen FJ Cruiser from Owen's and Lerman's garage, where it had been concealed since September 3, 2021.

**Auto Theft.**

782.    The SPD, King County Sheriff's Office, and the King County Prosecutor's Office all refused to act upon Plaintiff's evidence documents and verified complaints as a witness victim.

783.    Plaintiff's only remaining legal option was a writ of replevin.

784.    Plaintiff did not seek damages, despite Owen's and Lerman's theft of his FJ Cruiser costing Plaintiff approximately $25,000 in car rental costs before he was finally able to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 113 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

drive his FJ Cruiser again in late May 2022.

785.    Owen retained attorney Blair M. Russ ("Russ"), and Russ filed notice of appearance on March 30, 2022.

786.    Russ emailed Plaintiff that Owen wished to resolve the replevin amicably and quickly, and that Owen would have Plaintiff's FJ Cruiser returned expeditiously, and that the title would be in the glove box.

787.    Plaintiff informed Russ that Owen and Lerman had stolen Plaintiff's FJ Cruiser and had employed their friend Owen Hermsen ("Hermsen") to extort Plaintiff of $19,000 for the return of Plaintiff's FJ Cruiser.

**Criminal Conspiracy.**

788.    On May 4, 2023, Plaintiff informed Russ by email that Plaintiff had reason to believe, and did believe, that Russ was engaging in a criminal conspiracy with Owen to shield Owen from criminal culpability regarding her and Lerman's crimes involving Plaintiff's FJ Cruiser, (*See* Exhibit P80).

789.    These crimes included RCW 9A.76.050 Rendering criminal assistance, RCW 9A.72.150 Tampering with physical evidence, and RCW 9.38.020 False representation concerning title.

790.    On, or around, May 5, 2022, Russ and the partners and associate attorneys in his law firm, Tomlinson, Bomsztyk, Russ, were served by Mr. Daniel Heller with verified declarations of Owen's and Lerman's felony crimes, including Lerman's theft of Plaintiff's FJ Cruiser, Owen's perjury and falsification of the registration for Plaintiff's FJ Cruiser, and Owen's attempted extortion of Plaintiff for $19,000, (*See* Exhibits P15A; P15B; P15C; P15D).

791.    Plaintiff provided Russ with evidence that Owen omitted Plaintiff's name from

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 114 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

the registration.

792.     Owen affixed her signature to the registration, under penalty of perjury, asserting that the FJ Cruiser was "free of any claim of lien, mortgage, conditional sale or other security interest *of any person except the person or persons set forth as legal owners.*"

793.     Only the name of Owen and her credit union were listed, (*See* Exhibit P81).

794.     After Plaintiff informed Russ of the many criminal law violations perpetrated by Owen, Plaintiff afforded Russ the opportunity to deny that Russ was knowingly and willfully enabling or abetting Owen's attempts to conceal her crimes.

795.     Russ did not deny Plaintiff's allegations.

796.     Owen, by and through Russ, refused to sign the Transfer of Ownership which Plaintiff provided, (*See* Exhibit P82).

797.     Russ counseled Owen not to sign any document further evidencing that Owen did not have ownership interest in the FJ Cruiser after Plaintiff had paid Owen in full in June 2018.

798.     Russ then emailed that the title to Plaintiff's FJ Cruiser had been lost.

799.     Russ had knowledge of the commission of felonies by Owen, yet Russ acted to conceal Owen's crimes.

800.     Russ did not make known his knowledge of Owen's crimes to some judge or other person in civilian law enforcement.

801.     Because of the efforts by Owen and Russ to conceal their civil and criminal liability, it was not until May 27, 2022, that Plaintiff was finally able to license and drive his FJ Cruiser, *nearly nine months after Lerman stole it.*

802.     The acts of Owen and Russ to conceal crimes perpetrated by Hermsen, Lerman, and Owen, were a proximate cause of costing Plaintiff an additional several thousand dollars in

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 115 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    car rental fees.

2       *5) Case No. 22-2-11112-7*

3       803.    On or around July 16, 2022, Plaintiff filed a petition for writ of habeas corpus,

4    including sworn affidavits in support, under RCW 7.36, invoking the jurisdiction of King County

5    Superior Court to inquire into the cause and nature of the unlawful restraints upon Plaintiff and

6

7    A.R.W., (*See* Exhibit P15A-15E).

8       804.    U.S. Const. Art I, § 9, clause 2 prohibits the suspension of habeas corpus except

9    in cases of rebellion or invasion the public safety may require it.

10      805.    At no time relevant to the facts herein was there a rebellion within, or invasion of,

11   Washington.

12      806.    Defendant Judge Steve Rosen ("Rosen") dismissed Plaintiff's habeas petition *sua*

13   *sponte* without granting the writ.

14      807.    904. RCW 7.36.040 states "…upon application ***the writ shall be granted*** without

15   delay.

16

17      808.    Rosen did not comply with the statutory mandate of RCW 7.36.040.

18      *6) Case No. 22-2-03826-8*

19      809.    Plaintiff sued Owen arising from Owen's constructive fraud to deny Plaintiff's

20   equity ownership in the house ("House") that Plaintiff and Owen bought on, or around, January

21   2, 2015.  The House is located at 1716 North 128th Street, Seattle, WA 98133.

22      810.    The house has also been Plaintiff's home church, The Church of the Golden Rule,

23   for more than eight years.

24      **Denial of Property Right.**

25      811.    As with the birth certificate of A.R.W. and the title to Plaintiff's 2011 Toyota FJ

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 116 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Cruiser, Owen sought to take advantage of Plaintiff's trust in Owen, by and through the fact that only Owen's name was on the title to the House.

812.    Judge Andrea K. Robertson initially presided over the case.    Owen retained attorney Blair Russ.

813.    On July 22, 2022, Judge Robertson presided over Owen's CR 12(c) Motion for Judgement on the Pleadings ("motion").    Plaintiff was denied the right to appear in person because he would not wear a face covering.

814.    Russ and Owen submitted a fake "rental agreement" created by Owen as alleged evidence supporting Owen's claim that Plaintiff was merely *renter* in *Owen's* house.

815.    Plaintiff did not have knowledge of Owen's constructive fraud to deny his equity ownership in the House until Owen threatened him via text message on August 16, 2021.

816.    Plaintiff reiterated this fact on the record before Robertson and Russ on July 22, 2022.

817.    Russ stated on the record that Plaintiff had knowledge of Owen's fraud prior to July 22, 2019.    Russ did not have knowledge of this being true.

818.    Numerous text messages between Plaintiff and Owen from 2020 to August 2021 evidenced that Owen communicated her promise to (1) put Plaintiff's name on the title to the House, and (2) Owen's intent to sell her percentage of ownership in the House to Plaintiff.

819.    Russ knew, or should have known, that under RCW 9A.76.175 it is a gross misdemeanor to make a false or misleading statement to a public official in the exercise of his or her duties.

820.    Russ knew, or should have known, that under RCW 9A.76.80, "Every unqualified statement of that which one does not know to be true is equivalent to a statement of that which

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 117 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

he or she knows to be false."

821.    Judge Robertson concurred with Russ's false statement that Plaintiff had knowledge of Owen's fraud prior to July 22, 2019.

822.    Robertson dismissed Plaintiff's complaint **with prejudice** on July 22, 2022.

823.    In October 2022, Plaintiff filed case no. 22-2-15745-3 alleging fraud against Owen regarding the House. Case no. 22-2-03826-8 and 22-2-15745-3 were consolidated.

824.    Thereafter, the consolidated case was heard by Judge Sandra J. Widlan ("Widlan").

825.    Plaintiff retained attorney Ann LoGerfo ("LoGerfo").

**Right to Appear.**

826.    On January 19, 2023, Kathryn L. Evans, bailiff for Widlan, emailed response to plaintiff that he could not enter the courtroom on January 20, 2023, without wearing a mask, (*See* Exhibit P34).

827.    Plaintiff was denied the right appear in the courtroom on January 20, 2023.

**Common Law Fraud Conspiracy.**

828.    Between November 2022 and April 2023, Russ repeatedly acknowledged to LoGerfo, albeit off-the-record, that Plaintiff had an equity ownership in the House.

829.    Upon this factual acknowledgment and understanding between Owen, LoGerfo, Plaintiff, and Russ, a private mediation via Zoom video was held on or around February 20, 2023 with Camille Schaefer, a senior King County Superior Court judge acting as mediator.

830.    At the close of the one-hour mediation, it was agreed that Owen would buy Plaintiff out of his equity ownership in the House for $375,000.

831.    Subsequent to the mediation accord Owen and Russ repeatedly and increasingly

1   demanded more favorable terms to the buy-out agreement.

2   832.    Eventually, Plaintiff counter-offered to *give Owen his entire equity ownership in*

3   *their House* if Owen would simply honor their parenting Agreement so that their son would be

4   free to choose which parent's house he stayed at on a daily basis.

5

6   833.    Owen, by and through Russ, refused.

7   834.    Thereafter, Russ and Owen asserted that: (1) no rental agreement ever existed; (2)

8   Plaintiff lacked any tenant rights to stay in the House; and (3) Plaintiff did not, nor did he ever

9   have, any equity ownership in the House.

10  835.    The acts of Russ evidence that he acted in concert with Owen to knowingly and

11  willfully enable, facilitate, or perpetrate deception in order to deny Plaintiff's equity ownership

12  in the House.

13  836.    Widlan knowingly and willfully allowed, enabled, or facilitated the inconsistent

14  material statements of Owen and Russ regarding Plaintiff's equity ownership in the House

15  because of Widlan's invidious discriminatory animus; that is, Widlan subjected Plaintiff to

16  CRAP in furtherance of the C19 Enterprise.

17

18  **Money Laundering.**

19  837.    On January 25, 2023, Owen was deposed by LoGerfo. Owen stated under penalty

20  of perjury that she stopped working as a prostitute around 2018.

21  838.    Owen did not stop working as a prostitute in 2018. Owen continued working as

22  a prostitute, including bringing clients into her home when A.R.W. was present.

23  839.    Owen stated under oath that she derived her income as a seamstress with an Etsy

24  account.

25  840.    Owen's Etsy account shows zero sales in the last four years.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 119 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

841.    Plaintiff provided Russ evidence that Owen and Lerman were advertising their prostitution on Twitter in January 2023. (*See* Exhibit P7B).

842.    Plaintiff informed Russ that Russ engaged in felony money laundering, in violation of RCW 9A.83.020, by receiving payment for his services involving the proceeds of Owen's prostitution.

843.    Russ has not denied this.

**Trial *in absentia*.**

844.    On May 9, 2023, the trial was held.

845.    Russ informed Judge Widlan that the CITY had issued a $250,000 warrant for the arrest of Plaintiff.

846.    LoGerfo informed Judge Widlan that Plaintiff could not appear in person because he would be immediately arrested under SMC warrant #990435958.

847.    LoGerfo informed the court that Plaintiff needed to testify via Zoom.

848.    Despite there being two sheriff deputies standing outside the courtroom doors, Widlan stated that there was no reason to believe that Plaintiff would be arrested if he appeared in person to testify.

849.    Widlan denied Plaintiff's need to testify via Zoom.

850.    Widlan knew that Wash. Const. art I § 22 prohibits a public official from denying Plaintiff's right "to testify on his own behalf."

851.    Despite *only* allowing appearances by Zoom for more than two years, on May 9, 2023, Widlan abruptly declared that ***Plaintiff*** could not testify by Zoom.

852.    Widlan stated she would not allow the use of Zoom in the courtroom during the trial.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 120 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

853.    However, when the document projection equipment failed to operate an hour later, Widlan reversed her "no Zoom in the courtroom" policy and allowed Russ and LoGerfo to use Zoom video.

854.    Widlan continued denying the right of Plaintiff to testify via Zoom video.

855.    Marinella, Russ, and Widlan knowingly and willfully ignored evidence that Owen had repeatedly stated in text messages between Owen and Plaintiff that the House was "ours," and that Owen wanted Plaintiff to buy Owen out of her interest in the House. (*See* Exhibit P3A).

856.    Plaintiff was denied the right to testify under oath to controvert the perjury of Owen.

**Victim Witness Retaliation.**

857.    In or before June 2022, Plaintiff informed Marinella and Russ that Owen violated RCW 9.38.020 by "maliciously or fraudulently executing or filing for record or putting forward any claim by which the right or title of another [Plaintiff] to any real or personal property is, or purports to be transferred, encumbered or clouded."

858.    Washington BAR RPC 3.3(2); 8.4(b)(c) prohibited Marinella and Russ from concealing Owen's criminal law violations from the trial court.

859.    Plaintiff informed Russ that such failure to act was a violation of 18 USC § 4.

860.    Thereafter, Plaintiff began to file BAR grievances against Russ, and Russ's partners, for misconduct.

861.    If not for the retaliatory animus of Marinella, Owen, Russ, and Widlan against Plaintiff's actions to seek redress for crimes and rights violations perpetrated by Owen, Russ, and King County Superior Court, including but not limited to *Benshoof v. Inslee,* 22:2-cv-01281-LK, Russ and Widlan would not have acted to deny Plaintiff's right to testify on his own behalf to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 121 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   refute the false statements of Owen, Russ, and Widlan, nor would Widlan have previously denied

2   Plaintiff's right to appear in person.

3   862.    If not for the invidious discriminatory animus of Marinella, Owen, Russ, and

4   Widlan against Plaintiff's beliefs and the exercise of his First Amendment protected rights, Owen,

5   Russ, and Widlan would not have denied Plaintiff's right to testify on his own behalf to refute

6   the perjury of Owen at trial, nor would Widlan have denied Plaintiff's right to appear in person.

7

8   **Denial of Property Rights.**

9   863.    For more than a year, Marinella and Russ have conspired with Owen and Widlan

10  to allow, enable, facilitate, or perpetrate the denial of Plaintiff's equity ownership in the House.

11  864.    960. If not but for the invidious discriminatory animus of Marinella, Owen, Russ,

12  and Widlan against Plaintiff's beliefs, including their knowledge that the House is also Plaintiff's

13  ***church***,

14  865.    Marinella, Owen, Russ, and Widlan knew, or should have known, that it is a

15  violation of 18 USC § 247 to obstruct Plaintiff's enjoyment of the free exercise of his beliefs in

16  his home church.

17

18  866.    The acts of Marinella, Owen, Russ, and Widlan acted in concert to deny Plaintiff's

19  equity ownership in the House, prevented Plaintiff from obtaining a home equity loan, and

20  therebyprevented Plaintiff from engaging in interstate commerce.

21  **Extortion.**

22  867.    Marinella, Owen, Russ, and Widlan knowingly acted in concert, by or through

23  Widlan ordering a supersedeas bond be paid; that is, they acted to obtain or attempt to obtain by

24  threat property of Plaintiff, or property of A.R.W. entrusted to Kyrrah Nork, totaling

25  approximately $116,000.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 122 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

868.    These predicate acts by Marinella, Owen, Russ, and Widlan were intended to substantially harm Plaintiff.

**7)  Case No. 22-2-15958-8**

869.    On October 3, 2022, Plaintiff brought suit against Cliber, Lerman, Owen, and Owen's friend, Mr. Owen Hermsen ("Hermsen"), for Defamation and Abuse of Process before Judge Marshal Ferguson ("Ferguson") in King County Superior Court.

870.    Cliber retained Kyle Rekofke ("Rekofke").   Hermsen and Lerman retained attorney Moshe Admon ("Admon").  Owen retained attorneys Anthony Marinella ("Marinella") and Blair M. Russ, ("Russ").

**Right to Appear.**

871.    On January 27, 2023, Ferguson denied Plaintiff's right to appear in court in person because Plaintiff would not wear a mask or face shield to enter the courtroom.

872.    Admon openly mocked Plaintiff's beliefs and disability during oral arguments, asserting that Plaintiff was "crazy."

873.    969.  On February 7, 2023, Plaintiff motioned the court to change venue to Snohomish County Superior Court, where Plaintiff would be able to appear in person without a mask or face shield in courtrooms, free of discrimination for his beliefs, expression, or petitions, (*See* Exhibit P83).

874.    970.  On February 10, 2023, three non-party adults witnessed A.R.W. sign the Affidavit of A.R.W., including a power-of-attorney designating Plaintiff with authority to act on his son's behalf.

875.    971. Plaintiff informed Admon, Cliber, and Russ that A.R.W. had granted power-of-attorney to Plaintiff, and that A.R.W. had confirmed under oath that Lerman and Owen had

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 123 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

lied to seize custody of A.R.W., (*see* Exhibit P19C).

**Ableism.**

876.    On February 14, 2023, Marinella filed a response to Plaintiff's motion to change venue.  Marinella's statements exhibited his invidious discriminatory animus toward Plaintiff's beliefs and disability.

877.    In response to Plaintiff's motion to change venue and Plaintiff's supporting affidavit attesting to fifteen months of discrimination, Marinella referred to Plaintiff's sworn statements as "conspiratorial drivel."

878.    Marinella mocked Plaintiff's disability claims, and asserted that Plaintiff's firsthand witness statements as a victim of discrimination were "irrational and based on unsubstantiated and self-perceived slights..." (*See* Exhibit P84).

879.    On February 22, 2023, Ferguson denied Plaintiff's motion to change venue to Snohomish County Superior Court.

**Right to Redress.**

880.    On February 17, 2023, Plaintiff filed into the record a copy of the Affidavit of A.R.W.

881.    On March 3, 2023, Ferguson granted the joint motion and temporary Order Restricting the Abusive Litigation by Kurt Benshoof, threatening Plaintiff with possible arrest for exercising his First Amendment protected rights.  Admon, Cliber, Ferguson, Hermsen, Lerman, Owen, and Russ conspired to silence Plaintiff's right to seek redress on behalf himself and A.R.W.

882.    The temporary abusive order preemptively denied A.R.W.'s ability to emancipate himself from Owen on, or after, April 22, 2023, his fourteenth birthday.  The temporary abusive

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 124 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   order also preemptively denied Plaintiff the ability to act with power-of-attorney for his son.

2   883.   Ferguson was absent evidence in the record substantiating the required elements

3   to grant such an order.

4   884.   Admon, Marinella, Rekofke, and Russ knew, or should have known, that the

5   motion was deficient on its face, lacking an explicit statutory requirement.

6   885.   For Ferguson to hear consideration of motion it was first required that, "[Plaintiff]

7   has been found by the court to have committed domestic violence against [Owen].   See RCW

8   26.51.030(1).

9   886.   Plaintiff was never found by any court to have committed domestic violence

10  against Owen.

11  887.   After Admon, Ferguson, Marinella, Rekofke, and Russ ignored RCW

12  26.51.030(1), Ferguson ignored the statutory requirement that, "the court *shall* set a hearing to

13  determine whether the litigation meets the definition of abusive litigation."

14  888.   At such mandated hearing, which Ferguson failed to hold, "the court *shall* hear

15  all relevant testimony." *See* RCW 26.51.040(1).

16  889.   Plaintiff was not afforded his right to provide relevant testimony, nor was Plaintiff

17  afforded his right to face his accusers and question them under oath, as no such hearing was held.

18  890.   Admon, Cliber, Ferguson, Hermsen, Lerman, Marinella, Owen, Rekofke and

19  Russ conspired to silence Plaintiff through their abusive order.

20  891.   Perjury by Cliber, Hermsen, Lerman, and Owen were used by Admon, Ferguson,

21  Marinella, Rekofke, and Russ to violate the First Amendment protected rights of Plaintiff, (*See*

22  Exhibit P23C).

23  892.   On March 31, 2023, Ferguson granted the Order Restricting Abusive Litigation

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 125 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  by Kurt Benshoof ("abusive order"), upon motion presented by Admon and Russ, to prevent

2  Plaintiff from petitioning further for redress of Plaintiff's many grievances. (*See* Exhibit P23A).

3  **Penalizing First Amendment.**

4  893.    Admon, Cliber, Ferguson, Hermsen, Lerman, Marinella, Owen, Rekofke, and

5  Russ, conspired to deny Plaintiff's rights under color of law and thereby financially devastate

6  Plaintiff in retaliation for exposing the criminal law violations and denial of Plaintiff's rights by

7  Admon, Cliber, Ferguson, Hermsen, Lerman, Owen, and Russ, and seeking redress thereof.

8

9  894.    On February 27, 2023, Ferguson decreed that Hermsen was granted judgment

10  against Plaintiff for $15,008.74.

11  895.    On February 27, 2023, Ferguson decreed that Lerman was granted judgment

12  against Plaintiff for $15,008.74.

13  896.    On February 27, 2023, Ferguson decreed that Owen was granted judgment against

14  Plaintiff for $32,049.41.

15  897.    On April 3, 2023, Ferguson decreed that Cliber was granted judgment against

16  Plaintiff for $16,051.50.

17

18  898.    In total, Ferguson granted judgments against Plaintiff for $78,118.39.

19  **8)  *Social Media Censorship***

20  899.    Keenan blocked Plaintiff from his @JudgeDaveKeenan public Twitter account

21  ("account") in, or around, December 2022.

22  900.    The account is a public forum in which he intentionally opened the interactive

23  public comment section for public discourse.

24  901.    Keenan placed no publicly stated restrictions on the public's access to the account;

25  accordingly, the public made numerous posts on matters of public concern with Keenan's

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 126 of 280**                                    KURT BENSHOOF
                                                       1716 N 128th ST
                                                       Seattle, WA 98133
                                                       kurtbenshoof@gmail.com

invitation.

902.    Plaintiff emailed keenan.court@kingcounty.gov on February 11, 2023, stating the Keenan blocking Plaintiff on Twitter was a violation of the First Amendment, as Keenan uses his public Twitter account in his official capacity.

903.    Plaintiff cited *Davison v. Randall,* No. 17-2002, (4th Cir. 2019), and included the 4th Circuit opinion as an attached .pdf document.

904.    To date, the block from Keenan's account remains in effect.

### 9) *Rackateering Activity*

**Kidnapping.**

905.    Admon, Cliber, Ferguson, Keenan, Lerman, Marinella, Moore, Owen, Russ, Widlan, acted, or threatened to act, to seize, confine, or carry away and hold Plaintiff under color of law to deny Plaintiff's rights secured by the Washington and United States Constitution.

**Witness Tampering.**

906.    Admon, Cliber, Ferguson, Keenan, Lerman, Marinella, Moore, Owen, Russ, Widlan, acted, or threatened to act, under color of law to intentionally harass Plaintiff and thereby hindered, delayed, prevented, or dissuaded Plaintiff, his family, or his friends, from: (1) attending an official proceeding; (2) reporting the possible commission of a federal offense; (3) seeking the arrest of defendants; or (4) causing a criminal prosecution to be sought.

**Witness Retaliation.**

907.    Admon, Cliber, Ferguson, Keenan, Lerman, Marinella, Moore, Owen, Russ, Widlan, acted, or threatened to act, under color of law with the intent to retaliate, knowingly acted to harm Plaintiff's livelihood for his providing truthful information to a law enforcement officer relating to the possible commission of a federal offense.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 127 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

## J.  SEATTLE MUNICIPAL COURT

908.    Seattle Municipal Court ("SMC") implemented face covering requirements to enter the courthouse on, or around, March 9, 2020, under GAO 2020-02; face covering requirements continued through October 2022, (*See* Exhibit P85).

909.    On June 17, 2020, Presiding Judge Willie Gregory issued GAO No. 2020-08 regarding Covid-19 emergency court operations, (*See* Exhibit P86).

910.    SMC judges and security personnel under the direction of SMC judges denied Plaintiff entrance to courtrooms and the full enjoyment of the courthouse services between November 2020 and October 2022 because Plaintiff would not wear a face covering.

911.    Plaintiff was denied access to the court records office.

912.    SMC judges ordered more than one half million dollars in bail, bench warrants, and arrest warrants as a proximal result of Plaintiff not wearing a face covering and being denied entrance to the SMC.

913.    If not for Plaintiff belonging to a class of people whose beliefs precluded Plaintiff from being coerced to wear a face covering, SMC officers and employees would not have acted to silence, seize or confine Plaintiff.

914.    Plaintiff provided Presiding Judge Willie J. Gregory, and all defendant SMC judges, with notice and opportunity to cure, beginning in March 2021.

915.    Plaintiff notified Gregory by U.S. Postal Service Certified Mail, as well as faxing the documents to the SMC records office.  (*See* Exhibits P47A-47I).

### 1)  *SMC case no. 656927*

916.    On September 18, 2020, Assistant CITY Attorney Christine Chin ("Chin") filed a criminal complaint alleging that Plaintiff violated SMC 12A.08.040(A); 12A.06.010 on

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 128 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

September 11, 2020; and that Plaintiff violated SMC 12A.14.075; 12A.08.040(A) on September 16, 2020.

917.    Chin did not provide the court with evidence that SMC 12A.08.040(A); 12A.06.010; 12A.14.075 are laws applicable to Plaintiff in accordance with Wash. Const. art II §§ 18; 22; 32; art III § 12 that the CITY had the legislative power to enact, enforce, and prosecute Plaintiff under Wash. Const. art XI § 11.

918.    On November 17, 2020, Plaintiff was denied the right to enter courtroom 1002 before Judge Jerome Roache ("Roache") because Plaintiff would not wear a face covering.

919.    On November 24, 2020, Plaintiff was denied the right to enter courtroom 1102 before Judge Mary Lynch ("Lynch") because Plaintiff was not wearing a face covering.

920.    Armed marshals of SMC forced Plaintiff to remain in the lobby and use WebEx to appear by video on a computer set up in the courthouse lobby by the marshals.

921.    Public Defender Krystal White ("White") represented Plaintiff inside the courtroom. Plaintiff had previously, repeatedly, and explicitly informed White, both by telephone and in person, that under no circumstances whatsoever would Plaintiff ever agree to waive his right to speedy trial.

922.    Plaintiff informed the marshals that he had a disability precluding him from wearing a face covering.

923.    Plaintiff informed the marshals that RCW 49.60.030 prevented Lynch from discriminating against Plaintiff by denying Plaintiff his right to the full enjoyment of any public accommodation open to the public.

924.    Wash. Const. art. I § 22 states, in part, "In criminal prosecutions the accused shall have the right to appear and defend in person…"

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 129 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

925.    While standing in the lobby, Plaintiff took a picture of a sign which was standing in the lobby, (*See* Exhibit P21A, p. 525).

926.    Plaintiff objected to the marshals that his right to appear was being denied by Lynch, pointing to the mask sign in the lobby.

927.    The sign specifically exempted anyone with a disability, medical or health condition from wearing a mask.

928.    Plaintiff requested that the marshal cite the lawful authority by which Lynch denied Plaintiff's right to physically appear in courtroom 1102.

929.    Some minutes later a marshal returned from speaking with Lynch to provide Plaintiff with several pages of documents from the Lynch.

930.    Upon reading the document, Plaintiff discovered Lynch alleged that Mayor Jenny Durkan ("Durkan") granted Lynch the power to deny Plaintiff's right to enter the courtroom, (*See* Exhibit P58).

931.    Plaintiff informed the marshal that as an executive officer of a municipal corporation, Durkan could not delegate power that Durkan did not possess.

932.    Plaintiff requested the marshal obtain a lawful substantiation from Lynch for her denial of Plaintiff's courtroom access.

933.    The marshal later returned with more photocopies. (*See* Exhibit P39C).

934.    Pursuant to these documents, Lynch asserted her authority to deny Plaintiff's maskless entrance to the courtroom as **consistent with** the holdings of *State v. Bone Club*, 906 P.2d 325, Wash (1995), and *Seattle Times Co. v. Ishikawa,* 97 Wn.2d 30 (1982), (*See* Exhibit P25).

935.    The marshal informed Plaintiff that Lynch would allow Plaintiff to enter

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 130 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

courtroom 1102 if Plaintiff would agree to wear a face shield.

936. Plaintiff informed the marshal that the DoH guidelines explicitly stated that a face shield *does not* mitigate the transmission of viruses.

937. A second marshal set up a computer in the lobby for Plaintiff to appear for the hearing in courtroom 1102 by WebEx video and Plaintiff logged into the hearing.

938. Plaintiff informed Lynch that he wished to dismiss his public defender immediately.

939. Lynch appeared visibly angry to Plaintiff and declared that if Plaintiff said another word for the rest of the hearing that he would face contempt of court.

940. Lynch then muted Plaintiff until the conclusion of the hearing.

941. To Plaintiff's shock, White proceeded to submit a motion to continue *case no. 656927* until March 1, 2021.

942. Plaintiff did not sign the continuance, nor had White ever implied nor suggested to Plaintiff that she intended to file for a continuance.

943. Muted on the video feed, Plaintiff was afraid to somatically object by hand gestures for fear of being arrested for contempt of court.

944. Plaintiff was unable to reach White by text message.

945. The motion for continuance filed by White was signed and dated by her, averring that White had "explained this waiver to my client and am satisfied that s/he understands if and is voluntarily waiving his/her right to speedy trial." (*See* Exhibit P40).

946. The motion for continuance continued case no. 656927.

947. White did not motion for continuance of any other case, nor did White file a motion to consolidate case no. 656927 with case no. 656748 or case no. 656749.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 131 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

948.    On November 24, 2020, after the completion of the hearing before Lynch, Plaintiff called 911 to report that Lynch had violated RCW 9A.80.010 by denying Plaintiff the right to enter courtroom 1102.

949.    SPD Officer Judinna Gulpan #8600 ("Gulpan") responded to the courthouse.

950.    Plaintiff informed Gulpan that Lynch was absent authority to deny Plaintiff's right to enter courtroom 1102, in violation of 18 U.S.C. §§ 241; 242, RCW 49.60.030, RCW 9.91.010.

951.    Gulpan told Plaintiff that Lynch's order that Plaintiff had to wear a face covering to enter courtroom 1102 "was the law."

952.    Gulpan obtained a yellow cardstock document entitled, *Customer Service Survey*, from a courthouse lobby counter and handed it to Plaintiff, then Gulpan left, (*See* Exhibit P70).

953.    On April 6, 2021, Plaintiff was denied entrance to SMC and appeared via WebEx video to argue for the dismissal of case no. 656927; 656748; and 656749 due to lack of subject matter jurisdiction.

954.    MacDonald did not provide the court with evidence that the Seattle Municipal Codes Plaintiff was charged with violating were public laws applicable to Plaintiff in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12 that the CITY had the legislative power to enact, enforce, and prosecute Plaintiff under Wash. Const. art XI § 11.

955.    Judge Catherine McDowall denied Plaintiff's motion to dismiss which challenged the subject matter jurisdiction of the court, (*See* Exhibits P42; P43A; P43B).

956.    Plaintiff requested findings of fact and conclusions of law substantiating the denial; none were provided by McDowall.

957.    On January 19, 2022, Plaintiff was denied entrance to courtroom 1002 before Judge Crawford-Willis.  Crawford-Willis stated that Plaintiff's face covering exemption letter,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 132 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

obtained four months prior, had been invalidated by "Omicron."

958.    Plaintiff appeared via WebEx.

959.    The worksheet stamped by the bailiff and filed in the record shows that the box for "Defendant Appeared" was checked, yet the docket entry states, "DEFENDANT NOT PRESENT." (*See* Exhibit P48A).

960.    Upon the motion of Assistant CITY Attorney Sarah MacDonald for a $15,000 bench warrant, "failure to appear" bench warrant #990430986 in the amount of $10,000 was issued for Plaintiff's arrest by Crawford-Willis.

961.    On June 13, 2022, Plaintiff's motion to quash the bench warrant #990430986 was granted.

962.    On August 29, 2022, Plaintiff was denied access to courtroom 1001 before Judge Gregory.

963.    Plaintiff appeared by telephone.  Plaintiff and Assistant CITY Attorney relied upon their filed briefings.

964.    Gregory dismissed Plaintiff's motion to vacate without findings of fact or conclusions of law.

965.    Plaintiff stated that he had nothing further to say and wished the Court and Kelly a good day.

966.    After Plaintiff disconnected from the telephone appearance, Judge Gregory issued bench warrant #990433490 in the amount of $15,000 for Plaintiff's arrest for allegedly exiting the hearing early.

967.    On February 24, 2023, both charges related to SPD incident #2020-264791 and both charges related to SPD Incident #2020-268834 were dismissed with prejudice under

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 133 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

consolidated case no. 656927 due to no prosecutorial witness.

968.   CITY Senior Assistant Attorney Christopher Karr stated that a CITY witness, James T. Ervin, had moved to California and was unavailable.

969.   Karr did not state that SPROUTS Employee #1 was unavailable to attest to Plaintiff's alleged assault.

970.   Karr did not state that Coomer, McClelland, Parton or Sullivan were unavailable.

**2)   SMC case no. 656748**

971.   On November 13, 2020, Assistant CITY Attorney Daniel O'Brien (O'Brien) filed a criminal complaint related to SPD Incident no. 2020-311598 alleging that on November 4, 2020,

972.   Plaintiff violated SMC 12A.08.040(A) criminal trespass at PCC Natural Markets Aurora.

973.   O'Brien did not provide evidence to the court of the CITY's compliance with legal service of criminal process upon Plaintiff, pursuant to RCW 35.20.270(1).

974.   O'Brien did not provide the court with evidence that SMC 12A.08.040(A) was a law applicable to Plaintiff in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12 that the CITY had the legislative power to enact, enforce, and prosecute Plaintiff under Wash. Const. art XI § 11.

975.   On November 24, 2020, the docket states, "Speedy trial rule waiver filed" and that a new commencement date of March 1, 2021, was set.

976.   Neither White nor the CITY motioned for a continuance or consolidation of case no. 656749. (*See* Exhibit P41).

977.   On March 25, 2021, O'Brien filed an amended criminal complaint with two

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 134 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

additional counts alleging Plaintiff violated SMC 12A.08.040(A) at PCC Aurora.

978.    On March 1, 2021, Plaintiff was denied entrance to courtroom 1102 before Judge Faye Chess because plaintiff was not wear a face covering.

979.    On April 5, 2021, O'Brien filed his 2nd amended criminal complaint with a fourth count alleging Plaintiff violated SMC 12A.08.040(A) at PCC Aurora on November 19, 2020.

980.    On April 6, 2021, Plaintiff was denied entrance to courtroom 1102 before Judge Catherine McDowall to argue Plaintiff's motion to dismiss for lack of subject matter jurisdiction. (*See* Exhibits P42; P43A; P43B).

981.    Plaintiff appeared via WebEx and McDowall dismissed Plaintiff's motion without providing findings of fact or conclusions of law.

982.    On the morning of July 21, 2021, Plaintiff appeared by WebEx before Gregory because armed court marshals continued to deny Plaintiff entrance to courtrooms.

983.    Gregory ordered Plaintiff to appear in person in Seattle Municipal Court wearing covering, or by providing an exemption letter from a medical professional proving that Plaintiff had a disability precluding him from wearing a face covering.

984.    Plaintiff reminded Gregory of RCW 49.60.040(7)(d) "Only for the purposes of qualifying for reasonable accommodation in employment, an impairment must be known or shown through an interactive process to exist in fact."

985.    Plaintiff has never sought employment with the CITY.

986.    Plaintiff reminded Gregory that Wash. Const. art. I § 22 prohibited a public servant from denying a named defendant the right to appear in court.

987.    On the afternoon of July 21, 2021, Plaintiff appeared by WebEx before Crawford-Willis.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

988.    Plaintiff reminded Crawford-Wills of RCW 49.60.040(7)(d) "Only for the purposes of qualifying for reasonable accommodation in employment, an impairment must be known or shown through an interactive process to exist in fact."

989.    Plaintiff reminded Crawford-Willis that Wash. Const. art. I § 22 prohibited a public servant from denying a named defendant the right to appear in court.

990.    Crawford-Willis reiterated her demand that Plaintiff comply with Gregory's demands.

991.    Plaintiff stated his belief that the CITY prosecutors and municipal judges were setting Plaintiff up to be accused of "failure to appear" so that a failure to appear bench warrant could be issued for Plaintiff's arrest.

992.    Crawford-Harris asserted she could hold a trial *in absentia* if Plaintiff did not comply with her and Gregory's demands.

993.    On July 22, 2021, prior to SMC opening, Plaintiff faxed documents to SMC to ensure that the record evidenced Plaintiff's attempts to appear in court and comply with all laws, (*See* Exhibit P47I).

994.    July 22, 2021, Crawford-Harris again denied Plaintiff's right to appear in person in courtroom 1002 without a face covering; therefore, Plaintiff appeared by WebEx video.

995.    Crawford-Harris then prompted prosecutor Assistant CITY Attorney Sarah MacDonald ("MacDonald") by saying, "Don't you have something for me?"

996.    Plaintiff noticed MacDonald appeared startled at the question from Crawford-Willis.

997.    MacDonald then proposed a $20,000 bench warrant which MacDonald moved the court to enter against Plaintiff for "failure to appear".

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 136 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

998.   Plaintiff then informed MacDonald and Crawford-Willis that they were doing exactly what he predicted the previous day.

999.   Upon Plaintiff's information and belief, prior to the court permitting Plaintiff to connect via WebEx video to the courtroom at approximately 900am, MacDonald and Crawford-Willis engaged in *ex parte* communication regarding the intention of MacDonald to motion for a "failure to appear" bench warrant against Plaintiff.

1000.   *Ex parte* communications are prohibited under Washington Code of Judicial Conduct Rule 2.9.

1001.   Upon the motion of MacDonald for a $20,000 "failure to appear" bench warrant, Crawford-Willis issued bench warrant #990429244 in the amount of $10,000.

1002.   The worksheet stamped by the bailiff and filed in the record shows that the box for "Defendant Appeared" was checked= yet the docket entry states, "DEFENDANT NOT PRESENT." (*See* Exhibit P45).

1003.   On August 25, 2021, Plaintiff posted the $10,000 bail for bench warrant #990429244 under duress, coercion, and threat of immediate arrest.

1004.   On September 8, 2021, Plaintiff appeared by WebEx before Judge Catherine McDowall ("McDowall") in courtroom 1101.

1005.   McDowall stated that Plaintiff must appear in person on September 21, 2021, and that Plaintiff must either wear a face covering or provide a face covering exemption letter from a health professional; otherwise, Plaintiff would not be allowed into the courtroom and another "failure to appear" bench warrant would be issued.

1006.   On September 17, 2021, Plaintiff submitted an exemption letter under threat, duress and coercion. (*See* Exhibit P56).

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 137 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1007.   The exemption letter enabled Plaintiff to enter the courthouse and courtrooms, escorted by a SMC marshal, for the next three months.

1008.   On January 13, 2022, Plaintiff and his friend, Daniel Haller entered SMC courtroom 1003 for a hearing before Gregory regarding the repeated denials of Plaintiff's access to the courtrooms.

1009.   Armed marshals, acting under direct orders from Gregory, then forced Plaintiff and Heller out of the courthouse because Plaintiff was not wearing a face covering.

1010.   On January 19, 2022, Plaintiff was denied access to courtroom 1002 before Crawford-Willis.  Crawford-Willis stated that Plaintiff's face covering exemption letter had been invalidated by "Omicron."  Plaintiff appeared via WebEx video.

1011.   Upon the motion of MacDonald for a $15,000 "failure to appear" bench warrant, bench warrant #990430984 in the amount of $10,000 was issued for Plaintiff's arrest by Judge Crawford-Willis.  (*See* Exhibit P48B).

1012.   On June 13, 2022, Plaintiff's motion to quash the bench warrant #990430984 was granted.

1013.   On August 29, 2022, Plaintiff was denied access to courtroom 1001 before Judge Gregory. Plaintiff appeared by telephone.  Plaintiff and Assistant CITY Attorney Jacob Kelly relied upon their filed briefings, (*See* Exhibit P49A; P49B).

1014.   Gregory dismissed Plaintiff's motion to vacate without providing findings of fact or conclusions of law..

1015.   Plaintiff stated that he had nothing further to say and wished the Court and Kelly a good day.

1016.   After Plaintiff disconnected from his telephone appearance, Judge Gregory issued

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 138 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

bench warrant #990433484 in the amount of $15,000 for Plaintiff's arrest for allegedly "exiting the hearing early."

1017.   On October 20, 2022, Plaintiff's motion to quash bench warrant #990433484 was granted.

1018.   On July 28, 2023, Kelly motioned Chess for a $50,000 bench warrant because Plaintiff was not physically present in the courtroom, despite Plaintiff's public defender, Faiz Pirani present.

1019.   Chess issued bench warrant #990437507 in the amount of $25,000 for the arrest of Plaintiff.

### 3)  SMC case no. 656749

1020.   On November 13, 2020, O'Brien filed criminal charges against Plaintiff in case no. 656749 for allegedly violating Seattle Municipal Code 12A.08.040(A) criminal trespass, and 12A.08.060 theft on October 27, 2020, at PCC Aurora.

1021.   O'Brien did not provide evidence to the court of the CITY's compliance with legal service of criminal process upon Plaintiff, pursuant to RCW 35.20.270(1).

1022.   O'Brien did not provide the court with evidence that SMC 12A.08.040(A); 12A.08.060 are laws applicable to Plaintiff in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12 that the CITY had the legislative power to enact, enforce, and prosecute Plaintiff under Wash. Const. art XI § 11.

1023.   On November 17, 2020, Plaintiff was prevented from going beyond the lobby security by armed marshals and was thereby denied access to courtroom 1002 before Judge Jerome Roache ("Roache") because Plaintiff was not wearing a facemask.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 139 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1024.   Plaintiff informed marshals that he could not be coerced to wear a mask to enter court.

1025.   Plaintiff asked the marshals to cite the lawful authority by which the marshals were denying Plaintiff access to court.

1026.   Marshals informed Plaintiff that there was a "mask mandate" and what the judge says is "the law."

1027.   The clerk listed Plaintiff as "Not Present" and Roache approved an overset for November 24, 2020.

1028.   On November 24, 2020, while Plaintiff was muted on WebEx in the courthouse lobby under threat of contempt of court, Lynch found that there was probable cause to proceed.

1029.   On November 24, 2020, the docket entries of, state, "Speedy trial rule waiver filed" and that a new commencement date of March 1, 2021, was set.

1030.   Neither White nor the CITY motioned for a continuance or consolidation of case no. 656748.

1031.   For months prior to the trial, Plaintiff repeatedly demanded that MacDonald provide exculpatory that the CITY was required to provide Plaintiff pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963); namely, all security camera footage from PCC Aurora during the time that Plaintiff allegedly failed to leave payment for his groceries.

1032.   Plaintiff repeatedly informed MacDonald via email that Goslin stated on video on October 3, 2020, that Goslin instructed Plaintiff to not go near the checkout counters.

1033.   Plaintiff provided MacDonald with video showing that Goslin instructed Plaintiff to leave payment for his groceries *"Anywhere you'd like"* in the store. (*See* Exhibit P104).

1034.   MacDonald did not provide Plaintiff any PCC security video other than the

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 140 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

checkout camera video.

    1035.   On September 17, 2021, Plaintiff submitted exemption letter under threat, duress and coercion. (*See* Exhibit P56).

    1036.   On the morning of September 21, 2021, Plaintiff arrived in Seattle Municipal Court. He was denied entrance to courtroom 1003 before Judge Adam Eisenberg.

    1037.   Plaintiff was forced to sit in an office with an armed marshal and appear via WebEx because Plaintiff would not wear a mask or face shield.

    1038.   Afternoon on September 21, 2021, Plaintiff was allowed into the courtroom before Lynch.

    1039.   Harris objected to Plaintiff appearing in the courtroom without a mask, as it would prejudice the jury regarding the allegation that Plaintiff was required by law to wear a face mask.

    1040.   Harris then moved the court to require Plaintiff to appear by WebEx.

    1041.   Seattle Municipal Court did not allow any prospective juror who would not, or could not, wear a mask to enter the courthouse.

    1042.   Plaintiff asked Lynch how many people, besides Plaintiff, had entered the courthouse without a mask between March 2020 and September 21, 2021. Lynch answered, "None."

    1043.   Plaintiff objected that the jury could not be representative if Plaintiff's class and those with a disability precluding the wearing of a face covering had been denied entrance to SMC for the previous eighteen months. Lynch overruled Plaintiff's objection.

    1044.   On September 22, 2021, Plaintiff was forced to remain seated behind a wall of plexiglass as if he posed a direct and imminent threat to the health of others in the room.

    1045.   Lynch denied Plaintiff the use of the video monitor to show the jury video of

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 141 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    Goslin taken by Plaintiff on October 3, 2020.

2       1046.   Lynch denied Plaintiff the use of the video monitor to show the jury video of

3    Plaintiff leaving payment for his groceries out of view of the checkout security camera.

4       1047.   MacDonald knowingly and willfully deceived the jury to believe that Plaintiff did

5    not leave payment for his groceries.

6       1048.   MacDonald led the jury to believe that Plaintiff perpetrated theft by denying

7    Plaintiff's ability to show the jury video of Goslin and video of Plaintiff leaving payment for his

8    

9    groceries out of view of the checkout security camera,

10      1049.   Washington BAR Rules of Professional Conduct ("RPC") 8.4(c) prohibits an

11   attorney from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."

12      1050.   On January 19, 2022, Plaintiff was denied access to courtroom 1002 before

13   Crawford-Willis.  Crawford-Willis stated that Plaintiff's face covering exemption letter had been

14   invalidated by "Omicron."

15      1051.   Plaintiff appeared by WebEx.  Upon the motion of Assistant CITY Attorney Sarah

16   MacDonald for a $15000 bench warrant, "failure to appear" bench warrant #990430987 in the

17   amount of $10,000 was issued for Plaintiff's arrest by Judge Crawford-Willis.

18      1052.   On June 13, 2022, Plaintiff's motion to quash the bench warrant #990430987 was

19   

20   granted.

21      1053.   On August 29, 2022, Plaintiff was denied access to courtroom 1001 before Judge

22   Gregory.  Plaintiff appeared by telephone.

23      1054.   Plaintiff and Assistant CITY Attorney relied upon their filed briefings.  Gregory

24   denied Plaintiff's motion to vacate, (*See* Exhibit P50A; P50B).

25      1055.   Plaintiff stated that he had nothing further to say and wished the Court and Kelly

26   

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 142 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  a good day.

2      1056.   After Plaintiff disconnected from the telephone appearance, Judge Gregory issued

3  bench warrant #990433488 in the amount of $15,000 for Plaintiff's arrest for allegedly exiting

4  the hearing early.

5      1057.   On October 20, 2022, Plaintiff's motion to quash the bench warrant #990433488

6  was granted.

7

8      1058.   The expiration date for case no. 656749 is listed as August 1, 2023, on the SMC

9  docket, yet on July 28, 2023, the docket states that SMC mailed Plaintiff a notice that a sentencing

10  hearing was scheduled for September 28, 2023.

11    *4)  SMC case no. 662870*

12     1059.   After the alleged DUI arrest on December 16, 2020, (originally under case no.

13  658268) SPD sent Plaintiff's blood for testing.

14     1060.   The Washington State Patrol Toxicology Laboratory test report dated September

15  9, 2021, and issued "Attention: Daniel Auderer," evidenced that Plaintiff had not been under the

16  influence of any drug when pulled over by Foy, thrown to the ground, and arrested.

17

18     1061.   Despite having received toxicological evidence that Plaintiff had not driven under

19  the influence of any drug on the night of December 16, 2020, the CITY refiled the criminal

20  complaint under SMC case no. 662870 on December 14, 2021.

21     1062.   CITY prosecutor Jacob Kelly ("Kelly"), accused Plaintiff of violating municipal

22  codes for DUI, reckless endangerment, and obstruction of justice.

23     1063.   RCW 35.20.270(1) states, "All criminal and civil process issuing out of courts

24  created under this title shall be directed to the chief of police of the CITY served by the court

25  and/or to the sheriff of the county in which the court is held and/or the warrant officers and be

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 143 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

by them executed according to law in any county of this state."

1064.    Service of criminal process was not served upon Plaintiff via the SPD chief or county sheriff; Plaintiff received a notification letter of a hearing scheduled for January 4, 2022.

1065.    On January 4, 2022, Plaintiff was denied his right to appear in person and instead made a special appearance via WebEx before Judge Mary Lynch ("Lynch") in courtroom 1102. Kelly was present as prosecutor.

1066.    Plaintiff demanded evidence that the threshold elements of personal and subject matter jurisdiction was in evidence before the court to authorize Lynch to proceed.

1067.    Kelly did not provide the court with evidence of the CITY's compliance with RCW 35.20.270(1).

1068.    Kelly did not provide the court with evidence that Seattle Municipal Codes 11.56.020(A); 12A.06.050; 12A.16.010(A), which Plaintiff was charged with violating, were laws applicable to Plaintiff in accordance with Wash. Const. art II §§ 18; 22; 32; art III § 12 which the CITY had the legislative power to enact, enforce, and prosecute Plaintiff under Wash. Const. art XI § 11.

1069.    SMC search warrant no. 6915 ("warrant") was used to withdraw two vials of blood from Plaintiff.

1070.    According to Foy and Auderer, Lynch authorized Auderer to affix Lynch's signature to the search warrant on December 16, 2020.

1071.    Kelly did not provide the court with evidence that Lynch authorized Auderer to affix Lynch's signature to the warrant.

1072.    The warrant bore only the signature of Daniel A. Auderer.

1073.    Kelly did not provide the court with evidence that the CITY complied with RCW

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 144 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

10.79.035(4), which states in part, "...a record of the magistrate's permission to affix the magistrate's signature to the warrant shall be preserved and shall be filed with the issuing court as required by CrRLJ 2.3 or CrR 2.3."

1074.   Lynch did not attest to her knowledge that she had authorized Auderer to affix her signature to warrant no. 6915.

1075.   Lynch's signature was not present on warrant no. 6915. (*See* Exhibit P58).

1076.   Lynch confirmed to Plaintiff that he had the right to enter an informed and voluntary plea.

1077.   However, when Plaintiff informed Lynch that he had an unsigned plea to voluntarily enter before the court, Plaintiff was muted and disconnected from WebEx by the court.

1078.   By the time Plaintiff had logged back onto WebEx, Lynch informed him that she had entered a not guilty plea on his behalf while Plaintiff was disconnected and unable to speak before the court.

1079.   Plaintiff objected.  Lynch overruled, stating, "I don't know what you think you're up to, but I'm not letting you enter a guilty plea."

1080.   Lynch then told Plaintiff, "You're lucky you weren't killed."

1081.   Plaintiff interpreted Lynch's statement as a thinly veiled threat similar to Foy telling Plaintiff the night of the arrest on December 17, 2020, "You're lucky I didn't pop you."

1082.   On February 24, 2023, Senior Assistant CITY prosecutor Christopher Karr, dismissed all charges under SMC case no. 662870 with prejudice for *lack of proof.*

1083.   The CITY had the same lack of proof on February 24, 2023, as it had when Kelly refiled charges on December 14, 2021.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 145 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1084.   On June 29, 2023, Plaintiff received confirmation from Mary Lou Johnson in the SMC records department that no evidence of Lynch's permission to affix Lynch's signature to the warrant could be found in court records.  (*See* Exhibit P59).

5) *SMC case no. 669329*

1085.   On November 15, 2022, Plaintiff walked to his mailbox and thereby learned that he was charged with violating RCW 7.105.450 related to the events of August 15, 2022, SPD Incident #2022-215424.

1086.   The letter from the CITY stated that case no. 667465 had been refiled as case no. 669329, and that a hearing was scheduled for November 16, 2022, at 230pm.

1087.   Plaintiff wrote a motion to dismiss for lack of personal jurisdiction, citing the requirement of RCW 35.20.270(1) which states, "All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the CITY served by the court and/or to the sheriff of the county in which the court is held and/or the warrant officers and be by them executed according to law in any county of this state." (*See* Exhibit P51A).

1088.   Plaintiff then wrote a motion for change of venue on the grounds that SMC had repeatedly denied his right to appear in person without a facemask.

1089.   On the morning of November 16, 2022, Plaintiff attempted to e-file his two motions via the SMC web portal.  Despite SMC repeatedly asserting for the prior five months that Plaintiff had been granted access to e-filing, the web portal would not permit Plaintiff to e-file his motions.

1090.   Plaintiff then emailed the two .pdf documents to the CITY Attorney Ann Davison, Senior Assistant Attorney Christopher Karr, Assistant Attorney Kevin Kilpatrick, and to courtroom 1102. (*See* Exhibit P51A; 51B; P51C).

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 146 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1091.   The docket for case no. 669329 shows that Plaintiff's motion to change venue was recorded on November 16, 2022, but the motion to dismiss was not recorded until November 28, 2022.

1092.   Plaintiff felt forced to associate with Seattle Municipal Court under threat, duress and coercion.

1093.   At 230pm on November 16, 2022, Plaintiff appeared by Special Appearance via WebEx in courtroom 1102 before Judge Gregory.

1094.   Plaintiff cited RCW 35.20.270(1) as a threshold issue and asked Gregory if the prosecutor had provided evidence the CITY effectuated legal service of process to grant jurisdiction to the court.  Gregory did not affirm that the CITY had done so; rather, Gregory simply asserted, "The court has jurisdiction."

1095.   Unsatisfied with what appeared to Plaintiff to be tautological evasion by Gregory, Plaintiff asked CITY prosecutor Cooper directly if she had provided the court with evidence of the CITY's compliance with RCW 35.20.270(1); Cooper remained silent on the issue.

1096.   Gregory again asserted, "The court has jurisdiction," despite Plaintiff's repeated objections that the court had no evidence of personal service granting the court jurisdiction to proceed.

1097.   Gregory entered a plea of not guilty on Plaintiff's behalf, despite Plaintiff's objection that the court had not obtained jurisdiction to proceed.

1098.   Gregory set bail in the amount of $10,000.  Plaintiff stated that Gregory's conduct constituted a violation of RCW 9A.56.030 theft in the first degree.

1099.   RCW 9A.56.020(1)(a) states, in part, "Theft means to wrongly obtain or *exert unauthorized control* over the property or services of another or the value thereof, with intent to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 147 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    deprive him or her of such property."

2        1100.   Gregory increased the bail amount to $25,000 and stated that he was issuing a

3    restraining order preventing Plaintiff from contacting Owen or being within 1000 feet of her or

4    her home.

5        1101.   Plaintiff asked Gregory why, if there was *actually* a valid restraining order from

6    family court case no. 21-5-00680-6, would Gregory need to issue a verbatim duplicate?  Gregory

7    did not answer.

8

9        1102.   Gregory eventually reduced the bail amount to $10,000, and a bail hearing was

10   set for November 22, 2022.

11       1103.   Plaintiff appeared by Special Appearance via WebEx on November 22, 2022,

12   before Judge Adam Eisenberg ("Eisenberg").

13       1104.   Plaintiff again cited RCW 35.20.270(1) and demanded evidence that the CITY

14   had effectuated legal service of process to grant the court jurisdiction.

15       1105.   Eisenberg did not affirm that personal service of Plaintiff was evidenced before

16   the court; rather, Eisenberg asserted that Gregory had already addressed this issue on November

17   16, 2022, and that Plaintiff had been arraigned.

18

19       1106.   Plaintiff rejected Eisenberg's claim and reminded Eisenberg that a court has no

20   jurisdiction to act absent jurisdiction.

21       1107.   Eisenberg declared that Plaintiff had failed to comply with Gregory's $10,000 bail

22   order.

23       1108.   Eisenberg issued bench warrant #990434611, in the amount of $10,000, for

24   Plaintiff's immediate arrest.

25       1109.   On February 10, 2023, Public Defender Faiz Pirani appeared on Plaintiff's behalf.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 148 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Warrant #990434611 was quashed.

1110.   On June 21, 2023, Plaintiff appeared by WebEx before Judge Jerome Roache ("Roache").  Outland moved the court to issue a $100,000 warrant for Plaintiff's arrest.

1111.   Roache issued a $50,000 warrant for Plaintiff's "failure to appear."  The worksheet stated that Plaintiff appeared.  (*See* Exhibit P53).

### 6) *SMC case no. 671384*

1112.   On March 14, 2023, Assistant CITY Attorney Katrina Outland filed eighty-nine criminal charges against Plaintiff alleging that Plaintiff violated a restraining order by: effectuating legal service of process at Owen's house pursuant to CR4 and FrCP 4 and texting with A.R.W.

1113.   1209.  Judge Faye Chess determined there was probable cause to issue $250,000 warrant #990435958 for Plaintiff's immediate arrest.

### 7) *Rackateering Activity*

**Extortion.**

1114.   Chess, Crawford-Willis, Eisenberg, Gregory, Lynch, McDowall, and Roache ("SMC judges ") acted to obtain Plaintiff's property on behalf of the CITY by threatening Plaintiff with physical restraint from entering SMC.

1115.   SMC judges acted to obtain Plaintiff's property on behalf of the CITY by threatening to accuse Plaintiff of a crime or cause criminal charges to be instituted against him.

1116.   SMC judges acted to obtain Plaintiff's property on behalf of the CITY by threatening Plaintiff they would take wrongful action as CITY officials, and thereafter took wrongful action.

1117.   SMC judges acted to obtain Plaintiff's property on behalf of the CITY by threatening Plaintiff they would act to substantially harm Plaintiff with respect to his financial condition or

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 149 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    personal relationships.

2         **Kidnapping.**

3         1118.    SMC judges acted, or threatened to act, in joint action with CITY employees,

4    PCC employees, SPROUTS employees, and private individuals, to seize, confine, or carry

5

6    away and hold Plaintiff under color of law.  *See* 18 U.S.C. § 1201.

         **Witness Tampering.**

7

8         1119.    SMC judges acted to intentionally harass and threaten Plaintiff and thereby

9    hindered, delayed, prevented, or dissuaded Plaintiff, his family, or his friends, from: (1) attending

10   an official proceeding; (2) reporting the possible commission of a federal offense; (3) seeking

11   the arrest of defendants; or (4) causing a criminal prosecution to be sought.  *See* 18 U.S.C. §

12   1512.

13        **Witness Retaliation.**

14        1120.    SMC judges, with the intent to retaliate, knowingly acted to harm Plaintiff's

15   livelihood for his providing truthful information to a law enforcement officer relating to the

16

17   possible commission of a federal offense.  *See* 18 U.S.C. § 1513(e).

18        *8)  Monell Liability*

19        1121.    If not for their invidious discriminatory animus against Plaintiff's beliefs, SMC

20   judges would not have imposed excessive bail or warrants against Plaintiff.

21        1122.    If not for their invidious discriminatory animus against Plaintiff's beliefs, SMC

22   judges would not have denied Plaintiff the right to appear in person in Seattle Municipal Court

23   courtrooms.

24        **Policy, Practice or Custom.**

25        1123.    For nearly three years, SMC judges have acted in concert with prosecutors and

26

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   local businesses, threatening Plaintiff's life, liberty, and property.

2       1124.   SMC judges' constitutional violations of Plaintiff's rights were committed

3   pursuant to the CITY's face covering policies, as well as Gregory's GAO face covering policies

4   and the face covering policies of PCC and SPROUTS.

5       1125.   SMC judges knew about and acquiesced in the malicious prosecutions of Plaintiff

6   as part of a common plan with PCC employees and SPROUTS employees, and (2) SMC

7   defendants set in motion a series of threats, unlawful arrests, unlawful imprisonments, and bench

8   warrants, by which the SMC defendants knew or reasonably should have known would cause

9   others to inflict the constitutional injuries upon Plaintiff.

10

11   **Final Policymaker Gregory.**

12       1126.   Gregory delegated his authority by and through his General Administrative

13   Orders ("GAO") regarding "Covid-19 Emergency Limited Court Operations" pursuant to order

14   No. 25700-B-626 of The Supreme Court of Washington.

15       1127.   Gregory fully delegated his discretionary authority to the other SMC judges, who

16   then used their discretion to prevent Plaintiff from entering courtrooms without a face covering,

17   and to thereby issue tens of thousands of dollars in "failure to appear" bench warrants.

18

19       1128.   Gregory's court face covering policy was his deliberate choice to follow a course

20   of action made from among various alternatives.

21       1129.   SMC judges acted in concert with Gregory's GAO; they regularly cited Gregory's

22   orders as *de facto* courthouse law which mandated Plaintiff's compliance under threat of arrest.

23   **Failure to Train.**

24       1130.   CITY face covering policies inculcated an invidious discriminatory animus in its

25   employees against Plaintiff's class, yet the CITY failed to properly train SMC judges to prevent

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 151 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

them from discriminating against Plaintiff and thereby violating his rights.

1131.    SMC judges' denial of Plaintiff's right to appear in court without a face covering was widespread, perpetuated for two years by every hearing judge across more than twenty hearings.

1132.    SMC judges were repeatedly given constructive notice by Plaintiff that the pattern acts of SMC defendants were violative of state and federal law including, but not limited to RCW 9A.80.010; 9A.56.030; RCW 35.20.270; and 18 U.S.C. §§ 241; 242. (*See* Exhibits P47A-P47I).

1133.    Plaintiff gave SMC judges constructive notice that their deliberate indifference ignored obvious consequences of their actions including, but not limited to, civil and criminal liability.

1134.    SMC judges ignored Plaintiff's constructive notice for more than two years.

## K. COMMISSION ON JUDICIAL CONDUCT

1135.    Plaintiff filed approximately a dozen complaints with the Commission on Judicial Conduct ("CJC") beginning in Spring of 2021.

1136.    Under Wash. Const. Art. IV, § 31 (2) the CJC was required to notify the judges so complained against by Plaintiff, including, Chess, Crawford-Willis, Gregory, Lynch, and McDowall.

1137.    All of these CITY judges, after receiving notice from the CJC, subsequently presided over cases involving Plaintiff in Seattle Municipal Court.

1138.    Under Wash. Const. Art. IV, § 31 (3) "Whenever the commission concludes, based on an initial proceeding, that there is probable cause to believe that a judge or justice has violated a rule of judicial conduct or that the judge or justice suffers from a disability which is permanent or likely to become permanent and which seriously interferes with the performance

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 152 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

of judicial duties, the commission shall conduct a public hearing or hearings and shall make public all those records of the initial proceeding that provide the basis for its conclusion."

1139.   No public hearings were ever held; that is, the commission concluded that based upon Plaintiff's complaints no probable cause existed that any judge complained against had violated a rule of judicial conduct.

1140.   Upon   Plaintiff's   information   and   belief,   the   CJC   whitewashed   the "investigations" of Plaintiff's judicial conduct complaints to indemnify defendant judges.

## L.  SEATTLE ATTORNEY'S OFFICE

### 1)  *Prosecutorial Retaliation*

1141.   On September 15, 2020, Plaintiff emailed then Seattle CITY Attorney Peter S. Holmes, ("Holmes").

1142.   Plaintiff explicitly informed Holmes that he had been subject to unlawful arrest by SPD; that SPD officers not only did not know the law, but that the officers refused to read the law when Plaintiff tried to hand officers printed copies of the relevant statutes.

1143.   Plaintiff informed Holmes that local businesses were engaging in discriminatory practices under face covering policies, and that Plaintiff would bring suit against Holmes if the CITY's discrimination did not stop. (*See* Exhibit P30).

1144.   Plaintiff did not receive a response from Holmes or any other attorney working in the CITY Attorney's Office.

1145.   On November 6, 2020, after another arrest at SPROUTS and numerous altercations with police and store employees throughout Seattle, Plaintiff emailed Holmes again to inform Holmes that months of attempts to address negligence and criminal law violations perpetrated by SPD officers and employees of local businesses had been ignored by CITY

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 153 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   officials, including the civil and criminal divisions of the CITY Attorney's Office.

2   1146.    Plaintiff's email address was thereafter blocked when he tried to email Holmes.

3   1147.    Over the next two-and-one-half years, Plaintiff continued to seek redress of his

4   grievances with the CITY, notifying Holmes and staff attorneys innumerable times.  Those

5   included notices sent by fax and U.S. Postal Service certified mail to Peter Holmes, (*See* Exhibits

6   P47A-47I).

7

8   **Absence of Service.**

9   1148.    Since November 16, 2022, when Plaintiff demanded proof of personal service

10   from Judge Gregory in SMC case no. 669329, Outland has not provided the court evidence that

11   the CITY effectuated legal service of process in case no. 669329, pursuant to RCW 35.20.270(1).

12   1149.    Outland did not refute that SMC did not have personal jurisdiction over Plaintiff

13   to adjudicate case no. 669329.  Outland did not refute that absent jurisdiction, a court cannot

14   issue a valid order.  Plaintiff repeatedly reminded Outland that the restraining order issued by

15   Gregory on November 16, 2022, is not legally valid.

16   **Codes Not Laws.**

17   1150.    Municipal corporations are delegated the authority to pass regulations, not laws.

18   Wash. Const. art XI § 11, "Any county, city, town or township may make and enforce within its

19   limits all such local police, sanitary and other regulations as are not in conflict with general laws."

20

21   1151.    Outland did not provide evidence that the Seattle Municipal Codes she alleged

22   Plaintiff violated are laws.

23   1152.    Plaintiff emailed Outland an offer to immediately turn himself in to the King

24   County Jail if Outland would provide evidence that Seattle Municipal Codes are laws applicable

25   to Plaintiff pursuant to Wash. Const. art II §§ 18; 22; 32; art III § 12, which the CITY had the

26

INJUNCTIONS, DECLARATORY JUDGMENT          KURT BENSHOOF
CLAIM FOR DAMAGES                          1716 N 128th ST
**Page 154 of 280**                        Seattle, WA 98133
                                           kurtbenshoof@gmail.com

1   jurisdictional authority to enforce and prosecute Plaintiff under Wash. Const. art XI § 11.  (*See*

2   P52).

3       1153.   Thereafter, Plaintiff's email address was blocked by Outland's email account,

4   katrina.outland@seattle.gov.

5

6       1154.   To date, Outland has not provided Plaintiff with the requested evidence.

7       1155.   Upon Plaintiff's information and belief, if Outland possessed or could obtain such

8   evidence, she would have provided it to Plaintiff, so that Plaintiff would turn himself in to King

9   County Jail; for Outland not to do so would have been negligence, since Outland's position was

10  that Plaintiff is an extreme threat justifying a $250,000 arrest warrant.

11      1156.   The CITY enabled, facilitated, promoted, or enforced a policy within the CITY

12  Attorney's Office to obfuscate, ignore or deny that Seattle Municipal Codes are not "laws"

13  applicable to the general public pursuant to Wash. Const. art II §§ 18; 22; 32; and art III § 12.

14      1157.   The CITY enabled, facilitated, and perpetrated the C19 Enterprise, by falsely

15  asserting that CITY codes are laws, thereby targeting Plaintiff with CRAP.

16      1158.   Upon Plaintiff's information and belief, the CITY allowed, enabled, facilitated,

17  or enforced a *de facto* policy within the CITY Attorney's Office to disregard the Civil Rights Act

18  of 1964 and RCW 49.60.030 in order to coerce compliance with face covering policies in public

19  accommodations, including government buildings and local businesses.

20

21      1159.   If not for their invidious discriminatory animus against Plaintiff's beliefs which

22  was initiated, inculcated or perpetuated by Durkan, Holmes and Davison, attorneys employed in

23  the CITY Attorney's Office, including MacDonald and Outland, would not have acted to deny

24  Plaintiff the right to appear in person in Seattle Municipal Court courtrooms.

25      1160.   The CITY Attorney's Office was given notice by certified mail and fax, and

26

INJUNCTIONS, DECLARATORY JUDGMENT                    KURT BENSHOOF
CLAIM FOR DAMAGES                                    1716 N 128th ST
**Page 155 of 280**                                  Seattle, WA 98133
                                                     kurtbenshoof@gmail.com

thereby dutifully informed Holmes and all prosecuting attorneys that they were violating federal laws in the denial of Plaintiff's rights.  (*See* Exhibit P47-P47I).

### 2) *Racketeering Activity*

**Extortion.**

1161.   MacDonald and Outland acted to obtain Plaintiff's property on behalf of the CITY by threatening Plaintiff with physical restraint from entering SMC.

1162.   MacDonald and Outland acted to obtain Plaintiff's property on behalf of the CITY by threatening to accuse Plaintiff of a crime or cause criminal charges to be instituted against him.

1163.   MacDonald and Outland acted to obtain Plaintiff's property on behalf of the CITY by threatening Plaintiff they would take wrongful action as CITY officials.

1164.   MacDonald and Outland acted to obtain Plaintiff's property on behalf of the CITY by threatening Plaintiff they would act to substantially harm Plaintiff with respect to his financial condition or personal relationships.

**Kidnapping.**

1165.   MacDonald and Outland acted, or threatened to act, in joint action with CITY employees, PCC employees, SPROUTS employees, or private individuals, to seize, confine, or carry away and hold Plaintiff under color of law. *See* RCW 9A.56.120; .130.

**Robbery.**

1166.   Davison, Holmes, MacDonald and Outland acted as integral participants by setting in motion of series of warrants by which they knew or reasonably should have known would cause other CITY officials, armed with deadly weapons, to effectuate the theft of Plaintiff's money.

1167.   SPD officers armed with deadly weapons acted, or threatened to act, in joint action

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 156 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  with CITY employees, PCC employees, SPROUTS employees, and private individuals, to

2  unlawfully take Plaintiff's property against his will by the use or threatened use of immediate

3  force, or fear of injury to Plaintiff.

4  **Witness Tampering.**

5

6  1168.   MacDonald and Outland acted to intentionally harass Plaintiff and thereby

7  hindered, delayed, prevented, or dissuaded Plaintiff, his family, or his friends, from: (1) attending

8  an official proceeding; (2) reporting the possible commission of a federal offense; (3) seeking

9  the arrest of defendants; or (4) causing a criminal prosecution to be sought.

10  **Witness Retaliation.**

11  1169.   MacDonald and Outland, with the intent to retaliate, knowingly acted to harm

12  Plaintiff's livelihood for his providing truthful information to a law enforcement officer relating

13  to the possible commission of a federal offense.

14  1170.   The predicate acts of kidnapping, robbery, witness tampering, and witness

15  retaliation involved interstate commerce totaling at least $100,000.

16

17  **3) *Monell Liability***

18  **Malicious Prosecutions.**

19  1171.   CITY prosecutors, years after being informed by Plaintiff that they were violating

20  state and federal laws in derogation of the Civil Rights Act, and any common sense, decency or

21  fairness, continued their malicious prosecutions of Plaintiff for his maskless shopping.  Initiated

22  under Peter Holmes, they continued under Ann Davison.

23  1172.   Despite SPD officers initially accusing Plaintiff of ***criminal*** trespass in a ***civil***

24  disagreement between Plaintiff and local businesses, after several months SPD officers informed

25  local business that SPD had no criminal jurisdiction over Plaintiff's maskless shopping.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 157 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1173.    The jurisdiction did not change; SPD *policy* enforcement changed.

1174.    The CITY employs liaison attorneys to act as go-betweens the CITY Attorney's Office and the SPD, ostensibly ensuring conformity of policies and accurate enforcement of laws and codes.

1175.    By March 2021, SPD officers acknowledged that shopping without a mask could not legally constitute criminal trespass; yet CITY prosecutors continued to prosecute Plaintiff for his lawful shopping at PCC Natural Markets ("PCC") *more than two years thereafter.*

1176.    Upon Plaintiff's information and belief, there is a simple explanation for this; PCC and the CITY Attorney's Office share civil and criminal liability for defendants' threatening harassment, imprisonment, and prosecution of Plaintiff for nearly three years.

1177.    On April 6, 2021, MacDonald stated on the record that the CITY Attorney's Office had been in regular communication with PCC's legal counsel, and that PCC employees were considering getting restraining orders against Plaintiff to prevent him from shopping without a face covering.

1178.    Upon Plaintiff's information and belief, CITY attorneys regularly communicated with defendant Freya Brier ("Brier"), vice president of legal at PCC, to strategize how to silence, intimidate, ostracize, maliciously prosecute, and imprison Plaintiff.

1179.    MacDonald's and Outland's conduct was the actionable cause of Plaintiff's injuries.

1180.    Their conduct was both causation-in-fact and proximate causation of the constitutional violations of Plaintiff's inalienable rights.

**Policy, Practice or Custom.**

1181.    Davison, Holmes, MacDonald, and Outland acted under formal CITY policy or

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 158 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   engaged in a widespread practice or custom by prosecuting Plaintiff in retaliation for the

2   expressing of his beliefs and the exercising of his rights protected under the First Amendment.

3       1182.   The malfeasance, misfeasance, and nonfeasance by CITY attorneys was based on

4   the CITY's expressly adopted face covering policies that were unlawfully imposed upon

5   Plaintiff.  CITY policies directed employees to act in an unlawful manner against Plaintiff's

6

7   class.

8       1183.   The CITY's liability attached because CITY judges, prosecutors, court marshals,

9   and police, committed constitutional violations pursuant to the CITY's expressly adopted official

10  face covering policies.

11      1184.   The CITY's official face covering policy resulted from a deliberate choice by

12  Durkan, prosecutors, and other CITY officials to follow a course of action made from among

13  various alternatives for establishing final face covering policies in public buildings and

14  businesses within Seattle.

15      1185.   The existence of the CITY's widespread face covering policies is not disputed.

16  The CITY's arrests, imprisonments, and prosecutions of Plaintiff "was the actionable cause of

17  [Plaintiff's] claimed injuries."

18

19      1186.   Defendants caused the constitutional violations as "integral participants."

20  Defendants (1) knew about and acquiesced in the malicious prosecutions of Plaintiff as part of a

21  common plan with PCC employees, and (2) defendants set in motion a series of harassments,

22  threats, unlawful arrests, unlawful imprisonments, and unlawful warrants, by which the

23  defendants knew or reasonably should have known would cause others to inflict the constitutional

24  injuries upon Plaintiff.

25      **Final Policymaker.**

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 159 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1187.   As acting CITY Attorney, Peter Holmes and Ann Davison acted as final policymakers directing the expressly adopted official policy or widespread practice of threatening, arresting, prosecuting and imprisoning Plaintiff.

1188.   Holmes and Davison were delegated final policymaking authority for CITY prosecutions, and their acts as final policymakers were discretionary decisions, unconstrained by policies not of that official's making and unreviewable by the CITY.

**Failure to Train.**

1189.   There was a "direct causal link" between: 1) the CITY's face covering policies; 2) the lack of training in the Civil Rights Act of 1964; 3) the lack of training in the Americans with Disabilities Act ("ADA"); 4) the lack of training in Washington laws against discrimination; and 5) the constitutional violations of Plaintiff's rights.

1190.   The CITY did not properly train attorneys employed in the CITY Attorney's Office to prevent discrimination against Plaintiff's class, nor against people whose beliefs preclude them from being coerced to wear a face covering.

1191.   The violations of Plaintiff's rights would not have been perpetrated but for the CITY's failure to properly train its employees not to discriminate against Plaintiff's class, and the misconduct of CITY employees was the proximate cause of Plaintiff's harms.

1192.   Though CITY attorneys did attend law school, and were thereby presumed to know the law, the CITY's policies of omission regarding the supervision of prosecutors reflected a deliberate or conscious choice to countenance the possibility of constitutional violations against Plaintiff's class.

**M. SEATTLE POLICE DEPARTMENT**

*1) Monell Liability – SPROUTS*

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 160 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

**Policy, Practice or Custom.**

1193.    SPD officers engaged in a widespread practice, and acted under formal CITY face covering policies, of declaring that SPROUTS face covering policies were law by which Plaintiff's entrance to, or remaining in, a public accommodation without a face covering constituted criminal trespass.

**Failure to Train.**

1194.    If not for the discriminatory animus of Ervin, Doe-1, Coomer, McClelland, Parton, and Sullivan against Plaintiff's class, beliefs and the exercise of his First Amendment protected rights, SPD officers would not have arrested Plaintiff on September 11, 2020, nor September 16, 2020.

1195.    The CITY did not properly train Coomer, McClelland, Parton, and Sullivan to prevent discrimination against Plaintiff's class and people with disabilities; people whose beliefs or disability precluded them from being coerced to wear a face covering.

1196.    The CITY's training of its police officers, including Coomer, McClelland, Parton, and Sullivan, did not properly train them to prevent discrimination against people with disabilities.

**2)  *Monell Liability - PCC***

**Policy, Practice or Custom.**

1197.    SPD officers including but not limited to Auderer, Beard, Cruzan, Foy, French, Kiehn, Lemberg, Lentz, Lima, Masterson, Shopay, and Stevens, engaged in a widespread practice, and acted under formal CITY face covering policies, of declaring that PCC face covering policies were law by which Plaintiff's entrance to, or remaining in, a public accommodation without a face covering constituted criminal trespass.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 161 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

**Failure to Train.**

1198.   If not but for the discriminatory animus of Auderer, Beard, Cruzan, Foy, French, Kiehn, Lemberg, Lentz, Lima, Masterson, Shopay, and Stevens against Plaintiff's class, SPD officers would not have threatened, maliciously prosecuted, nor unlawfully imprisoned Plaintiff between September 2020 and March 2021 relating to Plaintiff shopping at PCC.

1199.   CITY of Seattle did not properly train its police officers to prevent discrimination against Plaintiff's class and those with disabilities precluding the wearing of a face covering.

### 3) *Monell Liability – Parental Rights*

**Policy, Practice or Custom.**

1200.   SPD officers, including Alden, Barton, Beaty, Bissell, Byrd, Christiansen, Hogg, Hughes, Ladd, O'Dell, Wallace, Weiss, Willenberg, and Williams engaged in a widespread custom or practice and acted under a formal policy of (1) refusing to accept, consider, or act upon Plaintiff's sworn complaints and evidence as a firsthand victim witness; (2) allowing, enabling, facilitating, or perpetrating criminal law violations of CITY officials and private individual defendants in joint action with state actors.

**Final Policymaker.**

1201.   SPD Chief Adrian Diaz ("Diaz") acted as the final policymaker for the police officers under his command directing the expressly adopted policy or widespread practices of denying Plaintiff the equal protection of the laws detailed above.

**Failure to Train.**

1202.   If not for the discriminatory animus of Diaz and SPD officers against Plaintiff's class, SPD officers would not have denied Plaintiff the equal protection of the laws by (1) refusing to accept, consider, or act upon Plaintiff's sworn complaints and evidence as a firsthand

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 162 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

victim witness; (2) allowing, enabling, facilitating, or perpetrating criminal law violations of CITY officials and private individual defendants in joint action with state actors.

1203.   1300.   The CITY did not properly train its police officers, including Alden, Barton, Beaty, Bissell, Byrd, Christiansen, Diaz, Hogg, Hughes, Ladd, O'Dell, Wallace, Weiss, Willenberg, and Williams, to prevent discrimination against Plaintiff's class.

### 4)  Racketeering Activity

**Kidnapping.**

1204.   SPD officers armed with deadly weapons acted, or threatened to act, in joint action with CITY employees, PCC employees, SPROUTS employees, and private individuals, to seize, confine, or carry away and hold Plaintiff under color of law. *See* RCW 9A.56.120; .130.

**Robbery.**

1205.   SPD officers armed with deadly weapons acted, or threatened to act, in joint action with CITY employees, PCC employees, SPROUTS employees, and private individuals, to unlawfully take Plaintiff's property against his will by the use or threatened use of immediate force, or fear of injury to Plaintiff. *See* RCW 9A.56.200.

**Witness Tampering.**

1206.   SPD officers armed with deadly weapons acted, or threatened to act, in joint action with CITY employees, PCC employees, SPROUTS employees, and private individuals, to intentionally harass Plaintiff and thereby hindered, delayed, prevented, or dissuaded Plaintiff, his family, or his friends, from: (1) attending an official proceeding; (2) reporting the possible commission of a federal offense; (3) seeking the arrest of defendants; or (4) causing a criminal prosecution to be sought.

**Witness Retaliation.**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 163 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1207.   SPD officers armed with deadly weapons with the intent to retaliate knowingly acted, or threatened to act, in joint action with CITY employees, PCC employees, and SPROUTS employees, and private individuals, to harm Plaintiff's livelihood for his providing truthful information to a law enforcement officer relating to the possible commission of a federal offense.

1208.   The predicate acts of kidnapping, robbery, witness tampering, or witness retaliation involved interstate commerce; that is, the above acts prevented Plaintiff from using his credit cards to purchase tens of thousands of dollars of goods at the aforementioned stores.

## N. OFFICE OF POLICE ACCOUNTABILITY

### 1) Case No. 2020OPA-0614

1209.   The Seattle Office of Police Accountability found that all actions on September 11, 2020, relating to SPD Incident #2020-264905 by Coomer, Jones, McClelland, Parton, and Sullivan were "lawful and proper." (*See* Exhibit P65).

### 2) Case No. 2020OPA-0650

1210.   The Seattle Office of Police Accountability found that all actions on September 16, 2020, relating to SPD Incident #2020-268834 by Alpaugh, Coomer, Hughes, Jones, McElroy, McLelland, Parton, and Sullivan were "lawful and proper." (*See* Exhibit P66).

### 3) Case No. 2020OPA-0767

1211.   The Seattle Office of Police Accountability found that all actions on December 16-17, 2020, relating to SPD Incident #2020-346226 by Auderer and Foy were "lawful and proper." (*See* Exhibit P67).

### 4) Case No. 2022OPA-0182

1212.   The Seattle Office of Police Accountability completed their investigation regarding the arrest of Plaintiff on September 3, 2021, more than five months ago. The OPA

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
    **Page 164 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

investigation determined that all actions by Ladd and Willenberg were lawful. To date, no report has been made available to Plaintiff.

1213.   Upon Plaintiff's information and belief, personnel within the OPA, or with oversight of the OPA, knowingly and willfully whitewashed the investigations of Plaintiff's OPA complaints to indemnify C19 Enterprise associates.

**O. WASHINGTON STATE PATROL**

1214.   On, or about, November 20, 2020, Plaintiff and several acquaintances affiliated with the Washington Human Rights Commission ("WHRC") attended a Zoom meeting with Lewis County Sheriff Rob Snaza regarding the unconstitutional enforcement of mask mandates in places of public accommodation.

1215.   Sheriff Snaza stated that getting more than a handful of Washington state sheriffs to support the signing of a public statement by sheriffs opposing the unlawful enforcement of mask mandates in public accommodations would prevent Sheriff Snaza from being singled out for targeted attacks by news media and state officials.

1216.   On, or around, November 24, 2020, Plaintiff received an email from a WHRC member with a draft letter for Sheriff Snaza to sign; however, Plaintiff did not realize that it was simply a draft letter. (See Exhibit P68A)

1217.   On November 24, 2020, at 6:15pm, Plaintiff emailed SPD officers the draft letter. (See Exhibit P68B).

1218.   Within approximately thirty minutes, Plaintiff was informed by a friend that the document was only a *draft* letter and had not yet been approved and signed by Sheriff Snaza.

1219.   On November 24, 2020, at 6:55pm, Plaintiff emailed the SPD officers back to inform them of Plaintiff's mistaken understanding, writing, "My mistake. The Sheriff hasn't

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 165 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

actually signed that yet.  We're working on revising the draft for him (and other County Sheriffs of Washington) to sign." (See Exhibit P68C).

1220.    On February 25, 2021, Washington State Patrol ("WSP") Detective Michael Huhta #230 ("Huhta") obtained a search warrant, WSP# 21-000390, for Plaintiff's Gmail account. (See Exhibit P69).

1221.    The warrant alleged that good cause had been shown Clark County Superior Court Judge Daniel Stahnke that Plaintiff had violated RCW 9A.60.020 Forgery, a class C felony.

1222.    On, or around, February 26, 2021, Huhta telephoned Plaintiff, alleging that someone had posted the Sheriff Snaza draft letter to Facebook; Plaintiff was suspected of felony forgery.

1223.    Plaintiff denied any knowledge of Huhta's allegations and offered to meet Huhta in person and provide his laptop and phones for Huhta's inspection to prove that Plaintiff was innocent.

1224.    Plaintiff informed Huhta that he hadn't even used Facebook during the time period in question.  Huhta declined Plaintiff's offer.

1225.    For two-and-one-half years after obtaining WSP# 21-000390, Huhta did not close the investigation.

1226.    Huhta repeatedly told Plaintiff for the previous year-and-one-half that Huhta was just been "too busy" to file the paperwork to close the investigation; as such, all record requests seeking to obtain any information related to the investigation have been denied.

1227.    Huhta emailed Plaintiff on August 14, 2023, stating that the "report is completed," for the investigation which was initiated specific to the letter from the Lewis County Prosecuting Attorney. (See Exhibit P70).

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 166 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1228. To date, the case file which Huhta stated would be made available to Plaintiff has not been provided.

1229. Obtaining the search warrant, and the refusal to close the meritless investigation, were acts taken to chill Plaintiff's speech on behalf of, or at the behest of, Inslee or unknown associates-in-fact of Inslee within the C19 Enterprise.

**P. SUPREME COURT OF WASHINGTON**

**General Orders.**

1230. Chief Justice Steven Gonzalez ("Gonzalez") signed numerous general orders directing the administrative operations of Washington courts regarding Covidian policies.

1231. Chief Justice Gonzalez conspicuously ignored those with religious beliefs precluding them from being injected with "covid vaccines" or being coerced to wear a face covering.

> WHEREAS, COVID-19 vaccines are effective in reducing infection and serious disease, widespread vaccination is the primary means we have as a state to protect everyone, including persons who cannot be vaccinated for medical reasons, youth who are not eligible to receive a vaccine, immunocompromised individuals, and vulnerable persons from COVID-19 infections;

1232. Plaintiff has been denied access to the Supreme Court of Washington, a public entity, unless he submitted to compulsory face covering orders issued by the Chief Justices since 2020.

1233. The coercive measures of the Supreme Court's orders interfered with Plaintiff exercising his right to enter state and municipal courts, protected by the ADA, the Civil Rights Act of 1964, and Wash. Const. art I §§ 10; 22.

**Americans with Disabilities Act.**

1234. Directly or indirectly, through Order 25700-B-697, including amendments,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 167 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    Gonzalez utilized methods of administration for Washington courts that perpetuated the

2    discrimination of state courts subject to the common administrative control of Washington

3    Supreme Court orders as agencies of the same state against Plaintiff's class. (*See* Exhibit P25).

4    1235.   28 C.F.R. § 35.134(b) states that "No private or public entity shall coerce,

5    intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on

6    account of his or her having exercised or enjoyed, or on account of his or her having aided or

7    encouraged any other individual in the exercise or enjoyment of, any right granted or protected

8    by the Act or this part."

9

10   **Habeas Corpus.**

11   1236.   On, or about, May 4, 2023, Plaintiff e-filed his Verified Petition for Writ of

12   Habeas Corpus at Common Law, case no. 101964-5, along with approximately 700 pages of

13   exhibits, including supporting affidavits, (*See* Exhibit P73A; P73B).

14   1237.   Plaintiff was denied the right to file in person, pursuant to Washington Supreme

15   Court Order 25700-B-697, signed by Gonzalez on October 27, 2022.

16

17   1238.   On May 8, 2023, Commissioner Michael E. Thurston dismissed Plaintiff's

18   petition for habeas corpus without granting a writ, issuing Ruling Dismissing Petition pursuant

19   to RAP 16.2(d), (*See* Exhibit P74).

20   1239.   Thurston stated, "The petition is packed with factual ***allegations*** but ***there are no***

21   ***supporting exhibits.*** The petition cites documents apparently contained in lower court files but

22   ***none of those have been provided*** here.  Accordingly, here is no way for this court to assess the

23   veracity of ***petitioner's bald allegations***."

24   1240.   Plaintiff's petition was approximately ninety pages of verified statements, ***sworn***

25   ***under penalty of perjury and notarized.***  Plaintiff's exhibits included more than a half dozen

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 168 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  additional notarized affidavits, including one signed by A.R.W. and witnessed by three adults.

2  1241.    Plaintiff emailed the clerk to confirm that Thurston had been provided the 700

3  pages of exhibits filed by Plaintiff with his petition.

4  1242.    Plaintiff included in his email the filing receipt showing that the exhibits had been

5  filed with the petition.

6
7  1243.    The clerk confirmed that she had provided Thurston with all Plaintiff exhibits.

8  (*See* Exhibit P75).

9  1244.    RCW 7.36.040 states that "…upon application ***the writ shall be granted*** without

10  delay.

11  1245.    Plaintiff pleaded numerous federal questions before the Washington Supreme

12  Court.

13  1246.    RCW 7.36.140 states that In the consideration of any petition for a writ of habeas

14  corpus by the supreme court or the court of appeals, whether in an original proceeding or upon

15  an appeal, if any federal question shall be presented by the pleadings, ***it shall be the duty*** of the

16  supreme court to determine in its opinion whether or not the petitioner has been denied a right

17  guaranteed by the Constitution of the United States."

18
19  1247.    Thurston implicitly acknowledged that via the RAP, Washington effectively

20  suspended *habeas corpus* by replacing the Great Writ with "personal restraint petitions."

21  1248.    Under RAP 16.4(d), a personal restraint petition offers Plaintiff no remedy at law

22  because of the fact that the unlawful restraint upon Plaintiff is ***civil***.

23  1249.    Under RAP 16.4 the Washington Court of Appeals will not hear a civil personal

24  restraint petition, and the Washington Supreme Court will only hear a death row personal

25  restraint petition.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 169 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1250.   As such, the RAP created a legal cul-de-sac whereby neither the Court of Appeals, nor the Washington Supreme Court, would hear a personal restraint petition regarding Plaintiff's civil imprisonment.

1251.   Aware of the denial of remedy under Washington's "personal restraint petition", Plaintiff explicitly detailed this in his *habeas* petition.

1252.   Plaintiff has had no remedy available to him regarding the unlawful restraint from his son, either civilly or criminally, despite two years of ongoing efforts; *Ubi jus, ibi remedium*. **Where there is a wrong, there is a remedy.**

1253.   Thurston did not comply with statutory mandates of RCW 7.36.040 and RCW 7.36.140.

1254.   Thurston acted *ultra vires* to deny Plaintiff's right to have the authority examined by which Plaintiff had been imprisoned under civil procedure, restrained from A.R.W.

1255.   Statutory violations by a public official violate RCW 9A.80.010.

## Q. ADA TITLE II

1256.   Plaintiff had a right to be free from discrimination, protected by the Americans with Disabilities Act ("ADA").

**State Public Entities.**

1257.   The Supreme Court of Washington, King County Superior Court, Seattle Municipal Court, and Jane Addams Middle School are "public entities" under Title II of the ADA, pursuant to 28 C.F.R. § 35.

1258.   28 C.F.R. § 35.134(b) prohibits a public entity from discrimination against someone with a physical or mental impairment that substantially limits one or more of the major life activities of such individual; and (iii) being regarded as having such an impairment as

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 170 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

described in paragraph (f) of 28 C.F.R. § 35.105.

1259.   Plaintiff informed defendants and their associates-in-fact that he had a disability precluding discriminatory exclusion from public entities.

1260.   Defendants and their associates-in-fact regarded Plaintiff as having an impairment and subjected him to denial of service because of his perceived impairment.

1261.   Defendants and their associates-in-fact considered Plaintiff to be a direct and imminent threat because Plaintiff's disability precluded him from wearing a face covering.

1262.   Defendants and their associates-in-fact considered Plaintiff to be a direct and imminent threat because they considered Plaintiff to have a dangerous physical condition; that is, because Plaintiff had not injected his body with a "covid vaccine" defendants regarding Plaintiff as having an impairment.

1263.   Defendants and their associates-in-fact considered Plaintiff to be a direct and imminent threat because they perceived him as being an "asymptomatic carrier" of the SARS-CoV-2 virus for nearly three years.

1264.   Defendants and their associates-in-fact demonstrated by their consistently discriminatory conduct over nearly three years, that they did not perceive or regard Plaintiff's impairment as either "transitory" or "minor."

## R. UNITED STATES DISTRICT COURT

### 1) General Orders

1265.   As acting Chief Justice, Ricardo S. Martinez ("Martinez") and David G. Estudillo ("Estudillo") issued general administrative orders for the Seattle U.S. District Courthouse.

1266.   At all relevant times herein, Martinez and Estudillo were officials in their individual capacity acting under color of law as the government. *See* Pub. L. 103-141, 103d

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 171 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Congress; 42 U.S.C. §§ 2000bb-1(c), 2000bb-2(1), Religious Freedom Restoration Act of 1993 ("RFRA").

1267.   Martinez issued GO 07-22, and Estudillo issued GO 12-22 and GO 04-23.

1268.   The general administrative orders issued by Martinez and Estudillo were cited by courthouse employees between June 2022 and April 2023 to repeatedly deny Plaintiff entrance into the U.S. District Courthouse without a face covering.

*2) Plaintiff's Federal Habeas Corpus*

1269.   On May 22, 2023, Plaintiff filed case no. 2:23-cv-00751-RAJ, a verified petition for writ of habeas corpus at common law, assigned to judge Richard A. Jones ("Jones").

1270.   Plaintiff's petition was approximately ninety pages of verified statements, sworn under penalty of perjury and notarized.

1271.   Plaintiff's exhibits included more than a half dozen additional notarized affidavits, including one signed by A.R.W. and witnessed by three adults.

1272.   Plaintiff provided the Jones Court with unrebuttable evidence of felony perjury proving the family court did not have subject matter jurisdiction.

1273.   Plaintiff provided the Jones Court unrebuttable evidence that no valid "child custody" proceeding ever occurred.

1274.   Plaintiff pleaded numerous federal questions before the Jones Court, including violations of the First Amendment by Cliber, Keenan, and Owen; violations which unlawfully imprisoned Plaintiff and which subjected Plaintiff to false arrest, malicious prosecutions, $300,000 in warrants, and the threat of immediate, irreparable harm up to, and including, death.

1275.   Plaintiff pleaded in his petition that the 28 U.S.C. § 1331 mandated the Jones Court to adjudicate the federal questions presented.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 172 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1276.   Plaintiff quoted the opinion of J. GORSUCH in the Supreme Court's reversal of the 9th Circuit decision in *Axon Enterprise, Inc. v. FTC*, No. 21–86 and 21-1239, 986 F. 3d 1173 which stated, in part, "Today, §1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Not *may* have jurisdiction, but *shall*. Not *some* civil actions arising under federal law, but *all*." (Emphasis J. GORSUCH).

1277.   On June 12, 2023, the Jones Court dismissed *sua sponte* Plaintiff's petition to have the authority examined by which Plaintiff had been imprisoned under civil procedure, restrained from A.R.W., by asserting that federal courts (1) have no jurisdiction over child custody issues; and (2) federal habeas corpus has never been available to challenge parental rights or child custody.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT

**A. PARTIES**

1278.   Named parties to the following federal questions are Washington State Attorney General Robert Ferguson, Seattle CITY Attorney Ann Davison, and named defendants.

**B. JURISDICTION**

1279.   Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1280.   The questions in controversy are necessarily of a "justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). Affirming or denying

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 173 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

the following federal questions will economically terminate controversies within the instant case.

1281.   **1ST Federal Question:**  Does a Seattle Municipal Court Judge act *ultra vires* in denying a defendant's right to appear in person, guaranteed by Washington Constitution Article I § 22, because the defendant does not wear a face covering?

1282.   **2ND Federal Question** Does CITY OF SEATTLE, pursuant to Wash. Const. art II § 18; 22; 32; III 12; and art XI §11, have the power to enact *laws* with criminal jurisdiction over men and women who are not officials, officers, agents, members, servants, employees, or attorneys of the CITY, nor otherwise in contractual privity with the CITY?

1283.   **3RD Federal Question:** Is SEATTLE MUNICIPAL COURT absent *in personam* jurisdiction to prosecute Plaintiff for an alleged violation of the Seattle Municipal Code if the CITY does not provide legal service of process pursuant to RCW 35.20.270?

1284.   **4TH Federal Question:**  Does a King County Superior Court judge act *ultra vires* by denying Plaintiff's right to appear in person, guaranteed by Wash. Const. art I §§ 10; 22, because Plaintiff does not wear a face covering?

1285.   **5TH Federal Question:**  Absent the consent of the mother and father, can a family court assert subject matter jurisdiction over the private family affairs of a mother and father who have never been in contractual privity with the state through marriage, divorce, domestic partnership, or annulment?

1286.   **6TH Federal Question:**  Could Seattle Public Schools covid policies exempt Booker from compliance with RCW 28A.605.020; .030 regarding unmasked parents who had not received a "covid vaccine"?

1287.   **7TH Federal Question:**  Could legally informed consent be provided to, and obtained from, 12-year-old A.R.W. for the injection of Pfizer BioNTech 162b2 gene therapy

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 174 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

treatement?

1288.   **8TH Federal Question:**  Does a King County Superior Court judge have the delegated authority to criminalize legal service of process made on behalf of Plaintiff, pursuant to Fed.R.Civ.P. 4, by and through the conditions of a restraining order?

1289.   **9TH Federal Question:**  Did the above actions by William H. Gates, III constitute joint action with state actors pursuant to 42 U.S.C. §§ 1983; 1985(2)(3)?

1290.   **10TH Federal Question:**  As a non-profit foundation, is the Bill and Melinda Gates Foundation a "person" under 18 U.S.C. § 1961(3) subject to 18 U.S.C. § 1962(d)?

1291.   **11TH Federal Question:**  Did RCW 7.36.040 mandate Rosen grant Plaintiff's writ of habeas corpus upon application?

1292.   **12TH Federal Question:**  Did RCW 7.36.040; .140 mandate Thurston grant Plaintiff's writ of habeas corpus, which pled federal questions, upon application?

1293.   **13TH Federal Question:**  Did the Washington Rules of Appellate Procedure, by and through the "personal restraint petition," suspend the writ of *habeas corpus* for those, such as Plaintiff, unlawfully imprisoned under civil procedure?

1294.   **14TH Federal Question:**  Was the *sua sponte* dismissal of Plaintiff's petition for writ of *habeas corpus*, which sought to have the authority examined by which Plaintiff had been unlawfully imprisoned under civil procedure, and which pled integral federal questions under 28 USC § 1331, an *ultra vires* act by Judge Richard A. Jones?

1295.   **15TH Federal Question:**  Does the 1871 Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, Session I, Ch. 22 authorize the 9th Circuit to adjudicate Plaintiff's claims under 42 USC § 1983 when the facts evidence a prima facie case that judges of the U.S. District Court for the Western District of Washington acted,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 175 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

individually and in concert, to allow, enable, facilitate, or perpetrate violations of constitutional prohibitions?

1296.   **16TH Federal Question:**  Is it presumed unreasonable for a public school official to correct a child by requiring the child to wear a facemask, thereby interfering with the child's breathing pursuant to RCW 9A.16.110(4)?

1297.   **17TH Federal Question:**  Was Governor Inslee lawfully delegated the authority to endorse, denounce, or advise Washingtonians regarding Pfizer BioNTech 162b2 gene therapy treatments?

### *Preamble to Claims for Damages*

1298.   It is a foregone conclusion that the doctrines of prosecutorial and judicial immunity will be raised, along with qualified immunity, as affirmative defenses intended to indemnify public servants for their acts violative of constitutional prohibitions; that is, the position of public official defendants is that they are above the law; anathema to equality under the law.

1299.   The 1871 Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, Session I, Ch. 22 was passed to specifically address such hubris. 1399. Plaintiff's natural rights, granted by his Creator, are protected from infringement by the federal and state constitutions; that is, Plaintiff's rights are protected by the supreme law of the land.

1300.   Doctrines, codes, regulations, case law, and administrative law, are subordinate to enacted legislative laws, which are themselves subordinate to the state and federal constitutions. *See Marbury v. Madison,* 5 U.S. 1 Cranch 137 137 (1803).

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 176 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1301.   The doctrines of absolute judicial and prosecutorial immunity are subordinate to Plaintiff's natural rights, rights prohibited from infringement by the United States Constitution and Washington Constitution.

1302.   Plaintiff's inalienable rights were clearly established; that is, they were sufficiently clear that a reasonable official would understand that what he was doing violated those rights because, in light of preexisting law, the unlawfulness of the officials' conduct was reasonably and objectively apparent.

1303.   As detailed above, Plaintiff duly and repeatedly informed public officials of the law to ensure that no public official could later claim ignorance thereof.

1304.   A prohibition without penalty is not a prohibition; for example, the Eighth Amendment prohibition against unreasonable bail would be meaningless if the doctrine of absolute judicial immunity indemnified a judge from acts violative of the Eighth Amendment.

1305.   The state has no power to impart to its officer immunity from responsibility to the supreme authority of the United States. *See Ex Parte Young,* 209 U.S. 123, 124 (1908).

**SECOND CAUSE OF ACTION**
SEPARATION OF POWERS

**42 U.S.C. § 1983**

1306.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1307.   Defendants named herein this second cause of action include Durkan, Estudillo, Gonzalez, Gregory, Inslee, Martinez, Oishi, and Shah ("Defendants").

1308.   Administrative face covering and "covid vaccine" orders were not sanctioned by the Washington legislature.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1309.   Defendants were not delegated the authority to endorse, denounce, or advise "covid vaccines" and face coverings to the general public as a condition of entering a courthouse, courtroom, public building, or public accommodation.

1310.   Defendants knew, or should have known, that all citizens of Washington have the clearly established right to protection under Wash. Const. art I §§ 1; 3; 4; 5; 7; 11; 30; to protection under the separation of powers and nondelegation doctrines; and to protection under the First, Fourth, and Fourteenth Amendments.

1311.   The nondelegation doctrine constrains a legislature's ability to delegate its legislative authority to executive agencies.

1312.   Prescribing mandatory injections of "covid vaccines," or mandating proof of such injection, or mandating the wearing of a face covering, in order to "control" the spread of "SARS-CoV-2" can only be taken to mean having to undergo medical treatment to prevent the "Covid-19" disease.

1313.   Defendants knew, or should have known, that Washington law expressly forbids the Department of Health, or any of its employees, agents, or representatives, from interfering with an individual's selection of treatment or religious practice, (*See* RCW 70.28.031(i)), and that the authority to require a face covering was limited to where subject individuals were themselves employed.  *See* RCW 49.17.485(1).

1314.   Procedural due process is clearly established under State law, where the Public Health Director or the local public health administrator must issue a written order to the person suspected of having a communicable disease; the written order must follow specific procedure; a medical examination must be carried out by a local health officer or a Washington-licensed physician; a written report must be issued; the public health administrator may issue an order

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 178 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

requiring prescribed treatment; the person may refuse the medication or other treatment; the public health administrator may order isolation or quarantine; and if the person refuses to comply, a court order for isolation or quarantine is required.

### Governor Inslee.

1315.    Under Wash. Const. art II, § 42 Governmental Continuity During Emergency Periods, Inslee was not granted emergency power by which to lawfully impose face covering and "covid vaccine" mandates on the general public, directly or indirectly.

1316.    Inslee was not delegated authority to violate the separation of powers and nondelegation doctrines by which he could delegate power to an executive or judicial branch officer that Inslee himself was not first delegated pursuant to constitutional limitations.

1317.    Inslee's covid-19 proclamations were based upon improper motives; namely to wrest legislative power to thereby coerce and control the general public indefinitely.  Such acts by Inslee cannot be reasonably characterized as acting in good faith and were done with callous disregard for Plaintiff's rights.

1318.    Inslee is responsible and thereby liable as one of the primary directors of the series of events which occurred after he issued covid-19 proclamations, which resulted in the constitutional injuries which Plaintiff and others suffered as a proximate result.

### Secretary of Health Shah.

1319.    It is well established law that agencies of state government are controlled by, and derive their powers from, acts of the legislature, except as provided in the constitution.

1320.    Shah's power to approve and implement Department of Health administrative rules was derived from Shah's position as Secretary of Health for the Washington State Department of Health.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 179 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1321.   State laws governing the Department of Health's statutory authority, as well as the authority of the Secretary of Health, are clearly laid out under Washington laws.

1322.   The face covering and "covid vaccine" orders including, but not limited to, 20-03.1 through 20-03.11, were not sanctioned by the Washington Legislature.

1323.   By allowing, enabling, facilitating, or perpetrating the circumvention of due process procedures by or through his orders, Shah exhibited malicious intent to deprive Plaintiff's class of their rights.

1324.   No reasonably competent Secretary of Health, or official under their directive, could have believed that the orders, tweets, or press statements requiring the wearing of face coverings or the injection of "covid vaccines" constituted a law granting Inslee or Shah the authority to promulgate administrative rules for the general public.

**U.S. District Court.**

1325.   Chief Justices Martinez and Estudillo could not be so legally ignorant, nor mentally incompetent, to believe that administrative orders from Inslee or Shah, or CDC guidelines, authorized Martinez and Estudillo to deny Plaintiff's class the right to enter the federal courthouse in Seattle without a face covering.

1326.   By allowing, enabling, facilitating, or perpetrating the enforcement of administrative orders GO 07-22, and Martinez and Estudillo acted to deny or burden the rights, privileges, or immunities of Plaintiff's class, secured by federal law and protected by Article I, §§ 10; 22 of the Washington Constitution and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

**Supreme Court of Washington.**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1327.   Chief Justice Gonzalez ("Gonzalez") could not be so legally ignorant, nor mentally incompetent, to believe that administrative orders from Inslee or Shah, or CDC guidelines, authorized Gonzalez to deny Plaintiff's class the right to enter the Supreme Court of Washington without a face covering.

1328.   By allowing, enabling, facilitating, or perpetrating the enforcement of administrative orders GO 07-22 Gonzalez acted to deny or burden the rights, privileges, or immunities of Plaintiff's class, secured by federal law and protected by Article I, §§ 10; 22 of the Washington Constitution and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

### King County Superior Court.

1329.   Chief Judges Patrick Oishi and James Rogers could not be so legally ignorant, nor mentally incompetent, to believe that administrative orders from Inslee or Shah, or CDC guidelines, authorized them to deny Plaintiff's class the right to enter the Supreme Court of Washington without a face covering.

1330.   By allowing, enabling, facilitating, or perpetrating the enforcement of administrative Emergency Orders #19; 32; 36; and 37, Oishi and Rogers acted to deny or burden the rights, privileges, or immunities of Plaintiff's class, secured by federal law and protected by Article I, §§ 10; 22 of the Washington Constitution and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

### Seattle Municipal Court.

1331.   Durkan and Presiding Judge Willie Gregory could not be so legally ignorant, nor mentally incompetent, to believe that administrative orders from Inslee or Shah, or CDC

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 181 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

guidelines, authorized Durkan and Gregory to deny Plaintiff's class the right to enter Seattle Municipal Court courtrooms without a face covering.

1332.   By allowing, enabling, facilitating, or perpetrating the enforcement of general administrative orders including, but not limited to, GAO No. 2020-13, Durkan and Gregory acted to deny or burden the rights, privileges, or immunities of Plaintiff's class, secured by federal law and protected by Article I, §§ 10; 22 of the Washington Constitution and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

1333.   The general administrative orders of Durkan, Estudillo, Inslee, Gonzalez, Gregory, Martinez, Oishi, Rogers, and Shah demonstrated a callous indifference to the rights of Plaintiff's class who have been harmed by the execution of said orders.

1334.   The irreparable harm and damages to Plaintiff were foreseeable as a direct and proximate result of the administrative orders for which Plaintiff is entitled to recover.

## THIRD CAUSE OF ACTION
### VIOLATION OF FIRST AMENDMENT

**Right to Freedom of Speech and Expression**
**Retaliation**
**42 U.S.C. § 1983**

1335.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1336.   In this third cause of action, defendants named herein this second cause of action include CITY OF SEATTLE, Admon, Auderer, Booker, Brier, Cliber, Coomer, Cook, Crawford-Willis, Durkan, Ervin, Ferguson, Franklin-Bihary, Fox, Foy, Goslin, Gregory, Hermsen, Inslee, Keenan, Lentz, Lerman, Lynch, MacDonald, Marinella, Moore, Outland, Owen, Rekofke, Russ, Shah, Wallace, and Widlan, ("Defendants").

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 182 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1337.    Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against restricting or denying Plaintiff's right to freedom of speech and expression without retaliation.

1338.    State-compelled segregation in a court of justice is a manifest violation of the States duty to deny no one the equal protection of its laws.

1339.    By punishing or threatening to punish Plaintiff's class for expressing views regarding his beliefs, discrimination, disability, and civil rights, Defendants, CITY prosecutors, and police have retaliated and are retaliating against Plaintiff for exercising his First Amendment rights.

1340.    When Plaintiff communicated his views relating to his beliefs, discrimination, disability, and civil rights, he was speaking on a matter of public concern, engaging in speech related to public health, discrimination, diversity, equity, and inclusivity, and engaging in expression the First Amendment protects.

1341.    Plaintiff, in discussing matters of public concern in the context of face coverings, discrimination, disabilities, and civil rights, outweighed Defendants' interest in the administration and provision of services to the public.

1342.    Plaintiff's speech on matters of public concern in the context of face coverings, discrimination, disabilities, and civil rights, never prevented Defendants, CITY attorneys, nor police from the efficient administration or provision of services to the public (or even threatened to do so).

1343.    Defendants' policies, orders, their enforcement of those policies, and their threatened future enforcement of those policies would deter a person of ordinary firmness from exercising his right to free speech in the future.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  Page 183 of 280

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1344.   Defendants, CITY attorneys, and police enforced policies and orders against Plaintiff at least in part because of the views he has expressed on matters of public concern in the context of public health, face coverings, discrimination, disabilities, and civil rights; expression that the First Amendment protects.

1345.   The conduct of Defendants, CITY attorneys, and police was not objectively reasonable.

1346.   Defendants, by or through CITY attorneys and police, subjected Plaintiff to punishment, and threatened to do so again in the future, due to the content and viewpoint of Plaintiff's speech.

1347.   Defendants' policies, orders, and the enforcement of those policies under color of law violated Plaintiff's right to free speech as guaranteed by the First Amendment to the United Constitution.

1348.   Defendants, their officers, or individuals in joint action with state actors, did affirmative acts, participated in another's affirmative acts, or omitted to perform an act which he or she was legally required to do which caused, or set in motion, retaliation under color of law against Plaintiff for the exercise of his free speech and expression.

1349.   Covid policies and associated orders and actions by Defendants, CITY attorneys, and police were not narrowly tailored to serve a compelling state interest, and they burdened Plaintiff's fundamental rights.

1350.   A municipality has no immunity from liability under 42 U.SC. § 1983 flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1351.   The conduct of Defendants, CITY prosecutors, and police conformed to official policy, custom, or practice of the CITY regarding free speech and expression retaliation.

1352.   The conduct of Defendants, CITY prosecutors, and police conformed to the final policies of Mayor Jenny Durkan in her role as final policymaker for the CITY regarding free speech and expression retaliation.

1353.   The CITY failed to properly train its judges, prosecutors, and police officers regarding free speech and expression retaliation.

**State Actors.**

1354.   Through the Fourteenth Amendment, federal court jurisdiction extends to intrude upon the province of the Eleventh Amendment.

1355.   For the purposes of Plaintiff's claims under 42 U.S.C. § 1983, Washington State officials, King County officials, the CITY, municipal officials, and private individuals in joint action with state actors are "persons."

1356.   The Civil Rights Act of 1866, and its 1870 and 1871 amendments, contain the triad of malfeasance, misfeasance, and non-feasance which directly pertains to offices that exceed the limitations set therein.  State actors, and individuals in joint action with state actors, are not immune from liability by claiming the sovereign state followed guidance, recommendations, or information from federal agencies.

1357.   When an individual, acting under the assumed authority of a State, as one of its officers, and under color of its laws, comes into conflict with the superior authority of a valid law of the United States, he is stripped of his representative character, and subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 185 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1358.   The conduct of CITY judges, prosecutors and police conformed to official policy, or widespread custom or practice, of the CITY regarding freedom of speech and expression.

1359.   The conduct of CITY judges, prosecutors and police conformed to the final policies of Mayor Jenny Durkan in her role as final policymaker for the CITY regarding freedom of speech and expression.

1360.   The conduct of CITY prosecutors conformed to the final policies of Holmes and Davison in their roles as final policymakers for the CITY Attorney's Office.

1361.   The CITY failed to properly train its mayor, judges, prosecutors, and police officers regarding freedom of speech and expression.

1362.   As a direct, proximate, and foreseeable result of Defendants' acts, their acts as final policymakers for the CITY, the CITY's policy or widespread practices, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**FOURTH CAUSE OF ACTION**
VIOLATION OF FIRST AMENDMENT

**Right to Freedom of Speech**
**Content & Viewpoint Discrimination**
**42 U.S.C. § 1983**

1363.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1364.   In this fourth cause of action, defendants named herein include: CITY OF SEATTLE, Admon, Auderer, Booker, Brier, Cliber, Coomer, Cook, Crawford-Willis, Durkan, Ervin, Estudillo, Ferguson, Franklin-Bihary, Fox, Foy, Gonzalez, Goslin, Gregory, Hermsen, Inslee, Keenan, Lentz, Lerman, Lynch, MacDonald, Marinella, Martinez, Moore, Oishi, Outland, Owen, Rekofke, Russ, Shah, Wallace, and Widlan ("Defendants").

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 186 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1365.   Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against restricting or denying Plaintiff's right to freedom of speech.

1366.   By directly or indirectly discriminating or threatening to discriminate against Plaintiff's class for expressing his views regarding face coverings, "vaccines," discrimination, disabilities, and civil rights, Defendants engaged in content and/or viewpoint discrimination in violation of the First Amendment.

1367.   Defendants' beliefs, policies, and orders required them to evaluate the content and viewpoint of public expression to determine whether it constituted discrimination or harassment, and whether it created a hostile or threatening environment for Plaintiff.

1368.   Defendants considered the content and viewpoint of Plaintiff's expression when they decided to enforce their policies and orders against him, and they threaten to do so again if he continues to express his views.

1369.   Defendants' beliefs, policies, and orders confer unbridled discretion upon defendants and CITY officials to discriminate based on content or viewpoint.

1370.   Defendants exercised this unbridled discretion when they punished Plaintiff for expressing his views regarding his beliefs, masks, "vaccines," discrimination, disabilities, and civil rights.

1371.   Defendants' beliefs, policies, orders, and their enforcement of those policies and orders are unconstitutionally overbroad because they restricted a significant amount of constitutionally protected speech.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 187 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1372.    The overbreadth of Defendants' policies and orders chilled the speech of Plaintiff, who sought to engage in protected expression in his interactions with private individuals and public officials.

1373.    Plaintiff's expression regarding his beliefs, masks, discrimination, disabilities, and civil rights, was protected by the First Amendment.

1374.    By threatening, arresting, imprisoning, prosecuting, discriminating against, and violating the rights of Plaintiff, Defendants punished Plaintiff for engaging in expression the First Amendment protects.

1375.    Defendants' polices, orders, and their enforcement of those policies violated Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution.

1376.    The conduct of CITY judges, prosecutors and police conformed to official policy, custom, or practice of the CITY regarding freedom of speech.

1377.    The conduct of CITY judges, prosecutors and police conformed to the final policies of Davison, Durkan, or Holmes in their positions as final policymakers for the CITY.

1378.    The CITY failed to properly train its judges, prosecutors, and police officers regarding freedom of speech.

1379.    As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread practices, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**FIFTH CAUSE OF ACTION**
VIOLATION OF FIRST AMENDMENT

**Right to Free Exercise of Religion**
**42 U.S.C. § 1983**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 188 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1380.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1381.    In this fifth cause of action, Defendants named herein include CITY OF SEATTLE, Admon, Auderer, Booker, Brier, Cliber, Coomer, Cook, Crawford-Willis, Durkan, Ervin, Estudillo, Ferguson, Fox, Foy, Franklin-Bihary, Gonzalez, Goslin, Gregory, Hermsen, Inslee, Keenan, Lentz, Lerman, Lynch, MacDonald, Marinella, Martinez, Moore, Oishi, Outland, Owen, Rekofke, Russ, Shah, Wallace, and Widlan ("Defendants").

1382.    Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against restricting or denying Plaintiff's right to the free exercise of his religious beliefs.

1383.    By punishing and threatening to punish Plaintiff for exercising his sincerely held religious beliefs in the way he expresses his unobstructed face, Defendants have violated and are violating his right to free exercise of religion under the First Amendment.

1384.    Plaintiff's views and expression related to masks and face shields are motivated by his sincerely held religious beliefs, are ways through which he exercises his religious faith, and constitute a central component of his sincerely held religious beliefs.

1385.    Submitting to Defendants' demands that he wear a mask or face shield would require Plaintiff to violate his sincerely held religious beliefs.

1386.    Defendants' policies, orders, and related practices were arbitrary and capricious.

1387.    Defendants' policies, orders, and related practices are neither neutral nor generally applicable but allow Defendants to target religious expression and activities specifically and to express hostility to such expression.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1388. Defendants' policies, orders, and related practices are neither neutral nor generally applicable because they represent a system of individualized assessments.

1389. Defendants' policies, orders, and related practices are underinclusive, prohibiting some expression while leaving unprohibited other expression equally harmful to Defendants' asserted interests.

1390. Defendants' policies, orders, and related practices burdened several of Plaintiff's constitutional rights, including his rights under the First Amendment (e.g., freedom of speech, freedom from retaliation, free exercise of religion, freedom of association, right to petition for redress), the unconstitutional conditions doctrine, and the Fourteenth Amendment (e.g., due process and equal protection).

1391. Defendants violated Plaintiff's right to free exercise of religion when they applied their mask policies and orders to discipline Plaintiff's commitment to his religious beliefs, and they continue to do so by threatening to punish him if he continues to communicate his beliefs, or if he refuses to forego his religious beliefs for the views and beliefs held by Defendants on those subjects that violate his religious beliefs.

1392. Defendants' policies, orders, and their enforcement, violate Plaintiff's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

1393. The conduct of CITY judges, prosecutors and police conformed to official policy, custom, or practice of the CITY regarding the free exercise of religious beliefs.

1394. The conduct of CITY judges, prosecutors and police conformed to the final policies of Mayor Jenny Durkan in her role as final policymaker for the CITY regarding the free exercise of religious beliefs.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 190 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1395.   The conduct of CITY prosecutors conformed to the final policies of Davison and Holmes in their roles as CITY Attorney and final policymakers for the CITY.

1396.   The CITY failed to properly train its judges, prosecutors, and police officers regarding the free exercise of religious beliefs.

1397.   As a direct, proximate, and foreseeable result of Defendants' acts, the final policies of Davison, Durkan or Holmes, the CITY's policy or widespread practices, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## SIXTH CAUSE OF ACTION
## VIOLATION OF FIRST AMENDMENT

### Right of Father-Son Association
### 42 U.S.C. § 1983

1398.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1399.   In this sixth cause of action, defendants named herein include: CITY OF SEATTLE, Admon, Booker, Cliber, Franklin-Bihary, Hermsen, Keenan, Ladd, Lerman, Marinella, Moore, Outland, Owen, Russ, and Wallace ("Defendants").

1400.   Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against restricting or denying Plaintiff's right to associate with his son.

1401.   Defendants had neither valid evidence, legal cause, nor subject matter jurisdiction to restrict or deny Plaintiff's right to associate with A.R.W.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 191 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1402.   The absence of subject matter jurisdiction raised repeatedly by Plaintiff should have terminated the abuses, that is, in absence of proof of jurisdiction over a person and subject matter, the case must be dismissed."

1403.   Keenan, and Moore knowingly and willfully neglected his or her duty as judge; that is, a court has an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.

1404.   Declaring that Plaintiff was a "credible threat" to the "best interests" of A.R.W. was nothing more than a thinly veiled condemnation of Plaintiff's class and beliefs; brazenly void for vagueness and chillingly reminiscent of Orwell's *thought crimes.*

1405.   The "best interest of the child" standard provides "no standard at all because of its vagueness" and uncertainty.

1406.   Defendants treated A.R.W. as a mere creature of the State; that is, they denied Plaintiff's natural right and high duty as father to nurture and direct the destiny of A.R.W.

1407.   Defendants were absent evidence that Plaintiff had not adequately cared for A.R.W. his son's entire life; therefore, there was no reason for the State to inject itself into the private realm of Plaintiff's family to further question the ability of Plaintiff to make the best decisions concerning the rearing of A.R.W.

1408.   Plaintiff has a fundamental constitutional right to rear A.R.W., including the right to determine who shall educate and socialize him.

1409.   Infringement upon, or abrogation of, fundamental rights must undergo strict scrutiny.

1410.   Defendants did not apply strict scrutiny to Plaintiff's fundamental right to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 192 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1411.   So inviolable is Plaintiff's sacred right as father that it is presumed that a fit parent will act in the best interests of his or her child, and no court has ever declared Plaintiff an unfit father.

1412.   The conduct of Defendants and police conformed to the persistently widespread custom or practice of the CITY denying the right of association between Plaintiff and A.R.W. by ignoring evidence of crimes by Cliber, Lerman, and Owen, by refusing to take Plaintiff's complaints as a victim witness, and to thereby persecute and prosecute Plaintiff.

1413.   This persistently widespread custom or practice of CITY judges, prosecutors, and police was the moving force behind the denial of Plaintiff's right of association with A.R.W. and was both causation-in-fact and proximate causation of the violations of Plaintiff's right.

1414.   Davison's acts as final policymaker for the CITY Attorney's Office, directing the expressly adopted official policy or widespread practice of coercing, threatening, arresting, or prosecuting Plaintiff's class, was a direct, proximate, and foreseeable cause of Defendants violating the First Amendment prohibitions against infringement upon Plaintiff's right to associate with A.R.W.

1415.   The CITY failed to properly train its judges, prosecutors, and police officers regarding the right of association between a father and son to prevent CITY officials from denying the right of association between Plaintiff and A.R.W. by ignoring evidence of crimes by Cliber, Hermsen, Lerman, and Owen, by refusing to receive or act upon Plaintiff's complaints as a victim witness, and to thereby unjustly persecute and prosecute Plaintiff.

1416.   Defendants knowingly and willfully acted to allow, enable, facilitate, or perpetrate the violation of First Amendment prohibitions precluding the infringement of Plaintiff's right to associate with A.R.W.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1417.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy, practices or widespread customs, Davison's acts as final policymaker, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### SEVENTH CAUSE OF ACTION
VIOLATION OF FIRST AMENDMENT

**Right to Petition for Redress of Grievances**
**42 U.S.C. § 1983**

1418.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1419.   In this seventh cause of action, defendants named herein include CITY OF SEATTLE, Admon, Auderer, Booker, Brier, Cliber, Cook, Coomer, Crawford-Willis, Durkan, Estudillo, Ferguson, Foy, Franklin-Bihary, Gonzalez, Gregory, Hermsen, Keenan, Lerman, Lynch, Marinella, Martinez, Moore, Oishi, Outland, Owen, Rekofke, Rosen, Russ, Thurston, and Widlan, ("Defendants").

1420.   Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against restricting or denying Plaintiff's right to petition for redress of grievances.

1421.   By denying Plaintiff's right to enter the Seattle U.S. District Court, Estudillo and Martinez violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

1422.   By denying Plaintiff his right to enter the Supreme Court of Washington, Gonzalez violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 194 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2

3

4

1423.   By denying Plaintiff's right to petition for writ of habeas corpus, Rosen and Thurston violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

5

6

7

1424.   By denying Plaintiff his right to appear in courtrooms of King County Superior Court, Ferguson, Keenan, Moore, Oishi, Rekofke, Russ, and Widlan violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

8

9

10

1425.   By holding hearings or trials without Plaintiff, Ferguson, Keenan, Moore, and Widlan violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

11

12

13

14

15

1426.   By consulting, or holding hearings or trials with consideration of, Judicial Information System information regarding Plaintiff, of which Plaintiff had no knowledge of, Franklin-Bihary, Keenan, and Moore violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

16

17

18

1427.   By directly or indirectly acting to deny Plaintiff access to case records from the King County Superior Court clerk's office, Oishi violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

19

20

21

1428.   By forcing Plaintiff to associate with the discriminatory King County Superior Courthouse personnel, Ferguson violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

22

23

24

25

26

1429.   By denying Plaintiff his right to appear in courtrooms of Seattle Municipal Court Crawford-Willis, Gregory, and Lynch violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1430.   By muting or disconnecting Plaintiff from Zoom or WebEx during Seattle Municipal Court hearings, Crawford-Wills, Gregory, and Lynch violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

1431.   By knowingly and willfully violating laws against perjury, in order to deny Plaintiff a fair and impartial adjudication of the facts before the court, Cliber, Hermsen, Lerman, and Owen violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

1432.   By knowingly and willfully allowing, enabling, or facilitating the perjury of an associate, client, witness, or perpetrator, or assisting an associate, client, witness, or perpetrator in order to prevent his or her apprehension, trial, or punishment, Admon, Cliber, Ferguson, Franklin-Bihary, Hermsen, Keenan, MacDonald, Marinella, Outland, Owen, Russ, and Widlan, violated constitutional prohibitions against infringement of Plaintiff's right to petition for redress.

1433.   As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**EIGHTH CAUSE OF ACTION**
VIOLATION OF FIRST AMENDMENT

**Forced Association**
**42 U.S.C. § 1983**

1434.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1435.   In this eighth cause of action, defendants named herein include Admon, Brier, Chess, Cliber, Cook, Crawford-Willis, Franklin-Bihary, Goslin, Gregory, Holloway, Keenan,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 196 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

Lerman, MacDonald, Marinella, Moore, Outland, Owen, Rekofke, Russ, and Widlan ("Defendants").

1436. Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against forced association.

1437. Brier, Cook, Coomer, Ervin, Fox, Goslin, and Lentz attempted to force Plaintiff to associate with InstaCart in order to shop at PCC or SPROUTS.

1438. Crawford-Willis, Ferguson, Gregory, Keenan, Lynch, MacDonald, Marinella, Moore, Outland, Owen, Rekofke, Russ, and Widlan acted to force Plaintiff use Zoom or WebEx to appear in court, thereby violating First Amendment prohibitions against forced association.

1439. Cliber, Franklin-Bihary, Lerman, Keenan, and Owen acted to force Plaintiff to associate with At INDABA visitation facility in order for Plaintiff to have any in person contact with A.R.W. since September 3, 2021, thereby violating First Amendment prohibitions against forced association.

1440. Cliber, Franklin-Bihary, Lerman, Keenan, Moore, and Owen acted to force Plaintiff to associate with King County Superior Court family court officials in order for Plaintiff to have any contact with A.R.W. since September 3, 2021, thereby violating First Amendment prohibitions against forced association.

1441. As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**NINTH CAUSE OF ACTION**
VIOLATION OF 4TH AMENDMENT

Unlawful Search and Seizure
**Medical Exemption Letter**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 197 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1442.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1443.   In this ninth cause of action, defendants named herein include: CITY OF SEATTLE ("CITY"), Crawford-Willis, Durkan, Gregory, Lynch, and MacDonald, ("Defendants").

1444.   Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the Fourth Amendment prohibitions against unlawful search and seizure of Plaintiff's personal effects.

1445.   Defendants acted under color of law demanding Plaintiff obtain and provide a medical exemption letter as a condition of being allowed to enter SMC courtrooms without wearing a face covering.

1446.   Plaintiff had a right to be left alone in his personal affairs and effects; defendants intruded upon Plaintiff's privacy in violation of the fourth Amendment.

1447.   Plaintiff's medical exemption letter was posted on the court's public web portal.

1448.   The disclosure of Plaintiff's private medical information by defendants was non-consensual.

1449.   The disclosure of Plaintiff's private medical information by defendants did not have adequate safeguards to prevent unauthorized disclosure.

1450.   The disclosure of Plaintiff's private medical information by defendants was not expressly authorized by statute, nor was there a public interest in such disclosure.

1451.   Defendants' arbitrary and capricious demand that Plaintiff wear a face covering to enter a courtroom was a denial of Plaintiff's right to due process under color of law.

1452.   Such acts by Defendants were *ultra vires*.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 198 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1453.   The CITY's policy or widespread practice or custom of retaliating against Plaintiff's class for exercising his rights was a direct, proximate, and foreseeable cause of Defendants violating the Fourth Amendment prohibitions against unlawful search and seizure of Plaintiff's personal effects.

1454.   Durkan's acts as final policymaker for the CITY, directing the expressly adopted official policy or widespread practice of coercing and threatening Plaintiff's class for the exercise of his rights, was a direct, proximate, and foreseeable cause of Defendants violating the Fourth Amendment prohibitions against unlawful search and seizure of Plaintiff's personal effects.

1455.   The CITY's failure to train its officers to prevent retaliation against Plaintiff's class for exercising his rights was a direct, proximate, and foreseeable cause of Defendants violating the Fourth Amendment prohibitions against unlawful search and seizure of Plaintiff's personal effects.

1456.   As a direct, proximate, and foreseeable result of the acts by Defendants, the CITY's policy or widespread customs or practices, Durkan's acts as final policymaker, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### TENTH CAUSE OF ACTION
VIOLATION OF 4TH AMENDMENT

Unlawful Search and Seizure
**Warrantless Blood Draw**

1457.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1458.   Through the equal protection clause of the Fourteenth Amendment, Defendant CITY OF SEATTLE ("CITY"), Auderer, and Foy were prohibited from violating the Fourth

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 199 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  Amendment prohibitions against unlawful search and seizure of Plaintiff's blood, by or through

2  its officers.

3      1459.   Daniel Auderer and Corey Foy, SPD officers in the employ of the CITY,

4  intentionally confined Plaintiff without his consent, without lawful privilege, and did so for an

5  appreciable length of time.

6      1460.   Auderer and Foy lacked probable cause to seek a warrant to seize and search

7  Plaintiff's blood.

8      1461.   Evidence that a valid warrant was granted by Judge Mary Lynch was not shown

9

10 to exist.

11     1462.   No exigent circumstances existed to authorize a warrantless blood test as a search

12 incident to arrest.

13     1463.   Without a valid warrant, hospital staff under the express authority of the CITY

14 drew two vials of Plaintiff's blood.

15     1464.   The withdrawal of Plaintiff's blood was unreasonable.

16

17     1465.   The CITY failed to properly train SPD officers, including Auderer and Foy, to

18 prevent the unlawful search and seizure of Plaintiff's blood; said failure was a direct, proximate,

19 and foreseeable cause of the violation of Plaintiff's right to be free from unwarranted searches

20 and seizures.

21     1466.   Durkan's acts as final policymaker for the CITY, directing the expressly adopted

22 official policy or widespread practice of coercing and threatening Plaintiff's class for the exercise

23 of his rights, was a direct, proximate, and foreseeable cause of SPD officers violating the Fourth

24 Amendment prohibitions against unlawful search and seizure of Plaintiff's blood.

25

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 200 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1467.   The CITY's policy or widespread custom or practice of retaliation against Plaintiff was a direct, proximate, and foreseeable cause of the unlawful search and seizure of Plaintiff's blood.

1468.   As a direct, proximate, and foreseeable result of the acts by CITY officials, the CITY's policy or widespread customs or practices, Durkan's acts as final policymaker, and the CITY's failure to train, and the acts of Auderer and Foy Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## ELEVENTH CAUSE OF ACTION
VIOLATION OF 8TH AMENDMENT

### Excessive Bail, Warrants & Punishments - SMC

1469.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1470.   In this eleventh cause of action, Defendants named herein include CITY OF SEATTLE, Brier, Cook, Crawford-Willis, Gregory, Lynch, MacDonald, Outland, ("Defendants").

1471.   Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from imposing excessive bail, warrants, and cruel punishments upon Plaintiff in violation of the Eighth Amendment; similarly, Wash. Const. art I § 14 states, "Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted.

1472.   The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 201 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1473.   Defendants' conduct was the actionable cause of Plaintiff's injuries. Defendants' conduct was both causation-in-fact and proximate causation of the constitutional violations of Plaintiff's inalienable rights.

**Bail and Warrants.**

1474.   MacDonald and Outland acted as integral participants to set in motion a series of events by which unreasonable bail and warrants were granted by SMC judges, which MacDonald and Outland knew or reasonably should have known would cause SMC judges to inflict excessive bail and warrants upon Plaintiff.

1475.   The more than half million dollars in bail and warrants imposed upon Plaintiff in an effort by Defendants to harass, threaten, intimidate, restrain, and unlawfully imprison him shocks the conscience.

**Cruel Punishments Public Entities.**

1476.   Crawford-Willis, Durkan, Gregory, Lynch, MacDonald, and Outland acted as integral participants, individually and in concert, to punish Plaintiff for his beliefs by denying his right to enter public entities under color of law, including Seattle Municipal Court.

1477.   These defendants did so, directly or indirectly, by and through the issuance of failure to appear warrants and arrest warrants.

**Cruel Punishments Public Accommodations.**

1478.   Brier, Chess, Cook, Coomer, Crawford-Willis, Durkan, Ervin, Fox, Goslin, Gregory, Lentz, Lynch, MacDonald, and Outland acted as integral participants to set in motion a series of events by which Plaintiff would be punished for his beliefs by denying him the full and equal enjoyment of the goods, service, and facilities of PCC and SPROUTS through restraining orders.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 202 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1479.   As a direct, proximate, and foreseeable result of the acts by Defendants, the CITY's policy or widespread customs or practices, the acts as final policymakers for the CITY of Davison, Durkan, and Holmes, and the CITY's failure to train its officials, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF 8TH AMENDMENT
### Excessive Bail, Warrants & Punishments – Family Court

1480.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1481.   In this twelfth cause of action, Defendants named herein include Cliber, Franklin-Bihary, Keenan, Moore, and Owen, ("Defendants").

1482.   Through the Fourteenth Amendment, Defendants were prohibited from violating the Eighth Amendment prohibitions against excessive fines or cruel punishments.

1483.   Cliber, Franklin-Bihary, and Owen acted as integral participants to set in motion a series of events by which excessive fines or cruel punishments were granted or inflicted by Keenan or Moore, which Cliber, Frankin-Bihary, and Owen knew or reasonably should have known would cause Keenan or Moore to inflict excessive fines or cruel punishment upon Plaintiff.

1484.   Defendants acted to coerce Plaintiff to pay nearly $1500 per month to see A.R.W. four hours per week; thereby, Defendants violated the prohibitions of the Eighth Amendment against excessive fines.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 203 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    1485.   Defendants acted to inflict cruel punishment upon Plaintiff's class by subjecting

2    Plaintiff to immediate arrest if he attempted any contact with A.R.W. outside of supervised

3    visitations at At INDABA or two Zoom calls per week; thereby, Defendants violated the

4    prohibitions of the Eighth Amendment against cruel punishments.

5    

6    1486.   As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff has

7    suffered, and continues to suffer, irreparable harm and damages for which he is entitled to

8    recover.

9    ### THIRTEENTH CAUSE OF ACTION
     VIOLATION 14TH AMENDMENT

10   Due Process Clause - Procedural

11   **Interference With Parent/Child Relationship**
     **42 U.S.C. § 1983**

12   _____

13   1487.   Plaintiff realleges and incorporates by reference the preceding paragraphs with

14   the same force and effect as if fully set forth herein.

15   1488.   In this thirteenth cause of action, defendants named herein include CITY OF

16   SEATTLE, Admon, Booker, Cliber, Ferguson, Franklin-Bihary, Gregory, Hermsen, Keenan,

17   Ladd, Lerman, Marinella, Moore, Outland, Owen, Rekofke, Russ, and Wallace ("Defendants").

18   

19   1489.   Defendants allowed, enabled, or facilitated the interference in Plaintiff's father-

20   son relationship with A.R.W ("relationship").

21   1490.   Defendants acted as integral participants to set in motion a series of events by

22   which Defendants knew or should have known would interfe with the parent-child relationship

23   of Plaintiff and A.R.W. in violation of the due process clause of the Fourteenth Amendment.

24   1491.   Defendants interfered with the relationship absent a legitimate state interest.

25   1492.   The Fourteenth Amendment guarantees that parents will not be separated from

26   their children without due process of law except in emergencies.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 204 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1493.   The best interests of A.R.W. were not served by the actions of Defendants.

1494.   Defendants did not provide fundamentally fair procedures when they interfered with the relationship.

1495.   Defendants knew in, or after, September 2021, that fundamentally *unfair* procedures allowed, enabled, facilitated, or perpetrated the unwarranted removal of A.R.W. from Plaintiff's custody.

1496.   Defendants knew, or should have known, that Owen's claims of an emergency were false and misleading.

1497.   The removal of A.R.W. from Plaintiff's custody violated the Fourteenth Amendment as the removal was not authorized by a valid court order with subject matter jurisdiction.

1498.   The removal of A.R.W. from Plaintiff's custody violated the Fourteenth Amendment as the removal was not supported by reasonable cause to believe that A.R.W. was in imminent danger of serious bodily injury, and the scope of intrusion extended beyond that which was reasonably necessary.

1499.   The removal of A.R.W. from Plaintiff's custody violated the Fourteenth Amendment as the removal was obtained through judicial deception by Owen and Cliber which involved misrepresentations and omissions.

1500.   The judicial deception by Owen and Cliber involved misrepresentations made deliberately or with reckless disregard to the truth.The misrepresentations and omissions by Owen and Cliber were material to the judicial deception.

1501.   Judges and commissioners would have declined to issue orders if Owen and Cliber had been truthful.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 205 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1502.   Defendants had time to make unhurried judgments and extended opportunities to do better.

1503.   Defendants unreasonably allowed harm to occur to Plaintiff and A.R.W.

1504.   The protracted failure by Defendants to even care shocks the conscience, thus giving rise to Plaintiff's substantive due process claim.

1505.   Plaintiff suffered irreparable injuries as a proximate result of Defendants' actions.

1506.   Any deprivation of any constitutional right is an irreparable injury.

1507.   Defendants, including officers or employees of CITY OF SEATTLE, acted in concert under color of law for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice, with intent to deny Plaintiff the equal protection of the laws, or to injure Plaintiff for attempting to enforce the rights of Plaintiff and A.R.W. to the equal protection of the laws.

1508.   Defendants, including officers or employees of CITY OF SEATTLE, acted in concert under color of law for the purpose of depriving Plaintiff, either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within Washington the equal protection of the laws.

1509.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread customs or practices, the acts by Davison as final policymaker for the CITY Attorney's Office, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### FOURTEENTH CAUSE OF ACTION
## VIOLATION OF THE 14TH AMENDMENT

**Due Process - SMC**
**42 U.S.C. § 1983**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2      1510.   Plaintiff realleges and incorporates by reference the preceding paragraphs with

3      the same force and effect as if fully set forth herein.

4      1511.   In this fourteenth cause of action, defendants named herein include CITY OF

5      SEATTLE, Crawford-Willis, Gregory, Lynch, MacDonald, and Outland ("Defendants").

6
                                           **Notice.**
7

8      1512.   Gregory and Outland acted as integral participants to set in motion a series of

9      events by which Plaintiff was denied legal notice pursuant to RCW 35.20.270, which defendants

10     knew or reasonably should have known would violate constitutional prohibitions against denying

11     legal notice to Plaintiff's class.

12     1513.   These defendants acted with deliberate indifference to statutory requirements and

13     to the right of Plaintiff's class to be lawfully noticed, which harmed Plaintiff as a proximate and

14     foreseeable result.

15
                              **Right to Representative Jury.**
16

17     1514.   Lynch and MacDonald acted as integral participants to set in motion a series of

18     events by which Plaintiff was denied a representative jury, which Lynch and MacDonald knew

19     or reasonably should have known would create an unrepresentative jury.

20     1515.   Lynch and MacDonald acted with deliberate indifference to the truth and to the

21     rights of Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

22
                                    **Right to Appear.**
23

       1516.   Crawford-Willis, Gregory, Lynch, MacDonald, and Outland acted as integral
24

25

26

INJUNCTIONS, DECLARATORY JUDGMENT                    KURT BENSHOOF
CLAIM FOR DAMAGES                                    1716 N 128th ST
  **Page 207 of 280**                                Seattle, WA 98133
                                                     kurtbenshoof@gmail.com

participants to set in motion a series of events by which Plaintiff was denied the right to appear in courtrooms, which defendants knew or reasonably should have known would violate constitutional prohibitions against denying due process to Plaintiff's class.

1517.   These defendants acted with deliberate indifference to the truth and to the right to appear of Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

### Suppression of Evidence.

1518.   Lynch and MacDonald acted as integral participants to set in motion a series of events by which evidence favorable to Plaintiff was suppressed, which Lynch and MacDonald knew or reasonably should have known would harm Plaintiff.

1519.   CITY police officers and MacDonald failed to obtain, retain, or provide exculpatory surveillance video from PCC regarding case no. 656749 with deliberate indifference to the truth and to the rights of Plaintiff's class.

1520.   The suppression of evidence by Lynch and MacDonald harmed Plaintiff as a proximate and foreseeable result.

### Right to Unbiased Tribunal.

1521.   Lynch and MacDonald acted as integral participants to set in motion a series of events by which Plaintiff was denied an unbiased tribunal, which Lynch and MacDonald knew or reasonably should have known would create a biased tribunal.

1522.   Lynch and MacDonald acted with deliberate indifference to the truth and to the right of Plaintiff's class to an unbiased tribunal, which harmed Plaintiff as a proximate and foreseeable result.

1523.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread customs or practices, the acts by Durkan as final policymaker for the CITY,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 208 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

the acts by Holmes as final policymaker for the CITY Attorney's Office, and the CITY's failure to train its officials, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**FIFTEENTH CAUSE OF ACTION**
VIOLATION OF THE 14TH AMENDMENT

**Right to Trial by Jury**
**42 U.S.C. § 1983**

1524.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1525.    In this fifteenth cause of action, defendants named herein include: Cliber, Franklin-Bihary, Keenan, Moore, and Owen Defendants").

1526.    Through the Fourteenth Amendment, Defendants were prohibited from denying the right of trial by jury to Plaintiff's class; similarly, Wash. Const. art I §21 prohibited Defendants from doing the same.

1527.    Defendants acted as integral participants to set in motion a series of events in family court case no. 21-5-00680-6 by which Plaintiff was denied the right to trial by jury, which Defendants knew or reasonably should have known would violate constitutional prohibitions.

1528.    Defendants acted with deliberate indifference to the law and to the rights of Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

1529.    As a direct, proximate, and foreseeable result of Defendants' acts, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**SIXTEENTH CAUSE OF ACTION**
VIOLATION OF THE 14TH AMENDMENT

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 209 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

**Due Process – Family Court**
**42 U.S.C. § 1983**

1530.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1531.   In this sixteenth cause of action, defendants named herein include Cliber, Franklin-Bihary, Keenan, Moore, and Owen ("Defendants").

1532.   Through the due process clause of the Fourteenth Amendment, Defendants were prohibited from violating the Fourteenth Amendment prohibitions against restricting or denying Plaintiff's right to have notice and opportunity to appear, testify on his own behalf, and to face his accusers.

**Notice.**

1533.   Cliber, Keenan, Moore, and Owen acted as integral participants to set in motion a series of events by which Plaintiff was denied legal notice of hearings, which defendants knew or reasonably should have known would violate constitutional prohibitions against denying legal notice to Plaintiff's class.

1534.   These defendants acted with deliberate indifference to laws and civil rules of procedure protecting the right of Plaintiff's class to be lawfully noticed, which harmed Plaintiff as a proximate and foreseeable result.

**Right to Appear.**

1535.   Cliber, Franklin-Bihary, Keenan, Moore, and Owen acted as integral participants to set in motion a series of events by which Plaintiff was denied the right to appear in courtrooms, which defendants knew or reasonably should have known would violate constitutional prohibitions against denying due process to Plaintiff's class.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 210 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    1536.   These defendants acted with deliberate indifference to the truth and to the right to

2    appear of Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

3                              **Judicial Information System.**

4    1537.   Franklin-Bihary, Keenan, and Moore, accessed the Judicial Information System

5    ("JIS") without notifying Plaintiff, as required by state law.

6    1538.   Plaintiff had a right to know the JIS evidence that Franklin-Bihary, Keenan, and

7    Moore based their findings upon, but the JIS evidence was suppressed by them with deliberate

8    indifference to the truth and to Plaintiff's right to evidence.

9    1539.   These acts by Franklin-Bihary, Keenan, and Moore were prejudicial to the

10   administration of justice and harmed Plaintiff as a proximate and foreseeable result.

11                              **Suppression of Evidence.**

12   1540.   Defendants acted as integral participants to set in motion a series of events by

13   which testimony favorable to Plaintiff was suppressed, which Defendants knew or reasonably

14   should have known would harm Plaintiff.

15   1541.   The suppression of evidence by Defendants harmed Plaintiff as a proximate and

16   foreseeable result.

17                              **Right to Unbiased Tribunal.**

18   1542.   Defendants acted as integral participants to set in motion a series of events by

19   which Plaintiff's class was denied an unbiased tribunal, which Defendants knew or reasonably

20   should have known would create a biased tribunal against Plaintiff.

21   1543.   Cliber, Franklin-Bihary, Keenan, Moore, and Owen acted with deliberate

22   indifference to the truth and to the right of Plaintiff's class to an unbiased tribunal, which harmed

23   Plaintiff as a proximate and foreseeable result.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 211 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    1544.    As a direct, proximate, and foreseeable result of Defendants' acts, Plaintiff has

2    suffered, and continues to suffer, irreparable harm and damages for which he is entitled to

3    recover.

### SEVENTEENTH CAUSE OF ACTION
### VIOLATION OF THE 14TH AMENDMENT

**Due Process – Ferguson Court**
**42 U.S.C. § 1983**

8    1545.    Plaintiff realleges and incorporates by reference the preceding paragraphs with

9    the same force and effect as if fully set forth herein.

10    1546.    In this seventeenth cause of action, defendants named herein include: Admon,

11    Cliber, Ferguson, Hermsen, Lerman, Marinella, Owen, Rekofke, and Russ, ("Defendants").

12    1547.    Through the due process clause of the Fourteenth Amendment, Defendants were

13    prohibited from violating the Fourteenth Amendment prohibitions against restricting or denying

14    Plaintiff's right to have notice and opportunity to appear, testify on his own behalf, and to face

15    his accusers.

### Right to Appear.

18    1548.    Defendants acted as integral participants to set in motion a series of events by

19    which Plaintiff was denied the right to appear in courtrooms, which defendants knew or

20    reasonably should have known would violate constitutional prohibitions against denying due

21    process to Plaintiff's class.

22    1549.    Defendants acted with deliberate indifference to the law and to the right to appear

23    of Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

### Suppression of Evidence.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 212 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1550.   Defendants acted as integral participants to set in motion a series of events by which testimony favorable to Plaintiff was denied, prohibited, or suppressed, which Defendants knew or reasonably should have known would harm Plaintiff.

1551.   The denial, prohibition, or suppression of Plaintiff's testimony by Defendants harmed Plaintiff as a proximate and foreseeable result.

**Right to Unbiased Tribunal.**

1552.   Defendants acted as integral participants to set in motion a series of events by which Plaintiff's class was denied an unbiased tribunal, which Defendants knew or reasonably should have known would create a biased tribunal against Plaintiff.

1553.   Defendants acted with deliberate indifference to the law and to the right of Plaintiff's class to an unbiased tribunal, which harmed Plaintiff as a proximate and foreseeable result.

1554.   As a direct, proximate, and foreseeable result of Defendants' acts, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**EIGHTEENTH CAUSE OF ACTION**
**VIOLATION OF THE 14TH AMENDMENT**

**Due Process – Widlan Court**
**42 U.S.C. § 1983**

1555.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1556.   In this eighteenth cause of action, defendants named herein include Marinella, Owen, Russ, and Widlan ("Defendants").

1557.   Through the due process clause of the Fourteenth Amendment, Defendants were

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 213 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

prohibited from violating the Fourteenth Amendment prohibitions against restricting or denying Plaintiff's right to have notice and opportunity to appear, testify on his own behalf, and to face his accusers.

### Right to Appear.

1558.   Defendants acted as integral participants to set in motion a series of events by which Plaintiff was denied the right to appear in the courtroom, which defendants knew or reasonably should have known would violate constitutional prohibitions against denying due process to Plaintiff's class.

1559.   Defendants acted with deliberate indifference to the law and to the right to appear of Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

### Suppression of Evidence.

1560.   Defendants acted as integral participants to set in motion a series of events by which testimony favorable to Plaintiff was denied or prohibited, which Defendants knew or reasonably should have known would harm Plaintiff.

1561.   The denial or prohibition of Plaintiff's testimony by Defendants harmed Plaintiff as a proximate and foreseeable result.

### Right to Unbiased Tribunal.

1562.   Defendants acted as integral participants to set in motion a series of events by which Plaintiff's class was denied an unbiased tribunal, which Defendants knew or reasonably should have known would create a biased tribunal against Plaintiff.

1563.   Defendants acted with deliberate indifference to the law and to the right of Plaintiff's class to an unbiased tribunal, which harmed Plaintiff as a proximate and foreseeable result.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1564.   As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### NINETEENTH CAUSE OF ACTION
VIOLATION 14TH AMENDMENT

**Due Process Clause – Civil Commitment
42 U.S.C. § 1983**

1565.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1566.   In this nineteenth cause of action, defendants named herein include Cliber, Franklin-Bihary, Keenan, Moore, and Owen, ("Defendants").

1567.   Defendants acted under color of law, individually and in concert, to restrict Plaintiff's association with A.R.W. under conditions of confinement which amounted to punishment of Plaintiff.

1568.   Defendants acted under color of law, individually and in concert, to impose punitive conditions of confinement upon Plaintiff which were "identical to, similar to, or more restrictive than, those in which a civil pretrial detainee's criminal counterparts are held."

1569.   Defendants were absent legitimate, non-punitive interests justifying the conditions of Plaintiff's confinement.

1570.   Defendants imposed restrictions upon Plaintiff which were excessive in relation to the alleged interests of Defendants.

1571.   Defendants acted in concert under color of law for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice, with intent to deny Plaintiff the equal protection of the laws, or to injure Plaintiff for attempting to enforce the rights of Plaintiff

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 215 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  and A.R.W. to the equal protection of the laws.

2      1572.   Defendants acted in concert under color of law for the purpose of depriving

3  Plaintiff, either directly or indirectly, of the equal protection of the laws, or of equal privileges

4  and immunities under the laws; or for the purpose of preventing or hindering the constituted

5  authorities of Washington from giving or securing to all persons within Washington the equal

6

7  protection of the laws.

8      1573.   As a direct, proximate, and foreseeable result of the Defendants' actions as

9  described herein, Plaintiff has suffered, and continues to suffer, irreparable harm and damages

10  for which he is entitled to recover.

11            **TWENTIETH CAUSE OF ACTION**
            VIOLATION OF 14TH AMENDMENT
12
            **Equal Protection Clause**
13

14      1574.   Plaintiff realleges and incorporates by reference the preceding paragraphs with

15  the same force and effect as if fully set forth herein.

16
       1575.   In this twentieth cause of action, Defendants named herein are CITY OF
17
   SEATTLE, Admon, Auderer, Booker, Brier, Cliber, Coomer, Cook, Crawford-Willis, Durkan,
18
   Ferguson, Fox, Foy, Franklin-Bihary, Goslin, Gregory, Hermsen, Inslee, Keenan, Lentz, Lerman,
19
20  Lynch, MacDonald, Marinella, Moore, Outland, Owen, Rekofke, Russ, Shah, Wallace, and

21  Widlan ("Defendants").

22      1576.   At all times relevant herein, Defendants were state actors, or individuals jointly

23  engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C.

24  § 1983.

25      1577.   Defendants failed to exercise objective reasonableness, and in so doing, violated

26  the constitution and clearly established state and federal laws, including 18 U.S.C. §§ 241; 242.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 216 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1578.    Acting under the color of state law of policies or orders, Defendants knowingly and willfully acted, or neglected to act, to deny Plaintiff his rights, privileges, or immunities secured by the United States Constitution, or by Federal and State law, and guaranteed by the Fourteenth Amendment to the Constitution of the United States. To wit, they effected compliance to their orders based on their misrepresentations.

1579.    The policies, orders, and proclamations, which were created, approved, enabled, implemented, or acted under, treated people who wore a face covering more favorably than people without face coverings, by permitting entrance to public accommodations, public courtrooms and schools, while excluding people whose beliefs preclude them from wearing a face covering.

1580.    The policies, orders, and proclamations, which were created, approved, enabled, implemented, or acted under, to achieve an alleged government interest in promoting "public health," without considering Plaintiff's individual health, well-being, and constitutionally protected rights.

1581.    The policies, orders, and proclamations, which were created, approved, enabled, implemented, or acted under, were not rationally related to serving an alleged legitimate government interest of preventing the community spread of a disease.

1582.    Discrimination, whether overt or implicit, results in an equal protection violation.

1583.    As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread customs or practices, Durkan's acts as final policymaker for the CITY, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

**TWENTY-FIRST CAUSE OF ACTION**
DENIAL OF SERVICE

PUBLIC ACCOMMODATION & DISCRIMINATION

1584.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1585.   In this twenty-first cause of action, defendants named herein include CITY OF SEATTLE, Booker, Brier, Coomer, Cook, Crawford-Willis, Durkan, Ervin, Fox, Goslin, Gonzalez, Gregory, Lentz, Lerman, Lynch, MacDonald, and Oishi ("Defendants").

1586.   All persons <u>shall</u> be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the grounds of race, color, religion, or national origin. (*See* Pub. L. No. 88-352 §§ 201-202).

1587.   Plaintiff was deprived equal access to PCC and SPROUTS, both public accommodations doing business in Seattle, Washington.

1588.   The Temple of Justice in Olympia Washington has one or more snack bars inside the building in which the Supreme Court of Washington and clerk's office is located; that is, the Civil Rights Act of 1964 applies to the building subjected to the general administrative orders of Gonzalez denying entrance to Plaintiff's class without a face covering.

1589.   The King County Courthouse has one or more snack bars inside the same building as the clerk's office; that is, the Civil Rights Act of 1964 applies to the building subjected to the general administrative orders of Oishi and Rogers denying entrance to Plaintiff's class without a face covering.

1590.   As a shopper during normal business hours, Plaintiff had an implied contract with

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 218 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

PCC and SPROUTS to enter their establishments, to take goods from their shelves for purchase, and to pay for said goods before leaving their establishments.

1591.   PCC and SPROUTS violated their implied contract with Plaintiff with the aiding and abetting of police, prosecutors, or judges in the employ of the CITY.

1592.   Plaintiff was arbitrarily, capriciously, and unreasonably denied service at PCC and SPROUTS.

1593.   Defendants' invidious discriminatory animus against the free exercise of Plaintiff's religious beliefs was a proximate cause of denying Plaintiff equal access and service.

1594.   Defendants' invidious discriminatory animus against the free exercise of Plaintiff's speech and expression was a proximate cause of denying Plaintiff equal access and service.

1595.   Defendants' invidious discriminatory animus against the free exercise of Plaintiff's right to petition for redress of his grievances was a proximate cause of denying Plaintiff equal access and service.

1596.   Plaintiff was classified by Defendants as a lower class of citizen than that of those who wore face coverings, and as a proximate result Plaintiff was deprived of the equal access, enjoyment, and use of public accommodations and the secured rights of both the state and federal constitutions.

1597.   Defendants each participated in a concerted, overt act or acts to further CRAP.

1598.   Defendants' aim was to achieve an unlawful purpose, or lawful purpose by unlawful means, in violation of Pub. L. No. 88-352 §§ 201-202.

1599.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread customs or practices, Durkan's acts as final policymaker, Holmes's acts as

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 219 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   final policymaker, Davison's acts as final policymaker, and the CITY's failure to train, Plaintiff

2   has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to

3   recover.

4

5                          **TWENTY-SECOND CAUSE OF ACTION**
                            COMMON LAW FRAUD

6   _____

7        1600.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the

8   same force and effect as if fully set forth herein.

9        1601.   In this twenty-second cause of action, defendants named herein include:  Admon,

10  Auderer, Booker, Brier, Cliber, Cook, Coomer, Crawford-Willis, Durkan, Ervin, Ferguson, Fox,

11  Franklin-Bihary, Goslin, Gregory, Inslee, Keenan, Lentz, Lerman, Lynch, MacDonald, Marinella,

12  Moore, Oishi, Outland, Owen, Rekofke, Russ, Shah, and Widlan, ("Defendants").

13

14       1602.   Defendants had an obligation when asked for, and in volunteering, information to be

15  truthful; that is, the telling of a half-truth calculated to deceive is a fraud.  "Who is asked, or

16  volunteers' information must be truthful, and the telling of a half-truth calculated to deceive is fraud."

17  *Pumphrey vs. K. W. Thompson Tool Co.,* (9th Cir. 1995) 62 F.3d 1128.

18       1603.   With these principles in mind, we turn to the elements of fraud, which are: "(1)

19  representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and

20  resulting damage (causation)."

21
                                   **ELEMENTS OF FRAUD**
22
                                      **Representations.**
23

24       1604.   Defendants represented themselves as: (1)public officials beholden to their uphold

25  their oaths of office and comport themselves in accordance with state and federal law; (2)

26  licensed attorneys beholden to conduct themselves lawfully and in accordance with the

1    Washington BAR Rules of Professional Conduct; (3) honest and law-abiding employees of local

2    businesses; or (4) private individuals in contractual agreements with Plaintiff, who would speak

3    truthfully to public officials in accordance with RCW 9A.76.175, or who would amend their

4    misrepresentations if duly informed.

5

6                                            **Materiality.**

7           1605.    Defendants' representations were material to their conspiratorial acts to

8    impede, hinder, obstruct, or defeat, the due course of justice in Washington, with the intent to

9    deny Plaintiff the equal protection of the laws, or to injure him or his property for attempting to

10   enforce his rights  and the rights of A.R.W.

11                                              **Falsity.**

12          1606.    Defendants' representations to Plaintiff were false, as evidenced heretofore.

13                                           **Knowledge.**

14          1607.    Defendants knew the falsity of their representations, as even after Plaintiff

15   confronted Defendants with proof of their falsehoods, Defendants have not simply refused to

16   admit wrongdoing; they have perpetrated further false representations in retaliation.

17

18                                              **Intent.**

19          1608.    Defendants intended that their false representations be acted upon by Plaintiff to

20   delay or prevent accountability, and thereby delay the due course of justice.

21                                            **Ignorance.**

22          1609.    Plaintiff was initially ignorant of Defendants' false representations.

23                                            **Reliance.**

24          1610.    In good faith, Plaintiff relied upon the truth of Defendants' representations.

25                                        **Right of Reliance.**

26

1611.    Plaintiff exercised reasonable care, and had just cause, to rely upon Defendants' representations; most people believe that public officials, attorneys, and private individuals will acknowledge facts as true, and comport themselves within the law when so cited.

1612.    Defendants directly or indirectly worked in concert to allow, enable, facilitate, protect, insulate, or authorize themselves or one another to act in wanton disregard to the constitutionally protected rights of Plaintiff; thereby recklessly and callously depriving Plaintiff of his rights.

**Resulting Damage.**

1613.    As a proximate result of Defendants' fraud, Plaintiff suffered irreparable harm and damages for which he is entitled to recover.

**TWENTY-THIRD CAUSE OF ACTION**
COMMON LAW CONSPIRACY

1614.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1615.    In this twenty-third cause of action, defendants named herein include:    Admon, Booker, Brier, Cliber, Cook, Coomer, Crawford-Willis, Durkan, Ferguson, Fox, Franklin-Bihary, Goslin, Gregory, Hermsen, Inslee, Keenan, Lentz, Lerman, Lynch, MacDonald, Marinella, Moore, Outland, Owen, Rekofke, Russ, Shah, Widlan, ("Defendants").

1616.    All defendants (1) had a task to be accomplished, to deny the rights of those without face coverings; (2) had an agreement on the object or course of action, to wit, to deprive Plaintiff of his right to free speech, to his free exercise of religion, to his redress of grievances, to his association with his son, to be secure in his persons, papers, and effects, to due process, to his access to the courts and public accommodations, or to his right to equal protection of the law; (3) performed one or more

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  unlawful overt acts over many different dates; and (4) caused Plaintiff damages which were a
2  proximate result of those acts.
3      1617.   Defendants employed by the CITY and County overtly acted against Plaintiff for
4  nearly three years, overtly denying access to court records or court rooms, absent lawful authority to
5  do so, by or through men with guns in direct violation of the United States Constitution and
6  Washington constitution.
7
8      1618.   Defendants, prosecutors, and police, employed by the CITY, and defendants Brier,
9  Cook, Ervin, Fox, and Goslin, acted for nearly three years to deny Plaintiff entrance to, or service at,
10 places of public accommodation, absent lawful authority to do so.
11     1619.   Defendants Booker, Cliber, Durkan, Franklin-Bihary, Keenan, Lerman, Moore, and
12 Owen acted over the last two years to deny Plaintiff's access to Jane Addams Middle School or to
13 the school records of A.R.W. absent lawful authority to do so.
14
15     1620.   Defendants denied Plaintiff, sans face covering, access to the court records,
16 courtrooms, school, school records, places of public accommodation, his right to free speech, his free
17 exercise of religion, his redress of grievances, his association with his son, his right to be secure in
18 his persons, papers, and effects, his right to due process, or his right to equal protection of the law;
19 Plaintiff was thereby injured in his person and property, deprived of the exercise of his rights and
20 privileges as a citizen of the United States.
21     1621.   As a proximate result of Defendants' concerted, unlawful and malicious conduct,
22 Plaintiff personally incurred more than one hundred thousand dollars in out-of-pocket costs, his
23 church ministry has been destroyed, he faces imminent ejectment from his home and church, and he
24 faces imminent unlawful arrest and indefinite incarceration under $300,000 in warrants.
25     1622.   Defendants directly or indirectly worked in concert to allow, enable, facilitate,
26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 223 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   protect, insulate, or authorize themselves or one another to act in wanton disregard to the

2   constitutionally protected rights of Plaintiff; thereby recklessly and callously depriving Plaintiff of

3   his rights.

4       1623.   As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff has

5   suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

6                        **TWENTY-FOURTH CAUSE OF ACTION**

7                         VIOLATION OF U.S. Const. Art I, § 10

8                                **42 U.S.C. § 1983**

9   _____

10      1624.   Plaintiff realleges and incorporates by reference the preceding paragraphs with

11  the same force and effect as if fully set forth herein.

12      1625.   In this twenty-fourth cause of action, defendants named herein include Admon,

13  Cliber, Ferguson, Franklin-Bihary, Hermsen, Keenan, Lerman, Marinella, Moore, Owen,

14  Rekofke, Russ, and Widlan, ("Defendants").

15      1626.   U.S. Const. article I, § 10, clause 1, prohibit the state from passing any bill of

16  attainder, ex post facto law, or law impairing the obligation of contracts; through the equal

17  protection clause of the Fourteenth Amendment Defendants were thereby prohibited from

18  violating, as well as by Wash. Const. art I, § 23.

19      1627.   Defendants, many of whom have law degrees, knew or should have known that

20  U.S. Const. article I, § 10, clause 1, and Wash. Const. art I § 23, ("Contract Clause") clearly

21  establish Plaintiff's and others' right to be free from impairment of their contracts.

22      1628.   The United States Supreme Court has ruled that a "law" for the purposes of the

23  Contract Clause may be an administrative regulation having the forces and operative effect of a

24  statute.

25

26

INJUNCTIONS, DECLARATORY JUDGMENT          KURT BENSHOOF
CLAIM FOR DAMAGES                          1716 N 128th ST
**Page 224 of 280**                        Seattle, WA 98133
                                           kurtbenshoof@gmail.com

1     1629.   The administrative covid orders promulgated by Inslee, Shah, Estudillo, Martinez,

2  Gonzalez, Rogers, Oishi, Durkan and Gregory, had the force and operative effect of a statute.

3     1630.   Inslee, Shah, Gregory, Martinez, Estudillo, Gonzalez, Oishi, and Gregory, knew

4  or should have known that using an administrate directive, rule, or order, under the color of

5  emergency powers law to impair an existing contract is in direct contravention of the Contract

6  Clause.

7

8                                **CONTRACT CLAUSE**

9                            **Parenting Agreement.**

10    1631.   The parenting agreement ("Agreement") at common law between Plaintiff and

11  Owen was a specific relationship, not merely a general contractual, protected by the United States

12  and Washington constitutions.

13    1632.   The impact of Defendants' acts upon the Agreement, by and through family court

14  *ultra vires* administrative orders ("orders"), was both substantial and severe, as their acts

15  abrogated and altered the specific terms of the twelve-year Agreement with the effective force of

16  law.

17

18    1633.   The orders were not justified by a significant and legitimate public purpose, and

19  the method used by the state to advance that public purpose constituted an unnecessarily broad

20  repudiation of Plaintiff's contract rights.

21    1634.   As a result, of the impairment of Plaintiff's contractual relationship with Owen as

22  father and mother of A.RW., the Agreement was permanently altered; that is, Plaintiff has lived

23  under threat of immediate arrest for nearly two years if he contacts his son even through a third

24  party.

25    1635.   As a direct, proximate, and foreseeable result of Defendants' actions impairing

26

INJUNCTIONS, DECLARATORY JUDGMENT           KURT BENSHOOF
CLAIM FOR DAMAGES                            1716 N 128th ST
**Page 225 of 280**                              Seattle, WA 98133
                                             kurtbenshoof@gmail.com

the obligations of the Agreement, Plaintiff suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**House Contract.**

1636.   The house contract at common law between Plaintiff and Owen was a specific relationship, not merely a general contractual relationship, protected by the United States and Washington constitutions.

1637.   The impact of the acts by Lerman, Marinella, Owen, Russ, and Widlan ("House Defendants") upon the contract, by and through Widlan's orders, was both substantial and severe, as their acts abrogated and altered the specific terms of the nine year contract.

1638.   The orders were not justified by a significant and legitimate public purpose, and the methods used to advance the allegedly public purpose by House Defendants constituted an unnecessarily broad repudiation of Plaintiff's contract rights.

1639.   As a result of the impairment of Plaintiff's contractual relationship with Owen as co-owners of their house, the house contract was permanently altered; that is, Plaintiff has lived in fear of immediate ejectment, loss of home, and loss of church, for more than six months.

1640.   Plaintiff has spent many thousands of dollars to prevent being ejected from his home and church.

1641.   As a direct, proximate, and foreseeable result of House Defendants' actions to impair the obligations of the house contract Plaintiff suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

**TWENTY-FIFTH CAUSE OF ACTION**
VIOLATION OF U.S. Const. Art I, §§ 9; 10

**42 U.S.C. § 1983**

---

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 226 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1642.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1643.   In this twenty-fifth cause of action, defendants named herein include CITY OF SEATTLE, Admon, Cliber, Crawford-Willis, Ferguson, Gregory, Hermsen, Keenan, Lerman, Lynch, MacDonald, Moore, Outland, Owen, Rekofke, and Russ, ("Defendants").

## BILLS OF PAINS AND PENALTIES

1644.   U.S. Const. article I, § 9, clause 3; § 10, clause 1, and Wash. Const. art I, § 23, prohibit the state from passing any bill of attainder or ex post facto law; through the equal protection clause of the Fourteenth Amendment Defendants were thereby prohibited from ordering bills of pains and penalties against Plaintiff.

1645.   Defendants, many of whom have law degrees, knew or should have known that the Washington and United States Constitutions clearly establishes Plaintiff's class to be free from any bill of attainder, including bills of pains and penalties.

1646.   The C19 Enterprise, and Defendants' acts in its furtherance, has been used for three years to arrest, prosecute, imprison, and otherwise subject Plaintiff's class to cruel and unusual punishments for exercising his beliefs.

1647.   Defendants knew or should have known that using an administrative rule, directive, order, or proclamation, ("orders") to subject Plaintiff's class to the cruel and unusual punishments detailed above violated Wash. Const. art. I § 23 and the United States Constitution article I, § 9, clause 3.

1648.   An order granted by a judge absent subject matter jurisdiction is not a judicial act, rather it is an administrative or *ultra vires* order, though it may have the apparent form or substance of a law.

1649.   Deprivation or suspension of substantial rights are punishments.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 227 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

**Public Entities and Accommodations.**

2

1650.    The purported non-punitive purpose of said orders was to "protect public health,"

3

"protect employees," "save lives," "slow the spread," or "reduce hospitalizations."

4

1651.    The orders were arbitrary and capricious and had no rational connection to any

5

6

non-punitive purpose.

7

1652.    The orders presumed that Plaintiff's class was a direct and imminent threat to

8

public health without evidence.

9

1653.    The orders enabled, facilitated, or perpetrated punishment against Plaintiff's class

10

for not wearing a face covering inside public entities or public accommodations.

11

1654.    The orders enabled, facilitated, or perpetrated punishment against Plaintiff and his

12

class for not being injected with a "covid vaccine."

13

1655.    The orders constituted a proximate sanction upon Plaintiff's class by restraining

14

the individual liberty of Plaintiff's class to enter public entities and public accommodations and

15

16

receive services therefrom.

17

1656.    Plaintiff's class would otherwise have had judicial protections against threats,

18

arrests, imprisonment, or prosecutions without equal protection under the law.

19

1657.    The CITY failed to properly train its officers to prevent them from ordering bills

20

of pains and penalties against Plaintiff.

21

1658.    The acts as final policymakers by Davison and Holmes for the CITY Attorney's

22

Office, directing the expressly adopted official policy or widespread practice of ordering bills of

23

pains and penalties against Plaintiff's class for the exercise of his rights, was a direct, proximate,

24

and foreseeable cause of CITY officers' actions to enable, facilitate or perpetrate bills of pains

25

and penalties against Plaintiff.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 228 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1659.   The CITY's policy or widespread custom or practice of retaliation by or through bills of pains and penalties against Plaintiff was a direct, proximate, and foreseeable cause of such bills of pains and penalties against Plaintiff.

1660.   Defendants CITY OF SEATTLE, Chess, Crawford-Willis, Durkan, Estudillo, Gonzalez, Gregory, Hirakawa, Inslee, Lynch, Martinez, Oishi, Rogers, Shah, and knew or should have known that the orders proximately targeted Plaintiff's class to impose punishment on that group by depriving Plaintiff's class the rights previously enjoyed, namely the clearly established rights to equal protection and privacy.

### Family Court Final Orders.

1661.   Defendants Cliber, Franklin-Bihary, Keenan, Holloway, Lerman, Moore, O'Donnell, and Owen, acted to enable, facilitate, or perpetrate the punishment of Plaintiff' class for exercising his rights secured by the First Amendment, by or through the final orders signed by Keenan on October 25, 2022.

1662.   The presumptive orders targeted Plaintiff as a "credible threat" to A.R.W., absent subject matter jurisdiction of the court, absent due process, and absent the right to trial by jury.

1663.   The orders punished Plaintiff by effectively criminalizing any contact between Plaintiff and A.R.W., even third-party communications.

1664.   Plaintiff would otherwise have had judicial protections against threats, arrests, imprisonment, or prosecutions without equal protection under the law.

### UPEPA.

1665.   Defendants Admon, Cliber, Ferguson, Hermsen, Lerman, Owen, Rekofke, and Russ acted to enable, facilitate, or perpetrate the punishment of Plaintiff for exercising his rights

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 229 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

secured by the First Amendment, by or through their judgments dated February 27 and April 3, 2023, pursuant to RCW 4.105.

1666.   Defendants' UPEPA judgments targeted Plaintiff for punishment by denying Plaintiff's right to petition for redress of his grievances in order to indemnify Admon, Cliber, Hermsen, Lerman, Owen, Rekofke, and Russ from their violations of criminal law detailed above, and by granting judgments against Plaintiff for $78,118.39.

1667.   Plaintiff would otherwise have had judicial protections against threats, extortion, theft, false or misleading statements, perjury, imprisonment, sanctions, or the denial of his rights without equal protection under the law.

**Orders Restricting Abusive Litigation ("ORAL").**

1668.   Defendants Admon, Cliber, Ferguson, Hermsen, Lerman, Owen, Rekofke, and Russ acted to allow, enable, facilitate, or perpetrate the punishment of Plaintiff for exercising his rights secured by the First Amendment, by or through the Temporary ORAL granted by on March 3, 2023, and the Order Restricting Abusive Litigation by Kurt Benshoof granted on March 31, 2023. (*See* Exhibit P23A).

1669.   Defendants motioned for, obtained, or granted the ORAL without subject matter jurisdiction pursuant to RCW 26.51.030(1); that is, there was no inquiry nor finding by the trial court that Plaintiff had ever been found to be a domestic violence perpetrator.

1670.   None of Plaintiff's court filings were frivolous, and they were brought as his remedy of last resort.

1671.   Plaintiff's filings were commensurate in number with the wrongs perpetrated upon him by Defendants; that is, his filings were not excessively numerous.

1672.   Plaintiff's filings were meritorious and were direct and proximate petitions for

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 230 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

redress of his grievances correlating to tortious and criminal acts by Defendants; that is, his filings were not abusive.

1673.   The ORAL was not narrowly tailored; pre-filing restrictions must be narrowly tailored to closely fit the specific vice encountered.

1674.   Defendants acted to target Plaintiff to silence his right to petition for redress of grievances with the threat of arrest and sanctions.

1675.   Plaintiff would otherwise have had judicial protections against threats, extortion, theft, false or misleading statements, perjury, imprisonment, sanctions, or the denial of his rights without equal protection under the law.

1676.   Defendants knew, or should have known, that the C19 Enterprise proximately targeted one group, the class of people whose beliefs preclude them from being coerced to submit to the Enterprise, and that it imposes punishment on that group by depriving these individuals of rights previously enjoyed, including the clearly established rights of association, religion, free speech and expression, petition for redress, due process, and equal protection.

1677.   The C19 Enterprise, and Defendants' acts in its furtherance, promoted the traditional aims of punishment; retribution for behavior which is lawful and constitutes clearly established and constitutionally protected rights.

1678.   Defendants judged punishment on those who refused to be coerced to submit to the aims of Enterprise, including Plaintiff, through quasi-legislative actions under color of law, without proper judicial processes.

1679.   The C19 Enterprise, and Defendants' acts in its furtherance, excluded Plaintiff from judicial due process, without evidence, opportunity to appear, nor the opportunity to be heard.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 231 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1680.    The C19 Enterprise, and Defendants' acts in its furtherance, had the effect to inflict punishment without the safeguards of a judicial trial and determined by no previous law or fixed rule.    The Constitution declares that that cannot be done either by a State or by the United States.

1681.    In effect, the C19 Enterprise, and Defendants' acts in its furtherance, acted like a bill of attainder; and had the effect of law which includes bills of pains and penalties.    Thus, Defendants' CRAP compel a conclusion that the primary function is to serve as additional penalties for Plaintiff's class.

1682.    Thus, the C19 Enterprise, and Defendants' acts in its furtherance, subjected Plaintiff's class to a burden that is severe, permanent, and inescapable as it severely limits and restricts Plaintiff's ministries as reverend of his church, his fatherhood of A.R.W., and his life, liberty and pursuit of happiness.

1683.    The C19 Enterprise and Defendants' acts in its furtherance, has no time limits, no benchmarks, no expiration, but may be revised or rescinded either in whole or in part; may be rescinded by continue to be perpetrated; or may be rescinded then reinstated, based upon the unquestionable whims of Defendants.

1684.    As such, there is no mechanism for relief by which Plaintiff can arrest Defendants' bad faith continuance of their C19 Enterprise employed to silence, prosecute, and imprison Plaintiff for his refusal to subscribe to Defendants' orthodoxy.

1685.    In furtherance of the C19 Enterprise, Defendants acted willfully, maliciously, or with reckless disregard, under color of law, which directly or proximately resulted in the denial of Plaintiff's constitutionally protected rights as described heretofore.

1686.    As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 232 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

policy or widespread customs or practices, Durkan's acts as final policymaker for the CITY, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## TWENTY-SIXTH CAUSE OF ACTION
VIOLATION OF ADA TITLE II
### 42 U.S.C. § 1983

1687.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1688.    In this twenty-sixth cause of action, defendants named herein include CITY OF SEATTLE, Admon, Booker, Crawford-Willis, Durkan, Ferguson, Gonzalez, Gregory, Keenan, Lynch, MacDonald, Marinella, Moore, Oishi, Rekofke, Russ, and Widlan ("Defendants").

1689.    The ADA applies to Washington State courts, municipal courts, and public schools under § 202 of Title II, 42 U.S.C. § 12132, and prohibits discrimination on the basis of disability by public entities.

1690.    Defendants, individually and in concert, allowed, enabled, facilitated, or perpetrated prohibited and retaliatory discrimination against Plaintiff due to his physical or mental impairment.

1691.    Defendants, individually and in concert, allowed, enabled, facilitated, or perpetrated prohibited and retaliatory discrimination against Plaintiff due to their perception of Plaintiff's physical or mental impairment.

1692.    Defendants, individually and in concert, directly or indirectly, allowed, enabled, facilitated, or perpetrated acts to deny Plaintiff entrance to, and service at, public entities including, but not limited to, the Supreme Court of Washington, located in the Temple of Justice,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 233 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

King County Courthouse, Seattle Municipal Courthouse, and Jane Addams Middle School.

1693.   As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### TWENTY-SEVENTH CAUSE OF ACTION
### VIOLATION OF ADA TITLE III

**42 U.S.C. § 1983**
**Public Accommodations**

1694.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1695.   In this twenty-seventh cause of action, defendants named herein include CITY OF SEATTLE, SPROUTS, PCC, Brier, Cook, Coomer, Crawford-Willis, Durkan, Ervin, Fox, Goslin, Gregory, Inslee, Lentz, Lynch, MacDonald, Outland, and Shah ("Defendants").

1696.   The ADA applies to public accommodations under Pub. L. 101-336, Title III, § 302, 42 U.S.C. § 12182, and prohibits discrimination on the basis of disability by public accommodations.

1697.   Defendants, individually and in concert, allowed, enabled, facilitated, or perpetrated prohibited and retaliatory discrimination against Plaintiff due to his physical or mental impairment.

1698.   Defendants, individually and in concert, allowed, enabled, facilitated, or perpetrated prohibited and retaliatory discrimination against Plaintiff due to their perception of Plaintiff's physical or mental impairment.

1699.   Defendants, individually and in concert, directly or indirectly, allowed, enabled, facilitated, or perpetrated acts to deny Plaintiff entrance to, and service at, places of public

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 234 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

accommodation including, but not limited to, SPROUTS and PCC.

1700.   As a direct, proximate, and foreseeable result of Defendants' acts Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## TWENTY-EIGHTH CAUSE OF ACTION
### BIVENS CLAIM
### 42 U.S.C. § 1983

1701.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1702.   In this twenty-eighth cause of action, defendants named herein include Ricardo S. Martinez ("Martinez") and David G. Estudillo ("Estudillo"), collectively ("Defendants").

1703.   At all relevant times herein, Defendants were officials in their individual capacity acting under color of law as the government.

1704.   Acting under the color of law, specifically Martinez's administrative GO 07-22, and Estudillo's administrative GO 12-22 and GO 04-23, Defendants worked in concert to deny or burden Plaintiffs' rights, privileges, or immunities secured by federal law and protected by Article I, §§ 10; 22 of the Washington Constitution and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

1705.   Martinez and Estudillo, logically or reasonably, could not medically assess or diagnose the medical needs of every individual that entered the Seattle U.S. District Court ("courthouse"), as a matter of fact and as a matter of law.

1706.   Therefore, Martinez and Estudillo used discriminatory practices to segregate society into two classes, those wearing a face covering and those not wearing a face covering, violating the First Amendment freedom protecting the free exercise of Plaintiff's religious

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 235 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

beliefs, and the protections of Plaintiff's privacy, liberty interests, and right to due process by the Fourth, Fifth, Ninth and Fourteenth Amendments.

1707.   As a direct, proximate, and foreseeable cause of their general orders, Defendants set in motion a series of acts by which Defendants knew or reasonably should have known would cause courthouse personnel to inflict the constitutional injury and thereby substantially burdened Plaintiff's exercise of religion resulting from their general orders, absent a compelling government interest which was not the least restrictive means by which to further the allegedly compelling governmental interest.

1708.   The Ninth Amendment to the constitution reserves those rights not enumerated within the Constitution of the United States to the people, rights traditionally reserved or identified as natural law rights protecting life, limb, and personal security.

1709.   The First, Ninth, and Fourteenth Amendment claims involve special factors, relating to the unprecedented denial of access to the courthouse, for which the judiciary is not arguably less equipped than Congress to weigh the costs and benefits of allowing the Plaintiff's damages action to proceed.

1710.   As a proximate result of Defendants' concerted, unlawful, and callously indifferent conduct, Plaintiff was deprived of his rights to equal protection under the law, due process of law, his right to access the court, his inviolable right to personal autonomy, his right to property, and the due course of justice was impeded in violation of the Washington Constitution and the Constitution of the United States.

1711.   Defendants had an obligation and duty to properly supervise all employees, officers, or contractors under their purview regarding unlawful discriminatory practices perpetrated in the Seattle U.S. District Courthouse ("courthouse").

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 236 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1712.   Defendants' general administrative orders for the courthouse demonstrated a callous indifference to the rights of the Plaintiff and other individuals who have been harmed by the execution of said orders; that is, the irreparable harm and damages to Plaintiff were foreseeable as a direct and proximate result of Defendants' general orders.

1713.   Defendants' failure to supervise the implementation of their general orders by courthouse employees to ensure that Plaintiff's rights would not be violated reflected Defendants' deliberate and callous indifference to the rights of Plaintiff and others similarly situated.

1714.   Defendants knew, or should have known, their duty and obligations to the law in their role as Chief Justice, and to know the consequences of depriving Plaintiff of Constitutionally secured rights when in breach of their duty.

1715.   Defendants, directly or indirectly, worked in concert with each other and state officials including, but not limited to, Governor Inslee, Secretary of Health Shah, Washing Supreme Court Justice Gonzalez, and Seattle Mayors Durkan and Harrell, creating a conspiracy against Plaintiff's class of religious beliefs, to deprive inherent constitutionally protected rights.

1716.   As a direct, proximate, and foreseeable result of Defendants' acts or omissions Plaintiff suffered irreparable harm and damages for which he is entitled to recover.

**TWENTY-NINTH CAUSE OF ACTION**
UNLAWFUL IMPRISONMENT 2020-264905
**42 U.S.C. § 1983**

---

1717.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1718.   In this twenty-ninth cause of action, defendants named herein include CITY OF SEATTLE, Coomer, and Durkan ("Defendants").

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 237 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1719.   SPD officers ("police") in the employ of the CITY arrested and imprisoned Plaintiff on September 11, 2020, without a fair and reliable determination of probable cause.

1720.   CITY police acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution ("rights") pursuant to expressly adopted official policy or widespread practices or customs of the CITY regarding face coverings.

1721.   Police acted pursuant to the CITY's expressly adopted official policy, practices or customs and the CITY's official policy or widespread practice or custom caused the deprivation of Plaintiff's rights; as the policy, practices, or customs were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1722.   Durkan acted under color of state law as final policymaker for the CITY regarding Covidian policies, and by so doing deprived Plaintiff of his rights by and through the acts of police acting under Durkan's final policymaking regarding face coverings.

1723.   Having final policymaking authority from the CITY, Durkan's acts as final policymaker for the CITY were a proximate cause of the false arrest of Plaintiff, as Durkan's acts were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff's irreparable harm and damages.

1724.   CITY police acted under color of state law as a proximate result of the failure of the CITY to properly train police, which thereby deprived Plaintiff of his rights pursuant to expressly adopted official policy or widespread practices or customs of the CITY regarding face coverings.

1725.   The CITY's police training regarding face covering policies was not adequate to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 238 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

prevent false arrest by police, or to handle the usual and recurring situations with which police must deal.

1726.   The CITY was deliberately indifferent to the substantial risk that its training regarding face covering policies was inadequate to prevent the known and foreseeable consequences of false arrest and unlawful imprisonment by police.

1727.   The failure of the CITY to provide adequate training to prevent false arrest and unlawful imprisonment by police caused the deprivation of Plaintiff's rights by police; that is, the CITY's failure to train police to prevent false arrest and unlawful imprisonment by police played a substantial part in bringing about or actually causing Plaintiff irreparable harm and damages.

1728.   By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of liberty and privacy, financial loss, terror, humiliation, damage to reputation, and other psychological injuries. All of said injuries may be permanent. Furthermore, Plaintiff suffered direct and indirect financial loss as a proximate result of the false arrest.

1729.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread practices, Durkan's acts as the CITY's final policymaker, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer,

irreparable harm and damages for which he is entitled to recover.

### THIRTIETH CAUSE OF ACTION
UNLAWFUL IMPRISONMENT 2020-268834
### 42 U.S.C. § 1983

1730.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 239 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1731.   In this thirtieth cause of action, defendants named herein include CITY OF SEATTLE, Coomer, and Durkan ("Defendants").

1732.   SPD officers ("police") in the employ of the CITY arrested and imprisoned Plaintiff on September 16, 2020, without a fair and reliable determination of probable cause.

1733.   CITY police acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution ("rights") pursuant to expressly adopted official policy or widespread practices or customs of the CITY regarding face coverings.

1734.   Police acted pursuant to the CITY's expressly adopted official policy, practices or customs and the CITY's official policy or widespread practice or custom caused the deprivation of Plaintiff's rights; as the policy, practices, or customs were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1735.   Durkan acted under color of state law as final policymaker for the CITY regarding Covidian policies, and by so doing deprived Plaintiff of his rights by and through the acts of police acting under Durkan's final policymaking regarding face coverings.

1736.   Having final policymaking authority from the CITY, Durkan's acts as final policymaker for the CITY were a proximate cause of the false arrest of Plaintiff, as Durkan's acts were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff's irreparable harm and damages.

1737.   CITY police acted under color of state law as a proximate result of the failure of the CITY to properly train police, which thereby deprived Plaintiff of his rights pursuant to expressly adopted official policy or widespread practices or customs of the CITY regarding face

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

coverings.

1738.   The CITY's police training regarding face covering policies was not adequate to prevent false arrest by police, or to handle the usual and recurring situations with which police must deal.

1739.   The CITY was deliberately indifferent to the substantial risk that its training regarding face covering policies was inadequate to prevent the known and foreseeable consequences of false arrest and unlawful imprisonment by police

1740.   The failure of the CITY to provide adequate training to prevent false arrest and unlawful imprisonment by police caused the deprivation of Plaintiff's rights by police; that is, the CITY's failure to train police to prevent false arrest and unlawful imprisonment by police played a substantial part in bringing about or actually causing Plaintiff irreparable harm and damages.

1741.   By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of liberty and privacy, financial loss, terror, humiliation, damage to reputation, and other psychological injuries.   All of said injuries may be permanent.   Furthermore, Plaintiff suffered direct and indirect financial loss as a proximate result of the false arrest.

1742.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread practices, Durkan's acts the CITY's final policymaker, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## THIRTY-FIRST CAUSE OF ACTION
### UNLAWFUL IMPRISONMENT 2020-346226
#### 42 U.S.C. § 1983

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 241 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1743.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1744.   In this thirty-first cause of action, defendants named herein include CITY OF SEATTLE, Auderer, Durkan, and Foy ("Defendants").

1745.   SPD officers ("police") in the employ of the CITY arrested and imprisoned Plaintiff on December 16, 2020, without a fair and reliable determination of probable cause.

1746.   CITY police acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution ("rights") pursuant to the CITY's official policy or widespread practices or customs regarding Plaintiff's class.

1747.   Police acted pursuant to the CITY's widespread practices or customs which caused the deprivation of Plaintiff's rights; as the CITY's official policy or widespread practices or customs were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1748.   Durkan acted under color of state law as final policymaker for the CITY regarding official policy or widespread practices or customs regarding Plaintiff's class, and by so doing deprived Plaintiff of his rights by and through the acts of police acting under Durkan's final policymaking regarding Plaintiff's class.

1749.   Having final policymaking authority from the CITY, Durkan's acts as final policymaker for the CITY regarding Plaintiff's class were a proximate cause of the false arrest of Plaintiff, as Durkan's acts were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1750.   CITY police acted under color of state law as a proximate result of the failure of

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 242 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

the CITY to properly train police, which thereby deprived Plaintiff of his rights pursuant to official policy or widespread practices or customs of the CITY regarding Plaintiff's class.

1751.   The CITY's police training regarding Plaintiff's class was not adequate to prevent false arrest by police, or to handle the usual and recurring situations with which police must deal.

1752.   The CITY was deliberately indifferent to the substantial risk that its training regarding retaliatory arrest of Plaintiff's class was inadequate to prevent the known and foreseeable consequences of false arrest and unlawful imprisonment by police.

1753.   The failure of the CITY to provide adequate training to prevent false arrest and unlawful imprisonment of Plaintiff's class by police caused the deprivation of Plaintiff's rights by police; that is, the CITY's failure to train police to prevent false arrest and unlawful imprisonment of Plaintiff's class by police played a substantial part in bringing about or actually causing Plaintiff irreparable harm and damages.

1754.   By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of liberty and privacy, financial loss, terror, humiliation, damage to reputation, and other psychological injuries.  All of said injuries may be permanent.  Furthermore, Plaintiff suffered direct and indirect financial loss as a proximate result of the false arrest.

1755.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread customs or practices, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### THIRTY-SECOND CAUSE OF ACTION
UNLAWFUL IMPRISONMENT 2021-003578
#### 42 U.S.C. § 1983

1756.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 243 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1757.   In this thirty-second cause of action, defendants named herein include CITY OF SEATTLE, Durkan, Ladd, Lerman, and Owen ("Defendants").

1758.   SPD officers ("police") in the employ of the CITY arrested and imprisoned Plaintiff on September 3, 2021, without a fair and reliable determination of probable cause.

1759.   Lerman and Owen acted as integral participants in joint action with state actors to set in motion a series of events by which Lerman and Owen knew or reasonably should have known would unlawfully imprison Plaintiff because of the CITY's policy or widespread practices of discriminating against, and denying the equal protection of the laws to, Plaintiff's class.

1760.   CITY police acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution ("rights") pursuant to the CITY's official policy or widespread practices or customs regarding Plaintiff's class.

1761.   Police acted pursuant to the CITY's widespread practices or customs which caused the deprivation of Plaintiff's rights, as the CITY's official policy or widespread practices or customs were so closely related to the false arrest of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1762.   Durkan acted under color of state law as final policymaker for the CITY regarding official policy or widespread practices or customs regarding Plaintiff's class, and by so doing deprived Plaintiff of his rights by and through the acts of police acting under Durkan's final policymaking regarding Plaintiff's class.

1763.   Having final policymaking authority from the CITY, Durkan's acts as final policymaker for the CITY regarding Plaintiff's class were a proximate cause of the false arrest of Plaintiff, as Durkan's acts were so closely related to the false arrest of Plaintiff as to be the

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 244 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   moving force that caused Plaintiff irreparable harm and damages.

2       1764.   CITY police acted under color of state law as a proximate result of the failure of

3   the CITY to properly train police, which thereby deprived Plaintiff of his rights pursuant to

4   official policy or widespread practices or customs of the CITY regarding Plaintiff's class.

5

6       1765.   The CITY's police training regarding Plaintiff's class was not adequate to prevent

7   false arrest by police, or to handle the usual and recurring situations with which police must deal.

8       1766.   The CITY was deliberately indifferent to the substantial risk that its training

9   regarding retaliatory arrest of Plaintiff's class was inadequate to prevent the known and

10  foreseeable consequences of false arrest and unlawful imprisonment by police.

11      1767.   The failure of the CITY to provide adequate training to prevent false arrest and

12  unlawful imprisonment of Plaintiff's class by police caused the deprivation of Plaintiff's rights

13  by police; that is, the CITY's failure to train police to prevent false arrest and unlawful

14  imprisonment of Plaintiff's class by police played a substantial part in bringing about or actually

15  causing Plaintiff irreparable harm and damages.

16

17      1768.   By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of

18  liberty and privacy, financial loss, terror, humiliation, damage to reputation, and other

19  psychological injuries.  All of said injuries may be permanent.  Furthermore, Plaintiff suffered

20  direct and indirect financial loss as a proximate result of the false arrest.

21      1769.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's

22  policy or widespread customs or practices, Durkan's acts as final policymaker, and the CITY's

23  failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for

24  which he is entitled to recover.

25

26

**THIRTY-THIRD CAUSE OF ACTION**
MALICIOUS PROSECUTION case no. 656877
**42 U.S.C. § 1983**

1770.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1771.   In this thirty-third cause of action, defendants named herein include CITY OF SEATTLE, Coomer, Crawford-Willis, Davison, Gregory, Holmes, Lynch, MacDonald, and Outland, ("Defendants").

1772.   Plaintiff was unlawfully imprisoned on September 11, 2020, by SPD officers ("police") with malicious intent in the employ of the CITY, and CITY prosecutors initiated a criminal proceeding despite knowledge that Plaintiff had committed no crime.

1773.   There was no probable cause for the arrest, imprisonment, nor the prosecution.

1774.   Plaintiff was prosecuted in consolidated SMC case no. 656927 for more than two years.  Charges were dismissed with prejudice on February 24, 2023.

1775.   Holmes and Davison each individually acted as final policymakers for the CITY regarding the malicious prosecution of those of Plaintiff's class.

1776.   By reason of Defendants' acts and omissions, Defendants acted under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of his liberty when they maliciously prosecuted him and subjected him to an unlawful, illegal and excessive detention, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

1777.   Defendants had a policy or custom of maliciously prosecuting individuals of Plaintiff's class despite the lack of probable cause.  Thus, as a result of the above described

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 246 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

policies and customs, Plaintiff was maliciously prosecuted despite the fact that he had committed no violation of the law.

1778.   Defendant prosecutors and judges acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth and Fourteenth Amendments of the United States Constitution ("rights") pursuant to the CITY's official policy or widespread practices or customs ("policy or customs") to maliciously prosecute those of Plaintiff's class.

1779.   Defendant prosecutors and judges acted pursuant to the CITY's policy or customs which caused the deprivation of Plaintiff's rights; that is, the CITY's policy or customs were so closely related to the malicious prosecution of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1780.   Holmes and Davison acted under color of state law as final policymaker for the CITY's prosecutorial policy or customs regarding Plaintiff's class, and by so doing deprived Plaintiff of his rights by and through the acts of Defendant judges and the prosecutors acting under Holmes' and Davison's final policymaking regarding Plaintiff's class.

1781.   Having final policymaking authority from the CITY regarding prosecutorial discretion, the acts of Holmes and Davison as final policymakers for the CITY regarding Plaintiff's class were a proximate cause of the malicious prosecution of Plaintiff; that is, the acts of Holmes and Davison were so closely related to the malicious prosecution of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1782.   CITY prosecutors and judges acted under color of state law as a proximate result of the failure of the CITY to properly train its prosecutors and judges, which thereby deprived Plaintiff of his rights pursuant to the policy or customs of the CITY regarding Plaintiff's class.

1783.   The CITY's training of prosecutors and judge regarding Plaintiff's class was not

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 247 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    adequate to prevent malicious prosecution by prosecutors and judges, nor to handle the usual and

2    recurring situations with which prosecutors and judges must deal.

3        1784.   The CITY was deliberately indifferent to the substantial risk that its training

4    regarding malicious prosecution of Plaintiff's class was inadequate to prevent the known and

5
     foreseeable consequences of malicious prosecution by Defendants.
6
         1785.   The failure of the CITY to provide adequate training to prevent malicious
7
     prosecution of Plaintiff's class by prosecutors and judges caused the deprivation of Plaintiff's
8
9    rights by Defendants; that is, the CITY's failure to prosecutors and judges to prevent malicious

10   prosecution of Plaintiff's class by Defendants played a substantial part in bringing about or

11   causing Plaintiff irreparable harm and damages.

12       1786.   Despite the fact Defendants attended law school and were charged with knowing

13   the law, the malicious prosecution of Plaintiff reflected a deliberate or conscious choice to

14
     countenance the possibility of a constitutional violation of Plaintiff's rights.
15
         1787.   By reason of the foregoing, Plaintiff suffered irreparable harm, physical and
16
     psychological injuries, traumatic stress, post-traumatic stress, mental anguish, economic
17
18   damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.  All

19   of said injuries may be permanent.

20       1788.   As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's

21   policy or widespread customs or practices, the acts as final policymaker by Davison and Holmes,

22   and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm

23
     and damages for which he is entitled to recover.
24
                           **THIRTY-FOURTH CAUSE OF ACTION**
25                    MALICIOUS PROSECUTION case no. 656927

26                              **42 U.S.C. § 1983**

---

INJUNCTIONS, DECLARATORY JUDGMENT                    KURT BENSHOOF
CLAIM FOR DAMAGES                                    1716 N 128th ST
**Page 248 of 280**                                  Seattle, WA 98133
                                                     kurtbenshoof@gmail.com

1789.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1790.   In this thirty-fourth cause of action, defendants named herein include CITY OF SEATTLE, Crawford-Willis, Davison, Gregory, Holmes, Lynch, MacDonald, and Outland ("Defendants").

1791.   Plaintiff was unlawfully imprisoned on September 16, 2020, by SPD officers in the employ of the CITY and prosecuted in consolidated SMC case no. 656927 for more than two years.  Charges were dismissed with prejudice on February 24, 2023.

1792.   There was no probable cause for the arrest, imprisonment, nor the prosecution.

1793.   Holmes and Davison acted as final policymakers for the CITY ATTORNEY'S OFFICE regarding the malicious prosecution of those of Plaintiff's class.

1794.   By reason of Defendants' acts and omissions, Defendants acted under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of his liberty when they maliciously prosecuted him and subjected him to an unlawful, illegal and excessive detention, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

1795.   Defendants had a policy or custom of maliciously prosecuting individuals of Plaintiff's class despite the lack of probable cause. Thus, as a result of the above described policies and customs, Plaintiff was maliciously prosecuted despite the fact that he had committed no violation of the law.

1796.   Defendant prosecutors and judges acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth and Fourteenth Amendments of the United States Constitution ("rights") pursuant to the CITY's official policy or widespread practices or

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 249 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1    customs ("policy or customs") to maliciously prosecute those of Plaintiff's class.

2       1797.   Defendant prosecutors and judges acted pursuant to the CITY's policy or customs

3    which caused the deprivation of Plaintiff's rights; that is, the CITY's policy or customs were so

4
     closely related to the malicious prosecution of Plaintiff as to be the moving force that caused
5
6    Plaintiff irreparable harm and damages.

7       1798.   Holmes and Davison acted under color of state law as final policymaker for the

8    CITY's prosecutorial discretion policy or customs regarding Plaintiff's class, and by so doing

9    deprived Plaintiff of his rights by and through the acts of Defendant judges and the prosecutors

10   acting under Holmes' and Davison's final policymaking regarding Plaintiff's class.

11      1799.   Having final policymaking authority from the CITY regarding prosecutorial

12   discretion, the acts of Holmes and Davison as final policymakers for the CITY regarding

13
     Plaintiff's class were a proximate cause of the malicious prosecution of Plaintiff; that is, the acts
14
15   of Holmes and Davison were so closely related to the malicious prosecution of Plaintiff as to be

16   the moving force that caused Plaintiff irreparable harm and damages.

17      1800.   CITY prosecutors and judges acted under color of state law as a proximate result

18   of the failure of the CITY to properly train its prosecutors and judges, which thereby deprived

19   Plaintiff of his rights pursuant to the policy or customs of the CITY regarding Plaintiff's class.

20      1801.   The CITY's training of prosecutors and judge regarding Plaintiff's class was not

21   adequate to prevent malicious prosecution by prosecutors and judges, nor to handle the usual and

22   recurring situations with which prosecutors and judges must deal.

23      1802.   The CITY was deliberately indifferent to the substantial risk that its training

24
     regarding malicious prosecution of Plaintiff's class was inadequate to prevent the known and
25
26   foreseeable consequences of malicious prosecution by Defendants.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 250 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1803. The failure of the CITY to provide adequate training to prevent malicious prosecution of Plaintiff's class by prosecutors and judges caused the deprivation of Plaintiff's rights by Defendants; that is, the CITY's failure to train prosecutors and judges to prevent malicious prosecution of Plaintiff's class by Defendants played a substantial part in bringing about or causing Plaintiff irreparable harm and damages.

1804. Despite the fact Defendants attended law school and were charged with knowing the law, the malicious prosecution of Plaintiff reflected a deliberate or conscious choice to countenance the possibility of a constitutional violation of Plaintiff's rights.

1805. That by reason of the foregoing, Plaintiff suffered irreparable harm, physical and psychological injuries, traumatic stress, post-traumatic stress, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity. All of said injuries may be permanent.

1806. As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or widespread customs or practices, the acts as final policymaker by Davison and Holmes, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## THIRTY-FIFTH CAUSE OF ACTION
## MALICIOUS PROSECUTION case no. 662870
### 42 U.S.C. § 1983

1807. Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1808. In this thirty-fifth cause of action, defendants named herein include CITY OF SEATTLE, Crawford-Willis, Davison, Gregory, Lynch, and Outland ("Defendants").

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 251 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1809.   Plaintiff was unlawfully imprisoned on December 16, 2020, by SPD officers in the employ of the CITY and prosecuted under SMC case no. 662870 for more than two years. Charges were dismissed with prejudice on February 24, 2023.

1810.   There was no probable cause for the arrest, imprisonment, nor the prosecution.

1811.   Davison acted as final policymakers for the CITY ATTORNEY'S OFFICE regarding the malicious prosecution of those of Plaintiff's class.

1812.   By reason of Defendants' acts and omissions, Defendants acted under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of his liberty when they maliciously prosecuted him and subjected him to an unlawful, illegal and excessive detention, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

1813.   Defendant prosecutors and judges acted under color of state law and deprived Plaintiff of his rights secured to him under the Fourth and Fourteenth Amendments of the United States Constitution ("rights") pursuant to the CITY's official policy or widespread practices or customs ("policy or customs") to maliciously prosecute those of Plaintiff's class.

1814.   Defendant prosecutors and judges acted pursuant to the CITY's policy or customs which caused the deprivation of Plaintiff's rights; that is, the CITY's policy or customs were so closely related to the malicious prosecution of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1815.   Davison acted under color of state law as final policymaker for the CITY's prosecutorial discretion policy or customs regarding Plaintiff's class, and by so doing deprived Plaintiff of his rights by and through the acts of Defendant judges and the prosecutors acting under Holmes' and Davison's final policymaking regarding Plaintiff's class.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1816.   Having final policymaking authority from the CITY regarding prosecutorial discretion, the acts of Davison as final policymakers for the CITY regarding Plaintiff's class were a proximate cause of the malicious prosecution of Plaintiff; that is, the acts of Davison were so closely related to the malicious prosecution of Plaintiff as to be the moving force that caused Plaintiff irreparable harm and damages.

1817.   CITY prosecutors and judges acted under color of state law as a proximate result of the failure of the CITY to properly train its prosecutors and judges, which thereby deprived Plaintiff of his rights pursuant to the policy or customs of the CITY regarding Plaintiff's class.

1818.   The CITY's training of prosecutors and judge regarding Plaintiff's class was not adequate to prevent malicious prosecution by prosecutors and judges, nor to handle the usual and recurring situations with which prosecutors and judges must deal.

1819.   The CITY was deliberately indifferent to the substantial risk that its training regarding malicious prosecution of Plaintiff's class was inadequate to prevent the known and foreseeable consequences of malicious prosecution by Defendants.

1820.   The failure of the CITY to provide adequate training to prevent malicious prosecution of Plaintiff's class by prosecutors and judges caused the deprivation of Plaintiff's rights by Defendants; that is, the CITY's failure to train prosecutors and judges to prevent malicious prosecution of Plaintiff's class by Defendants played a substantial part in bringing about or causing Plaintiff irreparable harm and damages.

1821.   Despite the fact Defendants attended law school and were charged with knowing the law, the malicious prosecution of Plaintiff reflected a deliberate or conscious choice to countenance the possibility of a constitutional violation of Plaintiff's rights.

1822.   That by reason of the foregoing, Plaintiff suffered irreparable harm, physical and

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 253 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

psychological injuries, traumatic stress, post-traumatic stress, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity. All of said injuries may be permanent.

1823.    As a direct, proximate, and foreseeable result of Defendants' acts, the CITY's policy or customs, the acts of Davison as final policymaker, and the CITY's failure to train, Plaintiff has suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

### THIRTY-SIXTH OF ACTION
### VIOLATION OF RICO
### 18 U.S.C. § 1962(c)

1824.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1825.    In this thirty-sixth cause of action, defendants named herein include the CITY, PCC, SPROUTS, Admon, Auderer, Booker, Brier, Cliber, Cook, Coomer, Crawford-Willis, Davison, Durkan, Ervin, Ferguson, Fox, Foy, Franklin-Bihary, Gates, Goslin, Gregory, Hermsen, Holmes, Inslee, Keenan, Ladd, Lentz, Lerman, Lynch, MacDonald, Marinella, Moore, Oishi, Outland, Owen, Rekofke, Russ, Shah, Wallace, and Widlan, ("Defendants").

1826.    Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Enterprise through the pattern and practice of extortion, kidnapping, robbery, witness intimidation, witness retaliation, or prohibited biological weapon activity; predicate acts, "racketeering activities" under 18 U.S.C. § 1961(1)(A), which occurred with the consent and direction of the Enterprise.

1827.    The Enterprise personally knew about, facilitated, approved, or condoned this

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 254 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   pattern and practice, or recklessly disregarded the substantial risk of serious harm posed by the

2   actions and inactions described in the preceding paragraphs.

3       1828.   The Enterprise is an association-in-fact within the meaning of 18 U.S.C. §

4   1961(4), consisting of Defendants and many other individuals including, but not limited to

5   Washington State officials, King County officials, CITY officials, Seattle Public Schools

6   employees, doctors, pharmacists, and employees of other Seattle businesses.

7

8       1829.   All entities are persons within the meaning of 18 U.S.C. § 1961(3) and acted to

9   enable the Defendants to effectuate a conceived plan to abuse their powers by acting under color

10  of law.

11      1830.   The Enterprise was created or used as a tool to effectuate a pattern of racketeering

12  activity.  Each of the Enterprise participants, including Defendants, is a "person" distinct from

13  the Enterprise.

14      1831.   The Enterprise engaged in and affected interstate commerce by and through bank

15  transactions, debit card transactions, or credit card transactions involving more than one state;

16  face coverings were purchased and transported in interstate commerce; and Pfizer BioNTech

17  GTTs were transported in interstate commerce.

18

19      1832.   Defendants exerted influence or control, directly or indirectly, over the Enterprise

20  and have participated in the operation or management of the objectives of the Enterprise in

21  coordination with various Enterprise participants.

22      1833.   As detailed above, the Defendants' pattern of racketeering activity includes acts

23  indictable as bribery under 18 U.S.C. § 201, kidnapping under 18 U.S.C. § 1201, fraud under 18

24  U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, honest services fraud under 18 U.S.C. § 1346,

25  obstruction of justice under 18 U.S.C. § 1501 witness intimidation under 18 U.S.C. § 1512,

26

INJUNCTIONS, DECLARATORY JUDGMENT                 KURT BENSHOOF
CLAIM FOR DAMAGES                                 1716 N 128th ST
**Page 255 of 280**                               Seattle, WA 98133
                                                  kurtbenshoof@gmail.com

witness tampering under 18 U.S.C. § 1512, witness retaliation under 18 U.S.C. § 1513, robbery and extortion under 18 U.S.C. § 1951, bank robbery under 18 U.S.C. § 2113, and acts of domestic terrorism under 18 U.S.C. § 2332(b).

1834.   Plaintiff was one of the intended targets of Defendants' racketeering scheme.

1835.   As part of the same racketeering scheme, others subjected to similar predicate acts by Defendants included, but were not limited to, Molly Anderson, Briana Gage, Daniel Heller, Hanna Koelsch, Staci Sprouts, and A.R.W.

**Public Accommodations.**

1836.   Defendants' fraudulent scheme consisted, in part, of: (a) violating the Civil Rights Act of 1964, (Pub. L. No. 88-352 §§ 201-203) by denying Plaintiff the right to enter public accommodations; (b) to deny Plaintiff the full enjoyment and services of public accommodations; (c) to deny Plaintiff's right to engage in interstate commerce; (d) to allow, enable, or facilitate, Defendants' violations of state and federal laws prohibiting religious discrimination in places of public accommodation; (e) intentionally misrepresenting and concealing the Enterprise participants' role in their association; (f) by Defendants' predicate acts.

**Malicious Prosecution.**

1837.   Defendants' fraudulent scheme consisted, in part, of: (a) allowing, enabling, facilitating, or concealing Defendants' violations the Civil Rights Act of 1964, (Pub. L. No. 88-352 §§ 201-203); (b) to deny Plaintiff's right to engage in interstate commerce; (c) to unlawfully threaten, arrest, or imprison Plaintiff for allegedly committing criminal trespass; (d) to thereby maliciously prosecute Plaintiff; (e) intentionally misrepresenting or concealing Enterprise participants' role in their association; (f) by Defendants' predicate acts.

1933.   Defendants employed by the CITY, and other associates-in-fact, perpetrated

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
   **Page 256 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

predicate acts against Plaintiff premised upon the falsehood that CITY codes are laws under which Plaintiff was subject to the criminal jurisdiction of the CITY.

### Family Court.

1838.   Defendants' fraudulent scheme consisted, in part, of: (a) violating Plaintiff's rights to associate with, and direct the care and upbringing of, his son; (b) to hold or participate in star chamber proceedings; (c) to deny Plaintiff's right to enter courtrooms, to testify, and to question his accusers under oath, (d) to actively conceal, allow, enable, or cause others to conceal or make false statements in judicial proceedings to prevent appropriate judicial review; (e) intentionally misrepresenting and concealing The Enterprise participants' role in their association; (f) by Defendants' predicate acts.

1839.   In implementing their fraudulent schemes, Defendants were aware that Plaintiff depended upon the honesty and integrity of public officials to uphold their oaths of office, of attorneys to uphold their oaths as officers of the court, and of private individuals to be constrained in word and deed by state laws, by federal laws, and by public officials.  Plaintiff also relied on state and federal law obligating Defendants and the Enterprise participants to allow Plaintiff and all citizens access to unbiased courts.

1840.   At all times during the fraudulent schemes, Defendants and the Enterprise participants had a legal and ethical obligation of candor to, and honest dealing with, Plaintiff.

1841.   The conduct of the Enterprise described above constituted "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Defendants chose to conduct their activities and transactions in such a manner that constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

1842.   Defendants' motive in creating or operating the Enterprise was to use CRAP to

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 257 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   coerce Seattleites, including Plaintiff, to wear a face covering and be injected with a "covid

2   vaccine."

3       1843.   Defendants' motive in creating or operating the Enterprise was to enrich

4   themselves or their employer, or to ensure their continued employment and career advancement,

5   or to obtain additional profit from excess billings, unnecessary litigation, theft, fraud, or

6   extortion.

7

8       1844.   The Enterprise CRAP were designed to, and did, cause Plaintiff to pay tens of

9   thousands of dollars during the Defendants' period of misconduct and criminal activity.

10      1845.   Plaintiff was injured in his property by reason of these violations in that Plaintiff

11  paid tens of thousands of dollars to protect himself, his son, his property, and his church, that he

12  would not have paid had Defendants not engaged in this pattern of racketeering activity.

13      1846.   The injuries to Plaintiff were directly and proximately caused by the Enterprise

14  racketeering activity. In the absence of Defendants' improper conduct, Plaintiff would not have

15  been deprived of his constitutional rights and ordered to pay fees, thereby causing economic harm

16  in the form of unnecessary payments and out-of-pocket expenditures. These injuries included

17  both paying for more court-ordered services than would have otherwise occurred absent the

18  RICO violations and paying more in legal fees than would have occurred absent the RICO

19

20  violations.

21      1847.   Above all, the Enterprise participants misled and deceived Plaintiff and others

22  who rely on their ethical conduct, including Plaintiff.

23      1848.   Because of violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff

24  for three times the damages sustained, plus the costs of this suit, including reasonable attorneys'

25  fees.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 258 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1   1849.   By reason of the foregoing, and as a direct and proximate result of the Defendants'

2   fraudulent misrepresentations, Plaintiff has suffered damages.   Plaintiff is entitled to

3   compensatory damages, equitable and declaratory relief, punitive damages, court costs, and

4   reasonable attorneys' fees.

### THIRTY-SEVENTH CAUSE OF ACTION
VIOLATION OF RICO CONSPIRACY
#### 18 U.S.C. § 1962(d)

9   1850.   Plaintiff realleges and incorporates by reference the preceding paragraphs with

10   the same force and effect as if fully set forth herein.

11   1851.   In this thirty-seventh cause of action, defendants named herein include the CITY,

12   PCC, SPROUTS, Admon, Auderer, Booker, Brier, Cliber, Cook, Coomer, Crawford-Willis,

13   Davison, Durkan, Ervin, Ferguson, Fox, Foy, Franklin-Bihary, Gates, Goslin, Gregory, Hermsen,

14   Holmes, Inslee, Keenan, Ladd, Lentz, Lerman, Lynch, MacDonald, Marinella, Moore, Oishi,

15   Outland, Owen, Rekofke, Russ, Shah, Wallace, and Widlan, ("Defendants").

16   1852.   The Enterprise knowingly and willfully acted in concert to violate the First,

17   Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

18   1853.   18 U.S.C. § 1962(d) provides that it "shall be unlawful for any person to conspire

19   to violate any of the provisions of subsection (a), (b), (c) of this section."

20

21   1854.   Defendants and other co-conspirators violated 18 U.S.C. § 1962(d) by conspiring

22   to violate 18 U.S.C. § 1962(c).   The object of this conspiracy was to conduct or participate in,

23   directly or indirectly, the conduct of the affairs of the Enterprise described previously through a

24   pattern of racketeering activity.

25   1855.   Defendants and the Enterprise participants, as co-conspirators, engaged in

26

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

numerous overt and predicate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiff of money or property.

1856.   The nature of the co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent and extortionate acts have been, and are part of, an overall pattern of racketeering activity.

1857.   As a direct and proximate result of Defendants' and the Enterprise's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), as described throughout this Complaint, Plaintiff has been financially and emotionally injured.

1858.   The Defendants sought to and have engaged in the commission of and continue to commit overt acts, including the following unlawful racketeering predicate acts discussed extensively herein, including but not limited to:

a. Multiple instances of kidnapping violations of 18 U.S.C. § 1201;

b. Multiple instances of mail fraud violations 18 U.S.C. §§ 1341 and 1346;

c. Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

d. Multiple instances of witness or victim tampering violations of 18 U.S.C. § 1512;

e. Multiple instances of retaliating against a witness or victim violations of 18 U.S.C. § 1513;

1859.   Defendants sought to and have in engaged in the commission of multiple violations of The Hobbs Act including but not limited to the following state law claims:

f. Multiple instances of unlawful imprisonment violations of RCW 9A.40.040;

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 260 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

g. Multiple instance of malicious prosecution violations of RCW 9.62.010;

h. Multiple instances of extortion violations of RCW 9A.56.120; .130;

i. Multiple instances of theft violations of RCW 9A.56.030;

j. Multiple instances of robbery violations of RCW 9A.56.200;

k. Multiple instances of perjury violations of 9A.72.020;

l. Multiple instances of bribing a witness violations of RCW 9A.72.090;

m. Multiple instances of intimidating a witness violations of RCW 9A.72.110;

n. Multiple instances of tampering with a witness violations of RCW 9A72.120;

o. Multiple instances of fraud;

1860.   Because of these violations of 18 U.S.C. § 1962(d), individual Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorney's fees.

1861.   By reason of the foregoing, and as a direct and proximate result of Defendants' violations of criminal statutes, Plaintiff has suffered damages. Plaintiff is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees.

### THIRTY-EIGHTH CAUSE OF ACTION
CONSPIRACY TO OBSTRUCT JUSTICE

**42 U.S.C. § 1985(2)**

1862.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1863.   In this thirty-eighth cause of action, defendants named herein include Admon, Auderer, Brier, Cliber, Cook, Coomer, Crawford-Willis, Davison, Durkan, Ervin, Estudillo, Ferguson, Fox, Foy, Franklin-Bihary, Gates, Goslin, Gonzalez, Gregory, Hermsen, Holmes,

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 261 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1  Keenan, Ladd, Lentz, Lerman, Lynch, MacDonald, Marinella, Martine, Moore, Oishi, Outland,

2  Owen, Rekofke, Russ, Wallace, and Widlan, ("Defendants").

3       1864.   For the purposes of this claim under 42 U.S.C. § 1985(2), United States officials,

4  Washington State officials, King County officials, CITY officials, and those private individuals

5  in joint action with state actors are "persons" who acted under color of law.

6  

7                                   **Obstruction of Justice.**

8       1865.   Estudillo and Martinez conspired to deter, by force, intimidation, or threat,

9  Plaintiff from attending United States District Court, or from testifying to any matter pending

10  therein, freely, fully, and truthfully.

11                                     **Equal Protection.**

12       1866.   Defendants conspired for the purpose of impeding, hindering, obstructing, or

13  defeating, in any manner, the due course of justice in Washington, with intent to deny Plaintiff

14  the equal protection of the laws, or to injure him or his property for lawfully enforcing, or

15  attempting to enforce, the right of Plaintiff and his class, and his son, to the equal protection of

16  the laws.

17  

18       1867.   Defendants, because of their invidious discriminatory animus towards Plaintiff

19  and his class, willfully and maliciously conspired using misrepresentation, coercion, harassment,

20  intimidation, threats, theft, extortion, robbery, unlawful arrest and imprisonment, malicious

21  prosecution, and the above predicate acts, to prevent Plaintiff and his class from securing the

22  equal rights, privileges and immunities of citizens under the laws of the United States and the

23  State of Washington including, but not limited to, Plaintiff's right to religious freedom, to

24  freedom of association, to freedom from forced association, to petition for redress of grievances,

25  to be secure in his person and his papers, his right to life, liberty, and the pursuit of happiness,

26  

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

his right to not be subjected to excessive bail, and his right to due process.

1868.    Defendants' three-year ongoing persecution caused Plaintiff to become stricken with fear of imminent loss of fatherhood, livelihood, freedom, home, and church; and to suffer extreme terror, mental anguish, emotional anguish, and physical distress.

1869.    By reason of the foregoing, Plaintiff suffered irreparable harm damages for which he is entitled to recover.

### THIRTY-NINTH CAUSE OF ACTION
## CONSPIRACY TO DEPRIVE RIGHTS
### 42 U.S.C. § 1985(3)

1870.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1871.    In this thirty-ninth cause of action, defendants named herein are Admon, Auderer, Booker, Brier, Chess, Cliber, Cook, Coomer, Crawford-Willis, Davison, Durkan, Ervin, Estudillo, Ferguson, Fox, Foy, Franklin-Bihary, Gates, Gonzalez, Goslin, Gregory, Hermsen, Holmes, Inslee, Keenan, Ladd, Lentz, Lerman, Lynch, MacDonald, Marinella, Martinez, Moore, Oishi, Owen, Outland, Rekofke, Russ, Shah, Wallace, and Widlan, ("Defendants").

1872.    For the purposes of this claim under 42 U.S.C. § 1985(3), United States officials, Washington State officials, King County officials, CITY officials, and those private individuals in joint action with state actors are "persons."

### Deprivation of Rights or Privileges.

1873.    Defendants, because of their invidious discriminatory animus towards Plaintiff and his class, willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving, either directly or indirectly, Plaintiff and his class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 263 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within Washington the equal protection of the laws;

1874.    Defendants thus conspired to deprive Plaintiff and his class using the above misrepresentation, coercion, harassment, intimidation, threats, theft, extortion, robbery, unlawful arrest and imprisonment, malicious prosecution, and predicate acts.

1875.    By reason of the foregoing, Plaintiff suffered, and continues to suffer, irreparable harm damages for which he is entitled to recover.

## FORTIETH CAUSE OF ACTION
### NEGLECT TO PREVENT
### 42 U.S.C. § 1986

1876.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1877.    In this fortieth cause of action defendants named herein include Admon, Brier, Cliber, Crawford-Willis, Estudillo, Ferguson, Franklin-Bihary, Gonzalez, Gregory, Hermsen, Inslee, Keenan, Lerman, Lynch, Marinella, Oishi, O'Donnell, Outland, Owen, Rekofke, Russ, Shah, and Widlan, ("Defendants").

1878.    All refusals or neglect to act by Defendants occurred within the previous twelve months.

### Section 2 Neglect.

1879.    Estudillo had actual knowledge of the § 1985(2) conspiracy and, despite having power to prevent or aid the preventing of the commission of the same, refused or neglected to act to prevent the denial of the right of Plaintiff and his class the full access to the Seattle U.S. District courthouse.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 264 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1880.   Admon, Brier, Cliber, Crawford-Willis, Estudillo, Ferguson, Franklin-Bihary, Gonzalez, Gregory, Hermsen, Inslee, Keenan, Lerman, Ladd, Lynch, Marinella, Oishi, Outland, Owen, Rekofke, Russ, Shah, Wallace, and Widlan had actual knowledge of the § 1985(2) conspiracy and, despite having power to prevent or aid the preventing of the commission of the same, refused or neglected to act to prevent acts impeding, hindering, obstructing, or defeating the due course of justice in Washington; that is, the acts intended to deny Plaintiff and his class the equal protection of the laws, or to injure him or his property for attempting to enforce his rights, those of A.R.W., and those of Plaintiff's class, to the equal protection of the laws.

### Section 3 Neglect.

1881.   Defendants had actual knowledge of the § 1985(3) conspiracy and, despite having power to prevent or aid the preventing of the commission of the same, refused or neglected to do so; that is, the acts intended to deprive, either directly or indirectly, Plaintiff or his class of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within such State or Territory the equal protection of the laws.

1882.   By reason of the foregoing, and as a direct and proximate result of Defendants' neglect to prevent wrongs conspired to be done, Plaintiff suffered, and continues to suffer, irreparable harm and damages.  Plaintiff is entitled to recover compensatory damages, equitable and declaratory relief, punitive damages, court costs, and reasonable fees.

### FORTY-FIRST CAUSE OF ACTION
SUSPENSION OF HABEAS CORPUS
**42 U.S.C. § 1983**

1883.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 265 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1884. In this forty-first cause of action defendants named herein include Rosen and Thurston ("Defendants").

1885. United States Constitution Art I, § 9, clause 2, states that the privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it; similarly, Wash. Const. art. I § 13 does so state.

1886. Through the Fourteenth Amendment, the states are precluded from acting in violation of United States Constitution Art I, § 9, clause 2.

1887. The district courts have original jurisdiction under 28 U.S.C. §1343(a)(3) to redress the suspension by state and federal judges of any right or privilege secured by the United States Constitution, including the privilege of the writ of habeas corpus.

1888. Rosen knowingly and willfully acted *ultra vires* by refusing to grant the writ; that is, Rosen did so by denying Plaintiff's right to have the authority and jurisdiction examined by which Plaintiff had been imprisoned under civil procedure, restrained from A.R.W.

1889. Thurston knowingly and willfully acted *ultra vires* by refusing to grant the writ; that is, Thurston did so by denying Plaintiff's right to have the authority and jurisdiction examined by which Plaintiff had been imprisoned under the quasi-civil procedure of King County family court, and thereby restrained from A.R.W.

1890. Rosen and Thurston acted under color of law to allow, enable, facilitate, or perpetrate the *de facto* suspension of the writ of habeas corpus regarding Plaintiff's habeas petitions.

1891. By reason of the foregoing and as a direct, proximate, and foreseeable result of Defendants' acts Plaintiff suffered, and continues to suffer, irreparable harm damages for which he is entitled to recover.

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2

3

**FORTY-SECOND CAUSE OF ACTION**
VIOLATION OF 13TH AMENDMENT
**42 U.S.C. § 1983**

4       1892.   Plaintiff realleges and incorporates by reference the preceding paragraphs with

5   the same force and effect as if fully set forth herein.

6       1893.   In this forty-second cause of action, defendants named herein include Cliber,

7   Keenan, and Owen ("Defendants").

8       1894.   Through the equal protection clause of the Fourteenth Amendment, Defendants

9   were prohibited from violating the Thirteenth Amendment prohibitions against imposing

10

11  involuntary servitude upon Plaintiff's class, absent him being duly convicted of a crime.

12      1895.   Defendants acted as integral participants to set in motion a series of events by

13  which Plaintiff was subject to involuntary servitude, which defendants knew or reasonably

14  should have known would violate Thirteenth Amendment prohibitions against subjecting

15  Plaintiff's class to involuntary servitude.

16      1896.   Defendants acted with deliberate indifference to truth, to law, and to the rights

17  Plaintiff's class, which harmed Plaintiff as a proximate and foreseeable result.

18      1897.   Defendants' acts forced Plaintiff to choose between (1) having no in-person

19  contact with A.R.W., or (2) involuntary servitude involving interstate commerce to pay At

20  INDABA as the condition by which Plaintiff could have in-person contact with his own son.

21

22      1898.   Plaintiff's involuntary servitude was the means by which he paid approximately

23  $1,5000 per month to At INDABA between November 2021 and June 2022.

24      1899.   Plaintiff's in-person visits with his son were terminated when Plaintiff's

25  involuntary servitude ended.

26

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
  **Page 267 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1900.    By reason of the foregoing and as a direct, proximate, and foreseeable result of Defendants' acts Plaintiff suffered, and continues to suffer, irreparable harm damages for which he is entitled to recover.

## FORTY-THIRD CAUSE OF ACTION
PRELIMINARY INJUNCTION case no. 656749

### Fed. R. Civ. P. 65(a)

1901.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1902.    In this forty-third cause of action, CITY OF SEATTLE, Davison, and Outland are named as respondents herein.

1903.    To be valid and enforceable, a judgment must be supported by three elements: (1) the court must have jurisdiction of the parties; (2) the court must have jurisdiction of the subject matter; and (3) the court must have the authority to render the particular judgment.

1904.    Void judgments must be dismissed, regardless of timeliness if jurisdiction is deficient.

1905.    Courts have specified legals standards to obtain a preliminary injunction, such as is sought here, to wit: (1 ) substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.

1906.    Plaintiff contends that the CITY's arrest, prosecution, and trial of Plaintiff's alleged violations of CITY codes was absent subject matter jurisdiction and was retaliatory for the exercise of his rights of association, beliefs, speech, expression, and petitions, in violation of

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 268 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

the First Amendment, and that Defendants violated the due process clause and Plaintiff's right to equal protection under the Fourteenth Amendment.

1907.   The CITY cannot prevail, as it cannot demonstrate that its enforcement, prosecution, and adjudication of CITY face covering policies under municipal codes: (1) did not violate the Washington Constitution, (2) did not violate Plaintiff's rights, and (3) was justified by "interests of the highest order"—a so called, "compelling" interest—and that CITY face covering policy was "narrowly tailored" to achieve those interests.

1908.   Moreover, where a § 1983 action seeking damages alleges constitutional violations that would necessarily imply the invalidity of the conviction or sentence, the prisoner must establish that the underlying sentence or conviction has been invalidated on appeal, by a habeas petition, or through some similar proceeding.

1909.   *Habeas corpus* is not available to Plaintiff under 28 U.S.C. § 2254 because he is not currently imprisoned by the conviction, though he lives under constant fear of immediate arrest by CITY officers, employees, or agents.

1910.   Without a sentencing hearing, which would subject Plaintiff to immediate and indefinite unlawful imprisonment under multiple warrants issued by SMC defendant judges, appeal is unavailable to Plaintiff; that is, the extraordinary circumstances constitute a legal limbo, entrapping Plaintiff absent other remedy.

1911.   Section 1983 expressly authorizes a suit in equity, federal courts may issue injunctions in actions under this law.

1912.   *Younger* abstention cannot prevail. The irreparable harm to Plaintiff is both great and immediate; protection of the constitutional rights of Plaintiff are at issue; the circumstance are of an extraordinary nature.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 269 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1913.    The trial, absent jurisdiction, was held ***nearly two years ago;*** The state cannot have any interest in perpetuating corrupt abuses of power by defendants.

1914.    Plaintiff cannot file an appeal of the verdict in state court, as it has yet to go to sentencing.    The corruption in state courts has left Plaintiff with nowhere to turn but this Honorable Court.

1915.    Federal questions raised by Plaintiff which underly the CITY's prosecution of Plaintiff invoke this Court's jurisdiction under 28 U.S.C. Section § 1331.

**(1) Plaintiff Will Eventually Prevail on the Merits**

1916.    As Plaintiff did not violate any law by entering any store without a mask, Plaintiff never violated any criminal trespass statute by which the CITY could lawfully prosecute Plaintiff.

1917.    As Plaintiff always left payment and tip for his items, Plaintiff never stole anything.    Evidencing the video relating to Plaintiff's shopping at PCC will show that PCC owes Plaintiff money from each and every shopping trip.

1918.    Furthermore, when the denial of constitutional rights perpetrated by Brier, Cook and Goslin is revealed at trial, no doubt will remain in the minds of the jury that Plaintiff was, and is, both persecuted and innocent.

**(2) Plaintiff Will Suffer Irreparable Injury Unless Injunction Issues**

1919.    The CITY has already issued tens of thousands of dollars of "failure to appear" bench warrants in this case against Plaintiff as one of the many means by which to harass, intimidate, arrest, and imprison Plaintiff.

1920.    Unless this Court acts immediately and decisively, it is inevitable that the CITY's tyrannical abuses of Plaintiff will cause him further irreparable injury.    Any deprivation of any constitutional right is an irreparable injury.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 270 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1921.   While the 9th Circuit policy may consider other circuit court rulings as only advisory, the interests of justice require notice of holdings directly related to the instant claims. "[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"

### (3) Threatened Injury to Plaintiff Outweighs Whatever Damage the Proposed Injunction May Cause the Opposing Party

1922.   Plaintiff asserts that the threatened injury and irreparable harm identified above outweighs any potential damage to Defendants.  In fact, Plaintiff asserts that an injunction staying case no. 656749 will save the CITY money; the trial conducted by the CITY in September 2021 would never survive strict scrutiny on appeal due to the egregious violations of due process.  In short, the longer this proceeding is allowed to fester, the more liability the CITY will incur.

1923.   Leaving aside the issue in controversy of whether CITY codes have jurisdiction over Plaintiff, the CITY may argue that a preliminary injunction would significantly hinder the CITY's obligations to enforce or adjudicate municipal codes against Plaintiff, "[w]hen a constitutional right hangs in the balance, though, 'even a temporary loss' usually trumps any harm to the defendant."

1924.   The only damage to Defendants that may occur is to their credibility as ethical and moral individuals and their liability for financial damages arising from their discrimination and malicious prosecution of Plaintiff.

### (4) That the Injunction, If Issued, Would Not Be Adverse to the Public Interest

1925.   There is no public interest in this Court permitting the continued discrimination and malicious prosecution of Plaintiff; that is, to do so would legitimize the irrational, arbitrary and capricious beliefs of all defendants named in the instant complaint, from which said discrimination and malicious prosecutions have arisen.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 271 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1926.    The public interest is best served by enjoining Defendants from perpetrating further civil rights violations or crimes, lest the public's trust in the integrity of executive and judicial officers be irreparably harmed.

1927.    It is "always in the public interest to prevent the violation of a party's constitutional rights."  As Plaintiff is certain to succeed on his religious and free expression claims, these factors also favor Plaintiff.  Thus, Plaintiff has made a sufficient showing as to all four elements for a preliminary injunction against enforcement of this policy.

**(5) CITY Claim of Disfavored Injunction**

1928.    Plaintiff is not seeking a disfavored injunction. Plaintiff is seeking a prohibitory injunction rather than a disfavored mandatory injunction because he seeks to prohibit the CITY from taking adverse action against him for a violation of his constitutional rights.

1929.    This injunction does not grant him all the relief he would receive after a trial on the merits either, as he could receive other relief (such as damages and attorneys' fees).

1930.    Neither would this injunction alter the status quo.

1931.    Finally, this injunction simply seeks to preserve "the last peaceable uncontested status existing between the parties before the dispute developed."

**FORTY-FOURTH CAUSE OF ACTION**
EMERGENCY INJUNCTION case no. 656748

**Fed.R.Civ.P. 65(a)**

1932.    Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1933.    In this forty-fourth cause of action, CITY OF SEATTLE, Davison, and Outland are named as respondents herein.

**(1) Plaintiff Will Eventually Prevail on the Merits**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 272 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1934.    As Plaintiff did not violate any law by entering any store without a mask, Plaintiff never violated any criminal trespass statute by which the CITY could lawfully prosecute Plaintiff.

1935.    Furthermore, when the denial of constitutional rights perpetrated by Brier, Cook and Goslin, are revealed at trial, no doubt will remain in the minds of the jury that Plaintiff was, and is, both persecuted and innocent.

**(2) Plaintiff Will Suffer Irreparable Injury Unless Injunction Issues**

1936.    The CITY has issued tens of thousands of dollars of "failure to appear" bench warrants against Plaintiff, the latest one being $25,000, as one of the many means by which to harass, intimidate, arrest, and imprison Plaintiff.    Unless this Court acts immediately and decisively, it is inevitable that the CITY's tyrannical abuses of Plaintiff will continue unchecked.

**(3) Threatened Injury to Plaintiff Outweighs Whatever Damage the Proposed Injunction May Cause the Opposing Party**

1937.    Plaintiff asserts that the threatened injury and irreparable harm identified above outweighs any potential damage to Defendants.    In fact, Plaintiff asserts that an injunction staying case no. 656748 will save the CITY money; the CITY's prosecution of Plaintiff would never survive the strict scrutiny at trial due to the egregious violations of due process.    In short, the longer this proceeding is allowed to fester, the more liability the CITY will incur.

1938.    The only damage to Defendants that may occur is to their credibility as ethical, moral, and law-abiding individuals.

**(4) That the Injunction, If Issued, Would Not Be Adverse to the Public Interest**

1939.    There is no public interest in this Court permitting the continued discrimination and malicious prosecution of Plaintiff to legitimize the irrational, arbitrary and capricious beliefs of Defendants from which said discrimination and malicious prosecutions have arisen.

1940.    The public interest is best served by enjoining the CITY from perpetrating further

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 273 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

civil rights violations or crimes, lest the public's trust in the integrity of the CITY's executive

and judicial officers be irreparably harmed.

## FORTY-FIFTH CAUSE OF ACTION
EMERGENCY INJUNCTION case no. 669329

### Fed.R.Civ.P. 65(a)

1941.    Plaintiff realleges and incorporates by reference the preceding paragraphs with

the same force and effect as if fully set forth herein.

1942.    In this forty-fifth cause of action, CITY OF SEATTLE, Davison, and Outland,

are named as respondents herein.

### (1) Plaintiff Will Eventually Prevail on the Merits

1943.    As the family court did not have subject matter jurisdiction by which to grant

temporary orders or parenting plans which allegedly limited Plaintiff's right of association with

A.R.W., such orders or plans were *void ab initio.*

1944.    Furthermore, when the denial of Plaintiff's parental rights perpetrated by Cliber,

Lerman, Keenan, and Owen, are revealed at trial, no doubt will remain in the minds of the jury

that Plaintiff was, and is, entirely innocent and that he has been maliciously, irreparably harmed.

### (2) Plaintiff Will Suffer Irreparable Injury Unless Injunction Issues

1945.    The CITY ignored absence of personal service, pursuant to RCW 35.20.270, and

thereafter issued a $50,000 "failure to appear" bench warrant against Plaintiff as one of the many

means by which to harass, intimidate, arrest, and imprison Plaintiff.  Unless this Court acts

immediately and decisively, it is inevitable that the CITY's tyrannical abuses of Plaintiff will

continue, inflicting further irreparably harm upon him.

### (3) Threatened Injury to Plaintiff Outweighs Whatever Damage the Proposed Injunction May Cause the Opposing Party

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
 Page 274 of 280

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1946.   Plaintiff asserts that the threatened injury and irreparable harm identified above outweighs any potential damage to Defendants.  In fact, Plaintiff asserts that an injunction staying case no. 669329 will save the CITY money; the CITY's prosecution of Plaintiff would never survive the strict scrutiny at trial due to the egregious violations of due process and plaintiff's First Amendment rights.  In short, the longer this proceeding is allowed to fester, the more liability the CITY will incur.

1947.   The only damage to Defendants that may occur is to their credibility as ethical, moral, and law-abiding individuals.

**(4) That the Injunction, If Issued, Would Not Be Adverse to the Public Interest**

1948.   There is no public interest in this Court permitting the continued discrimination and malicious prosecution of Plaintiff to legitimize the irrational, arbitrary and capricious beliefs of Defendants from which said discrimination and malicious prosecutions have arisen.

1949.   The public interest is best served by enjoining Defendants from perpetrating further civil rights violations or crimes, lest the public's trust in the integrity of executive and judicial officers be irreparably harmed.

**FORTY-SIXTH CAUSE OF ACTION**
EMERGENCY INJUNCTION case no. 671384

**Fed.R.Civ.P. 65(a)**

1950.   Plaintiff realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1951.   In this forty-sixth cause of action, CITY OF SEATTLE, Davison, and Outland, are named as respondents herein.

**(1) Plaintiff Will Eventually Prevail on the Merits**

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 275 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1952.    As the family court did not have subject matter jurisdiction by which to grant temporary or final orders or parenting plans which allegedly limited Plaintiff's right of association with A.R.W., such orders or plans were *void ab initio*.  It therefore follows that any temporary protection order issued by SMC was fraud upon fraud; *void ab initio*.

1953.    Furthermore, when the denial of constitutional rights perpetrated by Defendants are revealed at trial, no doubt will remain in the minds of the jury that Plaintiff was, and is, entirely innocent and has been maliciously harmed by Defendants.

### (2) Plaintiff Will Suffer Irreparable Injury Unless Injunction Issues

1954.    The CITY has already flagrantly ignored Plaintiff's rights, in violation of Wash. Const. art I § 14, by issuing a $250,000 arrest warrant against Plaintiff as one of the many means by which to harass, intimidate, arrest, and imprison Plaintiff.  Unless this Court acts immediately and decisively, it is inevitable that the CITY's tyrannical abuses of Plaintiff will continue unchecked.

### (3) Threatened Injury to Plaintiff Outweighs Whatever Damage the Proposed Injunction May Cause the Opposing Party

1955.    Plaintiff asserts that the threatened injury and irreparable harm identified above outweighs any potential damage to Defendants.  In fact, Plaintiff asserts that an injunction staying case no. 671384 will save the CITY money; the CITY's prosecution of Plaintiff would never survive the strict scrutiny at trial due to the egregious violations of due process.  In short, the longer this proceeding is allowed to fester, the more liability the CITY will incur.

1956.    The only damage to Defendants that may occur is to their credibility as ethical, moral, and law-abiding individuals.

### (4) That the Injunction, If Issued, Would Not Be Adverse to the Public Interest

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 276 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1957.   There is no public interest in this Court permitting the continued discrimination and malicious prosecution of Plaintiff to legitimize the irrational, arbitrary and capricious beliefs of Defendants from which said discrimination and malicious prosecutions have arisen.

1958.   The public interest is best served by enjoining Defendants from perpetrating further civil rights violations or crimes, lest the public's trust in the integrity of executive and judicial officers be irreparably harmed.

## IX.   DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Injunctive relief restraining and enjoining CITY OF SEATTLE, as well as its officers, officials, agents, servants, employees, attorneys, and all persons acting in concert or participation with them (*See* Fed. R. Civ. P. 65(d)(2)) from engaging in any act to summon, detain, arrest, prosecute, sentence, or imprison Plaintiff under Seattle Municipal case nos. 656749; 656748; 669329; and 671384;

B. Declaratory relief to Plaintiff under Fed.R.Civ.P. 57 affirming or denying each of the federal questions in the first cause of action; absent any request for monetary damages.

C. An order declaring that all Defendants' acts or omissions, described herein, violated the First, Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution;

D. Compensatory damages against PCC NATURAL MARKETS, Inc. and SPROUTS FAMERS MARKET, Inc.

E. Compensatory damages against all Defendants jointly and severally in their individual capacity in an amount to be determined at trial;

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 277 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

F. Compensatory damages against CITY OF SEATTLE in accordance with Exhibit P47A-P47H);

G. Punitive damages against all Defendants in their individual capacity in an amount to be determined at trial;

H. Punitive damages against PCC NATURAL MARKETS, Inc. and SPROUTS FARMERS MARKET, Inc.

I. Reasonable costs and fees, including fees in accordance with RCW 4.84; 42 U.S.C. § 2000a-3(b); 28 U.S.C. § 1927; 28 U.S.C. § 2412(d)(1)(A); Fed.R.Civ.P. 11(1); Fed.R.Civ.P. 54(d); and any other applicable law.

J. Pre- and post-judgment interest as allowed by law;

K. Treble damages against all Defendants in the C19 Enterprise;

L. That all Defendants be disgorged of all ill-gotten gains, including by not limited to, wages, bribes, kickbacks, salaries, fees, and any other monetary or non-monetary gain as a result of the Enterprise, and that such ill-gotten gains be given to charity to aid those harmed by the Enterprise, particularly children.;

M. Any other relief this Court deems just and proper.

## X.    EMPANELMENT OF GRAND JURY

Plaintiff incorporates by reference the facts set forth above as if set forth herein full.

Plaintiff demands the empanelment of a federal grand jury to hear all evidence regarding the acts of Defendants in violation of federal law under 18 U.S.C. §§ 1951; 1962.

Plaintiff seeks compliance with title 42 U.S.C. § 1987 (Prosecution of violation of certain laws) that authorizes and requires, at the expense of the United States, to institute prosecutions against all persons violating any of the provisions of Title 18 U.S.C. § 241 and 242, Title 18 U.S.C. § 1964 (a) (b) (c) and § 1968 (Civil investigative demand) and to cause such persons to be arrested, and

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 278 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

imprisoned or bailed, for trial before the court of the United States or the territorial court having cognizance of the offense. See Pub. Law 106-274, Sec. 4 (d), Sept. 22, 2000, 114 Stat. 804.

As a proximate result of the acts detailed above, depriving Plaintiff of constitutionally protected rights, and the concerted effort on the part of Defendants to violate Plaintiff's rights, absent of due process, as well as repeated and multiple violations of Washington Law and the rights protected by the Washington Constitution, specifically: Article I, §§ 3; 4; 5; 7; 10; 11; 13; 14; 17; 21; 2; 24 of the Washington Constitution.

Plaintiff demands the empanelment of a federal grand jury to hear all evidence regarding the acts of Defendants in violation of federal law under domestic terrorism under 18 U.S.C. § 2331 §§ 802 of the USA PATRIOT Act (Pub. L. No. 107-52).

Section 802 of the USA PATRIOT Act expanded the definition of terrorism to cover "domestic," as opposed to international terrorism. A person engages in domestic terrorism if they do an act "dangerous to human life" that is a violation of the criminal laws of a state or the United States, if the act appears to be intended to: (i) intimidate or coerce a civilian population; (ii) influence the policy of a government by intimidation or coercion.

Pursuant to the 1871 Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States of the Forty-Second Congress, Session I, Ch. 22, § 2, this Court has jurisdiction of all causes, civil and criminal; such action to be persecuted in the proper district or circuit court of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts under the provisions of the act of April ninth, eighteen hundred and sixty-six, entitled "An act to protect all persons in the United States in their civil rights and to furnish their means of vindication."

Under Wash. Const. Art. V § 2 Inslee, Shah, and judicial officers of courts not of record, shall be liable to impeachment for high crimes and misdemeanors, or malfeasance in office.

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 279 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## XI.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution and pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

## XII.   DEMAND FOR UNBIASED COURT

Plaintiff demands an impartial trier of fact and law; that is, a judge who possesses the moral and intellectual courage to adjudicate the instant case unfettered by the CRAP of the C19 Enterprise and public-private orthodoxy lacking factual support, common sense, internally consistent logic, or lawful authority.

## XIII.   VERIFICATION AND CLOSING

Plaintiff does hereby solemnly swear that all herein be true to the best of his knowledge, under penalty of perjury under the laws of Washington state and the United States of America.

Signed in Seattle, in King County, in Washington state.

Dated this 7th day September 2023

Respectfully submitted,

Kurt Benshoof, Plaintiff *Pro se*

INJUNCTIONS, DECLARATORY JUDGMENT
CLAIM FOR DAMAGES
**Page 280 of 280**

KURT BENSHOOF
1716 N 128th ST
Seattle, WA 98133
kurtbenshoof@gmail.com