

Hon. Judge James Robart
United States District Court for the Western District of Washington
United States Courthouse
1051 6th Avenue
Seattle, Washington 98104

Your Honor:

The Seattle Community Police Commission ("CPC") provides this letter responding to the Seattle Accountability System Sustainability Assessment submitted by the Federal Monitoring Team to the Court on December 29, 2023 (the "Monitor's Report"). The Monitor provided the CPC with a draft copy of the Report and the CPC attempted to raise the issues addressed in this letter directly with the Monitor, but, in the CPC's view, the short deadlines established for reactions to the draft precluded meaningful discussion of the CPC's concerns. Whatever the cause, the CPC's input does not appear to have been taken into account in the final Monitor's Report, which is largely unchanged from the initial draft.

In performing his assessment, the Monitor minimized—and sometimes simply ignored—Seattle's bold and singular plan to prioritize direct community involvement in police policy. Seattle's approach has empowered its citizens by offering them direct input into the methods and conduct of the officers with whom they interact. Because this community engagement was a fundamental principle in Seattle's police accountability system from the outset, the Community Police Commission was the first of the three accountability organizations to be created, and did the work of creating the other accountability partners in their current form.

Since its formation in 2012, the CPC has consistently provided a forum where community members could voice concerns, suggestions, complaints and commendations based on actual experience with the SPD. And the CPC could compile these diverse comments into organized and vetted proposals that the CPC could then submit directly to SPD. Over the past ten years, this process generated important policy recommendations in several areas, including use of force, crowd control, Seattle's first-in-the-nation ruse policy, and the implementation of body-worn cameras.

The Monitor largely ignores the importance of this level of community involvement in his Report and thus downplays the purpose, mandate, and value of the CPC. Instead, the Report prioritizes efficiency and consistency of communication by, for example, repeating without proper context or qualification anonymous complaints that the CPC "gets divided" or suffers from a "lack of clarity." (Report, page 50) This bias in favor of bureaucratic efficiency over community involvement pervades the report but is particularly evident in the section addressing the CPC. What is missing from the Monitor's analysis is an acknowledgment that providing voice to the members of a diverse community such as Seattle inherently involves some "lack of clarity" and may "get

Seattle Community Police Commission

divided." Seattle's City Council and the parties to the consent decree fully understood that a high degree of community engagement would likely lead to a multiplicity of voices and messages. Seattle nevertheless chose to prioritize community empowerment.

The Monitor's failure to appreciate this history is evident in the Report's use of extensive quotes from a May 2017 statement by former SPD Chief O'Toole addressing what he called "the abject complexity" of the three-part accountability structure being considered by the City Council. What the Monitor fails to acknowledge is that Chief O'Toole's concerns were presented to the City Council before the accountability ordinance was passed and the City Council chose to proceed with the current structure regardless. Although the Monitor himself clearly found O'Toole's concerns notable, the Report provides no concrete basis for revisiting the City Council's 2017 determination to adopt the current system despite those concerns. In particular, the Monitor has not provided any examples of the SPD being "impeded" in its "ability . . . to implement timely and relevant change" or any evidence to believe that the accountability structure has "los[t] its force altogether through its unworkability," as Chief O'Toole foresaw. Indeed, despite facing the challenges posed by the 2020 racial justice unrest, the pandemic, and other events, the accountability structure has continued to function coherently and effectively. Certainly, the Monitor provides no basis to conclude that any problems that *do* exist with the current system are the result of confusion or bureaucratic inefficiency.

In this general context, the voices that are missing from the Monitor's Report are particularly notable. Although the Monitor quotes many current city employees as well as officials such as former Chief O'Toole, he includes no remarks from any of the civilian (*i.e.* non-city-employee) members of the community who are the direct constituency of the CPC. He also apparently failed to seek input from any of the community organizations which have been actively involved in efforts to reform the Seattle Police Department, such as the ACLU, Faith Action Network, El Centro De La Raza, Asian Counseling and Referral Service, or other community groups In the CPC's estimation, the Monitor's omission of community viewpoints further skews the analysis in the Report to favor administrative and bureaucratic priorities over community empowerment.

The Monitor also raises several criticisms of the CPC that are either outdated or too one-sided to be useful. The Report focuses on allegations of conflict between the CPC Executive Director, staff, and members of the committee. These claims relate to a relatively brief period of discord which, unfortunately, immediately preceded the period in which the Monitor conducted most of his investigation. Subsequent personnel changes at the CPC have eliminated the previous problems, which were also exacerbated by the challenges of the pandemic and the aftermath of the 2020 racial justice protests. The CPC has not demonstrated a pattern of dysfunction or inaction over time and significant changes to its structure or authority are not warranted.

The most impactful modification to the accountability system proposed by the Monitor is also the most problematic. He suggests that proposals for SPD policy changes should all be made through OIG and that the CPC and OPA should no longer be authorized to communicate such proposals directly. (Report at pages 58-60). Once again, the Monitor bases his conclusions on reports from

**Seattle Community Police Commission**

city employees that the current system is "frustrating" because it is "too complex and creates unnecessary conflict", including "conflicts in policy recommendations." (all quotes from Report, page 58). It may be correct that silencing the CPC as an independent voice—or, more accurately, collection of voices—would lead to a system that is less complex and has fewer conflicts. But taking this step would be a grave mistake. CPC has effectively demonstrated the importance of this role as assigned to CPC in the Accountability Ordinance, and the capability of the CPC to amplify community voices in the process. The CPC has policy responsibilities to the community by design, and this should not be discounted for the sake of convenience.

This proposed change directly contradicts Seattle's accountability ordinance, which identifies its goals to include "building a strong community-based entity *with authority to review and weigh in on police policies and assess the responsiveness of SPD, the City of Seattle and accountability system professionals to community concerns*." (Seattle Ord. No. 125315 § 1, K). Eliminating the CPC's official authority to comment on police policy would require legislative action to amend the existing accountability ordinance and eliminate the many provisions which authorize the CPC to provide its own, independent evaluation of police policy. *See, e.g.* 3.29.030 (A) (requiring each accountability partner to "exercise independent judgment and offer critical analysis") and (B) (requiring each accountability partner to "recommend and promote to policymakers changes to policies and practices.") In addition to the practical challenges posed by the need to rewrite large sections of the relevant city ordinance, the change proposed by the Monitor would signal to the community that Seattle is retreating from its commitment to community involvement in police policy and conduct issues—a message that is both inaccurate and potentially detrimental to the City's ongoing efforts at reform. This recommendation overrides the intentions of city leaders to provide separate and independent input on policy to the SPD. The community cannot be simply a feeder to the policy clearinghouse in OIG, they must have their own voice, as designed in the 2017 Accountability Ordinance.

Most troubling of all, the Monitor appears to have decided to propose this fundamental change to Seattle's police accountability process based on the thinnest conceivable justifications. As former Councilmember Lisa Herbold (a member of the Council at the time the Ordinance was enacted) noted in an email to the Monitor, the decision to recommend stripping the CPC of policy proposal authority appears to have been driven by the opinions of a few, largely anonymous, city employees. As Herbold notes, "there are no examples of an actual CPC policy recommendation that created any sort of a problem." If the only real-world problems being addressed by this Monitor's recommendation are related to confusion over potentially conflicting communications, those concerns can be addressed in with far less radical proposals, or they can simply be accepted as one of the features of a system that was expressly designed to foster input from many sources.

One additional recommendation in the Monitor's Report should also be rejected, although it is far less significant than stripping the CPC of its role directly commenting on police policy. The Monitor proposes that responsibility for the database used to track policy initiatives should be transferred from the CPC to OIG. This proposal was based on difficulties CPC staff had initially managing the software that is used to maintain the database. Those challenges have been overcome

Seattle
Community
Police Commission

and the CPC is now fully capable of maintaining the database using the existing system, especially if all system partners commit to providing data to the CPC to update the trackers as has been requested.

Despite having a fundamental disagreement with the Monitor over the role of the community and the CPC in SPD policy reform, the CPC commends the Monitor and his team for having produced this extensive Report. Many of the reflections it contains will be valuable for the various parties involved as they seek to improve internal operations. Several of the Monitor's specific proposals are supported by the CPC, including creating and implementing internal policies and procedures to clarify roles, goals and processes for CPC staff, focusing on repairing relationships, and planning to evaluate the effectiveness of changes implemented by the CPC over time. We look forward to facilitating a robust and direct community voice in this important work.

On behalf of Seattle Community Police Commission,
Sincerely,

Reverend Patricia Hunter, Co-Chair

Reverend Harriett Walden, Co-Chair

Joel Merkel, Co-Chair