THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:12-cv-01282-JLR ) |
| v. | ) **CITY OF SEATTLE'S NOTICE RE** ) **TENTATIVE AGREEMENT REACHED** ) **WITH SEATTLE POLICE OFFICERS** |
| CITY OF SEATTLE, | ) **GUILD** ) |
| Defendant. | ) ) ) ) |

      The City of Seattle has reached a Tentative Agreement (TA) with the Seattle Police Officers Guild (SPOG) through collective bargaining as required by state law, Rev. Code Wash. 41.56. As directed by Paragraph 9 of the Court's September 7, 2023 Order, the City hereby provides "an analysis of the Tentative Agreement's effect . . . on SPD's accountability and review systems and the implementation of the City's Accountability Ordinance."

CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT
REACHED WITH SEATTLE POLICE OFFICERS GUILD - 1
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The TA contains several accountability-related changes and a 23% wage increase for officers who have been working without a contract since it expired on December 31, 2020. The TA is an "interim" contract that covers the years 2021-2023. By securing an interim agreement now, the City's goal is to immediately boost officer recruiting and retention. That goal is important because, among other reasons, this Court has emphasized that sufficient staffing, retention, and recruitment are necessary to sustain SPD's achievements under the Consent Decree.

In addition, the parties are continuing to negotiate a forward-looking contract. The City is prioritizing additional accountability gains in these ongoing negotiations.

**I.      Bargaining Process, Current Status, and Next Steps**

By local law, the City's position in bargaining is established jointly by the City Council and Executive. Before negotiations began, the City Council and the Community Police Commission (CPC) jointly held a public hearing prior to bargaining to inform the negotiations. *See* SMC 4.04.120(F). The Office of Police Accountability (OPA) and the Office of Inspector General for Public Safety (OIG) also presented at the hearing. These public hearings are an important part of the process whereby the City identifies the interests of the public. SMC 4.04.120(G).

In addition, the City's Labor Relations Policy Committee has an important role in the collective bargaining process. The committee, which consists of five members appointed by the Mayor and five Councilmembers, is responsible for establishing the City's bargaining parameters and strategy during the course of bargaining. In addition, the Labor Policy Relations Committee must concur with any changes to officer "working conditions," which would include proposals for changes to grievance procedures and the accountability system. *See* SMC 4.04.120(D).

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 2
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Notably, in 2021 the Labor Policy Relations Committee instituted a new process that—for the first time—involved a representative of the CPC in the parameter-setting discussions. In addition, representatives of the OPA and the OIG serve as advisors during parameter setting.

In late March, after extensive negotiations, including consultations with OPA and OIG, and with the concurrence of the Labor Policy Relations Committee, the City reached a TA with SPOG's bargaining team covering 2021-2023. The agreement is "interim"[1] in nature, in that it covers three years that have already passed since the prior agreement expired. It is also designated as "interim" because the parties have agreed to keep negotiating on a forward-looking agreement based on their original proposals.

The TA has been voted on and approved by the membership of SPOG. Accordingly, it is being transmitted to the full City Council for a vote. Under Washington state labor law, the Council either must approve or reject the TA. Approval of the TA occurs if a simple majority of the Council votes to ratify it. The Council has no authority to change the version of the TA bargained at the table, ratified by the union members, and submitted to Council for a vote.

If Council votes in favor of the TA, it then will be presented to the Mayor for signing. Once the TA is signed by the Mayor, it will become a final, binding contract.

---

[1] There has been confusion about what it means to have an "interim" agreement. Contrary to some reports in the media, the disciplinary appeal procedures in the TA will apply to arbitrations *going forward*—even if the alleged misconduct occurred in the past. Indeed, that is what the parties have done for previous contracts.

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 3
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**II.     With the Assistance of a Mediator, Negotiations Continue on a Forward-Looking Contract.**

Negotiations are continuing without pause. Since December 2023, a mediator appointed by the Public Employment Relations Commission has been assisting the parties in bargaining, and the parties are continuing to work with the same mediator.

As the parties negotiate over officer wages, hours, and working conditions, the City will continue to push to advance accountability and enhance public safety for all Seattle residents. If continued bargaining in good faith does not resolve these issues in a timely way, the State law governing collective bargaining, RCW 41.56, requires that the parties submit the unresolved issues to a third-party arbitrator who will hear proposals from both sides and issue a binding decision on the remaining contract terms.

**III.    The TA Increases Wages and Makes Changes to Accountability-Related Provisions.**

<u>1. Wage Increase</u>

The Monitor and the Court have expressed concern that, without sufficient staffing, retention, and recruitment, SPD's important achievements under the Consent Decree may not continue to progress.[2] As required by the Consent Decree, SPD has made extensive reforms to training, supervision, and the reporting and investigation of force—maintaining these reforms

---

[2] Monitor's 2022 Comprehensive Assessment (Dkt. 709) at 5-6; 5/15/2019 Hearing Transcript at 18:8-9; 2/04/2021 Hearing Transcript at 24:10-19, 26:1-10; 5/30/2023 Hearing Transcript at 38:22-23, 40:22-24.

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 4
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

requires a committed staff. The TA provides a wage increase that cumulatively amounts to 23 percent spread over three years and provides competitive compensation in the local marketplace.[3]

### 2. Civilianization of OPA

The Monitor and the Court have recommended adding more civilian investigators to the Office of Police Accountability in order to improve public trust.[4]

Under the TA, the ratio of civilian to sworn investigators will increase. The TA civilianizes two investigator positions that are currently held by sworn officers. This change continues a trend of civilianization at OPA; in 2020 the Monitor applauded the addition of two civilian investigators (replacing sworn officers) and the addition of three civilian investigative supervisors (replacing sworn captain and lieutenants). Dkt. 604-1 at 5-6. Accordingly, once the changes in the TA have been implemented, there will be four civilian investigators and three civilian supervisors, bringing the total number of civilians managing and conducting investigations to seven.

The Accountability Ordinance does not provide for any particular composition of civilian and sworn staff at OPA. *See* Seattle City Ordinance No. 125315 ("Accountability Ordinance"), sect. 3.29.140.C (providing flexibility for best configuration of staff).

---

[3] It is comprised of 1.3 percent in 2021; 6.4 percent in 2022; and 15.3 percent in 2023. The 2023 increase is comprised of 5 percent to address inflation (i.e., increased CPI) and 10.3 percent market adjustment.

[4] Monitor's 2020 Assessment (Dkt. 604-1) at 6 ("The Monitoring Team has long recommended that half of OPA investigators be civilians."); 5/30/2023 Hearing Transcript at 13:12-13, 38:12-14.

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 5
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### 3. Deference to Chief of Police's Disciplinary Judgments

The Court has expressed concern that the previous agreement allowed an arbitrator to substitute her own judgment for that of the Chief of Police when it comes to discipline.[5]

The TA for the first time specifies the amount of deference that an arbitrator in a disciplinary grievance must afford to the Chief's judgment regarding the disciplinary penalty. The previous agreement is silent on this point; that is, arbitrators are not required to apply any deference, but some do. This TA, for the first time, limits an arbitrator's right to change or modify a disciplinary penalty by requiring the arbitrator to give deference to the Chief's judgment about discipline so long as the disciplinary penalty is reasonable and consistent with just cause.

In addition, the TA formally adopts the changes to grievance arbitration that were already enacted by the state legislature. See RCW 41.58.070. Under the law, a state commission appoints a roster of trained, experienced arbitrators to hear disciplinary appeals for police officers. The procedures have already been implemented by SPOG and the City in disciplinary arbitrations; this contract change brings the TA into alignment with current practice and state law and provides certainty going forward.

The Accountability Ordinance does not allow police officers to appeal discipline to an arbitrator, so that remains inconsistent. Accountability Ordinance, Sect. 3.29.420.7. However, the right to appeal discipline to an arbitrator ("grievance arbitration") is a right provided for in nearly all contracts for public employees throughout the State of Washington.

---

[5] May 15, 2019 Hearing Transcript at 17-18.

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 6
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### 4. Simplifying and Tolling the Deadline for Disciplinary Investigations

The Monitor assessed the timeliness of OPA's disciplinary investigations in 2020 and found no situations in which a missed deadline prevented discipline from being imposed.[6] However, the Court and an independent expert engaged by the Monitor also determined that the complexity and rigidity of the deadlines for OPA's disciplinary investigations present a risk that misconduct could go unaddressed.[7]

The TA makes three changes to the timelines for disciplinary investigations. First, it removes the requirement that OPA notify an employee within five days of receiving a complaint about that employee, leaving only the existing 30-day notice requirement. Eliminating the five-day notice requirement provides more consistency with the Accountability Ordinance, which includes no such requirement. *See* SMC 3.29.130. Second, the TA automatically tolls the 180-day timeline for investigations of complaints that are being criminally investigated in Seattle, as well as in any other city, state, county, tribal, or federal jurisdiction—fully implementing a provision of the Accountability Ordinance. *See* Accountability Ordinance, Sect. 3.29.130.G. Under the previous contract, the 180-day clock continued to run during a criminal investigation if an officer was accused of committing a crime in Seattle. Third, the TA allows up to a 60-day extension of the 180-day investigation period on allegations of excessive force for serious ("Type 3") force.[8]

---

[6] The Monitor's Assessment was submitted to the Court in 2020 and filed at docket number 604-1. The conclusions about timeliness appear at page 2.

[7] Seattle Accountability System Sustainability Assessment (Dkt. 782) at 31; 5/15/2019 Hearing Transcript) at 17-18.

[8] The 60-day extension is available if SPD's Force Review Board refers the allegation to OPA within seven days of the Board's meeting regarding the incident in question.

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 7
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### 5. Civilianization of Public Safety Services Generally

The Monitor has recognized the City's efforts to innovate and explore new ways to provide public safety services to the community.[9]

The City and SPOG also negotiated a Memorandum of Understanding that is expressly incorporated into the TA and was also approved by the police union on April 15, 2024, that allows the City to assign civilians to perform bodies of work that currently are mostly performed by SPOG members. It lists the new bodies of work which the City now has flexibility to assign to civilians rather than sworn officers. The areas include low-risk wellness checks, traffic camera enforcement, analytical support for investigations, and many other areas of work.[10] This increased flexibility to deploy civilian resources to perform bodies of work previously performed by sworn officers advances the provision in the Accountability Ordinance that seeks more flexibility to hire and deploy civilians to perform work that does not require law enforcement sworn personnel. SMC 3.29.430(B).

---

[9] Monitor's Status Memorandum (Dkt. 695) at 11-13.

[10] A representative sample of items from the MOU list of work areas includes: respond to emergency food and shelter requests; address landlord/tenant problems; take reports from / stay with missing juveniles and runaways (after screening); stay with / transport missing adult persons (after screening); perform mail runs (using locked mail containers); handle nuisance noise complaints (after screening); serve as hospital guard; transport mobile fingerprint readers; pick up adult witnesses and transport them; respond to lost / found property calls, unless the caller believes the found item is stolen, related to a crime, or a weapon or narcotics; respond to requests for transportation unrelated to a crime.

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 8
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

IV.     **Conclusion.**

The City respectfully submits the foregoing memorandum in response to the Court's Order.

DATED this 29th day of April, 2024.

For the CITY OF SEATTLE
ANN DAVISON
Seattle City Attorney

*/s/ Kerala Cowart*
Kerala Cowart, WSBA #53649
*/s/ Jessica Leiser*
Jessica Leiser, WSBA #49349
Assistant City Attorneys
Phone: (206) 727-8874
Fax: (206) 684-8284
Email: Kerala.Cowart@seattle.gov
Email: Jessica.Leiser@seattle.gov

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050

**CITY OF SEATTLE'S NOTICE RE TENTATIVE AGREEMENT REACHED WITH SEATTLE POLICE OFFICERS GUILD** - 9
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200