THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) Case No. 2:12-cv-01282-JLR |
| Plaintiff, | )<br>) |
| | ) **CITY OF SEATTLE'S RESPONSE TO** |
| v. | ) **THE COURT'S SEPTEMBER 25, 2024** |
| | ) **ORDER** |
| CITY OF SEATTLE, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

The City of Seattle provides the following update to the Court regarding the topics outlined in the Court's Order of September 25, 2024.

**A. Status of SPD's Crowd Management Policy and Training on that Policy.**

To address concerns over SPD's response to the protests of 2020, the Court's Order on Sustained Compliance requires revisions to SPD's Crowd Management Policy and Training. In the months following the protests, SPD conducted an initial round of substantial revisions, changing its crowd management policies to incorporate feedback from the OIG, OPA, and CPC

CITY OF SEATTLE'S RESPONSE TO THE COURT'S
SEPTEMBER 25, 2024 ORDER - 1
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and to implement new strategies for crowd de-escalation and crowd management. *See generally* City's Motion to Approve Policy Revisions.[1] In the 2021 revisions, SPD increased its emphasis on de-escalation, focused on a less visible police presence when feasible, and improved its policies for targeting and arresting law breakers within an otherwise non-violent crowd. SPD also worked on guidance to minimize the use of blast balls and pepperballs. *See id.*

Since then, SPD has received additional feedback on its policies through a community-led process facilitated by the OIG, the Sentinel Event Review process.

Accordingly, the Court's September 7, 2023 Order on Sustained Compliance required another round of policy and training revisions to incorporate the additional community feedback. Dkt. 769. ¶¶ 1 & 3. As required, the City provided the Monitor and Department of Justice (DOJ) with a proposed draft of SPD's Crowd Management Policy on December 7, 2023. However, before the Monitor and DOJ completed their review of the Draft Policy, a new City Council term began. The City's Executive Branch began consideration of legislative amendments that would potentially have significant implications for SPD's Crowd Management Policy. On that basis, the City asked the Monitor and DOJ to pause their review of the Draft Policy, to avoid having them review a Policy that could become moot.

As yet, no legislative amendments have been proposed or enacted. The current status is described by the Monitor in its recent filing: "The City continues work on this effort and regularly updates and consults with the Monitor and the Department of Justice." Dkt. 803.

---

[1] Docket Entry No. 658.

**CITY OF SEATTLE'S RESPONSE TO THE COURT'S SEPTEMBER 25, 2024 ORDER** - 2
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The City acknowledges that many months have passed, and also observes that this topic is complex. SPD's Crowd Management Policy is subject not only to this Court's oversight, but is also the subject of another federal lawsuit. *Black Lives Matter—King County, et al. v. City of Seattle*, No. 2:20-civ-00887-RAJ (W.D. Wa). Many City stakeholders have strongly held viewpoints when it comes to force used at protests or demonstrations. Moreover, hasty change is not warranted, given that SPD's current Crowd Management Policy was approved by the Monitor, DOJ, and this Court in 2021 and—thus far—that policy has enabled SPD to use little-to-no force at crowd events throughout 2021-24.[2]

With that being said, the Court ordered the City to submit a revised policy and the City must move forward. The Executive continues to work on draft legislation, and the City anticipates being able to provide additional updates soon.

### B. Status of Consent Decree reforms on bias-free policing and SPD's Comprehensive Plan to mitigate disparate impact.

One of the most important Consent Decree reforms was that SPD developed programming to explicitly counter the issue of bias. With input from DOJ, the Monitor, and CPC, SPD adopted a comprehensive bias-free policing policy. *See* Seattle Police Manual § 5.140; Monitor's June 2014 Rept. at 13-14.[3] The City Council took the further step of codifying the policy into local law. Seattle Mun. Code Ch. 14.11. Under the policy, any officer who learns of a bias complaint must call a supervisor; the supervisor then must come to the scene of the incident and investigate in person. All bias complaints are forwarded to OPA for review or

---

[2] *See* SPD Use of Force Outcome Measures, Dkt. 792-2 at 4.

[3] Docket Entry No. 154.

**CITY OF SEATTLE'S RESPONSE TO THE COURT'S SEPTEMBER 25, 2024 ORDER** - 3
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

investigation. Seattle Police Manual §§ 5.140-PRO-1, 5.002-POL-5. The current iterations of these strong policies are publicly available on SPD's website.[4]

The Court's Order on Sustained Compliance directed SPD to submit a comprehensive plan to the Court setting forth its methods and tools for mitigating disparate impact. SPD provided to the Court a detailed description of its plan and strategies on February 29, 2024. Dkt. 792-2 at 14-27. Components of the plan include officer wellness and stress management; exploring methods to address disparate impacts of calls for service (911 calls); and using the sophisticated data tracking and analysis abilities that SPD developed under the Consent Decree.

**C. Sustainability of the police accountability and discipline system.**

The Department of Justice and the Monitor previously found that OPA's disciplinary investigations regarding allegations of individual misconduct were fair and thorough. Consent Decree ¶ 164; Monitor's Fourth Assessment at 3.

One area in which OPA has demonstrated growth is community engagement. OPA's community outreach efforts doubled in 2023, sending members of its engagement team to over sixty events primarily aimed at increasing marginalized communities' awareness about Seattle's police accountability system. OPA conducted a survey of Seattle-area residents, gauging their awareness of and perspectives on Seattle's police oversight system to identify and overcome trust-building barriers. Finally, as recommended by the OIG and reinforced by the Monitor,[5]

---

[4] Seattle Police Manual § 5.140 Bias-Free Policing
https://public.powerdms.com/Sea4550/tree/documents/2042894
Seattle Police Manual § 5.002 Responsibilities Concerning Alleged Policy Violations
https://public.powerdms.com/Sea4550/tree/documents/2042870

[5] Monitor's Accountability Assessment, Dkt. 782 at 50.

**CITY OF SEATTLE'S RESPONSE TO THE COURT'S SEPTEMBER 25, 2024 ORDER** - 4
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

OPA is developing opportunities for complainants to meet one-on-one with the police chief to express the impact of their interaction with SPD employees. In recognition of its work, OPA was recently informed it will receive an Achievement in / Contribution to Oversight Award[6] from the National Association for Civilian Oversight of Law Enforcement.

In addition to the critical role served by OPA, accountability also includes the City's ability to identify and correct systemic failures. As directed by the Court's September 7 Order, the Monitor assessed the overall strength of the City's accountability system and concluded that "the City has developed a sophisticated accountability system, yet sustaining the system will require ongoing attention, funding, innovation, and support from the community, the city, and police leadership." Dkt. 792 at 5.

Earlier this year, the City's labor negotiators completed bargaining on a new contract that covers up through the end of 2023. It was finalized on May 15, 2024.  The contract provided a wage increase that cumulatively amounts to 23 percent spread over three years and provides competitive compensation. It also increases the ratio of civilian to sworn OPA investigators; specifies for the first time the amount of deference that must be given by an arbitrator to the Chief's judgment in discipline; and simplifying calculation of the deadline for disciplinary investigations.

With the assistance of a mediator the parties have continued to negotiate without pause on a forward-looking contract. The City is prioritizing additional accountability gains in these ongoing negotiations.

---

[6] https://www.nacole.org/NACOLE_achievement_contribution_award

**CITY OF SEATTLE'S RESPONSE TO THE COURT'S SEPTEMBER 25, 2024 ORDER** - 5
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Over the past year, OIG has continued to demonstrate its capacity to take over the role of the Monitor once federal oversight has concluded.

- OIG completed and filed the Use of Force Assessment as directed by the Court's September 7 Order. Dkt. 792-1.

- The qualitative assessment of use of force in crisis contacts is complete and undergoing final review. It will be filed as part of a larger Crisis Assessment within a week.

- As recommended by the Monitor,[7] OIG also is conducting a follow up audit of SPD disciplinary determinations. OIG assessed disciplinary outcomes compared to recommendations, complainant input, and impacts of recent arbitration. The completed disciplinary audit is due to be published this month.

- OIG reviewed the Force Review Board and provided detailed feedback in a public memorandum, finding: "the Board consistently identifies and addresses gaps . . .and provides opportunities for learning and critical self-analysis. The Board's additional level of review is valuable and services a critical role in SPD internal oversight."[8] OIG identified and recommended adopting specific best practices and identified constructive areas for improvement.

---

[7] Dkt. 782 at 42.

[8] Available at https://seattle.gov/documents/Departments/OIG/Standards%20and%20Compliance/ForceReviewBoardFeedbackMemo2024.pdf

**CITY OF SEATTLE'S RESPONSE TO THE COURT'S SEPTEMBER 25, 2024 ORDER** - 6
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**D. City's position concerning termination of the Consent Decree.**

The time for termination is close but not yet here. The City has not yet completed all of the tasks under the Court's September 7 Order on Sustained Compliance. The City must provide the Monitor and DOJ with a draft of SPD's Crowd Management Policy for their review; the City will then submit the revised policy to the Court. Dkt. 769 ¶¶ 1, 3. In addition, OIG must complete the qualitative Use of Force Assessment. *Id.* ¶ 12. Once those obligations are met, then the City intends to provide the Court with a final update regarding the sustainability of the police accountability system. On that basis, the City anticipates that the Parties will jointly move to terminate the open provisions of the Consent Decree. That could, potentially, happen within the next few months.

DATED this 9th day of October, 2024.

>For the CITY OF SEATTLE
>ANN DAVISON
>Seattle City Attorney
>
>*/s/ Kerala Cowart*
>Kerala Cowart, WSBA #53649
>Jessica Leiser, WSBA #49349
>Assistant City Attorneys
>Phone: (206) 727-8874
>Fax: (206) 684-8284
>Email: Kerala.Cowart@seattle.gov
>Email: Jessica.Leiser@seattle.gov
>
>Seattle City Attorney's Office
>701 Fifth Avenue, Suite 2050

**CITY OF SEATTLE'S RESPONSE TO THE COURT'S SEPTEMBER 25, 2024 ORDER** - 7
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200