THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SEATTLE, <br><br> Defendant. | Case No. 2:12-cv-01282-JLR <br><br> **CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** <br><br> **NOTE ON MOTION CALENDAR:** <br> **July 8, 2025** |

The City submits proposed revisions to the Seattle Police Department (SPD)'s Crowd Management Policy and asks the Court to approve them. The proposed Crowd Management Policy is submitted here as Exhibit A to the Declaration of Brian Maxey, SPD Chief Operating Officer. The latest version of the Crowd Management Policy was approved by the Court on February 26, 2021. Dkts. 662 & 658-3 at 2-16.

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 1
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The City also requests, on grounds of mootness, that the Court terminate the preliminary injunction issued on October 1, 2020, regarding the City's previous Crowd Control Weapons Ordinance. Dkt. 647.

## BACKGROUND

**I.    In 2021, SPD implemented an initial round of changes to its crowd management policy and tactics.**

As the protests of 2020 unfolded, the City recognized it had been unprepared to address protests of that nature and magnitude, especially when faced with evolving community expectations. Overall, the City's response significantly undermined public trust.

The independent police accountability entities worked to investigate the protest incidents and make systemic recommendations, which were submitted to the Court. *See* Dkts. 636-1, 637-1, 639-1. Based on those recommendations and its internal review, SPD made fundamental changes to its Crowd Management policies and practices in 2020 and 2021. Dkt. 622 (Court's Order approving 2021 policy changes); Dkt. 658-3 at 2-16 ("redline" reflecting 2021 policy changes).

In its 2021 revisions, SPD provided a more robust statement of purpose at the beginning of the Crowd Management policy, clarifying its intent to embrace Seattle's approach to facilitating public assembly even beyond the minimum guarantees of the First Amendment. It includes a statement that the "Seattle Police Department takes seriously its responsibility and commitment to support and facilitate the exercise of rights to free speech and peaceable assembly rights in fair and equitable manner." Crowd Management Policy, p.1, effective 4/15/2021, attached hereto as Exhibit 1 to Declaration of Lieutenant Didier, Commander of Community

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 2
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Response Group ("Didier Dec.").

Drawing on advice from the Office of Inspector General for Public Safety (OIG), SPD added a new tool called a "crowd management, intervention, and control concepts strategies matrix." Ex. 1 at 5-6. The matrix maps out considerations for decision-making regarding how and when SPD should intervene in a crowd setting. It contains practical guidance to help officers and supervisors objectively determine at what point it is necessary to intervene to protect life-safety and property rights. The matrix defines tiers based on objective, observable crowd activities and dynamics. It then sets out intervention strategies corresponding to each tier, providing an easy-to-understand way to align SPD's response to the specific, concrete actions of the people who are assembled.

As described in the matrix, one important strategy is to quickly isolate people acting unlawfully within an otherwise non-violent crowd, by arresting and removing them. In addition, SPD began securing help from protest organizers in persuading people to comply with SPD's orders. The matrix incorporates these adaptations into policy. *See* Ex. 1 at 5-6. When safe and feasible, such crowd intervention strategies are effective, because they contain unlawful behavior. Didier. Dec. ¶ 5, 19. Importantly, the matrix clarifies that "isolated unlawful activity by individuals or small groups within a crowd should not automatically form the basis for declaring an assembly unlawful." Ex. 1 at 5.

SPD also changed policy to clarify that a dispersal order cannot be issued "unless the Incident Commander has determined that the risk observed cannot be contained through crowd management or intervention tactics." *Id.* at 7. SPD changed how dispersal orders were given as well. It added a sound amplification requirement and began issuing dispersal orders on social

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 3
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

media. *Id.* Policy requires that Incident Commanders allow a reasonable amount of time to comply and advise the crowd about available routes to disperse, before any less lethal tools can be used. Ex. 1 at 9-10.

To accompany the policy changes and re-set the tone going forward, in 2021, SPD conducted a major effort to update crowd management training and required that all sworn personnel complete a mandatory, full-day Crowd Management, Intervention, and Control training. Declaration of Chief Operating Officer Brian Maxey ("Maxey Dec."), ¶¶ 3-4 (Dkt. 732). Half of the day was in the classroom and covered lessons learned from the 2020 protests and the policy revisions mentioned above. *Id.* ¶ 4. The rest of the day was a practical training course in which officers performed crowd management drills and scenarios utilizing the new tactics and policies. *Id.*

II. **SPD has safely and effectively managed hundreds of significant demonstrations over the past four years.**

Outcomes at crowd events in the many years since this Court approved SPD's policy changes help demonstrate their effectiveness.

SPD worked with OIG to establish the Police Outreach Engagement Team (POET) to implement the policy and strategy changes described above. *See* SPD's 2023 Comprehensive Resp. to Sentinel Event Review at 15 (Dkt. 773-1). POET is a "dialogue unit" modeled on international models, to foster greater communication and understanding between officers and members of the public. *Id*. POET regularly meets with demonstration organizers in advance to plan successful and safe events and engages during the events to reduce any points of friction. Didier Dec. ¶¶ 15-16. Now the initial staffing for all demonstrations includes a POET team. *Id.*

CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE
CROWD MANAGEMENT POLICY AND TERMINATE
PRELIMINARY INJUNCTION - 4
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

POET is made up of two lieutenants, three sergeants, and eight officers. *Id.* ¶ 15. When a protest arises, there frequently is no need to form a line with the officers on one side and the protesters on the other. *Id*. ¶ 17. Instead, POET officers—who wear khakis and polo shirts (a softer, less intimidating look)—stay close enough to the crowd to engage quickly if needed. *Id.* Other assigned officers remain out of sight unless a more visible profile becomes necessary. *Id*.

As noted above, SPD also has become more agile at targeting and arresting people who cause property damage or violence without dispersing the entire protest. For example, to address property damage, SPD often uses plainclothes officers to follow offenders so an arrest can be made once they are sufficiently separated from the crowd, allowing the protesters to continue their First Amendment activities uninterrupted. Didier Dec. ¶ 19. Evidence shows that intervening to ensure accountability in this way reduces escalation of events and increases officer legitimacy within the crowd. *Id.* ¶ 5. Effective communication allows the crowd to understand the basis for the arrest and confers legitimacy. *Id.*

In addition, SPD uses a variety of tactics to isolate, arrest, and remove law violators quickly. *Id.* ¶ 19. For example, if someone assaults a protester, then—depending on the circumstances—POET may inform the event organizers that an assault happened and let them know that officers are going to move in closer, thus securing the crowd's cooperation in advance so that officers can safely make an arrest. *Id.*

With their improved policy, strategy, and training, SPD can staff 1,000-plus-person demonstrations with POET as the only visible presence. Didier Dec. ¶ 17. On one occasion, for example, people within a crowd were attempting to disrupt a demonstration by throwing Lime bikes and construction signs into the road. *Id.* ¶ 18. POET, from their nearby vantage point, saw

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 5
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

that the protest organizers were doing their best to clean up the bikes and signs. POET walked over and engaged in dialogue with the organizers. *Id*. The officers did not use sound amplification—they simply talked face-to-face, which helps maintain a calm atmosphere. *Id*. POET thanked them and explained that, if the unlawful activity escalated to a dangerous level, then SPD unfortunately would have to disperse the protest. *Id*. In response, the organizers themselves talked to the offenders, convinced them to leave, and the demonstration was able to continue. *Id*.

Four years of evidence demonstrate that SPD's policy and strategy are safe and effective. SPD has nearly eliminated the use of "blast balls." Since September 2020, SPD has not used any blast balls. Declaration of Sergeant Gabriel Shank, SPD Force Review Unit, ¶ 8. Tear gas has not been used since July 2020. *Id*.

### III. SPD asks the Court to approve another round of revisions to continue to improve the Crowd Management policy.

In its Order issued September 7, 2023, the Court instructed SPD to conduct another round of policy revisions to incorporate the community feedback generated from the OIG's Sentinel Event Review (SER) process. 9/7/23 Order at ¶¶ 1, 3. SPD's proposed revisions are provided in "redline" format as Exhibit A to the Declaration of Brian Maxey.

The most frequent recommendations from community members in the SER process were for SPD to improve communication and place greater emphasis on facilitating safe protests for those who simply want to express themselves. *See* Dkt. 773-1 at 15, 20-21. To address this feedback, SPD has worked hard to tailor its strategies for isolating and arresting law violators within an otherwise non-violent crowd. Didier Dec. ¶ 5, 9. One of the primary methods is POET.

CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE
CROWD MANAGEMENT POLICY AND TERMINATE
PRELIMINARY INJUNCTION - 6
(12-CV-01282-JLR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Id.* ¶ 15-18. As described above, POET officers communicate with event organizers and stakeholders. *Id.* ¶ 16. The current, proposed revisions further refine the policy matrix to formalize POET's role and describe some of its duties, including: "engender facilitation, not confrontation; minimize visible police presence; monitor and assess crowd behavior; modulate police response as crowd behavior changes." Ex. A at 1.

Continuously monitoring and modulating SPD's response as crowd behavior changes is another key SER recommendation. See Dkt. 773-1 at 17, 20-21. Once it becomes helpful to have a police presence, then SPD's proposed policy revisions make it clear that Incident Commanders must regularly assess changes in the actions of individuals within the crowd and adjust SPD's strategies in response. Ex. A at 1-3, 9, 12, 13, 15.

SPD also is proposing to add a new role of Tactical Advisor for large crowd or demonstration settings to address SER leadership recommendations. Ex. A at 6. The Tactical Advisor role is filled by officers experienced and trained in special event and demonstration management and is assigned to provide tactical options to ICs during crowd management situations. *Id*. It ensures sufficient tactical expertise available to all Incident Commanders and to provide consistency in crowd management.

The proposed revisions bolster protections for media and legal observers. They direct Incident Commanders, when there are safety considerations, to consider providing media, legal observers, and protest medics safe areas to carry out their important roles. Ex. A at 16-17. The revisions propose expanding the definition of "media" to include a broader group people who seek to gather information and publicly disseminate it. *Id.* at 5-6. These revisions respond to the SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 7
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

at 15. In addition, SPD proposes to add protections for medics who may assist members of the public. Ex. A at 6, 16-17.

In addition to the SER process, SPD's proposed revisions also incorporate suggestions from internal SPD sources. Maxey Dec. ¶ 3. SPD's policy review unit consults with SPD subject-matter experts and the SPD units most impacted by the policy under review. *Id.* The City's police accountability entities play an important role in setting SPD's policies as well. *Id.* OIG is invited to SPD's periodic policy committee discussions, in addition to making policy recommendations through reports and audits. *Id.* ¶¶ 3, 5. The Office of Police Accountability, which investigates allegations of individual officer misconduct, regularly sends "management action recommendations" to the Chief of Police when its investigations identify systemic issues that may be effectively addressed through changes to policy or training. *Id.* ¶¶ 3, 5. The City's Accountability Ordinance requires SPD to establish a protocol for regular and timely review of its policies by OIG, OPA, and CPC. Accountability Ordinance, § 3.29.410.C. The Community Police Commission continues to provide policy recommendations with the goal of ensuring that policy reflects community priorities. *Id.* ¶¶ 3, 5. OIG, OPA, and CPC provided substantive input on the proposed Crowd Management policy. *Id.* ¶ 5.

Importantly, SPD's proposed revisions also reflect input from the City's elected leaders. Maxey Dec. ¶ 6. In February, the City enacted legislation regarding crowd management. The adopted Ordinance is submitted here as Exhibit B to Brian Maxey's Declaration. It mandates that

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 8
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

SPD's policy prohibit the use of less lethal tools, such as OC spray and pepperballs,[1] for crowd control purposes absent "an imminent risk of physical injury to any person or significant property damage." Ex. B at 4 (Ordinance 127182, § 2.E). The policy changes necessary to incorporate this provision will result in less leeway for Incident Commanders for when it is permissible to disperse an assembly. *Compare* Ex. 1 at 5 (under current version of SPM § 14-090, dispersal is authorized in the event of "violent acts by four or more persons").

The Ordinance enacted in February also imposes strict requirements regarding blast balls and tear gas. Blast balls cannot be used "to move or disperse a crowd" unless there is an "imminent threat of violence against persons or significant property damage" and "the Chief of Police authorizes blast balls" and "the Mayor proclaims a civil emergency." Ex. B at 5. (Ordinance 127182, § 2.H). When used to move or disperse a crowd, blast balls must be thrown in a "bowling motion, in an open space away from people."[2] *Id.* at 5. Tear gas cannot be used "in crowd management" unless "all other reasonable force options have been exhausted or are not feasible" and "risk to life is imminent" and "the Mayor proclaims a civil emergency." Ex. B at 4-5 (Ordinance 127182, § 2.G). SPD's policy also complies with strict state-law restrictions on the use of tear gas by law enforcement agencies. *See* Rev. Code Wash. 10.116.030.

---

[1] The Ordinance prohibits the use of any less lethal tool outside this context for crowd control purposes. Ex. B at 4 (Ordinance 127182, § 2.E). Blast balls and tear gas are subject to greater restrictions, addressed below.

[2] The requirement does not apply when officers use blast balls to address an individual posing an immediate threat to life safety. Ex. B at 5 (Ordinance 127182, § 2.H). In that situation, the blast balls must be used in a manner that is reasonable, necessary, and proportional. *Id.*

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 9
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

IV. **The City repealed the Crowd Control Weapons Ordinance that this Court enjoined in 2020; in accordance with the terms of the injunction, the City now asks that it be terminated as moot.**

In its Preliminary Injunction Order, issued October 1, 2020, the Court stated that the Preliminary Injunction Order could expire "by Court order" and "either after demonstration that the Policy Review Process [required by the Consent Decree] has taken place or has been rendered moot." Dkt. 647 at 1-2. Both conditions have been met. The Policy Review Process is moot with respect to the original, enjoined Ordinance, because the City has repealed and replaced it. *See* Exhibit B (Ordinance No. 127182). Subsequently, SPD, DOJ, and the Monitor engaged in the Policy Review Process regarding SPD's proposed policy revisions to incorporate the replacement Ordinance. Maxey Dec. ¶ 7.

## CONCLUSION

For the foregoing reasons, the City asks that this Court approve proposed revisions to SPD's Crowd Management policy and terminate the October 1, 2020 preliminary injunction as moot.

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 10
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

DATED this 8th day of July, 2025.

    For the CITY OF SEATTLE
    ANN DAVISON
    Seattle City Attorney

    <u>s/ Kerala Cowart</u>
    Kerala Cowart, WSBA #53649
    Jessica Leiser, WSBA #49349
    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
    Phone: (206) 733-9001
    Email: Kerala.Cowart@seattle.gov

    *Attorneys for the City of Seattle*

**CITY OF SEATTLE'S UNOPPOSED MOTION TO APPROVE CROWD MANAGEMENT POLICY AND TERMINATE PRELIMINARY INJUNCTION** - 11
(12-CV-01282-JLR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200