EXHIBIT A



# Seattle Police Department
# Policy Manual



## 14.090 – Crowd Management, Intervention, and Control

### Crowd Management, Intervention, and Control (CMIC) Strategies

The CMIC is intended to be read as a continuum, and as guidance for the Incident Commander. Any police responses available at a lower phase remain available as a response at higher phases. Not all events will proceed through all phases, and development may not be sequential as depicted here. For individual uses of force, sworn employees should refer to Title 8.

This policy is intended solely to guide the decisions, actions, and operations of department personnel in planning for and responding to crowd events within the City of Seattle. It is not intended to expand or abridge constitutional analyses with respect to the parameters of First Amendment protections and restrictions more appropriate for a court of law.

|  | Crowd Actions | Police Response |
|---|---|---|
| **Phase 1**<br><br>**(Lawful Assembly (Standoff))** | Events that are typically static or smaller in scale and do not require police assistance.<br>• Speeches<br>• Marches<br>• Demonstrations<br>• Rallies<br>• Picketing<br>• Public assemblies<br>• Protests<br>• Celebratory events | • Consider known dynamics pertaining to the event.<br>• Monitor and assess crowd behavior.<br>• Assess and modulate response as behavior changes.<br>• Minimize police presence observable by crowd. |
| **Phase 2**<br><br>**(Lawful Assembly (Police Interaction))** | Likely larger and/or preplanned events with designated groups or organizers.<br>• Speeches<br>• Marches<br>• Demonstrations<br>• Rallies<br>• Picketing<br>• Public assemblies<br>• Protests<br>• Celebratory event | • Utilize POET Officers for communication with event organizers and stakeholders.<br>• Engender facilitation, not confrontation.<br>• Monitor and assess crowd behavior.<br>• Minimize police presence observable by crowd.<br>• Assess and modulate response as behavior changes.<br>• Develop IAP and objectives.<br>• Determine appropriate level of police presence required by the totality of the circumstances. |
| **Phase 3** | Crowd or individuals within the crowd showing low level signs of disorder. | • Attempt to use organizers and monitors to gain voluntary compliance.<br>• Utilize POET Officers for communication with event organizers and stakeholders. |

**Commented [KC1]:** Global comment: Many of SPD's revisions responsive to SER recommendations are not reflected as redlines in this version because they were incorporated in 2021, before the corresponding SER recommendation was formally published. SPD and OIG collaborated in real time to effect change without waiting for publication. Additionally, as SPD participated in the SER itself, many of the resulting recommendations were made by SPD and implemented immediately.

**Commented [KC2]:** Sentence added to address CPC feedback.

**Commented [KC3]:** SER recommended that SPD place greater emphasis on facilitating safe protests, in addition to its other goals *See* discussion, Dkt. 773-1 at 20-21. Addressing this recommendation, SPD has tailored its strategies for isolating and arresting law violators within an otherwise peaceable assembly. Examples include the options in the "police response" column of this chart.

**Commented [KC4]:** Phrasing "consider known dynamics pertaining to the event" is from CPC feedback.

# Seattle Police Department Policy Manual

| | | | |
|---|---|---|---|
| (Escalating Behavior) | • Minor acts of disorder such as knocking down sandwich boards or throwing garbage in the road.<br>• Individual sit-down demonstrators.<br>• March deviating from pre-planned route.<br>• Elements of crowd splintering or deviating from original organizer intentions.<br>• Crowd becoming verbally aggressive with officers or other bystanders on scene.<br>• Crowd directing negative attention towards officers or other elements of the community. | • Use amplified sound to communicate intent or to gain compliance.<br>• Use low profile tactics when possible.<br>• Continue to assess and modulate response as behavior changes. | **Commented [KC5]:** Using amplified sound responds to the SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1 at 15. This policy revision was first added to improve communication after the protests of 2020. *See* Dkt. 683-3 at 7, 14.<br><br>**Commented [KC6]:** Continuously modifying SPD's response as crowd behavior changes is an SER recommendation. See Dkt. 773-1 at 17, 20-21. Once it becomes helpful to have a police presence, then SPD's policy makes it clear that officers must regularly assess changes in the actions of individuals within the crowd and adjust SPD's strategies in response. |
| **Phase 4**<br>**(Isolated Unlawful Behavior)** | Individual violent acts within the crowd, property damage, unpermitted traffic disruption, and defacement are not protected activities.  However, isolated unlawful activity by individuals or small groups within a crowd should not automatically form the basis for declaring an assembly unlawful.<br>• Isolated destruction of property<br>• Isolated acts of violence<br>• Isolated rock or bottle throwers<br>• Individual sit-down demonstrators blocking traffic | • Attempt to use organizers and monitors to gain voluntary compliance.<br>• Isolate, arrest, and remove law violators as quickly as possible.<br>• Use amplified sound to communicate intent or to gain compliance.<br>• Use low profile tactics when possible.<br>• Effect necessary arrests.<br>• Any force used should be reasonable, necessary, and proportional to effect necessary arrests.<br>• When it is not possible to make an immediate arrest, identify and track subjects for later arrest.<br>• Continue to assess and modulate response as behavior changes. | **Commented [KC7]:** Targeting and removing law violators is an SER recommendation. See discussion at 773-1 at 16, 20-21, 26.  SPD made this policy revision in 2021. See Dkt. 658-3 at 2, 7.<br><br>**Commented [KC8]:** Reducing overall impact of SPD is an SER recommendation. *See* discussion, Dkt. 773-1 at 16, 21. SPD made this policy revision in 2021. *See* Dkt. 658-3 at 2. |
| **Phase 5**<br>**(Unlawful Assembly (Riot))** | Where unlawful behavior, such as the examples below, within or of a crowd cannot be controlled through intervention strategies, assemblies may be dispersed.<br>• Violent acts by four or more persons or acts that pose an imminent threat of violence against persons or significant property damage.<br>• Significant unpermitted traffic disruption that poses an imminent threat of harm to members of the assembly or the traveling public.<br>• Other criminal acts in the crowd that cannot be addressed through crowd intervention strategies, due to size, intent, or nature of the acts by members of the crowd and that create an imminent threat to public safety, peace, or order. | • Issue an order to disperse.<br>• Identify dispersal routes.<br>• Identify appropriate area for media, legal observers, and street medics.<br>• Effect necessary arrests.<br>• When safe and feasible and considering the risk to officer safety and members of the crowd, force may be used to disperse the crowd or address acts of violence.<br>• Less-lethal tools may only be used for crowd dispersal when there are specific facts and circumstances that there is an imminent risk of physical injury to any person or significant property damage that are occurring or are about to occur.<br>• Continue to assess and modulate response as behavior changes.<br>• Blast balls, if authorized, and all other reasonable force options and alternatives have been exhausted. | **Commented [KC10]:** Identifying and repeating dispersal routes is an SER recommendation. *See* Dkt. 773-1 at 21. SPD made this policy revision in 2021. See Dkt. 658-3 at 14.<br><br>**Commented [KC9]:** Substantial clarifying language added to define when Phase 5 has been reached to address feedback received in 2025 from DOJ accountability partners<br><br>**Commented [KC11]:** Providing areas for media and legal observers responds to the SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1 at 15. SPD made this policy revision in 2021. *See* Dkt. 658-3 at 5, 8. |

# Seattle Police Department Policy Manual

| Phase 6 (Immediate Life Safety) | In certain circumstances, crowd events may escalate to immediate threats to life safety that require immediate police action.<br>• Crowd members throwing Molotov Cocktails.<br>• Vehicle ramming attack. | • Issue an order to disperse.<br>• Identify dispersal routes.<br>• Any force used should be reasonable, necessary, and proportional to disperse or move a crowd.<br>• Continue to assess and modulate response as behavior changes.<br>• Blast balls or CS Gas, if authorized, and all other reasonable force options and alternatives have been exhausted. |
|---|---|---|

> **Commented [KC12]:** Restrictions on CS gas and blast balls added to address SPD priorities, DOJ feedback, and City law enacted 2/14/2025

## 14.090-POL-1 Purpose

> **Commented [KC13]:** Since 2021, SPD's revised policy has contained a "more robust statement of purpose that embraces Seattle's approach to facilitating public assembly, over and beyond what would be required under a strict First Amendment analysis." Dkt. 773-1 at 21.

The rights to free speech and peaceable assembly are guaranteed by the First Amendment to the United States Constitution and Article 1, § 4 and 5 of the Washington State Constitution. The Seattle Police Department (SPD) takes seriously its responsibility and commitment to support and facilitate the exercise of these rights in a fair and equitable manner, without consideration as to content or political affiliation, with as minimal a footprint as is reasonably necessary to preserve public safety and order.

This policy recognizes that assemblies in Seattle may range from small gatherings that require no police support, to permitted celebratory and/or protest marches, to large-scale, unpermitted demonstrations where activities outside of First Amendment protections, including significant traffic disruption, property destruction, and/or threats of violence may require a greater police presence.

This policy is intended to provide clear guidance to officers, supervisors, and commanders in employing appropriate crowd management, intervention, and control strategies in a manner ~~so as~~ to facilitate, to the extent safe and feasible, the right to free expression and peaceable assembly. This policy is also intended to provide guidance by which officers and supervisors may objectively determine at what juncture a demonstration or assembly leaves the realm of legal protest and becomes an abridgement on the life-safety and property rights of others. At all times, SPD's response will be based upon the conduct of those assembled, not the content of their speech or affiliation (see RCW 9A.84.010).

The department recognizes that the visible appearance and/or actions of law enforcement may affect the demeanor and behavior of a crowd. It is the department's mission to de-escalate whenever safe and feasible to do so, without compromising public order and safety.

> **Commented [KC14]:** Reducing overall impact of SPD is an SER recommendation. *See* discussion, Dkt. 773-1 at 16, 21. SPD added this policy statement in 2021. *See* Dkt. 658-3 at 2.
>
> It is an SER recommendation to make de-escalation a greater priority. *See* Dkt. 773-1 at 16. SPD added statement to emphasize importance on de-escalation in crowd management context in 2021. See Dkt. 658-3 at 2, 3, 9.

The department also recognizes that the unlawful acts of some members of a crowd do not automatically turn an assembly from peaceable to unpeaceable. It is the department's commitment to provide officers and supervisors with crowd management and intervention strategies that allow for the peaceable expression of

# Seattle Police Department Policy Manual

federal and state rights while at the same time removing individuals whose illegal behavior jeopardize the safety of lawful activity.

~~This policy is intended solely to guide the decisions, actions, and operations of Department personnel in planning for and responding to crowd management situations within the City of Seattle. It is not intended to expand or abridge Constitutional analyses with respect to the parameters of First Amendment protections and restrictions more appropriate for a court of law.~~

The department recognizes that a fundamental function of police when engaging in crowd control or dispersal is to identify and clearly communicate safe egress routes for individuals assembled in crowds as well as other uninvolved individuals who may be impacted by crowd control or dispersal efforts.

> **Commented [KC15]:** This paragraph was added to address feedback from Accountability Partners meeting.

Whenever isolated unlawful activity by individuals or small groups in an otherwise peaceable assembly can be addressed through targeted enforcement, commanders and sergeants directing a law enforcement response may use crowd intervention ~~tactics~~strategies, as provided in the CMIC_Matrix, to intervene and remove law violators such that a peaceable assembly may proceed.

> **Commented [KC16]:** Targeting and removing law violators is an SER recommendation. *See* discussion at 773-1 at 16, 20-21, 26.  SPD made this policy revision in 2021. *See* Dkt. 658-3 at 2, 7.

The effect of the crowd intervention strategies upon the demeanor and action of the crowd should be considered.

Per manual section 16.090 – In-Car and Body-Worn Video, sworn employees who have been issued BWV cameras and who have been assigned to work demonstrations will record with body-worn video activated during demonstrations when they are facing and/or in contact with the public.

> **Commented [KC17]:** Continuously modifying SPD's response as crowd behavior changes is an SER recommendation. See Dkt. 773-1 at 17, 20-21. Once it becomes helpful to have a police presence, then SPD's policy makes it clear that officers must regularly assess changes in the actions of individuals within the crowd and adjust SPD's strategies in response.

This policy is to be read in conjunction with manual sections 14.100 – Special Events and Title 8 – Use of Force.

## 14.090-POL-2 Definitions

~~Where used~~For terms not defined in this _policy see manual_ section,~~ the~~ 8.050 – Use of Force Definitions.

The following ~~terms shall have the meanings ascribed~~definitions apply throughout this policy:

**Crowd Events:** Include all phases of CMIC, and crowd management, intervention, and control strategies.

**Crowd Management**—: strategies and tactics that employ communication and dialogue with event leaders to obtain voluntary compliance with lawful orders and allow for minimal enforcement action.

# Seattle Police Department Policy Manual

**Crowd Intervention:** strategies and tactics that are designed to facilitate continued exercise of constitutional rights by isolating and arresting law violators within an otherwise lawful assembly.

**Crowd Control:** strategies and tactics, including dispersal, that are employed in the event a crowd or portion of a crowd becomes involved in violent or otherwise destructive behavior, and which are intended to protect life, restore, and maintain order, allow for the arrest of law violators, and the protection of vital facilities and property.

**CMIC Matrix:** crowd management, intervention, and control concepts and strategies.

**De-Escalation:** strategies and tactics used by officers and commanders, when safe and feasible without compromising law enforcement priorities, that seek to minimize the likelihood of the need to use force during an incident and increase the likelihood of gaining voluntary compliance from a subject.

**Incident Commander (IC):** the sworn employee in charge of the department's on-scene response to an event.

**Legal Observers:** individuals, usually representatives of civilian human rights agencies, who attend public demonstrations, protests, and other activities where there is a potential for conflict between those assembled and law enforcement or security.

- The following may be indicia of a legal observer: wearing a green National Lawyers' Guild (NLG) issued or authorized Legal Observer hat and/or vest (a green NLG hat and/or black vest with green labels) or wearing a blue ACLU issued or authorized legal observer vest.

**Low Profile Tactics:** strategies and techniques that minimize visible police presence and confrontation while maintaining safety, order and control.

**Media** – Consistent with RCW 5.68.010, "media" means any person who is an employee, agent, or independent contractor of any newspaper, magazine or other periodical, book publisher, news agency, wire service, radio or television station or network, cable or satellite station or network, or audio or audiovisual production company, or any entity that is in the regular business of news gathering and disseminating news or information to the public by any means, including, but not limited to, print, broadcast, photographic, mechanical, internet, or electronic distribution.

For purposes of this policy, the following are indicia of being a member of the media: visual identification as a member of the press, such as by displaying a professional or authorized press pass or wearing a professional or authorized press badge or some distinctive clothing that identifies the wearer as a member of the press.

> **Commented [KC18]:** Definition added to address feedback received from Monitor

# Seattle Police Department Policy Manual

**Media:** any individual whom a reasonable sworn employee believes is engaged in news gathering. Sworn employees should consider the following factors when determining Media status:

- The person is not engaging in protest activities, not intermixing with people who are engaging in protest activities, and/or the person is standing apart from protesters, or

- The person is engaging in journalistic activities such as photographic, recording, livestreaming or broadcasting, notetaking, or interviewing, or

- The person verbally identifies themselves as a member of the press, or

- The person wears indicia of a member of the media, such as clothing with station identification, press passes, or clothing with "media" or "press" on it.

**Police Outreach and Engagement Team (POET):** sworn employees integrated in the day-to-day operations of the Community Outreach and Community Response units. During critical incidents, POET officers are tasked with advising ICs and liaising with community elements involved in the event.

**Street Medic:** volunteers with a minimum of first aid medical training supplemented by specific protest-related training, who attend protests and demonstrations as support or mutual aid roles to provide medical and wellness care.

- The person is not engaging in protest activities, not intermixing with people who are engaging in protest activities, and/or standing apart from protesters.

**Tactical Advisor:** a sworn employee experienced and trained in special event and demonstration management who is assigned to provide tactical options to ICs during crowd events.

## 14.090-POL-3 The Department Uses the Incident Command System (ICS) for Crowd ~~Management~~ Events

**1. When Assigned, an Incident Commander ~~(I/C)~~ Will Plan and Oversee the Department's Response Before, During, and ~~Following~~After an Event**

The ~~Incident Commander~~IC may delegate authority and assignments. The IC will utilize POET officers to attempt to interact with organizers and gain cooperation, when feasible.

The IC will ensure a Lieutenant of permanent rank is assigned to SPOC as an administrative lieutenant for preplanned large-scale events where intelligence supports potential violence or significant property damage.

(see 14.090-TSK-1 Incident Commander Responsibilities)

**Commented [KC19]:** Definition of media broadened to address DOJ feedback. The proposed definition accords with First Amendment law. In addition, it provides *greater* protections than required by the stipulated Preliminary Injunction issued by the Court in *Black Lives Matter—King County, et al. v. City of Seattle*, No. 2:20-civ-00887-RAJ, Dkt. 42 (W.D. Wash. June 17, 2020).

**Commented [KC20]:** Formalizing POET engagement responds to SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1 at 15.

**Commented [KC21]:** New role of Tactical Advisor has been added in large crowd or demonstration settings. As defined above, the role is filled by an officer experienced and trained in special event and demonstration management who is assigned to provide tactical options to ICs during crowd management situations. This new role is added to ensure sufficient tactical expertise available to all Incident Commanders and to provide consistency in crowd management.

# Seattle Police Department Policy Manual

**2. The Incident Commander Retains Ultimate Responsibility for the Actions of Subordinates**

~~In order to~~To fulfill this obligation, the ~~Incident Commander~~IC will be available for ~~on-scene~~ consultation.

A tactical advisor is assigned to the IC, when feasible. Tactical advisors are strictly advisory, and the IC maintains ultimate responsibility for actions of subordinates.

**3.The Incident Commander Will be the Rank of Sergeant or Above**

**Exception:** An officer can serve as IC until a sergeant responds.

If feasible, a lieutenant will assume command when there are two sergeants and/or two squads involved in the event.

If feasible, a captain will assume command when there are two lieutenants involved in the event.

~~For more information, see Manual Section 1.020 – Chain of Command.~~

**~~14.090-POL-4 The Incident Commander Will Follow~~ ~~Section 14.100 and 8.500 for Planning, Staffing, and Documenting a Crowd Management Response~~**

**4. Incident Commander Documentation**

The IC will follow manual sections 14.100 – Special Event Planning and 8.400 – Use of Force Reporting and Investigation for planning, staffing, and documenting a crowd event response.

**~~14.090-POL-5~~ 5. The Incident Commander Will Use the Crowd Management, Intervention, and Control Concepts Strategies (CMIC) Matrix**

Any public assembly of individuals or groups, lawful or unlawful, may require support and/or intervention by law enforcement. Depending upon the situation, the law enforcement response can range from observation and/or crowd management strategies to crowd intervention and control strategies, as outlined in the CMIC Matrix.

The CMIC Matrix is a guide for the IC and allows for agility in police action in response to dynamic crowd events. Such considerations may include the overall positioning of a crowd, and whether it is static or mobile. The IC will document their considerations in their statement.

# Seattle Police Department Policy Manual

| Lawful Assembly | Isolated Unlawful Behavior | Unlawful Assembly |
|---|---|---|
| Free speech and peaceable assembly are protected First Amendment activities. Examples include:<br>• Speeches<br>• Marches<br>• Demonstrations<br>• Rallies<br>• Picketing<br>• Public assemblies<br>• Protests<br>• Celebratory events | Individual violent acts within the crowd, property damage, unpermitted traffic disruption, and defacement are not protected activities. However, isolated unlawful activity by individuals or small groups within a crowd should not automatically form the basis for declaring an assembly unlawful.<br>Examples include:<br>• Isolated destruction of property<br>• Isolated acts of violence<br>• Isolated rock or bottle throwers<br>• Individual sit-down demonstrators | Where unlawful behavior within or of a crowd cannot be controlled through intervention strategies, assemblies may be dispersed.  Examples of such behavior include:<br>Examples of such behavior include:<br>• Violent acts by four or more persons or acts that pose an imminent threat of violence against persons or property (RCW 9A.84.010)[1]<br>• Significant unpermitted traffic disruption that poses an imminent threat of harm to members of the assembly or the traveling public<br>• Other criminal acts in the crowd that cannot be addressed through crowd intervention strategies |
| **Police Action** | | |
| Crowd Management Strategies (Manual Sections 14.090, .100)<br>• Meet with event organizers and stakeholders<br>• Determine the history and risk of the group<br>• Check permit limitations<br>• Develop Incident Action Plan and objectives<br>• Identify and assign resources<br>• Determine appropriate uniform for the event<br>• Provide direction and expectations at roll call<br>• Monitor and assess crowd behavior<br>• Engender facilitation, not confrontation<br>• Attempt to interact with organizers and gain cooperation<br>• Separate opposing factions | Crowd Intervention Strategies<br>• Attempt to use organizers and monitors to gain voluntary compliance<br>• Isolate, arrest and remove law violators as quickly as possible<br>• Video action of officers and law violators<br>• Use amplified sound to communicate intent or to gain compliance<br>• Use low profile tactics when possible<br>• Use force that is reasonable, necessary, and proportional force to effect necessary arrests consistent with Title 8<br>• When it is not possible to make an immediate arrest, identify and track subjects for later arrest<br>• Continue to assess and modulate response as behavior changes | Crowd Control and Dispersal Strategies<br>• Issue an order to disperse<br>• Identify dispersal routes<br>• Identify appropriate area for media and legal observers<br>• Use force that is reasonable, necessary, and proportional to disperse or move a crowd<br>• Continue to assess and modulate response as behavior changes |

**14.090 POL 6  6.** The Incident Commander Will Employ Crowd Management Strategies Prior to and During an Event, Whenever Feasible

# Seattle Police Department Policy Manual

The Incident CommanderIC will consider strategies in the CMIC Matrix when planning for an event and in managing peaceable assemblies.an event.

## 14.090-POL-7 Officers Will Use Crowd Intervention Strategies Whenever Safe and Feasible

Whenever isolated unlawful activity by individuals or small groups in an otherwise peaceable assembly can be addressed through targeted enforcement, commanders and sergeants directing a law enforcement response will use crowd intervention tactics as provided in the CMIC to intervene and remove law violators such that a peaceable assembly may proceed.

> **Commented [KC22]:** Moved this paragraph up to POL-1 Purpose section

## 14.090-POL-48 Crowd Control and Dispersal

### 1. The Incident Commander, Who is Lieutenant of Permanent Rank or Higher, May Order that a Public Safety Order be Issued

Upon determining that there are acts or conduct within a crowd that create a substantial risk of causing injury to persons or substantial harm to property, tThe incident commanderIC may order that a public safety order be issued to move, disperse, or refrain from specified activities in the immediate vicinity upon determining that there are acts or conduct within a crowd that create a substantial and imminent risk of violence against persons or significant property damage.

> **Commented [KC23]:** Edits reflect feedback from Accountability Partners meeting.

The Incident CommanderIC will not order a public safety order to be issued unless the Incident CommanderIC has determined that the risk observed cannot be contained through crowd management or crowd intervention tactics. strategies.

(See 14.090-TSK-3 Issuing the Order to Disperse)

### 2. Upon Determining thatThat a Public Safety Order to Disperse is Necessary, the Incident Commander Will Ensure that thereThat There is are an Sufficient Avenue(s) of Egress Sufficient to Allow the Crowd to Depart and That Those in the Vicinity Are Clearly Informed of the Avenue(s) For Dispersal

> **Commented [KC24]:** Changed to specify possibility of multiple avenues of egress to address Monitor feedback

### 3. Where Available, Sound Amplification Equipment Will Be Used to Issue the Public Safety Order

The IC will make a reasonable effort to ensure that the order is heard or received. The IC may direct the Public Affairs Unit to broadcast the public safety order on social media.

> **Commented [KC25]:** Using amplified sound responds to the SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1 at 15. This policy revision was first added to improve communication after the protests of 2020. *See* Dkt. 683-3 at 7, 14.

> **Commented [KC26]:** Using social media responds to the SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1 at 15. SPD made this policy revision in 2021. See Dkt. 658-3 at 7, 14.

### 5.4. After OrderingMaking a Public Safety Order, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit

# Seattle Police Department Policy Manual

The goal of a public safety order to disperse is to restore and maintain public order. If the IC determines that a crowd no longer poses a substantial risk of injury to persons or harm to property, the IC will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC Matrix.

**5. The Incident Commander Will Document the Circumstances Upon Which a Public Safety Order was Issued, Including any Considerations as to Less Restrictive Means to Restore Public Order**

## 14.090-POL- ~~510~~ Use of Force

> **Commented [KC27]:** Moved up from lower down. Used to be POL-10

It is the department's mission to facilitate crowd events with as minimal force as is reasonably necessary to protect life and property. In both crowd intervention and crowd control situations, sworn employees may be required to physically engage individuals who exhibit conduct ranging from obstructive to violent behavior. In these situations, ~~officers~~ sworn employees may have to move crowd members who do not ~~respond to~~comply with verbal orders, control violent individuals, or to effect an arrest. In considering strategies and tactics, ~~officers~~ sworn employees should weigh the risk of harm resulting from sworn employee action against the risk of harm that may otherwise continue.

This policy is to be read and applied in conjunction with Title 8 of this manual. While the department recognizes that ~~officers~~ sworn employees will face unique and challenging circumstances that cannot be exhaustively addressed in policy, ~~officers~~ sworn employees and commanders are expected to apply core principles of de-escalation and modulation of force when safe and feasible to do so.

Nothing about this policy creates an exception to the requirement that ~~officers~~ sworn officers may use only force, which is objectively reasonable, necessary, and proportional to bring an incident or person under control, while protecting the life and safety of all persons or the obligation to de-escalate, when safe and feasible.

> **Commented [KC28]:** Added to address Monitor feedback

**1. ~~Officers~~ Sworn Employees May Make Individual Decisions to Use Force Consistent with Title 8** ~~to Take Reasonable, Necessary, and Proportional Action to Protect Against a Specific Imminent Threat of Physical harm to Themselves or Identifiable Others Or to Respond to Specific Acts of Violence or Substantial Destruction of Property~~

Sworn employees will take reasonable, necessary, and proportional actions to protect against specific imminent threats of physical harm to themselves or identifiable others or to respond to specific acts of violence or substantial destruction of property.

Sworn employees~~officers~~ will employ de-escalation strategies and tactics within all crowd event contexts, whenever safe and feasible under the circumstances, to reduce or eliminate the necessity to use physical force (see manual section 8.100 – De-Escalation).

> **Commented [KC29]:** This language is drawn from Judge Jones' Injunction, issued on August 10, 2020, in *Black Lives Matter et al v. City of Seattle*, United States District Court for the Western District of Washington, Civil Case No. 2:20-cv-00887-RAJ (Dkt. 110).

# Seattle Police Department Policy Manual

Where feasible, officers sworn employees will consult with a supervisor prior to taking action to protect against destruction of property.

**2. Less-Lethal Tools for Crowd Control Purposes are Prohibited Unless Specific Facts and Circumstances are Occurring or About to Occur**

Less-lethal tools may only be used for crowd control purposes when there are specific facts and circumstances that there is an imminent risk of physical injury to any person or significant property damage that are occurring or are about to occur.

Only an IC, with the permanent rank of lieutenant or above, may approve the use of certain less-lethal tools for crowd dispersal.

Bicycles and batons are only considered as less lethal tools/impact weapons when used to strike a subject and not when used to push or guide a subject.

**3. The Incident Commander, with the Permanent Rank of Lieutenant or Above, Has Authority to Direct the Use of Less-Lethal Tools, Other Than CS Gas or Blast Balls, to Disperse the Crowd (See Manual Section 8.300 Use of Force Weapons and Tools)**

When there are specific facts and circumstances that there is an imminent risk of physical injury to any person or significant property damage that is occurring or is about to occur, the IC has authority to direct the use of certain less-lethal tools, other than CS gas or blast balls, to disperse the crowd.

> **Commented [KC30]:** Added to incorporate City Ordinance 127182

> **Exception:** A lieutenant supervisor may authorize the use of less-lethal weapons tools, other than CS gas or blast balls, to move or disperse a crowd if an immediate life safety emergency exists that requires this action be taken and there is insufficient time to obtain IC approval. An immediate life safety emergency is an unplanned, dynamic situation where immediate police action is necessary to protect the officers' sworn employees' and/or the public's safety.

For the deployment of CS gas or blast balls, see 14.090-POL-6 or POL-7.

**4. Only Personnel Sworn Employees Trained to Deploy Less-Lethal Tools (Blast Balls, OC Spray, 40mm Less-Lethal Launchers, CS Gas, and Pepperballs) are Authorized to Carry and Use These Tools Under the Supervision of the Incident Commander or Their Designee**

Training will include information about the less-lethal weapons, how to effectively deploy them, safety considerations, known risks and experience of SPD, the specific effects on people and the environment, and how to decontaminate persons.

Only SWAT is authorized to carry and deploy 40 mm less lethal impact rounds for crowd control purposes.

> **Commented [KC31]:** This language was deleted as confusing. No one can deploy impact rounds "for crowd control purposes." See Title 8 for clear, comprehensive policy guidance on use of 40mm less-lethal impact rounds.

## Seattle Police Department Policy Manual

**5.** ~~Officers~~ **Sworn Employees Will Not Deploy Less-Lethal** ~~Weapons~~ **Tools (Blast Balls, OC Spray, 40 mm** **Less-Lethal Launchers,** **CS Gas,** and **Pepperballs) to Move** or Disperse **a Crowd** ~~Until an Incident Commander Instructs Officers to Deploy them (Which Will be After a Dispersal Order has Been Given and the Crowd Has Been Given a Reasonable Amount of Time to Comply)~~ **Until Authorization to Deploy is Given from an Incident Commander**

The IC, ranked lieutenant or higher, will give the crowd a dispersal order and a reasonable amount of time to comply, under the circumstances (see 14.090-TSK-3 Issuing the Order to Disperse).

**6. As the Level of Violence Within a Crowd that Justified the Dispersal Order Diminishes, the Incident Commander Will Affirmatively** ~~Ensure~~ **Direct** ~~Personnel~~ **Sworn Employees** ~~are Directed~~ **to Modulate their Force**

**7. Uses of Force that Occur During the Course of Crowd** ~~Management Events~~ **Are Reported, Investigated, and Reviewed in Accordance with Manual Section 8.500-POL-6**

## 14.090-POL-6 Less-Lethal Tools – CS Gas

### 1. CS Gas is Only Authorized for Use During Crowd Events

### 2. CS Gas May Only Be Deployed When There are Specific Facts and Circumstances to Establish that the Risk to Life is Imminent (CMIC Phase 6)

### 3. Deployment of CS Gas

Before the use of CS gas, the IC must exhaust all other reasonable force options and alternatives to the use of CS gas that are feasible under the circumstances (see manual section 8.300 – Use of Force Tools).

The IC may only approve the use of CS gas to alleviate a present risk of serious harm once the Mayor has issued a proclamation order of civil emergency pursuant to Seattle Municipal Code (SMC) 10.02, and once the IC has received authorization by the mayor (or next highest elected official in the mayor's absence).

Per RCW 10.116.030, in the case of a riot or incident outside of the City of Seattle city limits where CS gas may be used, a sworn employee may only use CS gas after receiving authorization from the highest elected official of the jurisdiction where the CS gas is to be used.

Prior to using CS gas outside of a crowd event, SWAT officers who have received training for CS gas use within the past 12 months will:

> **Commented [KC32]:** New sub-section POL-6 added as follows:
> • state law requirements enacted in April 2021 restricting the use CS gas. *See* Rev. Code Wash. 10.116.030--change added to SPD policy soon as the state mandate took effect
> • Additional change proposed to incorporate restrictions on CS gas in City Ordinance 127182 enacted 2/13/2025

# Seattle Police Department Policy Manual

- Determine whether the present circumstances warrant the use of CS gas and whether available and appropriate alternatives have been exhausted, and

- Announce to subjects the intended use of CS gas, and

- Allow sufficient time and space for the subject(s) to comply with the SWAT officer's directives, if safe and feasible, notify other persons in the vicinity to disperse.

Prior to using CS gas for a crowd control incident, the supervising sworn employee or Incident Commander (IC) must receive authorization from the Mayor of Seattle before CS gas is deployed.

**4. Upon Determining That the Use of CS Gas is Necessary, the Incident Commander Will Ensure That There is an Avenue of Egress Sufficient to Allow the Crowd to Depart**

**5. The Incident Commander will Issue an Announcement of Their Intent to Deploy CS Gas**

The IC will make reasonable efforts to ensure that the warning is heard or received.

The IC will allow sufficient time and space for the crowd to disperse.

Where available, sound amplification equipment will be used to issue a CS gas deployment warning.

The IC may direct the Public Affairs Unit to broadcast a CS gas deployment warning on social media to the public.

**6. After Ordering the Use of CS Gas, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit**

The goal of the use of CS gas is to prevent serious harm and to restore and maintain public order. If the IC determines that a crowd no longer poses a risk of serious harm, the IC will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC Matrix.

**7. As Soon as Reasonably Possible, Sworn Employees Will Request and/or Render Medical Aid**

For subjects who appear to have been injured or complain of pain or injury resulting from CS Gas deployment, sworn employees will render and/or request medical aid.

**8. The Incident Commander Will Document the Circumstances Upon Which CS Gas Were Deployed, Including any Considerations as to Less Restrictive Means to Restore Public Order**

> **Commented [KC33]:** Incorporates CPC suggestion to change from "allow sufficient time and space for the crowd to comply with the warning" to say, instead, "allow sufficient time and space for the crowd to disperse."

# Seattle Police Department Policy Manual

## 14.090-POL-7 Less-Lethal Tools – Blast Balls

**Commented [KC34]:** New sub-section, POL-7 added as follows
• Incorporate requirements of preliminary Injunction issued by the Court in *Black Lives Matter—King County, et al. v. City of Seattle*, No. 2:20-civ-00887-RAJ, Dkt. 42 (W.D. Wash. June 17, 2020)--changes made immediately after injunction issued
•Additional changes proposed to incorporate restrictions on blast balls in City Ordinance 127182 enacted 2/13/2025

### 1. Blast Balls are Only Authorized for Use During Crowd Events

Blast balls are ball-shaped, rubber coated, less-lethal devices designed for crowd control purposes. Blast balls may contain oleoresin capsicum (OC).

Sworn employees are prohibited from using blast balls to move or disperse a crowd unless the mayor has issued a proclamation of civil emergency.

### 2. Only Sworn Employees Who Have Completed Department Blast Ball Training are Permitted to Deploy Blast Balls

### 3. Sworn Employees Will Only Use Department-Issued Blast Balls

### 4. Sworn Employees May Only Use Blast Balls When an Incident Commander (Ranked Lieutenant or Higher) Authorizes the Force for Crowd Control and Crowd Dispersal

The Incident Commander may authorize blast ball deployment if they believe that such force is objectively reasonable, necessary, and proportional to protect against a specific imminent threat of violence against persons or significant property damage.

**Exception:** Sworn employees may deploy blast balls on an individual basis when reasonable, necessary, and proportional to address immediate threats to life safety (for the definition of Immediate Threat of Serious Bodily Injury or Death, see manual section 8.050 – Use of Force Definitions).

### 5. Deployment of Blast Balls

Before the use of blast balls, the IC must exhaust all other reasonable force options and alternatives to the use of blast balls that are feasible under the circumstances (see manual section 8.300 – Use of Force Tools).

The IC may only approve the use of blast balls once the following conditions have been met:

- The Mayor has issued a proclamation of civil emergency pursuant SMC 10.02, and

- The IC has received authorization by the Chief of Police, and

- Only if there are specific facts and circumstances that establish an imminent threat of violence against persons or significant property damage (CMIC Phase 5 or 6).

# Seattle Police Department Policy Manual

**6. Upon Determining That the Use of Blast Balls is Necessary, the Incident Commander Will Ensure That There is an Avenue of Egress Sufficient to Allow the Crowd to Depart**

**7. The Incident Commander will Issue an Announcement of Their Intent to Deploy Blast Balls**

The IC will make reasonable efforts to ensure that the warning is heard or received.

The IC will allow sufficient time and space for the crowd to disperse.

Where available, sound amplification equipment will be used to issue a blast ball deployment warning.

The IC may direct the Public Affairs Unit to broadcast a blast ball deployment warning on social media to the public.

**8. After Ordering the Use of Blast Balls, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit**

The goal of the use of blast balls is to prevent serious harm and to restore and maintain public order. If the IC determines that a crowd no longer poses a risk of serious harm, the IC will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC Matrix.

**9. Sworn Employees Will Direct Blast Balls Away from People**

Sworn employees will not deploy a blast ball directly into a crowd.

Blast balls will only be deployed using a low deployment ("bowling style") in an open space away from people.

**Exception:** Sworn employees may only use a high deployment ("overhand throw") near a person when reasonable, necessary, and proportional to address immediate threats to life safety.

**10. As Soon as Reasonably Possible, Sworn Employees Will Request and/or Render Medical Aid**

For subjects who appear to have been injured by a blast ball deployment or who complain of pain or injury resulting from a blast ball deployment, sworn employees will render and/or request medical aid.

**11. The Department Will Maintain Written Documentation of the Number of Blast Balls Annually Distributed to, and Utilized by, Each Employee**

# Seattle Police Department Policy Manual

**12. Sworn Employees Are Required to Report the Use of Blast Balls, Regardless of Whether a Subject is Struck**

After the initial blast ball deployment, each subsequent deployment must be reasonable, and the employee will re-evaluate the situation accordingly. Sworn employees must justify each separate blast ball deployment.

The deployment of blast balls in a crowd event is reported and investigated as Type II force (see manual section 8.400 – Use of Force Reporting and Investigation).

**Exception:** The deployment of blast balls away from people (i.e., a "bang out") that does not result in any injury or complaint of pain is reported and investigated as a Type 1 use of force per manual section 8.400 – Use of Force Reporting and Investigation.

Sworn employees must document their deployment method and the reasoning for using such method in their use-of-force report.

**13. The Incident Commander Will Document the Circumstances Upon Which Blast Balls Were Deployed, Including any Considerations as to Less Restrictive Means to Restore Public Order**

**14.090-POL-8 Less-Lethal Tools – 40MM LL Launchers**

**1. Only SWAT and 40mm LL Trained CRG Sworn Employee Are Allowed to Use 40mm LL Launchers for Crowd Intervention and Control**

Upon approval by the Chief of Police, sworn employees who are trained in the use of the 40mm LL launcher may deploy with this tool for crowd events for individual intervention; however, 40mm LL impact rounds are not authorized for crowd dispersal.

~~(See 14.090-TSK-3 Issuing the Order to Disperse)~~

**14.090-POL-9 Media, Street Medics, and Legal Observers**

**1. It is the Department's Goal to Provide the Media, Street Medics, and Legal Observers as Much Access as is Safely Possible to Assist Them in Their Duties and Responsibilities**

**2. ~~With the Exception of Spontaneously Occurring Events, and when Practicable, T~~he Incident Commander Will Consider Identifying an Area for Members of the Media, Street Medics, and Legal Observers Outside of the Anticipated Impacted Area ~~but Within Viewing Distance and Audible Range of the Event, for Members of the Media or Legal Observers to Assemble~~**

> **Commented [KC35]:** New proposed sub-section POL-8 restricts use of 40mm less-lethal launchers for individual intervention.

> **Commented [KC36]:** Providing areas for media and legal observers responds to the SER recommendations to improve communication with the public. *See* discussion at Dkt. 773-1 at 15. SPD added this entire sub-section in 2021. *See* Dkt. 658-3 at 5, 8.

# Seattle Police Department Policy Manual

Except for spontaneously occurring events, and when practicable, the IC will consider identifying an area(s) outside of the anticipated impacted area(s), but within viewing distance and audible range of the event, for members of the media, street medics, or legal observers to assemble to allow safer observation and/or ability to provide medical assistance.

Nothing about this policy restricts any member of the media, street medics, or legal observer to such identified areas, and officers shall sworn employees will not take enforcement action solely because members of the media or legal observers do not remain within the identified area.

**3. Officers Sworn Employees Will Not Arrest Members of the Media, Street Medics, or Legal Observers for Failure to Disperse, Unless they are Physically Obstructing Lawful Efforts to Disperse the Crowd**

Nothing about this policy authorizes members of the media, street medics, or legal observers from otherwise to ignore or fail to comply complying with lawful commands, nor prohibits arrests based on probable cause on other offenses.

## 14.090-POL-10 11 -Providing Medical Aid

**1. Officers Sworn Employees Will Provide Aid, Within Their Training, to Subjects Exposed to CS gas, OC, Blast Balls, 40mm, Less-Lethal Rounds, or Pepperballs, if Feasible and Within their Training**

Medical aid may include summoning medical assistance, if more appropriate.

**2. Officers Sworn Employees Will Request Medical Response or Assistance for, When Safe and Feasible for Subjects Exposed to OC and /or Pepperballs When They Complain of Continued Effects After Having Been Decontaminated, or They Indicate That They Have a Pre-Existing Medical Condition (e.g., Asthma, Emphysema, Bronchitis, Heart Ailment, Etc.) That May Be Aggravated by OC or Pepperballs**

Sworn employees will request medical response or assistance for subjects exposed to less-lethal tools (CS gas, OC, blast balls, 40mm less-lethal rounds, or pepperballs) when any of the following occur:

- Subjects complain of continued effects after having been decontaminated, or

- Subjects indicate that they have a pre-existing medical condition (e.g., lung or heart ailments) that may be aggravated by OC or pepperballs, or

- Subjects who appear to have been injured by a less-lethal tool or who complain of pain or injury from a less-lethal tool.

# Seattle Police Department Policy Manual

Sworn employees will not detain affected persons who are not subjects of any law enforcement investigation and were incidentally affected by deployment of less-lethal tools, allowing them to seek medical attention of their own choosing.

**Commented [KC37]:** Revision proposed by CPC.

3. Officers Will Request Medical Response or Assistance for Subjects Who Appear to Have Been Injured by a Less-Lethal Weapon or Who Complain of Pain or Injury from a Less-Lethal Weapon.

## 14.090-POL-1211 Debrief of Crowd Management Events of Short Duration

### 1. Following the Event, Sergeants and Incident Commanders Will Conduct a Day-of-Event Debrief

Sergeants will conduct a debriefing of their assigned officerssworn employees and document any observations or suggestions on an Event Debrief Form (form 23.5).

Sergeants and the Incident Command staff will then have a separate debrief to discuss the following subjects:

- Event staffing

- Deployment

- Command issues

- Communication issues

- Logistical issues

- Use of less-lethal tools/weapons

- Areas of success

- Areas for improvement

### 2. The Incident Commander Will Complete an After-Action Report

(See manual section 14.010 – After-Action Reports)

## 14.090-POL-1312 Debrief of Large Scale and/or Prolonged Events

### 1. For Incidents Which are Large in Scale, or Whose Duration Is Multiple Days or Weeks, the Day-of-Event Debrief Will Consist of the Post-Event Briefing Form

# Seattle Police Department Policy Manual

2. The IC, or their designee, will complete the Post-Event Briefing Form.

**32. The ~~AAR~~After-Action Report Will be Written by the Chief of Police's Designee**

The completion date will be determined by the Chief depending upon the length of the on-going incident.

## 14.090-TSK-1 Incident Commander Responsibilities

**Incident Commander**

1. If feasible, **contacts** the event organizer to discuss department facilitation.

2. **Develops** contingency plan regarding staffing and tactics.

   - SPD task force callout criteria.

3. **Considers** utilizing specialty units.

4. **Reviews** mutual aid callout criteria and which less-lethal tools mutual aid may bring into the City of Seattle, and how ~~they~~mutual aid agencies will document their use of force (see manual section 16.240 – Mutual Aid).

> **Commented [KC38]:** Cross-reference to the provision in Mutual Aid policy that sets out requirements in Ordinance regarding Mutual Aid response during crowd situations

5. **Provides** a staffing plan to the SPD Budget Section based on the Staffing Matrix, if feasible.

6. **Communicates** each unit's mission to the relevant supervisor or commander.

   - **Instructs** the supervisor or commander to develop and provide plans.

   - **Approves** unit plans.

   - **Ensures** the event plans are detailed in the Incident Action Plan, to include the goals, objectives, rules of engagement, and the CMIC Matrix.

7. **Briefs** ~~officers~~ sworn employees and supervisors using the SPD ICS briefing format.

8. **Remains** available for on-scene consultation.

9. For short duration events:

   - **Debriefs** supervisors and commanders.

   - **Collects** Event Debrief Forms from the supervisors.

   - **Considers** including the ~~Wellness Unit~~Employee Support Services.

# Seattle Police Department Policy Manual

10<del>11</del>. For prolonged events:

- **Coordinates** with the Chief of Police regarding the After-Action Report and **ensures** the IC, or designee, completes the Post Event Briefing form.

11. **Completes** an After-Action Report consistent with the requirements of manual section 14.010 – After-Action Reports.

a. **Routes** the After-Action Report and Event Debrief Forms to the ~~Patrol~~ Operations Bureau Commander, via the chain of command.

12. **Notifies** the Professional Standards Bureau Assistant Chief via email of any less-lethal tools deployed during crowd control events.

> **Commented [KC39]:** Added per suggestion of Monitor

## 14.090-TSK-2 Operations Section Chief Responsibilities

**Operations Section Chief**

1. **Develops** methods or tactics that will be used to accomplish the mission, as directed by the IC.

a. **Submits** plans to the ~~Incident Commander~~IC.

2. **Debriefs** assigned ~~officers~~sworn employees after the incident.

3. **Documents** observations and suggestions on an Event Debrief Form (form 23.5).

a. **Submits** Event Debrief Forms to ~~Incident Commander~~IC.

4. **Attends** separate debrief with ~~Incident Commander~~IC.

## 14.090-TSK-3 Issuing the Order to Disperse

**Incident Commander (or designee ranked Lieutenant or higher)**

Upon determining that the crowd presents an imminent risk to public safety, or that ~~large-scale~~significant property destruction appears likely, the ~~Incident Commander~~ IC or ~~their~~ designee, ~~as~~when feasible:

1. Where available, **utilizes** sound amplification equipment so the crowd can hear the dispersal order.

2. **Considers** using the ~~Media Relations unit~~Public Affairs Unit to broadcast dispersal orders on social media.

# Seattle Police Department Policy Manual

3. **Places** ~~officers~~ sworn employees at the rear of the crowd to verify that the order to disperse will be heard by all.

4. The IC (or their designee) will **issue** the following order:

**"I am [rank and name] of the Seattle Police Department. For safety reasons and to prevent further crimes in the crowd, I am now issuing a public safety order to disperse, and I command all those assembled at [specific location] to immediately disperse, which means leave this area. If you do not leave the area, you may be arrested or subject to other police action. Other police action could include the use of chemical agents or less-lethal weapons, which may inflict significant pain or result in serious injury. If you remain in the area just described, regardless of your purpose, you will be in violation of city and state law. The following routes of dispersal are available: [routes]. You have [reasonable amount of time] minutes to disperse.**

**(Repeat) The following routes of dispersal are available: [routes]. You have [reasonable amount of time] minutes to disperse.**

**(Repeat) The following routes of dispersal are available: [routes]. You have [reasonable amount of time] minutes to disperse."**

> **Commented [KC40]:** Identifying and repeating dispersal routes is an SER recommendation. *See* Dkt. 773-1 at 21. SPD made this policy revision in 2021. See Dkt. 658-3 at 14.

5. **Provides** direction to media, legal observers, and street medics.

> **Commented [KC41]:** OPA suggestion.

6. **Allows** a reasonable amount of time for the crowd to disperse.

7. **Repeats** the order to disperse, if feasible.

8. **Considers** issuing the order in multiple languages, where feasible, and depending upon the situation.

9. Continually **assesses** the balance of dispersal time and the goal of retaining control of the situation.

Where the IC has determined it is not safe or feasible to accomplish any of the above, the IC will document that reasoning in their statement.

---

~~[1] While this definition tracks the legal standard, the presence of four more persons acting to pose an imminent threat of violence against persons or property does not presumptively justify law enforcement action under policy. In all cases, Incident Commanders are expected to consider the number of individuals acting unlawfully in the context of available resources and intervention strategies short of dispersal.~~