EXHIBIT C




Seattle Police Department
Policy Manual

# Interim Policy 14.090 – Crowd Management, Intervention, and Control

**Effective Date: 04/24/2023**

## Crowd Management, Intervention, and Control (CMIC) Strategies

The CMIC is intended to be read as a continuum. Any police responses available at a lower phase remain available as a response at higher phases.

|  | **Crowd Actions** | **Police Response** |
|---|---|---|
| **Phase 1** <br><br> **(Lawful Assembly Standoff)** | Events that are typically static or smaller in scale and do not require police assistance. <br> • Speeches <br> • Marches <br> • Demonstrations <br> • Rallies <br> • Picketing <br> • Public assemblies <br> • Protests <br> • Celebratory events | • Determine the history and risk of the group. <br> • Engender facilitation, not confrontation. <br> • Monitor and assess crowd behavior. <br> • Assess and modulate response as behavior changes. <br> • Develop Incident Action Plan (IAP) and objectives. <br> • Minimize police presence observable by crowd. |
| **Phase 2** <br><br> **(Lawful Assembly Police Interaction)** | Likely larger and/or preplanned events with designated groups or organizers. <br> • Speeches <br> • Marches <br> • Demonstrations <br> • Rallies <br> • Picketing <br> • Public assemblies <br> • Protests <br> • Celebratory events | • Utilize POET Officers for communication with event organizers and stakeholders. <br> • Engender facilitation, not confrontation. <br> • Monitor and assess crowd behavior. <br> • Minimize police presence observable by crowd. <br> • Assess and modulate response as behavior changes. <br> • Develop IAP and objectives. <br> • Determine appropriate level of police presence required by the totality of the circumstances. |

# Seattle Police Department Policy Manual

| | | |
|---|---|---|
| **Phase 3**<br><br>**(Escalating Behavior)** | Crowd or individuals within the crowd showing low level signs of disorder.<br>• Minor acts of disorder such as knocking down sandwich boards or throwing garbage in the road.<br>• Individual sit-down demonstrators.<br>• March deviating from pre-planned route.<br>• Elements of crowd splintering or deviating from original organizer intentions.<br>• Crowd becoming verbally aggressive with officers or other bystanders on scene.<br>• Crowd directing negative attention towards officers or other elements of the community. | • Attempt to use organizers and monitors to gain voluntary compliance.<br>• Utilize POET Officers for communication with event organizers and stakeholders.<br>• Use amplified sound to communicate intent or to gain compliance.<br>• Use low profile tactics when possible.<br>• Continue to assess and modulate response as behavior changes. |
| **Phase 4**<br><br>**(Isolated Unlawful Behavior)** | Individual violent acts within the crowd, property damage, unpermitted traffic disruption, and defacement are not protected activities.  However, isolated unlawful activity by individuals or small groups within a crowd should not automatically form the basis for declaring an assembly unlawful.<br>• Isolated destruction of property<br>• Isolated acts of violence<br>• Isolated rock or bottle throwers<br>• Individual sit-down demonstrators blocking traffic | • Attempt to use organizers and monitors to gain voluntary compliance.<br>• Isolate, arrest, and remove law violators as quickly as possible.<br>• Video action of officers and law violators.<br>• Use amplified sound to communicate intent or to gain compliance.<br>• Use low profile tactics when possible.<br>• Effect necessary arrests.<br>• Any force used should be reasonable, necessary, and proportional to effect necessary arrests.<br>• When it is not possible to make an immediate arrest, identify and track subjects for later arrest.<br>• Continue to assess and modulate response as behavior changes. |
| **Phase 5**<br><br>**(Unlawful Assembly (Riot))** | Where unlawful behavior within or of a crowd cannot be controlled through intervention strategies, assemblies may be dispersed.<br>• Violent acts by four or more persons or acts that pose an imminent threat of violence against persons or property ([RCW 9A.84.010\[1\]](#)).<br>• Significant unpermitted traffic disruption that poses an imminent threat of harm to members of the assembly or the traveling public. | • When safe and feasible and considering the risk to officer safety and members of the crowd, force may be used to disperse the crowd or address the acts of violence.<br>• Issue an order to disperse.<br>• Identify dispersal routes.<br>• Identify appropriate area for media and legal observers.<br>• Any force used should be reasonable, necessary, and proportional to disperse or move a crowd. |

# Seattle Police Department Policy Manual

|  | • Other criminal acts in the crowd that cannot be addressed through crowd intervention strategies, due to size, intent, or nature of the acts by members of the crowd. | • Continue to assess and modulate response as behavior changes. |
|---|---|---|
| Phase 6<br><br>(Immediate Life Safety) | In certain circumstances crowd management events may escalate to immediate threats to life safety that require immediate police action.<br>• Crowd members throwing Molotov Cocktails.<br>• Vehicle ramming attack. | • Issue an order to disperse.<br>• Identify dispersal routes.<br>• CS gas, if authorized by the Mayor.<br>• Any force used should be reasonable, necessary, and proportional to disperse or move a crowd.<br>• Continue to assess and modulate response as behavior changes. |

## 14.090-POL-1 Purpose

The rights to free speech and peaceable assembly are guaranteed by the First Amendment to the United States Constitution and Article 1, § 4 and 5 of the Washington State Constitution. The Seattle Police Department (SPD) takes seriously its responsibility and commitment to support and facilitate the exercise of these rights in a fair and equitable manner, without consideration as to content or political affiliation, with as minimal a footprint as is reasonably necessary to preserve public safety and order.

This policy recognizes that assemblies in Seattle may range from small gatherings that require no police support, to permitted celebratory and/or protest marches, to large-scale, unpermitted demonstrations where activities outside of First Amendment protections, including significant traffic disruption, property destruction, and/or threats of violence may require a greater police presence.

This policy is intended to provide clear guidance to officers, supervisors, and commanders in employing appropriate crowd management, intervention, and control strategies in a manner to facilitate, to the extent safe and feasible, the right to free expression and peaceable assembly. This policy is also intended to provide guidance by which officers and supervisors may objectively determine at what juncture a demonstration or assembly leaves the realm of legal protest and becomes an abridgement on the life-safety and property rights of others. At all times, SPD's response will be based upon the conduct of those assembled, not the content of their speech or affiliation. See RCW 9A.84.010.

The department recognizes that the visible appearance and/or actions of law enforcement may affect the demeanor and behavior of a crowd. It is the department's mission to de-escalate whenever safe and feasible to do so, without compromising public order and safety.

# Seattle Police Department Policy Manual

The department also recognizes that the unlawful acts of some members of a crowd do not automatically turn an assembly from peaceable to unpeaceable. It is the department's commitment to provide officers and supervisors with crowd management and intervention strategies that allow for the peaceable expression of federal and state rights while at the same time removing individuals whose illegal behavior jeopardize the safety of lawful activity.

This policy is intended solely to guide the decisions, actions, and operations of department personnel in planning for and responding to crowd management situations within the City of Seattle. It is not intended to expand or abridge constitutional analyses with respect to the parameters of First Amendment protections and restrictions more appropriate for a court of law.

This policy is to be read in conjunction with manual sections 14.100 – Special Events and Title 8 – Use of Force.

## 14.090-POL-2 Definitions

For terms not defined in this policy see manual section 8.050 - Use of Force Definitions. The following definitions apply throughout this policy:

**Crowd Management:** strategies and tactics that employ communication and dialogue with event leaders to obtain voluntary compliance with lawful orders and allow for minimal enforcement action.

**Crowd Intervention:** strategies and tactics that are designed to facilitate continued exercise of constitutional rights by isolating and arresting law violators within an otherwise lawful assembly.

**Crowd Control:** strategies and tactics, including dispersal, that are employed in the event a crowd or portion of a crowd becomes involved in violent or otherwise destructive behavior and which are intended to protect life, restore, and maintain order, allow for the arrest of law violators, and the protection of vital facilities and property.

**CMIC Matrix:** crowd management, intervention, and control concepts and strategies.

**De-Escalation:** strategies and tactics used by officers and commanders, when safe and feasible without compromising law enforcement priorities, that seek to minimize the likelihood of the need to use force during an incident and increase the likelihood of gaining voluntary compliance from a subject.

**Incident Commander (IC):** the sworn employee in charge of the department's on-scene response to an event.

# Seattle Police Department Policy Manual

**Legal Observers:** individuals, usually representatives of civilian human rights agencies, who attend public demonstrations, protests, and other activities where there is a potential for conflict between those assembled and law enforcement or security.

- The following may be indicia of a legal observer: wearing a green National Lawyers' Guild (NLG) issued or authorized Legal Observer hat and/or vest (a green NLG hat and/or black vest with green labels) or wearing a blue ACLU issued or authorized legal observer vest.

**Media:** consistent with [RCW 5.68.010](RCW 5.68.010), "media" means any person who is an employee, agent, or independent contractor of any newspaper, magazine or other periodical, book publisher, news agency, wire service, radio or television station or network, cable or satellite station or network, or audio or audiovisual production company, or any entity that is in the regular business of news gathering and disseminating news or information to the public by any means, including, but not limited to, print, broadcast, photographic, mechanical, internet, or electronic distribution.

- For purposes of this policy, the following are indicia of being a member of the media: visual identification as a member of the press, such as by displaying a professional or authorized press pass or wearing a professional or authorized press badge or some distinctive clothing that identifies the wearer as a member of the press.

**Police Outreach and Engagement Team (POET):** officers integrated in the day-to-day operations of the Community Outreach and Community Response units. During critical incidents, POET officers are tasked with advising ICs and liaising with community elements involved in the event.

**Tactical Advisor:** an officer experienced and trained in special event and demonstration management who is assigned to provide tactical options to ICs during crowd management situations.

## 14.090-POL-3 The Department Uses the Incident Command System (ICS) for Crowd Management Events

### 1. When Assigned, an Incident Commander Will Plan and Oversee the Department's Response Before, During, and After an Event

The IC may delegate authority and assignments. The IC will utilize POET officers to attempt to interact with organizers and gain cooperation, when feasible.

### 2. The Incident Commander Retains Ultimate Responsibility for the Actions of Subordinates

To fulfill this obligation, the IC will be available for consultation.

# Seattle Police Department Policy Manual

A tactical advisor is assigned to the IC, when feasible. Tactical advisors are strictly advisory, and the IC maintains ultimate responsibility for actions of subordinates.

### 3. The Incident Commander Will be the Rank of Sergeant or Above

**Exception:** An officer can serve as IC until a sergeant responds.

If feasible, a lieutenant will assume command when there are two sergeants and/or two squads involved in the event.

If feasible, a captain will assume command when there are two lieutenants involved in the event.

(See manual section 1.020 - Chain of Command)

## 14.090-POL-4 Incident Commander Documentation

The IC will follow manual sections 14.100 – Special Event Planning and 8.400 – Use of Force Reporting and Investigation for planning, staffing, and documenting a crowd management response.

## 14.090-POL-5 The Incident Commander Will Use the Crowd Management, Intervention, and Control Concepts Strategies (CMIC) Matrix

Any public assembly of individuals or groups, lawful or unlawful, may require support and/or intervention by law enforcement. Depending upon the situation, the law enforcement response can range from observation and/or crowd management strategies, to crowd intervention and control strategies, as outlined in the CMIC Matrix.

The CMIC Matrix is a guide for the IC and allows for agility in police action in response to dynamic crowd events. Such considerations may include the overall positioning of a crowd, and whether it is static or mobile. The IC will document their considerations in their statement.

## 14.090-POL-6 The Incident Commander Will Employ Crowd Management Strategies Prior to and During an Event, Whenever Feasible

The IC will consider strategies in the CMIC Matrix when planning and managing an event.

## 14.090-POL-7 Officers May Use Crowd Intervention Strategies When Safe and Feasible

# Seattle Police Department Policy Manual

Whenever isolated unlawful activity by individuals or small groups in an otherwise peaceable assembly can be addressed through targeted enforcement, commanders and sergeants directing a law enforcement response may use crowd intervention strategies, as provided in the CMIC Matrix, to intervene and remove law violators such that a peaceable assembly may proceed.

The effect of the crowd intervention strategies upon the demeanor of the crowd should be considered.

## 14.090-POL-8 Crowd Control and Dispersal

### 1. The Incident Commander May Order that a Public Safety Order be Issued

The IC may order that a public safety order be issued to move, disperse, or refrain from specified activities in the immediate vicinity upon determining that there are acts or conduct within a crowd that create a substantial risk of causing injury to persons or substantial harm to property.

The IC will not order a public safety order to be issued unless the IC has determined that the risk observed cannot be contained through crowd management or crowd intervention strategies.

### 2. Upon Determining That a Public Safety Order to Disperse is Necessary, the Incident Commander Will Ensure That There is an Avenue of Egress Sufficient to Allow the Crowd to Depart

### 3. Where Available, Sound Amplification Equipment Will Be Used to Issue the Public Safety Order

The IC will make reasonable effort to ensure that the order is heard or received. The IC may direct the Public Affairs unit to broadcast the public safety order on social media.

### 4. After Making a Public Safety Order, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit

The goal of a public safety order to disperse is to restore and maintain public order. If the IC determines that a crowd no longer poses a substantial risk of injury to persons or harm to property, the IC will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC Matrix.

(See 14.090-TSK-3 Issuing the Order to Disperse)

# Seattle Police Department Policy Manual

**5. The Incident Commander Will Document the Circumstances Upon Which a Public Safety Order was Issued, Including any Considerations as to Less Restrictive Means to Restore Public Order**

## 14.090-POL-9 Use of CS Gas

**1. CS Gas May Only Be Used When Necessary to Alleviate a Present Risk of Serious Harm During an Unlawful Assembly**

**2. Only the Mayor of Seattle May Authorize an Incident Commander to Deploy CS Gas**

Before the use of CS gas, the IC must exhaust alternatives to the use of CS gas that are available and appropriate under the circumstances (for CS gas deployment see 8.300-POL-13 CS Gas).

Upon the authorization by the mayor (or next highest elected official in the mayor's absence), the IC may approve the use of CS gas to alleviate a present risk of serious harm.

Per RCW 10.116.030, in the case of a riot or incident outside of the City of Seattle city limits where CS gas may be used, a sworn employee may only use CS gas after receiving authorization from the highest elected official of the jurisdiction where the CS gas is to be used.

**3. Upon Determining That the Use of CS Gas is Necessary, the Incident Commander Will Ensure That There is an Avenue of Egress Sufficient to Allow the Crowd to Depart**

**4. The IC will Issue an Announcement of Their Intent to Deploy CS Gas**

The IC will make reasonable efforts to ensure that the warning is heard or received.

The IC will allow sufficient time and space for the crowd to comply with the warning.

Where available, sound amplification equipment will be used to issue a CS gas warning.

The IC may direct the Public Affairs Unit to broadcast a CS gas warning on social media to the public.

**5. After Ordering the Use of CS Gas, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit**

# Seattle Police Department Policy Manual

The goal of the use of CS gas is to prevent serious harm and to restore and maintain public order. If the IC determines that a crowd no longer poses a risk of serious harm, the IC will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC Matrix.

**6. The Incident Commander Will Document the Circumstances Upon Which CS Gas Was Deployed, Including any Considerations as to Less Restrictive Means to Restore Public Order**

## 14.090–POL-10 Media and Legal Observers

**1. It is the Department's Goal to Provide the Media and Legal Observers as Much Access as is Safely Possible to Assist them in their Duties and Responsibilities**

**2. The Incident Commander Will Consider Identifying an Area for Members of the Media and Legal Observers Outside of the Anticipated Impacted Area**

Except for spontaneously occurring events, and when practicable, the IC will consider identifying an area outside of the anticipated impacted area, but within viewing distance and audible range of the event, for members of the media or legal observers to assemble.

Nothing about this policy restricts any member of the media or legal observer to such identified areas and officers shall not take enforcement action solely because members of the media or legal observers do not remain within the identified area.

**3. Officers Will Not Arrest Members of the Media or Legal Observers for Failure to Disperse, Unless they are Physically Obstructing Lawful Efforts to Disperse the Crowd**

Nothing about this policy authorizes members of the media or legal observers from otherwise complying with lawful commands, nor prohibits arrests based on probable cause on other offenses.

## 14.090-POL-11 Use of Force

It is the department's mission to facilitate crowd management events with as minimal force as is reasonably necessary to protect life and property. In both crowd intervention and crowd control situations, officers may be required to physically engage individuals who exhibit conduct ranging from obstructive to violent behavior. In these situations, officers may have to utilize force to move crowd members who do not respond to verbal orders, control violent individuals,

# Seattle Police Department Policy Manual

or to effect an arrest. In considering strategies and tactics, officers should weigh the risk of harm resulting from officer action against the risk of harm that may otherwise continue.

This policy is to be read and applied in conjunction with Title 8 of this manual. While the department recognizes that officers will face unique and challenging circumstances that cannot be exhaustively addressed in policy, officers and commanders are expected to apply core principles of de-escalation and modulation of force when safe and feasible to do so. Nothing about this policy creates an exception to the requirement that officers may use only force, which is objectively reasonable, necessary, and proportional to bring an incident or person under control, while protecting the life and safety of all persons.

## 1. Officers May Make Individual Decisions to Use Force Consistent with Title 8

Officers will take reasonable, necessary, and proportional actions to protect against specific imminent threats of physical harm to themselves or identifiable others or to respond to specific acts of violence or substantial destruction of property.

Officers will employ de-escalation strategies and tactics within all crowd management contexts, whenever safe and feasible under the circumstances, to reduce or eliminate the necessity to use physical force (see manual section 8.100 – De-Escalation).

Where feasible, officers will consult with a supervisor prior taking action to protect against destruction of property.

## 2. The Incident Commander Has Authority to Direct the Use of Less Lethal Weapons Other Than CS Gas to Disperse the Crowd

An immediate life safety emergency is an unplanned, dynamic situation where immediate police action is necessary to protect the officers' and/or the public's safety.

> **Exception:** A supervisor may authorize the use of less lethal weapons to move or disperse a crowd if an immediate life safety emergency exists that requires this action be taken and there is insufficient time to obtain incident command approval.

(See manual section 8.300 – Use of Force Tools)

## 3. Only Personnel Trained to Deploy Less Lethal Weapons (Blast Balls, OC Spray, 40 mm Less Lethal Launchers, CS Gas, and Pepperballs) are Authorized to Carry and Use These Weapons Under the Supervision of the Incident Commander or Their Designee

# Seattle Police Department Policy Manual

> Training will include information about the less lethal weapons, how to effectively deploy them, safety considerations, the specific effects on people and the environment, and how to decontaminate persons.
>
> Only SWAT and 40mm trained CRG officers are authorized to carry and deploy 40 mm less-lethal impact rounds during crowd control operations.

**4. Officers Will Not Deploy Less-Lethal Weapons (Blast Balls, OC Spray, 40 mm, CS Gas, and Pepperballs) to Move a Crowd Until an Incident Commander Instructs Officers to Deploy Them**

> The IC will give the crowd a dispersal order and a reasonable amount of time to comply, under the circumstances.

**5. As the Level of Violence Within a Crowd that Justified the Dispersal Order Diminishes, the Incident Commander Will Affirmatively Direct Sworn Employees to Modulate their Force**

**6. Uses of Force that Occur During the Course of Crowd Management Are Reported, Investigated, and Reviewed in Accordance with Manual Section 8.400-POL-5**

## 14.090-POL-12 Providing Medical Aid

**1. Officers Will Provide Aid to Subjects Exposed to OC, Blast Balls, 40 mm, Pepperballs, if Feasible, and Within Their Training**

> Medical aid may include summoning medical assistance, if more appropriate.

**2. Officers Will Request Medical Response or Assistance, When Safe and Feasible**

> Officers will request medical response or assistance for subjects exposed to CS gas, OC, or pepperballs when any of the following occur:
>
> - Subjects complain of continued effects after having been decontaminated, or
>
> - Subjects indicate that they have a pre-existing medical condition (e.g., lung or heart ailments) that may be aggravated by OC or pepperballs, or
>
> - Subjects who appear to have been injured by a less-lethal weapon or who complain of pain or injury from a less-lethal weapon.

## 14.090-POL-13 Debrief of Crowd Management Events of Short Duration

# Seattle Police Department Policy Manual

## 1. Following the Event, Sergeants and Incident Commanders Will Conduct a Day-of-Event Debrief

Sergeants will conduct a debriefing of their assigned officers and document any observations or suggestions on an Event Debrief Form (form 23.5).

Sergeants and the Incident Command staff will then have a separate debrief to discuss the following subjects:

- Event staffing

- Deployment

- Command issues

- Communication issues

- Logistical issues

- Use of less-lethal weapons

- Areas of success

- Areas for improvement

## 2. The Incident Commander Will Complete an After-Action Report

(See manual section 14.010 – After-Action Reports)

# 14.090-POL-14 Debrief of Large Scale and/or Prolonged Events

## 1. For Incidents Which are Large in Scale, or Whose Duration Is Multiple Days or Weeks, the Day-of-Event Debrief Will Consist of the Post-Event Briefing Form

The IC, or their designee will complete the Post-Event Briefing Form.

## 2. The After-Action Report Will be Written by the Chief of Police's Designee

The completion date will be determined by the Chief depending upon the length of the on-going incident.

# 14.090-TSK-1 Incident Commander Responsibilities

**Incident Commander**

# Seattle Police Department Policy Manual

1. If feasible, **contacts** the event organizer to discuss department facilitation.

2. **Develops** contingency plan regarding staffing and tactics.

    - SPD task force callout criteria.

3. **Considers** utilizing specialty units.

4. **Reviews** mutual aid callout criteria and which tools mutual aid may bring into the City of Seattle and how they will document their use of force.

5. **Provides** a staffing plan to the SPD Budget Section based on the Staffing Matrix, if feasible.

6. **Communicates** each unit's mission to the relevant supervisor or commander.

    - **Instructs** the supervisor or commander to develop and provide plans.

    - **Approves** unit plans.

    - **Ensures** the event plans are detailed in the Incident Action Plan, to include the goals, objectives, rules of engagement, and the CMIC Matrix.

7. **Briefs** officers and supervisors using the SPD ICS briefing format.

8. **Remains** available for on-scene consultation.

9. For short duration events:

    - **Debriefs** supervisors and commanders.

    - **Collects** Event Debrief Forms from the supervisors.

    - **Considers** including the Wellness Unit.

10. For prolonged events:

    – **Coordinates** with the Chief of Police regarding the After-Action Report and **ensures** the IC or designee completes the Post Event Briefing form.

11. **Completes** an After-Action Report consistent with the requirements of manual section <u>14.010 – After-Action Reports.</u>

# Seattle Police Department Policy Manual

- **Routes** the After-Action Report and Event Debrief Forms to the Patrol Operations Bureau Commander, via the chain of command.

## 14.090-TSK-2 Operations Section Chief Responsibilities

**Operations Section Chief**

1. **Develops** methods or tactics that will be used to accomplish the mission, as directed by the IC.

    - **Submits** plans to the IC.

2. **Debriefs** assigned officers after the incident.

3. **Documents** observations and suggestions on an Event Debrief Form (form 23.5).

    - **Submits** Event Debrief Forms to IC.

4. **Attends** separate debrief with IC.

## 14.090-TSK-3 Issuing the Order to Disperse

**Incident Commander (or designee)**

Upon determining that the crowd presents an imminent risk to public safety, or that large-scale property destruction appears likely, the IC or designee, when feasible:

1. Where available, **utilizes** sound amplification equipment so the crowd can hear the dispersal order.

2. **Considers** using the Public Affairs Unit to broadcast dispersal orders on social media.

3. **Places** officers at the rear of the crowd to verify that the order to disperse will be heard by all.

4. The IC (or their designee) will **issue** the following order:

**"I am (rank and name) of the Seattle Police Department. For safety reasons and to prevent further crimes in the crowd, I am now issuing a public safety order to disperse, and I command all those assembled at (specific location) to immediately disperse, which means leave this area. If you do not leave the area, you may be arrested or subject to other police action. Other police action could include the use of chemical agents or less-lethal weapons, which may inflict significant pain or result in serious injury. If you remain in the area just**

# Seattle Police Department Policy Manual

> **described, regardless of your purpose, you will be in violation of city and state law. The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse.**
>
> **(Repeat) The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse.**
>
> **(Repeat) The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse."**

5. **Provides** direction to media.

6. **Allows** a reasonable amount of time for the crowd to disperse.

7. **Repeats** the order to disperse, if feasible.

8. **Considers** issuing the order in multiple languages, where feasible, and depending upon the situation.

9. Continually **assesses** the balance of dispersal time and the goal of retaining control of the situation.

Where the IC has determined it is not safe or feasible to accomplish any of the above, the IC will document that reasoning in their statement.