EXHIBIT 1

# Seattle Police Department Manual

# **14.090 - Crowd Management, Intervention, and Control**

### ***See 14.090 – Crowd Management, Intervention, and Control Interim Policy*** (Internal Link)

(Public Link here)

Effective Date: 04/15/2021

## 14.090-POL-1 Purpose

The rights to free speech and peaceable assembly are guaranteed by the First Amendment to the United States Constitution and Article 1, § 4 and 5 of the Washington State Constitution. The Seattle Police Department takes seriously its responsibility and commitment to support and facilitate the exercise of these rights in fair and equitable manner, without consideration as to content or political affiliation, with as minimal a footprint as is reasonably necessary to preserve public safety and order.

This policy recognizes that assemblies in Seattle may range from small gatherings that require no police support, to permitted celebratory and/or protest marches, to large-scale, unpermitted demonstrations where activities outside of First Amendment protections, including significant traffic disruption, property destruction, and/or threats of violence may require a greater police presence. This policy is intended to provide clear guidance to officers, supervisors, and commanders in employing appropriate crowd management, intervention, and control strategies in a manner so as to facilitate, to the extent safe and feasible, the right to free expression and peaceable assembly. This policy is also intended to provide guidance by which officers and supervisors may objectively determine at what juncture a demonstration or assembly leaves the realm of legal protest and becomes an abridgement on the life-safety and property rights of others. See RCW 9A.84.010. At all times, SPD's response will be based upon the conduct of those assembled, not the content of their speech or affiliation.

# Seattle Police Manual

The Department recognizes that the visible appearance and/or actions of law enforcement may affect the demeanor and behavior of a crowd. It is the Department's mission to de-escalate whenever safe and feasible to do so, without compromising public order and safety.

The Department also recognizes that the unlawful acts of some members of a crowd do not automatically turn an assembly from peaceable to unpeaceable. It is the Department's commitment to provide officers and supervisors with crowd management and intervention strategies that allow for the peaceable expression of federal and state rights while at the same time removing individuals whose illegal behavior jeopardize the safety of lawful activity.

This policy is intended solely to guide the decisions, actions, and operations of Department personnel in planning for and responding to crowd management situations within the City of Seattle. It is not intended to expand or abridge Constitutional analyses with respect to the parameters of First Amendment protections and restrictions more appropriate for a court of law.

This policy is to be read in conjunction with [Section 14.100](#) (Special Events) and Title 8 (Use of Force).

## 14.090-POL-2 Definitions

Where used in this section, the following terms shall have the meanings ascribed:

**Crowd Management** – strategies and tactics that employ communication and dialogue with event leaders to obtain voluntary compliance with lawful orders and allow for minimal enforcement action.

**Crowd Intervention** – strategies and tactics that are designed to facilitate continued exercise of constitutional rights by isolating and arresting law violators within an otherwise lawful assembly.

**Crowd Control** – strategies and tactics, including dispersal, that are employed in the event a crowd or portion of a crowd becomes involved in violent or otherwise destructive behavior and which are intended to protect life, restore and maintain order, allow for the arrest of law violators, and the protection of vital facilities and property.

# Seattle Police Manual

**CMIC Matrix** – Crowd Management, Intervention, and Control Concepts and Strategies.

**De-escalation** – Strategies and tactics used by officers and commanders, when safe and feasible without compromising law enforcement priorities, that seek to minimize the likelihood of the need to use force during an incident and increase the likelihood of gaining voluntary compliance from a subject.

**Legal Observers** – Individuals, usually representatives of civilian human rights agencies, who attend public demonstrations, protests and other activities where there is a potential for conflict between those assembled and law enforcement or security.

The following may be indicia of a legal observer: Wearing a green National Lawyers' Guild issued or authorized Legal Observer hat and/or vest (a green NLG hat and/or black vest with green labels) or wearing a blue ACLU issued or authorized legal observer vest.

**Media** – Consistent with [RCW 5.68.010](RCW 5.68.010), "media" means any person who is an employee, agent, or independent contractor of any newspaper, magazine or other periodical, book publisher, news agency, wire service, radio or television station or network, cable or satellite station or network, or audio or audiovisual production company, or any entity that is in the regular business of news gathering and disseminating news or information to the public by any means, including, but not limited to, print, broadcast, photographic, mechanical, internet, or electronic distribution.

For purposes of this policy, the following are indicia of being a member of the media: visual identification as a member of the press, such as by displaying a professional or authorized press pass or wearing a professional or authorized press badge or some distinctive clothing that identifies the wearer as a member of the press.

## 14.090-POL-3 The Department Uses the Incident Command System for Crowd Management Events

### 1. When Assigned, an Incident Commander (I/C) Will Plan and Oversee the Department's Response Before, During, and Following an Event

# Seattle Police Manual

The Incident Commander may delegate authority and assignments.

**2. The Incident Commander Retains Ultimate Responsibility for the Actions of Subordinates**

In order to fulfill this obligation, the Incident Commander will be available for on-scene consultation.

**3. The Incident Commander Will be a Sergeant or Above**

**Exception**: An officer can serve as Incident Commander until a sergeant responds.

- If feasible, a lieutenant will assume command when there are two sergeants and/or two squads involved in the event.

- If feasible, a captain will assume command when there are two lieutenants involved in the event.

- For more information, see Manual Section 1.020 – Chain of Command.

## 14.090-POL-4 The Incident Commander Will Follow Section 14.100 and 8.500 for Planning, Staffing, and Documenting a Crowd Management Response

## 14.090-POL-5 The Incident Commander Will Use the Crowd Management, Intervention, and Control Concepts Strategies (CMIC) Matrix

Any public assembly of individuals or groups, lawful or unlawful, may require support and/or intervention by law enforcement. Depending upon the situation, the response of law enforcement can range from observation and crowd management strategies, to crowd intervention and control strategies, as outlined in the Crowd Management, Intervention, and Control Strategies Matrix (CMIC).

The CMIC is a guide for the Incident Commander and allows for agility in police action in response to dynamic crowd events. Such considerations may include the overall positioning of a crowd, whether static or mobile. The Incident Commander shall document their considerations in their statement.

# Seattle Police Manual

| Lawful Assembly | Isolated Unlawful Behavior | Unlawful Assembly |
|---|---|---|
| Free speech and peaceable assembly are protected First Amendment activities.<br>Examples include:<br>• Speeches<br>• Marches<br>• Demonstrations<br>• Rallies<br>• Picketing<br>• Public assemblies<br>• Protests<br>• Celebratory events | Individual violent acts within the crowd, property damage, unpermitted traffic disruption, and defacement are not protected activities.  However, isolated unlawful activity by individuals or small groups within a crowd should not automatically form the basis for declaring an assembly unlawful.<br>Examples include:<br>• Isolated destruction of property<br>• Isolated acts of violence<br>• Isolated rock or bottle throwers<br>• Individual sit-down demonstrators | Where unlawful behavior within or of a crowd cannot be controlled through intervention strategies, assemblies may be dispersed.  Examples of such behavior include:<br>Examples of such behavior include:<br>• Violent acts by four or more persons or acts that pose an imminent threat of violence against persons or property (RCW 9A.84.010)[1]<br>• Significant unpermitted traffic disruption that poses an imminent threat of harm to members of the assembly or the traveling public<br>• Other criminal acts in the crowd that cannot be addressed through crowd intervention strategies |
| Police Action |||

# Seattle Police Manual

| Crowd Management Strategies (Manual Sections 14.090, .100) | Crowd Intervention Strategies | Crowd Control and Dispersal Strategies |
|---|---|---|
| • Meet with event organizers and stakeholders<br>• Determine the history and risk of the group<br>• Check permit limitations<br>• Develop Incident Action Plan and objectives<br>• Identify and assign resources<br>• Determine appropriate uniform for the event<br>• Provide direction and expectations at roll call<br>• Monitor and assess crowd behavior<br>• Engender facilitation, not confrontation<br>• Attempt to interact with organizers and gain cooperation<br>• Separate opposing factions | • Attempt to use organizers and monitors to gain voluntary compliance<br>• Isolate, arrest and remove law violators as quickly as possible<br>• Video action of officers and law violators<br>• Use amplified sound to communicate intent or to gain compliance<br>• Use low profile tactics when possible<br>• Use force that is reasonable, necessary, and proportional force to effect necessary arrests consistent with Title 8<br>• When it is not possible to make an immediate arrest, identify and track subjects for later arrest<br>• Continue to assess and modulate response as behavior changes | • Issue an order to disperse<br>• Identify dispersal routes<br>• Identify appropriate area for media and legal observers<br>• Use force that is reasonable, necessary, and proportional to disperse or move a crowd<br>• Continue to assess and modulate response as behavior changes |

## 14.090-POL-6 The Incident Commander Will Employ Crowd Management Strategies Prior to and During an Event, Whenever Feasible

The Incident Commander will consider strategies in the CMIC Matrix when planning for an event and in managing peaceable assemblies.

## 14.090-POL-7 Officers Will Use Crowd Intervention Strategies Whenever Safe and Feasible

Whenever isolated unlawful activity by individuals or small groups in an otherwise peaceable assembly can be addressed through targeted enforcement, commanders and sergeants directing a law enforcement response will use crowd intervention tactics as provided in the CMIC to intervene and remove law violators such that a peaceable assembly may proceed.

## 14.090-POL-8 Crowd Control and Dispersal

# Seattle Police Manual

**1. Upon Determining that there are acts or Conduct Within a Crowd that Create a Substantial Risk of Causing Injury to Persons or Substantial Harm to Property, the Incident Commander May Order that a Public Safety Order be Issued to Move, Disperse, or Refrain from Specified Activities in the Immediate Vicinity**

> The Incident Commander will not order a public safety order to be issued unless the Incident Commander has determined that the risk observed cannot be contained through crowd management or intervention tactics.

**2. Upon Determining that a Public Safety Order to Disperse is Necessary, the Incident Commander Will Ensure that there is an Avenue of Egress Sufficient to Allow the Crowd to Depart**

**3. Where Available, the Sound Amplification Equipment Will be Used to Issue the Public Safety Order**

> The Incident Commander will make reasonable effort to ensure that the order is heard or received. The Incident Commander may direct the Public Affairs unit to broadcast the public safety order on social media.

**4. The Incident Commander Shall Document the Circumstances Upon Which a Public Safety Order was Issued, Including any Considerations as to Less Restrictive Means to Restore Public Order**

**5. After Ordering a Public Safety Order, the Incident Commander Will Modulate Tactics and Strategies as Circumstances Permit**

> The goal of a public safety order to disperse is to restore and maintain public order. If the Incident Commander determines that a crowd no longer poses a substantial risk of injury to persons or harm to property, the incident commander will re-evaluate tactics and strategies and will adjust the response as time and circumstances permit, consistent with the CMIC.

> (See 14.090-TSK-3 Issuing the Order to Disperse)

## 14.090-POL-9 Media and Legal Observers

# Seattle Police Manual

**1. It is the Department's Goal to Provide the Media and Legal Observers as Much Access as is Safely Possible to Assist them in their Duties and Responsibilities**

**2. With the Exception of Spontaneously Occurring Events, and when Practicable, the Incident Commander Will Consider Identifying an Area Outside of the Anticipated Impacted Area, but Within Viewing Distance and Audible Range of the Event, for Members of the Media or Legal Observers to Assemble**

>Nothing about this policy restricts any member of the media or legal observer to such identified areas and officers shall not take enforcement action solely because members of the media or legal observers do not remain within the identified area.

**3. Officers Will Not Arrest Members of the Media or Legal Observers for Failure to Disperse, Unless they are Physically Obstructing Lawful Efforts to Disperse the Crowd**

>Nothing about this policy authorizes members of the media or legal observers from otherwise complying with lawful commands, nor prohibits arrests based on probable cause on other offenses.

## 14.090-POL-10 Use of Force

>It is the Department's mission to facilitate crowd management events with as minimal force as is reasonably necessary to protect life and property. In both crowd intervention and crowd control situations, officers may be required to physically engage individuals who exhibit conduct ranging from obstructive to violent behavior. In these situations, officers may have to utilize force to move crowd members who do not respond to verbal orders, control violent individuals, or to effect an arrest. In considering strategies and tactics, officers should weigh the risk of harm resulting from officer action against the risk of harm that may otherwise continue.

>This policy is to be read and applied in conjunction with Title 8 of this manual. While the Department recognizes that officers will face unique and challenging circumstances that cannot be exhaustively addressed in policy, officers and commanders are expected to apply core principles of de-escalation and modulation of force where safe and feasible to do so. Nothing about this policy creates an exception to the requirement that officers may use only force, which is objectively reasonable,

# Seattle Police Manual

necessary, and proportional to bring an incident or person under control, while protecting the life and safety of all persons.

## 1. Officers May Make Individual Decisions to Use Force Consistent With Title 8 to Take Reasonable, Necessary, and Proportional Action to Protect Against a Specific Imminent Threat of Physical Harm to Themselves or Identifiable Others Or To Respond to Specific Acts of Violence or Substantial Destruction of Property

Officers will employ de-escalation strategies and tactics within all crowd management contexts, whenever safe and feasible under the circumstances, to reduce or eliminate the necessity to use physical force. See Manual Section 8.100.

Where feasible, officers will consult with a supervisor prior taking action to protect against destruction of property.

## 2. The Incident Commander Has Authority to Direct the Use of Less Lethal Weapons Other than CS to Disperse the Crowd (See Manual Section 8.300 Use-of-Force Weapons and Tools)

**Exception**: A lieutenant may authorize the use of less lethal weapons to move or disperse a crowd if an immediate life safety emergency exists that requires this action be taken and there is insufficient time to obtain incident command approval.

- An immediate life safety emergency is an unplanned, dynamic situation where immediate police action is necessary to protect the officers' and/or the public's safety.

## 3. Only Personnel Trained to Deploy Less Lethal Weapons (Blast Balls, OC Spray, 40mm, and Pepperballs) are Authorized to Carry and Use these Weapons Under the Supervision of the Incident Commander or their Designee

Training shall include information about the less lethal weapons, how to effectively deploy them, safety considerations, the specific effects on people and the environment, and how to decontaminate persons.

Only SWAT is authorized to carry and deploy 40 mm less-lethal impact rounds for crowd control purposes.

## 4. Officers Will Not Deploy Less-Lethal Weapons (Blast Balls, OC Spray, 40 mm, and Pepperballs) to Move a Crowd Until an

# Seattle Police Manual

**Incident Commander Instructs Officers to Deploy Them (Which Will Be After a Dispersal Order has Been Given and the Crowd Has Been Given a Reasonable Amount of Time to Comply).**

**5. As the Level of Violence Within a Crowd that Justified the Dispersal Order Diminishes, the Incident Commander Shall Affirmatively Ensure Personnel are Directed to Modulate their Force**

**6. Uses of Force that Occur During the Course of Crowd Management Are Reported, Investigated and Reviewed in Accordance with Manual Section 8.500-POL-6**

## 14.090-POL-11 Providing Medical Aid

**1. Officers Will Provide Aid to Subjects Exposed to OC, Blast Balls, 40mm, Pepperballs if Feasible and Within their Training**

> Medical aid may include summoning medical assistance if more appropriate.

**2. Officers Will Request Medical Response or Assistance for Subjects Exposed to OC and/or Pepperballs When They Complain of Continued Effects After Having Been Decontaminated, or They Indicate That They Have a Pre-Existing Medical Condition (e.g., Asthma, Emphysema, Bronchitis, Heart Ailment, Etc.) That May be Aggravated by OC or Pepperballs**

**3. Officers Will Request Medical Response or Assistance for Subjects Who Appear to Have Been Injured by a Less-Lethal Weapon or Who Complain of Pain or Injury from a Less-Lethal Weapon.**

## 14.090-POL-12 Debrief of Crowd Management Events of Short Duration

**1. Following the Event, Sergeants and Incident Commanders Will Conduct a Day-of-Event Debrief**

> Sergeants will conduct a debriefing of their assigned officers and document any observations or suggestions on an Event Debrief Form (form 23.5).

# Seattle Police Manual

Sergeants and the Incident Command staff will then have a separate debrief to discuss the following subjects:

- Event staffing

- Deployment

- Command issues

- Communication issues

- Logistical issues

- Use of less-lethal weapons

- Areas of success

- Areas for improvement

**2. The Incident Commander Will Complete an After-Action Report (See: [14.010-After-Action Reports](#))**

## 14.090-POL-13 Debrief of Large Scale and/or Prolonged Events

**1. For Incidents Which are Large in Scale, or Whose Duration is Multiple Days or Weeks, the Day of Event Debrief Will Consist of the Post Event Briefing form**

**2. The Incident Commander (or designee) will complete the Post Event Briefing Form**

**3. The AAR Report Will be Written by the Chief's Designee, the Completion Date of Which Will be Determined by the Chief Depending Upon the Length of the On-Going Incident**

## 14.090-TSK-1 Responsibilities of the Incident Commander

The **Incident Commander**:

1. If feasible, **contacts** the event organizer to discuss Department facilitation

2. **Develops** contingency plan regarding staffing and tactics

# Seattle Police Manual

- SPD task force callout criteria

3. **Considers** utilizing specialty units

4. **Reviews** Mutual Aid callout criteria and which tools Mutual Aid may bring into the City of Seattle and how they will document their use of force

5. **Provides** a staffing plan to the SPD Budget Section based on the Staffing Matrix, if feasible

6. **Communicates** each unit's mission to the relevant supervisor or commander

    a. **Instructs** the supervisor or commander to develop and provide plans

    b. **Approves** unit plans

    c. **Ensures** the event plans are detailed in the Incident Action Plan (IAP), to include the goals, objectives, Rules of Engagement, and the CMIC Matrix.

7. **Briefs** officers and supervisors using the SPD ICS briefing format

8. **Remains** available for on-scene consultation

9. For Short Duration Events – **debriefs** supervisors and commanders

    a. **Collects** Event Debrief Forms from the supervisors

    b. **Considers** including the Wellness Unit

10. **Completes** an After-Action Report consistent with the requirements of manual section 14.010 – After-Action Reports.

    a. **Routes** the After-Action Report and Event Debrief Forms to the Patrol Operations Bureau Commander, via the chain of command

11. For Prolonged Events – **Coordinates** with the Chief of Police regarding the AAR and ensures the Incident Commander or designee completes the Post Event Briefing form.

## 14.090-TSK-2 Responsibilities of the Operations Section Chief

# Seattle Police Manual

The **Operations Section Chief**:

1. **Develops** methods or tactics that will be used to accomplish the mission, as directed by the Incident Commander

    a. **Submits** plans to the Incident Commander

2. **Debriefs** assigned officers after the incident

3. **Documents** observations and suggestions on an Event Debrief Form (form 23.5)

    a. **Submits** Event Debrief Forms to Incident Commander

4. **Attends** separate debrief with Incident Commander

## 14.090-TSK-3 Issuing the Order to Disperse

Upon determining that the crowd presents an imminent risk to public safety or that large-scale property destruction appears likely, the **Incident Commander or their designee**, as feasible:

1. Where available, **utilizes** sound amplification equipment so the crowd can hear the dispersal order

2. **Considers** using the Media Relations unit to broadcast dispersal orders on social media

3. **Places** officers at the rear of the crowd to verify that the order to disperse will be heard by all

4. The Incident Commander (or their designee) shall issue the following order:

**"I am (rank and name) of the Seattle Police Department. For safety reasons and to prevent further crimes in the crowd, I am now issuing a public safety order to disperse, and I command all those assembled at (specific location) to immediately disperse, which means leave this area. If you do not leave the area, you may be arrested or subject to other police action. Other police action could include the use of chemical agents or less-lethal weapons, which may inflict significant pain or result in serious injury. If you remain in the area just described, regardless of your purpose, you will be in violation of city and state law. The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse.**

# Seattle Police Manual

> (Repeat) The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse.
>
> (Repeat) The following routes of dispersal are available: (routes). You have (reasonable amount of time) minutes to disperse."
>
> 5. **Provides** direction to media
>
> 6. **Allows** a reasonable amount of time for the crowd to disperse
>
> 7. **Repeats** the order to disperse, if feasible
>
> 8. **Considers** issuing the order in multiple languages where feasible and depending upon the situation
>
> 9. Continually **assesses** the balance of dispersal time and the goal of retaining control of the situation

Where the IC has determined it is not safe or feasible to accomplish any of the above, the IC will document that reasoning in their statement.

---

[1] While this definition tracks the legal standard, the presence of four more persons acting to pose an imminent threat of violence against persons or property does not presumptively justify law enforcement action under policy. In all cases, Incident Commanders are expected to consider the number of individuals acting unlawfully in the context of available resources and intervention strategies short of dispersal.